Reed R. Kathrein (139304)
Peter E. Borkon (212596)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
reed@hbsslaw.com
peterb@hbsslaw.com

Attorneys for Plaintiff

[Additional counsel listed on signature page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| MIKE LABINS, on Behalf of Himself and all Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> THE CHARLES SCHWAB CORPORATION, CHARLES SCHWAB & CO. INC., CHARLES SCHWAB INVESTMENT MANAGEMENT, INC., CHARLES R. SCHWAB, EVELYN DILSAVER, RANDALL W. MERK and GEORGE PEREIRA, <br><br> Defendants. | No. 08-cv-1510 WHA <br><br> DECLARATION OF REED R. KATHREIN IN SUPPORT OF MOTION TO CONSOLIDATE, TO APPOINT THE YIELDPLUS INVESTOR GROUP LEAD PLAINTIFF AND TO APPROVE PROPOSED LEAD PLAINTIFF'S SELECTION OF COUNSEL <br><br> DATE: July 3, 2008 <br> TIME: 8:00 a.m. <br> DEPT: CR 9, 19th Floor |
| GERRY HAGEMAN, on Behalf of Himself and all Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> THE CHARLES SCHWAB CORPORATION, CHARLES SCHWAB & CO. INC., CHARLES SCHWAB INVESTMENT MANAGEMENT, INC., CHARLES R. SCHWAB, EVELYN DILSAVER, RANDALL W. MERK and GEORGE PEREIRA, <br><br> Defendants. | No. 08-cv-1733 WHA |

1

W. MERRILL GLASGOW, on Behalf of )    No. 08-cv-1936 WHA
Himself and All Others Similarly Situated, )

2                                                       )
                                                        )
3                              Plaintiff,               )
                                                        )
      v.                                                )
4                                                       )
   THE CHARLES SCHWAB CORPORATION, )
5  CHARLES SCHWAB & CO. INC., CHARLES )
   SCHWAB INVESTMENT MANAGEMENT,    )
6  INC., CHARLES R. SCHWAB, EVELYN      )
   DILSAVER, RANDALL W. MERK and         )
7  GEORGE PEREIRA,                       )
                                                        )
8                              Defendants.              )
                                                        )
   _____ )
9  NILS FLANZRAICH and JILL FLANZRAICH, )   No. 08-cv-1994 WHA
   on Behalf of Themselves and all Others )
10 Similarly Situated,                    )
                                                        )
11                             Plaintiffs,              )
                                                        )
12     v.                                               )
                                                        )
13 THE CHARLES SCHWAB CORPORATION, )
   CHARLES SCHWAB & CO. INC., CHARLES )
14 SCHWAB INVESTMENT MANAGEMENT,    )
   INC., CHARLES R. SCHWAB, SCHWAB      )
15 INVESTMENTS, SCHWAB YIELDPLUS      )
   FUND SELECT SHARES, EVELYN         )
16 DILSAVER, RANDALL W. MERK and        )
   GEORGE PEREIRA,                      )
17                                                      )
                               Defendants.              )
18 _____ )

19

20

21

22

23

24

25

26

27

28

| | |
|---|---|
| VINAYAK R. PAI DEFINED BENEFITS<br>PENSION PLAN, on Behalf Itself and all Others<br>Similarly Situated,<br><br>                                         Plaintiff,<br><br>        v.<br><br>THE CHARLES SCHWAB CORPORATION,<br>CHARLES SCHWAB & CO. INC., CHARLES<br>SCHWAB INVESTMENT MANAGEMENT,<br>INC., CHARLES R. SCHWAB, EVELYN<br>DILSAVER, RANDALL W. MERK,<br>GREGORY HAND, GEORGE PEREIRA,<br>DONALD F. DOWARD, MARIANN<br>BYERWALTER, WILLIAM A. HASLER,<br>ROBERT G. HOLMES, GERALD B. SMITH,<br>DONALD R. STEPHENS, MICHAEL W.<br>WILSEY and JEFF LYONS,<br><br>                                         Defendants. | No. 08-cv-2058 WHA |

I, REED R. KATHREIN declare as follows:

1.    I am a member in good standing of the state bar of California.  I am an attorney at Hagens Berman Sobol Shapiro LLP, proposed Lead Counsel for the YieldPlus Investor Group. I submit this declaration in support of the Motion to Consolidate, to Appoint the YieldPlus Investor Group Lead Plaintiff and to Approve Proposed Lead Plaintiff's Selection of Counsel.

2.    Attached as exhibits are true and correct copies of the following:

Exhibit A:    Certifications of the YieldPlus Investor Group along with detailed listings of transactions;

Exhibit B:    Chart of the YieldPlus Investor Group's purchases and losses;

Exhibit C:    Published Notice of the first securities class action complaint filed in this matter in the United States District Court for the Northern District of California; and

Exhibit D:    Firm Resume for Proposed Lead Counsel Hagens Berman Sobol Shapiro LLP.

I declare, under penalty of perjury of the laws of the United States, that the foregoing is true and correct to the best of my knowledge.

Executed this 16th day of May 2008.

                                                      /s/ Reed R. Kathrein
                                                 REED R. KATHREIN

1

**CERTIFICATE OF SERVICE**

2          I hereby certify that on May 16, 2008 I electronically filed the foregoing with the Clerk of

3     the Court using the CM/ECF system which will send notification of such filing to the e-mail

4     addresses registered, as denoted on the attached Electronic Mail Notice List, and I hereby certify

5     that I have mailed the foregoing document or paper via the United States Postal Service to the non-

6     CM/ECF participants indicated on the attached Manual Notice List.

7

8                                                    _____/s/ Reed R. Kathrein_____
                                                          REED R. KATHREIN
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Mailing Information for a Case 3:08-cv-01510-WHA

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Peter E. Borkon**
  peterb@hbsslaw.com

- **Reed R. Kathrein**
  reed@hbsslaw.com,nancyq@hbsslaw.com,sf_filings@hbsslaw.com

- **Darryl Paul Rains**
  drains@mofo.com,dgillis@mofo.com

## Manual Notice List

The following is the list of attorneys who are **not**
on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)

# Exhibit A

CERTIFICATION OF NAMED PLAINTIFF
PURSUANT TO FEDERAL SECURITIES LAWS

David Mikelonis ("Plaintiff") declares as to the claims asserted under the federal securities laws, that: *filed in CV 081510 (WHA) on March 18, 2008*

1.    Plaintiff has reviewed a complaint alleging securities fraud against the Charles Schwab Corporation, *et al.*, and ~~authorized~~ → *ratifies* its filing.

2.    Plaintiff did not acquire the security that is the subject of this action at the direction of Plaintiff's counsel in order to participate in this private action or any other litigation under the federal securities laws.

3.    Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4.    Plaintiff has made no transaction(s) during the Class Period in the debt or equity securities that are the subject of this action except those set forth below:

| Acquisitions | Date Acquired | No. Shares Acquired | Acquisition Price Per Share |
|---|---|---|---|
| SWYSX (Schwab YieldPlus Select) | *as shown on Attachment A to this certification for our family accounts those being in my name and in my wife's name.* | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

| Sales | Date Sold | No. Shares Sold | Selling Price Per Share |
|---|---|---|---|
| SWYSX (Schwab YieldPlus Select) | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

5.      During the three years prior to the date of this Certificate, Plaintiff has not sought to serve or served as a representative party for a class in the following actions filed under the federal securities laws except as detailed below:

6.      Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except

such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct. Executed this _15th_ day of _May_, 2008.

_David Mikelonis_

David Mikelonis

_Gretchen L. Mikelonis_
_by Dam_

Please fill out the additional information. Thank you.

Name (print):

Address:

REDACTED

County of Residence:

Daytime Phone No.:

Evening Phone No.:

Email:

- 3 -

*ies Schwab Customer Center

charles SCHWAB

Customer Service |
Open an Account

Log
Out

The Schwab Security Guarantee

At a Gla Accoun Trade    Quotes Planning Investin
Research Advice Produc Bankin

Overview  Balances  Positions  Performance  Gain/Loss  History  Transfers & Payme

Your Financial Consultant

Unrealized Gain/Loss    Realized Gain/Loss

Rules & Assumptions    Page Help    Printer-Friendly Version

STRETCHED MIKROWS  BLOCK A TRADING HISTORY

Realized Gain/Loss Details for: SWYSX SCHWAB YIELDPLUS SELECT SHARES transacted
on Wed 07-MAY-2008

To view/edit Original Lots for this security, click here.

| Acquired/Opened | Quantity | Proceeds Per Share | Cost Per Share | Total Proceeds | Total Cost Basis | Realized Gain/Loss | Holding Period |
|---|---|---|---|---|---|---|---|
| Thu 31-JAN-2008 | 14.44090 | 6.56 | 9.61 | 94.80 | 138.81 | -44.01 | Short Term |
| Mon 31-DEC-2007 | 24.54899 | 6.56 | 9.61 | 161.04 | 235.84 | -74.80 | Short Term |
| Fri 30-NOV-2007 | 26.45799 | 6.56 | 9.61 | 173.55 | 254.18 | -80.62 | Short Term |
| Wed 31-OCT-2007 | 24.785 | 6.56 | 9.61 | 162.59 | 238.10 | -75.51 | Short Term |
| Fri 28-SEP-2007 | 22.073 | 6.56 | 9.61 | 144.80 | 212.05 | -67.25 | Short Term |
| Fri 31-AUG-2007 | 27.29299 | 6.55 | 9.61 | 178.04 | 262.20 | -83.16 | Short Term |
| Tue 31-JUL-2007 | 5.392 | 6.56 | 9.61 | 35.37 | 51.80 | -16.43 | Short Term |
| **Total:** | | | | $651.20 | $1,392.98 | **-$441.78** | |

Mutual funds use the "average cost" method to calculate cost basis and determine the gain or loss on a sale. With the average cost method, the gain or loss of a fund position you sold is determined by subtracting the averaged cost of all the previous purchases or acquisitions of that fund in your account from the sell price of the closed lot. In order to edit the cost basis information for these lots, please follow the link above to the Original Lots view, and select one or more editable lots in order...

Quote| Symbol Lookup

[print]

GRETCHEN MIKELONIS BLOCK B TRADING HISTORY

**Realized Gain/Loss Details for: SWYSX SCHWAB YIELDPLUS SELECT SHARES** transacted on Thu 27-MAR-2008

To view/edit Original Lots for this security, click here.

| Acquired/Opened | Quantity | Proceeds Per Share | Cost Per Share | Total Proceeds | Total Cost Basis | Realized Gain/Loss | Holding Period |
|---|---|---|---|---|---|---|---|
| Wed 11-JUL-2007 | 15 | 7.34 | 9.64 | 110.10 | 144.67 | -34.57 | Short Term |
| Total: | | | | $110.10 | $144.67 | -$34.57 | |

**Realized Gain/Loss Details for: SWYSX SCHWAB YIELDPLUS SELECT SHARES** transacted on Tue 25-MAR-2008

To view/edit Original Lots for this security, click here.

| Acquired/Opened | Quantity | Proceeds Per Share | Cost Per Share | Total Proceeds | Total Cost Basis | Realized Gain/Loss | Holding Period |
|---|---|---|---|---|---|---|---|
| Wed 11-JUL-2007 | 1,060 | 7.47 | 9.64 | 7,918.20 | 10,223.23 | -2,305.03 | Short Term |
| Total: | | | | $7,918.20 | $10,223.23 | -$2,305.03 | |

**Realized Gain/Loss Details for: SWYSX SCHWAB YIELDPLUS SELECT SHARES** transacted on Mon 14-APR-2008

To view/edit Original Lots for this security, click here.

| Acquired/Opened | Quantity | Proceeds Per Share | Cost Per Share | Total Proceeds | Total Cost Basis | Realized Gain/Loss | Holding Period |
|---|---|---|---|---|---|---|---|
| Mon 31-MAR-2008 | 24.07499 | 6.79 | 9.63 | 163.46 | 231.85 | -68.39 | Short Term |
| Fri 29-FEB-2008 | 21.62699 | 6.79 | 9.63 | 146.85 | 208.27 | -61.42 | Short Term |
| Tue 31-JUL-2007 | 10.207 | 6.79 | 9.63 | 69.31 | 98.30 | -28.99 | Short Term |
| Wed 11-JUL-2007 | 4,100.983 | 6.79 | 9.63 | 27,845.68 | 39,493.41 | -11,647.73 | Short Term |
| Total: | | | | $28,225.30 | $40,031.83 | -$11,806.53 | |

Charles Schwab - Print Closed Lot Details

*[handwritten: DAVID MKEOWNS BLOCK B TRADING HISTORY]*

[ print ]

Realized Gain/Loss Details for: SWYSX SCHWAB YIELDPLUS
SELECT SHARES transacted on Thu 17-APR-2008

To view/edit Original Lots for this security, click here.

| Acquired/Opened | Quantity | Proceeds Per Share | Cost Per Share | Total Proceeds | Total Cost Basis | Realized Gain/Loss | Holding Period |
|---|---|---|---|---|---|---|---|
| Mon 31-MAR-2008 | 264.31099 | 6.74 | 9.66 | 1,781.47 | 2,553.47 | -772.00 | Short Term |
| Fri 29-FEB-2008 | 252.96399 | 6.74 | 9.66 | 1,704.98 | 2,443.85 | -738.87 | Short Term |
| Thu 31-JAN-2008 | 248.223 | 6.74 | 9.66 | 1,673.02 | 2,398.05 | -725.03 | Short Term |
| Mon 31-DEC-2007 | 250.877 | 6.74 | 9.66 | 1,690.91 | 2,423.69 | -732.78 | Short Term |
| Fri 30-NOV-2007 | 270.408 | 6.74 | 9.66 | 1,822.55 | 2,612.37 | -789.82 | Short Term |
| Wed 31-OCT-2007 | 253.281 | 6.74 | 9.66 | 1,707.11 | 2,446.91 | -739.80 | Short Term |
| Fri 28-SEP-2007 | 225.58199 | 6.74 | 9.66 | 1,520.42 | 2,179.32 | -658.90 | Short Term |
| Fri 31-AUG-2007 | 278.92059 | 6.74 | 9.66 | 1,879.93 | 2,694.62 | -814.69 | Short Term |
| Tue 31-JUL-2007 | 239.157 | 6.74 | 9.66 | 1,611.92 | 2,310.46 | -698.54 | Short Term |
| Fri 29-JUN-2007 | 244.014 | 6.74 | 9.66 | 1,644.65 | 2,357.39 | -712.74 | Short Term |
| Thu 31-MAY-2007 | 238.20799 | 6.74 | 9.66 | 1,605.52 | 2,301.29 | -695.77 | Short Term |
| Mon 30-APR-2007 | 222.19599 | 6.74 | 9.66 | 1,497.60 | 2,146.61 | -649.01 | Short Term |
| Fri 30-MAR-2007 | 241.38499 | 6.74 | 9.66 | 1,626.93 | 2,331.99 | -705.06 | Long Term |

Charles Schwab - Print Closed Lot Details

| | | | | | | |
|---|---|---|---|---|---|---|
| Wed 28-FEB-2007 | 225.663 | 6.74 | 9.66 | 1,520.97 | 2,180.10 | Long Term |
| Wed 31-JAN-2007 | 45.85699 | 6.74 | 9.66 | 309.06 | 443.02 | Long Term |
| Thu 25-JAN-2007 | 51,599.56699 | 6.74 | 9.66 | 347,781.21 | 498,496.57 | -150,715.36 Long Term |
| Total: | | | | $371,378.27 | $522,319.71 | ($160,941.44) |

🖼 Data for this holding has been edited.

Mutual funds use the "average cost" method to calculate cost basis and determine the gain or loss on a sale. With the average cost method, the gain or loss of a fund position you sold is determined by subtracting the averaged cost of all the previous purchases or acquisitions of that fund in your account from the sell price of the closed lot. In order to edit the cost basis information for closed lots, please follow the link above to the Original Lots view, and select one or more editable lots to update. Updates to the original lots will flow out to any affected closed lots.

Research Missing Cost Basis 🖼 The historic cost basis research information is provided by Xcitek, which is not affiliated with Charles Schwab & Co., Inc. ("Schwab") or any of Schwab's affiliates. None of the information constitutes a recommendation by Schwab or a solicitation of an offer to buy or sell any securities. The information is not intended to provide tax, legal or investment advice. Schwab does not guarantee the suitability or potential value of any particular investment or information source. Neither Schwab nor Xcitek guarantees the accuracy, timeliness, completeness or correct sequencing of this information nor warrants any results from use of the information.

The Realized Gain/Loss page provides summary information of closed transactions. Not all closed transactions appear on this page.

The information on this page is for estimating portfolio performance only; it is not intended as tax or legal advice, and should not be used for tax purposes. Schwab is not responsible for the accuracy or completeness of the information you supply. Please check your records carefully before supplying any information.

Please note that gains and losses realized in retirement accounts are not recognized for tax purposes. Rather, income may be recognized when you receive a cash distribution from these accounts. Please contact your tax advisor for further information.

View as of: Sat Apr 26 17:30:35 EDT 2008

**David Mikelonis Trading History in SWYSX**

|  | Block A | Block B | Notes |
|---|---|---|---|
| Date acquired | Jan 23, 2007 | Jan 25, 2007 | **Block A - -** all distributions were received in cash - - These shares were held in my Schwab One brokerage account |
| No. of shares | 20,639.83499 | 51,599.587 | |
| Purchase price per share | $9.69 | $9.69 | **Block B - -** all distributions were automatically reinvested and this happened monthly - - These shares were held in my Schwab IRA |
| Date sold | April 16, 2008 | April 17, 2008 | |
| No. of shares | 20,639.835 | 55,100.634 | |
| Sales price per share | $6.74 | $6.74 | |
|  |  |  | |

As of May 8, 2008 based on data shown on Schwab site

**Gretchen Mikelonis Trading History in SWYSX**

| | Block A | Block B | Notes |
|---|---|---|---|
| Date acquired | July 11, 2007 | | **Block A - -** all distributions were automatically reinvested and this happened monthly - - These shares held in an individual Schwab One brokerage account |
| No. of shares | 5,175.98300 | | |
| Purchase price per share | $9.66 | | |
| February 1. 2008 | 157.9630 shares remain in **Block A** | 5,186.1900 shares transferred from **Block A** | **Block B - -** transferred shares held in joint Schwab One brokerage account- - all distributions were automatically reinvested and this happened monthly |
| Price of transferred shares | | $8.93 | Journal entry on Schwab books |
| Date sold | | March 25, 2008 | |
| No. of shares | | 1,060.00 | |
| Sales price per share | | $7.47 | |
| Date sold | | March 27, 2008 | |
| No. of shares | | 15.00 | |
| Sales price per share | | $7.34 | |
| Date sold | | April 14, 2008 | |
| No. of shares | | 4,156.89 | No shares left in **Block B** |
| Sales price per share | | $6.79 | **Block B** loss is $14,146.13 per Schwab |
| Date sold | May 7, 2008 | | |
| No. of shares | 145.00 | | |
| Sales price per share | $6.56 | | **Block A** loss is $441.78 per Schwab |
| Shares remaining | 14.382 | - - 0 - - | |
| | | | |

## CERTIFICATION OF NAMED PLAINTIFF
## PURSUANT TO FEDERAL SECURITIES LAWS

Kevin O'Donnell ("Plaintiff") declares as to the claims asserted under the federal securities laws, that:

1.    Plaintiff has reviewed a complaint alleging securities fraud against the Charles Schwab Corporation, *et al.*, and authorized its filing.

2.    Plaintiff did not acquire the security that is the subject of this action at the direction of Plaintiff's counsel in order to participate in this private action or any other litigation under the federal securities laws.

3.    Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4.    Plaintiff has made no transaction(s) during the Class Period in the debt or equity securities that are the subject of this action except those set forth below:

| Acquisitions | Date Acquired | No. Shares Acquired | Acquisition Price Per Share |
|---|---|---|---|
| SWYSX (Schwab YieldPlus Select) | SEE Schwab Print out Consisting of two pages. | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

| Sales | Date Sold | No. Shares Sold | Selling Price Per Share |
|---|---|---|---|
| SWYSX (Schwab YieldPlus Select) | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

5.    During the three years prior to the date of this Certificate, Plaintiff has not sought to serve or served as a representative party for a class in the following actions filed under the federal securities laws except as detailed below:

6.    Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct. Executed this /8 day of April , 2008.

_____
Kevin O'Donnell

Please fill out the additional information. Thank you.

Name (print):

Address:                    REDACTED

County of Residence:

Daytime Phone No.:

Evening Phone No.:

- 3 -

Kevin M. O'Donnell

[close window]           [Print]

History for account XXXX-4701 as of 04/18/2008 11:37:55 EDT

| Date | Action | Quantity | Symbol | Description | Price | Amount | Fees & Comm |
|------|--------|----------|--------|-------------|-------|--------|-------------|
| 03/31/2008 | | | SWYSX | SCHWAB YIELDPLUS SELECT SHARES type: ORD INC DIV REINV. | | $5,620.25 | |
| 03/31/2008 | Buy | 783.8560 | SWYSX | SCHWAB YIELDPLUS SELECT SHARES type: REINVEST DIVIDEND | $7.1700 | -$5,620.25 | |
| 03/25/2008 | Sell | 50,000.0000 | SWYSX | SCHWAB YIELDPLUS SELECT SHARES | $7.4700 | $373,500.00 | |
| 03/24/2008 | Sell | 50,000.0000 | SWYSX | SCHWAB YIELDPLUS SELECT SHARES | $7.5900 | $379,500.00 | |
| 03/20/2008 | Sell | 100,000.0000 | SWYSX | SCHWAB YIELDPLUS SELECT SHARES | $7.7600 | $776,000.00 | |
| 02/29/2008 | | | SWYSX | SCHWAB YIELDPLUS SELECT SHARES type: ORD INC DIV REINV. | | $8,552.39 | |
| 02/29/2008 | Buy | 972.9680 | SWYSX | SCHWAB YIELDPLUS SELECT SHARES type: REINVEST DIVIDEND | $8.7900 | -$8,552.39 | |
| 01/31/2008 | | | SWYSX | SCHWAB YIELDPLUS SELECT SHARES type: ORD INC DIV REINV. | | $8,525.73 | |
| 01/31/2008 | Buy | 954.7290 | SWYSX | SCHWAB YIELDPLUS SELECT SHARES type: REINVEST DIVIDEND | $8.9300 | -$8,525.73 | |
| 12/31/2007 | | | SWYSX | SCHWAB YIELDPLUS SELECT SHARES type: ORD INC DIV REINV. | | $8,752.02 | |
| 12/31/2007 | Buy | 964.9420 | SWYSX | SCHWAB YIELDPLUS SELECT SHARES type: REINVEST DIVIDEND | $9.0700 | -$8,752.02 | |
| 11/30/2007 | | | SWYSX | SCHWAB YIELDPLUS SELECT SHARES type: ORD INC DIV REINV. | | $9,537.32 | |
| 11/30/2007 | Buy | 1,040.0570 | SWYSX | SCHWAB YIELDPLUS SELECT SHARES type: REINVEST DIVIDEND | $9.1700 | -$9,537.32 | |
| 10/31/2007 | | | SWYSX | SCHWAB YIELDPLUS SELECT SHARES type: ORD INC DIV REINV. | | $9,176.84 | |
| 10/31/2007 | Buy | 974.1870 | SWYSX | SCHWAB YIELDPLUS SELECT SHARES type: REINVEST DIVIDEND | $9.4200 | -$9,176.84 | |
| 09/28/2007 | | | SWYSX | SCHWAB YIELDPLUS SELECT SHARES type: ORD INC DIV REINV. | | $8,190.62 | |
| 09/28/2007 | Buy | 867.6500 | SWYSX | SCHWAB YIELDPLUS SELECT SHARES type: REINVEST DIVIDEND | $9.4400 | -$8,190.62 | |
| 08/31/2007 | | | SWYSX | SCHWAB YIELDPLUS SELECT SHARES type: ORD INC DIV REINV. | | $10,095.24 | |
| 08/31/2007 | Buy | 1,072.8200 | SWYSX | SCHWAB YIELDPLUS SELECT SHARES type: REINVEST DIVIDEND | $9.4100 | -$10,095.24 | |
| 07/31/2007 | | | SWYSX | SCHWAB YIELDPLUS SELECT SHARES type: ORD INC DIV REINV. | | $8,849.15 | |
| 07/31/2007 | Buy | 919.8700 | SWYSX | SCHWAB YIELDPLUS SELECT SHARES type: REINVEST DIVIDEND | $9.6200 | -$8,849.15 | |
| 06/29/2007 | | | SWYSX | SCHWAB YIELDPLUS SELECT SHARES type: ORD INC DIV REINV. | | $9,075.66 | |
| 06/29/2007 | | | SWYSX | SCHWAB YIELDPLUS SELECT SHARES type: ORD INC DIV REINV. | | $0.11 | |
| 06/29/2007 | Buy | 938.5380 | SWYSX | SCHWAB YIELDPLUS SELECT SHARES type: REINVEST DIVIDEND | $9.6700 | -$9,075.66 | |
| 06/29/2007 | Buy | 0.0110 | SWYSX | SCHWAB YIELDPLUS SELECT SHARES type: REINVEST DIVIDEND | $9.6700 | -$0.11 | |
| 05/31/2007 | | | SWYSX | SCHWAB YIELDPLUS SELECT SHARES type: ORD INC DIV REINV. | | $8,634.38 | |
| 05/31/2007 | | | SWYSX | SCHWAB YIELDPLUS SELECT SHARES type: ORD INC DIV REINV. | | $234.46 | |
| 05/31/2007 | Buy | 24.2210 | SWYSX | SCHWAB YIELDPLUS SELECT SHARES type: REINVEST DIVIDEND | $9.6800 | -$234.46 | |
| 05/31/2007 | Buy | 891.9810 | SWYSX | SCHWAB YIELDPLUS SELECT SHARES type: REINVEST DIVIDEND | $9.6800 | -$8,634.38 | |
| 04/30/2007 | | | SWYSX | SCHWAB YIELDPLUS SELECT SHARES type: ORD INC DIV REINV. | | $7,428.92 | |
| 04/30/2007 | | | SWYSX | SCHWAB YIELDPLUS SELECT SHARES type: ORD INC DIV REINV. | | $793.20 | |
| 04/30/2007 | Buy | 81.8580 | SWYSX | SCHWAB YIELDPLUS SELECT SHARES type: REINVEST DIVIDEND | $9.6900 | -$793.20 | |
| 04/30/2007 | Buy | 766.6580 | SWYSX | SCHWAB YIELDPLUS SELECT SHARES type: REINVEST DIVIDEND | $9.6900 | -$7,428.92 | |
| 04/03/2007 | Buy | 20,639.8350 | SWYSX | SCHWAB YIELDPLUS SELECT SHARES | $9.6900 | -$200,000.00 | |
| 03/30/2007 | | | SWYSX | SCHWAB YIELDPLUS SELECT SHARES type: ORD INC DIV REINV. | | $0.29 | |
| 03/30/2007 | | | SWYSX | SCHWAB YIELDPLUS SELECT SHARES type: ORD INC DIV REINV. | | $8,070.08 | |
| 03/30/2007 | Buy | 0.0300 | SWYSX | SCHWAB YIELDPLUS SELECT SHARES type: REINVEST DIVIDEND | $9.6900 | -$0.29 | |
| 03/30/2007 | Buy | 832.8260 | SWYSX | SCHWAB YIELDPLUS SELECT SHARES type: REINVEST DIVIDEND | $9.6900 | -$8,070.08 | |
| 02/28/2007 | | | SWYSX | SCHWAB YIELDPLUS SELECT SHARES type: ORD INC DIV REINV. | | $2,007.23 | |
| 02/28/2007 | | | SWYSX | SCHWAB YIELDPLUS SELECT SHARES type: ORD INC DIV REINV. | | $5,537.43 | |
| 02/28/2007 | Buy | 207.1440 | SWYSX | SCHWAB YIELDPLUS SELECT SHARES type: REINVEST DIVIDEND | $9.6900 | -$2,007.23 | |

