Reed R. Kathrein (139304)
Peter E. Borkon (212596)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
reed@hbsslaw.com
peterb@hbsslaw.com

Attorneys for Plaintiff

[Additional counsel listed on signature page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| *IN RE CHARLES SCHWAB CORP. SECURITIES LITIGATION,*<br><br>THIS DOCUMENT RELATES TO ALL ACTIONS | No. 08-cv-1510 WHA<br><br>YIELDPLUS INVESTOR GROUP'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO COMPETING MOTIONS FOR APPOINTMENT OF LEAD PLAINTIFF<br><br>DATE: July 2, 2008<br>TIME: 9:00 a.m.<br>DEPT: CR 9, 19th Floor |

## TABLE OF CONTENTS

PAGE

I. INTRODUCTION ..... 1

II. ARGUMENT ..... 3

A. The Legal Standard Governing Appointment of Lead Plaintiffs ..... 3

B. The YieldPlus Investor Group Is the Most Adequate Plaintiff ..... 3

C. The YieldPlus Investor Group Is a Proper Group Under the PSLRA ..... 4

1. The YieldPlus Investor Group Has the Largest Financial Interest as Compared to Competing Movants ..... 5

2. The YieldPlus Investor Group Satisfies Rule 23 ..... 9

D. The Presumption in Favor of YieldPlus Investor Group Has Not Been Rebutted ..... 10

E. The Motions of the Flanzraich and Peate Groups Are Untimely ..... 10

F. The Peate Group Is Not a Proper Group Under the PSLRA ..... 12

III. CONCLUSION ..... 12

# TABLE OF AUTHORITIES

**PAGE**

## CASES

*Ferrari v. Gisch*, 225 F.R.D. 599 (C.D. Cal. 2004) .......... 4

*Gluck v. Cellstar Corp.*, 976 F. Supp. 542 (N.D. Tex. 1997) .......... 10

*In re Advanced Tissue Sec. Litigation*, 184 F.R.D. 346 (S.D. Cal. 1998) .......... 4

*In re Cavanaugh*, 306 F.3d 726 (9th Cir. 2002) .......... 3, 9, 10

*In re Cendant Corp. Litigation*, 264 F.3d 201 (3d Cir. 2001) .......... 4

*In re Crayfish Co. Sec. Litig.*, No. 00 CIV 6766 (DAB), 2002 U.S. Dist. Lexis 10134 (S.D.N.Y. June 6, 2002) .......... 12

*In re Microstrategy Inc. Sec. Litigation*, 110 F. Supp. 2d 427 (E.D. Va. 2000) .......... 11

*In re Nature's Sunshine Prods., Inc.*, No. 2:06-cv-267 TS, 2006 WL 2380965, (D. Utah Aug. 16, 2006) .......... 4

*In re Network Associates Sec. Litigation*, 76 F. Supp. 2d 1017 (N.D. Cal. 1999) .......... 5, 12

*In re Surebeam Corp. Securities Litigation*, No. 03 cv 1721 JM (POR), 2004 WL 5159061 (S.D. Cal. Jan. 5, 2004) .......... 5

*In re Texalon Corp. Sec. Litigation*, 67 F. Supp. 2d 803 (N.D. Ohio 1999) .......... 11

*In re Universal Access, Inc., Sec. Litigation*, 209 F.R.D. 379 (E.D. Tex. 2002) .......... 4

*Richardson v. TVIA, Inc.*, No. C06 06304 RMW, 2007 WL 1129344 (N.D. Cal. Apr. 16, 2007) .......... 6

*Schriver v. Impac Mortg. Holdings, Inc., Number SAVC 06-31 CJC (RNBx)*, 2006 U.S. Dist. LEXIS 40607 (C.D. Cal. May 2, 2006) .......... 4

*Sczesny Trust v. KPMG LLP*, 223 F.R.D. 319 (S.D.N.Y. 2004) .......... 10

*Sofran v. LaBranche & Co.*, 220 F.R.D. 398 (S.D.N.Y. 2004) .......... 10

*Switzenbaum v. Orbital Scis. Corp.*, 187 F.R.D. 246 (E.D. Va. 1999) .......... 12

