1   Reed R. Kathrein (139304)
    Peter E. Borkon (212596)
2   HAGENS BERMAN SOBOL SHAPIRO LLP
    715 Hearst Avenue, Suite 202
3   Berkeley, CA 94710
    Telephone:  (510) 725-3000
4   Facsimile:  (510) 725-3001
    reed@hbsslaw.com
5   peterb@hbsslaw.com

6   Attorneys for Plaintiff

7   [Additional counsel listed on signature page]

8

9                       UNITED STATES DISTRICT COURT

10                     NORTHERN DISTRICT OF CALIFORNIA

11                        SAN FRANCISCO DIVISION

12   *IN RE CHARLES SCHWAB CORP.*          )   No. 08-cv-1510 WHA
     *SECURITIES LITIGATION,*              )
13                                         )   DECLARATION OF REED R.
                                           )   KATHREIN IN SUPPORT OF THE
14                                         )   YIELDPLUS INVESTOR GROUP'S
                                           )   OPPOSITION TO COMPETING
15                                         )   MOTIONS FOR APPOINTMENT OF
                                           )   LEAD PLAINTIFF
16                                         )
                                           )
17                                         )   DATE:  July 2, 2008
                                           )   TIME:  9:00 a.m.
18                                         )   DEPT:  CR 9, 19th Floo
                                           )
19                                         )
     _____       )
20                                         )
     THIS DOCUMENT RELATES TO ALL          )
21   ACTIONS                               )
                                           )
22                                         )
     _____       )
23

24

25

26

27

28

1    I, REED R. KATHREIN, declare as follows:

2         1.    I am a member in good standing of the state bar of California.  I am an attorney at

3    Hagens Berman Sobol Shapiro LLP, proposed Lead Counsel for the YieldPlus Investor Group.

4    I submit this declaration in support of theYieldPlus Investor Group's opposition to the

5    competing motions for lead plaintiff.

6         2.    On May 16, 2008, my firm filed the YieldPlus Investor Group's motion seeking

7    appointment as Lead Plaintiff.  I submitted a declaration in support of that motion that attaches

8    approximate loss calculations for the members of the YieldPlus Investor Group.  At the time of

9    that filing, we did not have complete transactional data for Movant Mr. O'Donnell.  In order to

10   conservatively estimate Mr. O'Donnell's losses, we excluded transactions for which we lacked

11   confirmed data.  Since filing that motion, Mr. O'Donnell was able to obtain transactional data

12   for two additional transactions.  That data results in increased losses for Mr. O'Donnell.  In

13   Exhibit 8 to this declaration, Mr. O'Donnell recounts that he was not able to obtain this

14   information until after the motion was filed and states that he recently obtained the information

15   to more accurately calculate his losses.

16        3.    Attached as exhibits are true and correct copies of the following:

17       Exhibit 1:    Declaration of James Coffin in Opposition to All Competing Motions to
18                   Appoint Lead Plaintiff and to Approve Proposed Lead Plaintiff's
                     Selection of Counsel;

19       Exhibit 2:    Declaration of Robert Dickson in Opposition to All Competing Motions
20                   to Appoint Lead Plaintiff and to Approve Proposed Lead Plaintiff's
                     Selection of Counsel;

21       Exhibit 3:    Declaration of John A. Hill in Opposition to All Competing Motions to
22                   Appoint Lead Plaintiff and to Approve Proposed Lead Plaintiff's
                     Selection of Counsel;

23       Exhibit 4:    Declaration of N. Richard Kimmel in Opposition to All Competing
24                   Motions to Appoint Lead Plaintiff and to Approve Proposed Lead
                     Plaintiff's Selection of Counsel;

25       Exhibit 5:    Declaration of David Mikelonis in Opposition to All Competing Motions
26                   to Appoint Lead Plaintiff and to Approve Proposed Lead Plaintiff's
                     Selection of Counsel;

27       Exhibit 6:    Declaration of Kevin O'Donnell in Opposition to All Competing Motions
                     to Appoint Lead Plaintiff and to Approve Proposed Lead Plaintiff's
28                   Selection of Counsel;

1

Exhibit 7:        Declaration of James Coffin Regarding Trades in the Schwab YieldPlus
                  Fund;

2

3

Exhibit 8:        Declaration of Kevin O'Donnell Regarding Trades in the Schwab
                  YieldPlus Fund; and

4

Exhibit 9:         Summary of movants' losses applying competing methodologies.

5

    4.     In order to allow the Court to compare the movants' losses, we applied the loss

6

calculation methodologies of the YieldPlus Investor Group, the Schwartz Group and the Peate

7

Group to each movant's transactional data.  The transactional data was taken directly from the

8

papers submitted to this Court in support of the competing motions to be appointed as Lead

9

Plaintiff.  A chart comparing those losses is attached hereto as Exhibit 9.

10

    I declare, under penalty of perjury of the laws of the United States, that the foregoing is

11

true and correct to the best of my knowledge.

12

    Executed this 11th day of June 2008.

13

                           /s/ Reed R. Kathrein

14

                           REED R. KATHREIN

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**CERTIFICATE OF SERVICE**

2      I hereby certify that on June 11, 2008 I electronically filed the foregoing with the Clerk of

3 the Court using the CM/ECF system which will send notification of such filing to the e-mail

4 addresses registered, as denoted on the attached Electronic Mail Notice List, and I hereby certify

5 that I have mailed the foregoing document or paper via the United States Postal Service to the non-

6 CM/ECF participants indicated on the attached Manual Notice List.

7

8                                                          /s/ Reed R. Kathrein
                                                    REED R. KATHREIN
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Mailing Information for a Case 3:08-cv-01510-WHA

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Vahn Alexander**
  valexander@faruqilaw.com

- **Peter E. Borkon**
  peterb@hbsslaw.com

- **Timothy J. Burke**
  service@ssbla.com

- **Reed R. Kathrein**
  reed@hbsslaw.com,steve@hbsslaw.com,nancyq@hbsslaw.com,sf_filings@hbsslaw.com

- **Azra Z. Mehdi**
  azram@csgrr.com,shkaplan@csgrr.com,DPfefferbaum@csgrr.com,llargent@csgrr.com,e_file_sf@csgrr.c

- **Stuart Christopher Plunkett**
  ggerrish@mofo.com,splunkett@mofo.com

- **Alan R Plutzik**
  aplutzik@bramsonplutzik.com

- **Darryl Paul Rains**
  drains@mofo.com,dgillis@mofo.com

## Manual Notice List

The following is the list of attorneys who are **not**
on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use
your mouse to select and copy this list into your word processing program in order to create notices or labels for
these recipients.

- (No manual recipients)

# Exhibit 1

1   Reed R. Kathrein (139304)
    Peter E. Borkon (212596)
2   HAGENS BERMAN SOBOL SHAPIRO LLP
    715 Hearst Avenue, Suite 202
3   Berkeley, CA 94710
    Telephone:  (510) 725-3000
4   Facsimile:  (510) 725-3001
    reed@hbsslaw.com
5   peterb@hbsslaw.com

6   Attorneys for Plaintiff

7   [Additional counsel listed on signature page]

8

9                         UNITED STATES DISTRICT COURT

10                     NORTHERN DISTRICT OF CALIFORNIA

11                          SAN FRANCISCO DIVISION

12   MIKE LABINS, on Behalf of Himself and all    )   No. 08-cv-01510 WHA
     Others Similarly Situated,                    )
13                                                 )   DECLARATION OF JAMES COFFIN IN
                                  Plaintiff,       )   OPPOSITION TO ALL COMPETING
14                                                 )   MOTIONS  TO APPOINT LEAD
            v.                                     )   PLAINTIFF AND TO APPROVE
15                                                 )   PROPOSED LEAD PLAINTIFF'S
     THE CHARLES SCHWAB CORPORATION,               )   SELECTION OF COUNSEL
16   CHARLES SCHWAB & CO. INC., CHARLES            )
     SCHWAB INVESTMENT MANAGEMENT,                 )   DATE:  July 2, 2008
17   INC., CHARLES R. SCHWAB, EVELYN               )   TIME:  9:00 a.m.
     DILSAVER, RANDALL W. MERK and                 )   DEPT:  CR 9, 19th Floor
18   GEORGE PEREIRA,                               )
                                                   )
19                                Defendants.      )
     _____       )
20   GERRY HAGEMAN, on Behalf of Himself and )         No. 08-cv-1733 WHA
     all Others Similarly Situated,                )
21                                                 )
                                  Plaintiff,       )
22                                                 )
            v.                                     )
23                                                 )
     THE CHARLES SCHWAB CORPORATION,               )
24   CHARLES SCHWAB & CO. INC., CHARLES            )
     SCHWAB INVESTMENT MANAGEMENT,                 )
25   INC., CHARLES R. SCHWAB, EVELYN               )
     DILSAVER, RANDALL W. MERK and                 )
26   GEORGE PEREIRA,                               )
                                                   )
27                                Defendants.      )
     _____       )
28

| | | |
|---|---|---|
| 1 | W. MERRILL GLASGOW, on Behalf of Himself and All Others Similarly Situated, ) | No. 08-cv-1936 WHA |
| 2 | ) | |
| 3 | Plaintiff, ) | |
| 4 | v. ) | |
| 5 | THE CHARLES SCHWAB CORPORATION, ) CHARLES SCHWAB & CO. INC., CHARLES ) SCHWAB INVESTMENT MANAGEMENT, ) | |
| 6 | INC., CHARLES R. SCHWAB, EVELYN ) DILSAVER, RANDALL W. MERK and ) | |
| 7 | GEORGE PEREIRA, ) | |
| 8 | Defendants. ) | |
| 9 | NILS FLANZRAICH and JILL FLANZRAICH, ) on Behalf of Themselves and all Others | No. 08-cv-1994 WHA |
| 10 | Similarly Situated, ) | |
| 11 | Plaintiffs, ) | |
| 12 | v. ) | |
| 13 | THE CHARLES SCHWAB CORPORATION, ) CHARLES SCHWAB & CO. INC., CHARLES ) | |
| 14 | SCHWAB INVESTMENT MANAGEMENT, ) INC., CHARLES R. SCHWAB, SCHWAB ) | |
| 15 | INVESTMENTS, SCHWAB YIELDPLUS ) FUND SELECT SHARES, EVELYN ) | |
| 16 | DILSAVER, RANDALL W. MERK and ) GEORGE PEREIRA, ) | |
| 17 | Defendants. ) | |
| 18 | | |

1   VINAYAK R. PAI DEFINED BENEFITS      )    No. 08-cv-2058 WHA
    PENSION PLAN, on Behalf of Itself and all  )
2   Others Similarly Situated,                 )
                                               )
3                            Plaintiff,        )
                                               )
4          v.                                  )
                                               )
5   THE CHARLES SCHWAB CORPORATION,   )
    CHARLES SCHWAB & CO. INC., CHARLES )
6   SCHWAB INVESTMENT MANAGEMENT,    )
    INC., SCHWAB INVESTMENTS, CHARLES )
7   R. SCHWAB, EVELYN DILSAVER,        )
    RANDALL W. MERK, GREGORY HAND,     )
8   GEORGE PEREIRA, DONALD F. DOWARD, )
    MARIANN BYERWALTER, WILLIAM A.     )
9   HASLER, ROBERT G. HOLMES, GERALD B. )
    SMITH, DONALD R. STEPHENS, MICHAEL )
10  W. WILSEY and JEFF LYONS,          )
                                               )
11                           Defendants.       )
    _____ )

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1       I, James Coffin, declare as follows:

2       1.     I am a member of the proposed Yield Plus Investor Group ("Group").

3       2.     The Group was formed after each of us separately contacted Hagens Berman Sobol & Shapiro LLP in the spring of 2008. We come from different locations around the country. Prior to those contacts, except for the one married couple, none of the others in the group had ever met one another and have no familial or business relationships with one another. Nor do we have any prior business or other relationships with Hagens Berman or any of its attorneys. We were introduced to each other by Reed Kathrein in the spring of 2008 as the clients of the Hagens Berman who suffered the greatest losses, were willing to be a Lead Plaintiff, or who had special expertise that would aid the group in managing counsel and the litigation on behalf of the class. Each member was described to each of us in general terms prior to our agreement to participate as a member of a lead plaintiff group.Each member has comparable and significant losses greater than $100,000. Each member has sophistication and experience. Because of the complexity of the case, and the expertise of each member, I have the incentive and desire to work together with the other members of the group to control the litigation. Accordingly, I consented to filing as lead plaintiff as a group, or alternatively as an individual.

3.     A description of the members of our group is as follows:

**David and Gretchen Mikelonis**: David and Gretchen Mikelonis are married. Mr. Mikelonis made the investment decisions and invested the funds for both in the Schwab YieldPlus Funds. Mr. Mikelonis is an attorney admitted to the bar in the State of Michigan and admitted to practice in numerous federal courts and the United States Supreme Court. He has degrees from the University of Notre Dame, A.B. in Government and International Relations, June 1970; University of Michigan Law School, J.D., August 1972; and University of Michigan Graduate School of Business, M.B.A., April 1979.

Prior to retirement, Mr. Mikelonis was Vice President and General Attorney of Consumers Energy Company ("Consumers") from February 1986 to December 1988, and then Senior Vice President and General Counsel from December 1988 to September 2004 In his capacity at Consumers, he managed every aspect of a department with an annual budget in the millions of

1    dollars.  This included being ultimately responsible for all litigation in which Consumers was

2    involved in state and federal courts.  This responsibility included close supervision of the legal

3    strategy and its implementation in all of the significant court litigation (including commercial

4    arbitrations) and regulatory and administrative proceedings encountered before state and federal

5    agencies.  In addition, he personally handled important contract matters and governance matters.

6    He is also a registered lobbyist agent with the Michigan Secretary of State on behalf of Consumers

7    and participated in the Lansing legislative process with respect to legislation and regulations of

8    interest to Consumers.  Finally, several times, most recently in 2006, at their personal requests, he

9    has also served as a Jackson County co-chair of the nonpartisan re-election efforts of four sitting

10    justices of the Michigan Supreme Court.

11        The main office of Consumers' legal department is located in Jackson, Michigan, with a

12    small legal office in Washington, D.C.  The total staff varied over the years, but generally

13    consisted of between 60-70 people.  Of that number, there were approximately 30 lawyers, a half

14    dozen paralegals, a data base management group, three professional investigators, one office

15    manager, with the balance being support and clerical staff of various types.  He supplemented in-

16    house staff with carefully selected outside counsel chosen for assignments depending on the matter

17    involved and the best interests of the client.  In his role, he had responsibility for developing and

18    administering budgets and five-year plans for the legal department and participated in the

19    company's overall budgeting and planning process each year.

20        Since retiring, Mr. Mikelonis has previously served as secretary for a group of

21    employee/investors who objected to various aspects of a settlement in ERISA litigation involving

22    CMS Energy Corporation, including an objection to fees and expenses.  He and another retired

23    officer of Consumers also filed objections in 2007 to a class action settlement in shareholder

24    litigation involving CMS Energy Corporation and participated in the fairness hearing related to the

25    settlement.

26        **Kevin O'Donnell**: Kevin O'Donnell is a member of the Wisconsin Bar.  Mr. O'Donnell

27    comes from a family of three generations of lawyers and a judge in Wisconsin.  He was admitted

28    to the Bar in 1972.  Mr. O'Donnell practiced in the fields of personal injury and product liability

1    trial law before starting the country's first independent health subrogation firm in 1983.  He sold

2    that firm in 1999 and has been happily retired since.

3        **James Coffin**: James Coffin is a member of the California Bar and Vice President of C-Y

4    Development Company, a company co-founded by his father and a builder and developer of

5    commercial and residential property in Redlands California.  He was admitted to the Bar in 1986,

6    practiced real estate law in Redlands, and has been involved in mediations at JAMS.

