Reed R. Kathrein (139304)
Peter E. Borkon (212596)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone:  (510) 725-3000
Facsimile:  (510) 725-3001
reed@hbsslaw.com
peterb@hbsslaw.com

Attorneys for Plaintiff Labins and Movants
The YieldPlus Investor Group

[Additional counsel listed on signature page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| *IN RE CHARLES SCHWAB CORP. SECURITIES LITIGATION,* | No. 08-cv-1510 WHA |
| | YIELDPLUS INVESTOR GROUP'S REPLY IN SUPPORT OF THEIR MOTION FOR APPOINTMENT OF LEAD PLAINTIFF AND LEAD COUNSEL IN OPPOSITION TO COMPETING MOTIONS |
| | DATE: July 2, 2008<br>TIME:  9:00 a.m.<br>DEPT:  CR 9, 19th Floor |
| THIS DOCUMENT RELATES TO ALL ACTIONS *EXCEPT*:<br><br>   *Levin v. Schwab Corp., et al.,*<br>      Case No. 08-cv-2487 WHA | |

010036-12  245549 V1

**TABLE OF CONTENTS**

**PAGE**

I. INTRODUCTION ...............................................................................................................1

II. ARGUMENT .....................................................................................................................2

    A. The Presumption that the YieldPlus Investor Group is the Most Adequate Lead Plaintiff Is Unrebutted ......................................................................................2

    B. The YieldPlus Investor Group Is the Only Movant Who Has a Demonstrated Interest and Ability to Control This Litigation..................................3

    C. The YieldPlus Investor Group Satisfies Rule 23 .......................................................5

    D. The Peate Group Failed To Offer Sufficient Evidence To Establish That It Is A Proper Group Under The PSLRA ......................................................................6

III. CONCLUSION ..................................................................................................................7

# I. INTRODUCTION

Pending before the Court are six competing motions requesting that the Court appoint Lead Plaintiff and that the Court approve the movants' selections of Lead Counsel. The YieldPlus Investor Group will address the Court's June 11, 2008 Order regarding Lead Plaintiffs and calculations of losses in a separate pleading as instructed by the Court. Two movants have withdrawn their motions and one concedes that it does not satisfy the standards enumerated by the Ninth Circuit in *In re Cavanaugh*, 306 F.3d 726, 729 (9th Cir. 2002). Of the three remaining movants, David and Gretchen Mikelonis, Kevin O'Donnell, John Hill, N. Richard Kimmel, James Coffin and Robert Dickson (referred to collectively as "YieldPlus Investor Group" or "Movant") are presumed to be the most adequate movants to lead this litigation under the Private Securities Litigation Reform Act of 1995 ("PSLRA") because they suffered the largest losses under each of the methods employed by movants for calculating damages both as a group and as individuals.

Of the three remaining movants, the YieldPlus Investor Group filed a timely motion seeking to be appointed Lead Plaintiff in these actions and for approval of Movant's selection of the law firm Hagens Berman Sobol Shapiro LLP ("Hagens Berman") as Lead Counsel.[1] The YieldPlus Investor Group's Motion should be granted because they have the largest losses of any movant seeking to be appointed lead plaintiff. Furthermore, the YieldPlus Investor Group is not a lawyer-driven group and has demonstrated its decision making abilities and authority. The members of the YieldPlus Investor Group have years of experience managing lawyers and are already actively steering this litigation. Guided by this Court's decision in *In re Network Assocs. Sec. Litig.*, 76 F. Supp. 2d 1017, 1025 (N.D. Cal. 1999), the YieldPlus Investor Group negotiated a retention agreement with counsel, met several times and have aggressively and efficiently handled the issues before the Court. The YieldPlus Investor Group has the depth of experience and size of losses typically seen in institutional investors and their qualifications are unparalleled by any other

---

[1] "Motion" refers to the Notice of Motion and Motion to Consolidate, to Appoint the YieldPlus Investor Group as Lead Plaintiff and to Approve Proposed Lead Plaintiff's Selection of Counsel; Memorandum of Points and Authorities in Support Thereof, filed May 16, 2008 [Dkt. No. 26].

