Reed R. Kathrein (139304)
Peter E. Borkon (212596)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
reed@hbsslaw.com
peterb@hbsslaw.com

Attorneys for Plaintiff

[Additional counsel listed on signature page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE SCHWAB CORP. SECURITIES LITIGATION | No. 08-cv-01510 WHA |
| THIS DOCUMENT RELATES TO:<br><br>*Levin v. The Charles Schwab Corp.*, C 08-02487 WHA | PLAINTIFFS LEVINE AND KYZER'S RESPONSE TO ORDER TO SHOW CAUSE WHY *LEVINE* ACTION SHOULD NOT BE CONSOLIDATED WITH SECURITIES ACTIONS |

1

## TABLE OF CONTENTS

2
**Page**

3 I.     INTRODUCTION ..................................................................................................1

4 II.    STATEMENT OF THE *LEVIN* CASE .................................................................1

5 III.   ARGUMENT ........................................................................................................3

6       A.   Absent Offsetting Prejudices, Courts May Consolidate Actions Involving
7            Common Questions ....................................................................................3

8       B.   The *Levin* Action for Violations of the ICA and California Law Should
             Not Be Consolidated with the Dissimilar Securities Actions........................4

9            1.   *Levin* and the Securities Actions lack common issues of fact and law ............4

10           2.   Consolidating *Levin* with the Securities Actions will create prejudice,
11                delay and confusion without generating judicial efficiencies .........................9

12                a.   Consolidation with the *Securities Actions* will significantly
                      delay the prosecution of the *Levin* Action............................................9

13                b.   Consolidation at trial will confuse the jury and prejudice Levin ........11

14                c.   Consolidating *Levin* would produce no offsetting efficiencies ...........11

15      C.   The Court Can Coordinate or Consolidate for Limited Purposes If a
16           Legitimate Reasons Emerges ......................................................................12

17 IV.   CONCLUSION ..................................................................................................12

18

19

20

21

22

23

24

25

26

27

28

1

# TABLE OF AUTHORITIES

2

**PAGE**

3

*Consorti v. Armstrong World Indus., Inc.*,
　　72 F.3d 1003 (2d Cir. 1995) ................................................................................. 3

4

*In re Dell Inc. Sec., Derivative and ERISA Litig.*,
　　Nos. 06-CA-726, 839 (W.D. Tex. Feb. 28, 2007) ............................................... 10

5

*Doug Brady, Inc. v. N.J. Bldg. Laborers Statewide Funds*,
　　2008 U.S. Dist. LEXIS 28324 (D.N.J. Apr. 7, 2008) .................................... 4, 11

6

7

*EEOC v. HBE Corp.*,
　　135 F.3d 543 (8th Cir. 1998) ................................................................................ 3

8

*Eminence Capital, LLC v. Aspeon, Inc.*,
　　316 F.3d 1048 (9th Cir. 2003) .............................................................................. 9

9

10

*In re Exodus Communs., Inc. Sec. Litig.*,
　　2005 U.S. Dist. LEXIS 20222 (N.D. Cal. Aug. 5, 2005) ..................................... 5

11

*Farahmand v. Rumsfeld*,
　　2002 U.S. Dist. LEXIS 22473 (E.D. Pa. Nov. 20, 2002) ..................................... 4

12

13

*In re Global Crossing, Ltd. Sec. and ERISA Litig.*,
　　No. 02-MD-1472 (S.D.N.Y. Dec. 13, 2002) ....................................................... 10

14

*Indiana State Dist. Council of Laborers and HOD Carriers Pension Fund v. Gecht*,
　　2007 U.S. Dist. LEXIS 26529 (N.D. Cal. Mar. 22, 2007) ................................... 3

15

16

*Investors Research Co. v. United States Dist. Court for Cent. Dist.*,
　　877 F.2d 777 (9th Cir. 1989) ................................................................................ 4

17

*Johnson v. Celotex Corp.*,
　　899 F.2d 1281 (2d Cir. 1990) ............................................................................... 3

18

19

*Kurtzman v. Compaq Computer Corp.*,
　　2000 U.S. Dist. LEXIS 22476 (S.D. Tex. Dec. 12, 2000)..................................... 5

20

*In re Lucent*,
　　No. 01-CV-3491 (D.N.J. Feb. 11, 2002) ............................................................ 10

21

22

*Mohanty v. Bigband Networks, Inc.*,
　　2008 U.S. Dist. LEXIS 32764 (N.D. Cal. Feb. 13, 2008) .................................... 3

23

*In re Olsten Corp. Sec. Litig.*,
　　3 F. Supp. 2d 286 (E.D.N.Y. 1998) ...................................................................... 4

24

25

*Oxford Asset Mgmt., Ltd. v. Jaharis*,
　　297 F.3d 1182 (11th Cir. 2002) ............................................................................ 4

26

*Pierce v. County of Orange*,
　　__ F.3d __, 2008 U.S. App. LEXIS 10454 (9th Cir. Cal. May 15, 2008)............. 4

27

28

*In re Royal Ahold N.V. Sec. & ERISA Litig.*,
    220 F.R.D. 246 (D. Md. 2004) ...................................................................................10

*Sapiro v. Sunstone Hotel Investors, L.L.C.*,
    2006 U.S. Dist. LEXIS 21234 (D. Ariz. Apr. 4, 2006) ..............................................4

*Single Chip Sys. Corp. v. Intermec IP Corp.*,
    495 F. Supp. 2d 1052 (S.D. Cal. 2007) .......................................................................3

*Southwest Marine, Inc. v. Triple A Mach. Shop, Inc.*,
    720 F. Supp. 805 (N.D. Cal. 1989)..............................................................................3

*St. Bernard General Hospital, Inc. v. Hospital Serv. Ass'n*,
    712 F.2d 978 (5th Cir. 1983) .......................................................................................3

*In re Stac Electrics Sec. Litig.*,
    89 F.3d 1399 (9th Cir. 1996) .....................................................................................10

*Takeda v. Turbodyne Techs., Inc.*,
    67 F. Supp. 2d 1129 (C.D. Cal. 1999) .........................................................................3

*Vess v. CIBA-GEIGY Corp.*,
    317 F.3d 1097 (9th Cir. 2003) ...................................................................................10

*In re WorldCom, Inc. Sec. Litig.*,
    234 F. Supp. 2d 301 (S.D.N.Y. 2002) .......................................................................10

*Yousefi v. Lockheed Martin Corp.*,
    70 F. Supp. 2d 1061 (C.D. Cal. 1999) .........................................................................3

**STATUTES**

15 U.S.C. § 77z-1(b)(1)........................................................................................................9

15 U.S.C. § 78u-4(b)(3)(B) .................................................................................................9

15 U.S.C. § 80a-8(b)(3))......................................................................................................5

15 U.S.C. § 80a-13(a)..........................................................................................................5

Fed. R. Civ. P. 4(d)(3) .......................................................................................................10

Fed. R. Civ. P. 42(a) ........................................................................................................3, 4

Fed. R. Civ. P. 42(a)(3) .....................................................................................................12

**MISCELLANEOUS**

9A C. Wright & A. Miller, Federal Practice and Procedure, § 2383 (Civil 3d. 2008)....................4

1   By order entered June 16, 2008 (Dkt. No. 55), this Court ordered Plaintiffs Levin and Kyzer

2   (collectively "Levin") to show cause why their action for violations of the Investment Company

3   Act of 1940 and California statutory and common laws should not be consolidated with the five

4   federal securities actions consolidated into *In re Schwab Corp. Securities Litigation*,

5   C 08-01510 WHA.  This is Levin's response.

## I.     INTRODUCTION

7   Consolidation requires the presence of common questions of law or fact central to resolving

8   the separate actions.  At the core of the securities class actions that this Court already consolidated

9   is whether the defendants issued statements to purchasers of Schwab Corporation's YieldPlus Fund

10  that were materially false or misleading when made.  But this fundamental question is immaterial

11  to Levin's action, which focuses instead on whether the YieldPlus prospectus identified a "funda-

12  mental investment policy," as defined by the Investment Company Act of 1940 (the "ICA" or

13  "1940 Act"), that defendants later violated without first obtaining a vote of approval from

14  YieldPlus shareholders, as the ICA required.  Because neither question will aid in resolving the

15  other action, the Levin and Securities actions should not be consolidated.  *See infra* at 4-8.

