Reed R. Kathrein (139304)
Peter E. Borkon (212596)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
reed@hbsslaw.com
peterb@hbsslaw.com

Attorneys for Plaintiff Labins and Movants
The YieldPlus Investor Group

[Additional counsel listed on signature page]

## UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA

#### SAN FRANCISCO DIVISION

| | |
|---|---|
| *IN RE CHARLES SCHWAB CORP.*<br>*SECURITIES LITIGATION,*<br><br><br><br><br><br><br><br><br><br><br><br><br><br>———————————————————<br><br>THIS DOCUMENT RELATES TO ALL<br>ACTIONS *EXCEPT:*<br><br>   *Levin v. Schwab Corp., et al.,*<br>     Case No. 08-cv-2487 WHA<br><br>———————————————————| No. 08-cv-1510 WHA<br><br>YIELDPLUS INVESTOR GROUP'S<br>COLLECTIVE AND INDIVIDUAL<br>RESPONSES TO COURT'S JUNE 11,<br>2008 ORDER CONSOLIDATING<br>ACTIONS AND REQUESTING<br>INFORMATION FROM LEAD<br>PLAINTIFF CANDIDATES<br><br>DATE: July 2, 2008<br>TIME: 9:00 a.m.<br>DEPT: CR 9, 19th Floor |

010036-12 246244 V3

1

**TABLE OF CONTENTS**

2
**PAGE**

3   I.    INTRODUCTION ................................................................................................1

4   II.   ARGUMENT .......................................................................................................2

5         A.    The YieldPlus Investor Group Both Collectively and Individually
                Possess the Appropriate Skills and Experience to Serve as Lead
6               Plaintiff .....................................................................................................2

7               1.    The Individual Members of the YieldPlus Investor Group Are
                      Uniquely Experienced to Lead this Case .......................................3
8
                2.    Cavanaugh Does Not Mandate Attendance at the Lead Plaintiff Hearing ........8
9
          B.    The YieldPlus Investor Group Has the Largest Losses Under All of the
10              Methodologies Used by the Movants and Is Presumed to Be the Most
                Adequate to Serve as Lead Plaintiff ........................................................8
11
                1.    Comparison of Losses Under Section 11(e) ..................................9
12
                2.    Comparison of Losses Under Section 12 .....................................10
13
                3.    Comparison of Losses under the Olsten-Lax Test.......................11
14
    III.  CONCLUSION ..................................................................................................13
15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## TABLE OF AUTHORITIES

2

**PAGE(S)**

3

## CASES

4

*Amour v. Network Associates, Inc.*,
    171 F. Supp. 2d 1044 (N.D. Cal. 2001).................................................................3

5

6

*In re Cavanaugh*,
    306 F.3d 726 (9th Cir. 2002) ...........................................................................8

7

*FMC v. Holliday*,
    498 U.S. 52 (1990) ...........................................................................................5

8

9

*In re Fuwei Films Sec. Litigation*,
    247 F.R.D. 432 (S.D.N.Y. 2008).....................................................................8

10

*Gustafson v. Alloyd Co.*,
    513 U.S. 561 (1995) .......................................................................................10

11

12

*Lee v. Ernst & Young, LLP*,
    294 F.3d 969 (8th Cir. 2002) ...........................................................................9

13

*In re Olsten Corp. Sec. Litigation*,
    3 F. Supp. 2d 286 (E.D.N.Y. 1998) ..............................................................11

14

15

*LAX v. First Merchants Acceptance Corp.*,
    No. 97 C 2715, 1997 WL 461036 (N.D. Ill. Aug 11, 1997) .........................11

16

*Mohanty v. BigBand Networks, Inc.*,
    No. C 07-5101 SBA, 2008 WL 426250 (N.D. Cal. Feb. 14, 2008) ................3

17

18

*Randall v. Loftsgaarden*,
    478 U.S. 647 (1986) .......................................................................................10

19

*Richardson v. TVIA, Inc.*,
    No. 06-6304, 2007 WL 1129344 (N.D. Cal. April 16, 2007) ........................11

20

21

*Rosenzweig v. Azurix Corp.*,
    332 F.3d 854 (5th Cir.2003) ............................................................................9

22

## FEDERAL STATUTES

23

24

Section 11(e), Securities Act of 1933,
    15 U.S.C. § 77k(e)...........................................................................................9

25

26

27

28

# I.    INTRODUCTION

David and Gretchen Mikelonis, Kevin O'Donnell, John Hill, N. Richard Kimmel, James Coffin and Robert Dickson (referred to collectively as "YieldPlus Investor Group" or "Movant") submit their answers to the Court's Questionnaire and this brief in response to the Court's June 11, 2008 Order Consolidating Actions and Requesting Information from Lead Plaintiff Candidates ("Order"). The Private Securities Litigation Reform Act of 1995 ("PSLRA") was enacted by Congress with the intention of placing control of securities class actions into the hands of investors who are experienced and motivated. The PSLRA contains a preference for institutional investors because institutional investors are assumed to have the resources and experience necessary to make informed decisions while exercising control of securities class actions. The YieldPlus Investor Group members embody that necessary experience and decision-making ability. The YieldPlus Investor Group is comprised of lawyers who are experienced at managing litigation, an engineer with budget experience, and a Chief Financial Officer ("CFO") and financial expert on the Audit Committee of the Board of Directors at a mutual fund. Indeed, the YieldPlus Investor Group has the skills and resources of an institutional investor making this group a proper group under the PSLRA and the most adequate plaintiff to step forward to seek lead plaintiff in this case. The YieldPlus Investor Group is well organized, has strong leadership and has negotiated a single retainer agreement with counsel. Furthermore, the YieldPlus Investor Group has the largest losses of any investor seeking to serve as lead plaintiff irrespective of what methodology is used to calculate the approximate losses. Although David and Gretchen Mikelonis, Kevin O'Donnell and N. Richard Kimmel are unable to attend the hearing on July 2, 2008, for reasons discussed herein, they can and are willing to appear personally, or in the case of Mr. Kimmel, by telephone later in July, if so requested. Mssrs. Coffin, Hill and Dickson will appear at the July 2, 2008 hearing.

