1  [COUNSEL LISTED ON SIGNATURE PAGES]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE CHARLES SCHWAB CORP. SECURITIES LITIGATION | Master File No. C 08-01510 WHA<br><br>CLASS ACTION<br><br>**JOINT CASE MANAGEMENT CONFERENCE STATEMENT**<br><br>Date:           July 2, 2008<br>Time:          9:00 a.m.<br>Courtroom: 9<br>Judge:         Hon. William Alsup |

The parties to the consolidated actions jointly submit the following case management statement.[1]

1.  Jurisdiction and Service.

The Court has subject matter jurisdiction over plaintiffs' federal claims pursuant to 28 U.S.C. § 1331. It has subject matter jurisdiction over plaintiffs' state law claims pursuant to 28 U.S.C. § 1367. There are no issues regarding personal jurisdiction or venue. All the defendants have accepted service.

2.  Facts.

   a.  Plaintiffs' Statement.

*Chronology*. The first lawsuit against Defendants in any district, *Labins v. The Schwab Corp., et al.*, was filed on March 18, 2008, in the Northern District of California by Mike Labins, individually and on behalf of all persons or entities that purchased or otherwise acquired Schwab YieldPlus Investor Shares and/or Schwab YieldPlus Select Shares pursuant to or traceable to the Company's Registration Statements or Prospectuses. The gravamen of the complaints are Defendants' violation of the Securities Act. Specifically, the complaint arises out of Defendants' including or allowing the YieldPlus fund's registration statements and prospectuses to contain untrue statements of material fact and/or to omit to state material facts necessary in order to make the statements, in light of the circumstances under which they were made, not misleading, in direct violation of the Securities Act. These untrue statements or omissions resulted in the damages suffered by the Class.

*Principal Disputed Factual Issues*. Plaintiffs allege the YieldPlus fund's registration statements and prospectuses contained untrue statements of material fact and/or omitted to state material facts necessary in order to make the statements, in light of the circumstances under which they were made, not misleading, thereby violating sections 11, 12(a)(2), and 15 of the Securities Act of 1933. The Complaints generally allege that the YieldPlus funds were marketed

---

[1] A draft of this joint statement was sent to all parties. Certain parties did not respond and did not authorize the filing, and therefore are not included on the signature pages.

as a "smarter alternative to money market funds" and that the registration statements and prospectuses, which encompass defendants marketing materials and webpages contained the following untrue or misleading statements include, amongst others:

- The Funds provided "higher yields on your cash with only marginally higher risk, [and therefore] could be a smart alternative."
- The Funds were "ultra short-term bond fund, designed to offer high current income with minimal changes in share price."
- The Funds "invest[] primarily in investment-grade bonds."
- The Funds offer "the potential for higher yields than a money market fund."
- The Funds seek "to keep the average duration of its portfolio at one year or less."
- The Funds were "designed with your income needs in mind."
- The Funds objective was "to seek high current income with minimal changes in share price."
- The Funds "invests in a large, well-diversified portfolio of taxable bonds ...."
- "To minimize changes in share price or NAV, the fund seeks to maintain an average portfolio duration of one-year or less."
- "The [Funds were being] actively managed by a seasoned team of taxable bond portfolio managers who are supported by a team of credit and market analysts. The team uses a disciplined approach …."
- The Fund would not "[p]urchase securities…if as a result of such purchase, 25% or more of the value of its total asses would be invested in any industry or group of industries…"
- The Fund would not "[c]oncentrate investments in a particular industry or group of industries…"

(*See* Labins Complaint ¶ 23; Pai Complaint ¶¶ 50-51.)

