IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE CHARLES SCHWAB SECURITIES LITIGATION. _____ / This Document Relates to: All Actions. _____ / | No. C 08-01510 WHA **ORDER APPOINTING LEAD PLAINTIFF** |

**INTRODUCTION**

Pursuant to the Private Securities Litigation Reform Act, this order appoints the following members of the YieldPlus Investor Group as the lead plaintiff for the above-named action: Kevin O'Donnell, James Coffin, John Hill, David and Gretchen Mikelonis, and Robert Dickson. Because N. Richard Kimmel, another proposed group member, is unable to travel for litigation purposes, he is not appointed as a member of the group. Accordingly, this order **DENIES** the motions of other parties for appointment as lead plaintiff. This order also sets forth the procedure to be used for the selection and approval of class counsel.

**STATEMENT**

This is a putative class action that arises from allegations of false and misleading statements in violation of federal securities laws. Plaintiffs are individuals who purchased shares of Schwab YieldPlus Funds Investor Shares and/or Schwab YieldPlus Funds Select Shares from March 2005 through March 2008. Defendants the Charles Schwab Corporation, Charles Schwab & Co. Inc., Charles Schwab Investment Management, Inc., and individuals

1  Charles Schwab, Evelyn Dilsaver, Randall W. Merk, George Pereira, Gregory Hand, Donald F.
2  Doward, Mariann Byerwalter, William A. Hasler, Robert G. Holmes, Gerald B. Smith, Donald
3  R. Stephens, Michael W. Wilsey, and Jeff Lyons (collectively "Charles Schwab") are the funds'
4  underwriter, investment advisor, officers, and directors.[1]

Plaintiffs allege that defendants violated the disclosure requirements of federal securities laws. Specifically, the registration statements and prospectuses from March 2005 through March 2008 allegedly contained material misstatements or omissions relating to, *inter alia*, the diversification of the funds and the extent to which investments were assigned to sub-prime mortgage backed and related securities. Because Charles Schwab failed to tell investors that they deviated from investment guidelines, purchasers of these shares were exposed to high-risk, mortgage-backed, not well-diversified, illiquid investments. Investors consequently incurred financial loss.

On March 18, 2008, investor Mike Labins was the first to file a lawsuit against Charles Schwab in any district. That same day, he published a notice over the national wire service, *PR Newswire*, informing investors that he had just filed a class action lawsuit against Charles Schwab and that investors had sixty days to seek appointment as lead plaintiff. The notice also described the general allegations against defendants.

Several lead-plaintiff candidates filed motions for appointment: the Schwartz Group, the YieldPlus Investor Group, the Peate Group, W. Merrill Glasgow, Karen Cunningham, Mark Kale, Monte Lewis, and Nils and Jill Flanzraich. All but the Schwartz Group and YieldPlus Investor Group withdrew or did not oppose the motions by other lead-plaintiff candidates. The Court then requested that each lead-plaintiff candidate individually file a questionnaire about his or her qualifications, experience in managing litigation, transactions in the shares at issue, and any potential conflicts related to the instant securities case. Both remaining candidates submitted answers to the questionnaire. A hearing on the appointment of lead plaintiff was held on July 2, 2008. Candidate representatives and their counsel all appeared in court. Three members of the YieldPlus Group (James Coffin, John Hill, and Robert Dixon) and two

---

[1] Not all candidates for lead plaintiff named all of the same individual defendants.

2

members of the Schwartz Group (Mr. and Mrs. Schwartz) were present. Candidates were questioned on their qualifications.

The six members of the original YieldPlus Group were: married couple David and Gretchen Mikelonis ($227,277.27 loss), Kevin O'Donnell ($312,865.77 loss), James Coffin ($309,548.14 loss), John Hill ($240,914.42 loss), Robert Dickson ($137,496.82 loss), and N. Richard Kimmell ($210,156.87 loss). While the Mikelonis' do not have the largest financial interests at stake, Mr. Mikelonis, a retired attorney, has had substantial litigation experience. As vice president and general attorney (and then senior vice president and general counsel) of Consumers Energy Company, he was responsible for all litigation involving the company. This responsibility included closely supervising and implementing legal strategy. Since his retirement, Mr. Mikelonis has served as secretary for a group of employees/investors who objected to certain aspects of an ERISA settlement with CMS Energy Corporation, including an objection to fees and expenses. He and another retired officer of Consumers Energy Company also objected to a class action settlement and participated in a related fairness hearing in a shareholder class action suit with CMS Energy Corporation.