### Kevin M. O'Donnell

| Date | Type | Shares | Symbol | Description | Price | Amount |
|---|---|---|---|---|---|---|
| 02/28/2007 | Buy | 571.4580 | SWYSX | SCHWAB YIELDPLUS SELECT SHARES type: REINVEST DIVIDEND | $9.6900 | -$5,537.43 |
| 01/31/2007 | | | SWYSX | SCHWAB YIELDPLUS SELECT SHARES type: ORD INC DIV REINV. | | $3,168.10 |
| 01/31/2007 | | | SWYSX | SCHWAB YIELDPLUS SELECT SHARES type: ORD INC DIV REINV. | | $3,238.23 |
| 01/31/2007 | Buy | 326.9450 | SWYSX | SCHWAB YIELDPLUS SELECT SHARES type: REINVEST DIVIDEND | $9.6900 | -$3,168.10 |
| 01/31/2007 | Buy | 334.1830 | SWYSX | SCHWAB YIELDPLUS SELECT SHARES type: REINVEST DIVIDEND | $9.6900 | -$3,238.23 |
| 01/09/2007 | Buy | 103,199.1740 | SWYSX | SCHWAB YIELDPLUS SELECT SHARES | $9.6900 | -$1,000,000.00 |
| 12/29/2006 | | | SWYSX | SCHWAB YIELDPLUS SELECT SHARES type: ORD INC DIV REINV. | | $3,382.36 |
| 12/29/2006 | Buy | 349.4170 | SWYSX | SCHWAB YIELDPLUS SELECT SHARES type: REINVEST DIVIDEND | $9.6800 | -$3,382.36 |
| 11/30/2006 | | | SWYSX | SCHWAB YIELDPLUS SELECT SHARES type: ORD INC DIV REINV. | | $3,235.95 |
| 11/30/2006 | Buy | 334.2920 | SWYSX | SCHWAB YIELDPLUS SELECT SHARES type: REINVEST DIVIDEND | $9.6800 | -$3,235.95 |
| 10/31/2006 | | | SWYSX | SCHWAB YIELDPLUS SELECT SHARES type: ORD INC DIV REINV. | | $3,096.49 |
| 10/31/2006 | | | SWYSX | SCHWAB YIELDPLUS SELECT SHARES type: ORD INC DIV REINV. | | $8.92 |
| 10/31/2006 | Buy | 319.8850 | SWYSX | SCHWAB YIELDPLUS SELECT SHARES type: REINVEST DIVIDEND | $9.6800 | -$3,096.49 |
| 10/31/2006 | Buy | 0.9210 | SWYSX | SCHWAB YIELDPLUS SELECT SHARES type: REINVEST DIVIDEND | $9.6800 | -$8.92 |
| 09/29/2006 | | | SWYSX | SCHWAB YIELD PLUS SELECTSHARES type: ORD INC DIV REINV. | | $24.71 |
| 09/29/2006 | | | SWYSX | SCHWAB YIELD PLUS SELECTSHARES type: ORD INC DIV REINV. | | $3,242.75 |
| 09/29/2006 | Buy | 2.5550 | SWYSX | SCHWAB YIELD PLUS SELECTSHARES type: REINVEST DIVIDEND | $9.6700 | -$24.71 |
| 09/29/2006 | Buy | 335.3410 | SWYSX | SCHWAB YIELD PLUS SELECTSHARES type: REINVEST DIVIDEND | $9.6700 | -$3,242.75 |
| 09/07/2006 | Buy | 708.0160 | SWYSX | SCHWAB YIELD PLUS SELECTSHARES | $9.6700 | -$6,846.51 |
| 08/31/2006 | | | SWYSX | SCHWAB YIELD PLUS SELECTSHARES type: ORD INC DIV REINV. | | $0.01 |
| 08/31/2006 | | | SWYSX | SCHWAB YIELD PLUS SELECTSHARES type: ORD INC DIV REINV. | | $3,164.53 |
| 08/31/2006 | Buy | 327.2520 | SWYSX | SCHWAB YIELD PLUS SELECTSHARES type: REINVEST DIVIDEND | $9.6700 | -$3,164.53 |
| 08/31/2006 | Buy | 0.0010 | SWYSX | SCHWAB YIELD PLUS SELECTSHARES type: REINVEST DIVIDEND | $9.6700 | -$0.01 |
| 07/31/2006 | | | SWYSX | SCHWAB YIELD PLUS SELECTSHARES type: ORD INC DIV REINV. | | $44.01 |
| 07/31/2006 | | | SWYSX | SCHWAB YIELD PLUS SELECTSHARES type: ORD INC DIV REINV. | | $2,935.90 |
| 07/31/2006 | Buy | 303.9230 | SWYSX | SCHWAB YIELD PLUS SELECTSHARES type: REINVEST DIVIDEND | $9.6600 | -$2,935.90 |
| 07/31/2006 | Buy | 4.5560 | SWYSX | SCHWAB YIELD PLUS SELECTSHARES type: REINVEST DIVIDEND | $9.6600 | -$44.01 |
| 06/30/2006 | | | SWYSX | SCHWAB YIELD PLUS SELECTSHARES type: ORD INC DIV REINV. | | $449.75 |
| 06/30/2006 | | | SWYSX | SCHWAB YIELD PLUS SELECTSHARES type: ORD INC DIV REINV. | | $2,732.04 |
| 06/30/2006 | Buy | 46.5580 | SWYSX | SCHWAB YIELD PLUS SELECTSHARES type: REINVEST DIVIDEND | $9.6600 | -$449.75 |
| 06/30/2006 | Buy | 282.8200 | SWYSX | SCHWAB YIELD PLUS SELECTSHARES type: REINVEST DIVIDEND | $9.6600 | -$2,732.04 |
| 06/01/2006 | Buy | 10,351.9670 | SWYSX | SCHWAB YIELD PLUS SELECTSHARES | $9.6600 | -$100,000.00 |
| 05/31/2006 | | | SWYSX | SCHWAB YIELD PLUS SELECTSHARES type: ORD INC DIV REINV. | | $176.06 |
| 05/31/2006 | | | SWYSX | SCHWAB YIELD PLUS SELECTSHARES type: ORD INC DIV REINV. | | $2,329.68 |
| 05/31/2006 | Buy | 241.1680 | SWYSX | SCHWAB YIELD PLUS SELECTSHARES type: REINVEST DIVIDEND | $9.6600 | -$2,329.68 |
| 05/31/2006 | Buy | 18.2260 | SWYSX | SCHWAB YIELD PLUS SELECTSHARES type: REINVEST DIVIDEND | $9.6600 | -$176.06 |
| 04/28/2006 | | | SWYSX | SCHWAB YIELD PLUS SELECTSHARES type: ORD INC DIV REINV. | | $209.30 |
| 04/28/2006 | | | SWYSX | SCHWAB YIELD PLUS SELECTSHARES type: ORD INC DIV REINV. | | $1,937.24 |
| 04/28/2006 | Buy | 21.6440 | SWYSX | SCHWAB YIELD PLUS SELECTSHARES type: REINVEST DIVIDEND | $9.6700 | -$209.30 |
| 04/28/2006 | Buy | 200.3350 | SWYSX | SCHWAB YIELD PLUS SELECTSHARES type: REINVEST DIVIDEND | $9.6700 | -$1,937.24 |
| 04/11/2006 | Buy | 8,281.5740 | SWYSX | SCHWAB YIELD PLUS SELECTSHARES | $9.6600 | -$80,000.00 |

0006-5926

CERTIFICATION OF NAMED PLAINTIFF
PURSUANT TO FEDERAL SECURITIES LAWS

John Hill ("Plaintiff") declares as to the claims asserted under the federal securities laws, that:

1.      Plaintiff has reviewed a complaint alleging securities fraud against the Charles Schwab Corporation, *et al.*, and authorized its filing.

2.      Plaintiff did not acquire the security that is the subject of this action at the direction of Plaintiff's counsel in order to participate in this private action or any other litigation under the federal securities laws.

3.      Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4.      Plaintiff has made no transaction(s) during the Class Period in the debt or equity securities that are the subject of this action except those set forth below:

| Acquisitions | Date Acquired | No. Shares Acquired | Acquisition Price Per Share |
|---|---|---|---|
| SWYSX (Schwab YieldPlus Select) | 12-06-06 | 209,254.4970 | 9.68 |
| " " | 1- 07 | 13,415.8930 | 9.67 |
| " " IRA | 12-06-06 | 13,144.945 | 9.69 |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

| Sales | Date Sold | No. Shares Sold | Selling Price Per Share |
|---|---|---|---|
| SWYSX (Schwab YieldPlus Select) | *all* 3-04-08 | 222,670.39 | 8.68 |
| " " IRA | 3-07-08 | 12473.945 | 8.39 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

5.    During the three years prior to the date of this Certificate, Plaintiff has not sought to serve or served as a representative party for a class in the following actions filed under the federal securities laws except as detailed below:

6.    Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

- 2 -

I declare under penalty of perjury that the foregoing is true and correct.
Executed this _11_ day of _April_, 2008.

_John G Hill_
JOHN HILL

Please fill out the additional information. Thank you.

Name (print):

Address:


County of Residence:

Daytime Phone No.:

Evening Phone No.:

E-mail:

**REDACTED**

- 3 -

## CERTIFICATION OF NAMED PLAINTIFF
## PURSUANT TO FEDERAL SECURITIES LAWS

Richard Kimmel ("Plaintiff") declares as to the claims asserted under the federal securities laws, that:

1.    Plaintiff has reviewed a complaint alleging securities fraud against the Charles Schwab Corporation, *et al.*, and authorized its filing.

2.    Plaintiff did not acquire the security that is the subject of this action at the direction of Plaintiff's counsel in order to participate in this private action or any other litigation under the federal securities laws.

3.    Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4.    Plaintiff has made no transaction(s) during the Class Period in the debt or equity securities that are the subject of this action except those set forth below:

| Acquisitions | Date Acquired | No. Shares Acquired | Acquisition Price Per Share |
|---|---|---|---|
| *NRK* SWYSX (Schwab YieldPlus Select) | 11/09/06 to 4/30/08 | 179 132.2310 40 113.376 | Varies |
| *RKR* " | 12/13/06 to 4/30/08 | 28,339.505 | " |
| *K+R* " | 12/13/06 to 4/30/08 | 27,867.253 | " |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

I declare under penalty of perjury that the foregoing is true and correct. Executed this _9_ day of _May_, 2008.

_N. Richard Kimmel_
*N.* Richard Kimmel

Please fill out the additional information. Thank you.

Name (print):

Address:

REDACTED

County of Residence:

Daytime Phone No.:

Evening Phone No.:

Email:

- 3 -

[Close Window]

History for account NRK XXXX-6177 as of 05/09/2008 14:23:42 EDT                                    [Print]

| Date | Action | Quantity | Symbol | Description | Price | Amount | Fees & Comm |
|---|---|---|---|---|---|---|---|
| 04/30/2008 | | | SWYSX | SCHWAB YIELDPLUS SELECT SHARES type: ORD INC DIV REINV. | | $1,086.54 | |
| 04/30/2008 | Buy | 165.1280 | SWYSX | SCHWAB YIELDPLUS SELECT SHARES type: REINVEST DIVIDEND | $6.5800 | -$1,086.54 | |
| 03/31/2008 | | | SWYSX | SCHWAB YIELDPLUS SELECT SHARES type: ORD INC DIV REINV. | | $1,373.96 | |
| 03/31/2008 | Buy | 191.6260 | SWYSX | SCHWAB YIELDPLUS SELECT SHARES type: REINVEST DIVIDEND | $7.1700 | -$1,373.96 | |
| 02/29/2008 | | | SWYSX | SCHWAB YIELDPLUS SELECT SHARES type: ORD INC DIV REINV. | | $1,612.09 | |
| 02/29/2008 | Buy | 183.4000 | SWYSX | SCHWAB YIELDPLUS SELECT SHARES type: REINVEST DIVIDEND | $8.7900 | -$1,612.09 | |
| 01/31/2008 | | | SWYSX | SCHWAB YIELDPLUS SELECT SHARES type: ORD INC DIV REINV. | | $1,607.05 | |
| 01/31/2008 | Buy | 179.9610 | SWYSX | SCHWAB YIELDPLUS SELECT SHARES type: REINVEST DIVIDEND | $8.9300 | -$1,607.05 | |
| 12/31/2007 | | | SWYSX | SCHWAB YIELDPLUS SELECT SHARES type: ORD INC DIV REINV. | | $1,649.73 | |
| 12/31/2007 | Buy | 181.8890 | SWYSX | SCHWAB YIELDPLUS SELECT SHARES type: REINVEST DIVIDEND | $9.0700 | -$1,649.73 | |
| 11/30/2007 | | | SWYSX | SCHWAB YIELDPLUS SELECT SHARES type: ORD INC DIV REINV. | | $1,797.73 | |
| 11/30/2007 | Buy | 196.0450 | SWYSX | SCHWAB YIELDPLUS SELECT SHARES type: REINVEST DIVIDEND | $9.1700 | -$1,797.73 | |
| 10/31/2007 | | | SWYSX | SCHWAB YIELDPLUS SELECT SHARES type: ORD INC DIV REINV. | | $1,729.80 | |
| 10/31/2007 | Buy | 183.6310 | SWYSX | SCHWAB YIELDPLUS SELECT SHARES type: REINVEST DIVIDEND | $9.4200 | -$1,729.80 | |
| 09/28/2007 | | | SWYSX | SCHWAB YIELDPLUS SELECT SHARES type: ORD INC DIV REINV. | | $1,543.89 | |
| 09/28/2007 | Buy | 163.5480 | SWYSX | SCHWAB YIELDPLUS SELECT SHARES type: REINVEST DIVIDEND | $9.4400 | -$1,543.89 | |
| 08/31/2007 | | | SWYSX | SCHWAB YIELDPLUS SELECT SHARES type: ORD INC DIV REINV. | | $1,902.91 | |
| 08/31/2007 | Buy | 202.2220 | SWYSX | SCHWAB YIELDPLUS SELECT SHARES type: REINVEST DIVIDEND | $9.4100 | -$1,902.91 | |
| 07/31/2007 | | | SWYSX | SCHWAB YIELDPLUS SELECT SHARES type: ORD INC DIV REINV. | | $1,668.03 | |
| 07/31/2007 | Buy | 173.3920 | SWYSX | SCHWAB YIELDPLUS SELECT SHARES type: REINVEST DIVIDEND | $9.6200 | -$1,668.03 | |
| 06/29/2007 | | | SWYSX | SCHWAB YIELDPLUS SELECT SHARES type: ORD INC DIV REINV. | | $2,791.53 | |
| 06/29/2007 | Buy | 288.6790 | SWYSX | SCHWAB YIELDPLUS SELECT SHARES type: REINVEST DIVIDEND | $9.6700 | -$2,791.53 | |
| 06/14/2007 | Sell | 35,150.0000 | SWYSX | SCHWAB YIELDPLUS SELECT SHARES | $9.6800 | $340,252.00 | |
| 06/05/2007 | Sell | 52,100.0000 | SWYSX | SCHWAB YIELDPLUS SELECT SHARES | $9.6800 | $504,328.00 | |
| 05/31/2007 | | | SWYSX | SCHWAB YIELDPLUS SELECT SHARES type: ORD INC DIV REINV. | | $4,060.86 | |
| 05/31/2007 | Buy | 419.5100 | SWYSX | SCHWAB YIELDPLUS SELECT SHARES type: REINVEST DIVIDEND | $9.6800 | -$4,060.86 | |
| 05/14/2007 | Buy | 72,239.4220 | SWYSX | SCHWAB YIELDPLUS SELECT SHARES | $9.6900 | -$700,000.00 | |
| 04/30/2007 | | | SWYSX | SCHWAB YIELDPLUS SELECT SHARES type: ORD INC DIV REINV. | | $4,921.37 | |
| 04/30/2007 | Buy | 507.8810 | SWYSX | SCHWAB YIELDPLUS SELECT SHARES type: REINVEST DIVIDEND | $9.6900 | -$4,921.37 | |
| 04/26/2007 | Sell | 10,400.0000 | SWYSX | SCHWAB YIELDPLUS SELECT SHARES | $9.6900 | $100,751.00 | |
| 04/25/2007 | Sell | 70,000.0000 | SWYSX | SCHWAB YIELDPLUS SELECT SHARES | $9.6900 | $678,300.00 | $25.00 |
| 03/30/2007 | | | SWYSX | SCHWAB YIELDPLUS SELECT SHARES type: ORD INC DIV REINV. | | $5,946.56 | |
| 03/30/2007 | Buy | 613.6800 | SWYSX | SCHWAB YIELDPLUS SELECT SHARES type: REINVEST DIVIDEND | $9.6900 | -$5,946.56 | |
| 02/28/2007 | | | SWYSX | SCHWAB YIELDPLUS SELECT SHARES type: ORD INC DIV REINV. | | $6,635.81 | |

Page 2 of 2

| Date | Action | Quantity | Symbol | Description | Price | Amount |
|------|--------|----------|--------|-------------|-------|--------|
| 02/28/2007 | Buy | 684.8100 | SWYSX | SCHWAB YIELDPLUS SELECT SHARES type: REINVEST DIVIDEND | $9.6900 | -$6,635.81 |
| 02/07/2007 | Sell | 104,000.0000 | SWYSX | SCHWAB YIELDPLUS SELECT SHARES | $9.6900 | $1,007,760.00 |
| 01/31/2007 | | | SWYSX | SCHWAB YIELDPLUS SELECT SHARES type: ORD INC DIV REINV. | | $10,557.35 |
| 01/31/2007 | Buy | 1,089.5100 | SWYSX | SCHWAB YIELDPLUS SELECT SHARES type: REINVEST DIVIDEND | | -$10,557.35 |
| 01/09/2007 | Sell | 51,600.0000 | SWYSX | SCHWAB YIELDPLUS SELECT SHARES | $9.6900 | $500,004.00 |
| 12/29/2006 | | | SWYSX | SCHWAB YIELDPLUS SELECT SHARES type: ORD INC DIV REINV. | $9.6900 | $11,591.38 |
| 12/29/2006 | Buy | 1,197.4570 | SWYSX | SCHWAB YIELDPLUS SELECT SHARES type: REINVEST DIVIDEND | | -$11,591.38 |
| 12/13/2006 | Buy | 51,652.8930 | SWYSX | SCHWAB YIELDPLUS SELECT SHARES | $9.6800 | -$500,000.00 |
| 12/01/2006 | Buy | 103,305.7850 | SWYSX | SCHWAB YIELDPLUS SELECT SHARES | $9.6800 | -$1,000,000.00 |
| 11/30/2006 | | | SWYSX | SCHWAB YIELDPLUS SELECT SHARES type: ORD INC DIV REINV. | | $3,975.34 |
| 11/30/2006 | Buy | 410.6760 | SWYSX | SCHWAB YIELDPLUS SELECT SHARES type: REINVEST DIVIDEND | | -$3,975.34 |
| 11/09/2006 | Buy | 129,132.2310 | SWYSX | SCHWAB YIELDPLUS SELECT SHARES | $9.6800 | -$1,250,000.00 |

0006-5926

Brokerage Products: Not FDIC Insured • No Bank Guarantee • May Lose Value

© 2006 Charles Schwab & Co., Inc. All rights reserved. Member SIPC.
Unauthorized access is prohibited. Usage will be monitored.

Today's Date: 05/09/08

Agreements | Fees & Commissions | Privacy & Security | USA Patriot Act

Page 1 of 2

[Close Window]

History for account R K R XXXX-0650 as of 05/09/2008 14:00:46 EDT                    [Print]

| Date | Action | Quantity | Symbol | Description | Price | Amount | Fees & Comm |
|---|---|---|---|---|---|---|---|
| 04/30/2008 | | | SWYSX | SCHWAB YIELDPLUS SELECT SHARES type: ORD INC DIV REINV. | | $767.64 | |
| 04/30/2008 | Buy | 116.6630 | SWYSX | SCHWAB YIELDPLUS SELECT SHARES type: REINVEST DIVIDEND | $6.5800 | -$767.64 | |
| 03/31/2008 | | | SWYSX | SCHWAB YIELDPLUS SELECT SHARES type: ORD INC DIV REINV. | | $970.70 | |
| 03/31/2008 | Buy | 135.3840 | SWYSX | SCHWAB YIELDPLUS SELECT SHARES type: REINVEST DIVIDEND | $7.1700 | -$970.70 | |
| 02/29/2008 | | | SWYSX | SCHWAB YIELDPLUS SELECT SHARES type: ORD INC DIV REINV. | | $1,138.94 | |
| 02/29/2008 | Buy | 129.5720 | SWYSX | SCHWAB YIELDPLUS SELECT SHARES type: REINVEST DIVIDEND | $8.7900 | -$1,138.94 | |
| 01/31/2008 | | | SWYSX | SCHWAB YIELDPLUS SELECT SHARES type: ORD INC DIV REINV. | | $1,135.36 | |
| 01/31/2008 | Buy | 127.1400 | SWYSX | SCHWAB YIELDPLUS SELECT SHARES type: REINVEST DIVIDEND | $8.9300 | -$1,135.36 | |
| 12/31/2007 | | | SWYSX | SCHWAB YIELDPLUS SELECT SHARES type: ORD INC DIV REINV. | | $1,165.48 | |
| 12/31/2007 | Buy | 128.4980 | SWYSX | SCHWAB YIELDPLUS SELECT SHARES type: REINVEST DIVIDEND | $9.0700 | -$1,165.48 | |
| 11/30/2007 | | | SWYSX | SCHWAB YIELDPLUS SELECT SHARES type: ORD INC DIV REINV. | | $1,270.07 | |
| 11/30/2007 | Buy | 138.5030 | SWYSX | SCHWAB YIELDPLUS SELECT SHARES type: REINVEST DIVIDEND | $9.1700 | -$1,270.07 | |
| 10/31/2007 | | | SWYSX | SCHWAB YIELDPLUS SELECT SHARES type: ORD INC DIV REINV. | | $1,222.07 | |
| 10/31/2007 | Buy | 129.7310 | SWYSX | SCHWAB YIELDPLUS SELECT SHARES type: REINVEST DIVIDEND | $9.4200 | -$1,222.07 | |
| 09/28/2007 | | | SWYSX | SCHWAB YIELDPLUS SELECT SHARES type: ORD INC DIV REINV. | | $1,090.72 | |
| 09/28/2007 | Buy | 115.5420 | SWYSX | SCHWAB YIELDPLUS SELECT SHARES type: REINVEST DIVIDEND | $9.4400 | -$1,090.72 | |
| 08/31/2007 | | | SWYSX | SCHWAB YIELDPLUS SELECT SHARES type: ORD INC DIV REINV. | | $1,344.37 | |
| 08/31/2007 | Buy | 142.8660 | SWYSX | SCHWAB YIELDPLUS SELECT SHARES type: REINVEST DIVIDEND | $9.4100 | -$1,344.37 | |
| 07/31/2007 | | | SWYSX | SCHWAB YIELDPLUS SELECT SHARES type: ORD INC DIV REINV. | | $1,178.43 | |
| 07/31/2007 | Buy | 122.4980 | SWYSX | SCHWAB YIELDPLUS SELECT SHARES type: REINVEST DIVIDEND | $9.6200 | -$1,178.43 | |
| 06/29/2007 | | | SWYSX | SCHWAB YIELDPLUS SELECT SHARES type: ORD INC DIV REINV. | | $1,395.65 | |
| 06/29/2007 | Buy | 144.3280 | SWYSX | SCHWAB YIELDPLUS SELECT SHARES type: REINVEST DIVIDEND | $9.6700 | -$1,395.65 | |
| 06/05/2007 | Sell | 26,050.0000 | SWYSX | SCHWAB YIELDPLUS SELECT SHARES | $9.6800 | $252,164.00 | |
| 05/31/2007 | | | SWYSX | SCHWAB YIELDPLUS SELECT SHARES type: ORD INC DIV REINV. | | $2,322.73 | |
| 05/31/2007 | Buy | 239.9510 | SWYSX | SCHWAB YIELDPLUS SELECT SHARES type: REINVEST DIVIDEND | $9.6800 | -$2,322.73 | |
| 04/30/2007 | | | SWYSX | SCHWAB YIELDPLUS SELECT SHARES type: ORD INC DIV REINV. | | $2,168.89 | |
| 04/30/2007 | Buy | 223.8260 | SWYSX | SCHWAB YIELDPLUS SELECT SHARES type: REINVEST DIVIDEND | $9.6900 | -$2,168.89 | |
| 03/30/2007 | | | SWYSX | SCHWAB YIELDPLUS SELECT SHARES type: ORD INC DIV REINV. | | $2,356.20 | |
| 03/30/2007 | Buy | 243.1580 | SWYSX | SCHWAB YIELDPLUS SELECT SHARES type: REINVEST DIVIDEND | $9.6900 | -$2,356.20 | |
| 02/28/2007 | | | SWYSX | SCHWAB YIELDPLUS SELECT SHARES type: ORD INC DIV REINV. | | $2,202.50 | |
| 02/28/2007 | | | SWYSX | SCHWAB YIELDPLUS SELECT SHARES type: ORD INC DIV REINV. | | $0.18 | |
| 02/28/2007 | Buy | 0.0190 | SWYSX | SCHWAB YIELDPLUS SELECT SHARES type: REINVEST DIVIDEND | $9.6900 | -$0.18 | |

Case 3:08-cv-01510-WHA    Document 27-2    Filed 05/16/2008    Page 24 of 34

Page 2 of 2

| | | | | | |
|---|---|---|---|---|---|
| 01/31/2007 | | | SWYSX | SCHWAB YIELDPLUS SELECT SHARES<br>type: ORD INC DIV REINV. | | $1,043.34 |
| 01/31/2007 | | | SWYSX | SCHWAB YIELDPLUS SELECT SHARES<br>type: ORD INC DIV REINV. | | $1,164.23 |
| 01/31/2007 | Buy | 107.6720 | SWYSX | SCHWAB YIELDPLUS SELECT SHARES<br>type: REINVEST DIVIDEND | $9.6900 | -$1,043.34 |
| 01/31/2007 | Buy | 120.1480 | SWYSX | SCHWAB YIELDPLUS SELECT SHARES<br>type: REINVEST DIVIDEND | $9.6900 | -$1,164.23 |
| 12/29/2006 | | | SWYSX | SCHWAB YIELDPLUS SELECT SHARES<br>type: ORD INC DIV REINV. | | $1,392.13 |
| 12/29/2006 | Buy | 143.8150 | SWYSX | SCHWAB YIELDPLUS SELECT SHARES<br>type: REINVEST DIVIDEND | $9.6800 | -$1,392.13 |
| 12/13/2006 | Buy | 51,652.8930 | SWYSX | SCHWAB YIELDPLUS SELECT SHARES | $9.6800 | -$500,000.00 |

0006-5926

---

Brokerage Products: Not FDIC Insured • No Bank Guarantee • May Lose Value

Today's Date: 05/09/08

© 2006 Charles Schwab & Co., Inc. All rights reserved. Member SIPC.
Unauthorized access is prohibited. Usage will be monitored.