*Takara Trust v. Molex*, 229 F.R.D. 577 (N.D. Ill. 2005) .......... 6

## FEDERAL STATUTES

15 U.S.C. § 77z-1(a)(3)(B)(iii)(I) .......... 4, 10

15 U.S.C. § 77z-1(a)(3)(B)(iii)(I)(aa) .......... 11

15 U.S.C. § 77z-1(a)(3)(B)(iii)(II) .......... 4, 10

15 U.S.C. § 77z-l(a)(3)(B)(iii)(I)(bb) ........ 8

15 U.S.C. § 78u-4(a)(3)(A)(i)(II) ........ 11

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa) ........ 11

## I. INTRODUCTION

On May 16, 2008, Movants David and Gretchen Mikelonis, Kevin O'Donnell, John Hill, N. Richard Kimmel, James Coffin and Robert Dickson (referred to collectively as "YieldPlus Investor Group" or "Movant") filed a timely motion seeking consolidation of the above captioned cases, to be appointed Lead Plaintiff in these actions and for approval of Movant's selection of the law firm Hagens Berman Sobol Shapiro LLP ("Hagens Berman") as Lead Counsel in this action.[1]

That same day, three other movants timely filed competing motions for appointment as Lead Plaintiff – W. Merrill Glasgow; Cunningham, Kale and Lewis (now withdrawn); and the Schwartz Group. Of the timely competing movants, the YieldPlus Investor Group has the largest financial interest in the outcome of this litigation as it has suffered the largest losses regardless of what methodology the Court employs to make that comparison. Furthermore, individuals within theYieldPlus Investor Group have larger losses than any other individual movant or group.

Two days after the 60-day statutory deadline, on May 19, 2008, two other movants filed late competing motions for appointment as Lead Plaintiff – the Flanzraichs and the Peate Group. None of the untimely competing movants has losses that even approach the losses of the YieldPlus Investor Group. Even considered individually, every member of the YieldPlus Investor Group has larger losses than Glasgow or the Flanzraich Group.

The YieldPlus Investor Group has by far the largest financial interest in this litigation of any competing movant.[2] A summary of the financial interests of the competing movants and the YieldPlus Investor Group is set forth in following table[3]:

---

[1] "Motion" refers to the Notice of Motion and Motion to Consolidate, to Appoint the YieldPlus Investor Group as Lead Plaintiff and to Approve Proposed Lead Plaintiff's Selection of Counsel; Memorandum of Points and Authorities in Support Thereof, filed May 16, 2008 [Dkt. No. 26].

[2] On June 11, 2008, the Court entered its Order Consolidating Actions and Requesting Information from Lead Plaintiff Candidates. The YieldPlus Investor Group will address the Court's Order in a separate pleading.

[3] These figures are taken from the respective loss charts submitted to the Court by the movants.

| Movant Group | Individual | Individual Loss | Group Loss |
|---|---|---|---|
| **YieldPlus Investor Group** | Kevin O'Donnell | $312,865.77 | $1,438,209.29 |
| | James Coffin | $309,548.14 | |
| | John Hill | $240,914.42 | |
| | David and Gretchen Mikelonis | $227,277.27 | |
| | N. Richard Kimmel | $210,156.87 | |
| | Robert Dickson | $137,496.82 | |
| | | | |
| **Peate Group** | Jameet K. Singh | $185,950.41 | $376,334.67 |
| | Garfield Peate | $98,392.06 | |
| | Mark Verge | $91,992.20 | |
| | | | |
| **Schwartz Group** | Casa Marin | $56,425.54 | $231,642.10 |
| | Celesta Schwartz Trust | $60,353.69 | |
| | Richard Schwartz Trust | $57,166.86 | |
| | Margaret Bell Trust | $38,965.97 | |
| | Bell Family Limited Partnership | $17,272.04 | |
| | | | |
| **W. Merrill Glasgow** | W. Merrill Glasgow | $71,389.00 | $71,389.00 |
| | | | |
| **Flanzraichs** | Nils Flanzraich | $22,710.40 | $29,248.18 |
| | Jill Flanzraich | $6,537.78 | |

In addition to having the largest financial interest of any competing movant, the YieldPlus Investor Group otherwise satisfies the adequacy and typicality requirements of Federal Rule of Civil Procedure 23. *See* Kathrein Decl., Exs. 1 - 6[4] (declarations of each member of the YieldPlus Investor Group).[5] The declarations from each member of the YieldPlus Investor Group describe each member, including any pre-existing relationships among them; explain how the group was

[4] "Kathrein Decl." or "Kathrein Declaration" refers to the Declaration of Reed R. Kathrein in Support of the YieldPlus Investor Group's Opposition to Competing Motions for Appointment of Lead Plaintiff, filed concurrently herewith.