7        **Robert Dickson**: Robert Dickson is the managing director of Dickson Consulting, which

8    provides senior executive and financial consulting service to companies in the start up stage.  He is

9    also presently the CFO of CardiacAssist, Inc., a medical device company that develops,

10   manufactures and markets cardiac devices.  CardiacAssist is located in Pittsburgh, PA.

11       Before starting Dickson Consulting, Mr. Dickson was a financial officer of three

12   companies for a total period of 22 years.  These companies ranged in size from $9 million to $1.2

13   billion in revenue, both publicly traded and privately owned.  He also worked at

14   PricewaterhouseCoopers for nine years.

15       Mr. Dickson has held numerous leadership roles in professional organizations, including

16   the Financial Executives International and the Association for Corporate Growth.  He has also

17   served on the Board of Trustees at the Emerald Asset Mutual Fund Family and the Fort Pitt Capital

18   Total Return Fund.  In both situations, Mr. Dickson was the designated financial expert for the

19   Audit Committee.

20       Mr. Dickson is a graduate of Pennsylvania State University with a B.S. degree in

21   Accounting.  He has been a financial officer for a number of companies, with responsibility for

22   various corporate governance functions including financial reporting, coordination of annual audits,

23   reporting to boards of directors, establishing and monitoring internal accounting controls and

24   review of filings with the Securities and Exchange Commission.  He has worked closely with legal

25   counsel on corporate governance matters.

26       **John Hill**: John Hill is retired and was an engineer at Lockhead Missle Systems. Mr. Hill

27   has a BA degree from San Jose State University in Business and Physical Science. At Lockheed,

28   he was a lead engineer in Reliability Engineering.  His responsibility was to diagnose major

DECL. JAMES COFFIN IN OPP TO COMPET. MOTS. TO        - 3 -
CONSOL., LEAD PL., LEAD COUNS. – NO. 08-cv-01510 WHA

1   missile problems and recommend solutions that would maintain Navy required missile reliability

2   of 99.99%. During manufacturing start-up for a new missile design, Mr. Hill was appointed to

3   resolve unresolved manufacturing, design and purchasing problems on the new missile.  Missile

4   delivery dates were being missed that cost Lockheed  $35,000 per missile.  He prepared budgets

5   for the department and negotiated them with the customer (Navy) as required. Mr. Hill was

6   responsible for preparing three underground (Nevada) tests for specific missile "packages" at the

7   request of the customer. Mr. Hill submitted six approved missile design changes and five patent

8   applications.

9           Mr. Hill was also responsible for overseeing the operation of his deceased parents' ranch

10  property and closing the estate.  He arranged for the financing of crops and negotiated contracts

11  with wineries for the sale of Chardonnay grapes grown on the ranch vines.

12          **N. Richard Kimmell**: N. Richard Kimmell is retired.  Mr. Kimmell invests in the market

13  and worked in commercial building construction for 40 years.  He also worked in financing

14  businesses. He was Vice Chairman of First Citizens Financial Corporation for seven years, the

15  holding company formed in 1989 for Citizens Savings Bank F.S.B., which operated in Maryland.

16  He chaired the asset liability committee which managed money.  He has managed lawyers in

17  litigation and arbitration matters.

18          4.      The members of the group have met and conferred with each other by telephone

19  and certain members corresponded by e-mail with all the members.

20          5.      I am aware that I, as an individual, or the group, could select any counsel to

21  represent me or the group, and that we were not and are not required or compelled to recommend

22  Hagens Berman Sobol Shapiro LLP as class counsel.  By submitting this declaration, I am

23  personally ratifying this firm as my choice for that role in this litigation.

24          6.      One member of the group, with extensive experience in managing counsel and with

25  experience in objecting to terms of two class action settlements, and in participating in a class

26  action from the defendants' perspective, took charge of drafting and circulating to the group,

27  through counsel, a proposed retainer agreement outlining the relationship of Hagens Berman Sobol

28  Shapiro LLP to the group.  This member also proposed a method of determining an appropriate fee

DECL. JAMES COFFIN IN OPP TO COMPET. MOTS. TO          - 4 -
CONSOL., LEAD PL., LEAD COUNS. – NO. 08-cv-01510 WHA

and approving expenses, and a method for resolving disputes with counsel in this regard. The group unanimously approved a revision of that retainer agreement. That agreement will be made available to the Court for an in camera review if so requested.

7.     The Group also discussed, proposed and unanimously approved a governance structure with a three person management committee, a decision making mechanism for settlement and dismissal that requires a super majority for approval, and a decision making mechanism for approving less critical decisions by a simple majority and use on a more expedited basis of the management committee for certain matters.

8.     The Group has elected a three-person management committee with David Mikelonis as the Chair, James Coffin as the Vice Chair, and Kevin O'Donnell as the Secretary. If immediate decisions need to be made on matters other than case determinative matters such as the filing of amended complaints, filing major motion papers, trial or settlement, any two of the officers can authorize counsel to act. Major case determinative decisions such as those regarding settlement, claims, or dismissal, require a two-thirds super majority approval based on the weighted value of each member's estimated losses. Generally, this is the same as approval by four of the six members of the group (with David and Gretchen Mikelonis considered as one member). Major matters not within the purview of the management committe and not requiring a 2/3rds super majority require a simple majority of the entire membership to approve with each member's votes based on each member's pro-rated share of the group's total estimated losses. The method of handling matters involving counsel, counsel's fees and expenses, are dealt with in the retainer agreement. The retainer agreement also provides that the Court will be advised of any disputes if the group and its counsel cannot resolve any differences about fees and expenses.

9.     10.     Each member of the Group has the e-mail address and telephone number for every other member. Any member of the Group may call for a meeting or conference call. Counsel is to provide, at a minimum, written quarterly updates to the Group, host a quarterly conference call regarding the status of the case, deal with any matters that require group approval, and to be in contact with the group's management committee on a more regular basis as consultation and approvals are needed.

DECL. JAMES COFFIN IN OPP TO COMPET. MOTS. TO          - 5 -
CONSOL., LEAD PL., LEAD COUNS. – NO. 08-cv-01510 WHA

1   Due to the composition of its membership, I believe that this group, with its governance structure

2   and agreements with counsel, will be well informed and positioned to  manage this litigation on

3   behalf of the class and to manage counsel.  Under the group's leadership, we can assure that this

4   case is not lawyer-driven, but is conducted for the benefit of the entire class.  I also believe that our

5   group and governance structure exhibit  the sophistication, expertise and resources to manage

6   securities litigation efficiently.  In this regard, this group has comparable ability to control the

7   litigation and the lawyers as an institution.

8       I declare, under penalty of perjury of the laws of the United States, that the foregoing is

9   true and correct to the best of my knowledge.

10      Executed this 9th day of June 2008.

11                                                    _____

12                                                    JAMES COFFIN

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Exhibit 2

1  Reed R. Kathrein (139304)
   Peter E. Borkon (212596)
2  HAGENS BERMAN SOBOL SHAPIRO LLP
   715 Hearst Avenue, Suite 202
3  Berkeley, CA 94710
   Telephone: (510) 725-3000
4  Facsimile: (510) 725-3001
   reed@hbsslaw.com
5  peterb@hbsslaw.com

6  Attorneys for Plaintiff

7  [Additional counsel listed on signature page]

8

9                  UNITED STATES DISTRICT COURT

10                NORTHERN DISTRICT OF CALIFORNIA

11                   SAN FRANCISCO DIVISION

12  MIKE LABINS, on Behalf of Himself and all  )   No. 08-cv-01510 WHA
    Others Similarly Situated,                 )
13                                             )   DECLARATION OF ROBERT DICKSON
                           Plaintiff,          )   IN OPPOSITION TO ALL COMPETING
14                                             )   MOTIONS TO APPOINT LEAD
            v.                                 )   PLAINTIFF AND TO APPROVE
15                                             )   PROPOSED LEAD PLAINTIFF'S
    THE CHARLES SCHWAB CORPORATION,            )   SELECTION OF COUNSEL
16  CHARLES SCHWAB & CO. INC., CHARLES         )
    SCHWAB INVESTMENT MANAGEMENT,              )
17  INC., CHARLES R. SCHWAB, EVELYN            )   DATE: July 2, 2008
    DILSAVER, RANDALL W. MERK and              )   TIME: 9:00 a.m.
18  GEORGE PEREIRA,                            )   DEPT: CR 9, 19th Floor
                                               )
19                         Defendants.         )
                                               )
    _____)
20  GERRY HAGEMAN, on Behalf of Himself and )      No. 08-cv-1733 WHA
    all Others Similarly Situated,             )
21                                             )
                           Plaintiff,          )
22                                             )
            v.                                 )
23                                             )
    THE CHARLES SCHWAB CORPORATION,            )
24  CHARLES SCHWAB & CO. INC., CHARLES         )
    SCHWAB INVESTMENT MANAGEMENT,              )
25  INC., CHARLES R. SCHWAB, EVELYN            )
    DILSAVER, RANDALL W. MERK and              )
26  GEORGE PEREIRA,                            )
                                               )
27                         Defendants.         )
    _____)
28

| | | |
|---|---|---|
| 1 | W. MERRILL GLASGOW, on Behalf of Himself and All Others Similarly Situated, | )  No. 08-cv-1936 WHA |
| 2 | | ) |
| | Plaintiff, | ) |
| 3 | | ) |
| 4 | v. | ) |
| | | ) |
| 5 | THE CHARLES SCHWAB CORPORATION, CHARLES SCHWAB & CO. INC., CHARLES | ) |
| | SCHWAB INVESTMENT MANAGEMENT, | ) |
| 6 | INC., CHARLES R. SCHWAB, EVELYN DILSAVER, RANDALL W. MERK and | ) |
| 7 | GEORGE PEREIRA, | ) |
| | | ) |
| 8 | Defendants. | ) |
| 9 | NILS FLANZRAICH and JILL FLANZRAICH, on Behalf of Themselves and all Others | )  No. 08-cv-1994 WHA |
| 10 | Similarly Situated, | ) |
| 11 | Plaintiffs, | ) |
| | | ) |
| 12 | v. | ) |
| | | ) |
| 13 | THE CHARLES SCHWAB CORPORATION, CHARLES SCHWAB & CO. INC., CHARLES | ) |
| 14 | SCHWAB INVESTMENT MANAGEMENT, INC., CHARLES R. SCHWAB, SCHWAB | ) |
| 15 | INVESTMENTS, SCHWAB YIELDPLUS FUND SELECT SHARES, EVELYN | ) |
| 16 | DILSAVER, RANDALL W. MERK and GEORGE PEREIRA, | ) |
| 17 | | ) |
| | Defendants. | ) |
| 18 | | ) |

1   VINAYAK R. PAI DEFINED BENEFITS     )     No. 08-cv-2058 WHA
    PENSION PLAN, on Behalf of Itself and all  )
2   Others Similarly Situated,                 )
                                               )
3                               Plaintiff,     )
                                               )
4        v.                                    )
                                               )
5   THE CHARLES SCHWAB CORPORATION,    )
    CHARLES SCHWAB & CO. INC., CHARLES )
6   SCHWAB INVESTMENT MANAGEMENT,      )
    INC., SCHWAB INVESTMENTS, CHARLES  )
7   R. SCHWAB, EVELYN DILSAVER,        )
    RANDALL W. MERK, GREGORY HAND,     )
8   GEORGE PEREIRA, DONALD F. DOWARD,  )
    MARIANN BYERWALTER, WILLIAM A.     )
9   HASLER, ROBERT G. HOLMES, GERALD B. )
    SMITH, DONALD R. STEPHENS, MICHAEL )
10  W. WILSEY and JEFF LYONS,          )
                                               )
11                           Defendants.       )
    _____)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

I, Robert Dickson, declare as follows:

1.     I am a member of the proposed Yield Plus Investor Group ("Group").

2.     The Group was formed after each of us separately contacted Hagens Berman Sobol & Shapiro LLP in the spring of 2008. We come from different locations around the country. Prior to those contacts, except for the one married couple, none of the others in the group had ever met one another and have no familial or business relationships with one another. Nor do we have any prior business or other relationships with Hagens Berman or any of its attorneys. We were introduced to each other by Reed Kathrein in the spring of 2008 as the clients of the Hagens Berman who suffered the greatest losses, were willing to be a Lead Plaintiff, or who had special expertise that would aid the group in managing counsel and the litigation on behalf of the class. Each member was described to each of us in general terms prior to our agreement to participate as a member of a lead plaintiff group.Each member has comparable and significant losses greater than $100,000. Each member has sophistication and experience. Because of the complexity of the case, and the expertise of each member, I have the incentive and desire to work together with the other members of the group to control the litigation. Accordingly, I consented to filing as lead plaintiff as a group, or alternatively as an individual.

3.     A description of the members of our group is as follows:

**David and Gretchen Mikelonis**: David and Gretchen Mikelonis are married. Mr. Mikelonis made the investment decisions and invested the funds for both in the Schwab YieldPlus Funds. Mr. Mikelonis is an attorney admitted to the bar in the State of Michigan and admitted to practice in numerous federal courts and the United States Supreme Court. He has degrees from the University of Notre Dame, A.B. in Government and International Relations, June 1970; University of Michigan Law School, J.D., August 1972; and University of Michigan Graduate School of Business, M.B.A., April 1979.

Prior to retirement, Mr. Mikelonis was Vice President and General Attorney of Consumers Energy Company ("Consumers") from February 1986 to December 1988, and then Senior Vice President and General Counsel from December 1988 to September 2004 In his capacity at Consumers, he managed every aspect of a department with an annual budget in the millions of

DECL. ROBERT DICKSON IN OPP TO COMPET. MOTS. TO       - 1 -
CONSOL., LEAD PL., LEAD COUNS. – NO. 08-cv-01510 WHA

1    dollars. This included being ultimately responsible for all litigation in which Consumers was

2    involved in state and federal courts. This responsibility included close supervision of the legal

3    strategy and its implementation in all of the significant court litigation (including commercial

4    arbitrations) and regulatory and administrative proceedings encountered before state and federal

5    agencies. In addition, he personally handled important contract matters and governance matters.

6    He is also a registered lobbyist agent with the Michigan Secretary of State on behalf of Consumers

7    and participated in the Lansing legislative process with respect to legislation and regulations of

8    interest to Consumers. Finally, several times, most recently in 2006, at their personal requests, he

9    has also served as a Jackson County co-chair of the nonpartisan re-election efforts of four sitting

10    justices of the Michigan Supreme Court.

11        The main office of Consumers' legal department is located in Jackson, Michigan, with a

12    small legal office in Washington, D.C. The total staff varied over the years, but generally

13    consisted of between 60-70 people. Of that number, there were approximately 30 lawyers, a half

14    dozen paralegals, a data base management group, three professional investigators, one office

15    manager, with the balance being support and clerical staff of various types. He supplemented in-

16    house staff with carefully selected outside counsel chosen for assignments depending on the matter

17    involved and the best interests of the client. In his role, he had responsibility for developing and

18    administering budgets and five-year plans for the legal department and participated in the

19    company's overall budgeting and planning process each year.

20        Since retiring, Mr. Mikelonis has previously served as secretary for a group of

21    employee/investors who objected to various aspects of a settlement in ERISA litigation involving

22    CMS Energy Corporation, including an objection to fees and expenses. He and another retired

23    officer of Consumers also filed objections in 2007 to a class action settlement in shareholder

24    litigation involving CMS Energy Corporation and participated in the fairness hearing related to the

25    settlement.

26        **Kevin O'Donnell**: Kevin O'Donnell is a member of the Wisconsin Bar. Mr. O'Donnell

27    comes from a family of three generations of lawyers and a judge in Wisconsin. He was admitted

28    to the Bar in 1972. Mr. O'Donnell practiced in the fields of personal injury and product liability

DECL. ROBERT DICKSON IN OPP TO COMPET. MOTS. TO    - 2 -
CONSOL., LEAD PL., LEAD COUNS. – NO. 08-cv-01510 WHA

1  trial law before starting the country's first independent health subrogation firm in 1983.  He sold

2  that firm in 1999 and has been happily retired since.