YIELDPLUS INV. GRP'S. REPLY ISO. MOT. APPOINT LEAD PL.IN OPP'N. COMPETING MOTS. – 08-cv-1510 WHA — - 1 -

010036-12 245549 V1

movant. Accordingly, the members of the YieldPlus Investor Group respectfully request that this Court appoint them as Lead Plaintiff and approve their selection of Lead Counsel.

## II.    ARGUMENT

### A. The Presumption that the YieldPlus Investor Group is the Most Adequate Lead Plaintiff Is Unrebutted

The PSLRA clearly contemplates that the investor who moves to be appointed lead plaintiff and who has the largest losses is presumed to be the most adequate lead plaintiff. *In re Cavanaugh,* 306 F.3d at 729. To rebut this presumption there must be "**proof**" the presumptive lead plaintiff "will not fairly and adequately protect the interests of the class or is subject to unique defenses that renders such plaintiff incapable of adequately representing the class." See 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

Here, the YieldPlus Investor Group's losses are the largest losses of any movant when considered as a group. Furthermore, several of the individual members of the YieldPlus Investor Groups have losses that are larger than any other movant. Indeed, using the transactional data supplied by each movant in support of their respective motions for lead plaintiff, the YieldPlus Investor Group calculated the losses of each movant using the Schwartz Group's 90-day moving average and the Peate Group's 90-day moving average. Under every scenario submitted by the movants, the YieldPlus Investor Group remains the movant with the largest losses. See Opp. at 5-9.[2] Accordingly, the YieldPlus Investor Group, either as a group or as individual members, suffered the largest losses and is entitled to the PSLRA's presumption that it is the most adequate plaintiff to lead this litigation.

In support of their respective motions the Yield Plus Investor Group, Schwartz Group and Peate Group submitted their own calculations of their approximate losses. Rather than using the submitted transactional data to compare the competing losses, the Schwartz Group simply throws up its hands and contends that it cannot assess the YieldPlus Investor Groups' losses. The Peate

---

[2] "Opp." or "Opposition" refers to the YieldPlus Group's Memorandum of Points and Authorities in Opposition to Competing Motions for Appointment of Lead Plaintiff, filed June 11, 2008 [Dkt. No. 52].

Group concedes that the YieldPlus Investor Group's asserts larger losses. Peate Opp. at 2.[3] Accordingly, the calculations show that the YieldPlus Investor Group suffered the largest losses and therefore, it is entitled to the presumption that it is the most adequate lead plaintiff. No one has offered **proof** to rebut this presumption.

**B.  The YieldPlus Investor Group Is the Only Movant Who Has a Demonstrated Interest and Ability to Control This Litigation**

The PSLRA was enacted to "transfer 'primary control of private securities ligation from lawyers to investors,' Senate Rep. No. 104-98, at 685 . . . ." *Chill v. Green Tree Fin. Corp.*, 181 F.R.D. 398, 408 (D. Minn. 1998). By its own terms the PSLRA contemplates that a person or group of persons may serve as lead plaintiff. 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I). Where a group of investors seeks to be appointed as lead plaintiff, courts consistently employ a case-by-case review to determine whether the proposed group complies with the PSLRA's mandate that the investors and not their lawyers control the litigation. *In re Advanced Tissue Sciences Sec. Litig.* 184 F.R.D. 346, 352 (S.D.Cal. 1998). In *In re Network Associates,* this Court applied the provisions of the PSLRA to several proposed investor groups and agreed that a group may be appointed where that group can provide effective control of the litigation. *In re Nework Associates,* 76 F. Supp. 2d at 1026-27.