16  Furthermore, even where multiple actions do share central issues, the Court must balance

17  the savings of time and effort from consolidating against any ensuing inconvenience, delay, con-

18  fusion, or prejudice.  But without central issues in common, litigating these actions together will

19  generate detriments without offsetting gains.  Absent common issues, consolidation will produce

20  no judicial economies while surely causing jury confusion and prejudice.  Moreover, the securities

21  actions, unlike Levin's action, are subject to the Private Securities Litigation Reform Act's unique,

22  delay-producing procedures.  These delays will needlessly impede Levin's action as well if

23  consolidated with the securities actions.  *See infra* at 11-12.  For all these reasons, Levin's action

24  should remain separate from the securities actions.

## II.     STATEMENT OF THE *LEVIN* CASE

26  Levin's action differs significantly from the five securities actions consolidated into *In re*

27  *Schwab Corp. Securities Litigation*.  *Levin* is brought by and on behalf of persons who owned

28  shares of Schwab YieldPlus Funds Investor Shares and/or Schwab YieldPlus Funds Select Shares

1   (together, "the Funds") at any time from June 25, 2007, to the present.  It is brought against (i) the

2   Funds for deviating from one of the Funds' fundamental policies in violation of the ICA and the

3   express terms of the Funds' prospectuses, and (ii) individuals and entities that caused or allowed

4   the Funds to deviate from its fundamental policy.  *Levin v. The Charles Schwab Corp.*, Complaint

5   for Violation of The Investment Company Act of 1940 and State Laws, filed May 15, 2008 (No.

6   C 08-02487 WHA, Dkt. No. 1) ("*Levin* Complaint"), ¶ 1.

7       The Funds, which operate as a single fund and pool of assets, annually issued a prospectus

8   declaring among other things that the Funds would not concentrate their holdings in any particular

9   industry unless a majority of the Funds' shareholders first voted to allow such concentration.  To

10  be clear, the Funds' prospectuses cited the Securities Exchange Commission definition of "concen-

11  tration":  "investing 25% or more of an investment company's net assets in an industry or group of

12  industries …."  *Id.* ¶ 2.

13      The Funds adhered to this provision for many years.  But beginning in 2006, in an attempt

14  to prop up the Funds' sagging rates of return and avoid shareholder flight, the Funds exceeded the

15  no-concentration fundamental policy's 25% ceiling on investing in a single industry or group of

16  industries by investing 28.9% of their holdings in mortgage-backed securities.  In 2007, those

17  holdings ballooned to 44.3%.  Significantly, although required to do so, at no time did the Funds

18  solicit or receive shareholder approval to exceed the 25% ceiling.  *Id.* ¶ 3.

19      This strategy backfired.  Defendants' violation of the Funds' no-concentration provision

20  exposed the Funds and their shareholders to billions of dollars in losses beginning late June 2007

21  stemming from a precipitous and sustained drop in the value of mortgage-backed securities.

22  Shareholders have thus watched their supposedly safe, secure and good-as-cash YieldPlus shares

23  decline from a long-standing net asset value ("NAV") of approximately $9.70 per share to their

24  NAV of $6.51 on the date the *Levin* Complaint was filed – a drop of almost one third and more

25  than 28% just for this year.  *Id.* ¶ 4.

26

27

28

## III.    ARGUMENT

### A.    Absent Offsetting Prejudices, Courts May Consolidate Actions Involving Common Questions

In deciding whether to consolidate actions, the threshold issue is whether the actions involve common facts or legal issues.  *Yousefi v. Lockheed Martin Corp.*, 70 F. Supp. 2d 1061, 1065 (C.D. Cal. 1999).  Federal Rule of Civil Procedure 42(a) provides in pertinent part:

> If actions before the court involve a common question of law or fact, the court may:
>
> (1)    join for hearing or trial any or all matters at issue in the actions;
>
> (2)    consolidate the actions; or
>
> (3)    issue any other orders to avoid unnecessary cost or delay.

Courts consolidate related actions to avoid the unnecessary costs or delays that may ensue from proceeding separately with claims or issues sharing common aspects of law or fact.  *EEOC v. HBE Corp.*, 135 F.3d 543, 550 (8th Cir. 1998); *Mohanty v. Bigband Networks, Inc.*, 2008 U.S. Dist. LEXIS 32764, at *6 (N.D. Cal. Feb. 13, 2008).

In deciding whether to consolidate, the Court must balance the savings of time and effort consolidation will produce against any inconvenience, delay, confusion, or prejudice that may result.  *Takeda v. Turbodyne Techs., Inc.*, 67 F. Supp. 2d 1129, 1133 (C.D. Cal. 1999); *Southwest Marine, Inc. v. Triple A Mach. Shop, Inc.*, 720 F. Supp. 805, 807 (N.D. Cal. 1989).  In addressing whether or not to consolidate, a court should consider:  (i) the risk of delaying trial, *St. Bernard General Hospital, Inc. v. Hospital Serv. Ass'n*, 712 F.2d 978, 990 (5th Cir. 1983); (ii) the risk of prejudice and confusion, *Consorti v. Armstrong World Indus., Inc.*, 72 F.3d 1003, 1008 (2d Cir. 1995); and (iii) the potential burden on the parties, witnesses, and available judicial resources, *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1285 (2d Cir. 1990).  The party seeking consolidation bears the burden of establishing that the judicial economy and convenience benefits of consolidation outweigh any prejudice.  *Indiana State Dist. Council of Laborers and HOD Carriers Pension Fund v. Gecht*, 2007 U.S. Dist. LEXIS 26529, at *6 (N.D. Cal. Mar. 22, 2007); *Single Chip Sys. Corp. v. Intermec IP Corp.*, 495 F. Supp. 2d 1052, 1057 (S.D. Cal. 2007).

1    While applying these standards, the decision whether to consolidate rests in the Court's

2    sound discretion. *Pierce v. County of Orange*, __ F.3d __, 2008 U.S. App. LEXIS 10454, at *24-

3    25 (9th Cir. Cal. May 15, 2008); *Investors Research Co. v. United States Dist. Court for Cent.*

4    *Dist.*, 877 F.2d 777 (9th Cir. 1989). The Court should exercise its discretion here by maintaining

5    *Levin* as separate from *In re Schwab Corp. Securities Litigation*.

**B.    The *Levin* Action for Violations of the ICA and California Law Should Not Be
6       Consolidated with the Dissimilar Securities Actions**

7       **1.    *Levin* and the Securities Actions lack common issues of fact and law**

8    By its own terms, Rule 42(a) requires common questions of law or fact between the actions

9    under consideration for consolidation. Fed. R. Civ. P. 42(a) ("[i]f actions before the court involve

10   a common question of law or fact …"). And not just any common issue will suffice. To merit

11   consolidation, common issues should be central to the claims. *See, e.g.,* 9A C. Wright & A. Miller,

12   FEDERAL PRACTICE AND PROCEDURE, § 2383 (Civil 3d. 2008) (a motion to consolidate "may be

13   denied if the common issue is not central to the resolution of the cases …"); *Doug Brady, Inc. v.*

14   *N.J. Bldg. Laborers Statewide Funds*, 2008 U.S. Dist. LEXIS 28324, at *14-15 (D.N.J. Apr. 7,

15   2008) (quoting *Wright & Miller*); *Farahmand v. Rumsfeld*, 2002 U.S. Dist. LEXIS 22473, at *4-5

16   (E.D. Pa. Nov. 20, 2002) (same). Such commonality is at the heart of Rule 42(a) because

17   consolidation, where appropriate, minimizes the risk of inconsistent adjudications of common

18   factual and legal issues. *See Sapiro v. Sunstone Hotel Investors, L.L.C.*, 2006 U.S. Dist. LEXIS

19   21234, at *4 (D. Ariz. Apr. 4, 2006) (quoting *Malcolm v. National Gypsum Co.*, 995 F.2d 346, 350

20   (2d Cir. 1993)); *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 292 (E.D.N.Y. 1998) (quoting

21   *Johnson v. Celotex Corp.*, 899 F.2d at 1285).