Accordingly, the members of the YieldPlus Investor Group respectfully ask this Court to appoint their entire group as lead plaintiff. In the event the Court is not inclined to grant their motion, the YieldPlus Investor Group suggests narrowing its group as outlined below.

## II.    ARGUMENT

### A.    The YieldPlus Investor Group Both Collectively and Individually Possess the Appropriate Skills and Experience to Serve as Lead Plaintiff

The YieldPlus Investor Group is a unique group of individuals who possess experience and resources rarely found in litigants.  Each member of the YieldPlus Investor Group provides a unique set of skills and experience that strengthens the group.  The members of the YieldPlus Investor Group are highly skilled individuals who have experience managing litigation, overseeing large budgets, and sitting on the Audit Committee of a board of directors for a mutual fund. Although a lead plaintiff group of seven individuals with no prior relationship may be unfavored in other circumstances, here the YieldPlus Investor Group exceeds the expectations embodied in the PSLRA.  The YieldPlus Investor Group is not a lawyer-driven group.  Rather, the YieldPlus Investor Group has quickly formed a leadership structure to steer their decision-making process and is avidly managing this litigation to further this case on behalf of absent investors.  *See* Declaration of Reed R. Kathrein in Support of the YieldPlus Investor Group's Opposition to Competing Motions for Appointment of Lead Plaintiff, filed June 11, 2008, [Dkt. 53] ("Opp. Kathrein Decl."), Exs. 1-6, at ¶¶ 4-10.  *See also* Declaration of Reed R. Kathrein in Support of YieldPlus Investor Group's Collective and Individual Responses to Court's June 11, 2008 Order Consolidating Actions and Requesting Information from Lead Plaintiff Candidates, Exs. 2-7, ("Response Kathrein Decl.") filed concurrently with this Response.  Moreover, as shown below, depending on the methodology used by the court to assess approximate losses, the members of the YieldPlus Investor Group have suffered the largest losses.  Depending on the methodology used to calculate losses, different members of the YieldPlus Investor Group may have larger or smaller losses.  Although every member of the YieldPlus Investor Group is individually capable of leading this litigation and has suffered sufficient losses to serve as lead plaintiff, the sum of their individual experience, their demonstrated decision-making abilities and the size of their losses warrant appointing the entire group as lead plaintiff.  Alternatively, if this Court insists on pairing the YieldPlus Investor Group down in size, Movants suggest appointing the individuals with the largest losses and the most relevant experience within the YieldPlus Investor Group.

The PSLRA expresses Congress' preference that securities fraud litigation be directed by institutional investors. *Mohanty v. BigBand Networks, Inc.* No. C 07-5101 SBA, 2008 WL 426250, *6 (N.D. Cal. Feb. 14, 2008). Underlying this preference is the assumption that "the greater resources and litigation experience possessed by institutional investors makes them better equipped to serve as lead plaintiffs in securities class actions." *Amour v. Network Assocs., Inc.,* 171 F. Supp. 2d 1044, 1048 (N.D. Cal. 2001) (citations omitted). Here, no institutional investor seeks to be appointed as lead plaintiff. Nevertheless, the members of the YieldPlus Investor Group have experience managing litigation and have the resources Congress envisioned when it enacted the PSLRA's preference for institutional investors.

1.    **The Individual Members of the YieldPlus Investor Group Are Uniquely Experienced to Lead this Case**

Each member of the YieldPlus Investor Group has invested significant amounts in Schwab's YieldPlus Funds and each has suffered substantial losses. In compliance with the Order, the members of the YieldPlus Investor Group have contemporaneously submitted their responses to the Court's Questionnaire. Comprised of David and Gretchen Mikelonis, Kevin O'Donnell, John Hill, N. Richard Kimmel, James Coffin and Robert Dickson, the experience of the individual members of the YieldPlus Investor Group is described below.

**David and Gretchen Mikelonis**: Mr. Mikelonis has been elected by the YieldPlus Investor Group as their Chairman based on his decades of litigation experience and skills managing litigation and his familiarity with class action litigation. Husband and wife, David and Gretchen Mikelonis invested significant amounts in the YieldPlus Fund and suffered losses between $129,436.68 and $227,197.17 depending on which methodology the Court employs to calculate losses. Mr. Mikelonis made the investment decisions and invested the funds for both in the Schwab YieldPlus Funds. Mr. Mikelonis is an attorney admitted to the bar in the State of Michigan and admitted to practice in numerous federal courts and the United States Supreme Court. He has degrees from the University of Notre Dame, A.B. in Government and International Relations, June 1970; University of Michigan Law School, J.D., August 1972; and University of Michigan Graduate School of Business, M.B.A., April 1979.