Plaintiffs allege the true material facts, or material facts omitted necessary to make the statements made not misleading and/or omitted material facts required to be stated therein, included:

JOINT CASE MANAGEMENT CONFERENCE STATEMENT
MASTER FILE NO. C 08-01510 WHA
sf-2531054

2

    a.    the Funds were and are not well-diversified and were concentrated in a single risky industry or market segment – in reality, over 50% of the Funds assets were at one point invested in the mortgage industry with large subprime exposure, and that percentage grew as Defendants abandoned the objectives of the Funds in pursuit of higher yields;

    b.    a material portion of all the bonds were issued by the Fund's top 10 broker dealers, who sold the funds shares;

    c.    there exists no primary market for most of the bonds, and in fact, the only market was, for many, the issuers themselves;

    d.    the duration of a vast majority of the bonds were greater than 1 year.

    e.    the Funds credit and market analysts did not have any real expertise in valuing the mortgage backed securities they purchased, or assessing the risk;

    f.    the Funds relied blindly on the ratings by agencies who were paid by the Funds' broker-dealers;

    g.    the mortgaged back securities in which they were investing were highly vulnerable to becoming illiquid; and

    h.    the net asset values ("NAVs") of the Funds were highly speculative and inflated.

    i.    that the Funds lacked adequate internal controls, and

    j.    Schwab management directed the Fund's into risky, long-duration mortgaged back instruments.

Defendants have not filed an answer and therefore have not identified any factual issues in dispute.

The *Levin* suit, which is currently subject to an order to show cause as to why it should not be consolidated, is not governed by the PSLRA and seeks to represent all holders of the YieldPlus fund for a longer class period. Plaintiffs in *Levin* allege the YieldPlus fund changed its policy regarding concentration in mortgage-backed securities without first obtaining investor approval in violation of section 13(a)(3) of the Investment Company Act of 1940 and state law.

JOINT CASE MANAGEMENT CONFERENCE STATEMENT  
MASTER FILE NO. C 08-01510 WHA  
sf-2531054

3

b.  *Defendants' Statement*.

*Chronology*.  This case is brought by investors in the Schwab YieldPlus mutual fund.  The YieldPlus fund is an ultra-short bond fund.  It is a "bond fund" because it invests primarily in fixed income securities like corporate bonds, asset-backed securities, and the like.  It is called "ultra-short" because it seeks to maintain an average portfolio duration of one year or less.

Ultra-short bond funds, like the YieldPlus fund, offer investors the opportunity to earn higher yields than might be achieved in a lower-risk fixed income investment (such as a treasury bond mutual fund or a money market fund) while avoiding some of the interest rate and credit risks inherent in longer-term bond funds.

The YieldPlus grew steadily after opening in October 1999.  It had over $13 billion in assets by 2007.  Over that period, the fund paid investors an average annual total return of around 4.22 percent.  Schwab also was able to maintain the fund's share price at a nearly-constant level, with net asset value fluctuations limited to only a few cents per year.

The YieldPlus fund's long-term success and consistency were recognized in the market.  One prominent mutual fund research firm — Lipper — consistently ranked the YieldPlus fund near the top of the ultra-short bond fund segment, and ranked it as the top mutual fund in its category for the period from 2002 to 2005.  Morningstar, another prominent mutual fund research firm, gave the YieldPlus fund "five stars" — its highest rating.  These prominent endorsements also contributed to the fund's growth.

Then the credit crisis hit.  Throughout the last half of 2007, the financial markets as a whole, and particularly the market for non-treasury fixed income securities, went through an extraordinary dislocation, with sharp declines in asset values and a marked lack of liquidity.  According to published studies, companies have written down over $400 billion of fixed income assets since the crisis began.  And the crisis continues today.

The YieldPlus fund was hurt by the credit crisis along with other owners of fixed income securities.  Its net asset value (or "NAV"), which is a measure of the current market price of its holdings, declined from approximately $9.70 per share in July 2007 to $9.07 at the end of 2007.  That does not mean the bonds in its portfolio had stopped performing — the fund has not

experienced significant defaults on its holdings. But the fund, like all mutual funds, must "mark to market" its portfolio each day, and the decline in the market prices of non-treasury fixed income securities was reflected in the fund's NAV.

As the fund's NAV dropped, investors in the fund began to redeem their shares, which required the fund to sell its securities at distressed prices. This "run on the fund" exacerbated investors' losses. By the time the first complaint was filed in this action, the fund's assets had declined to around $2 billion, and its NAV had reached $7.95 per share.