Mr. O'Donnell is a retired attorney who practiced in the fields of personal injury and product liability. Mr. Coffin is an attorney experienced in practicing real estate law in Redlands, California. He has also been involved in mediations at JAMS. Mr. Dickson is the managing director of a financial consulting service and the CFO of a medical-device company. He has had extensive experience as a financial officer who worked closely with legal counsel on corporate governance matters. Mr. Hill is a retired lead engineer for Lockhead Missile Systems, where he resolved problems relating to the manufacture, design, and purchase of new missiles.

Members of the YieldPlus Group have met and conferred and adopted a detailed governance structure. They will have a three-person management committee, of which Mr. Mikelonis will be the chair, Mr. Coffin the vice chair, and Mr. O'Donnell the secretary. They have already discussed how they will make major case-determinative decisions (*e.g.*, settlement, claims, dismissal) and deal with matters involving counsel and counsel's fees and expenses.

3

The Schwartz Group, on the other hand, is a family group, consisting of husband and wife trustees and related beneficiaries. They allege a total loss of $231,642.10. Group members are: Richard Schwartz, trustee of two family trusts; Casa Marin, a corporation wholly owned by Mr. Schwartz; and Sheri Bell, Mr. Schwartz's wife, as an individual on her own behalf and on behalf of her brother C. Scott Bell, and as a trustee of another family company. Mr. Schwartz is engaged in a family furniture business.

All candidates are investors who purchased Charles Schwab shares during the class period. The YieldPlus Group alleges a total loss of $1.4 million as a result of the transactions in Charles Schwab securities. The Schwartz Group claims that it incurred losses totaling $231,642.10. Although the method of loss valuation has not been agreed upon, nobody disputes that Mr. O'Donnell, a member of the YieldPlus Group, has the largest individual loss.

**ANALYSIS**

Under the PSLRA, the Court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be the most capable of adequately representing the interests of the class members in accordance with this subparagraph." 15 U.S.C. 78u-4(a)(3)(B)(i). The PSLRA creates a rebuttable presumption that the most adequate plaintiff should be the plaintiff who: (1) has brought the motion for appointment of lead counsel in response to the publication of notice; (2) has the "largest financial interest" in the relief sought by the class; and (3) otherwise satisfies the requirements of FRCP 23. 15 U.S.C. 78u-4(a)(3)(b)(I)(aa)–(cc). The above presumption may be rebutted only upon proof that the presumptive lead plaintiff (1) will not fairly and adequately protect the interests of the class or (2) is subject to "unique defenses" that render such plaintiff incapable of adequately representing the class. 15 U.S.C. 78u-4(a)(3)(B)(iii)(II)(aa)–(bb).

The PSLRA sets up a three-step inquiry for appointing a lead plaintiff. First, a plaintiff files the action and posts notice, allowing other lead-plaintiff candidates to file motions. Next, the district court considers which of those plaintiffs has the largest financial interest in the action, and whether that plaintiff meets FRCP 23's requirements. Finally, other candidates have

4

the opportunity to rebut the presumption that the putative lead plaintiff can adequately represent the class. *In re Cavanaugh*, 306 F.3d 726, 729–730 (9th Cir. 2002).

### 1. LARGEST FINANCIAL INTEREST.

In the Ninth Circuit, the test for which plaintiff has the largest financial interest is strictly applied. *Id.* at 729. The PSLRA does not indicate a specific method for calculating which plaintiff has the "largest financial interest." *See* 15 U.S.C. 78u-4(a)(3)(B)(iii)(I)(bb). In this district, two judges have equated "largest financial interest" with the largest amount of potential recovery. *See In Re Critical Path, Inc. Sec. Litig.*, 156 F.Supp.2d 1102, 1107–08 (N.D. Cal. 2001) (Orrick, J.); *Weisz v. Calpine Corp.*, 2002 WL 32818827 (N.D. Cal. 2002) (Armstrong, J.). Here, the aggregate loss of the members of the YieldPlus Group is the greatest. Even without adding up the group losses, it is undisputed that some of its individual members, such as Mr. O'Donnell, have the largest financial interest ($312,865.77), which exceeds the *combined* losses of the Schwartz Group.