Agreements | Fees & Commissions | Privacy & Security | USA Patriot Act

Transaction History

*charles* **SCHWAB**

Launch
StreetSmart.com™
*What's this?*
Customer Service | Open an Account

Log Out

The Schwab Se

| At a Glance | Account | Trade | Quotes & Research | Planning & Advice | Investment Products | Ban |

Overview   Balances   Positions   Performance   Gain/Loss   History   Transfers & Payments   Specialty Accounts

Contact: Schwab Active Trader ✉Email

## Account History

Page Help ❓          Export 📊     Printer-Frien

Select Account: **K&R Jt**         Show only this symbol: **SWYSX**       **Account Number:** 9152-

Date Range: **All**    MM / DD / YYYY  to: MM / DD / YYYY    (K&R Jt)

Transactions: **All**                 **Go**      Total Market Value: **$747,0**

View Bala

Order Stat

### SWYSX Transactions For All Dates Up to 24 months. (Beyond 24 months)

| ▼ Date | Action | Quantity | Symbol | Description | Price | |
|---|---|---|---|---|---|---|
| **Specified Transactions** | | | | | | |
| 04/30/2008 | | | SWYSX | SCHWAB YIELDPLUS SELECT SHARES type: ORD INC DIV REINV. | | $ |
| 04/30/2008 | Buy | 114.7170 | SWYSX | SCHWAB YIELDPLUS SELECT SHARES type: REINVEST DIVIDEND  [Details] | $6.58000 | -$ |
| 03/31/2008 | | | SWYSX | SCHWAB YIELDPLUS SELECT SHARES type: ORD INC DIV REINV. | | $ |
| 03/31/2008 | Buy | 133.1260 | SWYSX | SCHWAB YIELDPLUS SELECT SHARES type: REINVEST DIVIDEND  [Details] | $7.17000 | -$ |
| 02/29/2008 | | | SWYSX | SCHWAB YIELDPLUS SELECT SHARES type: ORD INC DIV REINV. | | $ |
| 02/29/2008 | Buy | 127.4110 | SWYSX | SCHWAB YIELDPLUS SELECT SHARES type: REINVEST DIVIDEND  [Details] | $8.79000 | -$ |
| 01/31/2008 | | | SWYSX | SCHWAB YIELDPLUS SELECT SHARES type: ORD INC DIV REINV. | | $ |
| 01/31/2008 | Buy | 125.0250 | SWYSX | SCHWAB YIELDPLUS SELECT SHARES type: REINVEST DIVIDEND  [Details] | $8.93000 | -$ |
| 12/31/2007 | | | SWYSX | SCHWAB YIELDPLUS SELECT SHARES type: ORD INC DIV REINV. | | $ |
| 12/31/2007 | Buy | 128.3590 | SWYSX | SCHWAB YIELDPLUS SELECT SHARES type: REINVEST DIVIDEND  [Details] | $9.07000 | -$ |
| 11/30/2007 | | | SWYSX | SCHWAB YIELDPLUS SELECT SHARES type: ORD INC DIV REINV. | | $ |
| 11/30/2007 | Buy | 136.1940 | SWYSX | SCHWAB YIELDPLUS SELECT SHARES type: REINVEST DIVIDEND  [Details] | $9.17000 | -$ |
| 10/31/2007 | | | SWYSX | SCHWAB YIELDPLUS SELECT SHARES type: ORD INC DIV REINV. | | $ |
| 10/31/2007 | Buy | 127.5710 | SWYSX | SCHWAB YIELDPLUS SELECT SHARES type: REINVEST DIVIDEND  [Details] | $9.42000 | -$ |
| 09/28/2007 | | | SWYSX | SCHWAB YIELDPLUS SELECT SHARES type: ORD INC DIV REINV. | | $ |
| 09/28/2007 | Buy | 113.6190 | SWYSX | SCHWAB YIELDPLUS SELECT SHARES type: REINVEST DIVIDEND  [Details] | $9.44000 | -$ |
| 08/31/2007 | | | SWYSX | SCHWAB YIELDPLUS SELECT SHARES type: ORD INC DIV REINV. | | $ |
| 08/31/2007 | Buy | 140.4850 | SWYSX | SCHWAB YIELDPLUS SELECT SHARES | $9.41000 | -$ |

https://investing.schwab.com/service/Request...                5/0/2008

**Transaction History**

| | | | | | |
|---|---|---|---|---|---|
| 07/31/2007 | | | SWYSX | type: REINVEST DIVIDEND [Details]<br>SCHWAB YIELDPLUS SELECT SHARES<br>type: ORD INC DIV REINV. | $ |
| 07/31/2007 | Buy | 120.4550 | SWYSX | SCHWAB YIELDPLUS SELECT SHARES<br>type: REINVEST DIVIDEND [Details] | $9.62000 | -$ |
| 06/29/2007 | | | SWYSX | SCHWAB YIELDPLUS SELECT SHARES<br>type: ORD INC DIV REINV. | $ |
| 06/29/2007 | Buy | 122.9040 | SWYSX | SCHWAB YIELDPLUS SELECT SHARES<br>type: REINVEST DIVIDEND [Details] | $9.67000 | -$ |
| 05/31/2007 | | | SWYSX | SCHWAB YIELDPLUS SELECT SHARES<br>type: ORD INC DIV REINV. | $ |
| 05/31/2007 | Buy | 119.9770 | SWYSX | SCHWAB YIELDPLUS SELECT SHARES<br>type: REINVEST DIVIDEND [Details] | $9.68000 | -$ |
| 04/30/2007 | | | SWYSX | SCHWAB YIELDPLUS SELECT SHARES<br>type: ORD INC DIV REINV. | $ |
| 04/30/2007 | Buy | 111.9150 | SWYSX | SCHWAB YIELDPLUS SELECT SHARES<br>type: REINVEST DIVIDEND [Details] | $9.69000 | -$ |
| 03/30/2007 | | | SWYSX | SCHWAB YIELDPLUS SELECT SHARES<br>type: ORD INC DIV REINV. | $ |
| 03/30/2007 | Buy | 121.5780 | SWYSX | SCHWAB YIELDPLUS SELECT SHARES<br>type: REINVEST DIVIDEND [Details] | $9.69000 | -$ |
| 02/28/2007 | | | SWYSX | SCHWAB YIELDPLUS SELECT SHARES<br>type: ORD INC DIV REINV. | |
| 02/28/2007 | | | SWYSX | SCHWAB YIELDPLUS SELECT SHARES<br>type: ORD INC DIV REINV. | $ |
| 02/28/2007 | Buy | 113.6490 | SWYSX | SCHWAB YIELDPLUS SELECT SHARES<br>type: REINVEST DIVIDEND [Details] | $9.69000 | -$ |
| 02/28/2007 | Buy | 0.0090 | SWYSX | SCHWAB YIELDPLUS SELECT SHARES<br>type: REINVEST DIVIDEND [Details] | $9.69000 | |
| 01/31/2007 | | | SWYSX | SCHWAB YIELDPLUS SELECT SHARES<br>type: ORD INC DIV REINV. | ( |
| 01/31/2007 | | | SWYSX | SCHWAB YIELDPLUS SELECT SHARES<br>type: ORD INC DIV REINV. | ( |
| 01/31/2007 | Buy | 60.0730 | SWYSX | SCHWAB YIELDPLUS SELECT SHARES<br>type: REINVEST DIVIDEND [Details] | $9.69000 | -( |
| 01/31/2007 | Buy | 53.8330 | SWYSX | SCHWAB YIELDPLUS SELECT SHARES<br>type: REINVEST DIVIDEND [Details] | $9.69000 | -( |
| 12/29/2006 | | | SWYSX | SCHWAB YIELDPLUS SELECT SHARES<br>type: ORD INC DIV REINV. | ( |
| 12/29/2006 | Buy | 71.9070 | SWYSX | SCHWAB YIELDPLUS SELECT SHARES<br>type: REINVEST DIVIDEND [Details] | $9.68000 | -( |
| 12/13/2006 | Buy | 25826.4460 | SWYSX | SCHWAB YIELDPLUS SELECT SHARES<br>[Details] | $9.68000 | -$250 |

(0006-8834)



Customer Service | Site Map | Help

Brokerage Products: Not FDIC Insured • No Bank Guarantee • May Lose Value

©2008 Charles Schwab & Co., Inc. All rights reserved. Member SIPC.
Unauthorized access is prohibited. Usage will be monitored.

Today's Date: 05/09

Agreements | Fees & Commissions | Privacy | SchwabSafe | USA Patriot Act | Asset Protection

## CERTIFICATION OF NAMED PLAINTIFF
## PURSUANT TO FEDERAL SECURITIES LAWS

C-Y Development Co., by James Coffin, V.P.,("Plaintiff") declares as to the claims asserted under the federal securities laws, that:

1.     Plaintiff has reviewed a complaint alleging securities fraud against the Charles Schwab Corporation, *et al.*, and authorized its filing.

2.     Plaintiff did not acquire the security that is the subject of this action at the direction of Plaintiff's counsel in order to participate in this private action or any other litigation under the federal securities laws.

3.     Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4.     Plaintiff has made no transaction(s) during the Class Period in the debt or equity securities that are the subject of this action except those set forth below:

| Acquisitions | Date Acquired | No. Shares Acquired | Acquisition Price Per Share |
|---|---|---|---|
| SWYSX (Schwab YieldPlus Select) | SEE EXHIBIT "A" ATTACHED | | HERETO |
| | AND INCORPORATED HEREIN BY REFERENCE | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

| Sales | Date Sold | No. Shares Sold | Selling Price Per Share |
|---|---|---|---|
| SWYSX (Schwab YieldPlus Select) | none | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

5.      During the three years prior to the date of this Certificate, Plaintiff has not sought to serve or served as a representative party for a class in the following actions filed under the federal securities laws except as detailed below:

6.      Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except

such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 4th day of April, 2008.

C-Y DEVELOPMENT CO.

By _____

James Coffin, V.P.

Please fill out the additional information. Thank you.

Name (print):

Address:

County of Residence:

Daytime Phone No.:          REDACTED

Evening Phone No.:

Email:

- 3 -

# Exhibit "A"

## Acquisitions of SWYSX by C-Y Development Co.

| 11/22/2006 | Buy | 103,305.7850 | SWYSX | SCHWAB YIELDPLUS SELECT SHARES | $9.6800 | -$1,000,000.00 |
|---|---|---|---|---|---|---|
| 11/30/2006 | Buy | 111.2460 | SWYSX | SCHWAB YIELDPLUS SELECT SHARES type: REINVEST DIVIDEND | $9.6800 | -$1,076.86 |
| 12/29/2006 | Buy | 74.7630 | SWYSX | SCHWAB YIELDPLUS SELECT SHARES type: REINVEST DIVIDEND | $9.6800 | -$723.71 |
| 12/29/2006 | Buy | 413.6620 | SWYSX | SCHWAB YIELDPLUS SELECT SHARES type: REINVEST DIVIDEND | $9.6800 | -$4,004.25 |
| 01/31/2007 | Buy | 0.0600 | SWYSX | SCHWAB YIELDPLUS SELECT SHARES type: REINVEST DIVIDEND | $9.6900 | -$0.58 |
| 01/31/2007 | Buy | 456.9530 | SWYSX | SCHWAB YIELDPLUS SELECT SHARES type: REINVEST DIVIDEND | $9.6900 | -$4,427.87 |
| 02/28/2007 | Buy | 456.0010 | SWYSX | SCHWAB YIELDPLUS SELECT SHARES type: REINVEST DIVIDEND | $9.6900 | -$4,418.65 |
| 03/30/2007 | Buy | 487.7800 | SWYSX | SCHWAB YIELDPLUS SELECT SHARES type: REINVEST DIVIDEND | $9.6900 | -$4,726.59 |
| 04/30/2007 | Buy | 449.0060 | SWYSX | SCHWAB YIELDPLUS SELECT SHARES type: REINVEST DIVIDEND | $9.6900 | -$4,350.87 |
| 05/31/2007 | Buy | 481.3540 | SWYSX | SCHWAB YIELDPLUS SELECT SHARES type: REINVEST DIVIDEND | $9.6800 | -$4,659.51 |
| 06/29/2007 | Buy | 493.0920 | SWYSX | SCHWAB YIELDPLUS SELECT SHARES type: REINVEST DIVIDEND | $9.6700 | -$4,768.20 |
| 07/31/2007 | Buy | 483.2770 | SWYSX | SCHWAB YIELDPLUS SELECT SHARES type: REINVEST DIVIDEND | $9.6200 | -$4,649.12 |
| 08/31/2007 | Buy | 563.6380 | SWYSX | SCHWAB YIELDPLUS SELECT SHARES type: REINVEST DIVIDEND | $9.4100 | -$5,303.83 |
| 09/28/2007 | Buy | 455.8410 | SWYSX | SCHWAB YIELDPLUS SELECT SHARES type: REINVEST DIVIDEND | $9.4400 | -$4,303.14 |
| 10/31/2007 | Buy | 511.8160 | SWYSX | SCHWAB YIELDPLUS SELECT SHARES type: REINVEST DIVIDEND | $9.4200 | -$4,821.31 |
| 11/30/2007 | Buy | 546.4220 | SWYSX | SCHWAB YIELDPLUS SELECT SHARES type: REINVEST DIVIDEND | $9.1700 | -$5,010.69 |
| 12/31/2007 | Buy | 506.9590 | SWYSX | SCHWAB YIELDPLUS SELECT SHARES type: REINVEST DIVIDEND | $9.0700 | -$4,598.12 |
| 01/31/2008 | Buy | 501.5940 | SWYSX | SCHWAB YIELDPLUS SELECT SHARES type: REINVEST DIVIDEND | $8.9300 | -$4,479.23 |
| 02/29/2008 | Buy | 511.1750 | SWYSX | SCHWAB YIELDPLUS SELECT SHARES type: REINVEST DIVIDEND | $8.7900 | -$4,493.23 |

CERTIFICATION OF NAMED PLAINTIFF
PURSUANT TO FEDERAL SECURITIES LAWS

Robert Dickson ("Plaintiff") declares as to the claims asserted under the federal securities laws, that:

1.    Plaintiff has reviewed a complaint alleging securities fraud against the Charles Schwab Corporation, *et al.*, and authorized its filing.

2.    Plaintiff did not acquire the security that is the subject of this action at the direction of Plaintiff's counsel in order to participate in this private action or any other litigation under the federal securities laws.

3.    Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4.    Plaintiff has made no transaction(s) during the Class Period in the debt or equity securities that are the subject of this action except those set forth below:

| Acquisitions | Date Acquired | No. Shares Acquired | Acquisition Price Per Share |
|---|---|---|---|
| SWYSX (Schwab YieldPlus Select) | 02/29/2008 | 216.468 | $8.79 |
| | 01/31/2008 | 212.408 | $8.93 |
| | 12/31/2007 | 214.682 | $9.07 |
| | 11/30/2007 | 231.393 | $9.17 |
| | 10/31/2007 | 216.738 | $9.42 |
| | 09/28/2007 | 193.035 | $9.44 |
| | 08/31/2007 | 249.79 | $9.41 |
| | 07/31/2007 | 215.873 | $9.62 |
| | 06/29/2007 | 220.255 | $9.67 |
| | 05/31/2007 | 215.466 | $9.68 |
| | 04/30/2007 | 184.961 | $9.69 |
| | 04/04/2007 | 48,503.612 | $9.69 |



Charles Schwab - Print Original Lot Details

Page 1 of 1

# Gain/Loss

[ Close Window ] [ Print ]

Values as of: 04/02/08 05:19PM EDT

Trades made today will not appear until tomorrow.

Account
IRA (2846-8359 )

**Original Lots for :** SWYSX, SCHWAB YIELDPLUS SELECT SHARES

To view the **Open Lots** for this security, click here.
To view the **Closed Lots** for this security, click here.

| Acquired/Opened | Quantity | Cost Per Share | Cost Basis |
|---|---|---|---|
| 02/29/2008 | 216.468 | $8.79 | $1,902.75 |
| 01/31/2008 | 212.408 | $8.93 | $1,896.80 |
| 12/31/2007 | 214.682 | $9.07 | $1,947.17 |
| 11/30/2007 | 231.393 | $9.17 | $2,121.87 |
| 10/31/2007 | 216.738 | $9.42 | $2,041.67 |
| 09/28/2007 | 193.035 | $9.44 | $1,822.25 |
| 08/31/2007 | 249.79 | $9.41 | $2,350.52 |
| 07/31/2007 | 215.873 | $9.62 | $2,076.70 |
| 06/29/2007 | 220.255 | $9.67 | $2,129.87 |
| 05/31/2007 | 215.466 | $9.68 | $2,085.71 |
| 04/30/2007 | 184.961 | $9.69 | $1,792.27 |
| 04/04/2007 | 48,503.612 | $9.69 | $470,000.00 |

**E** Data for this holding has been edited.

**U** Value cannot be provided because security is un-priced.

**N/A** Not Available.

**SP** The total Unrealized Gain/Loss for this account includes values for Short Positions held in the account. For more information on summary totals when there are Short Positions, please see our FAQ in the Help Section.

**\$** The value reported for this security may not reflect the current market price.

Quotes for mutual fund positions are based on a quote from the most recent closing price available.

Quotes for bond positions may not be reflective of the latest market quote. For all other positions, during market hours, market value is derived from intra-day quotes, unless otherwise indicated. After market hours, market value is derived from the most recent closing price or last trade.

Both original cost and adjusted figures are provided for Cost per Share, Total Cost Basis and Unrealized Gain/Loss columns. Adjusted figures reflect amortization/accretion values, which are provided for all fixed income securities other than variable rate and mortgage-backed securities. When amortization/accretion values are unavailable, adjusted figures will reflect the value "N/A".

For options, the Cost Per Share and Total Cost Basis calculations assume 1 contract equals 100 shares.

Mutual funds use the "average cost" method to calculate cost basis and determine the gain or loss on a sale. With the average cost method, the cost basis of a position you hold in a fund today is determined by averaging the cost of all the previous purchases or acquisitions of that fund in your account. For this reason, you may see more lots displayed on this page than you currently hold in your account.

**Research Missing Cost Basis** ▤The historic cost basis research information is provided by Xcitek, which is not affiliated with Charles Schwab & Co., Inc. ("Schwab") or any of Schwab's affiliates. None of the information constitutes a recommendation by Schwab or a solicitation of an offer to buy or sell any securities. The information is not intended to provide tax, legal or investment advice. Schwab does not guarantee the suitability or potential value of any particular investment or information source. Neither Schwab nor Xcitek guarantees the accuracy, timeliness, completeness or correct sequencing of this information nor warrants any results from use of the information.

(0607-6216)

| Sales | Date Sold | No. Shares Sold | Selling Price Per Share |
|---|---|---|---|
| SWYSX (Schwab YieldPlus Select) | 4/1/08 | 46,924.681 | $6.98 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

5.    During the three years prior to the date of this Certificate, Plaintiff has not sought to serve or served as a representative party for a class in the following actions filed under the federal securities laws except as detailed below: (None)

6.    Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

- 2 -

4/2/08

I declare under penalty of perjury that the foregoing is true and correct.
Executed this 2ᴺᴰ day of April , 2008.

_Robert Dickson_
_____
Robert Dickson

Please fill out the additional information. Thank you.

Name (print):

Address:


County of Residence:

Daytime Phone No.:

Evening Phone No.:

E-mail:

- 3 -

# Exhibit B

**Loss Analysis for Mikelonis**

**Schwab Loss Analysis for Mikelonis**

### PURCHASES

| Name | Date | Shares | Share Price | Amount Paid |
|---|---|---|---|---|
| | 1/23/2007 | 20,639.835 | $9.69 | $200,000.00 |
| | 1/25/2007 | 51,599.587 | $9.69 | $500,000.00 |
| | 1/31/2007 | 45.8569 | $6.74 | $309.08 |
| | 2/28/2007 | 225.6630 | $6.74 | $1,520.97 |
| | 3/30/2007 | 241.3849 | $6.74 | $1,626.93 |
| | 4/30/2007 | 222.1959 | $6.74 | $1,497.60 |
| | 5/31/2007 | 238.2079 | $6.74 | $1,605.52 |
| | 6/29/2007 | 244.0140 | $6.74 | $1,644.65 |
| | 7/31/2007 | 239.1570 | $6.74 | $1,611.92 |
| | 8/31/2007 | 278.9200 | $6.74 | $1,879.92 |
| | 9/28/2007 | 225.5829 | $6.74 | $1,520.43 |
| | 10/31/2007 | 253.2810 | $6.74 | $1,707.11 |
| | 11/30/2007 | 270.4090 | $6.74 | $1,822.55 |
| | 12/31/2007 | 280.8770 | $6.74 | $1,890.91 |
| | 1/31/2008 | 248.2230 | $6.74 | $1,673.02 |
| | 2/29/2008 | 252.9639 | $6.74 | $1,704.98 |
| | 3/31/2008 | 264.3109 | $6.74 | $1,781.46 |
| | 7/11/2007 | 5,186.190 | $9.66 | $50,000.00 |
| Gretchen | 2/1/2008 | 24.075 | $6.79 | $163.47 |
| | 3/24/2008 | 5,175.983 | $8.93 | $46,312.68 |
| | 2/29/2008 | 21.627 | $6.79 | $146.85 |
| | 7/31/2007 | 10.207 | $6.79 | $69.31 |

### SALES

| Date | | Shares | Share Price | Amount Received |
|---|---|---|---|---|
| 4/16/2008 | | 20,639.8350 | $6.7400 | $139,112.4879 |
| 4/17/2008 | | 55,100.6340 | $6.7400 | $371,378.2732 |
| 2/1/2008 | Gretchen | 5,186.1900 | $8.9300 | $46,312.6767 |
| 3/25/2008 | | 1,060.0000 | 7.4700 | $7,918.2000 |
| 4/14/2008 | | 4,156.8800 | 6.7900 | $28,225.2831 |
| 3/27/2008 | | 15.0000 | $7.3400 | $110.1000 |
| 5/7/2008 | | 145.0000 | $6.5600 | $951.2000 |

| | | |
|---|---|---|
| Total Shares Acquired | 86,158.5500 | Total Amount Paid $820,289.3435 |
| Net Shares Acquired | -144.9990 | -$996.14 |

| | | |
|---|---|---|
| Total Shares Sold | 86,303.5490 | Total Amount Sold $594,008.2209 |
| | | Net Amount Paid $226,281.1226 |

**90-Day Mean Share Price after last Day of Class Period**  6.87

**Value of Net Shares Acquired Using 90-Day Mean Share Price**  -$996.14

**Net Loss Based on Net Amount Paid Minus Value of Net Shares Acquired Using 90-Day Mean Share Price**  $227,277.27

Schwab Losses for
Kevin O'Donell

## Schwab Loss Analysis for Kevin M. O'Donnell

### PURCHASES

| Date | Shares | Share Price | Amount Paid |
|---|---|---|---|
| 4/11/2006 | 8,281.5740 | $9.6600 | $80,000.0048 |
| 4/28/2006 | 200.3350 | $9.6700 | $1,937.2395 |
| 4/28/2006 | 21.6440 | $9.6700 | $209.2975 |
| 5/31/2006 | 18.2260 | $9.6600 | $176.0632 |
| 5/31/2006 | 241.1680 | $9.6600 | $2,329.6829 |
| 6/1/2006 | 10,351.9670 | $9.6600 | $100,000.0012 |
| 6/30/2006 | 282.8200 | $9.6600 | $2,732.0412 |
| 6/30/2006 | 46.5580 | $9.6600 | $449.7503 |
| 7/31/2006 | 4.5560 | $9.6600 | $44.0110 |
| 7/31/2006 | 303.9230 | $9.6600 | $2,935.8962 |
| 8/31/2006 | 0.0010 | $9.6700 | $0.0097 |
| 8/31/2006 | 327.2520 | $9.6700 | $3,164.5268 |
| 9/7/2006 | 708.0160 | $9.6700 | $6,846.5147 |
| 9/29/2006 | 335.3410 | $9.6700 | $3,242.7475 |
| 9/29/2006 | 0.9210 | $9.6600 | $8.8969 |
| 10/31/2006 | 319.8850 | $9.6800 | $3,096.4868 |
| 11/30/2006 | 334.2920 | $9.6800 | $3,235.9466 |
| 12/29/2006 | 349.4170 | $9.6800 | $3,382.3566 |
| 1/9/2007 | 103,199.1740 | $9.6900 | $999,999.9961 |
| 1/31/2007 | 334.1830 | $9.6900 | $3,238.2333 |
| 1/31/2007 | 326.9450 | $9.6900 | $3,168.0971 |
| 2/28/2007 | 571.4580 | $9.6900 | $5,537.4280 |
| 2/28/2007 | 207.1440 | $9.6900 | $2,007.2254 |
| 3/30/2007 | 832.8260 | $9.6900 | $8,070.0839 |
| 3/30/2007 | 0.0300 | $9.6900 | $0.2907 |
| 4/3/2007 | 20,639.8350 | $9.6900 | $200,000.0012 |
| 4/30/2007 | 766.6580 | $9.6900 | $7,428.9160 |
| 4/30/2007 | 81.8580 | $9.6900 | $793.2040 |
| 5/31/2007 | 891.9810 | $9.6800 | $8,634.3761 |
| 5/31/2007 | 24.2210 | $9.6800 | $234.4593 |
| 6/29/2007 | 0.0110 | $9.6700 | $0.1064 |
| 6/29/2007 | 938.5380 | $9.6700 | $9,075.6625 |
| 7/31/2007 | 919.8700 | $9.6200 | $8,849.1494 |
| 8/31/2007 | 1,072.8200 | $9.4100 | $10,095.2362 |
| 9/28/2007 | 867.6500 | $9.4400 | $8,190.6160 |
| 10/31/2007 | 974.1870 | $9.4200 | $9,176.8415 |
| 11/20/2007 | 1,040.0570 | $9.1700 | $9,537.3227 |
| 12/31/2007 | 964.9420 | $9.0700 | $8,752.0239 |
| 1/31/2008 | 954.7290 | $8.9300 | $8,525.7300 |
| 2/29/2008 | 972.9680 | $8.7900 | $8,552.3887 |
| 3/31/2008 | 783.8560 | $7.1700 | $5,620.2475 |

**Total Shares Acquired:** 159,496.3920  
**Total Amount Paid:** $1,539,303.8157

### SALES

| Date | Shares | Share Price | Amount Received |
|---|---|---|---|
| 3/20/2008 | 100,000.0000 | $7.7600 | $776,000.0000 |
| 3/24/2008 | 50,000.0000 | $7.5900 | $379,500.0000 |
| 3/25/2008 | 9,496.3920 | $7.4700 | $70,938.0482 |

**Total Shares Sold:** 159,496.3920  
**Total Amount Sold:** $1,226,438.0482

**Net Shares Acquired:** 0.0000  
**Net Amount Paid:** $312,865.7675

1

Schwab Losses for
Kevin O'Donnell

| | A | B | C | D | E | F | G | H | I | J | K | L | M |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Name | | Date | Shares | Share Price | | Amount Paid | | Date | Shares | Share Price | | Amount Received |
| 5 | | | | | | | | | | | | | |
| 52 | | | | | | | | | | | | | |
| 53 | 90-Day Mean Share Price after last Day of Class Period | | | | | 6.87 | | | | | | | |
| 54 | Value of Net Shares Acquired Using 90-Day Mean Share Price | | | | | | $0.00 | | | | | | |
| 55 | | | | | | | | | | | | | |
| 56 | Net Loss Based on Net Amount Paid Minus Value of Net Shares Using 90-Day Mean Share Price | | | | | | | $312,865.77 | | | | | |

2

**Schwab Loss Analysis for John Hill**

### PURCHASES

| Name | Date | Shares | Share Price | Amount Paid |
|---|---|---|---|---|
| | 12/6/2006 | 209,254.4970 | $9.6800 | $2,025,583.5310 |
| IRA | 12/6/2006 | 13,144.9450 | $9.6900 | $127,374.5171 |
| | 1/1/2007 | 13,415.8930 | $9.6900 | $130,000.0032 |

### SALES

| Date | Shares | Share Price | Amount Received |
|---|---|---|---|
| 3/4/2008 | 222,670.3900 | $8.6800 | $1,932,778.9852 |
| 3/7/08 (IRA) | 12,472.9450 | $8.3900 | $104,648.0086 |

| | | |
|---|---|---|
| Total Shares Acquired | 235,815.3350 | Total Amount Paid  $2,282,958.0512 |
| Total Shares Sold | 235,143.3350 | Total Amount Sold  $2,037,426.9938 |

| | |
|---|---|
| Net Shares Acquired | 672.0000 |
| Net Amount Paid | $245,531.0574 |

| | |
|---|---|
| 90-Day Mean Share Price after last Day of Class Period | 6.87 |
| Value of Net Shares Acquired Using 90-Day Mean Share Price | $4,616.64 |
| Net Loss Based on Net Amount Paid Minus Value of Net Shares Acquired Using 90-Day Mean Share Price | $240,914.42 |