[5] The Declarations are attached as Exhibits to the Kathrein Declaration as follows: (1) Declaration of James Coffin in Opposition to All Competing Motions to Appoint Lead Plaintiff and to Approve Proposed Lead Plaintiff's Selection of Counsel; (2) Declaration of Robert Dickson in Opposition to All Competing Motions to Appoint Lead Plaintiff and to Approve Proposed Lead Plaintiff's Selection of Counsel; (3) Declaration of John A. Hill in Opposition to All Competing Motions to Appoint Lead Plaintiff and to Approve Proposed Lead Plaintiff's Selection of Counsel; (4) Declaration of N. Richard Kimmel in Opposition to All Competing Motions to Appoint Lead Plaintiff and to Approve Proposed Lead Plaintiff's Selection of Counsel; (5) Declaration of David Mikelonis in Opposition to All Competing Motions to Appoint Lead Plaintiff and to Approve Proposed Lead Plaintiff's Selection of Counsel; and (6) Declaration of Kevin O'Donnell in Opposition to All Competing Motions to Appoint Lead Plaintiff and to Approve Proposed Lead Plaintiff's Selection of Counsel.

formed and how its members will function collectively; and describe the mechanism that its members and proposed Lead Counsel have established to communicate with one another about the litigation. The Movant has also negotiated a retainer agreement with counsel that is available for in camera inspection and the Movant regularly meets to manage this litigation.

As no other movant has submitted the requisite proof to rebut the presumption in favor of the YieldPlus Investor Group, the Court must appoint YieldPlus Investor Group as Lead Plaintiff and approve their selection of Hagens Berman as Lead Counsel.

## II.     ARGUMENT

### A.     The Legal Standard Governing Appointment of Lead Plaintiffs

The Ninth Circuit has held that the Private Securities Litigation Reform Act of 1995 ("PSLRA") "provides a simple three-step process for identifying the lead plaintiff." *In re Cavanaugh,* 306 F.3d 726, 729 (9th Cir. 2002). "The first step consists of publicizing the pendency of the action, the claims made and the purported class period." *Id.* Here, no movant contests the adequacy or timeliness of the notice of pendency. As the second step, "the district court must consider the losses allegedly suffered by the various plaintiffs," and select as the "presumptively most adequate plaintiff ... the one who has the largest financial interest in the relief by the class and [who] otherwise satisfies the requirements of Rule 23." *Id.* at 730. As the third and final step, the court must "give other plaintiffs an opportunity to rebut the presumptive lead plaintiff's showing that it satisfies Rule 23's typicality and adequacy requirements." *Id.*

The framework established by the Ninth Circuit in *In re Cavanaugh* is an iterative process. If the proposed lead plaintiff with the greatest financial stake does not otherwise satisfy the requirements of the PSLRA or Federal Rule of Civil Procedure 23, "the court must repeat the inquiry, this time considering the plaintiff with the next-largest financial stake, until it finds a plaintiff who is both willing to serve and satisfies the requirements of Rule 23." *Id.*

### B.     The YieldPlus Investor Group Is the Most Adequate Plaintiff

As demonstrated above, the YieldPlus Investor Group suffered the greatest loss of any movant and, therefore, has the largest financial interest of any movant. Furthermore, the

YieldPlus Investor Group satisfies the pertinent requirements of Federal Rule of Civil Procedure 23 and must be appointed Lead Plaintiff.

The PSLRA provides a rebuttable presumption that "the person or group of persons" that "has the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23" shall be appointed lead plaintiff. *See id.*; 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I). This presumption may be overcome only upon proof that the presumptively most adequate plaintiff will not fairly and adequately represent the class or is subject to unique defenses. 15 U.S.C. § 77z-1(a)(3)(B)(iii)(II).