3      **James Coffin**: James Coffin is a member of the California Bar and Vice President of C-Y

4  Development Company, a company co-founded by his father and a builder and developer of

5  commercial and residential property in Redlands California.  He was admitted to the Bar in 1986,

6  practiced real estate law in Redlands, and has been involved in mediations at JAMS.

7      **Robert Dickson**: Robert Dickson is the managing director of Dickson Consulting, which

8  provides senior executive and financial consulting service to companies in the start up stage.  He is

9  also presently the CFO of CardiacAssist, Inc., a medical device company that develops,

10  manufactures and markets cardiac devices.  CardiacAssist is located in Pittsburgh, PA.

11      Before starting Dickson Consulting, Mr. Dickson was a financial officer of three

12  companies for a total period of 22 years.  These companies ranged in size from $9 million to $1.2

13  billion in revenue, both publicly traded and privately owned.  He also worked at

14  PricewaterhouseCoopers for nine years.

15      Mr. Dickson has held numerous leadership roles in professional organizations, including

16  the Financial Executives International and the Association for Corporate Growth.  He has also

17  served on the Board of Trustees at the Emerald Asset Mutual Fund Family and the Fort Pitt Capital

18  Total Return Fund.  In both situations, Mr. Dickson was the designated financial expert for the

19  Audit Committee.

20      Mr. Dickson is a graduate of Pennsylvania State University with a B.S. degree in

21  Accounting.  He has been a financial officer for a number of companies, with responsibility for

22  various corporate governance functions including financial reporting, coordination of annual audits,

23  reporting to boards of directors, establishing and monitoring internal accounting controls and

24  review of filings with the Securities and Exchange Commission.  He has worked closely with legal

25  counsel on corporate governance matters.

26      **John Hill**: John Hill is retired and was an engineer at Lockhead Missle Systems. Mr. Hill

27  has a BA degree from San Jose State University in Business and Physical Science. At Lockheed,

28  he was a lead engineer in Reliability Engineering.  His responsibility was to diagnose major

DECL. ROBERT DICKSON IN OPP TO COMPET. MOTS. TO      - 3 -
CONSOL., LEAD PL., LEAD COUNS. – NO. 08-cv-01510 WHA

1    missile problems and recommend solutions that would maintain Navy required missile reliability

2    of 99.99%. During manufacturing start-up for a new missile design, Mr. Hill was appointed to

3    resolve unresolved manufacturing, design and purchasing problems on the new missile.  Missile

4    delivery dates were being missed that cost Lockheed  $35,000 per missile.  He prepared budgets

5    for the department and negotiated them with the customer (Navy) as required. Mr. Hill was

6    responsible for preparing three underground (Nevada) tests for specific missile "packages" at the

7    request of the customer. Mr. Hill submitted six approved missile design changes and five patent

8    applications.

9         Mr. Hill was also responsible for overseeing the operation of his deceased parents' ranch

10   property and closing the estate.  He arranged for the financing of crops and negotiated contracts

11   with wineries for the sale of Chardonnay grapes grown on the ranch vines.

12   **N. Richard Kimmell**: N. Richard Kimmell is retired.  Mr. Kimmell invests in the market

13   and worked in commercial building construction for 40 years.  He also worked in financing

14   businesses. He was Vice Chairman of First Citizens Financial Corporation for seven years, the

15   holding company formed in 1989 for Citizens Savings Bank F.S.B., which operated in Maryland.

16   He chaired the asset liability committee which managed money.  He has managed lawyers in

17   litigation and arbitration matters.

18        4.    The members of the group have met and conferred with each other by telephone

19   and certain members corresponded by e-mail with all the members.

20        5.    I am aware that I, as an individual, or the group, could select any counsel to

21   represent me or the group, and that we were not and are not required or compelled to recommend

22   Hagens Berman Sobol Shapiro LLP as class counsel.  By submitting this declaration, I am

23   personally ratifying this firm as my choice for that role in this litigation.

24        6.    One member of the group, with extensive experience in managing counsel and with

25   experience in objecting to terms of two class action settlements, and in participating in a class

26   action from the defendants' perspective, took charge of drafting and circulating to the group,

27   through counsel, a proposed retainer agreement outlining the relationship of Hagens Berman Sobol

28   Shapiro LLP to the group.  This member also proposed a method of determining an appropriate fee

DECL. ROBERT DICKSON IN OPP TO COMPET. MOTS. TO        - 4 -
CONSOL., LEAD PL., LEAD COUNS. – NO. 08-cv-01510 WHA

1   and approving expenses, and a method for resolving disputes with counsel in this regard. The

2   group unanimously approved a revision of that retainer agreement. That agreement will be made

3   available to the Court for an in camera review if so requested.

4         7.     The Group also discussed, proposed and unanimously approved a governance

5   structure with a three person management committee, a decision making mechanism for settlement

6   and dismissal that requires a super majority for approval, and a decision making mechanism for

7   approving less critical decisions by a simple majority and use on a more expedited basis of the

8   management committee for certain matters.

9         8.     The Group has elected a three-person management committee with David

10  Mikelonis as the Chair, James Coffin as the Vice Chair, and Kevin O'Donnell as the Secretary. If

11  immediate decisions need to be made on matters other than case determinative matters such as the

12  filing of amended complaints, filing major motion papers, trial or settlement, any two of the

13  officers can authorize counsel to act. Major case determinative decisions such as those regarding

14  settlement, claims, or dismissal, require a two-thirds super majority approval based on the

15  weighted value of each member's estimated losses. Generally, this is the same as approval by four

16  of the six members of the group (with David and Gretchen Mikelonis considered as one member).

17  Major matters not within the purview of the management committe and not requiring a 2/3rds

18  super majority require a simple majority of the entire membership to approve with each member's

19  votes based on each member's pro-rated share of the group's total estimated losses. The method of

20  handling matters involving counsel, counsel's fees and expenses, are dealt with in the retainer

21  agreement. The retainer agreement also provides that the Court will be advised of any disputes if

22  the group and its counsel cannot resolve any differences about fees and expenses.

23        9.    10.    Each member of the Group has the e-mail address and telephone number for

24  every other member. Any member of the Group may call for a meeting or conference call.

25  Counsel is to provide, at a minimum, written quarterly updates to the Group, host a quarterly

26  conference call regarding the status of the case, deal with any matters that require group approval,

27  and to be in contact with the group's management committee on a more regular basis as

28  consultation and approvals are needed.

DECL. ROBERT DICKSON IN OPP TO COMPET. MOTS. TO        - 5 -
CONSOL., LEAD PL., LEAD COUNS. – NO. 08-cv-01510 WHA

1    Due to the composition of its membership, I believe that this group, with its governance structure

2    and agreements with counsel, will be well informed and positioned to  manage this litigation on

3    behalf of the class and to manage counsel.  Under the group's leadership, we can assure that this

4    case is not lawyer-driven, but is conducted for the benefit of the entire class.  I also believe that our

5    group and governance structure exhibit  the sophistication, expertise and resources to manage

6    securities litigation efficiently.  In this regard, this group has comparable ability to control the

7    litigation and the lawyers as an institution.

8         I declare, under penalty of perjury of the laws of the United States, that the foregoing is

9    true and correct to the best of my knowledge.

10        Executed this 5th day of June 2008.

11                                                          ROBERT DICKSON

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Exhibit 3

1   Reed R. Kathrein (139304)
    Peter E. Borkon (212596)
2   HAGENS BERMAN SOBOL SHAPIRO LLP
    715 Hearst Avenue, Suite 202
3   Berkeley, CA 94710
    Telephone:  (510) 725-3000
4   Facsimile:  (510) 725-3001
    reed@hbsslaw.com
5   peterb@hbsslaw.com

6   Attorneys for Plaintiff

7   [Additional counsel listed on signature page]

8

9               UNITED STATES DISTRICT COURT

10              NORTHERN DISTRICT OF CALIFORNIA

11              SAN FRANCISCO DIVISION

12  MIKE LABINS, on Behalf of Himself and all      )   No. 08-cv-01510 WHA
    Others Similarly Situated,                     )
13                                                 )   DECLARATION OF JOHN A. HILL IN
                                   Plaintiff,      )   OPPOSITION TO ALL COMPETING
14                                                 )   MOTIONS  TO APPOINT LEAD
         v.                                        )   PLAINTIFF AND TO APPROVE
15                                                 )   PROPOSED LEAD PLAINTIFF'S
    THE CHARLES SCHWAB CORPORATION,                )   SELECTION OF COUNSEL
16  CHARLES SCHWAB & CO. INC., CHARLES             )
    SCHWAB INVESTMENT MANAGEMENT,                  )   DATE:  July 2, 2008
17  INC., CHARLES R. SCHWAB, EVELYN                )   TIME:  9:00 a.m.
    DILSAVER, RANDALL W. MERK and                  )   DEPT:  CR 9, 19th Floor
18  GEORGE PEREIRA,                                )
                                                   )
19                                 Defendants.     )
    _____ )
20  GERRY HAGEMAN, on Behalf of Himself and )       No. 08-cv-1733 WHA
    all Others Similarly Situated,                 )
21                                                 )
                                   Plaintiff,      )
22                                                 )
         v.                                        )
23                                                 )
    THE CHARLES SCHWAB CORPORATION,                )
24  CHARLES SCHWAB & CO. INC., CHARLES             )
    SCHWAB INVESTMENT MANAGEMENT,                  )
25  INC., CHARLES R. SCHWAB, EVELYN                )
    DILSAVER, RANDALL W. MERK and                  )
26  GEORGE PEREIRA,                                )
                                                   )
27                                 Defendants.     )
    _____ )
28

| | | |
|---|---|---|
| 1 | W. MERRILL GLASGOW, on Behalf of )<br>Himself and All Others Similarly Situated, ) | No. 08-cv-1936 WHA |
| 2 | ) | |
| 3 | Plaintiff, ) | |
| 4 | v. ) | |
| 5 | THE CHARLES SCHWAB CORPORATION, )<br>CHARLES SCHWAB & CO. INC., CHARLES )<br>SCHWAB INVESTMENT MANAGEMENT, ) | |
| 6 | INC., CHARLES R. SCHWAB, EVELYN )<br>DILSAVER, RANDALL W. MERK and ) | |
| 7 | GEORGE PEREIRA, ) | |
| 8 | Defendants. ) | |

NILS FLANZRAICH and JILL FLANZRAICH, )    No. 08-cv-1994 WHA
on Behalf of Themselves and all Others )
Similarly Situated, )
                                        )
              Plaintiffs, )
                                        )
      v. )
                                        )
THE CHARLES SCHWAB CORPORATION, )
CHARLES SCHWAB & CO. INC., CHARLES )
SCHWAB INVESTMENT MANAGEMENT, )
INC., CHARLES R. SCHWAB, SCHWAB )
INVESTMENTS, SCHWAB YIELDPLUS )
FUND SELECT SHARES, EVELYN )
DILSAVER, RANDALL W. MERK and )
GEORGE PEREIRA, )
                                        )
              Defendants. )

VINAYAK R. PAI DEFINED BENEFITS ) No. 08-cv-2058 WHA
PENSION PLAN, on Behalf of Itself and all )
Others Similarly Situated, )
                                          )
                          Plaintiff, )
                                          )
          v. )
                                          )
THE CHARLES SCHWAB CORPORATION, )
CHARLES SCHWAB & CO. INC., CHARLES )
SCHWAB INVESTMENT MANAGEMENT, )
INC., SCHWAB INVESTMENTS, CHARLES )
R. SCHWAB, EVELYN DILSAVER, )
RANDALL W. MERK, GREGORY HAND, )
GEORGE PEREIRA, DONALD F. DOWARD, )
MARIANN BYERWALTER, WILLIAM A. )
HASLER, ROBERT G. HOLMES, GERALD B. )
SMITH, DONALD R. STEPHENS, MICHAEL )
W. WILSEY and JEFF LYONS, )
                                          )
                          Defendants. )
_____ )

1    I, John A. Hill, declare as follows:

2    1.    I am a member of the proposed Yield Plus Investor Group ("Group").

3    2.    The Group was formed after each of us separately contacted Hagens Berman Sobol

4    & Shapiro LLP in the spring of 2008. We come from different locations around the country.  Prior

5    to those contacts, except for the one married couple, none of the others in the group had ever met

6    one another and have no familial or business relationships with one another.  Nor do we have any

7    prior business or other relationships with Hagens Berman or any of its attorneys.  We were

8    introduced to each other by Reed Kathrein in the spring of 2008 as the clients of the Hagens

9    Berman who suffered the greatest losses, were willing to be a Lead Plaintiff, or who had special

10    expertise that would aid the group in managing counsel and the litigation on behalf of the class.

11    Each member was described to each of us in general terms prior to our agreement to participate as a

12    member of a lead plaintiff group.Each member has comparable and significant losses greater than

13    $100,000.  Each member has sophistication and experience.  Because of the complexity of the case,

14    and the expertise of each member, I have the incentive and desire to work together with the other

15    members of the group to control the litigation.  Accordingly, I consented to filing as lead plaintiff as

16    a group, or alternatively as an individual.

17    3.    A description of the members of our group is as follows:

18    **David and Gretchen Mikelonis**: David and Gretchen Mikelonis are married.  Mr.

19    Mikelonis made the investment decisions and invested the funds for both in the Schwab YieldPlus

20    Funds.  Mr. Mikelonis is an attorney admitted to the bar in the State of Michigan and admitted to

21    practice in numerous federal courts and the United States Supreme Court.  He has degrees from the

22    University of Notre Dame, A.B. in Government and International Relations, June 1970; University

23    of Michigan Law School, J.D., August 1972; and University of Michigan Graduate School of

24    Business, M.B.A., April 1979.

25    Prior to retirement, Mr. Mikelonis was Vice President and General Attorney of Consumers

26    Energy Company ("Consumers") from February 1986 to December 1988, and then Senior Vice

27    President and General Counsel from December 1988 to September 2004  In his capacity at

28    Consumers, he managed every aspect of a department with an annual budget in the millions of

DECL. JOHN A. HILL IN OPP TO COMPET. MOTS. TO         - 1 -
CONSOL., LEAD PL., LEAD COUNS. – NO. 08-cv-01510 WHA

1   dollars.  This included being ultimately responsible for all litigation in which Consumers was

2   involved in state and federal courts.  This responsibility included close supervision of the legal

3   strategy and its implementation in all of the significant court litigation (including commercial

4   arbitrations) and regulatory and administrative proceedings encountered before state and federal

5   agencies.  In addition, he personally handled important contract matters and governance matters.

6   He is also a registered lobbyist agent with the Michigan Secretary of State on behalf of Consumers

7   and participated in the Lansing legislative process with respect to legislation and regulations of

8   interest to Consumers.  Finally, several times, most recently in 2006, at their personal requests, he

9   has also served as a Jackson County co-chair of the nonpartisan re-election efforts of four sitting

10  justices of the Michigan Supreme Court.

11         The main office of Consumers' legal department is located in Jackson, Michigan, with a

12  small legal office in Washington, D.C.  The total staff varied over the years, but generally

13  consisted of between 60-70 people.  Of that number, there were approximately 30 lawyers, a half

14  dozen paralegals, a data base management group, three professional investigators, one office

15  manager, with the balance being support and clerical staff of various types.  He supplemented in-

16  house staff with carefully selected outside counsel chosen for assignments depending on the matter

17  involved and the best interests of the client.  In his role, he had responsibility for developing and

18  administering budgets and five-year plans for the legal department and participated in the

19  company's overall budgeting and planning process each year.

20         Since retiring, Mr. Mikelonis has previously served as secretary for a group of

21  employee/investors who objected to various aspects of a settlement in ERISA litigation involving

22  CMS Energy Corporation, including an objection to fees and expenses.  He and another retired

23  officer of Consumers also filed objections in 2007 to a class action settlement in shareholder

24  litigation involving CMS Energy Corporation and participated in the fairness hearing related to the

25  settlement.