Courts have answered the question of what size group is permitted to serve as lead plaintiff differently, but the common thread for all of those decisions is how to vest control of the litigation in the investors themselves. The Schwartz Group attempts to characterize the YieldPlus Investor Group as an improper group contending that because it consists of seven members the YieldPlus Investor Group is unwieldy and unable to control the litigation. The Schwartz Group relies on two cases to suggest that groups of unrelated investors cannot serve as lead plaintiff. *See* Schwartz Opp. at 3 (citing *In re Advanced Tissue Sciences Sec. Litig.* 184 F.R.D. at 352 and *Chill*, 181 F.R.D. at 408.))[4] Neither of those cases support the Schwartz Group's contention. In *In re Advanced*

---

[3]  "Peate Opp." refers to The Peate Group's Memorandum of Law in Further Support of its Motion for Appointment as Lead Plaintiff and for Approval of Lead Plaintiff's Selection of lead Counsel, and in Opposition to All Other Motions, filed June 11, 2008 [Dkt. No. 51].

[4]  "Schwartz Opp." refers to the Memorandum of Points and Authorities for the Schwartz Group of Investors Opposing Motions of Other Groups to Be Appointed As Lead Plaintiff, filed June 5, 2008 [Dkt. No. 46].

*Tissue*, the Court was asked to appoint a group of 250 investors as lead plaintiff. The Court refused and instead selected six members from the larger group and appointed them as a lead plaintiff group. *Advanced Tissue,* 184 F.R.D. at 352. The Court, in *Advanced Tissue*, reasoned that a group of 250 investors would be unwieldy and needlessly complex. *Id.* Unlike the group of 250 investors seeking to serve as lead plaintiff in *Advanced Tissue,* the YieldPlus Investor Group consists of seven members, two of whom are husband and wife. Moreover, the YieldPlus Investor Group has a demonstrated decision making structure and process. There can be no doubt that the YieldPlus Investor Group satisfies the standards of the PSLRA.

The Schwartz Group's reliance upon *Chill* is also misplaced. In *Chill*, the Court was asked to appoint a group of 300 investors as lead plaintiff. *Chill,*181 F.R.D. at 408. The *Chill* court refused reasoning that to appoint such a large group would thwart the intent of the PSLRA to vest control of the litigation in the investors and not their lawyers. *Id*. Instead, the Court appointed a group of seven, carefully noting that the case-by-case inquiry into the suitability of a group should include analysis of whether the group is "too unwieldy to allow for the just, speedy and inexpensive determination of this action." *Chill,* 181 F.R.D. at 408. The court made clear that the core inquiry is not how large the group may be, but whether the proposed group has decision making ability and authority to control the litigation. *Id.*

The Peate Group's reliance upon *In re Cendant Corp. Sec. Litig.*, 264 F.3d 201. 267 (3d Cir. 2001), *Berger v. Compaq Comp. Corp.*, 257 F.3d 475, 478 n.2 (5th Cir. 2001), and *In re Baan Co. Sec. Litig.*, 186 F.R.D. 214, 216017 (D.D.C. 1999) for their argument that a group comprised of three is preferred is similarly flawed. In each of those cases, the courts made clear that the relevant inquiry was whether appointing a group would wrestle control of the litigation away from the investors and place it back into the hands of the lawyers in violation of the PSLRA. Each court made painstakingly clear that this decision requires a case-by-case analysis and that no hard and fast rule could be established. The inquiry remains what group composition will facilitate the PSLRA's goal of appointing a group of persons with demonstrated decision making ability and control.

1   Here, the YieldPlus Investor Group is the only proposed group that offered any evidence that they have a structure and decision making process in place or that they have the ability to control the litigation. The members of the YieldPlus Investor Group have decades of experience in managing litigation and are actively and efficiently controlling the process of this litigation now. They meet regularly, have engaged in numerous discussions about matters before the Court and are prepared to address the Court's questionnaire issued on June 11, 2008. As a group, the YieldPlus Investor Group brings all of the skills and knowledge that Congress contemplated an institutional investor would bring to securities litigation when Congress passed the PSLRA.