22   Commonality is lacking here because the securities cases are fundamentally different from

23   the *Levin* action. The Securities Actions assert federal securities claims for purchases based on

24   statements that were materially false or misleading when made and when they prompted the

25   plaintiffs' purchases. Key to these claims, the Securities Action plaintiffs must plead and prove

26   statements that were (i) false and (ii) material (iii) when made. See, for example, *Labins*

27   Complaint, ¶ 37. *See also Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1189 (11th Cir.

28

1    2002); *In re Exodus Communs., Inc. Secs. Litig.*, 2005 U.S. Dist. LEXIS 20222, at *136 (N.D. Cal.

2    Aug. 5, 2005); *Kurtzman v. Compaq Computer Corp.*, 2000 U.S. Dist. LEXIS 22476, at *171 (S.D.

3    Tex. Dec. 12, 2000).  These plaintiffs will also likely have to oppose the defense that many

4    defendants will surely assert that they cannot be liable for any misrepresentations because they

5    satisfied their statutory due-diligence obligations and did not know of the falsity.  The central

6    issues to the Securities Actions hence will be the alleged misstatements' falsity and materiality,

7    plus the sufficiency of any particular defendant's inquiry.

8        Levin, by contrast, must prove nothing of the sort.  His claims require no proof of any mis-

9    representation, material or otherwise.  Nor need he rebut any of the individual defendants'

10   evidence, if any, that he or she performed all required inquiry into any statement's veracity or

11   could not have known of any omitted material fact.  The *Levin* action is brought by holders of

12   YieldPlus shares for Defendants' violations of their legal and contractual duties stemming

13   principally from a provision of the ICA that does not concern misstatements.  At the heart of the

14   *Levin* action is defendants' violation of § 13(a) of the ICA, 15 U.S.C. § 80a-13(a), which requires

15   shareholder authorization before a fund may deviate from any stated fundamental policy.  The ICA

16   polices investment funds' relationships with investors.  Section 8(b)(3) of the ICA (15 U.S.C.

17   § 80a-8(b)(3)) required YieldPlus's registration statement to include "a recital of all policies of the

18   registrant … in respect of matters which the registrant deems matters of Fundamental Policy."

19   Section 13(a) of the ICA then prohibited YieldPlus from deviating from any identified fundamental

20   policy without *first* obtaining approval from a majority of YieldPlus's outstanding shares:

21           No registered investment company shall, unless authorized by the
             vote of a majority of its outstanding securities –

22
             …
23
             (3) deviate from its policy in respect of concentration of investments
24           in any particular industry or group of industries as recited in its
             registration statement, deviate from any investment policy which is
25           changeable only if authorized by shareholder vote, or deviate from
             any policy recited in its registration statement pursuant to section
26           8(b)(3).

27       The *Levin* action alleges that YieldPlus violated § 13(a)(3) because it deviated from a

28   fundamental policy, as defined by § 8(b)(3), without first obtaining shareholder approval.  *Levin*

1   Complaint ¶ 50.  It also alleges various California-state-law causes of action against YieldPlus and

2   the various defendants that controlled it for unfair business acts and practices (California Business

3   & Professions Code § 17200 *et seq.*), breach of contract and tortious interference with that contract,

4   and breach of fiduciary duties, all stemming from the § 13(a)(3) violation.  *Id.* at ¶¶ 53-114.

5          Moreover, even the fundamental policy at issue in *Levin* differs from the alleged

6   misstatements in the *Securities Actions*.  The *Levin* complaint concerns this one statement of

7   fundamental policy from the YieldPlus prospectus[1]:

8                         INVESTMENT LIMITATIONS

9                  The following investment limitations are fundamental investment
                   polices and restrictions and may be changed only by vote of a
10                 majority of a fund's outstanding voting shares.

11                 …

12                 THE SCHWAB YIELDPLUS FUND[(R)] … MAY NOT:

13                 …

14                 2)   Concentrate investments in a particular industry or group of
                   industries, as concentration is defined under the 1940 Act, or the
15                 rules or regulations thereunder, as such statute, rules and regulations
                   may be amended from time to time;… [*Id.* ¶ 25.]

16
    Following this paragraph and within the same section establishing the Funds' fundamental
17
    investment policies, the prospectus also defined the term, "concentration":
18
                   THE FOLLOWING DESCRIPTIONS OF THE 1940 ACT MAY
19                 ASSIST INVESTORS IN UNDERSTANDING THE ABOVE
                   POLICIES AND RESTRICTIONS.
20
                   …
21
                   Concentration.  The SEC has presently defined concentration as
22                 investing 25% or more of an investment company's net assets in an
                   industry or group of industries, with certain exceptions.  [*Id.* ¶ 26.]
23
24         Levin also alleges that defendants deviated from this fundamental policy, without first

25  obtaining shareholder authorization, when it invested more than 25% of YieldPlus's net assets in

26

27  ───────────────
          [1] The statement of fundamental policy was actually set forth in the YieldPlus Statement of
28  Additional Information, which was incorporated by reference into the prospectus.  *Id.* ¶¶ 24-25.

1    mortgage-backed securities (which YieldPlus had expressly determined to be "a separate industry

2    for purposes of a fund's concentration policy").  *Id*. ¶¶ 28, 50.

3            The five complaints comprising the *Securities Actions* do not allege that this fundamental

4    policy or defendants' deviation therefrom without prior shareholder approval will be at issue.

5    Their focus, rather, will be on defendants' mischaracterizations of YieldPlus as a safe, low-risk

6    investment while at the same time defendants were juicing up YieldPlus's returns by investing

7    heavily in the mortgage industry's most dubious component, the subprime market.  The *Labins*

8    Complaint, for example, alleges liability under the securities laws for the following misrepresenta-

9    tions disseminated by notices, circulars, advertisements, letters or other written or broadcast

10   communications:

11           • The Funds provided "higher yields on your cash with only marginally higher

12              risk, [and therefore] could be a smart alternative."

13           • The Funds were "ultra short-term bond fund, designed to offer high current

14              income with minimal changes in share price."

15           • The Funds "invest[] primarily in investment-grade bonds."

16           • The Funds offer "the potential for higher yields than a money market fund."

17           • The Funds seek "to keep the average duration of its portfolio at one year or

18              less."

19           • The Funds objective was "to seek high current income with minimal changes in

20              share price."

21           • The Funds "invests in a large, well-diversified portfolio of taxable bonds ...."

22           • "To minimize changes in share price or NAV, the fund seeks to maintain an

23              average portfolio duration of one-year or less."

24           • "The [Funds were being] actively managed by a seasoned team of taxable bond

25              portfolio managers who are supported by a team of credit and market analysts.

26              The team uses a disciplined approach …."

27   *Labins* Complaint ¶ 23.  *See also Flanzraich v. The Charles Schwab Corp.*, C 08-1994 WHA (filed

28   Apr. 16, 2008) (Dkt. No. 1) ¶ 24.

1    Other factual issues unique to *Levin* include any inquiry into bases of the non-Fund

2    defendants' decisions to require or authorize YieldPlus to deviate from its fundamental policy and

3    do so without first obtaining majority approval via a shareholder vote.  And unlike the *Securities*

4    *Actions*, at no point will the *Levin* Action be concerned with whether defendants' statements about

5    risk and investment quality were materially false or misleading when they were made.

6    It is true there may be peripheral issues common to all claims, such as whether the

7    individual defendants can be liable as control persons.  *Compare Levin* Complaint ¶¶ 60, 67-69, 91,

8    98-100, *with Labins* Complaint ¶¶ 54-55; *Flanzraich* Complaint, ¶¶ 55-58.  But as established

9    *supra* at 4, only common issues that are central to the various actions under consideration should

10    give rise to consolidation.  Peripheral factual issues like whether particular individual defendants

11    exerted a controlling influence over the primary violator are insufficient.