1    Mr. Mikelonis is highly experienced at managing lawyers and litigation.  Prior to

2    retirement, Mr. Mikelonis was Vice President and General Attorney of Consumers Energy

3    Company ("Consumers") from February 1986 to December 1988, and then Senior Vice President

4    and General Counsel from December 1988 to September 2004.  At Consumers, he managed every

5    aspect of a department with an annual budget in the millions of dollars.  This included being

6    ultimately responsible for all litigation that Consumers was involved in, in both state and federal

7    courts.  This responsibility included close supervision of Consumers' legal strategy and its

8    implementation in all of the significant court litigation (including commercial arbitrations) and

9    regulatory and administrative proceedings encountered before state and federal agencies.  In

10    addition, he personally handled important contract and corporate governance matters.  He is also a

11    registered lobbyist agent with the Michigan Secretary of State on behalf of Consumers and

12    participated in the Lansing legislative process with respect to legislation and regulations of interest

13    to Consumers.  Finally, several times, most recently in 2006, at their personal requests, he has also

14    served as a Jackson County co-chair of the nonpartisan re-election efforts of four sitting justices of

15    the Michigan Supreme Court.

16    While Mr. Mikelonis was at Consumers the total staff varied over the years, but generally

17    consisted of between 60-70 people.  Of that number, there were approximately 30 lawyers, a half

18    dozen paralegals, a data base management group, three professional investigators, one office

19    manager, with the balance being support and clerical staff of various types.  He supplemented in-

20    house staff with carefully selected outside counsel chosen for assignments depending on the matter

21    involved and the best interests of the client.  In his role, he had responsibility for developing and

22    administering budgets and five-year plans for the legal department and participated in the

23    company's overall budgeting and planning process each year.

24    Since retiring, Mr. Mikelonis has previously served as secretary for a group of

25    employee/investors who objected to various aspects of a settlement in ERISA class action

26    litigation involving CMS Energy Corporation, including an objection to fees and expenses.  He

27    and another retired officer of Consumers also filed objections in 2007 to a class action settlement

28    in shareholder litigation involving CMS Energy Corporation and participated in the fairness

1    hearing related to the settlement.  Although the Mikelonis' losses are not the largest of the

2    members of the YieldPlus Investor Group, they were selected in this role because of Mr.

3    Mikelonis' significant litigation experience and management skills.

4         **Kevin O'Donnell**: Mr. O'Donnell has been elected as the Secretary of the YieldPlus

5    Investor Group.  Under every method of calculating losses, Mr. O'Donnell has suffered the largest

6    losses of any individual and depending on the methodology, his losses even eclipse those of

7    competing groups of movants.  His losses are between $357,704.25 and $439,502.15.  Kevin

8    O'Donnell is a member of the Wisconsin Bar.  Mr. O'Donnell comes from a family of three

9    generations of lawyers and a judge in Wisconsin.  He was admitted to the Bar in 1972.  Mr.

10   O'Donnell practiced in the fields of personal injury and product liability trial law before starting

11   the country's first independent health subrogation firm in 1983.  Mr. O'Donnell has experience

12   managing lawyers and litigation including acting as local counsel in *FMC v. Holliday*, 498 U.S. 52

13   (1990) where Mr. O'Donnell's company represented FMC Corporation and managed the litigation

14   through the Supreme Court's decision.  Mr. O'Donnell sold his firm in 1999 and is currently

15   retired.

16        **James Coffin**: The YieldPlus Investor Group selected Mr. Coffin as its Vice-Chair.

17   Depending on the methodology employed, Mr. Coffin's losses range between $188,764.78 and

18   $373,818.19.  Mr. Coffin is a member of the California Bar and Vice President of C-Y

19   Development Company, a company co-founded by his father and a builder and developer of

20   commercial and residential property in Redlands California.  He was admitted to the California Bar

21   in 1986, practiced real estate law in Redlands, and has been involved in mediations at JAMS.  As

22   demonstrated in his responses to the Court's Questionnaire, he is highly experienced in business as

23   he has managed his family business for more than thirty years.  He also has a great deal of

24   experience working with litigation strategy, negotiation and structuring settlements in complex

25   business litigation matters.  Mr. Coffin has extensive legal experience including serving as a

26   mediator and arbitrator.  Mr. Coffin is also an elected official and president and director of a

27   Section 501(c)(3) charity.

28

1   **Robert Dickson**: Robert Dickson is the managing director of Dickson Consulting, which

2   provides senior executive and financial consulting service to companies in the start up stage.  He is

3   also presently the CFO of CardiacAssist, Inc., a medical device company that develops,

4   manufactures and markets cardiac devices.  CardiacAssist is located in Pittsburgh, PA.  In his role

5   as CFO, Mr. Dickson has been involved in and managed litigation.

6   Before starting Dickson Consulting, Mr. Dickson was a financial officer of three

7   companies for a total period of 22 years.  These companies ranged in size from $9 million to $1.2

8   billion in revenue, both publicly traded and privately owned.  He also worked at

9   PricewaterhouseCoopers for nine years.

10   Mr. Dickson has held numerous leadership roles in professional organizations, including

11   the Financial Executives International and the Association for Corporate Growth.  He has also

12   served on the Board of Trustees at the Emerald Asset Mutual Fund Family and the Fort Pitt Capital

13   Total Return Fund.  In both situations, Mr. Dickson was the designated financial expert for the

14   Audit Committee.

15   Mr. Dickson is a graduate of Pennsylvania State University with a B.S. degree in

16   Accounting.  He has been a financial officer for a number of companies, with responsibility for

17   various corporate governance functions including financial reporting, coordination of annual audits,

18   reporting to boards of directors, establishing and monitoring internal accounting controls and

19   review of filings with the Securities and Exchange Commission.  He has worked closely with legal

20   counsel on corporate governance matters.