*Principal Disputed Factual Issues*. Plaintiffs' federal securities claims challenge the accuracy of the YieldPlus fund's prospectuses. They allege the prospectuses contained false or misleading statements which violated sections 11, 12(a)(2), and 15 of the Securities Act of 1933. The allegedly false and misleading statements fall into the following categories:

- *Risk*. Plaintiffs allege the YieldPlus fund prospectuses falsely stated that the fund's risk profile was only "marginally higher" than cash and that the fund was a safe alternative to money market funds. Defendants argue the prospectuses clearly disclosed that the "fund has a higher risk profile than a money market fund . . . and, unlike a money market fund, its share price will fluctuate." The prospectus also warned investors that "the value of your investment in the fund will fluctuate, which means that you could lose money."

- *Diversification*. Plaintiffs allege the YieldPlus fund's prospectuses falsely represented the fund as a broadly diversified fund while, in fact, it was "concentrated in a single industry or market segment," with "over 50% of the Funds assets . . . invested in the mortgage industry." Defendants contend the fund's diversification policies were fully and accurately disclosed and that investors regularly received reports showing the numbers of bonds and percentages of fund assets in various industries and investment categories.

- *Net Asset Value*. Plaintiffs allege the YieldPlus fund misrepresented its NAV by reporting "highly speculative and inflated" NAV values. Defendants maintain the the fund's NAV was fully and accurately reported at all times.

- *Liquidity*.  Plaintiffs allege the YieldPlus prospectuses misrepresented the vulnerability of the fund's assets "to suddenly becoming illiquid."  Defendants contend the prospectuses fully and accurately disclosed the risks associated with investing in the fund, including market risks, and note the fund successfully and consistently liquidated assets to meet redemption requests throughout the Fall of 2007 and the Spring of 2008.
- *Fundamental Investment Policy on Concentration*.  Plaintiffs allege the YieldPlus fund changed its policy regarding concentration in mortgage-backed securities without first obtaining investor approval in violation of section 13(a)(3) of the Investment Company Act of 1940.  Defendants contend the fund did not change its concentration policy and thus did not need investor approval.  Defendants also maintain that the fund complied with its concentration policy at all times.

3. <u>Legal Issues</u>.

   a. <u>Plaintiffs' Statement</u>.

Plaintiffs' federal claims arise under sections 11, 12(a)(2) and 15 of the Securities Act of 1933 (15 U.S.C. §§ 77k, 77i & 77o). The claims raise the following legal issues:

- Whether plaintiffs properly pled claims against each defendant under each statute?
- Whether a Class should be certified?

Under the *Levin* complaint, Plaintiffs' federal claims arise under section 13(a)(3) of the Investment Company Act of 1940 (15 U.S.C. § 80a-13).  Plaintiffs' state law claims consist of both common law claims (for breaches of fiduciary duty, breach of contract, and interference with contract) and a statutory claim under Business & Professions Code section 17200.

   b. <u>Defendants' Statement</u>.

Plaintiffs' federal securities claims and claim under section 13(a)(3) of the Investment Company Act of 1940 raise the following additional legal issues:

- Whether each defendant may properly be sued pursuant to each claim?
- Whether plaintiffs may assert claims under sections 11, 12(a)(2), and 15 for representations allegedly made outside the fund's prospectuses?

JOINT CASE MANAGEMENT CONFERENCE STATEMENT
MASTER FILE NO. C 08-01510 WHA
sf-2531054

6

1    • Whether plaintiffs may properly represent a class of investors who received
2       materially different versions of the fund's prospectuses?
3    • Whether a private right of action exists for alleged violations of section 13(a)(3)?
4    • Whether the Court may certify a class when class members received different
5       written materials, and many class members had unique conversations regarding
6       their investments both with Schwab employees and independent investment
7       advisors?