### 2. REQUIREMENTS OF TYPICALITY AND ADEQUACY UNDER FRCP 23.

The district court must then inquire whether the putative lead plaintiff satisfies the requirements of FRCP 23(a). *In re Cavanaugh*, 306 F.3d at 730. The inquiry focuses on the "typicality" and "adequacy" requirements, as the other requirements in FRCP 23 of numerosity and commonality would preclude class certification by themselves. *Id.* at n5. "Once [the court] determines which plaintiff has the biggest stake, the court must appoint that plaintiff as lead, unless it finds that he does not satisfy the typicality or adequacy requirements. . ." *Id.* at 732.

The "typicality" requirement is satisfied when the named plaintiffs have (1) suffered the same injuries as class members; (2) as a result of the same course of conduct; and (3) their claims are based on the same legal issues. *Armour v. Network Assoc., Inc.*, 171 F. Supp.2d 1044, 1050 (N.D. Cal. 2001) (Jenkins, J.). In the instant action, members of the YieldPlus Group suffered the same injuries as class members, namely that they suffered financial losses relating to alleged misrepresentations in defendants' registration statements and prospectuses. Group members' injuries arose from the same course of conduct, the alleged false financial reporting. Finally, the claims are based on the same legal issues.

The "adequacy" requirement is satisfied when the proposed lead plaintiff does not have interests antagonistic to the proposed class. *In re Emulex Corp. Secur. Litig.*, 210 F.R.D. 717, 720 (C.D. Cal. 2002) (Taylor, J.). YieldPlus Group members have shown the same interest as the rest of the class. They wish to recover against Charles Schwab for the alleged damages suffered because of the improper disclosures. Three members of the group were present at the hearing. Everybody's answers to the lead-plaintiff questionnaire were satisfactory. Each member is well-qualified to manage litigation of this type and has specialized experience that will improve representation of the class. They have agreed to perform due diligence in selecting class counsel. Furthermore, they have a decision-making apparatus, elected officers, met and conferred, and has a ready means of communication. This order does, however, modify the composition of the lead plaintiff group; because N. Richard Kimmel is unable to travel, he will not be included.

### 3. ATTEMPTS TO REBUT PRESUMPTION.

Other plaintiffs may rebut the presumption that the putative lead plaintiff has satisfied the requirements of typicality and adequacy. *Cavanaugh*, 306 F.3d at 730. The Schwartz Group first argues that the YieldPlus Group is a cobbled-together hodgepodge of unrelated investors.

After passage of the PSLRA, some plaintiffs counsel tried to amass large aggregations of groups, each group then put forth as a lead plaintiff candidate with the greatest combined loss. The undersigned refused to recognize such aggregation on the ground that such an amorphous, incoherent group would have no decisionmaking apparatus and would be at the complete mercy of the lawyers, the very thing the PSLRA sought to stop. *In re Network Assocs. Inc.*, 76 F. Supp. 2d 1017 (N.D. Cal. 1999) (Alsup, J.).

"Courts must . . . inquire whether a movant group is too large to represent the class in an adequate manner. At some point, a group becomes too large for its members to operate effectively as a single unit. When that happens, the PSLRA's goal of having an engaged lead plaintiff actively supervise the conduct of the litigation and the actions of class counsel will be impossible to achieve, and the court should conclude that such a movant does not satisfy the

6

adequacy requirement." *In re Gemstar-TV Guide Intern., Inc. Securities Litigation*, 209 F.R.D. 447, 450 (C.D. Cal. 2002) (Manella, J.).