1

Loss Analysis for Richard Kimmel

Schwab Loss Analysis for N. Richard Kimmel

| | Name | | PURCHASES | | | | | | SALES | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | Date | Shares | Share Price | | Amount Paid | Date | | Shares | Share Price | Amount Received |
| 6 | NRK | | 11/9/2006 | 129,132.2310 | $9.6800 | | $1,249,999.9961 NRK | 1/9/2006 | | 51,600.0000 | $9.6900 | $500,004.0000 |
| 7 | | | 11/30/2006 | 410.6760 | $9.6800 | | $3,975.3437 | 2/17/2007 | | 104,000.0000 | $9.6900 | $1,007,760.0000 |
| 8 | | | 12/1/2006 | 103,305.7850 | $9.6800 | | $999,999.9988 | 4/25/2007 | | 70,000.0000 | $9.6900 | $678,300.0000 |
| 9 | | | 12/13/2006 | 51,652.8930 | $9.6800 | | $500,000.0042 | 4/26/2007 | | 10,400.0000 | $9.6900 | $100,776.0000 |
| 10 | | | 12/29/2006 | 1,197.4570 | $9.6800 | | $11,591.3838 | 6/5/2007 | | 52,100.0000 | $9.6800 | $504,328.0000 |
| 11 | | | 1/31/2007 | 1,089.5100 | $9.6900 | | $10,557.3519 | 6/14/2007 | | 35,150.0000 | $9.6800 | $340,252.0000 |
| 12 | | | 2/28/2007 | 684.8100 | $9.6900 | | $6,635.8089 RKR | 6/5/2007 | | 26,050.0000 | $9.6800 | $252,164.0000 |
| 13 | | | 3/30/2007 | 613.6800 | $9.6900 | | $5,946.5592 | | | | | |
| 14 | | | 4/30/2007 | 507.8810 | $9.6900 | | $4,921.3669 | | | | | |
| 15 | | | 5/14/2007 | 72,239.4220 | $9.6900 | | $699,999.9992 | | | | | |
| 16 | | | 5/31/2007 | 419.5100 | $9.6900 | | $4,060.8568 | | | | | |
| 17 | | | 6/29/2007 | 288.8790 | $9.6700 | | $2,793.4599 | | | | | |
| 18 | | | 7/31/2007 | 173.3920 | $9.6200 | | $1,668.0310 | | | | | |
| 19 | | | 8/31/2007 | 202.2220 | $9.4100 | | $1,902.9090 | | | | | |
| 20 | | | 9/28/2007 | 163.5480 | $9.4400 | | $1,543.8941 | | | | | |
| 21 | | | 10/31/2007 | 183.6310 | $9.4200 | | $1,729.8040 | | | | | |
| 22 | | | 11/30/2007 | 196.0450 | $9.1700 | | $1,797.7327 | | | | | |
| 23 | | | 12/31/2007 | 181.8890 | $9.0700 | | $1,649.7332 | | | | | |
| 24 | | | 1/31/2008 | 179.9610 | $8.9300 | | $1,607.0517 | | | | | |
| 25 | | | 2/29/2008 | 183.4000 | $8.7900 | | $1,612.0860 | | | | | |
| 26 | | | 3/31/2008 | 191.6280 | $7.1700 | | $1,373.9584 | | | | | |
| 27 | RKR | | 4/30/2008 | 165.1280 | $6.5900 | | $1,088.5422 RKR | | | | | |
| 28 | | | 12/13/2006 | 51,652.8930 | $9.6800 | | $500,000.0042 | | | | | |
| 29 | | | 12/29/2006 | 143.8150 | $9.6800 | | $1,392.1292 | | | | | |
| 30 | | | 1/31/2007 | 120.1480 | $9.6900 | | $1,164.2341 | | | | | |
| 31 | | | 1/31/2007 | 107.6720 | $9.6900 | | $1,043.3417 | | | | | |
| 32 | | | 2/28/2007 | 227.2960 | $9.6900 | | $2,202.4982 | | | | | |
| 33 | | | 2/28/2007 | 0.0190 | $9.6900 | | $0.1841 | | | | | |
| 34 | | | 3/30/2007 | 243.1580 | $9.6900 | | $2,356.2010 | | | | | |
| 35 | | | 4/30/2007 | 223.8280 | $9.6900 | | $2,168.8933 | | | | | |
| 36 | | | 5/31/2007 | 239.9510 | $9.6800 | | $2,322.7257 | | | | | |
| 37 | | | 6/29/2007 | 144.3280 | $9.6700 | | $1,395.6518 | | | | | |
| 38 | | | 7/31/2007 | 122.4980 | $9.6200 | | $1,178.4308 | | | | | |
| 39 | | | 8/31/2007 | 142.8660 | $9.4100 | | $1,344.3691 | | | | | |
| 40 | | | 9/28/2007 | 115.5420 | $9.4400 | | $1,090.7165 | | | | | |
| 41 | | | 10/31/2007 | 129.7310 | $9.4200 | | $1,222.0660 | | | | | |
| 42 | | | 11/30/2007 | 138.5030 | $9.1700 | | $1,270.0725 | | | | | |
| 43 | | | 12/31/2007 | 128.4980 | $9.0700 | | $1,165.4769 | | | | | |
| 44 | | | 1/31/2008 | 127.1400 | $8.9300 | | $1,135.3602 | | | | | |
| 45 | | | 2/29/2008 | 129.5720 | $8.7900 | | $1,138.9379 | | | | | |
| 46 | | | 3/31/2008 | 135.3640 | $7.1700 | | $970.5599 | | | | | |
| 47 | | | 4/30/2008 | 116.6630 | $6.5800 | | $767.6425 | | | | | |
| 48 | K&R | | 12/13/2006 | 25,826.4460 | $9.6800 | | $249,999.9973 | | | | | |
| 49 | | | 12/29/2006 | 71.9070 | $9.6800 | | $696.0598 | | | | | |
| 50 | | | 1/31/2008 | 53.8330 | $9.6900 | | $521.6418 | | | | | |
| 51 | | | 1/31/2008 | 60.0730 | $9.6900 | | $582.1074 | | | | | |
| 52 | | | 2/28/2007 | 0.0090 | $9.6900 | | $0.0872 | | | | | |

1

Loss Analysis for
Richard Kimmel

| | A | B | C | D | E | F | G | H | I | J | K | L | M |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 53 | Name | | Date | Shares | Share Price | | Amount Paid | | Date | Shares | Share Price | | Amount Received |
| 54 | | | 2/28/2007 | 113.6490 | $6.9900 | | $1,101.2588 | | | | | | |
| 55 | | | 3/30/2007 | 121.5780 | $6.9900 | | $1,178.0908 | | | | | | |
| 56 | | | 4/30/2007 | 111.9150 | $6.9900 | | $1,084.4564 | | | | | | |
| 57 | | | 5/31/2007 | 119.9770 | $6.8800 | | $1,161.3774 | | | | | | |
| 58 | | | 6/29/2007 | 122.9040 | $6.6700 | | $1,188.4817 | | | | | | |
| 59 | | | 7/31/2007 | 120.4550 | $6.6200 | | $1,158.7771 | | | | | | |
| 60 | | | 8/31/2007 | 140.4850 | $6.4100 | | $1,321.9639 | | | | | | |
| 61 | | | 9/28/2007 | 113.6190 | $6.4400 | | $1,072.5634 | | | | | | |
| 62 | | | 10/31/2007 | 127.5710 | $6.4200 | | $1,201.7188 | | | | | | |
| 63 | | | 11/30/2007 | 136.1940 | $6.1700 | | $1,248.8990 | | | | | | |
| 64 | | | 12/31/2007 | 126.3590 | $6.0700 | | $1,146.0761 | | | | | | |
| 65 | | | 1/31/2008 | 125.0250 | $5.8300 | | $1,116.4733 | | | | | | |
| 66 | | | 2/29/2008 | 127.4110 | $5.7900 | | $1,119.9427 | | | | | | |
| 67 | | | 3/31/2008 | 133.1260 | $5.7100 | | $954.5194 | | | | | | |
| 68 | | | 4/30/2008 | 114.7170 | $5.5800 | | $754.8379 | | | | | | |
| 69 | | | Total Shares Acquired | 445,620.3140 | Total Amount Paid | | $4,310,392.6903 | Total Shares Sold | | 349,300.0000 | Total Amount Sold | | $3,383,584.0000 |
| 70 | | | | | | | | | | | | | |
| 71 | | | Net Shares Acquired | 96,320.3140 | | | | | | | Net Amount Paid | | $926,808.6903 |
| 72 | | | | | | | | | | | | | |
| 73 | | | 90-Day Mean Share Price after last Day of Class Period | | | 6.87 | | | | | | | |
| 74 | | | Value of Net Shares Acquired Using 90-Day Mean Share Price | | | $661,720.56 | | | | | | | |
| 75 | | | | | | | | | | | | | |
| 76 | | | Net Loss Based on Net Amount Paid Minus 90-Day Value of Net Shares Acquired Using 90-Day Mean Share Price | | | | $210,156.87 | | | | | | |

2

Schwab Loss Analysis for James Coffin

## Schwab Loss Analysis for C-Y Development Co. (James Coffin)

### PURCHASES

| Date | Shares | Share Price | Amount Paid |
|---|---|---|---|
| 11/22/2006 | 103,305.7850 | $9.6800 | $999,999.9998 |
| 11/30/2006 | 111.2460 | $9.6800 | $1,076.8613 |
| 12/29/2006 | 74.7630 | $9.6800 | $723.7058 |
| 12/29/2006 | 413.6620 | $9.6800 | $4,004.2482 |
| 1/31/2007 | 0.0600 | $9.6900 | $0.5814 |
| 1/31/2007 | 456.9530 | $9.6900 | $4,427.8746 |
| 2/28/2007 | 456.0010 | $9.6900 | $4,418.6497 |
| 3/30/2007 | 487.7800 | $9.6900 | $4,726.5882 |
| 4/30/2007 | 449.0060 | $9.6900 | $4,350.8681 |
| 5/31/2007 | 481.3540 | $9.6800 | $4,659.5067 |
| 6/29/2007 | 493.0920 | $9.6700 | $4,768.1996 |
| 7/31/2007 | 483.2770 | $9.6200 | $4,649.1247 |
| 8/31/2007 | 563.6380 | $9.4100 | $5,303.8336 |
| 9/28/2007 | 455.9410 | $9.4400 | $4,303.1390 |
| 10/31/2007 | 511.8160 | $9.4200 | $4,823.3097 |
| 11/30/2007 | 546.4220 | $9.1700 | $5,010.6897 |
| 12/31/2007 | 506.9590 | $9.0700 | $4,598.1181 |
| 1/31/2008 | 501.5940 | $8.9300 | $4,479.2344 |
| 2/29/2008 | 511.1750 | $8.7900 | $4,493.2283 |

| Total Shares Acquired | 110,810.4240 | Total Amount Paid | $1,070,815.7577 |

### SALES

| Date | Shares | Share Price | Amount Received |
|---|---|---|---|

| Total Shares Sold | 0.0000 | Total Amount Sold | $0.0000 |

Net Shares Acquired: 110,810.4240    Net Amount Paid: $1,070,815.7577

90-Day Mean Share Price after last Day of Class Period: 6.87

Value of Net Shares Acquired Using 90-Day Mean Share Price: $761,267.61

Net Loss Based on Net Amount Paid Minus Value of Net Shares Acquired Using 90-Day Mean Share Price: $309,548.14

1

Schwab Loss Analysis for Robert Dickson

| | PURCHASES | | | | | SALES | | | |
|---|---|---|---|---|---|---|---|---|---|
| **Name** | | | | | | | | | |
| **Date** | **Shares** | **Share Price** | **Amount Paid** | | **Date** | **Shares** | **Share Price** | **Amount Received** | |
| 4/4/2007 | 48,503.6120 | $9.6900 | $470,000.0003 | | 4/1/2008 | 46,924.6810 | $6.9800 | $327,534.2734 | |
| 4/30/2007 | 184.9610 | $9.6900 | $1,792.2721 | | | | | | |
| 5/31/2007 | 215.4660 | $6.8800 | $2,085.7109 | | | | | | |
| 6/29/2007 | 220.2550 | $9.6700 | $2,129.8659 | | | | | | |
| 7/31/2007 | 215.8730 | $9.6200 | $2,076.6983 | | | | | | |
| 8/31/2007 | 249.7900 | $9.4100 | $2,350.5239 | | | | | | |
| 9/28/2007 | 193.0350 | $9.4400 | $1,822.2504 | | | | | | |
| 10/31/2007 | 216.7380 | $9.4200 | $2,041.6720 | | | | | | |
| 11/30/2007 | 231.3930 | $9.1700 | $2,121.8738 | | | | | | |
| 12/31/2007 | 214.6820 | $9.0700 | $1,947.1657 | | | | | | |
| 1/31/2008 | 212.4080 | $8.9300 | $1,896.8034 | | | | | | |
| 2/29/2008 | 216.4680 | $8.7900 | $1,902.7537 | | | | | | |
| **Total Shares Acquired** 50,874.6810 | | | Total Amount Paid $492,167.5903 | | **Total Shares Sold** 46,924.6810 | | | Total Amount Sold $327,534.2734 | |

| | | | | | |
|---|---|---|---|---|---|
| Net Shares Acquired | 3,950.0000 | | | Net Amount Paid | $164,633.3170 |
| 90-Day Mean Share Price after last Day of Class Period | | 6.87 | | | |
| Value of Net Shares Acquired Using 90-Day Mean Share Price | | $27,136.50 | | | |
| Net Loss Based on Net Amount Paid Minus Value of Net Shares Acquired Using 90-Day Mean Share Price | | | $137,496.82 | | |

# Exhibit C



Yahoo!   My Yahoo!   Mail     Make Y! your home page                              Search:

 FINANCE     Welcome, **nfquon**     Finance Home - Help
[Sign Out, My Account]

GET QUOTES     **Finance Search**

  

**Press Release**                              Source: Hagens Berman Sobol Shapiro LLP

# Hagens Berman Sobol Shapiro Files Proposed Class-Action Lawsuit On Behalf of Investors in the Schwab YieldPlus Funds

Tuesday March 18, 11:12 pm ET

SEATTLE, March 18 /PRNewswire/ -- Hagens Berman Sobol Shapiro LLP ("Hagens Berman") (http://www.hbsslaw.com/schw) today announced it filed a proposed class-action lawsuit in the United States District Court for the Northern District of California on behalf of those who purchased Schwab YieldPlus Funds Investor Shares (Nasdaq: SWYSX - News) or Schwab YieldPlus Funds Select Shares (Nasdaq: SWYPX - News) from Charles Schwab Corporation ("Charles Schwab" or the "Company") (Nasdaq: SCHW - News) from March 17, 2005 to March 18, 2008 (the "Class Period").

ADVERTISEMENT

Canon
imageANYWARE

LEARN MORE

If you wish to serve as lead plaintiff, you must move the Court no later than May 16, 2008. If you wish to consider joining this action as lead plaintiff, discuss this action or have any questions concerning this notice or your rights or interests, please contact plaintiff's counsel, Reed Kathrein of Hagens Berman at 510/725-3000 or via e-mail info@hbsslaw.com. You can view a copy of the complaint as filed or join this class action online at http://www.hbsslaw.com/schw. Any member of the purported class may move the Court to serve as lead plaintiff through counsel of their choice, or may choose to do nothing and remain an absent class member. Although your ability to share in any recovery is not affected by the decision whether or not to seek appointment as a lead plaintiff, lead plaintiffs make important decisions which could affect the overall recovery for class members, including decisions concerning settlement. The securities laws require the Court to consider the class member(s) with the largest financial interest as presumptively the most adequate lead plaintiff(s).

The complaint claims Charles Schwab Corporation headquartered in San Francisco, CA, the funds' underwriter, investment advisers and officers and directors issued untrue statements regarding the lack of diversification of these funds and the extent of investments assigned to sub-prime mortgage backed and related securities. The complaint alleges the funds registration statements and prospectuses contained untrue statements of material facts, and omitted important information regarding the funds' investments, ultimately misleading investors.

On Nov. 15, 2004, the Company began offering the Schwab YieldPlus investment funds through a registration statement and prospectus. The YieldPlus funds are advertised by the defendants as 'a safe alternative to money market funds that preserve principal while being designed with your income needs in mind'. Throughout the Class Period the Company claimed the funds were investments in a large, well-diversified portfolio, a seasoned team of taxable bond portfolio managers actively managed the funds, and that investment in Schwab YieldPlus would return higher yields on cash with only marginally higher risk, a smart alternative. Since July of 2007, the share price for the funds began lowering, for a total loss of 18 percent. Today the funds stand at an all-time low of $7.96, down more than 11 percent from Jan. 1, 2008.

**Related**



The lawsuit claims the funds are not well diversified, instead concentrated in a single risky industry with more than 50 percent of the funds assets invested in the mortgage industry. The lawsuit seeks remedies under the 1933 Act on behalf of all fund purchasers during the Class Period.

Hagens Berman Sobol Shapiro, a law firm with offices in Seattle, San Francisco, Los Angeles, Boston, Chicago and Phoenix, is active in major litigations pending in federal and state courts throughout the United States and has taken a leading role in many important actions on behalf of defrauded investors, consumers, and companies, as well as victims of human rights violations. The Hagens Berman Web site (http://www.hbsslaw.com) has more information about the firm.

```
Contact:  Hagens Berman Sobol Shapiro LLP
          Reed R. Kathrein
          510/725-3000
          info@hbsslaw.com
          www.hbsslaw.com
```

Source: Hagens Berman Sobol Shapiro LLP

✉ Email Story          🔔 Set News Alert          🖨 Print Story

[                    ]    Search News

Sponsor Results

Free Forex Essentials Kit
Free Intro Guide to Forex. Free Practice Account. Try Risk-Free.
www.GFTforex.com

Countrywide® Home Loans
No Closing Cost Refi. No Points. No Credit Report or Processing Fees.
www.Countrywide.com

foreign currency exchange trading
Easy to Learn & 100% Reliable. Download Now & Make $4000 Tomorrow.
www.theProfitMultiplier.com

(What's This?)

Copyright © 2008 Yahoo! Inc. All rights reserved. Privacy Policy - Terms of Service - Copyright Policy - Send Feedback
Copyright © 2008 PR Newswire. All rights reserved. Republication or redistribution of PRNewswire content is expressly prohibited
without the prior written consent of PRNewswire. PRNewswire shall not be liable for any errors or delays in the content, or for any
actions taken in reliance thereon.

# Exhibit D



ONE MAIN STREET
4TH FLOOR
CAMBRIDGE, MA 02142
TELEPHONE (617) 482-3700
FACSIMILE (617) 482-3003

700 SOUTH FLOWER STREET
SUITE 2940
LOS ANGELES, CA 90017
TELEPHONE (213) 330-7150
FACSIMILE (213) 330-7152

820 NORTH BOULEVARD
SUITE B
OAK PARK, IL 60302
TELEPHONE (708) 776-5600
FACSIMILE (708) 776-5601

2425 EAST CAMELBACK ROAD
SUITE 650
PHOENIX, AZ 85016
TELEPHONE (602) 840-5900
FACSIMILE (602) 840-3012

715 HEARST AVENUE
SUITE 202
BERKELEY, CA 94710
TELEPHONE (510) 725-3000
FACSIMILE (510) 725-3001

1301 FIFTH AVENUE
SUITE 2900
SEATTLE, WA 98101
TELEPHONE (206) 623-7292
FACSIMILE (206) 623-0594

WWW.HBSSLAW.COM

**Table of Contents**

The Firm                                                                    1
Our Major Successes                                                          3
Leading Edge Cases                                                           4
The Practice                                                                 7
      An Overview of Current Litigation        7
      Special Experience with Pharmaceutical Industry Litigation    11
Hagens Berman vs. Big Tobacco                                               13
A Short Historical Perspective of Major Litigation
Handled by Hagens Berman Sobol Shapiro                                      15
Securities Litigation                                                       17
Environmental Litigation                                                    20
Partners
      Steve W. Berman                          22
      Jeniphr A.E. Breckenridge                23
      Robert B. Carey                          23
      Elizabeth A. Fegan                       24
      Erin K. Flory                            25
      Reed R. Kathrein                         25
      Sean R. Matt                             26
      David P. Moody                           26
      David S. Nalven                          27
      Edward Notargiacomo                      27
      Christopher A. O'Hara                    28
      George W. Sampson                        28
      Anthony D. Shapiro                       29
      Thomas M. Sobol                          29
      Craig R. Spiegel                         30
      Jeffrey T. Sprung                        31
      Andrew M. Volk                           31
      Tyler S. Weaver                          32
Of Counsel
      Jeffrey D. Friedman                      33
      Nicholas Styant-Browne                   33
Associates
      Leonard W. Aragon                        34
      Ivy D. Arai                              34
      Lauren Guth Barnes                       35
      Peter E. Borkon                          35
      Elaine T. Byszewski                      36
      Kimberly Dougherty                       36
      Steve Fimmel                             37
      Debra A. Gaw                             37
      Lee M. Gordon                            38
      Lisa M. Hasselman                        38
      Daniel Kurowski                          39
      Jeffrey A. Lang                          39
      Robert F. Lopez                          39
      Barbara A. Mahoney                       40
      Timothy P. Mahoney                       40
      Gregory H. Matthews                      41
      Martin D. McLean                         41
      Shana E. Scarlett                        41
      Ronnie Seidel Spiegel                    42

HAGENS BERMAN SOBOL SHAPIRO LLP

Shayne C. Stevenson                                      42
Andrew St. John                                          43
Genessa A. Stout                                         43
**Amy M. Wilkins**                                       **44**
**References**                                           **45**
**A Perspective on Our Performance from the Bench**      **46**

# The Firm

Based in Seattle, Washington, **Hagens Berman Sobol Shapiro LLP** (HBSS) was founded in 1993 with one purpose - to pursue the type of law that most interested the founders. This involved representing plaintiffs in class actions and multi-party, large-scale complex litigation and becoming engaged in cases that had the potential for having a positive impact on protecting the rights of investors, consumers, workers, and the environment.

Since then, the firm has stayed true to that purpose and become one of the nation's leading firms in these fields, earning an international reputation for excellence and innovation.

**Our Focus**

Our main focus is to represent plaintiffs in securities, investment fraud, product liability, tort, antitrust, consumer fraud, employment, environmental, and ERISA cases. In doing so, our firm has become particularly skilled at managing multi-state and nationwide class actions through an organized, coordinated approach that implements an efficient and aggressive prosecutorial strategy in order to place maximum pressure on the defendant. In the last two years the firm has been rated by the National Law Journal in the top ten of plaintiffs' firms in the country.

**We Win**

Lawyers in the field of mass tort and class action litigation are often accused of acting in their own interests or settling cheaply. HBSS believes that our excellence stems from a commitment to try each case and obtain maximum recovery for our clients. Our opponents know this and often seek to thwart HBSS' appointment as a lead counsel.

Winning is especially important to HBSS because our compensation depends so much on our performance. We devote approximately 95 percent of our time to litigation under fee agreements that tie our pay to the results we achieve, not to the hours we bill. We have developed innovative contingent and flat fee arrangements with many clients, including partial contingent fees that reduce our hourly rates for a stake in the outcome. We have even used reverse contingent fee arrangements for defending cases where the amount we saved our clients determined our compensation.

Working at our own risk and expense encourages efficient work habits. That efficient approach carries over to our hourly business. The quality of our service, the lack of duplication of effort, access to your lawyers, and our ability to gear up quickly to handle your case all make selecting HBSS a cost-effective decision.

**Our Offices**

As we have flourished over the years, we have increased our national presence through a network of branch offices in Boston, Phoenix, Los Angeles, Chicago and San Francisco.

Founded in 1995, our Phoenix office has driven important litigation and has a strong legal presence in Arizona and the southwest. Shortly thereafter in 1996, we founded the Los Angeles office, which manages our significant case load in California.

In June 2002, our firm opened an office in the Boston area. Now referred to as the Cambridge office, this office leads our drug litigation efforts, challenging the prices of dozens of prescription drugs, and claiming that manufacturers artificially drove up drug prices through numerous anti-competitive practices.

In 2004, in another step to become the nation's premier law firm in class-action and large-scale litigation, we opened a Chicago branch. The firm first created a presence among Illinois' legal and political scene

with the landmark litigation against the tobacco industry, in which Steve Berman served as special assistant attorney general for the state.

In another large step towards the firm's continued growth and strong national presence, a San Francisco branch was opened in 2007.  A great deal of consumer, antitrust and securities work is in the San Francisco courts and this office allows HBSS to become a major presence there.

**A Nationwide Reach**

The firm expanded its practice to include representing governmental entities, including actions against the tobacco industry and the pharmaceutical industry. In the groundbreaking state tobacco litigation, the firm represented the states of Alaska, Arizona, Idaho, Illinois, Indiana, Montana, Nevada, New York, Ohio, Oregon, Rhode Island, Vermont, and Washington as special assistant attorneys general in their law enforcement actions against the tobacco industry. Our firm has also served as court-appointed lead class counsel in state and federal litigation in states throughout the country, with heavy caseloads in Arizona, California, Idaho, Illinois, New York, and Washington.

Hagens Berman Sobol Shapiro's lawyers have played leading and major roles in cases that have resulted in total recoveries of more than $206 billion.

# Our Major Successes

### STATE OF WASHINGTON, ET AL. V. PHILIP MORRIS, ET AL.

HBSS represented 13 states in the largest recovery in litigation history ($206 billion recovery).

### IN RE VISA-MASTERCARD ANTITRUST LITIGATION

HBSS served as co-lead counsel in the largest antitrust settlement in history – valued at $27 billion.

### ENRON ERISA LITIGATION

HBSS is co-lead counsel in the ERISA litigation that has recovered in excess of $250 million, the largest ERISA settlement in history.

### TENET HEALTHCARE LITIGATION

The firm obtained a settlement – the first of its kind – on behalf of a class of 2 million uninsured patients in 19 different states.  Based on novel theories upheld by the court, HBSS helped create a first of its kind settlement recently featured in the National Law Journal.

### DRAM ANTITRUST LITIGATION

HBSS was co-lead counsel and the case settled for $345 million resulting in a recovery for purchasers of DRAM.

### LUPRON SETTLEMENT

A $150 million settlement on behalf of patients using Lupron for prostate cancer.

### RELAFEN SETTLEMENT

A $75 million settlement in favor of plaintiffs who purchased Relafen.

### HUNGARIAN GOLD TRAIN SETTLEMENT

HBSS filed a class-action suit against the United States on behalf of Hungarian Holocaust survivors.  The suit claimed the plaintiffs' valuable personal property was loaded on a train by the Hungarian Nazi government during the waning days of WWII.  The United States Army later seized the train and its contents.  The suit contends that the property was never returned to its owners or heirs, and was instead unlawfully appropriated by the U.S.

The settlement in the case of *Rosner, et al. v. United States* creates a $25.5 million settlement fund, and provides for a statement by the United States government acknowledging the events surrounding the Gold Train property.  Because of the passage of time, lost documentation, and lack of an inventory, there is limited information about the specific items that were on the Gold Train and taken into U.S. custody in 1945.  Thus it is very hard to fairly assess and compensate individual class members based on their personal losses.  Therefore, the U.S. government and representatives for the class have agreed that a minimum of $21 million in the settlement fund be used to augment existing social welfare programs for Hungarian victims of Nazi persecution.  The settlement agreement also allocates $500,000 to fund and create an archival collection of information and artifacts for the benefit of the class and other educational purposes.

# Leading Edge Cases

**CB RICHARD ELLIS SEXUAL HARASSMENT LITIGATION.  Hagens Berman Sobol Shapiro** filed a class-action lawsuit against CB Richard Ellis, Inc. on behalf of a group of female employees.  Filed in U.S. District Court in Illinois, the suit claims that the company has perpetuated a climate of severe sexual harassment against its female employees.  According to the complaint, CB Richard Ellis discriminates against female employees by subjecting them to a hostile, intimidating and offensive work environment, which has resulted in emotional distress and other physical and economic injuries to the class.

HBSS negotiated an innovative and unprecedented settlement of a nationwide class action alleging sexual harassment over an eight-year period on behalf of 16,000 current and former female employees of a commercial property brokerage firm.  In addition to requiring changes to human resources policies and procedures, the settlement affords class members the opportunity to participate in a stream-lined claims process that provides the potential for individual awards up to $150,000 per class member.  The "process-based" settlement, adjudicated by an independent and neutral Special Master, will award a range of damages to claimants who can demonstrate to the satisfaction of the Special Master that they were subjected to unlawful harassment.  Claims are subject to certain monetary caps depending on a claimant's elections regarding the extent of the process in which they wish to participate and the level of confidentiality their claim will be afforded.  Additionally, under the terms of the settlement agreement, the company agreed to several human resources measures.  These activities include amending or tightening existing harassment policies, implementing enhanced training for all employees, increasing supervisor accountability to address sexually inappropriate conduct in the workplace, enhancing record-keeping practices, and conducting two annual reviews of settlement compliance by a court appointed monitor.

**DRAM MANUFACTURERS LITIGATION.  Hagens Berman Sobol Shapiro** has filed a suit on behalf of purchasers of DRAM (Dynamic Random Access Memory) from Micron Technology, Crucial Technologies, Infineon Technologies, Hynix Semiconductor Inc. and Samsung Electronics, claiming the companies secretly agreed to reduce supply of DRAM in order to artificially raise prices.