**C. The YieldPlus Investor Group Is a Proper Group Under the PSLRA**

The appointment of a lead plaintiff "group" consisting of several persons is permissible under the PSLRA. *See Ferrari v. Gisch*, 225 F.R.D. 599, 608 (C.D. Cal. 2004) (rejecting contention groups of unrelated investors are improper) (citing cases); *In re Cendant Corp. Litig.*, 264 F.3d 201, 266 (3d Cir. 2001) ("we disagree with those courts that have held that the statute invariably precludes a group of 'unrelated individuals' serving as a lead plaintiff"). Courts have consistently held that where the group is of manageable size and capable of joint decision-making, aggregation is proper. *See e.g. Schriver v. Impac Mortg. Holdings, Inc.*, No. SAVC 06-31 CJC (RNBx), 2006 U.S. Dist Lexis 40607 * 21-*24 (C.D. Cal. May 2, 2006) (appointing a group of two investors as lead plaintiff); *In re Nature's Sunshine Prods., Inc.*, No. 2:06-cv-267 TS, 2006 WL 2380965, at *2 (D. Utah Aug. 16, 2006) (appointing group of three unrelated investors as lead plaintiff); *In re Universal Access, Inc., Sec. Litig.*, 209 F.R.D. 379, 384 (E.D. Tex. 2002) ("Courts interpreting this issue have routinely held that the appointment of a group of persons to act as lead plaintiff is appropriate under the PSLRA"); *In re Advanced Tissue Sec. Litig.*, 184 F.R.D. 346, 352-53 (S.D. Cal. 1998) (appointing group of six); *see also* Motion at 6-7.

Here, the YieldPlus Investor Group is comprised of six individuals, two of whom are husband and wife. Each member of the YieldPlus Investor Group has significant financial interests in the outcome of this litigation.[6] The YieldPlus Investor Group is comprised of a former general

---

[6] While aggregation is proper, the Court need not even address the issue as five of the YieldPlus Investor Group, with approximate losses greater than $1,300,762.47, have the largest

counsel who has objected to class action settlements in the past, a former chairman of a bank, a former trustee of four mutual funds and a member of the funds audit committee with accounting expertise, two lawyers from private practice, and an engineer responsible for missile systems and budgets relating to them. *See* Kathrein Decl., Exs. 1- 6 at ¶ 3.

Moreover, the YieldPlus Investor Group adopted the criteria required by this Court as its guidelines for vigorously and efficiently pursuing this litigation on behalf of the class. The YieldPlus Investor Group clearly demonstrates that it possesses the sophistication, expertise and resources to manage securities litigation efficiently. Indeed, the YieldPlus Investor Group has abilities comparable to an institution and it will control the litigation and the lawyers. These facts demonstrate that Movant is more than capable of performing the lead plaintiff function. The YieldPlus Investor Group has clearly demonstrated its substantive decision making ability and authority. *See In re Network Assocs. Sec. Litig*., 76 F. Supp. 2d 1017, 1025 (N.D. Cal. 1999).

The YieldPlus Investor Group was advised of this Court's standing order, and negotiated with proposed Lead Counsel a highly detailed and tailored retainer agreement which sets forth proposed Lead Counsel's responsibilities to Movant and a mechanism for determining an appropriate fee. It also gives the Movant the right to terminate Counsel at any time. Kathrein Decl., Exs. 1-6 at ¶ 6. The YieldPlus Investor Group also met, elected officers, and agreed on a mechanism for making decisions. Each member of the Group has the contact information of each other member. *Id* at ¶¶ 8-10. Accordingly, Movant is an appropriate group as defined by the PSLRA.

### 1. The YieldPlus Investor Group Has the Largest Financial Interest as Compared to Competing Movants

As the YieldPlus Investor Group stated in its opening papers, "approximate loss" is the most determinative factor in assessing a movant's financial interest. Indeed, "[w]hile the PSLRA does not specify how we should decide which plaintiff group has the 'largest financial

individual losses of any of the competing movants that are not barred. *See In re Surebeam Corp. Secs. Litig.*, No. 03 cv 1721 JM (POR), 2004 WL 5159061, at *5 (S.D. Cal. Jan. 5, 2004) (appointing group where one movant within group had largest losses as compared to competing movants: "[i]t makes no practical difference if Spear Capital [movant with largest losses in group] chooses to associate with other shareholders in order to further distance itself from the next proposed lead plaintiff").