26         **Kevin O'Donnell**: Kevin O'Donnell is a member of the Wisconsin Bar.  Mr. O'Donnell

27  comes from a family of three generations of lawyers and a judge in Wisconsin.  He was admitted

28  to the Bar in 1972.  Mr. O'Donnell practiced in the fields of personal injury and product liability

1    trial law before starting the country's first independent health subrogation firm in 1983.  He sold

2    that firm in 1999 and has been happily retired since.

3         **James Coffin**: James Coffin is a member of the California Bar and Vice President of C-Y

4    Development Company, a company co-founded by his father and a builder and developer of

5    commercial and residential property in Redlands California.  He was admitted to the Bar in 1986,

6    practiced real estate law in Redlands, and has been involved in mediations at JAMS.

7         **Robert Dickson**: Robert Dickson is the managing director of Dickson Consulting, which

8    provides senior executive and financial consulting service to companies in the start up stage.  He is

9    also presently the CFO of CardiacAssist, Inc., a medical device company that develops,

10   manufactures and markets cardiac devices.  CardiacAssist is located in Pittsburgh, PA.

11        Before starting Dickson Consulting, Mr. Dickson was a financial officer of three

12   companies for a total period of 22 years.  These companies ranged in size from $9 million to $1.2

13   billion in revenue, both publicly traded and privately owned.  He also worked at

14   PricewaterhouseCoopers for nine years.

15        Mr. Dickson has held numerous leadership roles in professional organizations, including

16   the Financial Executives International and the Association for Corporate Growth.  He has also

17   served on the Board of Trustees at the Emerald Asset Mutual Fund Family and the Fort Pitt Capital

18   Total Return Fund.  In both situations, Mr. Dickson was the designated financial expert for the

19   Audit Committee.

20        Mr. Dickson is a graduate of Pennsylvania State University with a B.S. degree in

21   Accounting.  He has been a financial officer for a number of companies, with responsibility for

22   various corporate governance functions including financial reporting, coordination of annual audits,

23   reporting to boards of directors, establishing and monitoring internal accounting controls and

24   review of filings with the Securities and Exchange Commission.  He has worked closely with legal

25   counsel on corporate governance matters.

26        **John Hill**: John Hill is retired and was an engineer at Lockhead Missle Systems. Mr. Hill

27   has a BA degree from San Jose State University in Business and Physical Science. At Lockheed,

28   he was a lead engineer in Reliability Engineering.  His responsibility was to diagnose major

DECL. JOHN A. HILL IN OPP TO COMPET. MOTS. TO          - 3 -
CONSOL., LEAD PL., LEAD COUNS. – NO. 08-cv-01510 WHA

1    missile problems and recommend solutions that would maintain Navy required missile reliability

2    of 99.99%. During manufacturing start-up for a new missile design, Mr. Hill was appointed to

3    resolve unresolved manufacturing, design and purchasing problems on the new missile.  Missile

4    delivery dates were being missed that cost Lockheed  $35,000 per missile.  He prepared budgets

5    for the department and negotiated them with the customer (Navy) as required. Mr. Hill was

6    responsible for preparing three underground (Nevada) tests for specific missile "packages" at the

7    request of the customer. Mr. Hill submitted six approved missile design changes and five patent

8    applications.

9        Mr. Hill was also responsible for overseeing the operation of his deceased parents' ranch

10   property and closing the estate.  He arranged for the financing of crops and negotiated contracts

11   with wineries for the sale of Chardonnay grapes grown on the ranch vines.

12       **N. Richard Kimmell**: N. Richard Kimmell is retired.  Mr. Kimmell invests in the market

13   and worked in commercial building construction for 40 years.  He also worked in financing

14   businesses. He was Vice Chairman of First Citizens Financial Corporation for seven years, the

15   holding company formed in 1989 for Citizens Savings Bank F.S.B., which operated in Maryland.

16   He chaired the asset liability committee which managed money.  He has managed lawyers in

17   litigation and arbitration matters.

18       4.     The members of the group have met and conferred with each other by telephone

19   and certain members corresponded by e-mail with all the members.

20       5.     I am aware that I, as an individual, or the group, could select any counsel to

21   represent me or the group, and that we were not and are not required or compelled to recommend

22   Hagens Berman Sobol Shapiro LLP as class counsel.  By submitting this declaration, I am

23   personally ratifying this firm as my choice for that role in this litigation.

24       6.     One member of the group, with extensive experience in managing counsel and with

25   experience in objecting to terms of two class action settlements, and in participating in a class

26   action from the defendants' perspective, took charge of drafting and circulating to the group,

27   through counsel, a proposed retainer agreement outlining the relationship of Hagens Berman Sobol

28   Shapiro LLP to the group.  This member also proposed a method of determining an appropriate fee

1    and approving expenses, and a method for resolving disputes with counsel in this regard.  The

2    group unanimously approved a revision of that retainer agreement.  That agreement will be made

3    available to the Court for an in camera review if so requested.

4         7.    The Group also discussed, proposed and unanimously approved a governance

5    structure with a three person management committee,  a decision making mechanism for settlement

6    and dismissal that requires a super majority for approval, and a decision making mechanism for

7    approving less critical decisions by a simple majority and use on a more expedited basis of the

8    management committee for certain matters.

9         8.    The Group has elected a three-person management committee with David

10   Mikelonis as the Chair, James Coffin as the Vice Chair, and Kevin O'Donnell as the Secretary.  If

11   immediate decisions need to be made on matters other than case determinative matters such as the

12   filing of amended complaints, filing major motion papers, trial or settlement, any two of the

13   officers can authorize counsel to act.  Major case determinative decisions such as those regarding

14   settlement, claims, or dismissal, require a two-thirds super majority approval based on the

15   weighted value of each member's estimated losses.  Generally, this is the same as approval by four

16   of the six members of the group (with David and Gretchen Mikelonis considered as one member).

17   Major matters not within the purview of the management committe and not requiring a 2/3rds

18   super majority require a simple majority of the entire membership to approve with each member's

19   votes based on each member's pro-rated share of the group's total estimated losses.   The method of

20   handling matters involving  counsel, counsel's fees and expenses, are dealt with in the retainer

21   agreement. The retainer agreement also provides that the Court will be advised of any disputes if

22   the group and its counsel cannot resolve any differences about fees and expenses.

23        9.    10.    Each member of the Group has the e-mail address and telephone number for

24   every other member.  Any member of the Group may call for a meeting or conference call.

25   Counsel is to provide, at a minimum, written quarterly updates to the Group, host a quarterly

26   conference call regarding the status of the case, deal with any matters that require group approval,

27   and to be in contact with the group's management committee on a more regular basis as

28   consultation and approvals are needed.

DECL. JOHN A. HILL IN OPP TO COMPET. MOTS. TO            - 5 -
CONSOL., LEAD PL., LEAD COUNS. – NO. 08-cv-01510 WHA

1  Due to the composition of its membership, I believe that this group, with its governance structure

2  and agreements with counsel, will be well informed and positioned to  manage this litigation on

3  behalf of the class and to manage counsel.  Under the group's leadership, we can assure that this

4  case is not lawyer-driven, but is conducted for the benefit of the entire class.  I also believe that our

5  group and governance structure exhibit  the sophistication, expertise and resources to manage

6  securities litigation efficiently.  In this regard, this group has comparable ability to control the

7  litigation and the lawyers as an institution.

8       I declare, under penalty of perjury of the laws of the United States, that the foregoing is

9  true and correct to the best of my knowledge.

10      Executed this 5th day of June 2008.

11                                                      JOHN A. HILL

# Exhibit 4

1  Reed R. Kathrein (139304)
   Peter E. Borkon (212596)
2  HAGENS BERMAN SOBOL SHAPIRO LLP
   715 Hearst Avenue, Suite 202
3  Berkeley, CA 94710
   Telephone:  (510) 725-3000
4  Facsimile:  (510) 725-3001
   reed@hbsslaw.com
5  peterb@hbsslaw.com

6  Attorneys for Plaintiff

7  [Additional counsel listed on signature page]

8

9                 UNITED STATES DISTRICT COURT

10              NORTHERN DISTRICT OF CALIFORNIA

11                   SAN FRANCISCO DIVISION

12  MIKE LABINS, on Behalf of Himself and all   )   No. 08-cv-01510 WHA
    Others Similarly Situated,                  )
13                                              )   DECLARATION OF N. RICHARD
                                                )   KIMMEL IN OPPOSITION TO ALL
                           Plaintiff,           )   COMPETING MOTIONS  TO APPOINT
14                                              )   LEAD PLAINTIFF AND TO APPROVE
         v.                                     )   PROPOSED LEAD PLAINTIFF'S
15                                              )   SELECTION OF COUNSEL
    THE CHARLES SCHWAB CORPORATION,             )
16  CHARLES SCHWAB & CO. INC., CHARLES          )
    SCHWAB INVESTMENT MANAGEMENT,               )   DATE:  July 2, 2008
17  INC., CHARLES R. SCHWAB, EVELYN             )   TIME:  9:00 a.m.
    DILSAVER, RANDALL W. MERK and               )   DEPT:   CR 9, 19th Floor
18  GEORGE PEREIRA,                             )
                                                )
19                         Defendants.          )
    _____)
20  GERRY HAGEMAN, on Behalf of Himself and )   No. 08-cv-1733 WHA
    all Others Similarly Situated,              )
21                                              )
                           Plaintiff,           )
22                                              )
         v.                                     )
23                                              )
    THE CHARLES SCHWAB CORPORATION,             )
24  CHARLES SCHWAB & CO. INC., CHARLES          )
    SCHWAB INVESTMENT MANAGEMENT,               )
25  INC., CHARLES R. SCHWAB, EVELYN             )
    DILSAVER, RANDALL W. MERK and               )
26  GEORGE PEREIRA,                             )
                                                )
27                         Defendants.          )
    _____)
28

| | | | |
|---|---|---|---|
| 1 | W. MERRILL GLASGOW, on Behalf of Himself and All Others Similarly Situated, | ) | No. 08-cv-1936 WHA |
| 2 | | ) | |
| 3 | Plaintiff, | ) | |
| 4 | v. | ) | |
| 5 | THE CHARLES SCHWAB CORPORATION, CHARLES SCHWAB & CO. INC., CHARLES SCHWAB INVESTMENT MANAGEMENT, | ) | |
| 6 | INC., CHARLES R. SCHWAB, EVELYN DILSAVER, RANDALL W. MERK and | ) | |
| 7 | GEORGE PEREIRA, | ) | |
| 8 | Defendants. | ) | |

1    W. MERRILL GLASGOW, on Behalf of        )        No. 08-cv-1936 WHA
     Himself and All Others Similarly Situated,  )
2                                              )
                                               )
3                              Plaintiff,       )
                                               )
4               v.                              )
                                               )
5    THE CHARLES SCHWAB CORPORATION,            )
     CHARLES SCHWAB & CO. INC., CHARLES         )
     SCHWAB INVESTMENT MANAGEMENT,              )
6    INC., CHARLES R. SCHWAB, EVELYN            )
     DILSAVER, RANDALL W. MERK and              )
7    GEORGE PEREIRA,                            )
                                               )
8                              Defendants.      )
     _____ )
9    NILS FLANZRAICH and JILL FLANZRAICH,       )   No. 08-cv-1994 WHA
     on Behalf of Themselves and all Others     )
10   Similarly Situated,                        )
                                               )
11                             Plaintiffs,      )
                                               )
12              v.                              )
                                               )
13   THE CHARLES SCHWAB CORPORATION,            )
     CHARLES SCHWAB & CO. INC., CHARLES         )
14   SCHWAB INVESTMENT MANAGEMENT,              )
     INC., CHARLES R. SCHWAB, SCHWAB            )
15   INVESTMENTS, SCHWAB YIELDPLUS              )
     FUND SELECT SHARES, EVELYN                 )
16   DILSAVER, RANDALL W. MERK and              )
     GEORGE PEREIRA,                            )
17                                              )
                               Defendants.      )
18   _____ )

19

20

21

22

23

24

25

26

27

28

| | | |
|---|---|---|
| 1 | VINAYAK R. PAI DEFINED BENEFITS ) | No. 08-cv-2058 WHA |
| | PENSION PLAN, on Behalf of Itself and all ) | |
| 2 | Others Similarly Situated, ) | |
| | ) | |
| 3 | Plaintiff, ) | |
| | ) | |
| 4 | v. ) | |
| | ) | |
| 5 | THE CHARLES SCHWAB CORPORATION, ) | |
| | CHARLES SCHWAB & CO. INC., CHARLES ) | |
| 6 | SCHWAB INVESTMENT MANAGEMENT, ) | |
| | INC., SCHWAB INVESTMENTS, CHARLES ) | |
| 7 | R. SCHWAB, EVELYN DILSAVER, ) | |
| | RANDALL W. MERK, GREGORY HAND, ) | |
| 8 | GEORGE PEREIRA, DONALD F. DOWARD, ) | |
| | MARIANN BYERWALTER, WILLIAM A. ) | |
| 9 | HASLER, ROBERT G. HOLMES, GERALD B. ) | |
| | SMITH, DONALD R. STEPHENS, MICHAEL ) | |
| 10 | W. WILSEY and JEFF LYONS, ) | |
| | ) | |
| 11 | Defendants. ) | |
| | _____ ) | |
| 12 | | |
| 13 | | |
| 14 | | |
| 15 | | |
| 16 | | |
| 17 | | |
| 18 | | |
| 19 | | |
| 20 | | |
| 21 | | |
| 22 | | |
| 23 | | |
| 24 | | |
| 25 | | |
| 26 | | |
| 27 | | |
| 28 | | |

1    I, N. Richard Kimmel, declare as follows:

2        1.    I am a member of the proposed Yield Plus Investor Group ("Group").

3        2.    The Group was formed after each of us separately contacted Hagens Berman Sobol

4    & Shapiro LLP in the spring of 2008. We come from different locations around the country.  Prior

5    to those contacts, except for the one married couple, none of the others in the group had ever met

6    one another and have no familial or business relationships with one another.  Nor do we have any

7    prior business or other relationships with Hagens Berman or any of its attorneys.  We were

8    introduced to each other by Reed Kathrein in the spring of 2008 as the clients of the Hagens

9    Berman who suffered the greatest losses, were willing to be a Lead Plaintiff, or who had special

10   expertise that would aid the group in managing counsel and the litigation on behalf of the class.

11   Each member was described to each of us in general terms prior to our agreement to participate as a

12   member of a lead plaintiff group.Each member has comparable and significant losses greater than

13   $100,000.  Each member has sophistication and experience.  Because of the complexity of the case,

14   and the expertise of each member, I have the incentive and desire to work together with the other

15   members of the group to control the litigation.  Accordingly, I consented to filing as lead plaintiff as

16   a group, or alternatively as an individual.

17       3.    A description of the members of our group is as follows:

18       **David and Gretchen Mikelonis**: David and Gretchen Mikelonis are married.  Mr.

19   Mikelonis made the investment decisions and invested the funds for both in the Schwab YieldPlus

20   Funds.  Mr. Mikelonis is an attorney admitted to the bar in the State of Michigan and admitted to

21   practice in numerous federal courts and the United States Supreme Court.  He has degrees from the

22   University of Notre Dame, A.B. in Government and International Relations, June 1970; University

23   of Michigan Law School, J.D., August 1972; and University of Michigan Graduate School of

24   Business, M.B.A., April 1979.

25       Prior to retirement, Mr. Mikelonis was Vice President and General Attorney of Consumers

26   Energy Company ("Consumers") from February 1986 to December 1988, and then Senior Vice

27   President and General Counsel from December 1988 to September 2004  In his capacity at

28   Consumers, he managed every aspect of a department with an annual budget in the millions of

1   dollars.  This included being ultimately responsible for all litigation in which Consumers was

2   involved in state and federal courts.  This responsibility included close supervision of the legal

3   strategy and its implementation in all of the significant court litigation (including commercial

4   arbitrations) and regulatory and administrative proceedings encountered before state and federal

5   agencies.  In addition, he personally handled important contract matters and governance matters.