As set forth in the YieldPlus Investor Group's Opposition, the YieldPlus Investor Group is comprised of a former general counsel who has objected to class action settlements in the past, a former chairman of a bank, a former trustee of four mutual funds and a member of the funds' audit committee with accounting expertise, two lawyers from private practice, and an engineer responsible for missile systems and budgets relating to them. *See* Kathrein Decl., Exs. 1- 6 at ¶ 3.[5] Each member of the YieldPlus Investor Group has the experience needed to actively manage and control this litigation and that is exactly what they have done in this case. The YieldPlus Investor Group is the only movant to clearly demonstrate its substantive decision making ability and authority. *See In re Network Assocs. Sec. Litig.*, 76 F. Supp. 2d at 1025.

**C.     The YieldPlus Investor Group Satisfies Rule 23**

So long as the movant with the largest financial interest satisfies the typicality and adequacy requirements of Federal Rule of Civil Procedure 23, the movant is entitled to most adequate plaintiff status. *See In re Cavanaugh*, 306 F.3d at 726. The YieldPlus Investor Group is clearly typical of the class because each member purchased or acquired shares of Schwab YieldPlus Funds during the Class Period and was damaged as a result. *Tanne v. Autobytel, Inc.*, 226 F.R.D. 659, 666 (C.D. Cal. 2005). No movant contests that the YieldPlus Investor Group is typical of the members of the Class.

---

[5] "Kathrein Decl." refers to the Declaration of Reed R. Kathrein in Support of the YieldPlus Investor Group's Opposition to Competing Motions for Appointment of Lead Plaintiff, filed June 11, 2008 [Dkt. No. 53].

Adequacy is measured by whether the movant has hired adequate counsel and the movant has no interests antagonistic to the members of the Class. *Autobytel,* 226 F.R.D. at 667 (citations omitted).  Here, the YieldPlus Investor Group hired highly experienced counsel.  Furthermore, no member of the YieldPlus Investor Group has interests antagonistic to the members of the Class.  Therefore, the YieldPlus Investor Group satisfies all of the PSLRA's prerequisites for appointment as Lead Plaintiff in this action pursuant to 15 U.S.C. § 77z-1-(a)(3)(B)(iii)(I) and is presumed to be the "most adequate plaintiff".

**D.  The Peate Group Failed To Offer Sufficient Evidence To Establish That It Is A Proper Group Under The PSLRA**

In their motion seeking to be lead plaintiff and their opposition to the competing motions, the Peate Group baldly asserts that it is a proper group under the PSLRA because it is limited to three members.  The Peate Group cannot survive this Court's analysis in *In re Network Assocs.*, 76 F. Supp. 2d at 1025.  The PSLRA was enacted to effectuate the transfer of control of securities class actions from lawyers to investors. *In re Jones Soda Sec. Litig.*, No. C07-1366-RSL, 2008 WL 418002, *3 (W.D. Wash. Feb. 12, 2008).  Lawyer-driven groups that propose multiple law firms as their lead counsel are suspect and should be reviewed carefully. *See In re XM Satellite Radio Holdings Sec. Litig.,* 237 F.R.D. 13, 20 n.4 (D.D.C 2006); *Boyd v. NovaStar Fin. Inc.,* No. 07-0139 cv-W-ODS, 2007 WL 2026130, *5 (W.D. Mo. July 9, 2007)("the presence of multiple law firms can have a deleterious effects.  Most significantly, it can result in redundancies and inefficiencies that cause the total fee to increase.  The potential for incurring extra fees is not in the class's best interest, unless there is some reason that the two firms are needed.").  In *In re Jones Soda,* the Court was asked to appoint multiple law firms as co-lead counsel.  The Court rejected the request reasoning that

> [t]he potential for duplicative services, leadership discord, and increased attorney's fees militate against the appointment of multiple law firms, however, especially in cases where one law firm has the proven ability to adequately manage and litigate securities class actions. *In re Party City Sec. Litig.,* 189 F.R.D. 91, 115 (D.N.J. 1999).  In addition, where more than one lead counsel is appointed, there is the potential that their coordinated handling of the litigation (assuming the best) or their fractious infighting (assuming the worst) could *strip*

> *the lead plaintiff of control over the litigation, an occurrence the PSLRA intended to foreclose*. (citation omitted).