12    Compounding the dissimilarities between the actions, *Levin* and the *Securities Actions* are

13    filed on behalf of different classes.  The *Levin* complaint, because it does not assert securities

14    claims for misrepresentations affecting any purchase or sale, is asserted on behalf of anyone

15    owning YieldPlus shares while it was deviating from its fundamental investment policy without

16    shareholder approval, beginning in 2006.  *Levin* Complaint ¶¶ 42-43.[2]  The *Securities Actions*, by

17    contrast, define their classes solely by purchase dates, without reference to YieldPlus's deviation

18    from its fundamental policy.  Accordingly, determining membership in the *Levin* and the *Securities*

19    *Actions* classes will not turn on common issues.

20    *Levin* thus falls outside the core Rule 42(a) consolidation requirement:  it does not share

21    central questions of law and fact with the *Securities Actions*.  It instead turns on fundamentally

22    different issues and creates no risk that common issues may result in inconsistent adjudications.

23    For this reason alone, consolidation is inappropriate.

24

25

26    ───────────────
        [2] The complaint does define two classes, distinguished by whether class members purchased

27    before or after defendants first deviated from the fundamental policy, the effect of which will be
        determined later.  Neither class definition links to any alleged misrepresentation in the prospectus

28    or elsewhere.

2.      **Consolidating *Levin* with the Securities Actions will create prejudice, delay and confusion without generating judicial efficiencies**

But there are more reasons to deny consolidation.  The absence of common questions spawns additional detriments to *Levin* from consolidation:  delay, prejudice and confusion, all without any offsetting litigation efficiencies.

a.      **Consolidation with the *Securities Actions* will significantly delay the prosecution of the *Levin* Action**

Foremost among the detriments to *Levin* of consolidation with the dissimilar *Securities Action* is the ensuing delay to prosecuting his claims.  Absent consolidation, *Levin* could proceed expeditiously to trial.  While Levin anticipates legal challenges to his claims, those can be resolved in a single motion to dismiss.  The disputed factual issues in *Levin* are narrow compared to the *Securities Actions*.  The core factual dispute will be simply whether YieldPlus's investment of more than 25% of its net assets in mortgage-backed securities violated its no-concentration fundamental policy.  Beyond that, the parties will dispute whether particular defendants controlled YieldPlus to a degree that merits holding them responsible for the Funds' violations.

More important, *Levin* is not subject to the Private Securities Litigation Reform Act ("PSLRA") and its significant procedural hurdles that will restrain the *Securities Actions*.  Due to the effects of the PSLRA, securities class actions typically proceed on a slower litigation schedule than most cases.  Most notably, the PSLRA provides for an automatic stay of discovery in federal securities actions where a defendant files a motion to dismiss the complaint.  15 U.S.C. §§ 77z-1(b)(1), 78u-4(b)(3)(B).  By its own terms, however, the PSLRA mandatory discovery stay applies only to federal securities cases, *id.*, although it also permits a court to stay discovery in a state-court action that otherwise might circumvent the PSLRA discovery stay, *id.* at (b)(4).

And because securities claims are subject to a heightened pleading standard, in some cases this discovery stay can extend for years while a securities plaintiff makes successive attempts to state a claim.  The PSLRA created an exacting pleading standard for securities-fraud claims.  *See Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).  While this pleading standard does not directly apply to the non-fraud-based §§ 11 and 12 securities claims asserted in the *Securities Actions*, defendants in such claims typically try to characterize the claims as

"sounding in fraud" in order to invoke Rule 9's heightened pleading standard.  See, for example, *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1404-05 (9th Cir. 1996); *Vess v. CIBA-GEIGY Corp.*, 317 F.3d 1097, 1104-05 (9th Cir. 2003).  While Levin does not believe such a tactic should prevail in the *Securities Actions*, it has the potential to delay lifting the PSLRA discovery stay.

Other PSLRA delaying procedures include the lead-plaintiff determination procedures, which similarly interrupt the case until the matter is resolved.  While the *Levin* defendants may be obligated to answer or otherwise respond to the *Levin* complaint within 20 days of service (or in this case 60 days of waiving service under Fed. R. Civ. P. 4(d)(3)), the *Securities Actions* defendants need not respond at all until after the Court selects lead plaintiff and counsel, and after the selected lead plaintiff subsequently files a consolidated and amended securities complaint.  All the while, discovery in the *Securities Actions* remains stayed.

By contrast, discovery in *Levin* can and should commence immediately.  Not only is it not subject to the PSLRA, but courts routinely allow discovery relevant to claims not subject to the PSLRA to proceed at this stage of the litigation even where, as here, those claims relate to a parallel securities class action in which discovery has been stayed.[3]

Finally, once the *Securities Actions* emerge from the PSLRA discovery stay, those actions' more complex factual issues will require a longer discovery period (as well as discovery into different issues) than would *Levin*.  Consolidating *Levin* discovery with the *Securities Actions* discovery will hence further delay the *Levin* trial.

---

[3] *See, e.g., In re Dell Inc. Sec., Derivative and ERISA Litig.*, Nos. 06-CA-726, 839 and 758 SS, at 6 (W.D. Tex. Feb. 28, 2007 (attached as Ex. A hereto ("discovery of facts specific to the ERISA or derivative claims will not be stayed in the Consolidated ERISA Action and the Consolidated Derivative Action"); *In re Lucent*, No. 01-CV-3491 (D.N.J. Feb. 11, 2002) (attached as Ex. B) (denying motion to stay ERISA cases pending outcome of securities cases, as resolution of the securities cases would not resolve the ERISA actions); *In re Global Crossing, Ltd. Sec. and ERISA Litig.*, No. 02-MD-1472, at 3, 6 (S.D.N.Y. Dec. 13, 2002) (attached as Ex. C) (denying motion to stay ERISA discovery); *In re Royal Ahold N.V. Sec. & ERISA Litig.*, 220 F.R.D. 246, 251, 252 (D. Md. 2004) ("[i]ndeed, the ERISA plaintiffs included in this very litigation are prepared to proceed with discovery, and there is no indication that Congress intended to extend the [PLSRA] discovery stay to them"; citing *In re WorldCom, Inc. Sec. Litig.*, 234 F. Supp. 2d 301, 305-06 (S.D.N.Y. 2002)).

Accordingly, consolidating *Levin* with the *Securities Actions* for discovery and other

purposes – resulting in imposing the PSLRA discovery stay and an elongated pre-trial schedule on

*Leven* – will needlessly stall *Levin*'s otherwise more expeditious march to trial.

### b.    Consolidation at trial will confuse the jury and prejudice Levin

Other detriments to *Levin* that weigh against consolidation is the prejudice (aside from the

delays just discussed) and confusion that will surely follow from consolidating these very different

kinds of claims, the misrepresentation-based *Securities Actions* claims with the unauthorized-

deviation-from-a-fundamental-policy claim in *Levin*:

> A motion to consolidate may be denied if the common issue … will
> lead to confusion or prejudice in the trial of a case.  *See* 9 C. Wright
> & A. Miller, FEDERAL PRACTICE AND PROCEDURE, § 2382 (Civil 2d.
> 1995).  "Where the evidence in one case is not relevant to the issues
> in the other, consolidation would create a likelihood of prejudice by
> confusing the issues."

*Doug Brady, Inc.*, 2008 U.S. Dist. LEXIS 28324, at *14-15 (quoting *Liberty Lincoln Mercury, Inc.*

*v. Ford Mktg. Corp.*, 149 F.R.D. 65, 81 (D.N.J. 1993)).

Here, if consolidated through trial, there is a significant risk that the jury, swept along by

the need to determine in the *Securities Actions* whether the many alleged misrepresentations in the

YieldPlus prospectus and other marketing documents were in fact materially false or misleading,

would evaluate the statement of fundamental policy in the same light.  Although the *Levin* claims

arise from the same prospectus, they require no proof of material misrepresentations.  Those claims

should not be prejudiced by the risk of jury confusion stemming from consolidation at trial with the

*Securities Actions*' misrepresentations claims.