21   **John Hill**: John Hill is retired and was an engineer at Lockhead Missile Systems.  Mr. Hill

22   has a B.A. degree from San Jose State University in Business and Physical Science.  At Lockheed,

23   he was a lead engineer in Reliability Engineering.  His responsibility was to diagnose major

24   missile problems and recommend solutions that would maintain Navy-required missile reliability

25   of 99.99%.  During manufacturing start-up for a new missile design, Mr. Hill was appointed to

26   resolve unresolved manufacturing, design and purchasing problems on the new missile.  Missile

27   delivery dates were being missed that cost Lockheed $35,000 per missile.  He prepared budgets for

28   the department and negotiated them with the customer (U.S. Navy) as required.  Mr. Hill was

1   responsible for preparing three underground (Nevada) tests for specific missile "packages" at the

2   request of the customer.  Mr. Hill submitted six approved missile design changes and five patent

3   applications.

4        Mr. Hill was also responsible for overseeing the operation of his deceased parents' ranch

5   property and closing the estate.  He arranged for the financing of crops and negotiated contracts

6   with wineries for the sale of Chardonnay grapes grown on the ranch vines.

7        **N. Richard Kimmell**: During his thirty-five years as the head of a commercial, industrial

8   and institutional construction company, Mr. Kimmell managed numerous lawsuits.  Many of those

9   were resolved in mediation.  Mr. Kimmell invests in the market and worked in commercial

10  building construction for 40 years.  He also worked in financing businesses.  He was Vice

11  Chairman of First Citizens Financial Corporation for seven years, the holding company formed in

12  1989 for Citizens Savings Bank F.S.B., which operated in Maryland.  He chaired the asset liability

13  committee, which managed money.  He has managed lawyers in litigation and arbitration matters

14  including workout litigation during his tenure as Chairman of the bank.

15       Each member of the YieldPlus investor Group brings a wealth of experience to this

16  litigation.  They have all suffered significant losses and are willing and able to act in the best

17  interests of the class.  Furthermore, they have already held telephonic meetings where they

18  established a steering committee, negotiated a retainer agreement with counsel and considered the

19  Court's Order.  The members of the YieldPlus Investor Group present the skills and resources that

20  Congress envisioned when it enacted the preference that institutional investors guide securities

21  litigation.  Indeed, they have implemented a decision-making process and directed their lawyers as

22  encouraged by the PSLRA.

23       In the event the Court requires the YieldPlus Investor Group to narrow its ranks, the

24  members respectfully suggest that the Court appoint three of the members as lead plaintiff.  First,

25  Mr. O'Donnell who has suffered losses that eclipse every movant in this litigation and who has

26  significant experience managing lawyers and litigation.  Second, Mr. Mikelonis because he has

27  more than thirty years of experience supervising litigation including objecting to a class action

28  settlement at a fairness hearing.  Third, the YieldPlus Investor Group requests that the Court

1   appoint Mr. Coffin as a lead plaintiff because Mr. Coffin has also suffered significant losses that

2   eclipse most others and has significant experience managing lawyers and litigation as well as

3   business experience running a commercial real estate development company in Redland,

4   California.

5           **2.    Cavanaugh Does Not Mandate Attendance at the Lead Plaintiff Hearing**

6           In *In re Cavanaugh*, 306 F.3d 726, 729-30 (9th Cir. 2002), the Ninth Circuit spelled out the

7   three-step inquiry for selecting a lead plaintiff.  In the third step of the process the court may

8   examine evidence where movants attempt to rebut the presumption in favor of the movant with the

9   largest financial interest.  However, the Ninth Circuit cautioned against departing from the three-

10  step process and by placing a greater burden on the investor seeking to serve as lead plaintiff than

11  that found in the PSLRA.  *Cavanaugh*, 306 F.3d at 730.  Neither the Ninth Circuit nor the PSLRA

12  require attendance of the proposed lead plaintiff in order to be appointed.  Here, although every

13  member of the YieldPlus Investor Group has participated in the decision-making process and made

14  himself readily available by telephone, not every member is able to travel to the July 2, 2008

15  hearing.  Mr. Mikelonis is traveling in China and will not return until after the hearing.  Mr.

16  O'Donnell is sailing on a trip planned long before this Court's Order and does not return until after

17  July 2, 2008.  Mr. Kimmel is 87 years old and prefers not to travel to this hearing.  Each of these

18  individuals is willing to appear by telephone and have actively participated in the YieldPlus

19  Investor Groups meeting throughout this process.

20  **B.    The YieldPlus Investor Group Has the Largest Losses Under All of the
21        Methodologies Used by the Movants and Is Presumed to Be the Most Adequate to
        Serve as Lead Plaintiff**

22          The PSLRA does not specify a method for calculating the largest financial interest.  *In re*

23  *Fuwei Films Sec. Litig.*, 247 F.R.D. 432, 436 (S.D.N.Y. 2008) (citations omitted).  In *Fuwei*,

24  plaintiffs brought suit alleging violations of Section 11 of the Securities Act of 1933 ("Section 11"

25  or "§ 11").  *Id.* at 434.  The movant with the largest financial interest was attacked by a competing

26  group for failing to calculate losses pursuant to the methodology contained in Section 11.  *Id.* at

27  438.  The Court rejected the argument that the PSLRA required an analysis of financial interest

28  under Section 11.  *Id.*   Alternatively the Court reasoned that if the Section 11 damages

1    methodology were employed, the same candidate for lead plaintiff would have the largest financial

2    interest. *Id.* Here, the same would be true. Regardless of what methodology is employed, the

3    YieldPlus investor Group and several of its members have larger losses than all other movants.

4    **1.    Comparison of Losses Under Section 11(e)**

5    Section 11(e) provides in pertinent part that plaintiffs can recover:

6    Such damages as shall represent the difference between the amount paid for the
     security . . . and (1) the value thereof as of the time such suit was brought, or (2)
7    the price at which such security shall have been disposed of in the market before
     suit, or (3) the price at which such security shall have been disposed of after suit
8    but before judgment if such damages shall be less than the damages representing
     the difference between the amount paid for the security (not exceeding the price at
9    which the security was offered to the public) and the value thereof as of the time
     such suit was brought . . . .
10