8    Plaintiffs' state law claims (for breaches of fiduciary duty, breach of contract, interference
9    with contract, and violation of Business & Professions Code section 17200) raise the following
10   legal issues:

11   • Whether a private right of action exists for alleged violations of section 13(a)(3)?
12   • Whether each defendant may properly be sued pursuant to each claim?
13   • Whether plaintiffs may assert claims for breaches of fiduciary duty, breach of
14      contract, and interference with contract if there is no underlying violation of the
15      Investment Company Act?
16   • Whether plaintiffs may assert a section 17200 claim if there is no underlying
17      violation of the Investment Company Act?

18   4.    Motions.
19   These motions are presently pending before the Court or are anticipated to be filed:
20   • Various motions for selection of the lead plaintiff and approval of a lead class
21      counsel.
22   • Order to show cause why the *Levin* case should not be consolidated.
23   • Motion to dismiss pursuant to Rule 12(b)(6).
24   • Motion for class certification pursuant to Rule 23.

25   5.    Amendment of Pleadings.
26   Not including the *Levin* complaint, Plaintiffs intend to file an amended consolidated
27   complaint following the appointment of a lead plaintiff and approval of lead class counsel.
28   Plaintiffs propose a deadline for the filing of the amended complaint of 60 days after lead counsel

JOINT CASE MANAGEMENT CONFERENCE STATEMENT
MASTER FILE NO. C 08-01510 WHA
sf-2531054

7

1  is approved. The *Levin* Plaintiffs believe the *Levin* complaint should move forward and without
2  waiting for the appointment of lead plaintiff or lead counsel in the other consolidated actions.
3      Defendants do not agree that the *Levin* action should move forward without waiting for
4  the appointment of lead plaintiff.
5      6.    <u>Evidence Preservation</u>.
6      Plaintiffs have taken the following steps to preserve evidence relevant to the case: the
7  *Levin* and *Labin* plaintiffs have been instructed to preserve all documents, including electronic
8  documents relevant to this case and have assured counsel that they would do so. Because lead
9  counsel has not been appointed, and the discovery stay in all cases but *Levin* the parties have not
10 had a Rule 26(f) conference or met to confer and discuss other preservation issues. Plaintiffs
11 believe this should occur as soon as lead counsel is appointed. In *Levin*, the defendants have not
12 yet appeared.
13     Defendants have taken all appropriate steps to preserve evidence relevant to the case,
14 including stopping any document destruction programs, copying and preserving data stored on
15 networks, preserving all emails, voicemails (where possible), and other electronically stored
16 information, and imaging the hard drives associated with relevant Schwab employees.
17     7.    <u>Disclosures</u>.
18     No initial disclosures have been made by any party pursuant to Rule 26. Defendants
19 believe all the consolidated actions are subject to the automatic stay of discovery imposed by 15
20 U.S.C. § 77z-1(b)(1). The plaintiffs in the *Levin* action believe it is not subject to the automatic
21 discovery stay.
22     8.    <u>Discovery</u>.
23     No discovery requests have been made by any party. Defendants believe the consolidated
24 actions are subject to the automatic stay of discovery imposed by 15 U.S.C. § 77z-1(b)(1).
25 Plaintiffs believe the *Levin* action is not subject to the automatic discovery stay.
26     The parties have not prepared a proposed discovery plan at this time. Because lead
27 counsel has not been appointed, and the automatic discovery stay in all cases but *Levin* the parties
28 have not had a Rule 26(f) conference or meet to confer and discuss other discovery issues.

JOINT CASE MANAGEMENT CONFERENCE STATEMENT
MASTER FILE NO. C 08-01510 WHA
sf-2531054

8

1  Plaintiffs believe this should occur as soon as lead counsel is appointed. In *Levin*, the defendants
2  have not yet appeared.

3        9.    Class Actions.

4       This is a class action. Plaintiffs propose making a motion for class certification after
5  discovery necessary to address class issues is complete.

6       10.   Related Cases.

7       The Court has consolidated all of the related actions filed in or transferred to this District.

8       11.   Relief.

9          a.   Plaintiffs' Statement.