*In re Gemstar* dealt with a group comprised of three institutional and four individual unrelated investors that had "few apparent connections beyond their common desire to be appointed lead plaintiffs in this action." *Ibid*. The district court found that group members provided little detail as to the procedures needed to prosecute the action, how members and attorney's would conduct regular meetings (given the group's size and the fact that relevant players were scattered throughout the world), how the class would be able to obtain the largest possible recovery when all seven proposed lead plaintiffs were sure to seek "costs and expenses" at the end of proceedings, or any of the "procedures and rules that will govern [their] decision making process." *Id.* at 451.

The same concerns in *In re Gemstar* are not present in the instant action. With the exclusion of Mr. Kimmell, the YieldPlus Group only has six individual group members. Counsel for and individual members of the YieldPlus Group have shown that they create a cohesive, coherent, and manageable group with a decisionmaking apparatus. Mr. Mikelonis, for example, has substantial experience in managing counsel and objecting to the terms of two class action settlements. The other members are financially savvy and have suffered extensive losses. Moreover, this order does not see how the super-majority decisionmaking mechanism will be problematic.

The Schwartz Group further argues that the YieldPlus Group members have already settled on Hagens Berman Sobol Shapiro LLP as its counsel. It will therefore shirk its duty to exercise due diligence when selecting class counsel. This order disagrees. It is clear that YieldPlus Group members have the right to terminate the relationship at any time. At the hearing, group members also represented to the Court that they will exercise due diligence and interview other firms. Accordingly, the members of the YieldPlus Group are the proper lead plaintiff.

7

**PROCEDURE FOR SELECTING AND APPROVING CLASS COUNSEL**

Under the PSLRA, "[t]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. 78u-4(a)(3)(B)(v). Selection and approval of class counsel are important responsibilities for the lead plaintiff and the court. The selection and approval require an assessment of the strengths, weaknesses and experience of counsel as well as the financial burden – in terms of fees and costs — on the class. *Wenderhold v. Cylink Corp.*, 191 F.R.D. 600, 602–03 (N.D. Cal. 2000) (Walker, J.).

Any important decision made by a fiduciary should be preceded by due diligence. A lead plaintiff is a fiduciary for the investor class. No decision by the lead plaintiff is more important than the selection of class counsel. Consequently, the lead plaintiff should precede his or her choice with due diligence. The extent of such due diligence is a matter of judgment and reasonableness based on the facts and circumstances. Lead plaintiff must also expressly consider amongst themselves what difficulties and conflicts might arise because of another action represented by Hagens Berman Sobol Shapiro LLP, *Levin v. The Charles Schwab Corp., et al.*, C 08-02487 WHA.

The lead plaintiff should immediately proceed to perform their due diligence in the selection of class counsel, and to interview appropriate candidates, and through counsel, move for the appointment and approval of their selected counsel no later than **AUGUST 14, 2008**. The motion should be accompanied by declarations from the lead plaintiff explaining the due diligence undertaken by each with respect to the selection of class counsel. The declarations should also explain why the counsel selected was favored over other potential candidates. The declarations should be filed under seal and not served on defendants. The motion for approval of lead plaintiff's choice of counsel, however, should be served on defense counsel. No hearing will be held on the motion unless the Court determines that it would be beneficial.

Once class counsel is approved, the first order of business will be to file a consolidated complaint. This will be done by **SEPTEMBER 25, 2008**. Defendant may then file a motion to

1  dismiss (or answer) by **OCTOBER 30, 2008,** any such motion to be heard on the normal 35-day
2  track. Other deadlines for the case management conference and alternative dispute resolution
3  are hereby **VACATED**. If lead plaintiff eventually selects counsel unfamiliar with the facts and
4  circumstances of this case, the Court will consider giving more time for counsel to prepare.

5      This appointment is conditioned on each member of the YieldPlus Group filing a
6  certification in writing, **WITHIN SEVEN CALENDAR DAYS** that he or she has read this order and is
7  willing and able to meet the schedule and its fiduciary obligations.

8      Finally, this order thanks the Schwartz Group for its diligence in pursuing these claims
9  and moving for lead plaintiff.

11  **IT IS SO ORDERED.**

12  Dated: July 3, 2008.

                                          WILLIAM ALSUP
                                          UNITED STATES DISTRICT JUDGE