According to the suit, the companies conduct caused Michael Dell, founder and CEO of Dell Computers, to state during a news conference, "I think we saw cartel-like behavior by a couple of DRAM suppliers."

HBSS won an appointment as co-lead counsel in a contested hearing and the case settled for $345 million.

**PFIZER LITIGATION (CELEBREX).**  Hagens Berman Sobol Shapiro has filed a lawsuit on behalf of consumers who purchased the drug Celebrex®.  The suit claims that the drug's distributor, Pfizer, Inc., launched an aggressive and misleading marketing campaign to promote Celebrex, while failing to warn consumers that the drug poses risks of blood clots, heart attack, stroke, and other cardiovascular problems.

According to the complaint, Celebrex ads overstate its safety by saying that it provides effective pain relief without the side effects inherent to similar drugs.  The misleading ads drove the demand and price of Celebrex beyond what it would have been, had Pfizer truthfully disclosed the drug's risks, the suit states.

Pfizer's misrepresentation of Celebrex is apparent in the process it used to gain approval by the FDA, the complaint alleges.  The suit claims that despite Pfizer's prior knowledge that Celebrex posed serious heart risks, it chose to downplay these risks and push the drug on claims that it improves gastrointestinal safety.  To support these claims, in 1998 Pfizer funded a clinical CLASS trial to show that Celebrex has greater gastrointestinal safety than traditional pain relievers such as aspirin and ibuprofen.  The suit also contends that in Pfizer's plan to gain swift FDA approval, it did not conduct any significant tests on cardiovascular safety, or publish any data on cardiovascular events from the CLASS trial.  Therefore, having only

reviewed the results of the gastrointestinal safety tests, the FDA approved Celebrex for the relief of osteoarthritis in December 1998, the suit states.

Once it gained approval, Pfizer's advertising campaign proved very profitable, the suit claims. Though the company spent more than $400 million on direct-to-consumer advertising for Celebrex, sales have yielded billions of dollars, including $2.3 billion for the first three quarters of 2004, the lawsuit states.

**TENET HEALTHCARE.** HBSS pioneered this suit with claims against Tenet Healthcare Corporation. Originally filed in December 2002, the lawsuit claimed that patients not covered by insurance plans were charged excessive prices at 114 hospitals owned and operated by Tenet subsidiaries in 16 different states.

The settlement class includes any uninsured patient who received medically necessary services at any of its hospitals between June 15, 1999 and December 31, 2004, and paid for services based on the hospital's gross charges. Under the terms of the proposed settlement, Tenet has agreed to refund amounts paid in excess of certain thresholds.

**INTEL ANTITRUST LITIGATION.** HBSS has filed the nation's first proposed class-action lawsuit against Intel on behalf of consumers, claiming the microprocessor giant has unlawfully maintained a monopoly by engaging in a relentless, worldwide campaign to coerce customers to refrain from dealing with AMD, another microprocessor manufacturer.

According to the suit, consumers ultimately foot this bill, in the form of inflated PC prices and the loss of freedom to purchase computer products that best fit their needs.

The proposed class action includes all United States residents who purchased a microprocessor in the United States indirectly from Intel from June 29, 2001 through the present.

HBSS is one of the co-lead counsel.

**STARBUCKS ANTITRUST LITIGATION.** HBSS is litigating an antitrust claim against Starbucks Corporation for its alleged monopolization of the retail coffee market in Class-A buildings in downtown Bellevue and Seattle. The plaintiff is a small coffee retailer who has attempted to enter the market but has allegedly been prevented from doing so by Starbucks' dominant presence and use of exclusive-dealing arrangements that are designed to prevent competitors from entering the market.

**CAREMARK LITIGATION.** The class action lawsuit alleges that Caremark Rx. Inc., concealed revenues derived from drug manufacturers to avoid paying commissions to its marketing consultants. Caremark and its predecessor companies provide pharmaceutical and formulary services to corporate health plans, discount card programs, managed care organizations, insurance companies, labor unions, and governmental agencies. Caremark then contracts with drug manufacturers to sell the manufacturers' drugs to its clients. In return, Caremark receives rebates, fees, and other revenue streams from the manufacturers

HBSS represented a marketing consultant who alleged that Caremark failed to honor its contractual obligations to pay its marketing consultants a percentage of total revenues or a set rate for each drug purchased. The complaint further alleged that Caremark paid commissions based on partial revenues and deliberately hid certain revenues to avoid paying proper commissions. The case settled amicable in September 2007.

**INSURANCE LITIGATION.** HBSS has pioneered theories to ensure that in first and third party contexts consumers and insureds always receive the treatment and benefits to which they are entitled. We have certified several cases, including those where we secured expanded coverage owed and therefore more benefits because of a statutory violation, where we seek to recover for underpayments of benefits based on software programs, where we seek a return if uninsured/underinsured premiums received because if misleading tactics of the insurer. In addition, on individual cases, we have taken insurers to

trial and recovered millions of dollars for our clients by way of verdict for bad faith, punitive damages, wage losses, and medical and rehabilitative care.

**SEXUAL ABUSE LITIGATION.** HBSS has represented a wide spectrum of individuals who have been the victims of sexual abuse, including children and developmentally disabled adults. We treat each case individually, with compassion and attention to detail and have the expertise, resources and track record to stand up to the toughest opponents. In the area of sexual abuse, our attorneys have obtained record-breaking verdicts, including the largest personal injury verdict ever upheld by an appellate court in the State of Washington.

**NURSING HOME NEGLIGENCE.** Nursing home negligence is a growing problem throughout the nation. As our population ages, reports of elder abuse and nursing home negligence continue to rise. Today, elder abuse is one of the most rapidly escalating social problems in our society. HBSS is uniquely qualified to represent the victims of elder abuse and nursing home negligence. Our attorneys have secured record-breaking settlements in this area of the law and are committed to holding nursing homes accountable.

**SOCIAL WORK NEGLIGENCE.** Social workers play a critical role in the daily lives of our state's most vulnerable citizens. Social workers, assigned to protect children, developmentally disabled and elderly adults are responsible for critical aspects in the lives of tens of thousands of citizens who are unable to protect themselves.

Many social workers do a fine job. Tragically, many do not. When a social worker fails to monitor and protect his/her vulnerable client, the results are often catastrophic. All too often, the failure to protect a child or disabled citizen leads to injury or sexual victimization by predators.

With over $40 million in recoveries on behalf of vulnerable citizens who were neglected by social workers, the Hagens Berman Sobol Shapiro Personal Injury Group is the most experienced, successful and knowledgeable group of attorneys in this dynamic area of the law.

**CLEAR CHANNEL ANTITRUST LITIGATION.** HBSS obtained class certification in five regional test cases on behalf of purchasers of tickets to live rock concerts promoted by Clear Channel Communications Inc. or its successor Live Nation. Prosecuting 22 regional cases filed nationwide, HBSS is leading the fight against the nation's largest media and entertainment companies, which used their market dominance to illegally inflate ticket prices to live rock concerts across the country. The lawsuits assert that Clear Channel used anticompetitive, monopolistic practices to coerce artists into using the company's promotional services. The suits allege that Clear Channel's unlawful leveraging of its economic strength in the FM radio business obligates artists who would otherwise turn to other concert promoters to use Clear Channel's promotion services.

# The Practice

## AN OVERVIEW OF CURRENT LITIGATION[*]

**ANTITRUST LITIGATION. Hagens Berman Sobol Shapiro** works to keep marketplaces free of price fixing and collusion, protecting the availability of high quality, low priced goods.  The firm's antitrust practice includes nationally certified class actions against manufacturers of disposable contact lenses and a high-profile case in which the Justice Department has commenced parallel proceedings challenging the charges imposed by **Visa** and **MasterCard** in connection with use of the debit card.

**Microsoft** honored the firm by selecting **Hagens Berman** to represent the company in antitrust litigation. The firm served as national counsel in more than 100 class actions currently faced by the company.

In another major antitrust action the firm was named lead trial counsel in the case of **Information Resources, Inc. v. A.C. Nielsen** and the case was settled thereafter

Other major antitrust cases include **DRAM**, **Intel**, **SRAM**, **Flash Memory** and **Korean Air**.

**CIVIL RIGHTS. Hagens Berman Sobol Shapiro** actively seeks out complex civil rights cases, taking on the role of advocate for a variety of individuals and organizations.  The firm vigilantly keeps abreast of new state and national legislation that allows it to better represent its clients, including diverse communities such as World War II prisoners of war and conscripted civilians.

**Hagens Berman Sobol Shapiro** led a team of lawyers in the **Hungarian Gold Train** case. The firm's involvement follows from its representation of former forced and enslaved laborers for German companies in the Nazi Slave Labor Litigation.

In conjunction with the Trial Lawyers for Public Justice, the firm recently won a settlement from city officials after filing a class action claiming violation of the First and Fourth Amendments. Tens of thousands of Seattle citizens became targets during their peaceful protest of the WTO convention on December 1, 1999.  After Seattle officials banned any form of peaceful protest, Seattle police attacked anyone found in the designated "no protest" zones with rubber bullets and tear gas, arresting and incarcerating city residents for three to four days.  A jury returned a verdict in favor of plaintiffs.

Riot Police Douse Peaceful Protesters with Pepper Spray

Riot Police Confront Protestors on Downtown Seattle Streets




---

[*] In alphabetical order.



**CONSUMER LITIGATION**. Using large-scale litigation to pressure defendants who defraud or take advantage of customers, **Hagens Berman Sobol Shapiro** pursues opportunities to confront deceptive advertising practices, financing and insurance scams, and redlining practices, among other consumer fraud techniques. Consumer litigation remains one of the firm's largest practice areas, with attorneys representing millions of consumers in numerous actions.

**DRUG LITIGATION**. The firm actively engages in litigation that improves the quality of health products and medical systems, and confronts unscrupulous medical distributors and producers of products such as pharmaceutical drugs, herbal supplements and beauty products. **Hagens Berman Sobol Shapiro** frequently partners with consumer interest and senior organizations to challenge false advertising, pricing schemes, and other drug fraud activities.

Recent successes include reaching a settlement on behalf of all diet drug users in Montana and exerting landmark pressure on **Abbott Laboratories** causing them to send a letter warning laboratories about the risks of false positives in their tests for hCG. **Hagens Berman Sobol Shapiro** represents several plaintiffs in important litigation against **Abbott** after false positives erroneously diagnosed plaintiffs with cancer leading to unnecessary treatment including, in some cases, hysterectomies. In 2003, the firm settled a case against **Rexall** representing thousands of women who purchased their cellulite-fighting product "Cellasene." The plaintiffs alleged that the product didn't work, and **Hagens Berman Sobol Shapiro** filed the first case in the nation challenging Cellasene marketing. The FTC recently filed a similar action against Rexall.



Washington State Ferry Chinook

**ENVIRONMENTAL LITIGATION**. Believing that protecting and repairing our ecosystem from irresponsible use is some of the most rewarding work a law firm can do, the firm frequently represents homeowners and landowners injured by environmental abuses. The firm has handled a variety of landmark environmental litigation cases in the Northwest and internationally, using relationships with top-notch environmental experts to develop compelling arguments.

In a recent high-profile case, the firm successfully pursued a class action on the adverse environmental impacts of fast ferry service in Washington state. The settlement brought relief to the class members and slowed ferry vessels when traveling in sensitive areas. In other litigation, the firm represented plaintiffs in a case against **Kerr-McGee,** on behalf of thousands of persons exposed to radioactive material in a residential area in West Chicago, Illinois.

The firm's Arizona office represented the **Sierra Club** in a case challenging the U.S. Forest Service's approval of a commercial shopping center on the edge of the Grand Canyon. The District Court granted the firm's request to enjoin development of the shopping mall, protecting the Grand Canyon from overdevelopment.

**ERISA LITIGATION**. The federal Employee Retirement Income Security Act (ERISA) spells out the fiduciary duties that plan trustees owe to participants and beneficiaries in retirement programs such as stock options or 401(k) plans, along with guidelines on disability, medical insurance, and severance pay.

**Hagens Berman Sobol Shapiro** specializes in recovering pension and retirement funds lost due to imprudent direction by plan directors, as well as safeguarding the rights of plan participants. Courts have recognized the firm's aptitude in handling large ERISA cases, most recently appointing the firm co-lead counsel in the **Enron** employee litigation. The firm is also litigating ERISA cases on behalf of employees of IPALCO and Montana Power.

The firm pioneered the discovery of fraud in discounts to employee health plans, representing thousands of **Blue Cross** health insurance plan participants in 10 states who allege that the insurer overcharges participants, obtaining discounts from hospitals but not passing that savings along when calculating co-payments.

The firm's discovery led to a Congressional inquiry concerning the company's billing practices. **Hagens Berman Sobol Shapiro** also represents plaintiffs in a proposed class action against **Regence**, breaking new ground in the coverage of contraceptives by health insurance plans.

**INSTITUTIONAL INVESTOR LITIGATION.** **Hagens Berman Sobol Shapiro** provides specialized securities litigation services to public, private and Taft-Hartley pension funds, offering its proprietary and unparalleled asset protection and recovery services to both foreign and domestic institutions. By giving clients the ability to identify, investigate and react to potential wrongdoing by companies in which they invest, the firm enables them to be proactive, not merely reactive.

Recent class actions led by **Hagens Berman Sobol Shapiro** obtained significant settlements. In the **Morrison Knudsen** case, the firm secured a settlement of approximately 60 percent of the largest estimates of possible losses for class members, while in the **Oppenheimer Delta Partners Litigation** the class was awarded settlements of approximately 80 percent of possible losses. In the **Midisoft** case, **Hagens Berman Sobol Shapiro** obtained more than 50 percent of total damages. Numerous other recent cases such as **Waste Management** and **Cendant** have obtained hundreds of millions of dollars in settlements and recovered a large percentage of damages for injured shareholders.

**INTELLECTUAL PROPERTY LITIGATION.** **Hagens Berman Sobol Shapiro** has handled numerous cases involving various aspects of intellectual property (IP). Acting on inquiries from individuals and corporations, HBSS has conducted several investigations into the prosecution and defense of IP rights. IP law is designed to protect the property created by intellect, such as designs used in commerce, including inventions, patents, copyright, and trade dress. IP creations also include artistic works and literary works. In recent years, with the development of new electronic technology, advanced and specialized computer programs and Internet commerce, the definition of IP and how to protect the rights of such property has created very complicated and complex business issues. HBSS has successfully prosecuted and defended individuals and corporations in the area of intellectual property.

**PRODUCT LIABILITY LITIGATION.** When a product fails to meet accepted or advertised standards, the results can be hazardous or even deadly. In such cases, consumers deserve a right to redress. **Hagens Berman Sobol Shapiro's** product liability practice represents consumers in variety of product cases including automobile defects, home equipment and defective software.

Firm successes include a settlement involving **Louisiana-Pacific Siding** in which more than 130,000 claims have been paid exceeding $500 million and a $925 million settlement in a polybutylene piping case. **Hagens Berman Sobol Shapiro** also represents plaintiffs alleging defects in trunk release mechanisms in a case surrounding the death of four children who died locked in the trunk of a car. The firm continues to pursue Ford and Nissan on behalf of consumers with defective accelerators.

**SECURITIES LITIGATION.** A cornerstone of the firm's practice, **Hagens Berman Sobol Shapiro** contests securities fraud in courts across the nation. To prosecute these complex cases, the firm uses highly experienced experts in a variety of fields as an integral part of the prosecution team, expanding the group's expertise in sophisticated financial and accounting issues.

In a high-profile case, **Hagens Berman Sobol Shapiro** pursued **Boeing** after a tremendous stock loss resulted from the company allegedly conspiring to conceal production problems and bolster share prices through the conclusion of a stock-swap purchase of **McDonnell Douglas**. After several years of intense discovery and litigation, **Boeing** eventually agreed to a settlement that provided more than $92 million to recoup investors for their losses.

The firm has also acted as co-lead counsel and plaintiffs' counsel representing investors in class actions for securities violations against a variety of corporations including **WPPSS**, **Boston Chicken**, **Oppenheimer**, **PriceCostco**, **MK Rail**, **Bonneville Pacific**, **Mercer International**, and **Omega Environmental**.

**PERSONAL INJURY LITIGATION.** Committed to justice and appropriate compensation in issues of personal injury and wrongful death, the firm assists clients in a range of personal injury litigation. **Hagens Berman Sobol Shapiro** knows that the health and quality of life of our clients hangs in the balance of the firm's work and has developed an exceptional track record in obtaining significant settlements and awards for the firm's clients.

**WHISTEBLOWER LITIGATION. Hagens Berman Sobol Shapiro** represents "whistleblowers" in a variety of industries with a significant number of cases involving clients using the False Claims Act to recover damages suffered by the federal government.  Current cases include actions involving fraudulent Medicare billing, defense contractor fraud and distinctive theft cases.

## SPECIAL EXPERIENCE IN LITIGATION WITH THE PHARMACEUTICAL INDUSTRY

For years, HBSS has aggressively pursued pharmaceutical industry litigation, helping lead the fight for more affordable prescription drugs and for a more responsible pharmaceutical and medical device industry.  We believe HBSS's pharmaceutical litigation practice is second to none in the nation in terms of expertise, commitment, and landmark results.  In recent years, HBSS's aggressive prosecution of pharmaceutical industry litigation amounted to recovery of over *one-half billion dollars in gross settlement funds*.  Recently, HBSS was lead counsel in three significant settlements:

**NEW ENGLAND CARPENTERS HEALTH BENEFITS FUND V. FIRST DATABANK**.  HBSS recently negotiated a settlement, preliminarily approved by the United States District Court in the District of Massachusetts, that will result in a *four percent rollback* of prices on hundreds of drugs which represent ninety-five percent of the nation's retail branded drugs.  The net impact of this rollback has been estimated to be in the billions of dollars and may lower the retail price for hundreds of brand name drugs, resulting in savings for health plans and consumers who have been overcharged for prescription drugs.

**AVERAGE WHOLESALE PRICE DRUG LITIGATION**.  HBSS acted as lead trial counsel in a consolidated trial against four defendants.  The court returned a verdict in favor of plaintiffs on claims against AstraZeneca and BMS, marking one of the first trial defeats for the pharmaceutical industry.  On the heels of that verdict, AstraZeneca settled the consumer class for $34 million.  Each class member may receive *double damages* if they make a claim, a result unprecedented in a class settlement.  Settlement with the consumer class was then obtained with BMS, again at double class member damages.

HBSS was the lead negotiator and counsel in a $70 million settlement with GlaxoSmithKline, the world's second largest pharmaceutical manufacturer, over its role in artificially inflating the Average Wholesale Price that is used as a benchmark for almost all prescription drug sales in the United States.  Thirty percent of the settlement will go to consumers, primarily individuals treated for cancer, who incurred co-payments based on AWP for certain drugs manufactured by GSK.  The remaining seventy percent will go to third party payors, including health plans, HMOs, and other organizations, which purchased the GSK drugs.

**SERONO DRUG LITIGATION**.  On February 14, 2007, the United States District Court for the District of Massachusetts preliminarily approved a $24 million settlement negotiated by HBSS that will reimburse a class of consumers and third-party payors, including self-insured employers, health and welfare plans, and insurance companies, for part or all of their purchases of the AIDS drug Serostim.  The underlying litigation alleges that Serono, Inc., a global biotechnology company, implemented a scheme to substantially increase the sales of Serostim by duping patients diagnosed with HIV into believing they were suffering from AIDS-wasting and required use of the drug.

In addition to these cases, HBSS is litigating more than two dozen other significant prescription drug and medical device cases involving antitrust and consumer protection claims.  The various cases being prosecuted by HBSS challenge many aspects of systemic misconduct by pharmaceutical manufacturers and others in the prescription drug distribution chain, but they all have the same fundamental purposes:  to lower prices of prescription drugs, improve access for consumers, and recover funds unfairly paid by governmental and private purchasers around the country.  A description of existing and settled leading cases prosecuted by HBSS over the last five years is set forth below.

The following are examples of existing pharmaceutical and medical matters in which HBSS plays a lead role:

**ZYPREXA PRODUCTS LIABILITY LITIGATION**.  HBSS is lead counsel for a nationwide class of private third-party payors in litigation against Eli Lilly & Co.  This lawsuit challenges Lilly's fraudulent

promotion of the antipsychotic drug Zyprexa and alleges that Lilly engaged in a variety of fraudulent schemes to inflate sales at the expense of consumers and payors.

**NEURONTIN MARKETING AND SALES PRACTICES LITIGATION.** HBSS is the court-appointed liaison counsel for Plaintiffs and a member of the five-firm Plaintiffs Class Steering Committee. This lawsuit against Pfizer and its subsidiary, Parke-Davis, accuses the companies of circumventing FDA regulations to promote scientifically unproven "off-label" use of their drug Neurontin.

**BEXTRA AND CELEBREX MARKETING SALES PRACTICES AND PRODUCT LIABILITY LITIGATION.** HBSS is a member of the Plaintiffs Steering Committee and chair of the Purchase Claims Committee in MDL litigation against Merck and Pfizer on behalf of consumers and purchasers of the prescription pain medications Bextra and Celebrex. The suits allege Merck and Pfizer knowingly withheld information of the increased risk associated with the drugs of cardiovascular and other ailments in order to persuade doctors and consumers to purchase the drugs at inflated prices.

**NEXIUM LITIGATION.** HBSS is lead counsel in litigation against AstraZeneca Pharmaceuticals on behalf of purchasers of Nexium, a prescription drug used to treat heartburn. The suits allege AstraZeneca engaged in fraudulent and illegal activities related to the promotion and sale of Nexium, including sham patent infringement litigation against certain generic manufacturers in an attempt to extend the life and sales of Prilosec, Nexium's precursor.

**LOVENOX LITIGATION.** HBSS is lead counsel in this litigation against Aventis Pharmaceuticals on behalf of end-payors of the anticoagulant Lovenox. The suit alleges Aventis engaged in sham patent infringement litigation against certain generic manufacturers in an attempt to thwart production of, and thus competition from, generic versions of Lovenox from entering the U.S. market.

The following examples show pharmaceutical and medical matters in which HBSS achieved substantial settlements:

**LUPRON MARKETING AND SALES PRACTICES LITIGATION.** This case alleges widespread fraudulent marketing and sales practices against TAP Pharmaceuticals, a joint venture between Abbott Laboratories and Takeda Pharmaceuticals, Inc., and it follows TAP's agreement to pay $875 million in combined criminal and civil penalties regarding marketing and sales practices for the prostate cancer drug Lupron. In late 2004, a proposed resolution on behalf of consumers and third-party payers of Lupron in the amount of $150 million was announced.

**AUGMENTIN ANTITRUST LITIGATION.** HBSS is court-appointed co-lead counsel in this antitrust litigation against Glaxo SmithKline Corporation and its predecessors alleging that GSK engaged in a pattern and practice of sham litigation and fraudulent procurement of a patent relating to the broad spectrum antibiotic, Augmentin. A settlement of $29 million on behalf of consumers and other payers of Augmentin was recently consummated.

**PAXIL DIRECT PURCHASER LITIGATION.** HBSS was court-appointed co-lead counsel in this litigation on behalf of direct purchasers of the "blockbuster" selective serotonin reuptake inhibitor Paxil in claims against Glaxo SmithKline Corporation alleging that GSK engaged in sham patent litigation with respect to certain patents, all in an effort to delay competition from the entry of a generic form of the drug. HBSS announced a $100 million resolution of these claims in 2004.

**RELAFEN ANTITRUST LITIGATION.** HBSS was court-appointed liaison counsel and the firm has helped spearhead this litigation against Glaxo SmithKline Corporation and its predecessors alleging that GSK fraudulently obtained a patent to prevent a generic version of Relafen, a frequently prescribed brand name pharmaceutical, from coming to market. Litigated for twelve to eighteen months, HBSS announced a proposed $75 million resolution of end-payor claims in 2004.

# Hagens Berman vs. Big Tobacco

Hagens Berman Sobol Shapiro played a major role in representing state government in litigation against the tobacco industry. Because of the unprecedented nature of this litigation, Hagens Berman Sobol Shapiro's role and approach is detailed here.

**A TRIAL HARDENED LITIGATION TEAM.**  In the State Attorneys General actions, only two states actually took their cases to trial - Washington and Minnesota. This means that in a government tobacco law enforcement and medical cost recovery action, only two private firms in the entire country have trial experience against the industry - **Hagens Berman Sobol Shapiro** is one of those firms.

In the Washington case, the firm's managing partner Steve Berman was co-lead trial counsel. In this role at trial, he participated in voir dire, delivered the majority of the State's opening statement and presented witnesses, two of whom would become the most important witnesses in the liability phase of the case (Dr. Jack Henningfield, an expert on cigarette design, and Dr. William Farone, former director of research for Philip Morris). Steve also chaired major strategic decisions, and the firm assisted in the preparation of other witnesses presented by the State's other trial lawyers in the case.

**AN EMPHASIS ON LAW ENFORCEMENT.**  **Hagens Berman Sobol Shapiro** was instrumental in developing what came to be accepted as the predominant legal tactic to use against the tobacco industry; to wit, emphasizing traditional law enforcement claims such as state consumer protection, antitrust and racketeering laws. Before **Hagens Berman Sobol Shapiro's** involvement in the state cases, the predominant claims being pursued by most of the states were traditional tort claims, which proved in many states to be unsuccessful. With the exception of the Idaho case, not a single court in a case where **Hagens Berman Sobol Shapiro** served as private counsel to a state dismissed a state's consumer protection or antitrust claims.

In three states - Arizona, Ohio and Oregon - **Hagens Berman Sobol Shapiro** took the lead in pressing the respective states' racketeering statutes and, as a result, the tobacco defendants were faced with the very real prospect of a profits disgorgement remedy, penalties and, in the case of Ohio, the payment of double damages.

**EXCELLENT WITNESS RAPPORT.**  One of the keys to beating the tobacco industry lies with presenting the proper witnesses, both expert and lay witnesses. With so many states in litigation against the industry, the time and resources of many of the important expert witnesses were taxed. As a result, several witnesses decided to limit their involvement to a small number of states. We found that some of these witnesses most approved of the manner in which **Hagens Berman Sobol Shapiro** assisted in the preparation and presentation of their testimony. Therefore, our firm and the states we worked with became priority clients of these witnesses.

**LEGAL RESEARCH AND BRIEFING.**  With the emphasis on law enforcement claims, **Hagens Berman Sobol Shapiro** attorneys built on their already considerable experience utilizing consumer statutes and became experts in consumer protection, antitrust and racketeering laws in the states the firm represented. Because many of these state statutes were patterned after and followed federal law, our expertise with the FTC Act, the Clayton and Sherman Acts, and federal RICO grew. In each state we represented, **Hagens Berman Sobol Shapiro** took the lead in opposing defendants' onslaught of motions to dismiss and, where applicable, motions for summary judgment. As the record reflects, we achieved a remarkable degree of success in these endeavors.

**LIABILITY DOCUMENT DATABASE.  Hagens Berman Sobol Shapiro** helped initiate and coordinate the so-called multi-state document review project. This was instituted to ensure that all relevant documents were produced, reviewed and selected for use by the states in the Attorneys General actions. More than 30 million documents were reviewed under the firm's supervision by 12 lawyers from the firm and more than 40 assistant attorneys general. As a result of these efforts, we have compiled comprehensive liability documents that are readily searchable by employing a variety of search criteria and are easily accessible. In addition, having gone to trial against the industry, we organized the best or "hottest" liability documents in our trial exhibit notebooks.

**DE-PRIVILEGING EXPERTISE.**  Some of the most damaging liability documents for the industry were and are improperly cloaked from discovery by false claims of attorney-client and work product privilege. Many of these documents were brought to light in the Minnesota litigation, but thousands remained. In a coordinated strategy employed across many of the states that **Hagens Berman Sobol Shapiro** represented, we continued the de-privileging of these important documents. This effort required countless hours in hearings with judges and special masters, in addition to extensive briefing.