interest' in the relief sought, most courts simply determine which potential lead plaintiff has suffered the greatest total losses." *Takara Trust v. Molex*, 229 F.R.D. 577, 579 (N.D. Ill. 2005); *see also Richardson v. TVIA, Inc.*, No. C06 06304 RMW, 2007 WL 1129344, at *4 (N.D. Cal. Apr. 16, 2007) (approximate loss is most determinative). Applying a uniform method for calculating damages, the YieldPlus Investor Group has a larger financial interest than any other movant irrespective of whether the Court calculates the financial interest using the YieldPlus Investor Group, Schwartz Group or Peate Group's methodology. In order to allow the Court to compare the alleged losses of all movants, the YieldPlus Investor Group submits the charts below. The charts demonstrate that even if the Court applies the Schwartz Group's or the Peate Group's methodology the YieldPlus Investor Group has the largest financial interest in this litigation as its members have the largest approximate losses. The following table applies the YieldPlus Investor Group's methodology to the competing movants' transactional data and demonstrates the superior financial interest of the YieldPlus Investor Group:

| Movant Group | Individual | Individual Loss | Group Loss |
|---|---|---|---|
| **YieldPlus Investor Group** | Kevin O'Donnell[7] | $432,973.54 | $1,548,779.29 |
| | James Coffin[8] | $309,548.14 | |
| | John Hill | $240,914.42 | |
| | David and Gretchen Mikelonis | $217,689.50 | |
| | N. Richard Kimmel | $210,156.87 | |
| | Robert Dickson | $137,496.82 | |
| | | | |
| **Peate Group** | Jameet K. Singh | $310,950.41 | $602,987.07 |
| | Garfield Peate | $150,415.72 | |
| | Mark Verge | $141,620.94 | |

---

7 Mr. O'Donnell's numbers are significantly higher than those submitted in support of the Motion. This more accurate assessment of his losses is the result of receiving additional transactional data that was not received until after the original motion was on file. In an abundance of caution, these two additional transactions were not included in the original calculations. The transactions were confirmed on June 9, 2008 by Schwab. Mr. O'Donnell's losses have been updated to reflect two additional purchases during the class period. Those purchases result in increased losses totaling $432,973.54 making Mr. O'Donnell's losses the largest losses of any individual moving to be appointed as Lead Plaintiff. *See* Declaration of Kevin O'Donnell Regarding Trades in the Schwab YieldPlus Fund attached to the Kathrein Decl., Ex. 7.

8 After the Motion was filed, Mr. Coffin sold his remaining shares and therefore has suffered additional damages. This number more accurately reflects Mr. Coffin's actual losses. *See* Declaration of James Coffin Regarding Trades in the Schwab YieldPlus Fund, attached to the Kathrein Decl., Ex. 8.

| Movant Group | Individual | Individual Loss | Group Loss |
|---|---|---|---|
| | | | |
| **Schwartz Group** | Casa Marin | $56,425.54 | $227,432.91 |
| | Celesta Schwartz Trust | $58,859.69 | |
| | Richard Schwartz Trust | $56,425.56 | |
| | Margaret Bell Trust | $38,450.09 | |
| | Bell Family Limited Partnership | $17,272.04 | |
| | | | |
| **W. Merrill Glasgow** | W. Merrill Glasgow | $71,389.00 | $71,389.00 |
| | | | |
| **Flanzraichs** | Nils Flanzraich | $22,710.40 | $29,248.18 |
| | Jill Flanzraich | $6,537.78 | |

Accepting the above calculations as accurate measures of approximate losses, the YieldPlus Investor Group has suffered the largest damages of any movant.

The Schwartz Group claims that Movant's losses are incorrectly calculated. Accordingly, the YieldPlus Investor Group applied the Schwartz Group's calculations to each movants' transactional data and again the numbers establish that the YieldPlus Investor Group has suffered the largest losses of any movant even under the Schwartz Group's methodology. Using the Schwartz Group's method, the approximate losses of the three largest movants are as follows:

| Movant Group | Individual | Individual Loss | Group Loss |
|---|---|---|---|
| **YieldPlus Investor Group** | Kevin O'Donnell | $357,704.25 | $1,214,182.13 |
| | James Coffin | $188,764.78 | |
| | John Hill | $240,914.42 | |
| | David and Gretchen Mikelonis | $129,436.68 | |
| | N. Richard Kimmel | $210,156.87 | |
| | Robert Dickson | $87,205.13 | |
| | | | |
| **Peate Group** | Jameet K. Singh | $177,685.95 | $357,420.73 |
| | Garfield Peate | $93,055.41 | |
| | Mark Verge | $86,679.37 | |
| | | | |
| **Schwartz Group** | Casa Marin | $36,126.08 | $150,329.92 |
| | Celesta Schwartz Trust | $37,682.18 | |
| | Richard Schwartz Trust | $36,126.09 | |
| | Margaret Bell Trust | $23,123.53 | |
| | Bell Family Limited Partnership | $17,272.04 | |