6   He is also a registered lobbyist agent with the Michigan Secretary of State on behalf of Consumers

7   and participated in the Lansing legislative process with respect to legislation and regulations of

8   interest to Consumers.  Finally, several times, most recently in 2006, at their personal requests, he

9   has also served as a Jackson County co-chair of the nonpartisan re-election efforts of four sitting

10  justices of the Michigan Supreme Court.

11          The main office of Consumers' legal department is located in Jackson, Michigan, with a

12  small legal office in Washington, D.C.  The total staff varied over the years, but generally

13  consisted of between 60-70 people.  Of that number, there were approximately 30 lawyers, a half

14  dozen paralegals, a data base management group, three professional investigators, one office

15  manager, with the balance being support and clerical staff of various types.  He supplemented in-

16  house staff with carefully selected outside counsel chosen for assignments depending on the matter

17  involved and the best interests of the client.  In his role, he had responsibility for developing and

18  administering budgets and five-year plans for the legal department and participated in the

19  company's overall budgeting and planning process each year.

20          Since retiring, Mr. Mikelonis has previously served as secretary for a group of

21  employee/investors who objected to various aspects of a settlement in ERISA litigation involving

22  CMS Energy Corporation, including an objection to fees and expenses.  He and another retired

23  officer of Consumers also filed objections in 2007 to a class action settlement in shareholder

24  litigation involving CMS Energy Corporation and participated in the fairness hearing related to the

25  settlement.

26          **Kevin O'Donnell**: Kevin O'Donnell is a member of the Wisconsin Bar.  Mr. O'Donnell

27  comes from a family of three generations of lawyers and a judge in Wisconsin.  He was admitted

28  to the Bar in 1972.  Mr. O'Donnell practiced in the fields of personal injury and product liability

1    trial law before starting the country's first independent health subrogation firm in 1983.  He sold

2    that firm in 1999 and has been happily retired since.

3        **James Coffin**: James Coffin is a member of the California Bar and Vice President of C-Y

4    Development Company, a company co-founded by his father and a builder and developer of

5    commercial and residential property in Redlands California.  He was admitted to the Bar in 1986,

6    practiced real estate law in Redlands, and has been involved in mediations at JAMS.

7        **Robert Dickson**: Robert Dickson is the managing director of Dickson Consulting, which

8    provides senior executive and financial consulting service to companies in the start up stage.  He is

9    also presently the CFO of CardiacAssist, Inc., a medical device company that develops,

10   manufactures and markets cardiac devices.  CardiacAssist is located in Pittsburgh, PA.

11       Before starting Dickson Consulting, Mr. Dickson was a financial officer of three

12   companies for a total period of 22 years.  These companies ranged in size from $9 million to $1.2

13   billion in revenue, both publicly traded and privately owned.  He also worked at

14   PricewaterhouseCoopers for nine years.

15       Mr. Dickson has held numerous leadership roles in professional organizations, including

16   the Financial Executives International and the Association for Corporate Growth.  He has also

17   served on the Board of Trustees at the Emerald Asset Mutual Fund Family and the Fort Pitt Capital

18   Total Return Fund.  In both situations, Mr. Dickson was the designated financial expert for the

19   Audit Committee.

20       Mr. Dickson is a graduate of Pennsylvania State University with a B.S. degree in

21   Accounting.  He has been a financial officer for a number of companies, with responsibility for

22   various corporate governance functions including financial reporting, coordination of annual audits,

23   reporting to boards of directors, establishing and monitoring internal accounting controls and

24   review of filings with the Securities and Exchange Commission.  He has worked closely with legal

25   counsel on corporate governance matters.

26       **John Hill**: John Hill is retired and was an engineer at Lockhead Missle Systems. Mr. Hill

27   has a BA degree from San Jose State University in Business and Physical Science. At Lockheed,

28   he was a lead engineer in Reliability Engineering.  His responsibility was to diagnose major

missile problems and recommend solutions that would maintain Navy required missile reliability of 99.99%. During manufacturing start-up for a new missile design, Mr. Hill was appointed to resolve unresolved manufacturing, design and purchasing problems on the new missile. Missile delivery dates were being missed that cost Lockheed $35,000 per missile. He prepared budgets for the department and negotiated them with the customer (Navy) as required. Mr. Hill was responsible for preparing three underground (Nevada) tests for specific missile "packages" at the request of the customer. Mr. Hill submitted six approved missile design changes and five patent applications.

Mr. Hill was also responsible for overseeing the operation of his deceased parents' ranch property and closing the estate. He arranged for the financing of crops and negotiated contracts with wineries for the sale of Chardonnay grapes grown on the ranch vines.

**N. Richard Kimmell**: N. Richard Kimmell is retired. Mr. Kimmell invests in the market and worked in commercial building construction for 40 years. He also worked in financing businesses. He was Vice Chairman of First Citizens Financial Corporation for seven years, the holding company formed in 1989 for Citizens Savings Bank F.S.B., which operated in Maryland. He chaired the asset liability committee which managed money. He has managed lawyers in litigation and arbitration matters.

4.    The members of the group have met and conferred with each other by telephone and certain members corresponded by e-mail with all the members.

5.    I am aware that I, as an individual, or the group, could select any counsel to represent me or the group, and that we were not and are not required or compelled to recommend Hagens Berman Sobol Shapiro LLP as class counsel. By submitting this declaration, I am personally ratifying this firm as my choice for that role in this litigation.

6.    One member of the group, with extensive experience in managing counsel and with experience in objecting to terms of two class action settlements, and in participating in a class action from the defendants' perspective, took charge of drafting and circulating to the group, through counsel, a proposed retainer agreement outlining the relationship of Hagens Berman Sobol Shapiro LLP to the group. This member also proposed a method of determining an appropriate fee

1    and approving expenses, and a method for resolving disputes with counsel in this regard. The

2    group unanimously approved a revision of that retainer agreement. That agreement will be made

3    available to the Court for an in camera review if so requested.

4           7.     The Group also discussed, proposed and unanimously approved a governance

5    structure with a three person management committee, a decision making mechanism for settlement

6    and dismissal that requires a super majority for approval, and a decision making mechanism for

7    approving less critical decisions by a simple majority and use on a more expedited basis of the

8    management committee for certain matters.

9           8.     The Group has elected a three-person management committee with David

10   Mikelonis as the Chair, James Coffin as the Vice Chair, and Kevin O'Donnell as the Secretary. If

11   immediate decisions need to be made on matters other than case determinative matters such as the

12   filing of amended complaints, filing major motion papers, trial or settlement, any two of the

13   officers can authorize counsel to act. Major case determinative decisions such as those regarding

14   settlement, claims, or dismissal, require a two-thirds super majority approval based on the

15   weighted value of each member's estimated losses. Generally, this is the same as approval by four

16   of the six members of the group (with David and Gretchen Mikelonis considered as one member).

17   Major matters not within the purview of the management committe and not requiring a 2/3rds

18   super majority require a simple majority of the entire membership to approve with each member's

19   votes based on each member's pro-rated share of the group's total estimated losses.  The method of

20   handling matters involving  counsel, counsel's fees and expenses, are dealt with in the retainer

21   agreement. The retainer agreement also provides that the Court will be advised of any disputes if

22   the group and its counsel cannot resolve any differences about fees and expenses.

23          9.     Each member of the Group has the e-mail address and telephone number for every

24   other member.  Any member of the Group may call for a meeting or conference call.  Counsel is to

25   provide, at a minimum, written quarterly updates to the Group, host a quarterly conference call

26   regarding the status of the case, deal with any matters that require group approval, and to be in

27   contact with the group's management committee on a more regular basis as consultation and

28   approvals are needed.

P.1

@002/003

1   Due to the composition of its membership, I believe that this group, with its governance structure
2   and agreements with counsel, will be well informed and positioned to manage this litigation on
3   behalf of the class and to manage counsel. Under the group's leadership, we can assure that this
4   case is not lawyer-driven, but is conducted for the benefit of the entire class. I also believe that our
5   group and governance structure exhibit the sophistication, expertise and resources to manage
6   securities litigation efficiently. In this regard, this group has comparable ability to control the
7   litigation and the lawyers as an institution.
8        I declare, under penalty of perjury of the laws of the United States, that the foregoing is
9   true and correct to the best of my knowledge.
10       Executed this 5th day of June 2008.
11                                                _N. Richard Kimmel_
12                                                N. RICHARD KIMMEL
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DECL. N. RICHARD KIMMEL IN OPP TO COMPET. MOTS. TO    - 6 -
CONSOL., LEAD PL., LEAD COUNS. – NO. 08-cv-01510 WHA

# Exhibit 5

1    Reed R. Kathrein (139304)
     Peter E. Borkon (212596)
2    HAGENS BERMAN SOBOL SHAPIRO LLP
     715 Hearst Avenue, Suite 202
3    Berkeley, CA 94710
     Telephone:  (510) 725-3000
4    Facsimile:  (510) 725-3001
     reed@hbsslaw.com
5    peterb@hbsslaw.com

6    Attorneys for Plaintiff

7    [Additional counsel listed on signature page]

8

9                    UNITED STATES DISTRICT COURT

10                   NORTHERN DISTRICT OF CALIFORNIA

11                      SAN FRANCISCO DIVISION

12   MIKE LABINS, on Behalf of Himself and all   )   No. 08-cv-01510 WHA
     Others Similarly Situated,                  )
13                                               )   DECLARATION OF DAVID MIKELONIS
                                    Plaintiff,   )   IN OPPOSITION TO ALL COMPETING
14                                               )   MOTIONS  TO APPOINT LEAD
            v.                                   )   PLAINTIFF AND TO APPROVE
15                                               )   PROPOSED LEAD PLAINTIFF'S
     THE CHARLES SCHWAB CORPORATION,             )   SELECTION OF COUNSEL
16   CHARLES SCHWAB & CO. INC., CHARLES          )
     SCHWAB INVESTMENT MANAGEMENT,               )   DATE:  July 2, 2008
17   INC., CHARLES R. SCHWAB, EVELYN             )   TIME:  9:00 a.m.
     DILSAVER, RANDALL W. MERK and               )   DEPT:   CR 9, 19th Floor
18   GEORGE PEREIRA,                             )
                                                 )
19                                  Defendants.  )
     _____ )
20   GERRY HAGEMAN, on Behalf of Himself and )      No. 08-cv-1733 WHA
     all Others Similarly Situated,              )
21                                               )
                                    Plaintiff,   )
22                                               )
            v.                                   )
23                                               )
     THE CHARLES SCHWAB CORPORATION,             )
24   CHARLES SCHWAB & CO. INC., CHARLES          )
     SCHWAB INVESTMENT MANAGEMENT,               )
25   INC., CHARLES R. SCHWAB, EVELYN             )
     DILSAVER, RANDALL W. MERK and               )
26   GEORGE PEREIRA,                             )
                                                 )
27                                  Defendants.  )
     _____ )
28

| | | |
|---|---|---|
| 1 | W. MERRILL GLASGOW, on Behalf of ) Himself and All Others Similarly Situated, ) | No. 08-cv-1936 WHA |
| 2 | ) | |
| 3 | Plaintiff, ) | |
| 4 | v. ) | |
| 5 | THE CHARLES SCHWAB CORPORATION, ) CHARLES SCHWAB & CO. INC., CHARLES ) SCHWAB INVESTMENT MANAGEMENT, ) | |
| 6 | INC., CHARLES R. SCHWAB, EVELYN ) DILSAVER, RANDALL W. MERK and ) | |
| 7 | GEORGE PEREIRA, ) | |
| 8 | Defendants. ) ) | |
| 9 | NILS FLANZRAICH and JILL FLANZRAICH, ) on Behalf of Themselves and all Others ) | No. 08-cv-1994 WHA |
| 10 | Similarly Situated, ) | |
| 11 | Plaintiffs, ) | |
| 12 | v. ) | |
| 13 | THE CHARLES SCHWAB CORPORATION, ) CHARLES SCHWAB & CO. INC., CHARLES ) | |
| 14 | SCHWAB INVESTMENT MANAGEMENT, ) INC., CHARLES R. SCHWAB, SCHWAB ) | |
| 15 | INVESTMENTS, SCHWAB YIELDPLUS ) FUND SELECT SHARES, EVELYN ) | |
| 16 | DILSAVER, RANDALL W. MERK and ) GEORGE PEREIRA, ) | |
| 17 | Defendants. ) | |
| 18 | ) | |
| 19 | | |
| 20 | | |
| 21 | | |
| 22 | | |
| 23 | | |
| 24 | | |
| 25 | | |
| 26 | | |
| 27 | | |
| 28 | | |

| | |
|---|---|
| 1 | VINAYAK R. PAI DEFINED BENEFITS )    No. 08-cv-2058 WHA |
| | PENSION PLAN, on Behalf of Itself and all ) |
| 2 | Others Similarly Situated, ) |
| | ) |
| 3 | Plaintiff, ) |
| | ) |
| 4 | v. ) |
| | ) |
| 5 | THE CHARLES SCHWAB CORPORATION, ) |
| | CHARLES SCHWAB & CO. INC., CHARLES ) |
| 6 | SCHWAB INVESTMENT MANAGEMENT, ) |
| | INC., SCHWAB INVESTMENTS, CHARLES ) |
| 7 | R. SCHWAB, EVELYN DILSAVER, ) |
| | RANDALL W. MERK, GREGORY HAND, ) |
| 8 | GEORGE PEREIRA, DONALD F. DOWARD, ) |
| | MARIANN BYERWALTER, WILLIAM A. ) |
| 9 | HASLER, ROBERT G. HOLMES, GERALD B. ) |
| | SMITH, DONALD R. STEPHENS, MICHAEL ) |
| 10 | W. WILSEY and JEFF LYONS, ) |
| | ) |
| 11 | Defendants. ) |
| | ——————————————————————) |

1    I, David Mikelonis, declare as follows:

2    1.    I am a member of the proposed Yield Plus Investor Group ("Group").

3    2.    The Group was formed after each of us separately contacted Hagens Berman Sobol &

4    Shapiro LLP in the spring of 2008. We come from different locations around the country.  Prior to

5    those contacts, except for the one married couple, none of the others in the group had ever met one

6    another and have no familial or business relationships with one another.  Nor do we have any prior

7    business or other relationships with Hagens Berman or any of its attorneys.  We were introduced to

8    each other by Reed Kathrein in the spring of 2008 as the clients of the Hagens Berman who suffered

9    the greatest losses, were willing to be a Lead Plaintiff, or who had special expertise that would aid the

10   group in managing counsel and the litigation on behalf of the class. Each member was described to

11   each of us in general terms prior to our agreement to participate as a member of a lead plaintiff

12   group.Each member has comparable and significant losses greater than $100,000.  Each member has

13   sophistication and experience.  Because of the complexity of the case, and the expertise of each

14   member, I have the incentive and desire to work together with the other members of the group to

15   control the litigation.  Accordingly, I consented to filing as lead plaintiff as a group, or alternatively

16   as an individual.

17   3.    A description of the members of our group is as follows:

18   **David and Gretchen Mikelonis**: David and Gretchen Mikelonis are married.  Mr. Mikelonis

19   made the investment decisions and invested the funds for both in the Schwab YieldPlus Funds.  Mr.