*In re Jones Soda,* 2008 WL 418002, at *3 (emphasis added).

Here, it appears that the Peate Group is exactly the type of group the PSLRA attempts to eliminate. The Peate Group's motion and opposition are utterly devoid of any attempt to establish that they have a decision making process or that they, rather than their lawyers, are in control of the litigation. *In re Network Associates,* 76 F. Supp. 2d at 1025 (a group should be appointed lead plaintiff only if the lead plaintiff is vested with substantive decision making ability and authority). There is no suggestion, let alone evidence, that the Peate Group has a decision making process or any control over their lawyers. Faced with this absence of information, the Court cannot appoint a group of unrelated individuals as lead plaintiff.

Furthermore, the Peate Group is a transparent attempt by two different law firms to form a group utterly lacking cohesiveness. While groups may be appropriate under certain circumstances, they must be vested with control to ensure that they do not run afoul of the PSLRA's policy against lawyer-driven litigation. Here, the Peate Group seeks to appoint multiple law firms where only one would be necessary and fails to offer any information regarding why multiple law firms are necessary to prosecute this case. The Peate Group has offered no information to establish that they can address this Court's guidelines for avoiding this dilemma. *See id.* Accordingly, the Peate Group appears to be the very type of lawyer-driven group the PSLRA attempts to prohibit and their motion should be denied.

### III.   CONCLUSION

For the foregoing reasons, the YieldPlus Investor Group respectfully requests that the Court issue an Order (1) appointing the YieldPlus Investor Group and each of its members as Lead Plaintiffs for the class; (2) approving Hagens Berman Sobol Shapiro LLP as Lead Counsel; and (3) granting such other relief as the Court may deem to be just and proper.

Dated: June 18, 2008                                   HAGENS BERMAN SOBOL SHAPIRO LLP

By: _____/s/ Reed R. Kathrein_____
        REED R. KATHREIN

YIELDPLUS INV. GRP'S. REPLY ISO. MOT. APPOINT LEAD PL.IN OPP'N. COMPETING MOTS. – 08-cv-1510 WHA          - 7 -

010036-12 245549 V1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Peter E. Borkon
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
reed@hbsslaw.com
peterb@hbsslaw.com

Steve Berman
Sean R. Matt
Erin K. Flory
HAGENS BERMAN SOBOL SHAPIRO, LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com
sean@hbsslaw.com
erin@hbsslaw.com

Attorneys for Proposed Lead Plaintiff the YieldPlus Investor Group

YIELDPLUS INV. GRP'S. REPLY ISO. MOT. APPOINT LEAD
PL.IN OPP'N. COMPETING MOTS. – 08-cv-1510 WHA
- 8 -

010036-12 245549 V1

**CERTIFICATE OF SERVICE**

I hereby certify that on June 18, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses registered, as denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

        /s/ Reed R. Kathrein
        REED R. KATHREIN

# Mailing Information for a Case 3:08-cv-01510-WHA

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Vahn Alexander**
  valexander@faruqilaw.com

- **Peter E. Borkon**
  peterb@hbsslaw.com

- **Timothy J. Burke**
  service@ssbla.com

- **Reed R. Kathrein**
  reed@hbsslaw.com,steve@hbsslaw.com,nancyq@hbsslaw.com,sf_filings@hbsslaw.com

- **Azra Z. Mehdi**
  azram@csgrr.com,e_file_sf@csgrr.com,e_file_sd@csgrr.com

- **Stuart Christopher Plunkett**
  ggerrish@mofo.com,splunkett@mofo.com

- **Alan R Plutzik**
  aplutzik@bramsonplutzik.com

- **Darryl Paul Rains**
  drains@mofo.com,dgillis@mofo.com

## Manual Notice List

The following is the list of attorneys who are **not**
on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)