### c.    Consolidating *Levin* would produce no offsetting efficiencies

A court may consolidate cases if litigating their common issues together would facilitate the

administration of justice.  *E.g., Doug Brady, Inc.*, 2008 U.S. Dist. LEXIS 28324, at *14-15.  Here,

however, due to their dissimilar claims and lack of common issues, consolidating *Levin* with the

*Securities Actions* would produce no efficiencies to balance against the ensuing delay, confusion

and prejudice.  Consolidation will not reduce duplication because the fundamentally different

claims do not turn on common legal or factual issues (except, perhaps, on the narrow issue of

1    individual defendants' control over YieldPlus, a secondary matter that can be addressed without

2    full consolidation).  *See supra* at 4-8.  Consolidation would delay, not expedite, the *Levin* action.

3    *See supra* at 9-11.  Consolidating will not avoid inconsistent rulings because (aside from control-

4    person issues) *Levin* and the *Securities Actions* will not require the Court to rule on the same

5    matters.  And by grafting together dissimilar claims, consolidation will not generate savings of time

6    and expense at trial, and instead will likely add to them by requiring the Court and parties to

7    expend resources attempting to unwind the jury confusion that consolidation will likely produce.

8    *See supra* at 11.

9        In short, the lack of common issues not only undercuts consolidation on its own but also

10   weights the balance against consolidation by creating problems without offsetting benefits.

11   **C.    The Court Can Coordinate or Consolidate for Limited Purposes If a Legitimate
         Reasons Emerges**

12

13       Rule 42(a)(3) grants the Court discretion to "issue any other order to avoid unnecessary cost

14   or delay."  To the extent legitimate common issues may arise, such as determining the extent of

15   each individual defendant's control over YieldPlus, Levin will propose measures to the Court (we

16   would hope by means of a joint submission with defendants and the *Securities Actions* plaintiffs) to

17   address such matters expeditiously while avoiding duplication and the risk of inconsistent

18   adjudications.  Levin believes, however, it would be premature to address any such matters at this

19   early stage in these related litigations.

20                            **IV.    CONCLUSION**

21       For the reasons set forth above, the Court should decline to consolidate *Levin* with the

22   *Securities Actions*.

23

24

25

26

27

28

1  Dated:  June 23, 2008                          HAGENS BERMAN SOBOL SHAPIRO LLP

2                                                  By: _____/s/ Reed R. Kathrein_____

3                                                            REED R. KATHREIN

4                                                  Peter E. Borkon
                                                   715 Hearst Avenue, Suite 202
5                                                  Berkeley, CA 94710
                                                   Telephone: (510) 725-3000
6                                                  Facsimile: (510) 725-3001
                                                   reed@hbsslaw.com
7                                                  peterb@hbsslaw.com

8
                                                   Steve Berman
9                                                  Erin K. Flory
                                                   Sean R. Matt
10                                                 HAGENS BERMAN SOBOL SHAPIRO, LLP
                                                   1301 Fifth Avenue, Suite 2900
11                                                 Seattle, WA 98101
                                                   Telephone: (206) 623-7292
12                                                 Facsimile: (206) 623-0594
                                                   steve@hbsslaw.com
13                                                 sean@hbsslaw.com
                                                   erin@hbsslaw.com
14

15                                                 *Attorneys for Plaintiffs Levin and Kyzer*

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I hereby certify that on June 23, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses registered.

_____/s/ Reed R. Kathrein_____
REED R. KATHREIN

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

**FILED**

FEB 2 8 2007 4:30

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____
DEPUTY CLERK

MARC ABRAMS, on behalf of himself and all
others similarly situated,

              Plaintiff,

-vs-

Case No. A-06-CA-726-SS

DELL INC., KEVIN B. ROLLINS, and JAMES
M. SCHNEIDER,

              Defendants.

DAVID NORMAN, on behalf of herself and all
others similarly situated,

              Plaintiff,

-vs-

Case No. A-06-CA-758-SS

DELL INC.,

              Defendant.

ANDRE BOWEN, on behalf of himself
and all others similarly situated,

              Plaintiff,

-vs-

Case No. A-06-CA-790-SS

DELL INC.,

              Defendant.

ENRIQUE RANGEL, on behalf of himself
and all others similarly situated,

              Plaintiff,

-vs-

Case No. A-06-CA-808-SS

DELL INC.,

              Defendant.

GERALD S. LEE, on behalf of himself
and all others similarly situated,

              Plaintiff,

1

-vs-

Case No.  A-06-CA-810-SS

DELL INC.,
                    Defendant.

---

DIANE E. CROSSER, derivatively on behalf of
DELL, INC.,
                    Plaintiff,

-vs-

Case No.  A-06-CA-839-SS

MICHAEL S. DELL, KEVIN B. ROLLINS,
JAMES M. SCHNEIDER, et al.,
                    Defendants.

---

I.U.O.E. LOCAL 68 PENSION AND ANNUITY
FUNDS, on behalf of itself and all others
similarly situated,
                    Plaintiff,

-vs-

Case No.  A-06-CA-906-SS

DELL INC., KEVIN B. ROLLINS, and JAMES
M. SCHNEIDER,
                    Defendants.

---

IAN BEISER, derivatively on behalf of
DELL, INC.,
                    Plaintiff,

-vs-

Case No.  A-07-CA-054-SS

MICHAEL S. DELL, KEVIN B. ROLLINS,
JAMES M. SCHNEIDER, et al.,
                    Defendants.

---

STICHTING PENSIOENFONDS ABP, et al
on behalf of themselves and all others
similarly situated,
                    Plaintiff,

2

-vs-                                              Case No.  A-07-CA-076-SS

DELL INC., KEVIN B. ROLLINS, and JAMES
M. SCHNEIDER,
                            Defendants.

AMALGAMATED BANK, et al
on behalf of themselves and all others
similarly situated,
                            Plaintiff,

-vs-                                              Case No.  A-07-CA-077-SS

DELL INC., KEVIN B. ROLLINS, and JAMES
M. SCHNEIDER,
                            Defendants.

## O R D E R

On this day came to be considered motions to consolidate and for entry of a scheduling order,

filed by various parties in the above-styled actions.

Pursuant to Rule 42(a) of the Federal Rules of Civil Procedure, it is hereby ORDERED that:

*Abrams v. Dell, Inc.*, No. A-06-726-SS; *I.U.O.E. Local 68 Pension and Annuity Funds v. Dell,*

*Inc.*, No. A-06-906-SS; *Stichting Pensioenfonds ABP et al. v. Dell, Inc.*, No. A-07-076-SS;

*Amalgamated Bank et al. v. Dell*, No. A-07-077-SS; and any related securities action subsequently

identified, filed in, removed, or transferred to this Court (collectively, the "Consolidated Securities

Action") shall be consolidated under the docket heading "*In re* Dell, Inc. Securities Litig.: 06-CA-726-

SS."

*Crosser v. Rollins et al.*, No. A-06-839-SS; *Beiser v. Dell, Inc.*, No. A-07-054-SS; and any

related derivative action subsequently identified, filed in, removed, or transferred to this Court

(collectively, the "Consolidated Derivative Action") shall be consolidated under the docket heading

"*In re* Dell, Inc. Derivative Litig.: 06-CA-839-SS."

3

*Norman v. Dell, Inc.*, No. A-06-758-SS, *Bowen v. Dell, Inc.*, No. A-06-790-SS, *Rangel v. Dell, Inc.*, No. A-06-808-SS, and *Lee v. Dell, Inc.*, No. A-06-810-SS, and any related ERISA action subsequently identified, filed in, removed, or transferred to this Court (collectively, the "Consolidated ERISA Action") shall be consolidated under the docket heading "*In re* Dell, Inc. ERISA Litig.: 06-CA-758-SS."