11   15 U.S.C. § 77k(e). Stated more succinctly, damages under Section 11(e) are generally calculated

12   as the difference between the amount paid for the security *not exceeding the price at which the*

13   *security was offered to the public*, and the price of the security at the time the lawsuit was filed or

14   the security was disposed of in the market. *See Lee v. Ernst & Young, LLP,* 294 F.3d 969, 977 (8th

15   Cir. 2002). Where a plaintiff sells their stock after the suit is commenced and the sales price for

16   those shares is greater than the price on the day to lawsuit is commenced, then the proceeds of

17   those sales are excluded from the damage calculations by Section 11(3)(3). For claims under

18   Section 11, damages generally are calculated as the difference between the amount paid for the

19   security, not to exceed the price at which the security was offered to the public, and the price of the

20   security at the time the lawsuit was filed or the security was disposed of in the market. *See* Section

21   11(e), 15 U.S.C. § 77k(e); *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 873 (5th Cir.2003).

22   Here, *Labins v. The Charles Schwab Corp.*, *et al.*, the first case filed in these consolidated

23   actions, was filed on March 18, 2008. On March 18, 2008, shares of YieldPlus Fund ("SWYSX")

24   closed the trading day at a Net Asset Value of $7.88. As depicted in the following chart, the other

25   movants' losses pale in comparison to the YieldPlus Investor Group's losses under the

26   methodology set forth in Section 11(e). Indeed, two of the proposed members of the narrower

27

28

YieldPlus Investor Group have significantly larger losses than the entire Peate Group and Schwartz Group. Mr. O'Donnell and Mr. Coffin have losses of $374,604.75 and $197,629.62 respectively.

| Movant Group | Individual | Individual Loss | Group Loss |
|---|---|---|---|
| **YieldPlus Investor Group** | Kevin O'Donnell | $374,604.75 | $1,250,495.23 |
| | James Coffin | $197,629.62 | |
| | John Hill | $240,914.42 | |
| | David and Gretchen Mikelonis | $135,914.47 | |
| | N. Richard Kimmel | $210,156.87 | |
| | Robert Dickson | $91,275.10 | |
| | | | |
| **Peate Group** | Jameet K. Singh | $185,950.41 | $374,127.48 |
| | Garfield Peate | $97,350.48 | |
| | Mark Verge | $90,826.59 | |
| | | | |
| **Schwartz Group** | Casa Marin | $37,842.09 | $156,746.37 |
| | Celesta Schwartz Trust | $39,472.42 | |
| | Richard Schwartz Trust | $37,842.10 | |
| | Margaret Bell Trust | $24,317.72 | |
| | Bell Family Limited Partnership | $17,272.04 | |

### 2.    Comparison of Losses Under Section 12

Section 12(a)(2) of the Securities Act of 1933 imposes liability on any person who offers or sells a security by means of a prospectus or oral communication which either contains an untrue statement of fact or omits a material fact necessary to make the other statements not misleading, without requiring "proof of either fraud or reliance." *Gustafson v. Alloyd Co.*, 513 U.S. 561, 582 (1995). The remedy for violations of Section 12(a)(2) by the statutory "seller" is rescission "except where the plaintiff no longer owns the security," under which circumstance damages may be recovered. *Randall v. Loftsgaarden*, 478 U.S. 647, 655 (1986); *Gustafson*, 513 U.S. at 567. Applying the recisionary damages calculation set forth in Section 12, the comparative damages of the movants based on their trading history contained in the documents submitted to this Court are as follows:

| Movant Group | Individual | Individual Loss | Group Loss |
|---|---|---|---|
| **YieldPlus Investor Group** | Kevin O'Donnell | $439,502.15 | $1,631,762.38 |
| | James Coffin | $373,818.19 | |
| | John Hill | $241,304.18 | |
| | David and Gretchen Mikelonis | $227,193.17 | |
| | N. Richard Kimmel | $210,156.87 | |
| | Robert Dickson | $139,787.82 | |
| | | | |
| **Peate Group** | Jameet K. Singh | $310,950.41 | $603,845.44 |
| | Garfield Peate | $151,449.49 | |
| | Mark Verge | $141,445.54 | |
| | | | |
| **Schwartz Group** | Casa Marin | $56,425.54 | $227,432.91 |
| | Celesta Schwartz Trust | $58,859.69 | |
| | Richard Schwartz Trust | $56,425.56 | |
| | Margaret Bell Trust | $38,450.09 | |
| | Bell Family Limited Partnership | $17,272.04 | |

Within the YieldPlus Investor Group, Mr. O'Donnell's losses of $439,502.15 eclipse the individual losses of every other movant and are nearly double that of the Schwartz Group. Similarly, Mr. Coffin's losses of $373, 818.19 under this methodology are larger than any individual movant from any other group and are larger than the entire Schwartz Group. Similarly, Mr. Mikelonis has losses greater than every competing movant except one. Accordingly, this methodology also supports appointing the YieldPlus Investor Group as lead plaintiff in its entirety or in its narrowed form.

> 3.    **Comparison of Losses under the Olsten-Lax Test**

In the absence of authority on how to calculate losses when determining which movant has the greatest financial interest, numerous courts have applied the Olsten-Lax test under which courts look to (1) the number of shares purchased during the class period; (2) the number of net shares sold  during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered.  *In re Olsten Corp. Sec. Litig.,* 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998) (adopting the reasoning of *LAX v. First Merchants Acceptance Corp.*, No. 97 C 2715, 1997 WL 461036 (N.D. Ill. Aug 11, 1997); *Richardson v. TVIA, Inc.,* No. 06-6304, 2007 WL 1129344 *3-4 (N.D. Cal. April 16, 2007) (applying the Olsten-Lax test to evaluate financial interest of competing lead plaintiff movants).