10  Plaintiffs seek compensatory damages, costs and expenses, attorneys' fees, expert fees,
11  rescissionary damages, and equitable relief to the extent deemed appropriate by the Court. The
12  measure of damages differ by claim as set out in the plaintiffs' response to this Court's order. In
13  those same filings plaintiffs individual damages have been set forth under the various theories.
14  The *Levin* plaintiffs believe damages are, at a minimum, the difference between the amount paid
15  and the amount received for the YieldPlus shares. Dividends received are not deducted from this
16  amount and reinvested dividends are treated as an amount paid. Under the common law state tort
17  claims, damages include punitive damages, attorneys fees and other equitable relief. Such
18  equitable relief would include declaratory and injunctive relief. Under section 17200, the
19  measure of damages is restitution and injunctive relief.

20          b.   Defendants' Statement.

21  Defendants contend that, if liability were to be established, the measure of damages would
22  be as set forth in section 11(e) and section 12(a)(2). In general, investors who sold their shares
23  prior to the filing of this action would be entitled to recover the difference between their initial
24  purchase price and the value of their shares at the time of sale, less income earned during the
25  investment and less any diminution of value caused by factors unrelated to the allegedly
26  misleading statements.

27
28

JOINT CASE MANAGEMENT CONFERENCE STATEMENT
MASTER FILE NO. C 08-01510 WHA
sf-2531054

9

12. <u>Settlement and ADR</u>.

The parties believe that the prospects for settlement at this juncture of the litigation are low and that it is premature to address ADR. There have been no ADR efforts to date.

13. <u>Consent to Magistrate Judge For All Purposes</u>.

The parties do not consent to have a magistrate conduct all further proceedings in the action.

14. <u>Other References</u>.

The parties do not believe this case is suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

15. <u>Narrowing of Issues</u>.

Defendants believe the issues in the case will be narrowed (or eliminated) by a motion to dismiss the complaint. The parties, at this time, do not have suggestions for expediting the presentation of evidence at trial. The parties do not currently request bifurcation of any issues, claims, or defenses.

16. <u>Expedited Schedule</u>.

The parties do not believe this case can be handled on an expedited basis.

17. <u>Scheduling</u>.

The parties have not agreed to dates for designation of experts, discovery cutoff, hearing of dispositive motions, pretrial conference, or trial. The parties believe these dates should be fixed after the Court has ruled on a motion to dismiss the complaint in this action.

18. <u>Trial</u>.

Plaintiffs have demanded a jury trial on all claims. The parties anticipate that a trial of this action would take approximately three weeks.

19. <u>Disclosure of Non-Party Interested Entities or Persons</u>.

Plaintiffs have not filed the certification required by Civil Local Rule 3-16 as they do not believe it is intended to apply to class plaintiffs. The individual plaintiffs who seek lead in the Schwab Yieldplus Group are not aware of any persons, firms, partnerships, corporations or other entities related to them or in their control that should be disclosed because it has either a financial

1  interest in the subject matter in controversy or in a party to the proceedings or any other kind of
2  interest that could be substantially affected by the outcome of the proceeding and if required will
3  file such a certification as to each of them individually.
4      Defendants have filed the certification required by Civil Local Rule 3-16.  Defendants are
5  not aware of any persons, firms, partnerships, corporations or other entities that should be
6  disclosed because it has either a financial interest in the subject matter in controversy or in a party
7  to the proceedings or any other kind of interest that could be substantially affected by the
8  outcome of the proceeding.

9  Dated:  June 25, 2008

REED R. KATHREIN (139304)
PETER K. BORKON (212596)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CVA  94710
Telephone:  (510) 725-3000
Facsimile:  (510) 725-3001
reed@hbsslaw.com
peterb@hbsslaw.com


By:    /s/ Reed R. Kathrein

Attorneys for Plaintiffs
Mike Labins, Robert Levin
and Karl Kyzer

| | |
|---|---|
| Dated: June 25, 2008 | ROBERT MILLS (State Bar No. 062154)<br>THE MILLS LAW FIRM<br>145 Marina Boulevard<br>San Rafael, CA 94901<br>Telephone: (415) 455-1326<br>Facsimile: (415) 455-1327<br>rwm@millslawfirm.com |
| | JEFFREY A. BERENS (*pro hac vice* to be submitted)<br>DYER & BERENS LLP<br>682 Grant Street<br>Denver, CO 80203-3507<br>Telephone: (303) 861-1764<br>Facsimile: (303) 395-0393<br>jeff@dyerberens.com |