**A FOCUS ON TARGETING MINORS.**  In tandem with our general law enforcement approach, **Hagens Berman Sobol Shapiro** focused the state legal claims on the industry's deplorable practice of luring children to tobacco use. As part of this focus, in Arizona and Ohio we commissioned an expert survey of adolescents' perception of tobacco advertising in general and, more specifically, on the deception of RJR's Winston 'No Bull/No Additives' campaign. The survey data revealed that the vast majority of minors exposed to the campaign believed that the 'No Additives' slogan meant that the cigarette was either less addicting, safer or less harmful to health (when, of course, this was not true). This campaign was the target of a preliminary injunction motion in the Arizona case that was still pending when the states settled their cases. On March 3, 1998, the FTC announced it settled a claim it had subsequently filed on this issue based on our work in Arizona.

**TESTING OUR TRIAL STRATEGY WITH FOCUS GROUP STUDIES. Hagens Berman Sobol Shapiro** conducted numerous focus groups in different states, thus acquiring unparalleled experience with the reactions of potential jurors.

**SERVING THE ELECTED CLIENT.  Hagens Berman Sobol Shapiro** was chosen, after competitive bidding, as counsel for 13 states, including those with Democratic and Republican leadership. The reason for our retention, in addition to excellent trial skills and complex litigation service, was our sensitivity to the needs of clients who were elected officials.

**KEY ROLE IN THE NATIONAL SETTLEMENT NEGOTIATIONS.** Steve Berman and Steven Mitchell were both heavily involved in the proposed June 20, 1997 national settlement and the November 1998 final state settlement that settled all of the state's cases for $206 billion. As such, both have unparalleled experience in negotiating with tobacco industry lawyers and the tobacco companies' CEOs.

**TRIAL EXPERIENCE.** The trial of the Washington case was one of the largest trials conducted in the United States, lasting three months. Thousands of exhibits were offered into evidence and the case was presented using state-of-the-art technology.

# A Short Historical Perspective

(in alphabetical order)

**ALDUS LITIGATION**. The firm acted as co-lead counsel for shareholders in an action settled for payment of up to $10.6 million to Aldus shareholders.

**EGGHEAD LITIGATION**. In two separate cases, the firm acted as lead counsel for shareholders injured as a result of misrepresentations made in connection with Egghead's initial public offering of common stock, and secondary trading in Egghead stock.

**FOODMAKER LITIGATION**. The firm acted as co-lead counsel after Foodmaker's stock declined in reaction to the Jack-in-the-Box poisoning outbreak. The discovery work done by the firm was utilized and copied by personal injury lawyers who recovered in excess of $100 million from Foodmaker.

**IMMUNEX LITIGATION**. The firm acted as co-lead counsel on behalf of a class of purchasers of Immunex stock. A settlement of $14 million was approved by the federal court.

**INTERMEC LITIGATION**. The firm acted as co-lead counsel for shareholders after Intermec stock dropped 30 percent in value over a two-quarter period as a result of a succession of overly optimistic earnings estimates. Our efforts netted a $5.9 million settlement for the shareholders.

**LOUISIANA-PACIFIC SIDING LITIGATION**. The firm acted as co-lead counsel on a consumer case arising from the failure of a new type of hardboard siding used to clad homes. Over a million consumers are in the class. The case resulted in a landmark, highly favorable settlement that has resulted in compensation for homeowners across the country.

**MICHAEL MILKEN LITIGATION**. The firm, on behalf of beneficiaries of several Washington State public employee pension funds which are administered by the Washington State Investments Board ('WSIB'), brought a RICO and breach of fiduciary duty suit against noted junk bond king Michael Milken, and over forty individuals who were involved as principals or participants in the leveraged buyouts of Beatrice, Safeway, Pace, City and Motel Six. This case pitted the firm against some of America's most powerful individuals and companies. A settlement was reached and received final approval from the Court.

**MORRISON KNUDSEN LITIGATION ('MK')**. MK was at the time the largest employer in Boise, Idaho. After a significant write off, **Hagens Berman Sobol Shapiro** filed a shareholder class action, alleging that MK's CEO, William Agee, and other officers, had misled the investors as to MK's true status. The lawsuit claimed that MK was concealing hundreds of millions in losses. In Boise, the public and even the Court were skeptical that this venerable local company could have misled investors. After bitterly fighting the suit, MK ousted Agee and admitted that it was facing hundreds of millions in losses and declared bankruptcy. **Hagens Berman Sobol Shapiro** was able to recover over $63 million for investors, resulting in what is believed to be the largest settlement in the State of Idaho (except in the tobacco case).

**NORDSTROM LITIGATION**. The firm acted as co-lead counsel for shareholders claiming that the company had misrepresented its liabilities for labor in publicly filed documents distributed to the Investment Community. Steve Berman obtained a $7.5 million settlement from the company and its inside directors.

**PIPER JAFFRAY**. This action was brought as a class action on behalf of purchasers of common shares of eight closed-end investment companies established, marketed and operated by the Piper Jaffray Companies, Inc., and various subsidiaries. These funds contained Mortgage-backed securities that were routinely referred to as 'AAA' or 'government securities' by defendants in an effort to convince investors

HAGENS BERMAN SOBOL SHAPIRO LLP

of their overall safety. Defendants ignored or misrepresented the effect that interest rate or market risks would have on these types of investments. In reality, these securities are extremely complex and intricate and are acutely sensitive to changes in market interest rates and are often used as part of an overall strategy to speculate on the course of market interest rates in the future. Unfortunately for Class members, the Defendants lost their gamble on interest rates using the shareholders' money. Market interest rates rose sharply throughout 1994, dealing a devastating blow to the speculative portfolios of the various closed-end funds. Due to the undisclosed risks that defendants undertook, the closed-end funds – and the Class members – suffered massive losses.

A settlement valued at over $50 million was achieved.

**SPOKANE ASPHALT ANTITRUST LITIGATION.** Carl Hagens and Steve Berman represented independent asphalt pavers who had been excluded from the Spokane asphalt industry. As a result of the case, the Spokane paving industry is open to independent contractors.

**U.S. WEST LITIGATION.** The firm represented shareholders of U.S. West New Vector in a challenge to the proposed buyout of minority shareholders by U.S. West. As a result of this litigation, the proposed buyout was stayed, and a settlement was achieved that resulted in a $63 million increase in the price of the buyout.

**WASHINGTON PUBLIC POWER SUPPLY SYSTEM SECURITIES LITIGATION.** Steve Berman and James Solimano represented bondholders and the bondholder trustee of WPPSS Nuclear Projects 4 and 5 bonds. Following the largest municipal bond default in history ($2.25 billion), the trustee, joined by bondholders, brought one of the most complex and protracted securities fraud cases ever filed. After more than five years of intensive litigation, the trustee and the other plaintiffs recovered in excess of $850 million in settlements from more than 100 defendants. The implementation of various settlement agreements continues and will be a firm matter.

**WASHINGTON STATE FERRY WORKERS WAGE LITIGATION.** The firm represented a class of on-call seamen who alleged that they were not paid for being 'on call' in violation of federal and state law. The case resulted in a rearrangement in work assignments and of the 'on call' system that has resulted in better working conditions.

**WPPSS COST SHARING LITIGATION.** The firm represented Chemical Bank, the trustee for WPPSS Projects 4 and 5 bondholders, in litigation against nearly 100 defendants. The bank recovered $55 million in costs misallocated among the WPPSS nuclear projects.

# Securities Litigation

Securities litigation has been one of the cornerstones of **Hagens Berman Sobol Shapiro's** practice since the inception of our firm. We have recovered hundreds of millions of dollars for institutional and individual investors defrauded by unscrupulous management of publicly held corporations.

In light of recent cases, such as Enron, **Hagens Berman Sobol Shapiro's** work is even more well recognized as crucial to protecting the rights of investors.

**Hagens Berman Sobol Shapiro** provides unparalleled services to combat corporate fraud. Our attorneys are experts in a wide array of issues unique to specific industries. We also use highly experienced experts in a variety of fields as an integral part of the prosecution team.

According to the former Chairman of the SEC, Arthur Levitt, "… we are witnessing an erosion in the quality of earnings, and therefore the quality of financial reporting. Managing may be giving way to manipulation; Integrity may be losing out to illusion."[1]

We recognize that investing is, by nature, a speculative business involving a wide variety of risks. But no money manager or individual investor should be forced to endure undue risk as a result of misreported financial conditions. We vigorously pursue fraud recovery litigation that forces corporations to answer to the investors they have deceived.

Our firm has represented investors in nationwide class actions for securities violations against WPPSS, Boeing, Einstein-Noah Bagel, Boston Chicken, Exxon-Mobil, Oppenheimer, Morrison Knudsen, ProCyte, Wall Data, PriceCostco, MK Rail, Bonneville Pacific, Mercer International, NeoRx, Egghead and Omega Environmental.

We currently have securities actions in California, Colorado, Florida, Idaho, Michigan, Utah, Tennessee, Texas, Minnesota, New York, and Washington.

---

[1] *The Numbers Game*, remarks by Arthur Levitt on September 28, 1998 at the NYU Center for Law and Business.

## SERVICES PROVIDED TO INSTITUTIONAL INVESTORS

**Hagens Berman Sobol Shapiro** is a leading provider of specialized securities litigation services to public, private and Taft-Hartley pension funds. We offer proprietary and unparalleled asset protection and recovery services to both foreign and domestic institutions. Our institutional services provide participants with the ability to identify, investigate and react to potential wrongdoing by companies they invest in.

Our program enables clients to be proactive, not reactive. We update our clients on an ongoing basis regarding their exposure and advise them on their legal rights and potential remedies. We make a commitment to our institutional and pension fund clients to protect and defend all of their rights as shareholders and guardians of their beneficiaries' retirement funds.

When money managers suffer lost percentage points as a result of corporate deception, our litigation services allow them to recover a substantial percentage of those losses, increasing the money manager's performance. However, we realize that as a fiduciary, money managers may not have the ability or desire to risk funds on speculative litigation using typical hourly-rate law firms. Therefore, **Hagens Berman Sobol Shapiro** provides institutional investors with several methods of fraud recovery litigation services.

Depending on the size and facts of the case, we may bring individual action on behalf of the institutional investor. Another method is for the institutional investor to be the lead plaintiff in a securities class action against the offending company. **Hagens Berman Sobol Shapiro** helps clients decide which course of action is best for them, and is well-qualified to pursue either method of recovery.

## THE VALUE OF CLASS-ACTION LITIGATION

Many class-action cases are very successful, and provide meaningful recoveries to the class members. For example, the Morrison Knudsen and Oppenheimer Delta Partners litigations - both led by **Hagens Berman Sobol Shapiro** - obtained settlements of approximately 60 percent and 80 percent, respectively, of the largest estimates of possible losses for the class members. The Midisoft case, also directed by **Hagens Berman Sobol Shapiro**, obtained more than 50 percent of total damages. Many other recent cases, such as Waste Management and Cendant, have obtained hundreds of millions of dollars in settlements and recovered a large percentage of damages for injured shareholders.

## DUTIES OF A LEAD PLAINTIFF

As the lead plaintiff in a class action, the court requires that you will adequately and fairly represent the class. To perform these duties, the institution must be familiar with the litigation. This does not mean it must know every aspect of the litigation. **Hagens Berman Sobol Shapiro** will keep the institution informed of major events and this will satisfy its duty.

The institution may and should confer with us at any time it feels it is appropriate. The institution must also agree to vigorously prosecute the litigation. Meaning, you must hire lawyers experienced in class-action litigation. **Hagens Berman Sobol Shapiro** has national experience in class actions, and has vigorously prosecuted numerous securities fraud class-action cases, with combined recoveries in the hundreds of millions of dollars.

All costs in prosecuting a class action are advanced and paid by **Hagens Berman Sobol Shapiro**, and the institution is not responsible for their payment whether we are successful or unsuccessful.

In short, the institution has minimal time commitments and no financial responsibilities, but will be encouraged to provide its opinions and insights.

## AN INSTITUTION'S PRESENCE CAN DRAMATICALLY AFFECT THE LITIGATION

As lead plaintiff, an institution has a direct influence on the strategies and disposition of the case, thereby having a profound effect on the ultimate success of the litigation.

As lead plaintiff, the institution will be a key member of the decision-making team. It will be able to help decide if a contemplated settlement is too low or if it is reasonable under the circumstances. For institutions that have been unhappy with the returns from previous class-action lawsuits they have participated in, overseeing the process to ensure that they are happy with the ultimate result is a compelling reason to participate.

# Environmental Litigation

Environmental litigation on behalf of victims of toxic spills or pollution and other land use practices is also an increasing area of focus for **Hagens Berman Sobol Shapiro**. The following is a profile of some of our cases.

**CHINOOK FERRY LITIGATION.** The firm represented a class of property owners who challenged Washington State Ferries' high-speed operation of a new generation of fast ferries in an environmentally sensitive area of Puget Sound. Two of the ferries at issue, the *Chinook* and *Snohomish*, caused environmental havoc and property damage, compelling the property owners to take action. After a successful preliminary trial, the trial court enjoined the operation of the ferries at high speed pending compliance with environmental laws, which was later overturned on appeal by the Washington Supreme Court. A SEPA study conducted in response to the suit confirmed the adverse environmental impacts of the fast ferry service. The trial court approved a $4.4 million settlement that is among the most favorable in the annals of class litigation in the State of Washington.

**GRAND CANYON LITIGATION.** The firm represented the Sierra Club in a challenge to a Forest Service decision to allow commercial development on the southern edge of the Grand Canyon National Park. Recently the trial court enjoined the project.


Exxon Valdez Oil Spill Cleanup

Exxon Valdez Oil Spill

 

**EXXON VALDEZ OIL SPILL LITIGATION.** The firm represents various classes of claimants, including fisherman and businesses located in Prince William Sound and other impacted areas, who were damaged by the worst oil spill in United States history. A $5 billion judgment was awarded by a federal court jury and a $98 million settlement was achieved with Alyeska, the oil company consortium that owned the output of the pipeline. The Ninth Circuit Court of Appeals recently overturned the punitive damage award and indicated the district court should reconsider the amount, but not the issue of whether punitive damages were appropriate.

**KERR-MCGEE RADIATION CASE.** The firm represented a class action on behalf of residents of West Chicago, Illinois, who have been exposed to radioactive uranium tailings from a rare earth facility operated by Kerr-McGee. The trial court has upheld plaintiff's claim, and Kerr-McGee unsuccessfully sought review in the 7th Circuit Court of Appeals. A medical monitoring settlement valued in excess of $5 million has received court approval.

**SEATAC LITIGATION.** The firm represented homeowners who claimed that the operation of the Seattle-Tacoma Airport destroyed their property values. The case was the largest inverse condemnation case asserted against a governmental agency in the Pacific Northwest. After a jury trial, the case settled.

**SKAGIT VALLEY FLOOD LITIGATION.** The firm represented farmers, homeowners and businesses who claimed damages as a result of the 1990 flooding of this community. The case, which had been in litigation for ten years and involved a jury trial of over five months in Snohomish County, was the longest jury trial ever conducted in Snohomish County. Following the entry of 53


Skagit Valley Flood



verdicts against Skagit County, the trial Court entered judgments exceeding $6.3 million. Ultimately, the State Supreme Court reversed this judgment. Despite this reversal, the firm is proud of this representation and believes that the Supreme Court erred.

**RIO TINTO.** In a landmark case, the firm represents victims of Rio Tinto's mining operation on the island of Bougainville. To build the mine, Rio chemically defoliated, bulldozed and sluiced off an entire mountainside of rain forest. During the years of the mine's operations, billions of tons of toxic mine waste was generated and dumped onto the land and into pristine waters, filling major rivers with tailings, polluting a major bay dozens of miles away, and the Pacific Ocean as well. As a result of its flagrant disregard for the environment and the people of Bougainville, Rio dispossessed the people of Bougainville from their land, destroyed their culture and polluted their environment and lifestyle. Rio destroyed previously pristine rivers and land that provided substance and a way of life for the native people and went to the heart of their local culture. The pollution is so extensive that plaintiffs and members of the class have been exposed to toxic chemicals. In certain villages, the chemicals still remaining have caused the death and/or illness of residents.



Dead Forest Vegetation as a Result of Raised Water Table Levels Near Old Kuneka

Rio's actions on Bougainville were so egregious that they sparked an uprising designed to close the mine. When the uprising succeeded, Rio and the PNG government brought troops in to reopen the mine. Rio provided transport for these troops. After initial unsuccessful efforts, the PNG government, as the agent of or co-venturer of Rio and with the support and encouragement of Rio, instituted a military blockade of the island that lasted for almost ten years. The purpose of the military blockade was to coerce the Bougainville people into surrender so that the mine could be reopened. Both Rio and PNG made enormous profits from the mine and were anxious for it to operate, notwithstanding the resistance of the island's people. The blockade prevented medicine, clothing and other essential items from reaching the people of Bougainville. Hospitals were forced to close, women died needlessly in childbirth and young children died from easily preventable diseases. Rio's top manager of the Bougainville mine encouraged continuation of the blockade for the purpose of 'starving the bastards' out. This blockade directly caused the deaths of at least 10,000 people between 1990 and 1997. According to the Red Cross, the blockade killed more than 2,000 children in just its first two years of operation. By the time the war ended in 1999, 10% of the population of Bougainville, approximately 15,000 civilians, were killed.

The action alleges that Rio's conduct violated customary international law, including prohibitions against destruction of the right to life and health, and prohibitions against racial discrimination, and war crimes. Rio's conduct violated the settled standards for the protection of human rights and the environment recognized by customary international law and United States legal precedent. The plaintiffs seek redress under the federal Alien Tort Claims Act (28 U.S.C. § 1350).

# The Partners



### STEVE W. BERMAN

**Direct Dial: (206) 268-9320**
**Email: steve@hbsslaw.com**

Mr. Berman helped to found the firm in 1993, and is the managing partner. He has served as lead or co-lead counsel in securities, consumer, products liability, antitrust, employment class actions, and complex litigations in the Northwest and throughout the country. Some of the high-profile matters Mr. Berman has prosecuted include the **Washington Public Power Supply System**, **Exxon Valdez Oil Spill**, **Michael Milken Litigation**, **Enron Litigation**, **Tobacco Litigation**, and the **Visa/MasterCard Litigation**.

Mr. Berman's successes include obtaining a settlement of $92 million in the **Boeing Securities Litigation**, representing stock and bondholders in the **Bonneville Pacific Securities Litigation** which resulted in settlements exceeding $30 million, and gaining approval of a $290 million settlement in the **Louisiana Pacific Siding Litigation**, the largest product liability settlement in Pacific Northwest history. In the **WPPSS Securities Litigation**, Mr. Berman represented bond purchasers in the largest securities trial in U.S. history. In addition to being a member of the trial team, the lead counsel designated him as a core group member alongside a group of class plaintiffs and **Chemical Bank** attorneys charged with prosecuting the case. The case resulted in a settlement exceeding $850 million, the largest recovery in a securities class action at the time.

Mr. Berman's innovative approaches to litigation have earned him significant recognition. When beneficiaries of state employee pension funds refused to pursue sums from **Michael Milken's** misappropriation of warrants, Mr. Berman stepped forward, pioneering the Milken action and using a unique approach to recovery. As co-lead counsel in multi-state class actions against **Blue Cross**, he uncovered Blue Cross' breach of fiduciary duties owing to plan participants in the manner in which co-payments are calculated. His discovery led to Blue Cross being sued in dozens of states with lawyers throughout the country emulating his approach. Eventually the way in which co-pays are calculated has changed industry-wide resulting in billions of savings for consumers.

Steve is currently working on the **McKesson-First Data Bank Litigation**, **Nexium Litigation**, **Average Wholesale Price Litigation**, **Lipitor Litigation**, as well as representing several states on drug pricing litigation (Arizona, Nevada, and Montana) and securities litigation (Ohio). He is also lead counsel in the **DRAM Antitrust Litigation** and the **Rio Tinto Litigation**.

Perhaps most notable is Mr. Berman's role as a special assistant attorney general for the states of Washington, Arizona, Illinois, Indiana, New York, Alaska, Idaho, Ohio, Oregon, Nevada, Montana, Vermont, and Rhode Island in the landmark **Tobacco Litigation**.

A principal in the groundbreaking settlement with Liggett and the proposed national settlement, Mr. Berman was one of only two private attorneys acting as members of the negotiating team. He conceived the idea to use Liggett as the whistleblower and secured the cooperation of Bennet LeBow, Liggett's CEO, as well as insisting that Liggett waive all claims of attorney-client privilege. Mr. Berman also negotiated the settlement that required Liggett to admit what the industry has denied to this day: smoking causes cancer and heart disease; nicotine addicts; and the industry targets children.
Liggett's admissions, the cooperation of LeBow, and the release of previously privileged documents were instrumental factors in driving the industry to settlement. Liggett's 'plea of guilty' added momentum to the 1997 proposed national settlement, which led to the eventual $206 billion multi-state settlement in 1998.

The announcement of the final settlement found Mr. Berman in his ninth week of trial presenting the state of Washington's case to a jury. His successful handling of the bulk of the trial earned him great respect. Subsequently, some of Washington State's leading trial lawyers hired Mr. Berman to try a certified class action brought by union trust funds against tobacco. The book, People v. Big Tobacco, describes his role in the Tobacco Litigation.

Other notable actions led by Mr. Berman include the **Morrison Knudsen Securities Litigation**, **Contact Lens Disposable Antitrust Litigation** and **Piper Jaffray Closed-End Funds Litigation** in which he obtained a settlement valued at nearly $60 million. Mr. Berman's cases have also involved corporate entities such as **Egghead**, **Foodmaker**, **SuperMac**, **Immunex**, **Digital Systems**, and **Aldus**.

More recently, **Microsoft** recognized Mr. Berman's experience and expertise when the company retained him to be part of the core national team representing the company in antitrust class actions arising from Judge Jackson's Findings of Fact in the Department of Justice antitrust case against the company.

In April 2000, the *National Law Journal* listed Mr. Berman as the top litigator in the state and, in June, named him as one of the 100 most powerful lawyers in the nation. In January 2001, Seattle Magazine featured him in an issue profiling the top lawyers in Seattle. In June 2006, the *National Law Journal* once again named Mr. Berman as one of the nation's 100 most influential lawyers in America. Mr. Berman was also named as a finalist for the Trial Lawyer of the Year award for 2006 by *The Trial Lawyers for Public Justice*.

Mr. Berman graduated from the University of Michigan in 1976 and earned his law degree from the University of Chicago Law School in 1980.

## JENIPHR A.E. BRECKENRIDGE

Direct Dial: (206) 224-9325

Email: jeniphr@hbsslaw.com

Ms. Breckenridge is a partner at Hagens Berman Sobol Shapiro where she has practiced law since its founding in 1993. Ms. Breckenridge's practice concentrates on securities fraud and consumer litigation. Ms. Breckenridge is involved with the firm's **Average Wholesale Price Litigation**. Other notable cases include leading the firm's efforts in the recently-settled **Raytheon Securities Litigation**, **Boeing Securities Litigation**, **Abbott Laboratories Litigation** and **Tobacco Litigation**.

In the Tobacco Litigation, Ms. Breckenridge spearheaded **Hagens Berman Sobol Shapiro's** effort to develop facts surrounding defendant British American Tobacco Industries and its subsidiaries, including Brown & Williamson and BATCo. Reviewing BAT documents held in a repository in Guildford, England, she explored issues of American court jurisdiction over BAT entities; BAT's participation in the worldwide industry conspiracy; and BAT and Brown & Williamson lawyer involvement in the conspiracy, as well as other issues related to liability.

Ms. Breckenridge earned her undergraduate degree from Georgetown University in political theory and economics. She graduated from the University of Maryland Law School, where she was the Notes and Comments editor of the *Maryland Law Review*.

## ROBERT B. CAREY

Direct Dial: (602) 224-2626

Email: rcarey@hbsslaw.com

Mr. Carey has been the managing partner at Hagens Berman Sobol Shapiro's Phoenix office since 2002. His practice includes handling numerous class-action lawsuits against a variety of organizations and companies - including the **Swift Truckers Litigation** and the **Average Wholesale Price Litigation**. He recently acted as co-lead counsel for the Hyundai Litigation, which settled for approximately $100 million.

Mr. Carey's previous experience focused on personal injury, medical malpractice and various class-action cases. In addition to arguing several high-profile cases in state Supreme Courts and Courts of Appeals, he litigated multi-billion dollar claims by counties for damages stemming from tobacco-related illnesses and dozens of consumer and insurance class actions in various states. Mr. Carey also served as judge pro

tempore in Maricopa County Superior Court and as special counsel for Hagens Berman Sobol Shapiro suits to recover Medicaid and statutory damages in the landmark public health litigation.

From 1990 to 1996, as Arizona's Chief Deputy Attorney General, Mr. Carey oversaw all major legal, policy, legislative, and political issues for the Arizona attorney general's office. He also obtained a $4 billion divestiture, a landmark $165 million antitrust settlement, and won numerous consumer and tort cases. Mr. Carey drafted and spearheaded passage of Arizona's law requiring the DNA testing of all sex offenders and instituted a penalty requiring that criminals pay the cost of victims' rights. He was also a principal draftsman of the first major overhaul of Arizona's criminal code, and drafted the bulk of the federal Prisoner Litigation Reform Act of 1995 for Senators Bob Dole and Jon Kyl, and authored the counterpart Arizona act that served as a model for other states and the federal act. His legislative experience began when he served as a former campaign staffer, intern, and staff member for U.S. Senator John McCain, during and after Senator McCain's first run for public office.

Recognized by the judges of the Superior Court of Arizona in Maricopa County for outstanding contributions to the justice system, Mr. Carey frequently presents at national conferences and teaches tort, contract and public policy courses, most recently at the University of Colorado's graduate business school.

Mr. Carey earned his bachelor's degree from Arizona State University, and received his MBA and law degree from the University of Denver. He also attended Harvard University's John F. Kennedy School of Government, where he studied in the state and local government program.

## ELIZABETH A. FEGAN

**Direct Dial: (708) 776-5604**
**Email: beth@hbsslaw.com**

Beth is a partner at Hagens Berman Sobol Shapiro's Chicago office where she has worked since 2004. Beth's practice includes a variety of complex commercial class action cases in the areas of antitrust, pharmaceutical litigation, insurance fraud, consumer protection and employment discrimination. Beth's recent successes include the pending settlement of a nationwide class action alleging sexual harassment on behalf of 16,000 current and former female employees of a commercial property brokerage firm. In addition to requiring changes to human resources policies and procedures, the innovative settlement affords class members the opportunity to participate in a stream-lined claims process that provides the potential for individual awards up to $150,000 per class member.

Beth's current cases include the **Clear Channel Live Rock Concert Antitrust Litigation,** the **Baby Products Antitrust Litigation,** the **Midland Senior Annuities Fraud Litigation,** and the **American Equity Senior Annuities Fraud Litigation.**

Prior to joining the firm, Ms. Fegan was a partner at The Wexler Firm LLP in Chicago. Her legal work consisted of finance lending discrimination lawsuits, pharmaceutical and antitrust litigation, civil rights charges and suits, and auditing and accounting malpractice litigation. She also served as legal writing instructor at the Loyola University Chicago School of Law.

While previously practicing at Shefsky & Froelich, Ltd. in Chicago, Ms. Fegan served in several local government appointments and on a special master team in federal and state court. The local government appointments included positions as special assistant corporation counsel to the city of Chicago, the Chicago Park District and the Public Building Commission of Chicago.

Ms. Fegan received her law degree from Loyola University Chicago School of Law. While there, she was editor at large of the *Loyola Law Journal* in which she published "Home Rule Hits the Road in Illinois: American Telephone & Telegraph Company v. Village of Arlington Heights."



## ERIN K. FLORY

**Direct Dial: (206) 224-9332**

**Email: erin@hbsslaw.com**

Mr. Flory is a partner at Hagens Berman Sobol Shapiro where he focuses on securities and class-action litigation. His writing and legal analysis have been vital to the firm's rise to national prominence, helping to establish the high standards that exemplify the **Hagens Berman Sobol Shapiro's** written court submissions.

Mr. Flory plays a prominent role in several securities cases, including **Boeing**, **Boston Chicken**, **Einstein/Noah Bagel**, **Midcom**, **Wall Data**, **Immunex** and **Bonneville**.

Prior to joining the firm, Mr. Flory worked for a leading corporate defense firm, leaving in 1991 to represent the interests of injured investors, consumers, workers, and homeowners in their challenges to corporate misconduct. After obtaining his law degree, he clerked for Judge Thomas S. Zilly of the United States District Court for the Western District of Washington and for the Washington State Court of Appeals.