In contrast to the Schwartz Group, the Peate Group used the price of the stock on the last day of the class period. Applying the Peate Group's methodology, the damages of the YieldPlus Investor Group, the Schwartz Group and the Peate Group would be as follows:

| Movant Group | Individual | Individual Loss | Group Loss |
|---|---|---|---|
| **YieldPlus Investor Group** | Kevin O'Donnell | $374,604.75 | $1,250,495.23 |
| | James Coffin | $197,629.62 | |
| | John Hill | $240,914.42 | |
| | David and Gretchen Mikelonis | $135,914.47 | |
| | N. Richard Kimmel | $210,156.87 | |
| | Robert Dickson | $91,275.10 | |
| | | | |
| **Peate Group** | Jameet K. Singh | $185,950.41 | $374,127.48 |
| | Garfield Peate | $97,350.48 | |
| | Mark Verge | $90,826.59 | |
| | | | |
| **Schwartz Group** | Casa Marin | $37,842.09 | $156,746.37 |
| | Celesta Schwartz Trust | $39,472.42 | |
| | Richard Schwartz Trust | $37,842.10 | |
| | Margaret Bell Trust | $24,317.72 | |
| | Bell Family Limited Partnership | $17,272.04 | |

As the above charts demonstrate, the approximate losses of the YieldPlus Investor Group are the largest approximate looses of any movant and, therefore, the YieldPlus Investor Group is entitled to the presumption that it is the most adequate movant to serve as Lead Plaintiff. 15 U.S.C. § 77z-l(a)(3)(B)(iii)(I)(bb).

Finally, if this court were to apply the damage methodology articulated in under Section 12 to the transactional data submitted by the movants and use the closing price of $6.29 on June 9, 2008, the damages using the transactional data supplied by each movant would be as follows:

| Movant Group | Individual | Individual Loss | Group Loss |
|---|---|---|---|
| **YieldPlus Investor Group** | Kevin O'Donnell | $439,502.15 | $1,631,762.38 |
| | James Coffin | $373,818.19 | |
| | John Hill | $241,304.18 | |
| | David and Gretchen Mikelonis | $227,193.17 | |
| | N. Richard Kimmel | $210,156.87 | |
| | Robert Dickson | $139,787.82 | |
| | | | |
| **Peate Group** | Jameet K. Singh | $310,950.41 | $603,845.44 |
| | Garfield Peate | $151,449.49 | |

| Movant Group | Individual | Individual Loss | Group Loss |
|---|---|---|---|
| | Mark Verge | $141,445.54 | |
| | | | |
| **Schwartz Group** | Casa Marin | $56,425.54 | $227,432.91 |
| | Celesta Schwartz Trust | $58,859.69 | |
| | Richard Schwartz Trust | $56,425.56 | |
| | Margaret Bell Trust | $38,450.09 | |
| | Bell Family Limited Partnership | $17,272.04 | |

Accordingly, under all four of these scenarios the YieldPlus Investor Group remains the movant with the largest losses and is entitled to the presumption that they are the most adequate movant to serve as lead plaintiff.

**2. The YieldPlus Investor Group Satisfies Rule 23**

Once a court determines which movant has the largest financial interest in the litigation, here the YieldPlus Investor Group, the Court must appoint that movant as Lead Plaintiff unless it finds that the movant is otherwise inadequate or subject to unique defenses. *See In re Cavanaugh*, 306 F.3d at 726. In *Cavanaugh*, the Ninth Circuit reasoned that:

> [A] straightforward application of the statutory scheme, as outlined above, provides no occasion for comparing plaintiffs with each other on any basis other than their financial stake in the case. Once that comparison is made and the court identifies the plaintiff with the largest stake in the litigation, further inquiry must focus on that plaintiff alone and [should] be limited to determining whether he satisfies the other statutory requirements.

306 F.3d at 732. So long as the movant with the largest financial interest satisfies the typicality and adequacy requirements, he, she or it is entitled to most adequate plaintiff status. *Id.*

As set forth in Movant's Motion at 8-10, the YieldPlus Investor Group, collectively and as individuals, satisfy the typicality and adequacy requirements of Federal Rule of Civil Procedure 23, and have demonstrated that they can fairly and adequately protect the interests of the class. The YieldPlus Investor Group has the largest financial interest in the litigation among all competing movants and otherwise satisfies the requirements of Federal Rule of Civil Procedure 23. Therefore, the YieldPlus Investor Group satisfies all of the PSLRA's prerequisites for appointment as Lead Plaintiff in this action pursuant to 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I) and is presumed to be the "most adequate plaintiff".