20   Mikelonis is an attorney admitted to the bar in the State of Michigan and admitted to practice in

21   numerous federal courts and the United States Supreme Court.  He has degrees from the University

22   of Notre Dame, A.B. in Government and International Relations, June 1970; University of Michigan

23   Law School, J.D., August 1972; and University of Michigan Graduate School of Business, M.B.A.,

24   April 1979.

25   Prior to retirement, Mr. Mikelonis was Vice President and General Attorney of Consumers

26   Energy Company ("Consumers") from February 1986 to December 1988, and then Senior Vice

27   President and General Counsel from December 1988 to September 2004  In his capacity at

28   Consumers, he managed every aspect of a department with an annual budget in the millions of

DECL. DAVID MIKELONIS IN OPP TO COMPET. MOTS. TO        - 1 -
CONSOL., LEAD PL., LEAD COUNS. – NO. 08-cv-01510 WHA

1  dollars.  This included being ultimately responsible for all litigation in which Consumers was

2  involved in state and federal courts.  This responsibility included close supervision of the legal

3  strategy and its implementation in all of the significant court litigation (including commercial

4  arbitrations) and regulatory and administrative proceedings encountered before state and federal

5  agencies.  In addition, he personally handled important contract matters and governance matters.  He

6  is also a registered lobbyist agent with the Michigan Secretary of State on behalf of Consumers and

7  participated in the Lansing legislative process with respect to legislation and regulations of interest

8  to Consumers.  Finally, several times, most recently in 2006, at their personal requests, he has also

9  served as a Jackson County co-chair of the nonpartisan re-election efforts of four sitting justices of

10  the Michigan Supreme Court.

11       The main office of Consumers' legal department is located in Jackson, Michigan, with a

12  small legal office in Washington, D.C.  The total staff varied over the years, but generally consisted

13  of between 60-70 people.  Of that number, there were approximately 30 lawyers, a half dozen

14  paralegals, a data base management group, three professional investigators, one office manager, with

15  the balance being support and clerical staff of various types.  He supplemented in-house staff with

16  carefully selected outside counsel chosen for assignments depending on the matter involved and the

17  best interests of the client.  In his role, he had responsibility for developing and administering

18  budgets and five-year plans for the legal department and participated in the company's overall

19  budgeting and planning process each year.

20       Since retiring, Mr. Mikelonis has previously served as secretary for a group of

21  employee/investors who objected to various aspects of a settlement in ERISA litigation involving

22  CMS Energy Corporation, including an objection to fees and expenses.  He and another retired

23  officer of Consumers also filed objections in 2007 to a class action settlement in shareholder

24  litigation involving CMS Energy Corporation and participated in the fairness hearing related to the

25  settlement.

26       **Kevin O'Donnell**: Kevin O'Donnell is a member of the Wisconsin Bar.  Mr. O'Donnell

27  comes from a family of three generations of lawyers and a judge in Wisconsin.  He was admitted to

28  the Bar in 1972.  Mr. O'Donnell practiced in the fields of personal injury and product liability trial

law before starting the country's first independent health subrogation firm in 1983. He sold that firm in 1999 and has been happily retired since.

**James Coffin**: James Coffin is a member of the California Bar and Vice President of C-Y Development Company, a company co-founded by his father and a builder and developer of commercial and residential property in Redlands California. He was admitted to the Bar in 1986, practiced real estate law in Redlands, and has been involved in mediations at JAMS.

**Robert Dickson**: Robert Dickson is the managing director of Dickson Consulting, which provides senior executive and financial consulting service to companies in the start up stage. He is also presently the CFO of CardiacAssist, Inc., a medical device company that develops, manufactures and markets cardiac devices. CardiacAssist is located in Pittsburgh, PA.

Before starting Dickson Consulting, Mr. Dickson was a financial officer of three companies for a total period of 22 years. These companies ranged in size from $9 million to $1.2 billion in revenue, both publicly traded and privately owned. He also worked at PricewaterhouseCoopers for nine years.

Mr. Dickson has held numerous leadership roles in professional organizations, including the Financial Executives International and the Association for Corporate Growth. He has also served on the Board of Trustees at the Emerald Asset Mutual Fund Family and the Fort Pitt Capital Total Return Fund. In both situations, Mr. Dickson was the designated financial expert for the Audit Committee.

Mr. Dickson is a graduate of Pennsylvania State University with a B.S. degree in Accounting. He has been a financial officer for a number of companies, with responsibility for various corporate governance functions including financial reporting, coordination of annual audits, reporting to boards of directors, establishing and monitoring internal accounting controls and review of filings with the Securities and Exchange Commission. He has worked closely with legal counsel on corporate governance matters.

**John Hill**: John Hill is retired and was an engineer at Lockhead Missle Systems. Mr. Hill has a BA degree from San Jose State University in Business and Physical Science. At Lockheed, he was a lead engineer in Reliability Engineering. His responsibility was to diagnose major missile

1    problems and recommend solutions that would maintain Navy required missile reliability of 99.99%.

2    During manufacturing start-up for a new missile design, Mr. Hill was appointed to resolve

3    unresolved manufacturing, design and purchasing problems on the new missile.  Missile delivery

4    dates were being missed that cost Lockheed  $35,000 per missile.  He prepared budgets for the

5    department and negotiated them with the customer (Navy) as required. Mr. Hill was responsible for

6    preparing three underground (Nevada) tests for specific missile "packages" at the request of the

7    customer. Mr. Hill submitted six approved missile design changes and five patent applications.

8         Mr. Hill was also responsible for overseeing the operation of his deceased parents' ranch

9    property and closing the estate.  He arranged for the financing of crops and negotiated contracts with

10   wineries for the sale of Chardonnay grapes grown on the ranch vines.

11   **N. Richard Kimmell**: N. Richard Kimmell is retired.  Mr. Kimmell invests in the market and

12   worked in commercial building construction for 40 years.  He also worked in financing businesses.

13   He was Vice Chairman of First Citizens Financial Corporation for seven years, the holding company

14   formed in 1989 for Citizens Savings Bank F.S.B., which operated in Maryland.  He chaired the asset

15   liability committee which managed money.  He has managed lawyers in litigation and arbitration

16   matters.

17        4.    The members of the group have met and conferred with each other by telephone and

18   certain members corresponded by e-mail with all the members.

19        5.    I am aware that I, as an individual, or the group, could select any counsel to represent

20   me or the group, and that we were not and are not required or compelled to recommend Hagens

21   Berman Sobol Shapiro LLP as class counsel.  By submitting this declaration, I am personally

22   ratifying this firm as my choice for that role in this litigation.

23        6.    One member of the group, with extensive experience in managing counsel and with

24   experience in objecting to terms of two class action settlements, and in participating in a class action

25   from the defendants' perspective, took charge of drafting and circulating to the group, through

26   counsel, a proposed retainer agreement outlining the relationship of Hagens Berman Sobol Shapiro

27   LLP to the group.  This member also proposed a method of determining an appropriate fee and

28   approving expenses, and a method for resolving disputes with counsel in this regard.  The group

1    unanimously approved a revision of that retainer agreement.  That agreement will be made available

2    to the Court for an in camera review if so requested.

3        7.    The Group also discussed, proposed and unanimously approved a governance structure

4    with a three person management committee,  a decision making mechanism for settlement and

5    dismissal that requires a super majority for approval, and a decision making mechanism for approving

6    less critical decisions by a simple majority and use on a more expedited basis of the management

7    committee for certain matters.

8        8.    The Group has elected a three-person management committee with David Mikelonis

9    as the Chair, James Coffin as the Vice Chair, and Kevin O'Donnell as the Secretary.  If immediate

10   decisions need to be made on matters other than case determinative matters such as the filing of

11   amended complaints, filing major motion papers, trial or settlement, any two of the officers can

12   authorize counsel to act.  Major case determinative decisions such as those regarding settlement,

13   claims, or dismissal, require a two-thirds super majority approval based on the weighted value of

14   each member's estimated losses.  Generally, this is the same as approval by four of the six members

15   of the group (with David and Gretchen Mikelonis considered as one member).  Major matters not

16   within the purview of the management committe and not requiring a 2/3rds super majority require a

17   simple majority of the entire membership to approve with each member's votes based on each

18   member's pro-rated share of the group's total estimated losses.   The method of handling matters

19   involving  counsel, counsel's fees and expenses, are dealt with in the retainer agreement. The

20   retainer agreement also provides that the Court will be advised of any disputes if the group and its

21   counsel cannot resolve any differences about fees and expenses.

22       9.    Each member of the Group has the e-mail address and telephone number for every

23   other member.  Any member of the Group may call for a meeting or conference call.  Counsel is to

24   provide, at a minimum, written quarterly updates to the Group, host a quarterly conference call

25   regarding the status of the case, deal with any matters that require group approval, and to be in

26   contact with the group's management committee on a more regular basis as consultation and

27   approvals are needed.

28

DECL. DAVID MIKELONIS IN OPP TO COMPET. MOTS. TO        - 5 -
CONSOL., LEAD PL., LEAD COUNS. – NO. 08-cv-01510 WHA

1   Due to the composition of its membership, I believe that this group, with its governance structure

2   and agreements with counsel, will be well informed and positioned to  manage this litigation on

3   behalf of the class and to manage counsel.  Under the group's leadership, we can assure that this case

4   is not lawyer-driven, but is conducted for the benefit of the entire class.  I also believe that our group

5   and governance structure exhibit  the sophistication, expertise and resources to manage securities

6   litigation efficiently.  In this regard, this group has comparable ability to control the litigation and the

7   lawyers as an institution.

8          I declare, under penalty of perjury of the laws of the United States, that the foregoing is true

9   and correct to the best of my knowledge.

10         Executed this 5th day of June 2008.

11                                                    _____

12                                                    DAVID MIKELONIS

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Exhibit 6

1   Reed R. Kathrein (139304)
    Peter E. Borkon (212596)
2   HAGENS BERMAN SOBOL SHAPIRO LLP
    715 Hearst Avenue, Suite 202
3   Berkeley, CA 94710
    Telephone: (510) 725-3000
4   Facsimile: (510) 725-3001
    reed@hbsslaw.com
5   peterb@hbsslaw.com

6   Attorneys for Plaintiff

7   [Additional counsel listed on signature page]

8

9                    UNITED STATES DISTRICT COURT

10                   NORTHERN DISTRICT OF CALIFORNIA

11                      SAN FRANCISCO DIVISION

12  MIKE LABINS, on Behalf of Himself and all        )   No. 08-cv-01510 WHA
    Others Similarly Situated,                       )
13                                                    )   DECLARATION OF KEVIN O'DONNELL
                                        Plaintiff,    )   IN OPPOSITION TO ALL COMPETING
14                                                    )   MOTIONS TO APPOINT LEAD
                                                      )   PLAINTIFF AND TO APPROVE
15            v.                                      )   PROPOSED LEAD PLAINTIFF'S
                                                      )   SELECTION OF COUNSEL
16  THE CHARLES SCHWAB CORPORATION,                   )
    CHARLES SCHWAB & CO. INC., CHARLES                )
17  SCHWAB INVESTMENT MANAGEMENT,                     )   DATE: July 2, 2008
    INC., CHARLES R. SCHWAB, EVELYN                   )   TIME: 9:00 a.m.
18  DILSAVER, RANDALL W. MERK and                     )   DEPT: CR 9, 19th Floor
    GEORGE PEREIRA,                                   )
19                                                    )
                                       Defendants.    )
20  ─────────────────────────────────────            )
    GERRY HAGEMAN, on Behalf of Himself and           )   No. 08-cv-1733 WHA
21  all Others Similarly Situated,                    )
                                                      )
22                                      Plaintiff,    )
                                                      )
23            v.                                      )
                                                      )
24  THE CHARLES SCHWAB CORPORATION,                   )
    CHARLES SCHWAB & CO. INC., CHARLES                )
25  SCHWAB INVESTMENT MANAGEMENT,                     )
    INC., CHARLES R. SCHWAB, EVELYN                   )
26  DILSAVER, RANDALL W. MERK and                     )
    GEORGE PEREIRA,                                   )
27                                                    )
                                       Defendants.    )
28  ─────────────────────────────────────            )

| | | |
|---|---|---|
| 1 | W. MERRILL GLASGOW, on Behalf of<br>Himself and All Others Similarly Situated,<br><br> | No. 08-cv-1936 WHA |

W. MERRILL GLASGOW, on Behalf of
Himself and All Others Similarly Situated,                )      No. 08-cv-1936 WHA

1

2                                                          )
                                    Plaintiff,             )

3                                                          )
              v.                                           )

4                                                          )
THE CHARLES SCHWAB CORPORATION,          )

5    CHARLES SCHWAB & CO. INC., CHARLES     )
     SCHWAB INVESTMENT MANAGEMENT,          )

6    INC., CHARLES R. SCHWAB, EVELYN        )
     DILSAVER, RANDALL W. MERK and         )

7    GEORGE PEREIRA,                        )
                                           )

8                                    Defendants.           )
                                                          )

9    NILS FLANZRAICH and JILL FLANZRAICH,  )      No. 08-cv-1994 WHA
     on Behalf of Themselves and all Others )

10   Similarly Situated,                   )
                                           )

11                                   Plaintiffs,           )
                                                          )

12             v.                          )
                                           )

13   THE CHARLES SCHWAB CORPORATION,          )
     CHARLES SCHWAB & CO. INC., CHARLES     )

14   SCHWAB INVESTMENT MANAGEMENT,          )
     INC., CHARLES R. SCHWAB, SCHWAB       )

15   INVESTMENTS, SCHWAB YIELDPLUS         )
     FUND SELECT SHARES, EVELYN            )

16   DILSAVER, RANDALL W. MERK and         )
     GEORGE PEREIRA,                       )

17                                         )
                                    Defendants.           )

18   _____)

19

20

21

22

23

24

25

26

27

28        KOD    6/6/08

DECL. KEVIN O'DONNELL IN OPP TO COMPEL. MOTS. TO          - ii -

1  VINAYAK R. PAI DEFINED BENEFITS          )     No. 08-cv-2058 WHA
   PENSION PLAN, on Behalf of Itself and all )
2  Others Similarly Situated,                 )
                                              )
3                          Plaintiff,          )
                                              )
4          v.                                  )
                                              )
5  THE CHARLES SCHWAB CORPORATION,            )
   CHARLES SCHWAB & CO. INC., CHARLES         )
6  SCHWAB INVESTMENT MANAGEMENT,              )
   INC., SCHWAB INVESTMENTS, CHARLES          )
7  R. SCHWAB, EVELYN DILSAVER,                )
   RANDALL W. MERK, GREGORY HAND,             )
8  GEORGE PEREIRA, DONALD F. DOWARD,          )
   MARIANN BYERWALTER, WILLIAM A.             )
9  HASLER, ROBERT G. HOLMES, GERALD B.        )
   SMITH, DONALD R. STEPHENS, MICHAEL         )
10 W. WILSEY and JEFF LYONS,                  )
                                              )
11                         Defendants.         )
                                              )

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
   _Ko'D_     6/6/08

1    I, Kevin O'Donnell, declare as follows:

2        1.    I am a member of the proposed Yield Plus Investor Group ("Group").

3        2.    The Group was formed after each of us separately contacted Hagens Berman Sobol

4    & Shapiro LLP in the spring of 2008. We come from different locations around the country. Prior

5    to those contacts, except for the one married couple, none of the others in the group had ever met

6    one another and have no familial or business relationships with one another. Nor do we have any

7    prior business or other relationships with Hagens Berman or any of its attorneys. We were

8    introduced to each other by Reed Kathrein in the spring of 2008 as the clients of the Hagens

9    Berman who suffered the greatest losses, were willing to be a Lead Plaintiff, or who had special

10    expertise that would aid the group in managing counsel and the litigation on behalf of the class.

11    Each member was described to each of us in general terms prior to our agreement to participate as a

12    member of a lead plaintiff group.Each member has comparable and significant losses greater than

13    $100,000. Each member has sophistication and experience. Because of the complexity of the case,

14    and the expertise of each member, I have the incentive and desire to work together with the other

15    members of the group to control the litigation. Accordingly, I consented to filing as lead plaintiff as

16    a group, or alternatively as an individual.