The Consolidated Securities Action, the Consolidated Derivative Action, and the Consolidated ERISA Action shall be referred to as the "Consolidated Actions." The three Consolidated Actions shall be coordinated for purposes of overlapping discovery, but the three Consolidated Actions shall be consolidated separately for all purposes, including class certification, discovery, trial, and disposition by a single judgment in each consolidated action. *See EEOC v. West Louisiana Health Services, Inc.*, 959 F.2d 1277, 1280-1281 (5th Cir. 1992) (citing *Harcon Barge Co. v. D & G Boat Rentals, Inc.*, 746 F.2d 278, 286 (5th Cir. 1984), reh'g en banc on other grounds 784 F.2d 665 (5th Cir. 1986), cert. denied 479 U.S. 930 (1986) ("In our view, Rule 42(a) authorized the district court to consolidate the cases both for trial and for disposition by a single judgment . . . ."); see also *Kuehne & Nagel (AG & Co.) v. Geosource, Inc.*, 874 F.2d 283, 287 n.1 (5th Cir. 1989) (" [A] district court, pursuant to Fed.R.Civ.P. 42(a), may consolidate all claims for disposition by a single judgment."). Such consolidation is proper where, as here, the cases "involve common questions of law and fact and . . . consolidation would avoid unnecessary costs or delay." *Mills v. Beech Aircraft Corp.*, 886 F.2d 758, 762 (5th Cir. 1989) (citing Fed.R.Civ.P. 42; *St. Bernard General Hospital, Inc. v. Hospital Service Association of New Orleans, Inc.*, 712 F.2d 978, 990 (5th Cir. 1983)). This consolidation, of course, "does not deprive the parties of any substantive rights that the parties may have had if the actions had proceeded separately." *Galvan v. SBC Pension Benefit Plan*, No. SA-04-CV-333-XR,

4

2006 U.S. Dist. LEXIS 88449, *12–13 (W.D. Tex. 2006); *McKenzie v. United States*, 678 F.2d 571, 574 (5th Cir. 1982).

If a party's pleading relates to more than Consolidated Action, the pleading should be filed in *each lead case* to which it relates and the style of the pleading shall include the docket heading for each case to which it relates. For example, a pleading relating to all three Consolidated Actions should be filed in all three lead cases and styled:

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | |
|---|---|
| IN RE DELL, INC., SECURITIES LITIGATION | Case No. 06-CA-726-SS and consolidated cases |
| IN RE DELL, INC., DERIVATIVE LITIGATION | Case No. 06-CA-839-SS and consolidated cases; |
| IN RE DELL, INC., ERISA LITIGATION | Case No. 06-CA-758-SS and consolidated cases |

By separate order, the court will appoint Lead Counsel for Plaintiffs in each separate Consolidated Action. Lead Counsel in the Consolidated Securities Action shall not have any duties, responsibilities, or authority with respect to the Consolidated Derivative Action or the Consolidated ERISA Action; likewise, the responsibilities, duties, and authority of Lead Counsel in the Consolidated ERISA Action shall relate only to that action, and the responsibilities, duties, and authority of Lead Counsel in the Consolidated Derivative Action shall relate only to that action. No order entered solely

5

in any one Consolidated Action shall be binding on any other Consolidated Action.

After the Court appoints lead plaintiffs/lead counsel, the most recent complaint filed by lead plaintiffs/lead counsel will be deemed the operative complaint in each separate Consolidated Action, unless plaintiffs notify the Court of their intent to file a further amended complaint. Defendants shall answer, move to dismiss, or otherwise respond within 60 days of the later of (i) the order appointing lead plaintiffs/lead counsel; or (ii) the filing of the amended complaint by the lead plaintiff/lead counsel. Defendants need not answer, move to dismiss, or otherwise respond to any prior complaint. Plaintiffs shall have 60 days to file responses, and Defendants shall have 30 days to file replies. Defendants shall file answers, if necessary, within 30 days of the resolution of the motions to dismiss. Plaintiffs shall file motions for class certification, if necessary, within 60 days of resolution of motions to dismiss.

Discovery in the Consolidated Securities Action will be stayed pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C.S. § 78u-4(b)(3)(B). That statute, however, is not applicable to ERISA or derivative claims. *See In re Firstenergy S'holder Derivative Litig.*, 219 F.R.D. 584, 586-587 (N.D. Ohio 2004) ("The PSLRA, by its terms, is limited to actions filed under the federal securities laws and does not apply outside this context. Although the securities fraud claims and the shareholder derivative claims include similar facts, this is insufficient to bring the state law derivative claims within the ambit of the PSLRA.") Therefore, discovery of facts specific to the ERISA or derivative claims will not be stayed in the Consolidated ERISA Action and the Consolidated Derivative Action. Discovery relevant only to the derivative claims shall commence upon the resolution of the motions to dismiss, if any, in the Consolidated Derivative Action, irrespective of whether the PSLRA stay is still in effect for the Consolidated Securities Action. Discovery that is relevant only to the claims and issues in the ERISA litigation shall commence upon

6

resolution of the motions to dismiss, if any, in the Consolidated ERISA Action, except that Plaintiffs are entitled to earlier production of core ERISA documents and information or documents sufficient to identify the persons who served as plan fiduciaries during the class period and who appointed the plan fiduciaries. Defendants represent that, on or before January 5, 2007, they produced such documents (consisting of the Dell Inc. 401(k) Plan document, Summary Plan Description and Trust Agreement).

After all motions to dismiss filed by Defendants in any of the Consolidated Actions have been resolved by this Court, to the extent reasonable and appropriate, overlapping discovery in all of the Consolidated Actions shall be coordinated so as to avoid duplication. Accordingly, after all motions to dismiss have been resolved, the parties shall negotiate a coordinated discovery plan; the details of this plan need not be filed with the Court. However, within sixty (60) days after all motions to dismiss are resolved, the parties shall file an Agreed Proposed Scheduling Order with the Court (or, in the event the parties cannot reach agreement, motions for entry of a scheduling order) that proposes a schedule for briefing, discovery, and trial of each of the Consolidated Actions.

SIGNED this the 28th day of February 2007.

_____
SAM SPARKS
UNITED STATES DISTRICT JUDGE

7

# EXHIBIT B



FILED 2.2 PTO

COPY

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

FEB 1 1 2002

IN RE LUCENT TECHNOLOGIES, INC. :
ERISA LITIGATION              :          Civil Action No. 01-cv-3491 (JAP)
                                         ORDER

Before the Court is Defendant Lucent Technologies' motion for a continuance. Plaintiffs,

participants in and beneficiaries of Lucent's defined benefit plans, have opposed the motion. This

matter is resolved on the parties' submissions and without oral argument, as is permitted under Rule

78 of the Federal Rules of Civil Procedure.

The Court finds that the parties will likely conduct considerable discovery in this complex

case to properly learn the facts relevant to the issues raised by this matter. The Court further finds

that the resolution of the securities class action, *In re Lucent Technologies Inc. Securities Litigation,*

Civil Action No. 00-621 (JAP), will not necessarily resolve all issues in this matter. The legal

issues here will still have to be determined, and a stay or continuance shall not change that fact.

Mindful then of the litigants' interests and of the Court's judicial economy and efficiency concerns,

the Court exercises its discretion to not stay the matter. Having considered the parties' written

submissions and having found that duplicative discovery proceedings between this matter and the

securities class action, *In re Lucent Technologies Inc. Securities Litigation,* Civil Action No. 00-621

(JAP), do not warrant any continuance and/or stay of this matter,

ENTERED
ON
THE DOCKET

FEB 1 1 2002

IT IS on this 11th day of February 2002

ORDERED that Defendant's motion for a continuance is denied.

WILLIAM T. WALSH, CLERK

By

JOEL A. PISANO, U.S.D.J.                    (Deputy Clerk)

Orig:  Clerk
cc:    Hon. Madeline Cox Arleo
       All parties & File

RECEIVED
FEB 1 5 2002

# EXHIBIT C

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ORIGINAL

--------------------------------------------------------x
                        :
                        :

In re GLOBAL CROSSING, LTD.      :      02 MD 1472 (GEL)
SECURITIES AND ERISA LITIGATION  :

                        :          ORDER
                        :

--------------------------------------------------------x

GERARD E. LYNCH, District Judge:

      Approximately seventy cases growing out of the decline in value of Global Crossing, Ltd.
("GC") have been filed in this Court or transferred here by the Joint Panel on Multidistrict
Litigation for consolidated or coordinated proceedings. The majority of these cases stem from
class action complaints on behalf of purchasers of GC securities; essentially all of these
complaints specifically allege that GC overstated revenues in its SEC filings and other public
statements, primarily by means of fraudulent accounting practices in connection with reciprocal
leases of cable capacity. Another set of class action complaints, brought on behalf of employee-
participants in GC's retirement savings plan, charge that various defendants violated their duties
as fiduciaries under the Employee Retirement Income Security Act of 1974, as amended
("ERISA"), by failing to monitor the plan's investments in company stock, and by failing to
disclose to plan participants and beneficiaries the risks of investing in GC securities.