The members of the YieldPlus Investor Group collectively purchased 843,559.3200 shares of SWYSX for $8,143,725.5581 and sold 827,722.0923 shares for proceeds of $6,522,599.2407. The YieldPlus Investor Group retains 15,878.2260 shares as of this filing. No competing group retains shares. Individually, the members traded their shares as follows:

| Investor | Net Shares Acquired | Net Shares Sold | Net Funds Expended | Proceeds of Sales | Shares Retained |
|----------|--------------------|-----------------|--------------------|--------------------|-----------------|
| O'Donnell | 211,256.2260 | 200,000.0000 | $510,303.8122 | $1,529,000.0000 | 11,256.2260 |
| Coffin | 110,810.4240 | 110,810.4240 | $370,493.8774 | $700,321.8797 | 0 |
| Mikelonis | 86,302.5490 | 86,303.5490 | $227,647.6000 | $594,008.2209 | 0 |
| Hill | 235,815.3350 | 235,143.3350 | $245,531.0574 | $2,037,426.9938 | 672.0000 |
| Kimmell | 148,540.1047 | 148,540.1047 | $102,489.6904 | $1,334,307.8730 | 0 |
| Dickson | 50,874.6810 | 46,924.6810 | $164,633.3169 | $327,534.2734 | 3,950.0000 |
| Total | 843,559.3200 | 827,722.0900 | $1,621,099.35 | $6,522,599.2400 | 15,787.2260 |

In comparison, the Schwartz Group purchased shares of SWYSX on two occasions in five separate accounts. Their combined total purchases are a mere 146,708.3820 shares at a cost of $1,412,194.6617 and they sold all of their shares for proceeds of $1,184,761.7400 or net funds expended of $227,432.9217. The Peate Group purchased a combined total of 239,322.3670 shares at a cost of $2,312,883.5221 and sold all of their SWYSX shares for proceeds of $1,710,940.3044 or net funds expended of $601,943.2177.

Applying the Olsten-Lax test, the YieldPlus Investor Group has purchased a significantly greater number of shares, is the only group to retain any shares, and their net fund expended and losses dwarf those of the competing movants. Mr. O'Donnell alone has greater losses and net funds expended than the entire Schwartz Group or any individual member of the Peate Group. *See* Response Kathrein Decl., Ex. 1 (YieldPlus Investor Group Comparisons). Similarly, Mr. Coffin's net funds expended, $370,493.8774, are significantly larger than every member of the Schwartz and Peate Groups. Mr. Mikelonis also has larger losses and net funds expended than all but one of the competing individual movants. Accordingly, the YieldPlus Investor Group in its narrowed form or in its entirety is entitled to the presumption that they are the most adequate movants to lead this class action against Schwab.

1

### III.    CONCLUSION

2          For the foregoing reasons, the YieldPlus Investor Group respectfully requests that the

3   Court issue an Order appointing the entire YieldPlus Investor Group as lead plaintiff.

4   Alternatively, Movants request that the Court appoint such individuals of the YieldPlus Investor

5   Group who individually or as an appropriate group have the largest financial interest in this case

6   and otherwise satisfy the requirements of Rule 23.

7   Dated: June 25, 2008                              HAGENS BERMAN SOBOL SHAPIRO LLP

8                                                     By: _____/s/ Reed R. Kathrein_____
                                                              REED R. KATHREIN
9

10                                                    Peter E. Borkon
                                                      715 Hearst Avenue, Suite 202
11                                                    Berkeley, CA 94710
                                                      Telephone: (510) 725-3000
12                                                    Facsimile: (510) 725-3001
                                                      reed@hbsslaw.com
13                                                    peterb@hbsslaw.com

14
                                                      Steve Berman
15                                                    Sean R. Matt
                                                      Erin K. Flory
16                                                    HAGENS BERMAN SOBOL SHAPIRO, LLP
                                                      1301 Fifth Avenue, Suite 2900
17                                                    Seattle, WA 98101
                                                      Telephone: (206) 623-7292
18                                                    Facsimile: (206) 623-0594
                                                      steve@hbsslaw.com
19                                                    sean@hbsslaw.com
                                                      erin@hbsslaw.com
20

21                                                    Attorneys for Proposed Lead Plaintiff, the YieldPlus
                                                      Investor Group
22

23

24

25

26

27

28

1

**CERTIFICATE OF SERVICE**

2       1.      I hereby certify that on June 25, 2008, I electronically filed the foregoing with the

3   Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-

4   mail addresses registered, as denoted on the attached Electronic Mail Notice List.

5       2.      That on June 25, 2008, I caused the foregoing to be served by facsimile and via U.S.