By: _____/s/ Robert Mills_____

    Attorneys for Plaintiff
    Gerry Hageman

| | | |
|---|---|---|
| 1 | Dated: June 25, 2008 | MARC M. SELTZER (54534) |
| 2 | | SUSMAN GODFREY LLP |
| | | 1901 Avenue of the Stars, Suite 950 |
| | | Los Angeles, CA  90067-6029 |
| 3 | | Telephone:  (310) 789-3100 |
| | | Facsimile:  (310) 789-3150 |
| 4 | | mseltzer@susmangodfrey.com. |

HARRY SUSMAN
SUSMAN GODFREY LLP
1000 Louisiana Street, Suite 5100
Houston, TX  77002-5096
Telephone:  (713) 651-9366
Facsimile:  (713) 654-6666
hsusman@susmangodfrey.com

ADAM P. SCHIFFER
SCHIFFER ODOM HICKS PLLC
3200 Southwest Freeway, Suite 2390
Houston, TX  77027
Telephone:  (713) 357-5150
Facsimile:  (713) 357-5160
aschiffer@sohlawfirm.com


By:        /s/ Marc M. Seltzer

   Attorneys for Plaintiff
   W. Merrill Glasgow

JOINT CASE MANAGEMENT CONFERENCE STATEMENT
MASTER FILE NO. C 08-01510 WHA
sf-2531054

13

| | | |
|---|---|---|
| 1 | Dated: June 25, 2008 | VAHN ALEXANDER (167373)<br>FARUQI & FARUQI, LLP<br>1901 Avenue of the Stars, Second Floor<br>Los Angeles, CA 90067<br>Telephone: (310) 461-1426<br>Facsimile: (310) 461-1427<br>valexander@faruqilaw.com |

NADEEM FARUQI
ANTONIO VOZZOLO
FARUQI & FARUQI, LLP
369 Lexington Avenue, Tenth Floor
New York, NY 10017
Telephone: (212) 983-9330
Facsimile: (212) 983-9331
nfaruqi@faruqilaw.com
avozzolo@faruqilaw.com

By:  /s/ Vahn Alexander

Attorneys for Plaintiffs
Nils Flanzraich and Jill Flanzraich

Dated: June 25, 2008    BLAIR A. NICHOLAS (Bar No. 178428)
BERNSTEIN LITOWITZ BERGER &
 GROSSMANN LLP
12481 High Bluff Drive, Suite 300
San Diego, CA 92130
Telephone: (858) 793-0070
Facsimile: (858) 793-0323

By:  /s/ Blair A. Nicholas

Attorneys for Plaintiff
Vinayak R. Pai Defined Benefit
Pension Plan

Dated: June 25, 2008    DARRYL P. RAINS
STUART C. PLUNKETT
KIMBERLY L. TAYLOR
MORRISON & FOERSTER LLP

By:  /s/ Darryl P. Rains
         Darryl P. Rains

Attorneys for Defendants

JOINT CASE MANAGEMENT CONFERENCE STATEMENT
MASTER FILE NO. C 08-01510 WHA
sf-2531054

14

**ATTESTATION OF E-FILED SIGNATURES**

I, Darryl P. Rains, am the ECF User whose Id and password are being used to file this Joint Case Management Conference Statement. In compliance with General Order 45, X.B., I hereby attest that Reed R. Kathrein, Robert Mills, Marc M. Seltzer, Vahn Alexander and Blair A. Nicholas have concurred in this filing.

Dated: June 25, 2008        MORRISON & FOERSTER LLP

By:        /s/ Darryl P. Rains
                Darryl P. Rains

JOINT CASE MANAGEMENT CONFERENCE STATEMENT
MASTER FILE NO. C 08-01510 WHA
sf-2531054

15