Mr. Flory graduated *summa cum laude* and Phi Beta Kappa from the University of Washington in 1983 with a degree in economics. He earned his law degree from the University of Washington Law School, where he served as an executive editor of the *Washington Law Review*.

## REED R. KATHREIN

**Direct Dial: (510) 725-3030**

**Email: reed@hbsslaw.com**

Mr. Kathrein is a partner at Hagens Berman Sobol Shapiro's San Francisco office. He has more than 30 years of experience in complex litigation in securities fraud, consumer and antitrust class actions. Among his most recent cases, he worked along side HBSS on a $1 billion settlement with Tenet Healthcare.

Mr. Kathrein has worked in the state of California since 1988, where he has developed a reputation as one of the region's most successful attorneys in complex litigation and large class action cases. Mr. Kathrein has litigated dozens of securities fraud cases including a $259 million settlement for shareholders against 3Com Corporation and a settlement of $300 million, the largest investment fraud case in U.S. history against Capital Consultants.

Mr. Kathrein also serves on many committees and works within the community giving lectures on a variety of legal topics including the Practicing Law Institute's Securities Litigation and Enforcement Institute. He has served as the co-chair of the Securities Working Group in California and was tasked by Chief Justices Marilyn Hall Patel and Vaughn Walker to propose and assist in revising the Court's local securities fraud class actions rules. He was appointed by Chief Judge Vaughn R. Walker to chair the Magistrate Judge Merit Selection Panel for the United States District Court for the Northern District of California. He also served on the executive committee of the National Association of Securities and Consumer Law Attorneys, the Private International Law Committee of the American Bar Association and acted as an advisor to the U.S. State Department's Advisory Committee on Private International Law.

Some of his most recent lectures address 'Dealing with Analysts and the Press' and 'Ethics in Class Actions.'

Mr. Kathrein earned his bachelor's degree in economics and politics of Latin America, and received his law degree from the University of Miami. He also attended Universidad Nacional Autonoma de Mexico in Mexico City.

HAGENS BERMAN SOBOL SHAPIRO LLP



## SEAN R. MATT

**Direct Dial: (206) 224-9327**
**Email: sean@hbsslaw.com**

Mr. Matt is a partner at Hagens Berman Sobol Shapiro where he has worked since its founding in 1993. Mr. Matt's practice focuses on multi-state and nationwide class actions and encompasses consumer, insurance, products, antitrust, environmental, employment, and labor issues. His ability to organize and develop a standardized approach to prosecuting individual class cases across many states involving the same defendants and similar factual and legal issues continues to be a key factor in the firm's success.

Mr. Matt's cases include the **Average Wholesale Price Litigation**, **Ford and Nissan Accelerator Litigation**, **Washington State Ferry Litigation** and **Tobacco Litigation**. In the Tobacco Litigation, he assisted with client liaison responsibilities, working closely with assistant attorneys general in Oregon, Ohio, Arizona, Alaska, and New York, as well as assisting in briefing and arguing motions to dismiss. Working on various discovery issues, including discovery requests, briefing on discovery motions and appearances at discovery hearings, Mr. Matt also developed expert disclosure statements and prepared testimony for a variety of expert witnesses.

Mr. Matt's publications include co-authoring the comment, "Providing a Model Responsive to the Needs of Small Businesses at Formation: A Focus on Ex Ante Flexibility and Predictability" appearing in the *Oregon Law Review*.

Mr. Matt earned his bachelor's degree in finance from Indiana University, graduating with highest distinction. An associate editor of the University of Oregon School of Law's *Law Review*, he graduated with his law degree in 1992, after earning membership in the prestigious Order of the Coif.

## DAVID P. MOODY

**Direct Dial: (206) 268-9323**
**Email: davidm@hbsslaw.com**

Mr. Moody is a partner at Hagens Berman Sobol Shapiro where he has worked since 2006. He is a trial attorney with a passion for representing children, the disabled, elderly and incapacitated citizens. Raised in Olympia, Washington, Mr. Moody received his undergraduate degree from the University of Washington in 1990. After graduating from George Washington University School of Law in 1993, Mr. Moody joined the Seattle office of Gordon, Thomas, Honeywell where he became a partner in 1998. He left the firm in 2005.

Among his many cases on behalf of vulnerable citizens, Mr. Moody served as the lead trial attorney, obtaining the largest jury verdict ever upheld against the State of Washington ($17.8 million); the lead trial attorney, securing the largest single-plaintiff settlement against the State of Washington, DSHS ($8.8 million); the lead trial attorney, obtaining the largest single-plaintiff jury verdict on behalf of an incapacitated adult in Kitsap County, Washington ($2.6 million); and the lead trial attorney, obtaining the largest single-plaintiff settlement on behalf of a developmentally disabled adult in eastern Washington ($2.25 million) and incapacitated child ($4.5 million) in Spokane County, Washington.

Mr. Moody is actively involved in advocacy for citizens with disabilities, is a member of the Arc of King County, and the Arc of Washington State.

# DAVID S. NALVEN

**Direct Dial: (617) 475-1953**

**Email: davidn@hbsslaw.com**

Mr. Nalven is a partner at Hagens Berman Sobol Shapiro's Cambridge office where he has worked since 2004. His practice focuses on prosecution of multi-state and nationwide class actions involving the pharmaceutical industry, securities fraud, and consumer protection.

Mr. Nalven has been appointed class counsel in the **Serostim Off-Label Marketing Litigation**, and serves as one of the lead counsel in the **TriCor Indirect Purchaser Antitrust Litigation,** and on the direct purchaser class executive committee in the **Ovcon Antitrust Litigation.** Mr. Nalven has also worked extensively on the nationwide **Average Wholesale Price Litigation** and in the representation of the State of Connecticut in multiple prescription drug pricing matters.

Prior to joining the firm, Mr. Nalven served as Chief of the Business and Labor Protection Bureau in the Massachusetts Attorney General's Office, where he oversaw a staff of more than 100 on all cases and initiatives involving healthcare fraud, insurance fraud, workplace offenses, and other civil and criminal business matters.

Mr. Nalven graduated *magna cum laude* from University of Pennsylvania in 1980 with a bachelor's degree in English, and from New York University School of Law in 1985, where he was Senior Research Editor of the *Annual Survey of American Law*. After law school, Mr. Nalven served as a law clerk to the Honorable John R. Gibson of the United States Court of Appeals for the Eighth Circuit. Mr. Nalven is admitted to practice in Massachusetts and New York.

# EDWARD NOTARGIACOMO

**Direct Dial: (617) 475-1960**

**Email: ed@hbsslaw.com**

Mr. Notargiacomo is a partner at Hagens Berman Sobol Shapiro's Cambridge office where he has worked since 2002. He joined the firm to focus on complex consumer, commercial and antitrust litigation. His recent cases include the **Average Wholesale Price Litigation** and other class-action suits aimed at pharmaceutical companies who illegally attempt to deny market access to manufacturers of cheaper generic pharmaceuticals.

Mr. Notargiacomo's extensive experience in complex cases includes consumer class actions against predatory lenders and employment litigation against a major retail chain, as well as intense involvement in high-profile impact litigation against cigarette manufacturers, the firearms industry and pharmaceutical manufacturers.

Prior to joining the firm, he served as special assistant attorney general for Massachusetts in its suit against the tobacco industry. Mr. Notargiacomo played a major role in discovery in that case, including the defense of more than 45 depositions of state agency employees and led the effort to marshal documents and exhibits in preparation for trial. He also helped represent Rhode Island, New Hampshire and Maine in their suits against the tobacco industry. In another case, he represented the city of Boston in its suit against gun manufacturers and distributors in order to force them to take responsibility for some of the violence perpetrated with firearms that are negligently and illegally distributed in cities like Boston.

Mr. Notargiacomo received his bachelor's degree from Brown University in 1989. He earned his law degree with honors from Boston University in 1994 where he served on the *Boston University Public Interest Law Review*. He is admitted to practice in Massachusetts and in the U.S. District Court for the District of Massachusetts.

# CHRISTOPHER A. O'HARA

**Direct Dial: (206) 268-9351**

**Email: chriso@hbsslaw.com**

Mr. O'Hara is a partner at Hagens Berman Sobol Shapiro where he has worked since 1997. He practiced for nearly four years in the firm's Phoenix office before returning to the Seattle office, where he currently concentrates on antitrust, consumer, and pharmaceutical class actions.

Mr. O'Hara serves as plaintiffs' counsel in the third party payor **Zyprexa** litigation, **Medtronic** and **Guidant** actions, as well as the price fixing litigation against the Hydrogen Peroxide industry.  An active member of the firm's Microsoft defense team, he negotiates claims administration policy and processing rules on behalf of Microsoft in twenty consumer class action state settlements around the country.

While in Phoenix, Mr. O'Hara deposed more than a dozen of big tobacco's expert witnesses, research scientists and marketing executives for the **Tobacco Litigation**, focusing predominantly on the Arizona case.  He also defended the depositions of Arizona's national and local expert witness, while contributing to all aspects of discovery and motion practice.  Mr. O'Hara played a leading role in the firm's successful defense of the state of Arizona against a claim brought by several Arizona Counties in the aftermath of the state's tobacco litigation.

Prior to joining the firm, Mr. O'Hara focused on property loss subrogation and professional liability defense at a Seattle-area law firm.

Mr. O'Hara earned his bachelor's degree in political science and French language and literature from the University of Washington in 1987. He subsequently graduated *cum laude* from Seattle University School of Law and is admitted to practice in state and federal courts in Arizona and Washington, as well as the United States Court of Appeals for the Ninth Circuit.

# GEORGE W. SAMPSON

**Direct Dial: (206) 224-9345**

**Email: george@hbsslaw.com**

Mr. Sampson is a partner at Hagens Berman Sobol Shapiro where he has worked since 1994. He joined the firm to focus on antitrust and consumer class actions, and currently serves as co-lead counsel in the **Disposable Contact Lens Litigation** and the **Visa/MasterCard** debit card case. He also helped develop antitrust claims in the **Tobacco Litigation**.

Prior to joining the firm, Mr. Sampson served as chief of the Antitrust Bureau for the New York Attorney General's Office. Mr. Sampson oversaw a 22 person staff and managed case selection and investigation for all civil and criminal prosecutions. He also served as attorney general liaison to the federal-state Executive Working Group-Antitrust. His position as chief involved a heavy trial practice, primarily in federal courts and often in conjunction with several states.

During his 10 years with the Antitrust Bureau, Mr. Sampson's notable cases included winning a $7.8 million jury verdict in a highway bid rigging trial, serving as lead counsel for New York and obtaining a $30 million settlement in insurance antitrust litigation, and negotiating a $15 million return to consumers in a resale price maintenance settlement with Nintendo.

Mr. Sampson earned his bachelor's degree in economics from Cornell University and graduated from New York University School of Law in 1977. A member of both the Washington and New York state bars, he sits on the Executive Committee of the Antitrust and Consumer Protection of the Washington State Bar Association and frequently speaks on antitrust issues. Mr. Sampson is admitted before the U.S. Supreme Court and numerous federal courts of appeal.



## ANTHONY D. SHAPIRO

**Direct Dial: (206) 268-9352**
**Email: tony@hbsslaw.com**

Mr. Shapiro is a partner at Hagens Berman Sobol Shapiro where he concentrates on antitrust matters, environmental and general commercial disputes, and leads the firm's **Personal Injury Group**. His personal injury practice includes cases of wrongful death, brain injury, and catastrophic personal injury matters resulting from construction site, workplace and automobile accidents, as well as product liability.

Mr. Shapiro's work prosecuting plaintiffs' claims against the **Alyeska Pipeline Service Company** resulting from the 1989 **Exxon Valdez Oil Spill** ultimately resulted in a $98 million settlement for plaintiffs. Other notable antitrust class actions include **Brand Name Prescription Drug Antitrust Litigation**, **Carbon Dioxide Antitrust Litigation**, **Carpet Antitrust Litigation**, **Infant Formula Antitrust Litigation**, **Baby Food Antitrust Litigation**, **Scouring Pads Antitrust Litigation**, **Medical X-Ray Film Antitrust Litigation**, **High Fructose Corn Syrup Antitrust Litigation**, **Visa/MasterCard Antitrust Litigation**, **Commercial Tissue Products Antitrust Litigation**, **Flat Glass Antitrust Litigation**, **Lease Oil Antitrust Litigation**, and **Bromine Antitrust Litigation**.

Prior to leading the firm's personal injury litigation practice, Mr. Shapiro honed his courtroom skills in the Washington state prosecuting attorney's office, where he represented the state in more than 50 serious felony jury trials, including some of the state's most difficult and high-profile cases. Following his position at the prosecuting attorney's office, he joined Schweppe Krug & Tausend, then Seattle's oldest law firm, where he used his extensive courtroom experience to serve personal injury clients. He subsequently founded Rohan Goldfarb & Shapiro, a firm focusing on personal injury cases as well as commercial litigation and antitrust work.

Very involved in issues concerning juvenile diabetes, Mr. Shapiro has served as a board member of the Western Washington chapter of the Juvenile Diabetes Foundation for four years.

Mr. Shapiro was given an AV rating by Martindale-Hubbell, the highest rating a lawyer can obtain, indicating a very high to preeminent legal ability and exceptional ethical standards as established by confidential opinions from members of the Bar.

Mr. Shapiro graduated from Colgate University with honors and earned his law degree from Georgetown University Law Center in 1982.

## THOMAS M. SOBOL

**Direct Dial: (617) 475-1950**
**Email: tom@hbsslaw.com**



Mr. Sobol is the managing partner of Hagens Berman Sobol Shapiro's Cambridge office, and handles numerous pharmaceutical and consumer class actions for the firm.

Mr. Sobol currently leads drug pricing litigation efforts against several pharmaceutical companies in order to remedy overcharges to consumers and other payors of brand name and generic drugs. Some current matters include the **Average Wholesale Price Litigation**, **Zyprexa Litigation, Wellbutrin Antitrust Litigation** and **First DataBank Litigation**. He is lead counsel for the Prescription Access Litigation (PAL) Project, the largest coalition of health care advocacy groups that have joined together to fight illegal, loophole-based overpricing by pharmaceutical companies. PAL has approximately 85 organizational members and is located in more than 30 states.

In the groundbreaking **Tobacco Litigations**, Mr. Sobol represented the states of Massachusetts, New Hampshire, and Rhode Island and served as lead private counsel for Massachusetts and New Hampshire.

These cases led to significant injunctive relief and monetary recovery in excess of $10 billion to those states.

For many years, Mr. Sobol was a leader for the New England Shelter for Homeless Veterans (NESHV) in Boston, Massachusetts, and served as chairman of the board of its company, the Vietnam Veterans Workshop, Inc., from 1995 to 2002. The shelter is a national model for homeless services, and NESHV is one of the largest private organizations delivering services to homeless veteran families and other veterans in need.

Mr. Sobol is a leader in the Massachusetts legal and healthcare community, serving on the board of Health Law Advocates, Inc., a non-profit legal organization that assists in health access for the poor. In 2000, the *National Law Journal* named Mr. Sobol as one of Massachusetts' 10 leading litigators.

Mr. Sobol is a member of the bars of Massachusetts, Rhode Island, the U.S. District Court for Massachusetts and Rhode Island, and the United States Court of Appeals, First Circuit.

Mr. Sobol graduated *summa cum laude* from Clark University in Worcester, Massachusetts in 1980 and was elected to Phi Beta Kappa in 1979. He graduated from Boston University School of Law *cum laude* in 1983. Tom then served as a judicial clerk for then-Chief Justice Allan M. Hale of the Massachusetts Appeals Court from 1983 to 1984.


## CRAIG R. SPIEGEL

**Direct Dial: (206) 268-9328**

**Email: craig@hbsslaw.com**

Mr. Spiegel is a partner at Hagens Berman Sobol Shapiro where his practice primarily focuses on class actions in employee litigation. Recent cases include actions against **Abbott Laboratories** and the **Boeing Race Litigation**.

Prior to joining the firm, Mr. Spiegel served as co-counsel for plaintiffs in numerous class actions. As lead counsel for several hundred investors who lost substantial sums of money from investments with Property Mortgage Company, he obtained an $8 million settlement. Mr. Spiegel also helped represent a class of investors that lost millions of dollars investing in the production of oil after the court certified a class based on his argument.

In litigation with AT&T, Mr. Spiegel's briefs and oral argument compelled the Ninth Circuit to reverse a summary judgment, obtaining a substantial sum for his client, a company that alleged that AT&T unlawfully changed its policies to drive the company out of business. In another notable case, he served as co-counsel for a family of three that was rendered homeless when a Santa Barbara businessman towed away their trailer, claiming it was on his land, reselling the vehicle and most of their possessions. He helped obtain a jury verdict of $225,000 for the family, after another attorney had obtained a $15,000 non-binding judicial arbitration award.

Mr. Spiegel graduated *summa cum laude* from St. Olaf College in 1975 and *cum laude* from Harvard Law School in 1979. Admitted to practice before several federal district and appellate courts, he is a member of the California, Illinois and Washington bars.

# JEFFREY T. SPRUNG

**Direct Dial: (206) 224-9329**

**Email: jeffs@hbsslaw.com**

Mr. Sprung is a partner at Hagens Berman Sobol Shapiro where he has worked since 1994. Mr. Sprung specializes in government fraud suits brought under the False Claims Act, representing whistleblowers serving as "private Attorneys General."

Mr. Sprung has sued a variety of companies, including the Compaq Computer Corporation, which resulted in a large, multi-state settlement on behalf of computer users; contractors for the U.S. Department of Energy concerning accounting fraud at the largest nuclear clean-up site in Hanford, Washington; health care providers and pharmaceutical companies for Medicare and Medicaid fraud; and military contractors for procurement fraud

Mr. Sprung's expertise also includes prosecuting class actions for consumer fraud, employment discrimination and civil rights violations. He is extensively involved in race and gender employment discrimination class actions against The Boeing Company, and has handled class litigation arising from the use of slave and forced labor by Germany and Japan during World War II. He also worked on cases against foreign mining companies accused of destroying and contaminating indigenous people's land and committing human rights abuses.

Prior to joining the firm, Mr. Sprung was an Assistant U.S. Attorney in the Office of the U.S. Attorney for the District of Columbia, where he specialized in civil fraud matters. He won the first civil suit for mail, wire and bank fraud brought in the District of Columbia, as well as the first civil suit brought by the government to punish insider trading in the mortgage-backed securities market. He served on a U.S. presidential campaign in 1988, after working at a large law firm in Washington, D.C. where he started his legal career.

Mr. Sprung is very active in the legal community. He was editor and contributing author of a leading practitioners' guide on civil legal remedies in United States courts for hate crimes. He also speaks on the False Claims Act and international human rights to various law schools, including the University of Washington law school, and various trade groups. He is a member of the Washington State Bar Association, the Federal Bar Association, and the Association of Former Assistant U.S. Attorneys.

Mr. Sprung graduated *magna cum laude* and Order of the Coif from the University of Michigan in 1981 and received his law degree from the University of Chicago Law School in 1984. He is admitted to practice in the state of Washington and the District of Columbia, and he has appeared in numerous cases before United States district courts and courts of appeals.

# ANDREW M. VOLK

**Direct Dial: (206) 224-9371**

**Email: andrew@hbsslaw.com**

Mr. Volk is a partner at Hagens Berman Sobol Shapiro where he has worked since 1996.

Mr. Volk was extensively involved in the **Tobacco Litigation**. He wrote many of the major briefs on behalf of the states represented by the firm. In addition, he helped research and develop legal theories used in the action, and headed the successful attack on defendants' claims that millions of documents were privileged.

More recently, Mr. Volk has worked on ERISA cases for breach of fiduciary duties, including claims on behalf of current and former employees of **Enron**, **IPALCO,** the **Montana Power Company,** and

**General Motors.** Mr. Volk has also worked on a variety of consumer protection cases, including the current case against Expedia, as well as RICO and employment discrimination cases.

Prior to joining the firm, Mr. Volk taught legal writing and research at the University of Oregon School of Law. He also spent three years as a staff attorney at the Criminal Appeals Bureau of the Legal Aid Society in New York City.

Mr. Volk earned his undergraduate degree from Columbia University. He graduated *cum laude* from Cornell Law School in 1991 and served as an articles editor of the *Cornell International Law Journal*. He is admitted to practice in New York, Oregon and Washington.

## TYLER S. WEAVER

**Direct Dial: (206) 268-9355**
**Email: tyler@hbsslaw.com**

Mr. Weaver is a partner at Hagens Berman Sobol Shapiro where he has worked since 2001. He litigates in a wide variety of practice areas, with an emphasis on consumer litigation.

Mr. Weaver's litigation at the firm has included the Raytheon Litigation, which resulted in a $39 million settlement on behalf of shareholders of Washington Group, Inc.; a $2.2 million settlement on behalf of Washington consumers unlawfully charged collection fees by Diamond Parking; and representation of individuals wrongfully arrested during the 1999 WTO protests in Seattle, which resulted in a favorable jury verdict and settlements of more than $1 million and extensive non-monetary relief. He has also been involved in consumer class actions concerning real estate transactions and nursing home abuses, antitrust litigation against Starbucks, and fiduciary duty litigation under ERISA (including the IPALCO and the GM ERISA litigation).

Mr. Weaver is admitted to practice in Washington and Oregon, and has made numerous appearances in United States district courts and appellate courts, as well as the trial and appellate courts of the State of Washington. Prior to joining the firm, Mr. Weaver clerked for two years for the Honorable Justin L. Quackenbush in the United States District Court for the Eastern District of Washington. He graduated *cum laude* from the University of Oregon Honors College in 1992 and received his law degree from the University of California, Berkeley School of Law (Boalt Hall) in 1996.

# Of Counsel

## JEFFREY D. FRIEDMAN

**Direct Dial: (510) 725-3031**

**Email: jeff@hbsslaw.com**

Mr. Friedman is Of Counsel at Hagens Berman Sobol Shapiro's San Francisco office where he specializes in class actions against large corporations involving securities fraud, consumer protection and privacy rights violations and has litigated numerous cases on behalf of class members resulting in multi-million dollar settlements.

Prior to joining the firm, Mr. Friedman worked with Lerach Coughlin Stoia Geller Rudman & Robbins, where he recently negotiated a multi-million dollar settlement with Dell, Inc. on behalf of nearly one million consumers, based on allegations involving Dell's bait-and-switch financing and sales practices.

Mr. Friedman's legal experience covers wide-ranging areas of corporate fraud and complex commercial transactions. From 1997-2000, Mr. Friedman was an Assistant United States Attorney in the Criminal Division of the United States Attorney's Office for the Central District of California (Los Angeles). As an AUSA, Mr. Friedman tried numerous federal cases and prosecuted matters involving investor, bank, and real estate fraud, tax evasion, narcotics trafficking, and money laundering. Prior to joining the U.S. Attorney's office, Mr. Friedman clerked for the Honorable Manuel L. Real, United States District Court Judge, Central District of California.

Mr. Friedman graduated with a Bachelor of Arts degree in political science from the University of Washington in 1991, where he was a member of the varsity baseball team. Mr. Friedman obtained his law degree, *magna cum laude*, from Santa Clara University School of Law in 1994, where he was on the Dean's list, an Emery School of Law Merit Scholarship Recipient, and a research assistant to the Dean of the law school. Mr. Friedman is a guest lecturer on class action practice at Stanford Law School. He is licensed to practice law in California and admitted in the Central and Northern Districts and the United States Court of Appeals for the Ninth Circuit.

## NICHOLAS STYANT-BROWNE

**Direct Dial: (206) 268-9373**

**Email: nick@hbsslaw.com**

Mr. Styant-Browne is Of Counsel at Hagens Berman Sobol Shapiro where he has practiced class-action and multi-plaintiff litigation since 2001. Recent projects include **Rio Tinto Litigation** for human rights and environmental abuses in respect of the Panguna mine on the Pacific island of Bougainville.

Prior to joining the firm, Mr. Styant-Browne was one of five senior partners at Australia's largest plaintiff law firm working on class actions, environmental litigation and antitrust litigation. He served as co-counsel on Australia's largest class action against a wholly owned subsidiary of Exxon, arising out of a gas plant explosion which shut down the gas supply to Melbourne and most of the State of Victoria for 10 days.

As lead counsel in a landmark case against BHP (now BHP Billiton), Mr. Styant-Browne's meticulous outlining of the environmental devastation caused by the Ok Tedi mine in Papau New Guinea helped force mining companies adopt stricter environmental standards in developing countries.

Mr. Styant-Browne's practice has involved several projects in the Pacific Rim, acting principally on behalf of the indigenous peoples of poor developing Pacific nations claiming environmental and human rights abuses. His successes and passion for the causes of indigenous peoples have led to him being retained by the national governments of Pacific States including Tuvalu and the Kingdom of Tonga.

HAGENS BERMAN SOBOL SHAPIRO LLP

# The Associates

## LEONARD W. ARAGON

**Direct Dial: (602) 224-2629**

**Email: leonard@hbsslaw.com**

Mr. Aragon is an associate at Hagens Berman Sobol Shapiro's Phoenix office. Prior to joining the firm, Leonard spent four years practicing in the areas of commercial litigation, election law and appellate advocacy at a Phoenix-based firm.

At his former firm, Mr. Aragon handled numerous initiative, referendum and redistricting matters, including representing the Arizona Independent Redistricting Commission in lawsuits related to Arizona's congressional and legislative redistricting following the 2000 census. Additionally, he represented candidates from all levels of state and federal government.

Mr. Aragon is committed to pro bono and community service. He has represented numerous pro bono clients in the areas of insurance, immigration, family, and contract law, and serves on the board of directors of EMPACT-SPC (one of Arizona's largest behavioral health organizations). He also recently served as the co-chair for a major Valley fundraiser benefiting children's charities.

Before attending college, Mr. Aragon was a scout for the 2/68 Armored Tank Battalion. During that time, he was awarded the Army Achievement Medal and several expert marksmanship badges.

Mr. Aragon graduated *summa cum laude* from Arizona State University in 1998 with degrees in History and Political Science. He received his law degree from Stanford Law School in 2001. He is a member of the State Bar of Arizona and is admitted to practice in Arizona and Colorado federal district court.

## IVY D. ARAI

**Direct Dial: (206) 268-9358**

**Email: ivy@hbsslaw.com**

Ms. Arai is an associate at Hagens Berman Sobol Shapiro where she has worked since 2002. She specializes in class actions, including employment discrimination, consumer protection, antitrust, and environmental law.

Among her most recent cases, Ms. Arai worked on a $1 billion dollar settlement for uninsured individuals against **Tenet Healthcare**. Currently, her work focuses on consumer protection cases, including **Mattel** and the **Thomas the Train** Lead Paint Litigation against RC2 and Learning Curve Brands. Ms. Arai is also working in class action suits against the Boeing Company for employment discrimination, and **Babies "R" Us** for antitrust violations.

Ms. Arai graduated *cum laude* from Princeton University. She subsequently earned her law degree from Georgetown University Law Center where she served on the *Georgetown International Environmental Law Review*. During law school, Ms. Arai also worked as a judicial extern for Judge Thomas S. Zilly of the United States District Court for the Western District of Washington. She is admitted to practice law in the state of Washington.

## LAUREN GUTH BARNES

**Direct Dial: (617) 475-1957**

**Email: lauren@hbsslaw.com**

Ms. Barnes is an associate at Hagens Berman Sobol Shapiro's Cambridge office where she has worked since 2003. Her work has involved consumer protection, product liability, personal injury, and RICO litigation against drug and medical device manufacturers, including Eli Lilly, Guidant, Medtronic, and DePuy Spine. Ms. Barnes has had an active role in several recent preemption wins, enabling consumers and third party payers to continue consumer protection litigation against medical device makers.

Prior to joining the firm, Ms. Barnes worked with Conflict Management Group, a non-profit organization dedicated to promoting peaceful resolution of international disputes and teaching negotiation skills. During her association with the organization, Ms. Barnes worked with members of the United Nations High Commissioner for Refugees on a pilot project in Bosnia-Herzegovina designed to ease tensions and encourage reconciliation. Ms. Barnes helped edit a book developed out of the project – "Imagine Coexistence" – and contributed a chapter to it.