**D. The Presumption in Favor of YieldPlus Investor Group Has Not Been Rebutted**

Competing movants may attempt to conjure up speculative arguments to rebut the powerful presumption in favor of the YieldPlus Investor Group. Any such speculative challenge does not satisfy the PSLRA's requirement that the presumptively most adequate plaintiffs may only be rejected if a rival movant presents "proof" that the presumptive lead plaintiffs, here the YieldPlus Investor Group, will not adequately represent the class. 15 U.S.C. § 77z1(a)(3)(B)(iii)(II); *see also Gluck v. Cellstar Corp*., 976 F. Supp. 542, 547 (N.D. Tex. 1997) ("speculative assertions are insufficient to rebut the presumption" of adequacy); *Sofran v. LaBranche & Co*., 220 F.R.D. 398, 403-04 (S.D.N.Y. 2004) (emphasizing that the PSLRA requires proof of inadequacy and not mere "speculation"); *Sczesny Trust v. KPMG LLP*, 223 F.R.D. 319, 324-25 (S.D.N.Y. 2004) ("[C]onclusory assertions of inadequacy are, however, insufficient to rebut the statutory presumption under the PSLRA without specific support in evidence").

Moreover, while the Court may compare potential lead plaintiffs' losses when assessing financial stake, once the statutory presumption has attached, it cannot be rebutted through relative comparison as to adequacy or typicality. *In re Cavanaugh*, 306 F.3d at 732; *see also Sofran*, 220 F.R.D. at 402 ("That the district court believes another plaintiff may be 'more typical' or 'more adequate' is of no consequence. So long as the plaintiff with the largest losses satisfies the typicality and adequacy requirements, he is entitled to lead plaintiff status, even if the district court is convinced that some other plaintiff would do a better job.").

The YieldPlus Investor Group is the movant with the largest financial interest and has made a *prima facie* showing that it satisfies the typicality and adequacy requirements of Federal Rule of Civil Procedure 23. This showing has not been rebutted. Accordingly, the YieldPlus Investor Group must be appointed as Lead Plaintiff.

**E. The Motions of the Flanzraich and Peate Groups Are Untimely**

The PSLRA requires investors to seek appointment "not later than 60 days after the date on which the notice is published." 15 U.S.C § 78u-4(a)(3)(A)(i)(II). Here, Plaintiff Mike Labins filed the first lawsuit against Defendants, *Labins v. The Schwab Corp.*, *et al*., Case No. 08-cv-1510

WHA, on March 18, 2008 in the Northern District of California. Mr. Labins, represented by Hagens Berman, sued individually and on behalf of all persons or entities that purchased Schwab YieldPlus Funds Investor Shares ("SWYPX") and Schwab YieldPlus Funds Select Shares ("SWYSX") during the period March 17, 2005 through March 18, 2008 pursuant to the Prospectus issued during that time. Through his counsel, Hagens Berman, Mr. Labins published notice on PR Newswire, a national business-oriented wire service, on March 18, 2008. To satisfy the PLSRA's time limits, a movant must file a motion not later than the 60-days after the notice of pendency — or no later than May 17, 2008. *See* 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I)(aa) and 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa). Here, Flanzraich and Peate filed their motions on May 19, 2008, or two days after the deadline passed.

Faced with untimely motions to appoint a Lead Plaintiff, Courts have reasoned that "the PSLRA is unequivocal and allows for no exceptions. All motions for lead plaintiff must be filed within sixty (60) days of the published notice for the first-filed action." *In re Texalon Corp. Sec. Litig.*, 67 F. Supp. 2d 803, 818 (N.D. Ohio 1999). In *Texalon*, the court declined to consider a motion filed after the sixty-day deadline stating that the PSLRA imposes strict time requirements because Congress intended to ensure that the Lead Plaintiff is appointed "at the earliest possible time and to expedite the lead plaintiff process." *Id.* at 819; *see also In re Microstrategy Inc. Sec. Litig.*, 110 F. Supp. 2d 427, 440-41 (E.D. Va. 2000) (there is sufficient authority and Congressional intent to suggest that the PSLRA's time limits are intended to be strictly enforced); *see also Switzenbaum v. Orbital Scis. Corp.*, 187 F.R.D. 246, 249-50 (E.D. Va. 1999) (reasoning that in order to be considered for lead plaintiff a person must file a complaint or make a timely motion. Because the movant never filed a complaint or moved within the time requirements of the PSLRA, he could not be considered individually or as a member of a group that has timely filed a motion); *but see In re Crayfish Co. Sec. Litig.*, No. 00 CIV 6766 (DAB), 2002 U.S. Dist. Lexis 10134, at *8 (S.D.N.Y. June 6, 2002) (where statutory deadline falls on a weekend or holiday Rule 6 postpones the deadline to the next business day).