17        3.    A description of the members of our group is as follows:

18        **David and Gretchen Mikelonis**: David and Gretchen Mikelonis are married. Mr.

19    Mikelonis made the investment decisions and invested the funds for both in the Schwab YieldPlus

20    Funds. Mr. Mikelonis is an attorney admitted to the bar in the State of Michigan and admitted to

21    practice in numerous federal courts and the United States Supreme Court. He has degrees from the

22    University of Notre Dame, A.B. in Government and International Relations, June 1970; University

23    of Michigan Law School, J.D., August 1972; and University of Michigan Graduate School of

24    Business, M.B.A., April 1979

25        Prior to retirement, Mr. Mikelonis was Vice President and General Attorney of Consumers

26    Energy Company ("Consumers") from February 1986 to December 1988, and then Senior Vice

27    President and General Counsel from December 1988 to September 2004  In his capacity at

28    Consumers, he managed every aspect of a department with an annual budget in the millions of

DECL. KEVIN O'DONNELL IN OPP TO COMPET. MOTS. TO    - 1 -

1    dollars.  This included being ultimately responsible for all litigation in which Consumers was

2    involved in state and federal courts.  This responsibility included close supervision of the legal

3    strategy and its implementation in all of the significant court litigation (including commercial

4    arbitrations) and regulatory and administrative proceedings encountered before state and federal

5    agencies.  In addition, he personally handled important contract matters and governance matters.

6    He is also a registered lobbyist agent with the Michigan Secretary of State on behalf of Consumers

7    and participated in the Lansing legislative process with respect to legislation and regulations of

8    interest to Consumers.  Finally, several times, most recently in 2006, at their personal requests, he

9    has also served as a Jackson County co-chair of the nonpartisan re-election efforts of four sitting

10    justices of the Michigan Supreme Court.

11            The main office of Consumers' legal department is located in Jackson, Michigan, with a

12    small legal office in Washington, D.C.  The total staff varied over the years, but generally

13    consisted of between 60-70 people.  Of that number, there were approximately 30 lawyers, a half

14    dozen paralegals, a data base management group, three professional investigators, one office

15    manager, with the balance being support and clerical staff of various types.  He supplemented in-

16    house staff with carefully selected outside counsel chosen for assignments depending on the matter

17    involved and the best interests of the client.  In his role, he had responsibility for developing and

18    administering budgets and five-year plans for the legal department and participated in the

19    company's overall budgeting and planning process each year.

20            Since retiring, Mr. Mikelonis has previously served as secretary for a group of

21    employee/investors who objected to various aspects of a settlement in ERISA litigation involving

22    CMS Energy Corporation, including an objection to fees and expenses.  He and another retired

23    officer of Consumers also filed objections in 2007 to a class action settlement in shareholder

24    litigation involving CMS Energy Corporation and participated in the fairness hearing related to the

25    settlement.

26            **Kevin O'Donnell**: Kevin O'Donnell is a member of the Wisconsin Bar.  Mr. O'Donnell

27    comes from a family of three generations of lawyers and a judge in Wisconsin.  He was admitted

28    to the Bar in 1972.  Mr. O'Donnell practiced in the fields of personal injury and product liability

DECL. KEVIN O'DONNELL IN OPP TO COMPET. MOTS. TO        - 2 -

1    trial law before starting the country's first independent health subrogation firm in 1983. He sold

2    that firm in 1999 and has been happily retired since.

3    **James Coffin**: James Coffin is a member of the California Bar and Vice President of C-Y

4    Development Company, a company co-founded by his father and a builder and developer of

5    commercial and residential property in Redlands California. He was admitted to the Bar in 1986,

6    practiced real estate law in Redlands, and has been involved in mediations at JAMS.

7    **Robert Dickson**: Robert Dickson is the managing director of Dickson Consulting, which

8    provides senior executive and financial consulting service to companies in the start up stage. He is

9    also presently the CFO of CardiacAssist, Inc., a medical device company that develops,

10    manufactures and markets cardiac devices. CardiacAssist is located in Pittsburgh, PA.

11    Before starting Dickson Consulting, Mr. Dickson was a financial officer of three

12    companies for a total period of 22 years. These companies ranged in size from $9 million to $1.2

13    billion in revenue, both publicly traded and privately owned. He also worked at

14    PricewaterhouseCoopers for nine years.

15    Mr. Dickson has held numerous leadership roles in professional organizations, including

16    the Financial Executives International and the Association for Corporate Growth. He has also

17    served on the Board of Trustees at the Emerald Asset Mutual Fund Family and the Fort Pitt Capital

18    Total Return Fund. In both situations, Mr. Dickson was the designated financial expert for the

19    Audit Committee.

20    Mr. Dickson is a graduate of Pennsylvania State University with a B.S. degree in

21    Accounting. He has been a financial officer for a number of companies, with responsibility for

22    various corporate governance functions including financial reporting, coordination of annual audits,

23    reporting to boards of directors, establishing and monitoring internal accounting controls and

24    review of filings with the Securities and Exchange Commission. He has worked closely with legal

25    counsel on corporate governance matters.

26    **John Hill**: John Hill is retired and was an engineer at Lockhead Missle Systems. Mr. Hill

27    has a BA degree from San Jose State University in Business and Physical Science. At Lockheed,

28    he was a lead engineer in Reliability Engineering. His responsibility was to diagnose major

DECL. KEVIN O'DONNELL IN OPP TO COMPET. MOTS. TO    - 3 -

1   missile problems and recommend solutions that would maintain Navy required missile reliability

2   of 99.99%. During manufacturing start-up for a new missile design, Mr. Hill was appointed to

3   resolve unresolved manufacturing, design and purchasing problems on the new missile. Missile

4   delivery dates were being missed that cost Lockheed $35,000 per missile. He prepared budgets

5   for the department and negotiated them with the customer (Navy) as required. Mr. Hill was

6   responsible for preparing three underground (Nevada) tests for specific missile "packages" at the

7   request of the customer. Mr. Hill submitted six approved missile design changes and five patent

8   applications.

9       Mr. Hill was also responsible for overseeing the operation of his deceased parents' ranch

10  property and closing the estate. He arranged for the financing of crops and negotiated contracts

11  with wineries for the sale of Chardonnay grapes grown on the ranch vines.

12      **N. Richard Kimmell:** N. Richard Kimmell is retired. Mr. Kimmell invests in the market

13  and worked in commercial building construction for 40 years. He also worked in financing

14  businesses. He was Vice Chairman of First Citizens Financial Corporation for seven years, the

15  holding company formed in 1989 for Citizens Savings Bank F.S.B., which operated in Maryland.

16  He chaired the asset liability committee which managed money. He has managed lawyers in

17  litigation and arbitration matters.

18      4.      The members of the group have met and conferred with each other by telephone

19  and certain members corresponded by e-mail with all the members.

20      5.      I am aware that I, as an individual, or the group, could select any counsel to

21  represent me or the group, and that we were not and are not required or compelled to recommend

22  Hagens Berman Sobol Shapiro LLP as class counsel. By submitting this declaration, I am

23  personally ratifying this firm as my choice for that role in this litigation.

24      6.      One member of the group, with extensive experience in managing counsel and with

25  experience in objecting to terms of two class action settlements, and in participating in a class

26  action from the defendants' perspective, took charge of drafting and circulating to the group,

27  through counsel, a proposed retainer agreement outlining the relationship of Hagens Berman Sobol

28  Shapiro LLP to the group. This member also proposed a method of determining an appropriate fee

DECL. KEVIN O'DONNELL IN OPP TO COMPET. MOTS. TO      - 4 -

1    and approving expenses, and a method for resolving disputes with counsel in this regard. The

2    group unanimously approved a revision of that retainer agreement. That agreement will be made

3    available to the Court for an in camera review if so requested.

4         7.    The Group also discussed, proposed and unanimously approved a governance

5    structure with a three person management committee, a decision making mechanism for settlement

6    and dismissal that requires a super majority for approval, and a decision making mechanism for

7    approving less critical decisions by a simple majority and use on a more expedited basis of the

8    management committee for certain matters.

9         8.    The Group has elected a three-person management committee with David

10   Mikelonis as the Chair, James Coffin as the Vice Chair, and Kevin O'Donnell as the Secretary. If

11   immediate decisions need to be made on matters other than case determinative matters such as the

12   filing of amended complaints, filing major motion papers, trial or settlement, any two of the

13   officers can authorize counsel to act. Major case determinative decisions such as those regarding

14   settlement, claims, or dismissal, require a two-thirds super majority approval based on the

15   weighted value of each member's estimated losses. Generally, this is the same as approval by four

16   of the six members of the group (with David and Gretchen Mikelonis considered as one member).

17   Major matters not within the purview of the management committe and not requiring a 2/3rds

18   super majority require a simple majority of the entire membership to approve with each member's

19   votes based on each member's pro-rated share of the group's total estimated losses. The method of

20   handling matters involving counsel, counsel's fees and expenses, are dealt with in the retainer

21   agreement. The retainer agreement also provides that the Court will be advised of any disputes if

22   the group and its counsel cannot resolve any differences about fees and expenses.

23        9.    Each member of the Group has the e-mail address and telephone number for every

24   other member. Any member of the Group may call for a meeting or conference call. Counsel is to

25   provide, at a minimum, written quarterly updates to the Group, host a quarterly conference call

26   regarding the status of the case, deal with any matters that require group approval, and to be in

27   contact with the group's management committee on a more regular basis as consultation and

28   approvals are needed.

DECL. KEVIN O'DONNELL IN OPP TO COMPET. MOTS. TO    - 5 -

1  Due to the composition of its membership, I believe that this group, with its governance structure

2  and agreements with counsel, will be well informed and positioned to manage this litigation on

3  behalf of the class and to manage counsel. Under the group's leadership, we can assure that this

4  case is not lawyer-driven, but is conducted for the benefit of the entire class. I also believe that our

5  group and governance structure exhibit the sophistication, expertise and resources to manage

6  securities litigation efficiently. In this regard, this group has comparable ability to control the

7  litigation and the lawyers as an institution.

8      I declare, under penalty of perjury of the laws of the United States, that the foregoing is

9  true and correct to the best of my knowledge.

10     Executed this 5th day of June 2008.

11                                                                    KEVIN O'DONNELL

# Exhibit 7

1 | Reed R. Kathrein (139304)
Peter E. Borkon (212596)
2 | HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
3 | Berkeley, CA 94710
Telephone: (510) 725-3000
4 | Facsimile: (510) 725-3001
reed@hbsslaw.com
5 | peterb@hbsslaw.com

6 | Attorneys for Plaintiff

7 | [Additional counsel listed on signature page]

8 | UNITED STATES DISTRICT COURT

9 | NORTHERN DISTRICT OF CALIFORNIA

10 | SAN FRANCISCO DIVISION

| | |
|---|---|
| 11 | MIKE LABINS, on Behalf of Himself and all Others Similarly Situated, ) | No. 08-cv-1510 WHA |
| 12 | ) | DECLARATION OF JAMES COFFIN |
| 13 | Plaintiff, ) | REGARDING TRADES IN THE SCHWAB YIELDPLUS FUND |
| 14 | v. ) | DATE: July 2, 2008 |
| 15 | THE CHARLES SCHWAB CORPORATION, ) CHARLES SCHWAB & CO. INC., CHARLES ) SCHWAB INVESTMENT MANAGEMENT, ) INC., CHARLES R. SCHWAB, EVELYN ) DILSAVER, RANDALL W. MERK and ) GEORGE PEREIRA, ) | TIME: 9:00 a.m. DEPT: CR 9, 19th Floor |
| 18 | Defendants. ) | |
| 19 | GERRY HAGEMAN, on Behalf of Himself and ) all Others Similarly Situated, ) | No. 08-cv-1733 WHA |
| 21 | Plaintiff, ) | |
| 22 | v. ) | |
| 23 | THE CHARLES SCHWAB CORPORATION, ) CHARLES SCHWAB & CO. INC., CHARLES ) SCHWAB INVESTMENT MANAGEMENT, ) INC., CHARLES R. SCHWAB, EVELYN ) DILSAVER, RANDALL W. MERK and ) GEORGE PEREIRA, ) | |
| 26 | Defendants. ) | |

010036-12  244554 V1

| | | |
|---|---|---|
| 1 | W. MERRILL GLASGOW, on Behalf of<br>Himself and All Others Similarly Situated, | ) No. 08-cv-1936 WHA<br>) |
| 2 | | ) |
| 3 | Plaintiff, | ) |
| 4 | v. | ) |
| 5 | THE CHARLES SCHWAB CORPORATION,<br>CHARLES SCHWAB & CO. INC., CHARLES<br>SCHWAB INVESTMENT MANAGEMENT, | ) |
| 6 | INC., CHARLES R. SCHWAB, EVELYN<br>DILSAVER, RANDALL W. MERK and | ) |
| 7 | GEORGE PEREIRA, | ) |
| 8 | Defendants. | ) |
| 9 | NILS FLANZRAICH and JILL FLANZRAICH,<br>on Behalf of Themselves and all Others | ) No. 08-cv-1994 WHA<br>) |
| 10 | Similarly Situated, | ) |
| 11 | Plaintiffs, | ) |
| 12 | v. | ) |
| 13 | THE CHARLES SCHWAB CORPORATION,<br>CHARLES SCHWAB & CO. INC., CHARLES | ) |
| 14 | SCHWAB INVESTMENT MANAGEMENT,<br>INC., CHARLES R. SCHWAB, SCHWAB | ) |
| 15 | INVESTMENTS, SCHWAB YIELDPLUS<br>FUND SELECT SHARES, EVELYN | ) |
| 16 | DILSAVER, RANDALL W. MERK and<br>GEORGE PEREIRA, | ) |
| 17 | Defendants. | ) |
| 18 | | ) |

1   VINAYAK R. PAI DEFINED BENEFITS          )    No. 08-cv-2058 WHA
    PENSION PLAN, on Behalf of Itself and all  )
2   Others Similarly Situated,               )
                                             )
3                            Plaintiff,      )
                                             )
4           v.                               )
                                             )
5   THE CHARLES SCHWAB CORPORATION,          )
    CHARLES SCHWAB & CO. INC., CHARLES       )
6   SCHWAB INVESTMENT MANAGEMENT,            )
    INC., SCHWAB INVESTMENTS, CHARLES        )
7   R. SCHWAB, EVELYN DILSAVER,              )
    RANDALL W. MERK, GREGORY HAND,           )
8   GEORGE PEREIRA, DONALD F. DOWARD,        )
    MARIANN BYERWALTER, WILLIAM A.           )
9   HASLER, ROBERT G. HOLMES, GERALD B.      )
    SMITH, DONALD R. STEPHENS, MICHAEL       )
10  W. WILSEY and JEFF LYONS,                )
                                             )
11                           Defendants.     )
    _____      )
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

I, James Coffin, declare as follows:

1.    I am a member of the proposed Lead Plaintiff group called the YieldPlus Investor Group.

2.    I sold all of my existing shares of the Schwab YieldPlus Fund on May 21, 2008 at $6.32 per share, after the date upon which the Motion for Lead Plaintiff was filed;

3.    Attached as an exhibit is a true and correct copy of the following:

Exhibit A:    Summary of Schwab YieldPlus Fund transactions;

I declare, under penalty of perjury of the laws of the United States, that the foregoing is true and correct to the best of my knowledge.

Executed this 11th day of June 2008.

_____
JAMES COFFIN

# Exhibit A

Exhibit "A"

Acquisitions of SWYSX by C-Y Development Co.