      Numerous motions for consolidation and for appointment of lead plaintiffs, and for other
relief relating to the proper organization of these cases in order to resolve the various overlapping
claims and common legal and factual issues, have been submitted, and the papers relating to
these various motions have been considered by the Court. Conferences involving all counsel
were held on November 22, 2002, and December 10, 2002, to hear arguments regarding these
various applications, and to assist the Court in understanding the views of the various parties
concerning the fairest and most efficient methods of resolving these disputes. On the basis of the
oral and written submissions of the parties, and after extended reflection by the Court, it is hereby
ORDERED, for the reasons stated on the record in open court on December 10, 2002, that:

I. Proposed Consolidation of All Cases

      1. The motion of certain defendants to consolidate all of the actions relating to Global
Crossing for pretrial purposes is denied.

## II. ERISA Litigation

### A. Consolidation

2. The actions listed on the annexed schedule under the heading "Global Crossing ERISA Class Actions," as well as any other action now pending before, hereafter filed in, or hereafter transferred to this Court, brought pursuant to ERISA, in connection with the Global Crossing Employees' Retirement Savings Plan (the "GC ERISA actions") are consolidated for all purposes pursuant to Rule 42(a), Fed. R. Civ. P. They shall be referred to collectively as *In re Global Crossing, Ltd. ERISA Litigation*, Dkt. No. 02 Civ. 7453 (GEL) (the "Consolidated ERISA Action").

3. The Clerk of this Court shall file a copy of this Order in the separate file for each of the GC ERISA Actions. Unless otherwise ordered by this Court, future filings in any GC ERISA action herein consolidated shall be filed and docketed only under Dkt. No. 02 Civ. 7453.

4. The Court requests the assistance of counsel in calling to the attention of the Clerk of this Court the filing or transfer of any case that might properly be consolidated as part of this litigation.

5. Every pleading filed in the Consolidated ERISA Action shall bear the following caption:

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
                                                           :
                                                           :
In re GLOBAL CROSSING, LTD.                                :      02 Civ. 7453 (GEL)
ERISA LITIGATION                                           :
                                                           :
-----------------------------------------------------------x

### B. Organization of Counsel

6. The Court designates the following as members of the ERISA Lead Counsel Committee to act on behalf of all plaintiffs in the Consolidated ERISA Action, with the responsibilities hereinafter described: Lynn Lincoln Sarko (Chairman), Keller Rohrback; George E. Barrett, Barrett, Johnston & Parsley; and Richard Schiffrin, Schiffrin & Barroway.

7. The ERISA Lead Counsel Committee shall have the following responsibilities: *(a)* sign any consolidated complaint, motions, briefs, discovery requests, objections, stipulations, or notices on behalf of plaintiffs for any matters arising during pretrial proceedings; *(b)* conduct all pretrial proceedings on behalf of plaintiffs; *(c)* brief and argue motions; *(d)* initiate and conduct

discovery; *(e)* speak on behalf of plaintiffs at any pretrial conference; *(f)* employ and consult with experts; *(g)* conduct settlement negotiations with defense counsel on behalf of plaintiffs; *(h)* call meetings of plaintiffs' counsel; *(i)* accept service on behalf of all plaintiffs; *(j)* distribute to all plaintiffs' counsel copies of all notices, orders, and decisions of the Court, including this order; *(k)* maintain an up-to-date list of counsel available to all plaintiffs' counsel on request; and *(l)* keep a complete file of all papers and discovery materials filed or generated in the Consolidated ERISA Action which shall be available to all plaintiffs' counsel at reasonable hours.

C. Scheduling of Pleadings

8. Plaintiffs shall file a consolidated amended complaint for the Consolidated ERISA Action no later than January 24, 2003.

9. Defendants shall respond to the consolidated amended complaint, by motion or answer, no later than March 10, 2003.

10. If any defendant moves to dismiss the consolidated amended complaint, plaintiffs shall respond to such motion no later than April 24, 2003.

11. Defendants shall reply to plaintiffs' response(s) no later than 30 days after filing of the response.

12. Pursuant to the Court's Individual Practice Rules, courtesy copies of motions or responses need not be provided to chambers at the time of filing. When the reply or replies are served and filed, defendants shall supply two courtesy copies of all motion papers to chambers.

13. Pending filing and service of the consolidated amended complaint, defendants shall have no obligation to move, answer, or otherwise respond to any of the complaints in the actions consolidated herein or any actions subsequently consolidated with them.

14. The complaints previously filed in any of the GC ERISA Actions already before this Court shall be deemed withdrawn, and shall be dismissed, two weeks after the filing of the consolidated amended complaint, unless the plaintiff(s) filing said complaints, no later than February 3, 2003 (or, if the date for filing the consolidated amended complaint is extended by further Order of this Court, within ten days after the adjourned filing date), *(i)* shows cause for why the complaint should not be dismissed and *(ii)* delivers to chambers, if the plaintiff has not already done so, a courtesy copy of the original complaint.

15. Discovery in the Consolidated GC ERISA Action is not stayed. However, the parties are encouraged to meet and confer with each other and with the Lead Plaintiff in the Consolidated Securities Action concerning a proposed schedule for discovery, taking into account the desirability of coordinated discovery in all the Global Crossing matters, the parties'

needs to focus on the filing of pleadings and motions, the desirability of expeditiously proceeding with the resolution of the disputes, and the impact of discovery on any settlement negotiations.

16. *Pusloskie v. Winnick*, Dkt. No. 02 Civ. 8508 (GEL), a related action making claims under ERISA in connection with the Frontier Group Bargaining Unit Employees Retirement Savings Plan, is not consolidated with the Consolidated ERISA Action. Any filings in that action shall be captioned in the usual manner and docketed and filed only under Dkt. No. 02 Civ. 8508 (GEL). However, proceedings in *Pusloskie* and in the Consolidated ERISA Action will be coordinated to the extent feasible. Any amended complaint and all further pleadings shall be filed in *Pusloskie* in accordance with the schedule set forth in paragraphs 8 through13 of this order.

III. Securities Litigation

A. Consolidation

17. The actions listed on the annexed schedule under the heading "Global Crossing Securities Actions," as well as any other action pertaining to Global Crossing, Ltd., now pending before, hereafter filed in, or hereafter transferred to this Court, brought under the federal securities laws or state laws relating to fraud in connection with the issuance, purchase or sale of securities ("GC Securities Actions") are consolidated for all purposes pursuant to Rule 42(a), Fed. R. Civ. P. They shall be referred to collectively as *In re Global Crossing, Ltd. Securities Litigation*, Dkt. No. 02 Civ. 910 (GEL) (the "Consolidated Securities Action").

18. The actions against GC and its investment bankers pending in this District which are presently consolidated before the Honorable Shira A. Scheindlin in *In re Initial Public Offering Securities Litigation*, Dkt. No. 21 MC 92 (SAS), are expressly excluded from this Order. No action consolidated in the Consolidated ERISA Action pursuant to paragraph 2 shall be consolidated into the Consolidated Securities Action.

19. The Clerk of this Court shall file a copy of this Order in the separate file for each of the GC Securities Actions. Unless otherwise ordered by this Court, and except as specified in paragraphs 36 and 37 of this Order, future filings in any GC Securities Action herein consolidated shall be filed and docketed only under 02 Civ. 910.

20. The Court requests the assistance of counsel in calling to the attention of the Clerk of this Court the filing or transfer of any case that might properly be consolidated as part of this litigation.