6   Mail to the parties listed on the attached Service List.

7

8                                                      _____
                                                              /s/ Reed R. Kathrein
9                                                       REED R. KATHREIN

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Mailing Information for a Case 3:08-cv-01510-WHA

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Vahn Alexander**
  valexander@faruqilaw.com

- **Peter E. Borkon**
  peterb@hbsslaw.com

- **Timothy J. Burke**
  service@ssbla.com

- **Reed R. Kathrein**
  reed@hbsslaw.com,steve@hbsslaw.com,nancyq@hbsslaw.com,sf_filings@hbsslaw.com

- **Azra Z. Mehdi**
  azram@csgrr.com,e_file_sf@csgrr.com,e_file_sd@csgrr.com

- **Stuart Christopher Plunkett**
  ggerrish@mofo.com,splunkett@mofo.com

- **Alan R Plutzik**
  aplutzik@bramsonplutzik.com

- **Darryl Paul Rains**
  drains@mofo.com,dgillis@mofo.com

## Manual Notice List

The following is the list of attorneys who are **not**
on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)

*In re Charles Schwab Corp. Securities Litigation*
USDC ND Cal. Case No. 08-cv-01510 WHA

Service List
June 25, 2008

**Counsel for Defendants**

| | |
|---|---|
| Stuart C. Plunkett<br>Craig David Martin<br>Kevin A. Calia<br>MORRISON & FOERSTER LLP<br>425 Market Street<br>San Francisco, CA  94105<br>Telephone:  (415) 268-6145<br>Facsimile: (415) 268-7522<br>splunkett@mofo.com<br>cmartin@mofo.com<br><br><br>Attorneys for Defendants Charles Schwab &<br>Co. Inc., Charles Schwab Investment<br>Management Inc., The Charles Schwab<br>Corporation, Charles R. Schwab, Evelyn<br>Dilsaver, George Pereira, Randall W. Merk<br><br>**VIA U.S. MAIL AND FACSIMILE** | Darryl Paul Rains<br>Thomas Roy Plummer<br>MORRISON & FOERSTER LLP<br>755 Page Mill Road<br>Palo Alto, CA 94304-1018<br>Telephone:  (650) 813-5600<br>Facsimile:  (650) 494-0792<br>drains@mofo.com<br>tplummer@mofo.com<br><br><br><br>Attorneys for Defendants The Charles Schwab<br>Corporation, Charles Schwab & Co., Inc.,<br>Charles Schwab Investment Management Inc.,<br>Charles R. Schwab, Evelyn Dilsaver, George<br>Pereira, Randall W. Merk<br><br>**VIA U.S. MAIL AND FACSIMILE** |
| Matthew Mark D'Amore<br>MORRISON & FOERSTER LLP<br>1290 Avenue of the Americas<br>New York, NY 10104<br>Telephone:  (212) 468-8000<br>Facsimile:  (212) 903-7820<br>mdamore@mofo.com<br><br><br><br>Attorneys for Defendants Charles Schwab &<br>Co., Inc., Charles Schwab Investment<br>Management Inc., Schwab Investments,<br>Charles R. Schwab, Evelyn Dilsaver, George<br>Pereira, Randall W. Merk<br><br>**VIA U.S. MAIL AND FACSIMILE** | Frances S. Cohen<br>Steven W. Hansen<br>BINGHAM MCCUTCHEN LLP<br>150 Federal Street<br>Boston, MA 02110<br>Telephone: (617) 951-8872<br>Facsimile: (617) 951-8736<br>frances.cohen@bingham.com<br><br><br>Attorneys for Defendants Charles Schwab &<br>Co., Inc., Charles Schwab Investment<br>Management Inc., The Charles Schwab<br>Corporation,  Charles R. Schwab, Evelyn<br>Dilsaver, George Pereira, Randall W. Merk<br><br>**VIA U.S. MAIL AND FACSIMILE** |

- 1 -

*In re Charles Schwab Corp. Securities Litigation*
USDC ND Cal. Case No. 08-cv-01510 WHA

Service List
June 25, 2008

**Counsel for the Flanzraichs**

| | |
|---|---|
| Vahn Alexander<br>FARUQU & FARUQU LLP<br>1901 Avenue of the Stars, Second Floor<br>Los Angeles, CA 90067<br>Telephone:  (310) 461-1426<br>Facsimile:  (310) 461-1427<br>valexander@faruqilaw.com<br><br><br>Attorneys for Jill Flanzraich and Nils<br>Flanzraich<br><br>**VIA U.S. MAIL AND FACSIMILE** | |

**Counsel for Cunningham, Kale, and Lewis**

| | |
|---|---|
| Timothy J. Burke<br>STULL STULL & BRODY<br>1940 Wilshire Boulevard, Suite 2300<br>Los Angeles, CA 90024<br>Telephone: (310) 209-2468<br>Facsimile: (310) 209-2087<br>service@ssbla.com<br><br><br>Attorneys for Karen Cunningham, Mark Kale<br>and Monte Lewis<br><br>**VIA U.S. MAIL AND FACSIMILE** | |

**Counsel for the Peate Group**

| | |
|---|---|
| Azra Z. Mehdi<br>COUGHLIN STOIA GELLER RUDMAN &<br>ROBBINS LLP<br>100 Pine Street, Suite 2600<br>San Francisco, CA 94111<br>Telephone: (415) 288-4545<br>Facsimile: (415) 288-4534<br>azram@csgrr.com<br><br><br><br>Attorneys for the Peate Group<br><br>**VIA U.S. MAIL AND FACSIMILE** | Mario Alba<br>Samuel H. Rudman<br>Mark S. Reich<br>David A. Rosenfeld<br>COUGHLIN STOIA GELLER RUDMAN &<br>ROBBINS LLP<br>58 South Service Road, Suite 200<br>Melville, NY 11747<br>Telephone: (631) 367-7100<br>Facsimile: (631) 367-1173<br>malba@csgrr.com<br><br>Attorneys for the Peate Group<br><br>**VIA U.S. MAIL AND FACSIMILE** |

*In re Charles Schwab Corp. Securities Litigation*
USDC ND Cal. Case No. 08-cv-01510 WHA