Ms. Barnes graduated *cum laude* from Williams College in 1998 with a Bachelor of Arts degree in International Relations. She earned her law degree *cum laude* from Boston College Law School in 2005, where she served as Articles Editor for the *Boston College Law Review*. She is admitted to practice law in the Commonwealth of Massachusetts and is active in the American Association for Justice and the Massachusetts Academy of Trial Attorneys.

## PETER E. BORKON

**Direct Dial: (510) 725-3033**

**Email: peterb@hbsslaw.com**

Mr. Borkon is an associate at Hagens Berman Sobol Shapiro's San Francisco office where he has worked since 2007. His practice is focused on complex civil litigation, particularly securities and antitrust class actions and shareholder derivative suits.

Mr. Borkon recently served as the Co-Chair of the Board of Directors of the AIDS Legal Referral Panel and serves as a member of the Bay Area Lawyers for Individual Freedoms Judicial Review Committee. He was also a Steinberg Leadership Fellow with the Anti-Defamation League.

Mr. Borkon graduated from DePauw University in 1992 with a Bachelor of Arts degree. He earned his law degree from Southern Illinois University at Carbondale in 1996. Since that time, he has actively engaged in the practice of law at the trial and appellate levels. Mr. Borkon clerked for the Chief Judge of the Southern District of Illinois as well as for the Ninth Circuit Court of Appeals. Mr. Borkon is admitted to practice law in Illinois and California. He is also admitted to practice before all federal courts in the states of California and Illinois as well as the Supreme Court of the United States and the Eastern and Western Districts of Wisconsin and the District of Colorado.

# ELAINE T. BYSZEWSKI

**Direct Dial: (213) 330-7150**

**Email: elaine@hbsslaw.com**

Ms. Byszewski is an associate at Hagens Berman Sobol Shapiro's Los Angeles office where she has worked since 2004. Her work has included consumer and employee protection suits against **Merck (Vioxx)**, **AstraZeneca Pharmaceuticals (Nexium)**, **Berkeley Nutraceuticals (Enzyte)**, **Solvay Pharmaceuticals (Estratest)**, **Apple Computers**, and **Costco Wholesale Corporation**, among others.

Prior to joining the firm, Ms. Byszewski focused her practice on public sector labor and employment litigation and counseling, including extensive work on a class action race discrimination case, a wrongful termination case and a disability discrimination case. During law school she worked in the trial division of the Attorney General of Massachusetts' office.

Among Ms. Byszewski's several publications are "Valuing Companion Animals in Wrongful Death Cases: A Survey of Current Court and Legislative Action and A Suggestion for Valuing Loss of Companionship" in *Animal Law Review* (2003), and "What's in the Wine? A History of FDA's Role" in *Food and Drug Law Journal* (2002).

Ms. Byszewski graduated *summa cum laude* from the University of Southern California in 1999 with a Bachelor of Science in public policy and management with a health care emphasis. She earned her law degree *cum laude* from Harvard Law School in 2002. She is admitted to practice law in the state of California.

# KIMBERLY DOUGHERTY

**Direct Dial: (617) 475-1964**

**Email: kimd@hbsslaw.com**

Ms. Dougherty is an associate at Hagens Berman Sobol Shapiro's Cambridge office where she focuses her practice on civil litigation involving catastrophic injuries, pharmaceutical and medical device mass tort litigation, wrongful death, medical malpractice and personal injury actions.

Prior to joining the firm in 2007, Ms. Dougherty litigated cases involving catastrophically injured plaintiffs across the country in various pharmaceutical mass tort litigations. She has extensive experience in every facet of complex tort litigation from fact and expert discovery to Daubert litigation and preparation for and participation in trials.

Ms. Dougherty received her law degree from Northeastern University School of Law in 2003. She earned a master's degree in social work from Columbia University as well as a bachelor's degree *magna cum laude*, with highest honors in psychology, from Clark University and was elected to Phi Beta Kappa in 1997. Ms. Dougherty is a member of the Bar of Massachusetts. She is also a member of the American Association for Justice, the Massachusetts Academy of Trial Attorneys, is on the legislative policy committee for the Women's Bar Association of Massachusetts and is a pro bono attorney with the Women's Bar Foundation representing victims of domestic violence in probate matters.

## STEVE FIMMEL

**Direct Dial: (206) 268-9362**

**Email: stevef@hbsslaw.com**

Mr. Fimmel is an associate at Hagens Berman Sobol Shapiro where he has worked since 2006, bringing over 13 years of experience working on high-value, document intensive cases.  He worked for 5 years at Oles, Morrison, Rinker & Baker where he was a key member of the litigation team that won a judgment in Idaho Federal District Court involving claims exceeding $400 million.  The court sustained an unprecedented Termination for Default against the Lockheed-Martin Corporation for breach of contract to remediate a nuclear waste site at the Idaho National Engineering Laboratory.

Prior to his work at Oles, Morrison, Rinker & Baker, Mr. Fimmel was an associate for seven years representing Hanford Downwinders at the Hanford Litigation Office in Seattle.  Prior to his work at the Hanford Litigation Office, he was a sports anchor and reporter for KHQ-TV, Spokane's NBC affiliate.  Through his senior year at the University of Washington and while attending law school at Lewis & Clark in Portland, Mr. Fimmel was the sports play-by-play and color broadcaster for Seattle's KCTS-TV on Seattle Sounder and Washington Husky basketball telecasts.

Mr. Fimmel is admitted to the Washington State Bar, the Federal Court for the Eastern District of Washington, and the Ninth Circuit Court of Appeals.

## DEBRA A. GAW

**Direct Dial: (617) 475-1956**

**Email: debrag@hbsslaw.com**

Ms. Gaw is an associate at Hagens Berman Sobol Shapiro's Cambridge office where she has worked since 2005.

Prior to joining the firm, Ms. Gaw was Vice President of Intellectual Property for a start-up pharmaceutical company.  Ms. Gaw has served as intellectual property counsel, both in-house and in law firms, where she gained extensive experience counseling clients in all phases in the development, expansion, and defense of intellectual property portfolios.  Her clients included start-up and development stage companies, mid-sized corporations, and world class investigators in major academic institutions.

Ms. Gaw has specialized in the patent prosecution, trade secret protection and trademark issues unique to the pharmaceutical, biotechnology, and medical device industries.  She has obtained patents for her clients in the areas of oncology, inflammatory diseases, antibacterial, antifungal and antiviral drugs, molecular imaging, diagnostic imaging, ultrasonic medical devices, replacement organs and tissues, surgical equipment, diagnostic assays, and nanotechnology-based biomedical devices.  She has also developed patent portfolios for clients in the industrial chemical industry, primarily in coatings, paints, pigments, and polymeric materials.  She has significant experience negotiating intellectual property license agreements, and the contracts common to the pharmaceutical industry.

Prior to her law career, Ms. Gaw was a polymer chemist developing specialty paints, coatings, adhesives and polymer materials; later she obtained extensive experience in regulatory affairs and clinical affairs in the pharmaceutical industry.  Additionally, Ms. Gaw is named as a co-inventor on several patent applications, the technology of which are currently marketed or under development by various companies.

Ms. Gaw's case experience includes patent-related antitrust litigation against the brand-name prescription drug industry.

Ms. Gaw earned a Bachelor of Arts in Natural Science from St. Anshelm College.  She did advanced coursework in biotechnology, polymer chemistry, food and drug law and international intellectual

property law.  She earned her law degree from Franklin Pierce Law Center.  She is admitted to practice in Massachusetts, the District of Massachusetts, the Court of Appeals for the Federal Circuit, and the United States Patent and Trademark Office.  She has lectured on the conflict of laws between trademark law and FDA law in drug labeling, and various topics in securing and defending intellectual property rights for inventors and companies.

## LEE M. GORDON

**Direct Dial: (213) 330-7136**

**Email: lee@hbsslaw.com**

Mr. Gordon is an associate at Hagens Berman Sobol Shapiro's Los Angeles office where his practice focuses on complex class actions.  His recent cases include consumer and antitrust actions against several major pharmaceutical companies, and an employee protection suit against Costco.

Prior to joining the firm, Mr. Gordon's practice covered a broad spectrum of complex litigation matters. He represented and advised clients in antitrust litigation, employment litigation, single-state and nationwide class actions, breach of contract and breach of warranty litigation, intellectual property cases, real estate and land use disputes, and matters involving challenges to government regulations.

Mr. Gordon's employment law work included race discrimination, wrongful termination, disability discrimination, and compensation disputes.  His class action work has included complex securities and unfair business practices litigation involving multi-million dollar claims against major public financial institutions and healthcare organizations such as Bank of America, Bear Stearns, and Paracelsus Healthcare Corporation.

Mr. Gordon graduated *summa cum laude* from the University of California at Los Angeles with a bachelor's degree in Philosophy.  In 1994, he earned his law degree from Harvard Law School, graduating *cum laude*.  In 2002, he also received an MBA from the Anderson Graduate School of Management at UCLA, where he graduated with honors and received fellowship grants.  Mr. Gordon is admitted to practice law in the state of California.

## LISA M. HASSELMAN

**Direct Dial: (206) 268-9363**

**Email: lisah@hbsslaw.com**

Ms. Hasselman is an associate at Hagens Berman Sobol Shapiro where she has worked since 2006.  She focuses on class action litigation, and has been instrumental in the Bextra/Celebrex MDL.

Prior to joining the firm, Ms. Hasselman was an associate at Danielson Harrigan Leyh & Tollefson in Seattle.  While there, she participated on every level in complex state and federal litigation actions including drafting and arguing summary judgment motions, depositions, mediating cases and preparing and participating in a multi-party trial.

Ms. Hasselman has served on the board of Chaya, a non-profit addressing domestic violence in local South Asian communities.  She has volunteered for multiple local legal aid organizations including the Northwest Women's Law Center's Self Help Committee, the Refugee Immigrant Advocacy Project, the Public Interest Law Association, Immigrant Families Advocacy Project, Street Youth Legal Advocates of Washington and King County Bar Association's Neighborhood Legal Clinics.

Ms. Hasselman graduated from the University of Michigan in 1996 with a Bachelor of Arts, English and Cultural Anthropology.  She earned her law degree from the University of Washington School of Law in 2001.  After law school, she clerked for the Honorable Marlin J. Appelwick at the Washington State Court of Appeals.

## DANIEL KUROWSKI

**Direct Dial: (708) 776-5606**

**Email: dank@hbsslaw.com**

Mr. Kurowski is an associate at Hagens Berman Sobol Shapiro's Chicago office where he has worked since 2006. He joined the firm after serving in various capacities for a number of federal judges sitting with the U.S. District Court for the Northern District of Illinois. Following law school, Mr. Kurowski served as a judicial clerk for Judge Paul E. Plunkett and also for Magistrate Judge Maria Valdez. Additionally, he worked as a judicial extern for Judge Ronald A. Guzman during law school.

Mr. Kurowski graduated with honors from Loyola University Chicago. He earned his law degree *cum laude* from The John Marshall Law School in 2005. While there, he served as an editorial board member for the *John Marshall Law Review* and received an award for an appellate brief he submitted in connection with a national moot court competition. During law school, he also interned with the U.S. Attorney's Office for the Northern District of Illinois and with the U.S. Department of Housing and Urban Development, where he assisted in the investigation of housing discrimination complaints. He is admitted to practice law in the state of Illinois as well as in the U.S. District Court for the Northern District of Illinois.

## JEFFREY A. LANG

**Direct Dial: (206) 268-9357**

**Email: jeffl@hbsslaw.com**

Mr. Lang is an associate at Hagens Berman Sobol Shapiro where he is involved in the firm's pharmaceutical litigation.

Mr. Lang has several years of experience across a variety of practice areas. Prior to joining the firm, he practiced law at Preston Gates Ellis, where he was involved in the Microsoft antitrust litigation. He also gained experience in land-use, SEPA, and zoning and building compliance through his positions with the Whalen & Company and the Law Offices of Dan Clawson.

Mr. Lang received his bachelor's degree from the University of Washington, and earned his law degree from the University of Puget Sound School of Law. He is admitted to practice in the state of Washington.

## ROBERT F. LOPEZ

**Direct Dial: (206) 268-9304**

**Email: robl@hbsslaw.com**

Mr. Lopez is an associate at Hagens Berman Sobol Shapiro where he has worked since 2004. He brings to the firm a broad range of legal experience including, complex commercial, franchise, and intellectual property, including trademark and trade-name, litigation; the law of trademark, trade name, and copyright; and commercial transactions.

Prior to joining the firm, Mr. Lopez was a founding member and owner of the Seattle firm Socius Law Group. His previous work included prosecuting and defending matters in the federal and state trial courts, including the probate department of the state superior court, and also federal and state administrative tribunals, the federal bankruptcy court, and the federal and state courts of appeal.

Mr. Lopez graduated from Gonzaga University in 1986 with a bachelor's degree in English Literature. He received his law degree in 1991 from the University of Washington, and is admitted to practice in the state of Washington.

# BARBARA A. MAHONEY

**Direct Dial: (206) 268-9308**

**Email: barbaram@hbsslaw.com**

Ms. Mahoney is an associate at Hagens Berman Sobol Shapiro where she has worked since 2006.  She brings broad experience in complex commercial litigation, including unlawful competition, antitrust, securities, trademark, CERCLA, RICO, FLSA as well as federal aviation and maritime law.

Prior to joining the firm, Ms. Mahoney was an associate at Danielson Harrigan Leyh & Tollefson in Seattle.  While there, she participated on every level in state and federal litigation actions including taking and defending depositions, drafting discovery requests, motions and mediation briefs and preparing for trials.

Ms. Mahoney was named a 2005 "Rising Star" by *Washington Law & Politics.*  She enjoys soccer and running and is a former director of Rain City Soccer.  Ms. Mahoney has volunteered at the Downtown Neighborhood Legal Clinic and is a Q Law mentor and a Cooperating Attorney with American Civil Liberties Union of Washington.  With Justice Richard Sanders she co-authored *Restoration of Limited State Constitutional Government: A Dissenter's View,* 59 N.Y.U. Ann. Sur. Am. L. 269 (2003).

Ms. Mahoney graduated from the University of Washington School of Law in 2001.  She also has a PhD in philosophy from the Universtät Freiburg, where she graduated *magna cum laude* in 1993.  As a result of her many years in Europe and teaching in the United States she is fluent in German and has a strong reading knowledge of French.  After law school, Ms. Mahoney clerked for the Honorable Saundra Brown Armstrong of the Northern District of California and the Honorable Justice Richard B. Sanders of the Washington Supreme Court.  Ms. Mahoney is admitted to practice law in the state of Washington, U.S. District Court for the Western District of Washington, U.S. District Court for the Eastern District of Washington, and the Ninth Circuit Court of Appeals.

# TIMOTHY P. MAHONEY

**Direct Dial: (708) 776-5605**

**Email: timm@hbsslaw.com**

Mr. Mahoney is an associate at Hagens Berman Sobol Shapiro's Chicago office where he has worked since 2006.

Prior to joining the firm, Mr. Mahoney practiced as Senior Counsel with Neal Gerber Eisenberg LLP in Chicago.  At Neal Gerber, Mr. Mahoney was a key member of a team of lawyers attempting to thwart a Fortune 10 company's efforts to pass billions of dollars of its environmental and asbestos liabilities on to the re-insurers of the company's captive insurer by deceitfully re-domesticating the captive insurance company to Bermuda, only to declare it bankrupt to attempt to take advantage of Bermuda's creditor friendly liquidation scheme.  While at Neal Gerber, Mr. Mahoney also litigated products liability, professional liability, insurance coverage and complex commercial matters.  Mr. Mahoney has first and second chair jury and bench trial experience, and has argued before the Illinois Appellate Court.

Mr. Mahoney graduated from IIT Chicago-Kent College of Law in 1993.  In 2001, he earned a Masters of Business Administration with concentrations in finance and eBusiness at Case Western Reserve University's Weatherhead School of Management.  While in business school Mr. Mahoney worked at a start-up eBusiness company in Cleveland, Ohio, where his duties included identifying and negotiating with potential strategic partners.  Mr. Mahoney is admitted to practice law in the state of Illinois, the Northern District of Illinois and before the Seventh Circuit Court of Appeals.

## GREGORY H. MATTHEWS

**Direct Dial: (617) 475-1959**

**Email: gregm@hbsslaw.com**

Mr. Matthews is an associate at Hagens Berman Sobol Shapiro's Cambridge office where he has worked since 2005. Mr. Matthews' varied dossier includes experience in a variety of areas, such as tax, social security, bankruptcy, labor and employment, civil rights, immigration, disability, copyright and trademark law.

Prior to joining the firm, Mr. Matthews was an assistant district attorney for the Middlesex County District Attorney's Office. In this position he analyzed, drafted and litigated appeals before the Supreme Judicial Court and the Appeals Court. He also maintained an extensive caseload of 150 cases in various stages of prosecution, encompassing both bench and jury trials.

Mr. Matthews also gained experience as an attorney with the Court of Appeals for the Ninth Circuit in San Francisco, California. In this position he researched and drafted bench memoranda and depositions for the court and orally presented those depositions to three-judge panels bi-monthly. He was also responsible for research in a variety of legal areas. Mr. Matthews was also an attorney with the Sierra Club Legal Defense Fund, where he worked on issues related to the Endangered Species Act, Environmental Policy Act and National Forest Management Act.

Mr. Matthews received his bachelor's degree in legal studies from Northeastern University in Boston, Massachusetts where he also earned his law degree. He is admitted to practice in the Commonwealth of Massachusetts.

## MARTIN D. MCLEAN

**Direct Dial: (206) 268-9359**

**Email: martym@hbsslaw.com**

Mr. McLean is an associate at Hagens Berman Sobol Shapiro where he has worked since 2007.

## SHANA E. SCARLETT

**Direct Dial: (510) 725-3032**

**Email: shanas@hbsslaw.com**

Ms. Scarlett is an associate at Hagens Berman Sobol Shapiro's San Francisco office where she specializes in the prosecution of class actions, including securities fraud, consumer protection and privacy rights violation. Among her most recent cases, she worked along side HBSS and co-counsel, Reed Kathrein, on a $1 billion settlement with Tenet Healthcare.

Ms. Scarlett has worked in the San Francisco area since 2001 and has had her hand in several large cases. She participated in *In re National Security Agency Telecommunications Record Litigation*, and in particular the lead case, *Hepting, et al. v. AT&T, et al.*, defeating motions of several telecommunications companies and the Department of Justice.

Ms. Scarlett was also a member of the litigation team in *In re Sony BMG Audio Compact Disc Litigation*, where she helped plaintiffs to secure a multi-million dollar settlement for consumers and an agreement from Sony BMG to stop using harmful rootkit software that created a number of serious security, privacy and consumer protection issues on music CDs.

Ms. Scarlett graduated with a bachelor's degree from the University of British Columbia and received her law degree from Stanford Law School.

## RONNIE SEIDEL SPIEGEL

**Direct Dial: (206) 268-9343**

**Email: ronnie@hbsslaw.com**

Ms. Spiegel is an associate at Hagens Berman Sobol Shapiro where she has worked since 2005.

Prior to joining the firm, Ms. Spiegel practiced as a senior associate at Spector Roseman & Kodroff in Philadelphia.  During her tenure at Spector Roseman & Kodroff, she also managed the firm's North Carolina office.  Ms. Spiegel has extensive experience managing complex litigation.  She has worked on trial teams, developed case strategy, and has coordinated and organized all aspects of discovery in large class action cases.

Ms. Spiegel focuses on antitrust litigation.  Her case experience includes:  *In re DRAM Antitrust Litigation; In re SRAM Antitrust Litigation; In re Brand Name Prescription Drugs Antitrust; In re NASDAQ Market-Makers Antitrust Litigation; In re Vitamins Antitrust Litigation; In re High Fructose Corn Syrup Antitrust Litigation; In re Commercial Tissue Paper Antitrust Litigation; In re Flat Glass Antitrust Litigation; and In re Linerboard Antitrust Litigation.*

Ms. Spiegel earned a Bachelor of Arts in International Relations from Boston University.  She earned her law degree from Temple University's Beasley School of Law, where she was an editor of the *Temple Law Review*.  She is admitted to practice in Washington and Pennsylvania as well as in federal court for the Eastern District of Pennsylvania and the Western District of Washington.

## SHAYNE C. STEVENSON

**Direct Dial: (206) 268-9340**

**Email: shaynes@hbsslaw.com**

Mr. Stevenson is an associate at Hagens Berman Sobol Shapiro, joining the firm in 2007, where he focuses on class action work.

He graduated first in his class from Gonzaga University in 1996 (*summa cum laude*) with a Bachelor of Arts in Philosophy and Political Science.  He was recognized as a Truman Scholar in 1995, was active in Habitat for Humanity and became a member of *Alpha Sigma Nu*.  Mr. Stevenson graduated from Yale Law School in 2000.  While at Yale, he was co-founder and director of the YLS Workers' Rights Project. While director, the Project drafted and filed a successful petition on behalf of thousands of immigrant workers under the NAFTA labor side agreement (with the endorsement of the AFL-CIO, ACLU, and numerous other civil and labor rights groups).  The Project also supported local labor organizing efforts, and collaborated with labor rights groups to fight against sweatshops in Manhattan and Brooklyn.

Additionally , he served as submissions editor of the *Yale Law and Policy Review*, participated in the Greenhaven Prison Project (a prisoner rehabilitation effort in New York), and represented tenants in New Haven against landlord abuse.  He was also an intern in the U.S. Attorney's Office in Connecticut.

Mr. Stevenson then completed two federal clerkships.  First as a law clerk to the Honorable Charles S. Haight, Jr., of the United States District Court for the Southern District of New York (2000-01); then as a law clerk for the Honorable Betty B. Fletcher, of the Ninth Circuit Court of Appeals (2001-02).

Following his clerkships, Mr. Stevenson developed his skills as a trial lawyer while working as a felony prosecutor in Seattle for over four years, successfully prosecuting hundreds of felony cases, including crimes of armed robbery, rape, murder, and assault in the first degree.  He ended his tenure with an emphasis on the most egregious crimes of domestic violence.

He is admitted to practice in the State of Washington.

## ANDREW ST. JOHN

**Direct Dial: (602) 224-2625**

**Email: andy@hbsslaw.com**

Mr. St. John is an associate at Hagens Berman Sobol Shapiro's Phoenix office.  Currently, he is involved in the firm's pharmaceutical litigation, insurance bad faith litigation, and several class actions.

Prior to, and during, his education Mr. St. John served in the United States military where he achieved the rank of sergeant.  He was a crewman and gunner on an M1A1 Abrams main battle tank in two different armored battalions and an armored cavalry unit.  His duties included being the unit retention NCO, demolitions/explosives expert, Sergeant of the Guard, and training NCO.  Sergeant St. John earned expert pistol and rifle badges and was also awarded several medals and commendations for distinguished service.

Mr. St. John graduated *magna cum laude* with a Bachelor of Science in Psychology from Arizona State University.  During his undergraduate education Mr. St. John was an intern in the Arizona Governor's Office during the 1998 legislative session.

Mr. St. John earned his law degree at the Sandra Day O'Connor School of Law, with High Pro Bono Distinction.  While in law school he served as a staff writer for the *Arizona State Law Journal* and was an extern for both U.S. District Judge Paul G. Rosenblatt and the Arizona Supreme Court Staff Attorney's Office.  Mr. St. John also represented many clients at the school's civil practice clinic.

Mr. St. John is a member of the State Bar of Arizona and is authorized to represent clients in Arizona and Colorado federal district courts.

## GENESSA A. STOUT

**Direct Dial: (206) 268-9365**

**Email: genessa@hbsslaw.com**

Ms. Stout is an associate at Hagens Berman Sobol Shapiro where she has worked since 2003. Her work has included the **Hungarian Gold Train Litigation, Bextra/Celebrex, General Motors ERISA Litigation,** and **Countrywide ERISA Litigation.**

Prior to joining the firm, Ms. Stout worked in Beijing and Cheng Du, China teaching English and Science and developing cultural exchange programs between China, the United States, and the European Union.

Ms. Stout graduated *cum laude* from the University of Washington with a Bachelor of Arts degree in Speech Communications.  She earned her law degree from Seattle University School of Law in 2006. While in law school Ms. Stout served as a staff editor for the *Seattle Journal for Social Justice* and served on the Juvenile Court Accountability Board.  During law school Ms. Stout also interned for the Federal Trade Commission where she worked on the CAN SPAM Act and the Do Not Call Registry.  She is admitted to practice law in the State of Washington.

# AMY M. WILKINS

**Direct Dial: (602) 224-2636**

**Email: amyw@hbsslaw.com**

Ms. Wilkins is an associate at Hagens Berman Sobol Shapiro's Phoenix office where she has worked since 2007.  She has focused her practice on consumer class actions and appellate work.

Prior to joining the firm, Ms. Wilkins practiced commercial litigation for six years in Phoenix and Los Angeles, focusing on consumer and employment class actions, commercial contract disputes, wrongful competition cases, and employment disputes.  She has also represented several pro bono clients.

Ms. Wilkins served on the board of directors of EMPACT-SPC (one of Arizona's largest behavioral health organizations) for two years.  She was a member of the Horace Rumpole Inn of Court and is currently involved in the Arizona Women Lawyer's Association.

Ms. Wilkins graduated *summa cum laude* from the University of Arizona in 1995 with a Bachelor of Arts in creative writing.  Prior to law school, Ms. Wilkins worked as an editor and writer in the tourism and technology fields.  She graduated *magna cum laude* from the James E. Rogers College of Law at the University of Arizona in 2001.  In law school, Ms. Wilkins served as Editor-in-Chief of the *Arizona Law Review*, was an Ares Fellow (a teaching assistant for a first-year small section), and was awarded the law school's Outstanding Senior award at graduation.  She is admitted to practice in Arizona and California.

# References

**REPRESENTATION OF STATE OF WASHINGTON IN THE TOBACCO LITIGATION**

David Walsh

1125 Washington Street S.E., P.O. Box 401

Olympia, WA 98504-0100

(360) 753-6228

**REPRESENTATION OF ARIZONA IN THE TOBACCO LITIGATION**

Former Attorney General Grant Woods
Grant Woods PC
1726 North Seventh Street
Phoenix, AZ 85006
(602) 258-2599

**REPRESENTATION OF MICROSOFT**

Richard Wallis
Microsoft Corporation
One Microsoft Way
Redmond, WA 98052-6399
(425) 882-8080

**REPRESENTATION OF INVESTMENT ADVISOR IN VARIOUS LITIGATIONS**

Brent E. Johnson
Johnson Capital Management, Inc.
12500 Fair Lakes Circle, Suite 280
Fairfax, VA 22033
(703) 803-4100

**REPRESENTATION OF NEVADA IN THE PHARMACEUTICAL LITIGATION**

L. Timothy Terry
Nevada Attorney General's Office
Medicaid Fraud Control Unit
100 North Carson Street
Carson City, NV 89701-4717
(775) 684-1191

# A Perspective on our Performance from the Bench

Remarks from the Honorable Patti B. Saris, presiding over the AWP Litigation of which Hagens Berman Sobol Shapiro was lead trial counsel.

> **THE COURT:** I wanted to express appreciation again to class counsel for taking this case. I believe these are the kinds of cases Federal Courts should do and are appropriate for class resolution. And while it's a huge burden in terms of time and resources, it's one of the things that the Multidistrict Litigation Court should appropriately do.

Perhaps one of the most telling references comes from the concluding comments of the Judge presiding over the State of Oregon's case against Big Tobacco.

> **MR. BERMAN:** Nothing further, Your Honor.

> **THE COURT:** Anything else for the record? Well, may I take just a couple more minutes of your time to say this has been an extraordinary experience from my perspective. We have a lot of emphasis in our profession these days about people complaining that lawyers are not professional, that they are not civil, they do things in the manner in which they practice that discredits the profession, and I wish those critics could have seen all of you in action.

> This has been an extraordinary experience from my perspective. I cannot conceive of another case where there has been so much at stake, and all of you, from the outsiders to local counsel, have been extraordinarily responsible to resolve as much as you could and to bring to me only the issues that really needed rulings. I cannot tell you how much I appreciate all of your work in that regard, and I know that that was you, as individuals, doing the important thing because in a case of this magnitude, with local and regional and national and international levels of attorneys, it's very hard to connect with people.

> I just hope some time before I stop during this wonderful year, I have another chance to see this kind of lawyering. *It's been stunning, and I really want to say that it's been a wonderful experience.*

> So, Hallelujah.