Two days after the 60-day statutory deadline – on May 19, 2008 – the Flanzraichs and the Peate Group filed their motions to be appointed as Lead Plaintiff. Accordingly these movants

failed to satisfy the terms of the PSLRA. For this reason alone, having failed to follow the statutory requirement, the Flanzraichs and the Peate Group's motions cannot be considered.

**F. The Peate Group Is Not a Proper Group Under the PSLRA**

The Peate Group's motion should be rejected for still another reason. The Peate Group is an obvious attempt by two different law firms to form a group with no cohesiveness whatsoever. While groups may be appropriate under certain circumstances, they must be controlled to ensure that they do not run afoul of the PSLRA's policy against lawyer-driven litigation. The Peate Group has offered no information to establish that they can address this Court's guidelines for avoiding this dilemma. *See In re Network Assocs.*, 76 F. Supp. 2d at 1025. The Peate Group offers no information to establish that each movant retained each firm. Furthermore, the record does not reflect whether each member of the group consented to the multitude of firms that represent them before this Court and in the District of Massachusetts where they submitted a competing motion to be appointed as Lead Plaintiff and are represented by different counsel. Accordingly, the Peate Group appears to be the very type of lawyer-driven group the PSLRA attempts to prohibit and their motion should be denied.

**III. CONCLUSION**

For the foregoing reasons, the YieldPlus Investor Group respectfully requests that the Court issue an Order (1) consolidating the related actions; (2) appointing the YieldPlus Investor Group and each of its members as Lead Plaintiffs for the class; (3) approving Hagens Berman Sobol Shapiro LLP as Lead Counsel; and (4) granting such other relief as the Court may deem to be just and proper.

Dated: June 11, 2008

HAGENS BERMAN SOBOL SHAPIRO LLP

By: /s/ Reed R. Kathrein
REED R. KATHREIN

Peter E. Borkon
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
reed@hbsslaw.com

peterb@hbsslaw.com

Steve Berman
Sean R. Matt
Erin K. Flory
HAGENS BERMAN SOBOL SHAPIRO, LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com
sean@hbsslaw.com
erin@hbsslaw.com

Attorneys for Proposed Lead Plaintiff the YieldPlus Investor Group

YIELDPLUS INV. GRP'S. MPA IN OPP'N. TO COMPETING MOTS. TO APPOINT LEAD PL. – 08-cv-1510 WHA

- 13 -

010036-12 244691 V1

**CERTIFICATE OF SERVICE**

I hereby certify that on June 11, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses registered, as denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

/s/ Reed R. Kathrein
REED R. KATHREIN

YIELDPLUS INV. GRP'S. MPA IN OPP'N. TO COMPETING MOTS. TO APPOINT LEAD PL. – 08-cv-1510 WHA - 14 -

010036-12 244691 V1

# Mailing Information for a Case 3:08-cv-01510-WHA

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Vahn Alexander**
  valexander@faruqilaw.com

- **Peter E. Borkon**
  peterb@hbsslaw.com

- **Timothy J. Burke**
  service@ssbla.com

- **Reed R. Kathrein**
  reed@hbsslaw.com,steve@hbsslaw.com,nancyq@hbsslaw.com,sf_filings@hbsslaw.com

- **Azra Z. Mehdi**
  azram@csgrr.com,shkaplan@csgrr.com,DPfefferbaum@csgrr.com,llargent@csgrr.com,e_file_sf@csgrr.c

- **Stuart Christopher Plunkett**
  ggerrish@mofo.com,splunkett@mofo.com

- **Alan R Plutzik**
  aplutzik@bramsonplutzik.com

- **Darryl Paul Rains**
  drains@mofo.com,dgillis@mofo.com

## Manual Notice List

The following is the list of attorneys who are **not**
on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)