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 11/22/2006 | Buy | 103,305.7850 | SWYSX | SCHWAB YIELDPLUS SELECT SHARES | | $9.6800 | -$1,000,000.00 |
| 11/30/2006 | Buy | 111.2460 | SWYSX | SCHWAB YIELDPLUS SELECT SHARES<br>type: REINVEST DIVIDEND | | $9.6800 | -$1,076.86 |
| 12/29/2006 | Buy | 74.7630 | SWYSX | SCHWAB YIELDPLUS SELECT SHARES<br>type: REINVEST DIVIDEND | | $9.6800 | -$723.71 |
| 12/29/2006 | Buy | 413.6620 | SWYSX | SCHWAB YIELDPLUS SELECT SHARES<br>type: REINVEST DIVIDEND | | $9.6800 | -$4,004.25 |
| 01/31/2007 | Buy | 0.0600 | SWYSX | SCHWAB YIELDPLUS SELECT SHARES<br>type: REINVEST DIVIDEND | | $9.6900 | -$0.58 |
| 01/31/2007 | Buy | 456.9530 | SWYSX | SCHWAB YIELDPLUS SELECT SHARES<br>type: REINVEST DIVIDEND | | $9.6900 | -$4,427.87 |
| 02/28/2007 | Buy | 456.0010 | SWYSX | SCHWAB YIELDPLUS SELECT SHARES<br>type: REINVEST DIVIDEND | | $9.6900 | -$4,418.65 |
| 03/30/2007 | Buy | 487.7800 | SWYSX | SCHWAB YIELDPLUS SELECT SHARES<br>type: REINVEST DIVIDEND | | $9.6900 | -$4,726.59 |
| 04/30/2007 | Buy | 449.0060 | SWYSX | SCHWAB YIELDPLUS SELECT SHARES<br>type: REINVEST DIVIDEND | | $9.6900 | -$4,350.87 |
| 05/31/2007 | Buy | 481.3540 | SWYSX | SCHWAB YIELDPLUS SELECT SHARES<br>type: REINVEST DIVIDEND | | $9.6800 | -$4,659.51 |
| 06/29/2007 | Buy | 493.0920 | SWYSX | SCHWAB YIELDPLUS SELECT SHARES<br>type: REINVEST DIVIDEND | | $9.6700 | -$4,768.20 |
| 07/31/2007 | Buy | 483.2770 | SWYSX | SCHWAB YIELDPLUS SELECT SHARES<br>type: REINVEST DIVIDEND | | $9.6200 | -$4,649.12 |
| 08/31/2007 | Buy | 563.6380 | SWYSX | SCHWAB YIELDPLUS SELECT SHARES<br>type: REINVEST DIVIDEND | | $9.4100 | -$5,303.83 |
| 09/28/2007 | Buy | 455.8410 | SWYSX | SCHWAB YIELDPLUS SELECT SHARES<br>type: REINVEST DIVIDEND | | $9.4400 | -$4,303.14 |
| 10/31/2007 | Buy | 511.8160 | SWYSX | SCHWAB YIELDPLUS SELECT SHARES<br>type: REINVEST DIVIDEND | | $9.4200 | -$4,821.31 |
| 11/30/2007 | Buy | 546.4220 | SWYSX | SCHWAB YIELDPLUS SELECT SHARES<br>type: REINVEST DIVIDEND | | $9.1700 | -$5,010.69 |
| 12/31/2007 | Buy | 506.9590 | SWYSX | SCHWAB YIELDPLUS SELECT SHARES<br>type: REINVEST DIVIDEND | | $9.0700 | -$4,598.12 |
| 01/31/2008 | Buy | 501.5940 | SWYSX | SCHWAB YIELDPLUS SELECT SHARES<br>type: REINVEST DIVIDEND | | $8.9300 | -$4,479.23 |
| 02/29/2008 | Buy | 511.1750 | SWYSX | SCHWAB YIELDPLUS SELECT SHARES<br>type: REINVEST DIVIDEND | | $8.7900 | -$4,493.23 |

# *charles* SCHWAB

Trade Confirmation

101 Montgomery Street, San Francisco, CA 94104  1-800-435-4000  www.schwab.com

Retain for Your Records

**Account Number:**
**Page 1 of  3**

**Mail To**

L TRR <6 00032811 000000051536 0002 20080521
  C-Y DEVELOPMENT CO

*Going paperless is easy. Log on to www.schwab.com/paperless.*

## Security Description

| | | |
|---|---|---|
| | **Action** | **SOLD** |

SCHWAB YIELDPLUS SELECT
SHARES
Cash Divs/Cash Cap Gains

**Symbol:** SWYSX
**Security No./Cusip:** 808525-20-8
**Branch Code:** UPYY

**Trade Date:** 5/21/08
**Settlement Date:** 5/22/08
**Type:** Margin

| Quantity | Price | Principal | Charges and/or Interest | Total Amount |
|---|---|---|---|---|
| 110,810.424 | $6.32 | $700,321.88 | N/A | $700,321.88 |

**For all of the above:**
*Executed by fund*
*Unsolicited trade*
*Capacity code AM*

# Income Summary
SWYSX
*C-Y Development Co.*
Prepared June 10, 2008

All dividends on or prior to February 29, 2008, were reinvested in SWYSX as shown on the accompanying acquisition summary.

| | | | |
|---|---|---|---|
| 03/31/08 | 03/31/08 | Cash Dividend SCHWAB YIELDPLUS SELECT | 3,829.52 |
| 04/30/08 | 04/30/08 | Cash Dividend SCHWAB YIELDPLUS SELECT | 3,013.92 |
| 05/30/08 | 05/30/08 | Cash Dividend SCHWAB YIELDPLUS SELECT | 2,118.79 |

All Shares were sold on May 21, 2008, as shown on the Trade Confirmation previously provided.  No other income has been received.

# Exhibit 8

1    Reed R. Kathrein (139304)
     Peter E. Borkon (212596)
2    HAGENS BERMAN SOBOL SHAPIRO LLP
     715 Hearst Avenue, Suite 202
3    Berkeley, CA 94710
     Telephone: (510) 725-3000
4    Facsimile: (510) 725-3001
     reed@hbsslaw.com
5    peterb@hbsslaw.com

6    Attorneys for Plaintiff

7    [Additional counsel listed on signature page]

8                    UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10                      SAN FRANCISCO DIVISION

11   MIKE LABINS, on Behalf of Himself and all    )    No. 08-cv-1510 WHA
     Others Similarly Situated,                   )
12                                                )    DECLARATION OF KEVIN
                                     Plaintiff,   )    O'DONNELL REGARDING TRADES
13                                                )    IN THE SCHWAB YIELDPLUS FUND
            v.                                    )
14                                                )    DATE: July 2, 2008
     THE CHARLES SCHWAB CORPORATION,              )    TIME:  9:00 a.m.
15   CHARLES SCHWAB & CO., INC., CHARLES          )    DEPT:  CR 9, 19th Floor
     SCHWAB INVESTMENT MANAGEMENT,                )
16   INC., CHARLES R. SCHWAB, EVELYN              )
     DILSAVER, RANDALL W. MERK and                )
17   GEORGE PEREIRA,                              )
                                                  )
18                                   Defendants.  )
                                                  )
19   GERRY HAGEMAN, on Behalf of Himself and )        No. 08-cv-1733 WHA
     all Others Similarly Situated,               )
20                                                )
                                     Plaintiff,   )
21                                                )
            v.                                    )
22                                                )
     THE CHARLES SCHWAB CORPORATION,              )
23   CHARLES SCHWAB & CO., INC., CHARLES          )
     SCHWAB INVESTMENT MANAGEMENT,                )
24   INC., CHARLES R. SCHWAB, EVELYN              )
     DILSAVER, RANDALL W. MERK and                )
25   GEORGE PEREIRA,                              )
                                                  )
26                                   Defendants.  )
                                                  )
27

28

     010036-12 244560 V1

| | |
|---|---|
| 1 | W. MERRILL GLASGOW, on Behalf of Himself and All Others Similarly Situated, | ) No. 08-cv-1936 WHA |
| 2 | ) |
| | Plaintiff, ) |
| 3 | ) |
| | v. ) |
| 4 | ) |
| | THE CHARLES SCHWAB CORPORATION, ) |
| 5 | CHARLES SCHWAB & CO. INC., CHARLES ) |
| | SCHWAB INVESTMENT MANAGEMENT, ) |
| 6 | INC., CHARLES R. SCHWAB, EVELYN ) |
| | DILSAVER, RANDALL W. MERK and ) |
| 7 | GEORGE PEREIRA, ) |
| | ) |
| 8 | Defendants. ) |

1   W. MERRILL GLASGOW, on Behalf of          No. 08-cv-1936 WHA
    Himself and All Others Similarly Situated,  )
2                                               )
                                   Plaintiff,   )
3                                               )
            v.                                  )
4                                               )
    THE CHARLES SCHWAB CORPORATION,             )
5   CHARLES SCHWAB & CO. INC., CHARLES          )
    SCHWAB INVESTMENT MANAGEMENT,               )
6   INC., CHARLES R. SCHWAB, EVELYN             )
    DILSAVER, RANDALL W. MERK and               )
7   GEORGE PEREIRA,                             )
                                                )
8                                  Defendants.  )

9   NILS FLANZRAICH and JILL FLANZRAICH,        No. 08-cv-1994 WHA
    on Behalf of Themselves and all Others      )
10  Similarly Situated,                         )
                                                )
11                                 Plaintiffs,  )
                                                )
12          v.                                  )
                                                )
13  THE CHARLES SCHWAB CORPORATION,             )
    CHARLES SCHWAB & CO. INC., CHARLES          )
14  SCHWAB INVESTMENT MANAGEMENT,               )
    INC., CHARLES R. SCHWAB, SCHWAB             )
15  INVESTMENTS, SCHWAB YIELDPLUS               )
    FUND SELECT SHARES, EVELYN                  )
16  DILSAVER, RANDALL W. MERK and               )
    GEORGE PEREIRA,                             )
                                                )
17                                              )
                                   Defendants.  )
18  _____)

19

20

21

22

23

24

25

26
                6/11/08
27
          X/DW/ofm
28
    DECL. KEVIN O'DONNELL RE CERT. OF TRADES IN
    SCHWAB YIELDPLUS FUND – NO. 08-CV-1510 WHA
    010036-12 244563 V1

1   VINAYAK R. PAI DEFINED BENEFITS            )    No. 08-cv-2058 WHA
    PENSION PLAN, on Behalf of Itself and all      )
2   Others Similarly Situated,                          )
                                                                )
3                                      Plaintiff,          )
                                                                )
4              v.                                            )
                                                                )
5   THE CHARLES SCHWAB CORPORATION,  )
    CHARLES SCHWAB & CO. INC., CHARLES  )
6   SCHWAB INVESTMENT MANAGEMENT,    )
    INC., SCHWAB INVESTMENTS, CHARLES  )
7   R. SCHWAB, EVELYN DILSAVER,              )
    RANDALL W. MERK, GREGORY HAND,       )
8   GEORGE PEREIRA, DONALD F. DOWARD,  )
    MARIANN BYERWALTER, WILLIAM A.        )
9   HASLER, ROBERT G. HOLMES, GERALD B. )
    SMITH, DONALD R. STEPHENS, MICHAEL  )
10  W. WILSEY and JEFF LYONS,                     )
                                                                )
11                                    Defendants.        )
                                                                )

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26      6/11/08

27

28      [signature]

DECL. KEVIN O'DONNELL RE CERT. OF TRADES IN
SCHWAB YIELDPLUS FUND – NO. 08-CV-1510 WHA
010036-12 244563 V1

1    I, Kevin O'Donnell, declare as follows:

2    1.    I am a member of the proposed Lead Plaintiff group called the YieldPlus Investor

3    Group.

4    2.    On or about June 9, 2008, I requested that Schwab provide me with a copy of my

5    trade activity in the Schwab YieldPlus Fund detailing transactions prior to April 11, 2006. Schwab

6    informed me that the transactional detail was being sent via U.S. Mail and that I would receive

7    them during the week of June 17, 2008. Schwab orally stated that my YieldPlus Fund transactions

8    are as attached to this Declaration.

9    3.    These transactions are in addition to those listed in my certification signed on April

10    18, 2008. These transactions were inadvertently omitted from my certification and were not

11    available to me without contacting Schwab.

12    4.    Attached as an exhibit is a true and correct copy of the following:

13    Exhibit A:    Listing of transactions prior to April 11, 2006 in the Schwab YieldPlus
             Fund.

14
      I declare, under penalty of perjury of the laws of the United States, that the foregoing is

15    true and correct to the best of my knowledge.

16    Executed this 11th day of June 2008.

17

18    KEVIN O'DONNELL

19

20

21

22

23

24

25

26

27

28

# Exhibit A

Schwab Trades for
Kevin M. O'Donnell

**Schwab Loss Analysis for Kevin M. O'Donnell**

|   | A | B | C | D | E | F | G | H | I | J | K | L | M |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 |   |   |   |   |   |   |   |   |   |   |   |   |   |
| 2 |   |   |   |   |   |   |   |   |   |   |   |   |   |
| 3 |   |   |   | PURCHASES |   |   |   |   |   | SALES |   |   |   |
| 4 |   |   |   |   |   |   |   |   |   |   |   |   |   |
| 5 | Name |   | Date | Shares | Share Price |   | Amount Paid |   | Date | Shares | Share Price |   | Amount Received |
| 6 |   |   | 2/21/2006 | 15,527.9500 | $9.6600 |   | $149,999.9970 |   |   |   |   |   |   |
| 7 |   |   | 1/13/2006 | 36,231.8840 | $9.6600 |   | $349,999.9994 |   |   |   |   |   |   |

# Exhibit 9

MLP Comparisons

| | A<br>Movant | B<br>Lookback = $7.96<br>(Schwartz Method) | C<br>Lookback = $7.88<br>(Peate Method) | D<br>Lookback = $6.87<br>(YieldPlus Inv. Group Method) | E<br>Using Closing NAV from<br>June 9, 2008 = $6.29 |
|---|---|---|---|---|---|
| 1 | Movant | | | | |
| 2 | YieldPlus Investor Group | | | | |
| 3 | David and Gretchen Mikelonis | 129,436.68 | 135,914.47 | 217,688.50 | 227,193.17 |
| 4 | Kevin O'Donnell | 357,704.25 | 374,604.75 | 432,973.54 | 439,502.15 |
| 5 | John Hill | 240,914.42 | 240,914.42 | 240,914.42 | 241,304.18 |
| 6 | N. Richard Kimmell | 210,156.87 | 210,156.87 | 210,156.87 | 210,156.87 |
| 7 | James Coffin | 188,764.78 | 197,629.62 | 309,548.14 | 373,818.19 |
| 8 | Robert Dickson | 87,205.13 | 91,275.10 | 137,496.82 | 139,787.82 |
| 9 | Total | 1,214,182.13 | 1,250,495.23 | 1,548,779.29 | 1,631,762.38 |
| 10 | | | | | |
| 11 | Peate Group | | | | |
| 12 | Jameel K. Singh | 177,685.95 | 185,950.41 | 310,950.41 | 310,950.41 |
| 13 | Garfield Peate | 93,055.41 | 97,350.48 | 150,415.72 | 151,449.49 |
| 14 | Mark Verge | 86,679.37 | 90,826.59 | 141,620.94 | 141,445.54 |
| 15 | Total | 357,420.73 | 374,127.48 | 602,987.07 | 603,845.44 |
| 16 | | | | | |
| 17 | Schwartz Group | | | | |
| 18 | Casa Marin | 36,126.08 | 37,842.09 | 56,425.54 | 56,425.54 |
| 19 | Celesta Schwartz Trust | 37,682.18 | 39,472.42 | 58,859.69 | 58,859.69 |
| 20 | Richard Schwartz Trust | 36,126.09 | 37,842.10 | 56,425.55 | 56,425.55 |
| 21 | Bell Family Limited Trust | 17,272.04 | 17,272.04 | 17,272.04 | 17,272.04 |
| 22 | Margaret Bell Trust | 23,123.53 | 24,317.72 | 38,450.09 | 38,450.09 |
| 23 | Total | 150,329.92 | 156,746.37 | 227,432.91 | 227,432.91 |