21. Every pleading filed in the Consolidated Securities Action shall bear the following caption:

4

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x
                                              :
In re GLOBAL CROSSING, LTD.                   :        02 Civ. 910 (GEL)
SECURITIES LITIGATION                         :
                                              :
-------------------------------------------------------------x

B. <u>Appointment of Lead Plaintiffs and Organization of Counsel</u>

22.  Pursuant to 15 U.S.C. § 78u-4(a)(3)(B) and 15 U.S.C. § 77z-1(a)(3)(B), the Public
Employees Retirement System of Ohio and the State Teachers Retirement System of Ohio are
appointed Lead Plaintiffs in the Consolidated Securities Action.

23.  The Court approves the Lead Plaintiffs' selection of Grant & Eisenhofer, P.A., as
Lead Counsel in the Consolidated Securities Action.

24.  Counsel for Staro Asset Management, LLC, Bennett Restructuring Funds, Richard P.
Kleinknecht, and James F. Tucker shall serve as members of an Executive Committee of the
plaintiffs in the GC Securities Actions.  Alterations in the composition of the Executive
Committee, to the extent necessary or desirable, may be made from time to time by application to
the Court.

25.  Lead Counsel in the Consolidated Securities Action shall have the following
responsibilities:  *(a)* sign any consolidated complaint, motions, briefs, discovery requests,
objections, stipulations, or notices on behalf of plaintiffs for any matters arising during pretrial
proceedings;  *(b)* conduct all pretrial proceedings on behalf of plaintiffs;  *(c)* brief and argue
motions;  *(d)* initiate and conduct discovery;  *(e)* speak on behalf of plaintiffs at any pretrial
conference;  *(f)* employ and consult with experts;  *(g)* conduct settlement negotiations with
defense counsel on behalf of plaintiffs;  *(h)* call meetings of plaintiffs' counsel;  *(i)* accept service
on behalf of all plaintiffs;  *(j)* distribute to all plaintiffs' counsel copies of all notices, orders, and
decisions of the Court, <u>including this order</u>;  *(k)* maintain an up-to-date list of counsel available to
all plaintiffs' counsel on request; and  *(l)* keep a complete file of all papers and discovery
materials filed or generated in the Consolidated Securities Action which shall be available to all
plaintiffs' counsel at reasonable hours.

26.  In carrying out these responsibilities, Lead Counsel shall consult with members of the
Executive Committee, and shall keep members of the Executive Committee informed of
significant developments in the litigation.  The Executive Committee members shall assist Lead
Counsel in communicating with all counsel in the GC Securities Actions.

C. Scheduling

27. Plaintiffs shall file a consolidated amended complaint for the Consolidated Securities Action no later than January 24, 2003.

28. Defendants shall respond to the consolidated amended complaint, by motion or answer, no later than March 10, 2003.

29. If any defendant moves to dismiss the consolidated amended complaint, plaintiffs shall respond to such motion no later than April 24, 2003.

30. Defendants shall reply to plaintiffs' response(s) no later than 30 days after filing of the response.

31. Pursuant to the Court's Individual Practice Rules, courtesy copies of motions or responses need not be provided to chambers at the time of filing. When the reply or replies are served and filed, defendants shall supply two courtesy copies of all motion papers to chambers.

32. Pending filing and service of the consolidated amended complaint, defendants shall have no obligation to move, answer, or otherwise respond to any of the complaints in the actions consolidated herein or any actions subsequently consolidated with them.

33. The complaints previously filed in any of the GC Securities Actions already before this Court shall be deemed withdrawn and shall be dismissed two weeks after the filing of the consolidated amended complaint, unless the plaintiff(s) filing said complaints, no later than February 3, 2003 (or, if the date for filing the consolidated amended complaint is extended by further Order of this Court, within ten days after the adjourned filing date), *(i)* shows cause for why the complaint should not be dismissed and *(ii)* delivers to chambers, if the plaintiff has not already done so, a courtesy copy of the original complaint.

34. Discovery in the Consolidated Securities Action is stayed, pursuant to 15 U.S.C. §§ 77z-1(b)(1), 78u-4(b)(3)(B), pending determination of the Lead Plaintiffs' motion to lift the stay. However, the parties are encouraged to meet and confer with each other and with Lead Counsel in the Consolidated ERISA Action concerning a proposed schedule for discovery, taking into account the desirability of coordinated discovery in all the Global Crossing matters, the parties' needs to focus on the filing of pleadings and motions, the desirability of expeditiously proceeding with the resolution of the disputes, and the impact of discovery on any settlement negotiations.

35. Within 30 days after the consolidated amended securities complaint is filed, plaintiffs in any action not dismissed pursuant to paragraph 33 may file amended complaints duplicating the consolidated complaint (as appropriate) and asserting any additional claims they wish to plead.

36. Any party in any of the GC Securities Actions may apply to the court for a modification of or relief from this Order, including for lifting any applicable stay of proceedings, to allow motion practice on any issue unique to that action. Any such applications, and any pleadings filed pursuant to paragraph 35 of this Order, shall be captioned in the ordinary manner with the name of the particular action to which they apply, and docketed and filed both under its individual docket number and under the consolidated securities action, Dkt. No. 02 Civ. 910. Counsel filing such pleadings or applications are accordingly directed to supply two copies of such filings to the Clerk of the Court.

37. The plaintiff in *Pettit v. Winnick*, Dkt. No. 02 Civ. 7469 (GEL), may file, within 30 days of the filing of this Order, a motion to remand to California Superior Court for lack of federal jurisdiction. Any such motion should be filed and docketed under the caption and docket number for that case alone.

IV. Miscellaneous Administrative Provisions

38. None of the provisions of this order shall apply to *Garcia v. Winnick*, Dkt. No. 02 Civ. 8890 (GEL). All proceedings in *Garcia* remain stayed in accordance with the stipulation of the parties entered by order of this court on December 9, 2002.

39. Any papers intended to be considered in connection with both the Consolidated ERISA Action and the Consolidated Securities Action shall be captioned as follows:

```
-------------------------------------------------x
                                            :
In re GLOBAL CROSSING, LTD.                 :        02 Civ. 910 (GEL)
SECURITIES LITIGATION                       :
                                            :
                                            :
-------------------------------------------------x
                                            :
In re GLOBAL CROSSING, LTD.                 :        02 Civ. 7453 (GEL)
ERISA LITIGATION                            :
                                            :
-------------------------------------------------x
```

Such filings shall be filed and docketed under both 02 Civ. 910 and 02 Civ. 7453. Counsel shall provide the Clerk of the Court with two copies of each such filing for that purpose.

40. In issuing this Order, the Court makes no ruling and expresses no opinion on any class certification issues.

41. This Order shall apply to each action alleging ERISA violations or fraud in purchase or sale of securities brought in connection with Global Crossing which is subsequently filed in or

7

transferred to this Court and assigned to the undersigned, unless a party objecting to the consolidation of that action or to any other provision of this Order serves an application for relief from this Order or from any of its provisions within ten days after the Clerk mails a copy of this Order to counsel for that party. The provisions of this Order shall apply to such action pending the Court's ruling on the application.

42. The Clerk of Court is respectfully directed that all of the cases listed on the attached schedule, whether or not consolidated by this Order, shall be treated as "related cases" for purposes of all internal Court statistical reports.

43. This Order disposes of all motions for consolidation, appointment of lead counsel, or other miscellaneous relief that have been filed in *Manson v. Winnick*, Dkt. No. 02 Civ. 910 (GEL), *Armezzani v. Winnick*, Dkt. No. 02 Civ. 1086 (GEL), *Tiwok, Inc. v. Winnick*, Dkt. No. 02 Civ. 1129 (GEL), and *Iles v. Winnick*, Dkt. No. 02 Civ. 2641 (GEL). Therefore, the Clerk of the Court is respectfully directed to close out all motions in those cases for purposes of all internal Court statistical reports.

SO ORDERED.

Dated: New York, New York
        December 13, 2002

GERARD E. LYNCH
United States District Judge

8