Service List
June 25, 2008

| | |
|---|---|
| Jeffrey A. Berens<br>DYER & BERENS LLP<br>682 Grant Street<br>Denver, CO 80203-3507<br>Telephone: (303) 861-1764<br>Facsimile: (303) 395-0393<br><br><br>Attorneys for the Peate Group<br><br>**VIA U.S. MAIL AND FACSIMILE** | Sean M. Handler<br>Steven D. Resnick<br>SCHIFFRIN BARROWAY TOPAZ &<br>KESSLER LLP<br>280 King of Prussia Road<br>Radnor, PA 19087<br>Telephone: (610) 667-7706<br>Facsimile: (610) 667-7056<br><br>Attorneys for the Peate Group<br><br>**VIA U.S. MAIL AND FACSIMILE** |

**Counsel for the Schwartz Group of Investors, Gerry Hageman, W. Merrill Glasglow and Vinayak R. Pai Defined Benefits Pension Plan**

| | |
|---|---|
| Alan R. Plutzik<br>BRAMSON, PLUTZIK, MAHLER &<br>BIRKHAEUSER LLP<br>2125 Oak Grove Road, Suite 120<br>Walnut Creek, CA 94598<br>Telephone: (925) 945-0200<br>Facsimile: (925) 945-8792<br>aplutzik@bramsonplutzik.com<br><br>Attorneys for the Schwartz Group of Investors<br><br>**VIA U.S. MAIL AND FACSIMILE** | Jeffrey A. Berens<br>DYER & BERENS LLP<br>682 Grant Street<br>Denver, CO 80203-3507<br>Telephone: (303) 861-1764<br>Facsimile: (303) 395-0393<br><br><br><br>Attorneys for Gerry Hageman<br><br>**VIA U.S. MAIL AND FACSIMILE** |
| Robert Wade Mills<br>THE MILLS LAW FIRM<br>145 Marina Boulevard<br>San Rafael, CA 94901-4224<br>Telephone: (415) 455-1326<br>Facsimile: (415) 455-1327<br>rwm@millslawfirm.com<br><br>Attorneys for Gerry Hageman<br><br>**VIA U.S. MAIL AND FACSIMILE** | Adam P. Schiffer<br>SCHIFFER ODOM HICKS PLLC<br>3200 Southwest Freeway, Suite 2390<br>Houston, TX 77027<br>Telephone: (713) 357-5150<br>Facsimile: (713) 357-5160<br><br><br>Attorneys for W. Merrill Glasgow<br><br>**VIA U.S. MAIL AND FACSIMILE** |
| Marc Morris Seltzer<br>SUSMAN GODFREY LLP<br>1901 Avenue of the Stars, Suite 950<br>Los Angeles, CA 90067-6029<br>Telephone: (310) 789-3100<br>Facsimile: (310) 789-3150<br>mseltzer@susmangodfrey.com<br><br><br>Attorneys for W. Merrill Glasgow | Harry P. Susman<br>SUSMAN GODFREY LLP<br>1000 Louisiana Street, Suite 5100<br>Houston, TX 77002-5096<br>Telephone: (713) 651-9366<br>Facsimile: (713) 654-6666<br><br><br><br>Attorneys for W. Merrill Glasgow |

*In re Charles Schwab Corp. Securities Litigation*
USDC ND Cal. Case No. 08-cv-01510 WHA

Service List
June 25, 2008

| VIA U.S. MAIL AND FACSIMILE | VIA U.S. MAIL AND FACSIMILE |
|---|---|
| Blair Allen Nicholas<br>BERNSTEIN LITOWITZ BERGER &<br>GROSSMAN LLP<br>12481 High Bluff Drive, Suite 300<br>San Diego, CA 92130<br>Telephone: (858) 793-0070<br>Facsimile: (858) 793-0323<br>blairn@blbglaw.com<br><br><br>Attorneys for Vinayak R. Pai Defined Benefits<br>Pension Plan<br><br>**VIA U.S. MAIL AND FACSIMILE** | |

**Counsel for the Tullys**

| | |
|---|---|
| Daniel W. Krasner<br>WOLF HALDENSTEIN ADLER FREEMAN<br>& HERZ LLP<br>270 Madison Avenue<br>New York, NY 10016<br>Telephone: (212) 545-4600<br>Facsimile: (212) 545-4653<br>krasner@whafh.com<br><br>Attorneys for Hugh John Tully, Penelope Carol<br>Tully<br><br>**VIA U.S. MAIL AND FACSIMILE** | Robert B. Weintraub<br>WOLF HALDENSTEIN ADMLER FREEMAN<br>& HERZ LLP<br>270 Madison Avenue<br>New York, NY 10016<br>Telephone: (212) 545-4689<br>Facsimile: (212) 545-4653<br>weintraub@whafh.com<br><br>Attorneys for Hugh John Tully and Penelope<br>Carol Tully<br><br>**VIA U.S. MAIL AND FACSIMILE** |

**Counsel for Arnita Coleman**

| | |
|---|---|
| David Pastor<br>GILMAN AND PASTOR, LLP<br>225 Franklin Street, 16th Floor<br>Boston, MA 02110<br>Telephone: (617) 742-9700<br>Facsimile: (617) 742-9701<br>dpastor@gilmanpastor.com<br><br><br>Attorneys for Arnita Coleman<br><br>**VIA U.S. MAIL AND FACSIMILE** | |

*In re Charles Schwab Corp. Securities Litigation*
USDC ND Cal. Case No. 08-cv-01510 WHA

Service List
June 25, 2008

**Counsel for R. Daniel Bohl**

| | |
|---|---|
| Thomas G. Shapiro<br>Adam M. Stewart<br>SHAPIRO HABER & URMY LLP<br>53 State Street, 37th Floor<br>Boston, MA 02109<br>Telephone: (617) 439-3939<br>Facsimile: (617) 439-0134<br>tshapiro@shulaw.com<br><br><br>Attorneys for R. Daniel Bohl<br><br>**VIA U.S. MAIL AND FACSIMILE** | |