1  Reed R. Kathrein (139304)
   Peter E. Borkon (212596)
2  HAGENS BERMAN SOBOL SHAPIRO LLP
   715 Hearst Avenue, Suite 202
3  Berkeley, CA 94710
   Telephone:  (510) 725-3000
4  Facsimile:  (510) 725-3001
   reed@hbsslaw.com
5  peterb@hbsslaw.com

6  Steve W. Berman (*Pro Hac Vice*)
   Sean R. Matt (*Pro Hac Vice*)
7  Erin K. Flory (*Pro Hac Vice*)
   HAGENS BERMAN SOBOL SHAPIRO LLP
8  1301 Fifth Avenue, Suite 2900
   Seattle, Washington  98101
9  Telephone: (206) 623-7292
   Facsimile: (206) 623-0594
10 steve@hbsslaw.com
   sean@hbsslaw.com
11 erin@hbsslaw.com

12 *Attorneys for Lead Plaintiff YieldPlus Investor Group*

13

14              UNITED STATES DISTRICT COURT

15            NORTHERN DISTRICT OF CALIFORNIA

16              SAN FRANCISCO DIVISION

17 | IN RE SCHWAB CORP. SECURITIES | No. 08-cv-01510 WHA |
   | LITIGATION | |
18 | | |
19 | THIS DOCUMENT RELATES TO: | MEMORANDUM IN OPPOSITION TO |
   | | DEFENDANT THE INDEPENDENT |
20 | All Actions | TRUSTEES' MOTION TO DISMISS |
   | | FIRST CONSOLIDATED AMENDED |
21 | | COMPLAINT |
22 | | Date:        January 8, 2009 |
   | | Time:        8:00 a.m. |
23 | | Judge:       Hon. William H. Alsup |
   | | Courtroom:   9, 19th Floor |
24

25

26

27

28

1

2

## STATEMENT OF ISSUES

3        1.       Whether the Trustees are "sellers" for the Fund's shares for purposes of Section

4    12(a)(2) by virtue of signing the Fund's registration statements and actively soliciting the sale of

5    the Fund's shares to serve their own financial interests as Trustees of the issuer.

6        2.       Whether the Trustees are "control persons" for purposes of Section 15 liability

7    given their power and control over the issuer and the Fund.

8        3.       Whether the Court will grant Plaintiffs leave to amend their Complaint to allege a

9    breach of contract claim in lieu of intereference with contract.

10       4.       Whether the Trustees committed an "unlawful" act prohibited by Cal. Bus. & Prof.

11   Code § 17200.

12       5.       Whether the Trustees breached their fiduciary duty to the post-breach class.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**PAGE**

STATEMENT OF ISSUES ................................................................................................ i

I.     INTRODUCTION ................................................................................................ 1

II.    FACTUAL ALLEGATIONS ............................................................................... 3

    A.    The Defendants.................................................................................... 3

        1.    The Schwab corporate Defendants. ....................................... 3

        2.    The individual Defendants. ..................................................... 4

            a.    The "Fund Officer Defendants." ................................. 4

            b.    The remaining Trustees. ............................................... 6

    B.    Plaintiffs' Causes of Action............................................................... 6

    C.    The Claims of the Securities Class. .................................................... 7

        1.    The pivotal representations...................................................... 7

        2.    The representations were untrue and misleading. ................... 8

    D.    The Claims of the State Law Class..................................................... 11

        1.    The unapproved change in investment policy claim. ............. 11

        2.    The insider trading claim.......................................................... 12

    E.    Plaintiffs and the Classes Suffer Staggering Losses.......................... 12

III.    LEGAL ARGUMENT ......................................................................................... 13

    A.    Applicable Legal Standard ................................................................. 13

    B.    The Complaint Adequately Alleges that the Trustees are "Sellers" for Purposes of Section 12(a)(2) Liability. .................................. 15

    C.    The Complaint Adequately Alleges that the Trustees are "Control Persons" for Purposes of Section 15 Liability. ......................................... 19

    D.    Counts IV and VI Will be Amended to Allege Breach of Contract Against the Trustees............................................................ 22

    E.    Counts V and VII Adequately Alleges that the Trustees Committed an "Unlawful" Act for Purposes of Section 17200 Liability. ..................................... 23

    F.    Count VIII Adequately Alleges that the Trustees Breached their Fiduciary Duty to the Post-Breach Class.................................................. 24

1

IV.    CONCLUSION ................................................................................................... 25

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

## CASES

**PAGE**

*In re Alstom SA Secs. Litig.*,
    406 F. Supp. 2d 433 (S.D.N.Y. 2005) ..................................................................20, 21

*Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*,
    7 Cal. 4th 503 (1994)........................................................................................2, 23

*Arthur Children's Trust v. Keim*,
    994 F.2d 1390 (9th Cir. 1993) ..............................................................................22

*Batwin v. Occam Networks, Inc.*,
    2008 U.S. Dist. LEXIS 52365 (C.D. Cal. July 1, 2008)....................................19

*Bernheim v. Litt*,
    79 F.3d 318 (2d Cir. 1996) ...................................................................................13

*Certain Underwriters at Lloyd's v. Real Estate Prof'ls Ins. Co.*,
    2007 U.S. Dist. LEXIS 88241 (C.D. Cal. Nov. 26, 2007) ................................23

*Chaganti v. i2 Phone Int'l, Inc.*,
    2007 U.S. Dist. LEXIS 56033 (N.D. Cal. July 23, 2007) ................................22

*In re Chambers Dev. Sec. Litig.*,
    848 F. Supp. 602 (W.D. Pa. 1994) .......................................................................17

*In re Convergent Techs. Sec. Litig.*,
    108 F.R.D. 328 (N.D. Cal. 1985) .........................................................................21

*Cooper v. Parsky*,
    140 F.3d 433 (2d Cir. 1998) .................................................................................14

*In re Cylink Secs. Litig.*,
    178 F. Supp. 2d 1077 (N.D. Cal. 2001)..........................................................19, 22

*In re Daou Sys.*,
    411 F.3d 1006 (9th Cir. 2005) ..............................................................................14

*Degulis v. LXR Biotechnology, Inc.*,
    928 F. Supp. 1301 (S.D.N.Y. 1996) .....................................................................17

*Demaria v. Andersen*,
    153 F. Supp. 2d 300 (S.D.N.Y. 2001), *aff'd*, 318 F.3d 170 (2d Cir. 2003).......17

*Dura Pharms., v. Broudo*,
    544 U.S. 336 (2005) .............................................................................................13

*In re Elec. Data Sys. Corp. "ERISA" Litig.*,
    305 F. Supp. 2d 658 (E.D. Tex. 2004) .................................................................16

*In re Enron Corp. Sec., Derivative & ERISA Litig.*,
   258 F. Supp. 2d 576 (S.D. Tex. 2003) ................................................................................20

*In re Enron Corp. Secs., Derivative & ERISA Litig.*,
   235 F. Supp. 2d 549 (S.D. Tex. 2002) ................................................................................19

*Erickson v. Pardus*,
   ___ U.S. ___, 127 S. Ct. 2197 (2007) ................................................................................13

*G&C Auto. Body Inc. v. GEICO Gen. Ins. Co.*,
   552 F. Supp. 2d 1015 (N.D. Cal. 2008) ..............................................................................22

*Gold v. Morrice*,
   2008 U.S. Dist. LEXIS 43466 (C.D. Cal. Jan. 31, 2008) ...................................................13

*In re Harmonic, Inc. Sec. Litig.*,
   2006 U.S. Dist. LEXIS 90450 (N.D. Cal. Dec. 11, 2006) ...................................................19

*Hilton Hotels Corp. v. ITT Corp.*,
   978 F. Supp. 1342 (D. Nev. 1997) .....................................................................................25

*Howard v. Everex Sys.*,
   228 F.3d 1057 (9th Cir. 2000) .................................................................................19, 21, 22

*In re Infonet Servs. Corp. Sec. Litig.*,
   310 F. Supp. 2d 1080 (C.D. Cal. 2003) ..............................................................................18

*Kaltman v. Key Energy Servs.*,
   447 F. Supp. 2d 648 (W.D. Tex. 2006) ..............................................................................19

*Kasky v. Nike, Inc.*,
   27 Cal. 4th 939 (2002) ........................................................................................................23

*In re LDK Solar Secs. Litig.*,
   2008 U.S. Dist. LEXIS 80717 (N.D. Cal. Sept. 24, 2008) .......................................2, 19, 20

*Lapidus v. Hecht*,
   232 F.3d 679 (9th Cir. 2000) ...........................................................................................3, 25

*In re Livent, Inc. Noteholders Sec. Litig.*,
   151 F. Supp. 2d 371 (S.D.N.Y. 2001) ................................................................................20

*Marin Tug & Barge, Inc. v. Westport Petroleum, Inc.*,
   271 F.3d 825 (9th Cir. 2001) ..............................................................................................22

*In re Merix Corp. Sec. Litig.*,
   2008 U.S. App. LEXIS 9073 (9th Cir. Apr. 22, 2008) ........................................................14

*Miller v. Thane Int'l, Inc.*,
   519 F.3d 879 (9th Cir.), *cert. denied*, ___ U.S. ___, 129 S. Ct. 161 (2008) ....................15

*Moore v. Kayport Package Express, Inc.*,
   885 F.2d 531 (9th Cir. 1989) .....................................................................................1, 15, 16

*N.J. v. Sprint Corp.*,
    314 F. Supp. 2d 1119 (D. Kan. 2004) .................................................................20

*In re Nat'l Golf Props., Inc. Secs. Litig.*,
    2003 U.S. Dist. LEXIS 4321 (C.D. Cal. Mar. 18, 2003)........................................17

*In re NationsMart Corp. Sec. Litig.*,
    130 F.3d 309 (8th Cir. 1997) ..........................................................................15, 16

*Pension Comm. of the Univ. of Montreal Pension Plan v.*
    *Banc of Am. Sec., LLC*,
    446 F. Supp. 2d 163 (S.D.N.Y. 2006) ..............................................................20

*People v. McKale*,
    25 Cal. 3d 626 (1979)...................................................................................2, 23

*Pinter v. Dahl*,
    486 U.S. 622 (1988) ...........................................................................................15

*In re Portal Software, Inc. Sec. Litig.*,
    2006 U.S. Dist. LEXIS 61589 (N.D. Cal. Aug. 17, 2006) ...................................17

*In re Rent-Way Secs. Litig.*,
    209 F. Supp. 2d 493 (W.D. Pa. 2002) .................................................................21

*In re Royal Ahold N.V. Sec. & ERISA Litig.*,
    351 F. Supp. 2d 334 (D. Md. 2004).............................................................16, 17

*In re Royal Dutch/Shell Transp. Sec. Litig.*,
    380 F. Supp. 2d 509 (D.N.J. 2005).....................................................................19

*Safron Capital Corp. v. Leadis Tech., Inc.*,
    274 Fed. Appx. 540, 541 (9th Cir. 2008) ...........................................................14

*Siemers v. Wells Fargo & Co.*,
    2006 U.S. Dist. LEXIS 60858 (N.D. Cal. Aug. 14, 2006) ............................19, 21

*Siemers v. Wells Fargo & Co.*,
    2007 U.S. Dist. LEXIS 21935 (N.D. Cal. Mar. 9, 2007) ....................................16

*In re Silicon Graphics Sec. Litig.*,
    970 F. Supp. 746 (N.D. Cal. 1997)......................................................................23

*In re Sirrom Capital Corp. Secs. Litig.*,
    84 F. Supp. 2d 933 (M.D. Tenn. 1999) ...............................................................17

*In re Stratosphere Corp. Sec. Litig.*,
    1 F. Supp. 2d 1096 (D. Nev. 1998) ...............................................................18, 19

*Vess v. CIBA-Geigy Corp.*,
    317 F.3d 1097 (9th Cir. 2003) ......................................................................14, 15

*Warman v. Overland Data*,
    1998 U.S. Dist. LEXIS 2009 (S.D. Cal. Feb. 20, 1998)......................................17

*In re Westinghouse Sec. Litig.*,
    90 F.3d 696 (3d Cir. 1996) ................................................................................ 16

*Williams v. Gerber Prods. Co.*,
    523 F.3d 934 (9th Cir. 2008) ............................................................................. 13

*Woods v. Fox Broadcasting Sub., Inc.*,
    129 Cal. App. 4th 344 (Cal. Ct. App. 2005) ..................................................... 22

**STATUTES**

15 U.S.C. § 77o ......................................................................................................... 19

17 C.F.R. § 230.405 .................................................................................................. 21

Cal. Bus. & Prof. Code § 17200 ......................................................................... 2, 23

1

## I.     INTRODUCTION

2          Plaintiffs bring this proposed class action against members of the Charles Schwab financial

3   services family that issued and managed the Schwab YieldPlus Fund (the "Fund").  ¶ 1.[1]  Plaintiffs

4   allege that Defendants violated federal and state law in registering, marketing and selling the Fund

5   as a stable, "ultrashort" bond fund that was a safe alternative to cash with "minimal" risk of a

6   fluctuating share price.  But the Fund was not an ultrashort bond fund, let alone one that was

7   "stable" and "safe," because it was comprised of assets that were not truly short term in nature and

8   were far riskier than represented.  In addition, the Fund's holdings were routinely mispriced and

9   misleadingly described, obscuring their true value.  Eventually, the true risks presented by the

10  assets held by the Fund were revealed, resulting in staggering losses to Fund investors.  ¶ 2.

11         Plaintiffs' Complaint brings claims against, among other Defendants, ten individuals named

12  for their roles as Trustees of Schwab Investments, which was the Registrant for the YieldPlus

13  Fund, the issuer of the Fund shares, and provider of trust services to the Fund.  ¶ 28.  The subject

14  motion is brought only on behalf of the seven "independent" Trustees.[2]  This memorandum collec-

15  tively refers to these seven individual defendants as the "Trustees," each of whom signed the

16  Registration Statements at issue and were responsible for oversight and corporate governance of

17  the Fund.

18         The Trustees move to dismiss all Counts brought against them, with the exception of Count

19  I.  The Trustees' motion fails.  *First*, the Trustees' attempt to disclaim "seller" liability under

20  Section 12(a)(2) rests upon an overly narrow interpretation of "seller."  The Ninth Circuit has held

21  that the definition of "seller" extends beyond those who pass title to a security to reach those who

22  solicit a purchase.  *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 535 (9th Cir. 1989).

23  The Complaint adequately alleges that the Trustees signed the Registration Statements, participated

24  in the distribution of the Fund's shares, actively solicited purchases and actively offered and sold

25

26  _____
    [1] "¶" denotes paragraphs in Plaintiffs' First Consolidated Amended Complaint, herein referred
    to as the "Complaint."

27     [2] Defendants do not contend that the other Trustees – Charles R. Schwab, Evelyn Dilsaver and
    Randall Merk – are independent, and the motion is therefore not brought on their behalf.

28

MEMO. IN OPP. TO DEF. PRICEWATERHOUSECOOPERS        - 1 -
MOTION TO DISMISS PLAINTIFFS' FIRST CONSOLIDATED
AMENDED COMPLAINT- 08-cv-01510 WHA
010036-12  272942 V1

1   the Fund.  Under Rule 8(a) notice-pleading standards, these allegations suffice to establish "seller"

2   liability.  *See infra* at 15-19.

3          *Second*, the Complaint adequately alleges that the Trustees are "control persons" for

4   purposes of Section 15 liability.  At the pleading stage, general allegations that individual

5   defendants are senior executives and signed the prospectus suffice.  *E.g., In re LDK Solar Secs.*

6   *Litig.*, 2008 U.S. Dist. LEXIS 80717, at *38 (N.D. Cal. Sept. 24, 2008).  The Complaint alleges

7   this in sufficient detail to satisfy Rule 8(a).  *E.g.*, ¶ 149 (alleging that the Trustees were culpable

8   participants in the underlying Section 11 and 12 violations "based on their having signed or

9   authorized the signing of the Registration Statement and having otherwise participated in the

10  process which allowed the offerings to be successfully completed, or having participated in the

11  offer or sale of the shares of the Fund").  *See infra* at 19-22.

12         *Third*, in response to the Trustees' call for dismissal of the intentional interference with

13  contract claim, Plaintiffs acknowledge that those who signed the Registration Statements are

14  contracting parties that cannot be liable in tort for interfering with the performance of the contract.

15  *See Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 514 (1994).  Accordingly,

16  Plaintiffs request leave to amend their Complaint to assert a breach-of-contract claim against the

17  Trustees in lieu of the interference claim.  *See infra* at 22-23.

18         *Fourth*, the Trustees move to dismiss Plaintiffs' Unfair Competition Law ("UCL") claim

19  for failure to meet Rule 9(b)'s pleading with particularity requirements, but Rule 9(b) does not

20  apply because Plaintiffs' allegations do not sound in fraud.  California's UCL prohibits unfair

21  competition, which includes "any unlawful, unfair or fraudulent business act or practice."  CAL.

22  BUS. & PROF. CODE § 17200.  The "unlawful" prong is interpreted broadly and proscribes

23  "anything that can properly be called a business practice and that at the same time is forbidden by

24  law."  *People v. McKale*, 25 Cal. 3d 626, 632 (1979).  Plaintiffs' federal law predicates (Sections

25  11 and 12) allege only that the Trustees (and other defendants) allowed materially untrue and

26  misleading misstatements and omissions in the Registration Statements and Prospectuses, not that

27  they – nor the other defendants – engaged in any ongoing fraudulent scheme.  ¶¶ 130, 140.  By

28  clearly invoking alleged violations of federal law as the basis for the Trustees' "unlawful" activity

1   prohibited by the UCL, Plaintiffs have adequately placed the Trustees on notice of the basis of their

2   UCL claims under Rule 8(a).  *See infra* at 23-24.

3          *Fifth*, the Trustees seek to dismiss the breach-of-fiduciary-duty claim against them, but the

4   portion of Count VIII based on Fund liquidations by other Schwab funds does not apply to the

5   independent Trustees.  The Trustees are, however, subject to the portion of Count VIII predicated

6   on the violation of Plaintiffs' voting rights by unilaterally revising the Fund's no-concentration

7   fundamental policy without the required shareholder vote.  The business judgment rule does not

8   apply to protect the Trustees' violation of investor voting rights, *Lapidus v. Hecht*, 232 F.3d 679,

9   683 (9th Cir. 2000), so the Count stands.  *See infra* at 24-25.

10                     **II.       FACTUAL ALLEGATIONS**

11  **A.      The Defendants.**

12         The Defendants are all affiliated with each other and conduct business under the umbrella

13  of the "Charles Schwab" name, one of the largest financial-services organizations in the world.

14  ¶ 24.  The Defendants consist of four corporate entities and thirteen individuals.

15         **1.       The Schwab corporate Defendants.**

16         The four Schwab corporate defendants, each headquartered at 101 Montgomery Street in

17  San Francisco, are as follows:

18         *The Charles Schwab Corporation* ("Schwab Corp."), the parent company of Charles

19  Schwab & Co. Inc. and Schwab Investment Management, Inc., is a holding company that engages

20  in securities brokerage, banking services and related financial services through its subsidiaries.

21  ¶ 25.

22         *Charles Schwab & Co., Inc*. ("Schwab" or "Underwriter"), the parent company of Schwab

23  Investments, was, during the relevant time period, the principal underwriter and distributor for

24  shares of the Fund and was the Trust's agent for the purpose of the continuous offering of the

25  Fund's shares.  ¶ 26.

26         *Charles Schwab Investment Management, Inc*., also known as Charles Schwab Investment

27  Management Services ("Schwab Management" or the "Investment Advisor"), is the asset

28  management arm of The Charles Schwab Corporation, with over $200 billion in assets under

1    management.  Schwab Management oversees the asset management and administration of the

2    YieldPlus Fund and receives a management fee from the Fund.  ¶ 27.

3            *Schwab Investments* ("Issuer," "Trust" or "Registrant"), a Massachusetts Business Trust, is

4    the Registrant for the YieldPlus Fund, the issuer of Fund shares, and performed trust services for

5    the Fund.  The YieldPlus Fund is a series of the Trust.  ¶ 28.

6            The following diagram depicts the relationship between the Schwab Corporate Defendants

7    and the Fund (*see* ¶ 29):[3]

8

9

10

11



12

13

14

15

16

17

18

19

20       **2.        The individual Defendants.**

21       There are thirteen Individual Defendants as follows:

22               **a.        The "Fund Officer Defendants."**

23       There are six individual Defendants who held positions with the Fund itself, in addition to

24    other roles with other Defendants.  *Charles R. Schwab* ("Charles Schwab") is the founder,

25    Chairman, Chief Executive Officer and Director of The Charles Schwab Corporation, and the

26    _____

27       [3] PricewaterhouseCoopers LLP ("PWC"), the Fund's auditor who consented to the
      incorporation by reference of their audit reports into the Registration Statements during the
      relevant time period, is also a Defendant.  ¶ 46.  PWC has filed its own motion to dismiss to which
28    Plaintiffs reply separately.  Consequently, this memorandum does not further discuss PWC.

1    Chairman and Trustee of Schwab Investments and the Fund.  As a result of his ownership of and

2    interests in The Charles Schwab Corporation, Mr. Schwab is deemed by Schwab's filings with the

3    SEC to be a controlling person of the Investment Adviser and Schwab.  Charles Schwab signed or

4    authorized the signing of the Registration Statements and served as a trustee of Schwab

5    Investments.  ¶ 30.

6        *Evelyn Dilsaver* was President and Chief Executive Officer of the Fund and signed each

7    Registration Statement effective during the relevant time period through November 15, 2006.

8    Dilsaver also signed each Shareholder Report and the separate certifications as Registrant's

9    principal executive officer and principal financial officer (containing the Sarbanes Oxley

10    certifications), and was a trustee of Schwab Investments.  ¶ 31.

11        *Randall W. Merk* was a Trustee and then President and Chief Executive Officer of the Fund

12    after Defendant Dilsaver left.  He was also President and Chief Officer of Schwab Management.

13    Merk signed each Registration Statement beginning with the November 15, 2005, Registration

14    Statement.  ¶ 32.

15        *George Pereira* has been Chief Financial Officer and Treasurer of the Fund and signed each

16    Registration Statement beginning with the November 15, 2005, Registration Statement.  Pereira

17    also signed each Shareholder Report and the separate certifications for Registrant's principal

18    executive officer and principal financial officer (containing the Sarbanes Oxley certifications).

19    ¶ 33.

20        *Kimon Daifotis* was a senior vice president, the Chief Investment Officer of fixed income of

21    Schwab Investments, and the Manager of the Fund since its inception in October 1999 until about

22    June 13, 2008, when Schwab's SEC filings noted that he had been replaced.  He was also Senior

23    Vice President and Head of Fixed Income Portfolio Management at Schwab Management and the

24    person with "overall responsibility for the management of the funds," and he participated in the

25    written or oral communications used to market the Fund.  ¶ 41.  *Matthew Hastings* joined Daifotis

26    in 2004 and was primarily responsible for the Fund's day-to-day management during the relevant

27    time period and participated in marketing the Fund.  ¶ 42.

28

MEMO. IN OPP. TO TRUSTEES' MOTION TO DISMISS        - 5 -
FIRST CONSOLIDATED AMENDED COMPLAINT
C-08-cv-01510 WHA
010036-12 272942 V1

**b.    The remaining Trustees.**

The seven remaining individual Defendants are Trustees of Schwab Investments and signed each of the Registration Statements identified in the Complaint:  Mariann Byerwalter, Donald F. Doward, William A. Hasler, Robert G. Holmes, Gerald B. Smith, Donald R. Stephens, and Michael W. Wilsey.  ¶¶ 34-40.  These are the movants.

**B.    Plaintiffs' Causes of Action.**

Plaintiffs bring their claims on behalf of two distinct Classes, the "Securities Class" and the "State Law Class."  The proposed Securities Class consists of all persons or entities who acquired shares of the Fund traceable to a false and misleading Registration Statement and Prospectus for the Fund and who were damaged thereby.  The time period for this class is three years before the filing of this lawsuit or from March 17, 2005, to March 17, 2008. ¶ 122(a).  The proposed State Law Class consists of two subclasses as follows:  (i) all persons or entities who owned shares of the Fund at any time before the Fund's investments in mortgage-backed securities exceeded 25% of its assets, and, by continuing to own those shares suffered damages as a result thereof  (referred to as the "Pre-Breach Class"); and (ii) all persons or entities who acquired shares of the Fund at any time after the Fund's investments in mortgage-backed securities began to exceed 25% of its assets, and, by continuing to own those shares suffered damages as a result thereof  (the "Post-Breach Class"). ¶ 122(b).

The Counts of the Complaint are segregated by Class as follows:

| Count | Violation Alleged | Class Covered | Defendants Targeted |
|---|---|---|---|
| I  (*see* ¶¶ 129-36) | Section 11 of the Securities Act of 1933 | Securities Class | Schwab Investments, Charles R. Schwab, Dilsaver, Merk, Pereira, Byerwalter, Doward, Hasler, Holmes, Smith, Stephens, Wilsey, and PWC |
| II  (*see* ¶¶ 137-45) | Section 12 of the Securities Act of 1933 | Securities Class | All Defendants in Count I, plus Charles Schwab & Co., Schwab Investment Management, Daifotis, and Hastings |
| III  (*see* ¶¶ 146-49) | Section 15 of the Securities Act of 1933 | Securities Class | Schwab Corp., Charles Schwab & Co., Schwab Investment Management, Schwab Investments, Dilsaver, Merk, Pereira, Byerwalter, Doward, Halser, |

| | | | Holmes, Smith, Stephens, and Wilsey |
|---|---|---|---|
| IV<br><br>(*see* ¶¶ 150-170) | Intentional Interference with Contractual Relations | State Law Pre-Breach Class | Schwab, Schwab Corp., Schwab Management, Schwab Investments, Dilsaver, Merk, Pereira, Byerwalter, Hasler, Holmes, Smith, Stephens, Wilsey, Daifotis and Hastings |
| V<br><br>(*see* ¶¶ 171-75) | Violation of the California Unfair Competition Law (Cal. Bus. & Prof. Code § 17200, *et seq.*) | State Law Pre-Breach Class | Schwab Management, Schwab Investments, Dilsaver, Merk, Pereira, Byerwalter, Hasler, Holmes, Smith, Stephens, Wilsey, Daifotis and Hastings |
| VI<br><br>(*see* ¶¶ 176-77) | Intentional Interference with Contractual Relations | State Law Post-Breach Class | Schwab Management, Schwab Investments, Dilsaver, Merk, Pereira, Byerwalter, Hasler, Holmes, Smith, Stephens, Wilsey, Daifotis and Hastings |
| VII<br><br>(*see* ¶¶ 178-83) | Violation of the California Unfair Competition Law (Cal. Bus. & Prof. Code § 17200, *et seq.*) | State Law Post-Breach Class | Schwab Management, Schwab Investments, Dilsaver, Merk, Pereira, Byerwalter, Hasler, Holmes, Smith, Stephens, Wilsey, Daifotis and Hastings |
| VIII<br><br>(*see* ¶¶ 184-87) | Breach of Fiduciary Duty | State Law Post-Breach Class | Schwab Investments, Schwab Investment Management, Charles S. Schwab, Dilsaver, Merk, Pereira and Daifotis; all defendants for second portion |

## C.    The Claims of the Securities Class.

### 1.    The pivotal representations.

Defendants annually filed nearly identical Registration Statements and Prospectuses throughout the relevant time period in connection with the continuous offerings of the Fund's shares.  ¶¶ 49-76.  Throughout the relevant time period, Defendants were also offering and selling shares of the Fund pursuant to a barrage of glossy brochures, letters and advertisements, including web pages.  These notices, circulars, advertisements, letters and communications also constitute a prospectus under the securities laws.  ¶¶ 77-78.

The foregoing written materials made a number of key representations crafted to position the Fund as a purportedly safe alternative to money market funds but with a higher yield. Those representations include the following:

- The Fund is "an ultra short term bond fund, designed to offer high current income with minimal changes in share price." ¶¶ 4, 55, 57, 59, 61, 63, 65, 67, 69.

- "The fund's investment objective is to seek high current income with minial changes in share price." ¶ 71.

- "The Fund seeks to keep the average duration of its portfolio at one year or less." ¶¶ 4, 55, 57, 59, 61, 63, 65, 67, 69.

- The Fund's performance was benchmarked to the Lehman Brothers short 9-12 month U.S. Treasury Index. ¶¶ 4, 55, 57, 59, 61, 63, 65, 67, 69.

- The Fund is managed to "help maintain a high degree of share price stability and preserve investors' capital." ¶¶ 4, 55, 57, 59, 61, 63, 65, 67, 69.

- "Looking for higher yields on your long-term cash with minimal exposure to interest-rate risk? The Schwab YieldPlus Fund® could be a smart alternative." ¶¶ 4, 78(a), (e).

- "CDs and ultrashort bond funds such as YieldPlus funds can be used as part of your portfolio cash allocation…." ¶¶ 4, 78(j).

- "Schwab YieldPlus ultrashort bond fund offers good returns with low principal risk." ¶¶ 4, 78(j).

Defendants designed these core representations in order to portray the Fund as a "smart solution[] for diversification and stability of capital" and a "smart alternative for your cash." ¶¶ 5, 78(d), (e) and (f).

### 2.     The representations were untrue and misleading.

The foregoing representations were untrue and misleading for the following reasons.

*Misrepresentations and Omissions Relating to Duration*:

The Fund had elements of credit and liquidity risk not consistent for a fund represented to be an "ultrashort bond fund." Given the asset composition of the Fund, and its resulting exposure to interest rate risk, credit risk and liquidity risk, it was not a "short term bond fund designed to offer high current income with minimal changes in share price." Schwab repeatedly represented that "the Fund seeks to keep the average duration of its portfolio at one year or less." This representation regarding duration was critical to the ability of the Fund to maintain a level of risk that would in fact provide "minimal exposure to interest rate risk." Duration is the measure of a

security's price sensitivity to changes in interest rates; the lower the duration, the lower this risk.  *A representation that duration is one year reflects the risk of a 1-year Treasury*.  The actual duration of the securities held by the Fund, as calculated for Plaintiffs by a sophisticated industry expert using only the holdings reports Schwab publicly issued, exceeded two years, a fact that indicates that the risk associated with the Fund was much greater than represented:

|  | 5/30/2007 | 8/31/2007 | 11/30/2007 | 2/29/2008 | 5/31/2008 |
|---|---|---|---|---|---|
| % Net Asset Holdings Coverage | 50.92% | 56.16% | 62.55% | 61.83% | 80.56% |
| Estimated Duration | 2.35 | 1.95 | 2.25 | 1.98 | 2.02 |
| Total net asset (x1000) | 13,277,983 | 10,696,509 | 8,026,701 | 4,891,733 | 679,459 |

The average duration was probably even longer than indicated in the table above because data on illiquid securities was not publically available, and these securities typically have longer durations. ¶¶ 5, 86(a)-(b).[4]

*Misrepresentations and Omissions Relating to the Use of a Misleading Benchmark*:

Defendants compared the Fund to the wrong comparative index in an effort to attract investment:  the Lehman Brothers U.S. Short Treasury:  9-12 months.  This comparison sought to assure investors that the Fund had a comparable profile equivalent to a 9-12 month Treasury.  But the Fund's performance was not comparable to the Lehman Brothers short 9-12 U.S. Month Treasury Index because the average duration of Fund assets exceeded two years and its holdings had far greater credit and liquidity risk due to a heavy concentration in mortgage-backed securities. Further evidencing the falsity of the comparison to the Lehman short term fund index is the fact that, of the dozens of funds considered "ultra short," the Fund's decline is dramatically different than the reaction of other ultra short funds to changes in the market.  ¶¶ 6, 86(g), 120.

*Misrepresentations and Omissions Relating to Maturity Dates for Listed Securities*:

Schwab misrepresented maturity dates for securities listed in the holding reports.  Instead of providing the true maturity date, Schwab represented that the coupon payment date was the maturity date.  This is misleading because (i) it suggested that the investments are short term, (ii) it

---

[4] Once all of the details relating to the illiquid securities held by the Fund are revealed in discovery and included in this analysis, the actual average duration of the Fund is likely to be far greater.  ¶ 6.

1    served to mask the fact that portfolio duration was longer than represented, and (iii) investors could

2    not determine the true maturity dates from the report.  Plaintiffs' expert sampled some of the assets

3    publicly reported in the Fund's holding reports and compared the stated maturity to the true

4    maturity, revealing the misrepresentations.  ¶¶ 6, 86(c).

5             *Misrepresentations and Omissions Relating to Pricing and Other Information*:

6             Schwab falsified or obscured the true nature of the securities in the Fund's portfolio by

7    using inconsistent asset descriptions in the holding reports sent to investors.  Examples from the

8    August 31, 2007, holdings report indicated that the specified securities were variable-rate, while

9    the November 30, 2007, holdings report indicated they were not.  Yet, the same exact security was

10   held in the Fund on both dates.  ¶¶ 6, 87.

11            Schwab also misrepresented the pricing of securities listed in the holding reports, thereby

12   overstating the value of securities held by the Fund and rendering the Fund's financial statements

13   false and misleading.  Plaintiffs' expert sampled some of the assets publicly reported in the Fund's

14   holding reports and compared the values stated to the true values using a well accepted valuation

15   technique.  This sophisticated analysis demonstrates that Defendants mispriced and overstated the

16   value of the Fund assets sampled and sometimes substantially so.  ¶¶ 6, 86(h).

17            *Misrepresentations and Omissions Relating to Assett Allocation*:

18            The asset allocation of the Fund was inconsistent with Schwab representations that the

19   Fund was managed for price stability.  The Fund's asset allocation was not well-diversified and

20   was overly concentrated in a single risky industry or market sector, thereby increasing risk

21   exposure on a systematic basis, as Defendants began to concentrate investments in asset-backed

22   securities and mortgage-backed securities.  By May 2007, the Fund was concentrated in a single

23   risky industry or market segment, with over 46.5 % of Fund assets invested in the mortgage

24   industry.  As recently as August 2006, it was only 28.9%.  Two years before that, it was 11.1%.

25   This change in asset concentration is inconsistent with the representations regarding share price

26   stability and safety.  The following is just an illustration of the increased and undisclosed risk to the

27   Fund by the change in asset concentration, as calculated by Plaintiffs' expert:

28

MEMO. IN OPP. TO TRUSTEES' MOTION TO DISMISS                - 10 -
FIRST CONSOLIDATED AMENDED COMPLAINT
C-08-cv-01510 WHA
010036-12  272942 V1

| | % Net Assets | | | | |
|---|---|---|---|---|---|
| | 5/31/2007 | 8/31/2007 | 11/30/2007 | 2/29/2008 | 5/31/2008 |
| CORPORATE BONDS | 45.10% | 40.30% | 34.90% | 34.00% | 24.60% |
| ASSET-BACKED OBLIGATIONS | 10.90% | 7.00% | 7.90% | 10.00% | 23.20% |
| MORTGAGE-BACKED SECURITIES | 46.50% | 45.90% | 46.20% | 50.10% | 18.40% |
| Total ABS+MBS | 57.40% | 52.90% | 54.10% | 60.10% | 41.60% |

This level of concentration in mortgage-backed securities is inconsistent with the represented core purpose of this Fund and with representations that the Fund was an "ultra short bond fund" designed to have "minimal changes in share price," that the Fund would experience only "minimal change[s] in share price," and that it was "similar to" a money market fund.  ¶¶ 6, 86(d).

**D.      The Claims of the State Law Class.**

        **1.      The unapproved change in investment policy claim.**

As required by law, Defendants stated in Registration Statements and Prospectuses that the Fund's fundamental investment policies may be changed "only by vote of a majority of a fund's outstanding shares."  *See*, *e.g.*, Nov. 15, 2004, Statement of Additional Information at 37.  ¶¶ 7, 153, 163.  Schwab identified as a fundamental policy that the Fund may not "concentrate" in a particular industry and adopted the Securities and Exchange Commission ("SEC") definition of "concentration" as investing 25% or more of Fund assets "in an industry or group of industries." The Fund also annually declared that it would not concentrate holdings in any particular industry unless a majority of the Fund's shareholders first voted to allow such concentration.  ¶¶ 8, 152-56. The Fund also stated that it could not "Invest more than 15% of its net assets in illiquid securities." ¶ 157.

For many years the Fund adhered to these provisions.  But beginning in 2006, in an attempt to boost the Fund's competitive rate of return and to attract more shareholders, the Fund made a deliberate decision to modify and exceed the fundamental policy's 25% limitation on investing in a single industry or group of industries:  the Fund invested 28.9% of holdings in mortgage-backed securities.  Although required to do so, at no time did the Fund solicit or receive shareholder approval to exceed the 25% ceiling.  ¶¶ 9, 158-63.

But then in its September 1, 2006 Statement of Additional Information, Schwab Investments amended the November 15, 2005, Prospectus to redefine "single industry" and

1    eliminate any limit on the amount of mortgage-backed securities the Fund could hold. This

2    amendment, which was made retroactive, was done without a shareholder vote. ¶¶ 10, 164.

3    From 2006, and again without shareholder approval, the Fund's investments in mortgage-

4    backed securities would grow to a high of 50.1% by the end of February 2008, as demonstrated in

5    the following chart produced by Plaintiffs' expert using a sophisticated, industry-accepted

6    valuation methodology:

| | % Net Assets | | | | |
|---|---|---|---|---|---|
| | 5/31/2007 | 8/31/2007 | 11/30/2007 | 2/29/2008 | 5/31/2008 |
| CORPORATE BONDS | 45.10% | 40.30% | 34.90% | 34.00% | 24.60% |
| ASSET-BACKED OBLIGATIONS | 10.90% | 7.00% | 7.90% | 10.00% | 23.20% |
| MORTGAGE-BACKED SECURITIES | 46.50% | 45.90% | 46.20% | 50.10% | 18.40% |
| Total ABS+MBS | 57.40% | 52.90% | 54.10% | 60.10% | 41.60% |

¶¶ 10, 165. The volatility that comes with these higher concentrations in mortgage-backed

investments resulted in the loss of billions of dollars.

13    **2.    The insider trading claim.**

14    Other Schwab funds that were managed by the same persons who managed the YieldPlus

15    Fund also invested in the Fund. Before the public investors became aware of the losses that would

16    occur in the Fund, and as Schwab Management deflected responsibility for the Fund's losses and

17    tried to reassure investors, these other Schwab funds redeemed their shares before the Fund's NAV

18    dropped. To satisfy these and other liquidations, the Fund first sold its most liquid and high quality

19    assets, leaving the remaining shareholders, who were oblivious to the Fund's troubles or the causes

20    of the trouble, with the lower quality illiquid bonds. ¶¶ 12, 97-99, 185-87.

21    **E.    Plaintiffs and the Classes Suffer Staggering Losses.**

22    By extending the average duration of the portfolio in excess of two years, and by investing

23    46% to 50% of portfolio assets in mortgage-backed securities, Defendants caused the Fund and its

24    shareholders to incur *billions* of dollars in losses. Shareholders have thus watched their supposedly

25    safe, secure and good-as-cash YieldPlus shares crater. The NAV plummeted $3.47 to as low as

26    $6.18 per share on August 1, 2008, or a loss of over 35%. The Fund performed 30.1% worse than

27    the average "ultrashort" bond fund that Defendants misrepresented the Fund to be, and the Fund

28    ranked in the lowest 99% of all funds in this category. ¶¶ 13, 102-15, 120.

1    Defendants did not disclose that the Fund's rapid decline was the result of risky investments

2    made in violation of the Fund's investment guidelines.  Instead, Defendants have blamed the

3    mortgage crisis.  *But the Fund's precipitous decline resulted from its abandoning the investment*

4    *strategy touted in the Prospectuses.*  The harm to Plaintiffs and the Classes did not result from

5    market conditions endemic to bond mutual funds in general, or to short-duration bond funds in

6    particular.  The devastation wrought by the Fund's venture into high-risk investments did not

7    impact most of the Fund's peers, which, having avoided risky mortgage-backed securities in

8    accordance with their profile as ultrashort bond funds, continued to generate positive returns even

9    as the market for mortgage-backed securities collapsed.  ¶¶ 115-20.

### III.   LEGAL ARGUMENT

### A.   Applicable Legal Standard

12    A plaintiff must plead only broad allegations of the *prima facie* elements of an alleged

13    violation, and "enough facts to state a claim to relief that is plausible on its face" and "raise a right

14    to relief above the speculative level."  *E.g., Williams v. Gerber Prods. Co*., 523 F.3d 934, 938 (9th

15    Cir. 2008) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1965, 1974, 167

16    L. Ed. 2d 929 (2007) ("*Twombly*")).  "In reviewing a 12(b)(6) motion, this Court must accept the

17    factual allegations of the complaint as true and must draw all reasonable inferences in favor of the

18    plaintiff."  *Bernheim v. Litt*, 79 F.3d 318, 321 (2d Cir. 1996).  The complaint need not set out the

19    facts in detail; what is required is a "short and plain statement of the claim showing that the pleader

20    is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Indeed, the United States Supreme Court recently

21    reiterated that "specific facts are not necessary; the statement need only 'give the defendants fair

22    notice of what the … claim is and the grounds upon which it rests.'"  *Erickson v. Pardus*, ___ U.S.

23    ___, 127 S. Ct. 2197, 2200, (2007) (per curiam) (quoting *Twombly*, 127 S. Ct. at 1964).

24    "[O]rdinary pleading rules are not meant to impose a great burden upon a plaintiff."  *Dura*

25    *Pharms., Inc. v. Broudo*, 544 U.S. 336, 347-48 (2005).  Numerous courts have commented that

26    *Twombly* does not alter the requirements of notice pleading which are designed to "give the

27    defendant fair notice."  *See, e.g., Gold v. Morrice*, 2008 U.S. Dist. LEXIS 43466, at *10 n.3 (C.D.

28    Cal. Jan. 31, 2008).  The Court's task thus remains "merely to assess the legal feasibility of the

1    complaint, not to assay the weight of the evidence which might be offered in support thereof."

2    *Cooper v. Parsky*, 140 F.3d 433, 440 (2d Cir. 1998).

3          The Trustees misleadingly attempt to raise the pleading standards for stating a cause of

4    action under Sections 12(a)(2) and 15 by citing to cases that rely on the heightened Rule 9(b)

5    standards under Section 10(b) of the Securities Exchange Act of 1934 and like averments of fraud.

6    Br. at 2-3 (citing *In re GlenFed Sec. Litig.*, 42 F.3d 1541, 1547-49 (9th Cir. 1994) (applying Rule

7    9(b) standards to Section 10(b) claim); *In re McKesson HBOC, Inc. Secs. Litig.*, 126 F. Supp. 2d

8    1248 (N.D. Cal. 2000) (applying Rule 9(b) standards to Section 10(b) claim); *Stack v. Lobo*, 903 F.

9    Supp. 1361, 1376 (N.D. Cal. 1995) (applying Rule 9(b) standards to averments of fraud permeating

10   all counts); *In re Ross Sys. Sec. Litig.*, 1994 U.S. Dist. LEXIS 21263, at *6 (N.D. Cal. July 21,

11   1994) (applying Rule 9(b) standards to Section 10(b) claim)).

12         But the Ninth Circuit has held that the heightened pleading standards of Rule 9(b) do not

13   apply to Section 12 claims unless plaintiffs "allege a unified course of fraudulent conduct and rely

14   entirely on that course of conduct as the basis of a claim." *In re Daou Sys.*, 411 F.3d 1006, 1027-

15   28 (9th Cir. 2005);[5] *see also Vess v. CIBA-Geigy Corp.*, 317 F.3d 1097, 1103-04 (9th Cir. 2003).

16   *Daou* specifically held that Section 11 claims do not trigger Rule 9(b) unless they make a

17   "'*wholesale adoption*' of [] securities fraud allegations for purposes of the Securities Act claims"

18   or "allege a unified course of fraudulent conduct and rely entirely on that course of conduct as the

19   basis of a claim." 411 F.3d at 1027-28 (emphasis added; citations omitted). Because "[f]raud is

20   not an essential element" of the §§ 11 and 12(a)(2) claims alleged here, nor do the claims alleged

21   "specifically allege[] fraud or 'facts that *necessarily* constitute fraud,' the allegations do not "sound

22   in fraud." *In re Merix Corp. Sec. Litig.*, 2008 U.S. App. LEXIS 9073, at *2-3 (9th Cir. Apr. 22,

23   2008) (citing *Vess,* 317 F.3d at 1104-05) (emphasis in original).[6] "Allegations of non-fraudulent

24

25         [5] Under those standards, *Daou* held that the § 11 count before it sounded in fraud because the
          complaint's first sentence and a "myriad" of other allegations pled a fraudulent scheme under
26        § 10(b) that the § 11 count then fully incorporated. *Id.*

27         [6] *See also Safron Capital Corp. v. Leadis Tech., Inc.*, 274 Fed. Appx. 540, 541 (9th Cir. 2008)
          ("A complaint containing allegations that 'neither mention[] the word "fraud," nor allege[] facts
          that would necessarily constitute fraud' does not allege a unified course of fraudulent conduct.");
28        *Miller v. Thane Int'l, Inc.*, 519 F.3d 879, 886 (9th Cir.) (complaints alleging violations of the

conduct need satisfy only the ordinary notice pleading standards of Rule 8(a)." *Vess*, 317 F.3d at 1105.

The Section 12 claim here alleges only that the Trustees (and other defendants) allowed materially untrue and misleading misstatements and omissions in the Prospectuses, not that they – nor the other defendants – engaged in any ongoing fraudulent scheme. ¶ 140. And the Section 12 claim disclaims any allegations "that might be interpreted to sound in fraud or relating to any state of mind on the part of the § 12 Defendants …." ¶ 139. Rule 8 thus applies where, as here, Plaintiffs base their claims on negligence. The same is true for state law counts of intentional interference with contract, violation of Section 17200, and breach of fiduciary duty, none of which sound in fraud. For the reasons set forth below, the Complaint adequately alleges that the Trustees violated Sections 12(a)(2) and 15 of the Securities Act and committed violations of relevant state law.

**B.      The Complaint Adequately Alleges that the Trustees are "Sellers" for Purposes of Section 12(a)(2) Liability.**

The Trustees argue that they cannot be considered "sellers" under Section 12 in light of *Pinter v. Dahl*, 486 U.S. 622 (1988), but they interpret *Pinter* too narrowly. The appropriate and controlling interpretation of *Pinter* was provided by the Ninth Circuit in *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 535 (9th Cir. 1989):

> In *Pinter*, the Court held that liability extends *beyond* those who pass title to a security; those who *solicit* a purchase may also face liability as "sellers" under section 12(1) of the Securities Act…. Although the Court did not define "solicit," it explained that a person whose motivation is solely to benefit the buyer cannot be deemed to have solicited a purchase. Rather, liability extends only to those who solicit a purchase, "motivated at least in part by a desire to serve his own financial interests or those of the securities owner."

Securities Act must be evaluated by looking at them in their entirety. "The disclosure required by securities law is measured not by literal truth, but by the ability of the material to accurately inform rather than mislead prospective buyers"), *cert. denied*, ___ U.S. ___, 129 S. Ct. 161 (2008); *In re NationsMart Corp. Sec. Litig.*, 130 F.3d 309, 318 (8th Cir. 1997) ("Fraud and scienter are not elements of a § 12(2) claim.").

1   (Citations omitted; emphasis added);[7] *see also Siemers v. Wells Fargo & Co.*, 2007 U.S. Dist.

2   LEXIS 21935, at *62-63 (N.D. Cal. Mar. 9, 2007) (following *Moore* and recognizing that "*Pinter*

3   extended the 'seller' group beyond those in the strict chain of title to include any person 'who

4   successfully solicits the purchase,' among other requirements").

5        The *Moore* court ultimately held that the plaintiffs did not adequately allege a Section 12(2)

6   claim against the accountants and lawyers who participated in preparing the prospectuses at issue

7   because the plaintiffs failed to allege "that the lawyers or accountants played any role at all in

8   soliciting the purchases."  885 F.2d at 537.  Rather, the complaint merely alleged that these

9   defendants performed professional services in their respective capacities as accountants and

10   lawyers.  *Id.*  The court noted that its ruling was consistent with a long line of decisions holding

11   that accountants and attorneys are generally not "sellers" for purposes of Section 12.  *Id.* at n.5.

12        Because Rule 8(a) governs the pleading of Plaintiffs' § 12(a)(2) claims, Plaintiffs can plead

13   the Trustees' "seller" status generally.  *See, e.g., In re NationsMart Corp. Sec. Litig.*, 130 F.3d at

14   314-15, 318-19 (reversing lower court and holding that Rule 9(b) did not apply because the

15   plaintiffs' §§ 11 and 12 claims expressly disavowed any claim of fraud and because those sections

16   do not require fraud as an element, concluding that "a pleading standard which requires a party to

17   plead particular facts to support a cause of action that does not include fraud or mistake as an

18   element comports neither with Supreme Court precedent nor with the liberal system of notice

19   pleading"); *In re Royal Ahold N.V. Sec. & ERISA Litig.*, 351 F. Supp. 2d 334, 402-03 (D. Md.

20   2004).  And any doubts about whether Plaintiffs can prove those allegations are not to be resolved

21   on this motion but left for later.  *See, e.g., In re Westinghouse Sec. Litig.*, 90 F.3d 696, 717 (3d Cir.

22   1996) (concluding that general allegations that defendants solicited plaintiffs to purchase securities

23   and in doing so were motivated by a desire to serve their own financial interests were not "bare

24   legal conclusions," but were instead "factual allegations" that must be proved at trial) (citing *In re

25   Craftmatic Sec. Litig.*, 890 F.2d 628, 637 (3d Cir. 1989)); *In re Royal Ahold*, 351 F. Supp. 2d at

26   403; *In re Elec. Data Sys. Corp. "ERISA" Litig.*, 305 F. Supp. 2d 658, 681 (E.D. Tex. 2004) ("[t]he

27

28   _____
        [7] As the Trustees correctly note, the Ninth Circuit went on to apply the *Pinter* Section 12(1) test to Section 12(2).  *Id.* at 536.

1   Complaint has certainly given fair notice that Plaintiffs intend to prove Defendants' seller status,

2   and the Court will not resolve this claim under 12(b)(6) on the fact-intensive 'seller' status issue")

3   (quoting *In re Paracelsus Corp.*, 6 F. Supp. 2d 626, 632 (S.D. Tex. 1998)); *Degulis v. LXR*

4   *Biotechnology, Inc.*, 928 F. Supp. 1301, 1315 (S.D.N.Y. 1996) ("[a]lthough signing the registration

5   statement need not constitute[] active solicitation,… it is, at this stage of the proceedings, a

6   sufficient allegation to permit Plaintiffs to present evidence that, alone or in tandem with other acts,

7   the signatures constitute active solicitation, given that other courts have held involvement in

8   preparation and circulation of the prospectus sufficient to show solicitation") (citing *Capri v. C.*

9   *Gordon Murphy*, 856 F.2d 473, 478 (2d Cir. 1988)) (other citation omitted); *In re Chambers Dev.*

10  *Sec. Litig.*, 848 F. Supp. 602, 625 (W.D. Pa. 1994).

11          Plaintiffs allege that the Trustees signed the various registrations statements.  ¶¶ 34-40.  The

12  Trustees dismiss this allegation too hastily, for the court in *In re Sirrom Capital Corp. Secs. Litig.*,

13  84 F. Supp. 2d 933, 945 (M.D. Tenn. 1999), concluded that "[a] Prospectus itself is considered a

14  solicitation document," so "Defendants who actually signed the Registration Statements may be

15  said to have solicited the public to purchase the stock."  *Accord*; *In re Portal Software, Inc. Sec.*

16  *Litig.*, 2006 U.S. Dist. LEXIS 61589, at *11-12 (N.D. Cal. Aug. 17, 2006); *In re Nat'l Golf Props.,*

17  *Inc. Secs. Litig.*, 2003 U.S. Dist. LEXIS 4321, at *2-3, 8-11 (C.D. Cal. Mar. 18, 2003); *Demaria v.*

18  *Andersen*, 153 F. Supp. 2d 300, 307-08 (S.D.N.Y. 2001), *aff'd*, 318 F.3d 170 (2d Cir. 2003);

19  *Degulis*, 928 F. Supp. at 1315.

20          Moreover, this rule applies with particular force where, as here, the Trustees hold their

21  positions with Schwab Investments, which was the registrant for the Fund, *the issuer of the Fund*

22  *shares* and the entity that performed trust services for the Fund.  ¶ 28.  *See In re Nat'l Golf Props.,*

23  *Inc. Secs. Litig.*, 2003 U.S. Dist. LEXIS 4321, at *8-11 (allegations that defendants signed a

24  registration statement on behalf of the issuer, which was also the actual seller, were sufficient to

25  allege active solicitation of purchase of security); *Warman v. Overland Data*, 1998 U.S. Dist.

26  LEXIS 2009, at *16-17 (S.D. Cal. Feb. 20, 1998) (allegation that "defendants, as officers, were

27  sellers, offerors and/or solicitors" of sales of shares in IPO was sufficient to state claim under

28  § 12(a)(2)).

The allegations against the Trustees are not limited to only signing the Registration Statements, as the Trustees contend, Br. at 4, and the Complaint's Section 12 allegations do not suffer from the infirmities flagged by the *Moore* court.  To the contrary, the Complaint alleges a more active involvement by the Trustees.  For example, the Complaint alleges that all of the Section 12 Defendants, including the Trustees, "were participants in the distribution of the Fund's shares through subsidiaries and trust departments of subsidiaries owned or controlled by Schwab Co. and Charles Schwab to the Securities Class."  ¶ 138.  The Complaint also alleges that the Trustees actively offered and sold the Fund:

> The § 12 Defendants offered and sold a security, namely shares of the Fund's common stock, by means of a prospectus or were controlling persons of the Fund or of those who offered and sold the Fund's shares.  This prospectus contained untrue statements of material facts and omitted to state material facts necessary in order to make the statements, in light of the circumstances under which they were made, not misleading, which statements and omissions the § 12 Defendants knew, or in the exercise of reasonable care the § 12 Defendants would have known, were false or were material facts which were required to be disclosed to avoid the representations which were made from being misleading.  [¶ 140.]

And the Complaint specifically alleges that all Section 12 Defendants, including the Trustees, "actively solicited the sale of the Fund's shares to serve their own financial interests," ¶ 140, and were "sellers of the Fund's shares."  ¶ 145.

These allegations, which expressly state that all Section 12 Defendants participated in the distribution of the Fund's shares, actively offered, solicited and sold the Fund to serve their own financial interests, suffice under *Pinter* and *Moore* and the foregoing jurisprudence.

The Trustees' contrary authorities requiring a § 12(a) claim to allege specific evidence to establish the defendant's status as a seller are unpersuasive.  Defendants cite *In re Stratosphere Corp. Sec. Litig.*, 1 F. Supp. 2d 1096, 1104 (D. Nev. 1998), even though the opinion expressly evaluated § 12(a)(2) claims under Rule 9(b) and, therefore, is poor authority regarding pleading requirements under Rule 8(a).[8]  Nonetheless, even the *Stratosphere* court recognized that whether

_____

[8] And because *In re Infonet Servs. Corp. Sec. Litig.*, 310 F. Supp. 2d 1080, 1104 (C.D. Cal. 2003) (cited by the Trustees), relied on *Stratosphere*, it is suspect for the same reason.

1   an individual is a seller under Section 12 "is a question of fact, not properly decided on a motion to

2   dismiss." *Id.* at 1120.[9]

3   **C.      The Complaint Adequately Alleges that the Trustees are "Control Persons" for
           Purposes of Section 15 Liability.**

4

5          Section 15(a) of the Securities Act "imposes joint and several liability upon every person

6   who controls any person liable under sections 11 or 12." 15 U.S.C. § 77o. Control-person liability

7   under § 15(a) requires (i) a primary violation of § 11 or § 12, and (ii) that the defendant exercised

8   actual power or control over the primary violator. *E.g.*, *Howard v. Everex Sys.*, 228 F.3d 1057,

9   1065 (9th Cir. 2000). Rule 9(b)'s heightened pleading requirements do not apply to control-person

10  claims. *E.g.*, *In re LDK Solar Secs. Litig.*, 2008 U.S. Dist. LEXIS 80717, at *38; *In re Royal

11  Dutch/Shell Transp. Sec. Litig.*, 380 F. Supp. 2d 509, 565 (D.N.J. 2005); *Kaltman v. Key Energy

12  Servs.*, 447 F. Supp. 2d 648, 665 (W.D. Tex. 2006).[10]

13         At the pleading stage, general allegations that individual defendants are the violator's senior

14  executives suffice. *E.g., In re Cylink Secs. Litig.*, 178 F. Supp. 2d 1077, 1089 (N.D. Cal. 2001).

15  Indeed, this Court determined that general allegations that individual defendants, by virtue of their

16  executive and managerial positions, had "power to influence and control and did influence and

17  control, directly or indirectly, the decision-making and actions of the" primary violators, were

18  sufficient at the pleadings stage. *Siemers v. Wells Fargo & Co.*, 2006 U.S. Dist. LEXIS 60858, at

19  *40 (N.D. Cal. Aug. 14, 2006); *see also In re LDK*, 2008 U.S. Dist. LEXIS 80717, at *38 (refusing

20  to dismiss control-person claim where complaint alleged that each defendant was a senior manager

21  and undertook typical managerial activities including the signing of the prospectus and financial

22  disclosures) (citing *Siemers*). General allegations such as these give defendants fair notice of the

23  nature of the claims asserted against them. *Cf.*, *Batwin v. Occam Networks, Inc.*, 2008 U.S. Dist.

---

24      [9] The Trustees also rely on *In re Harmonic, Inc. Sec. Litig.*, 2006 U.S. Dist. LEXIS 90450

25  (N.D. Cal. Dec. 11, 2006). Plaintiffs submit that *Harmonic* was wrongly decided given the wave
    of authorities cited above holding that general allegations of solicitation suffice and that whether a
    solicitation occurred is a fact question not resolvable on a motion to dismiss.

26      [10] Although phrased somewhat differently, the control-person liability provisions of § 15 of the

27  1933 Securities Act and § 20(a) of the 1934 Exchange Act are interpreted the same way. *E.g.*, *In
    re Enron Corp. Secs.*, *Derivative & ERISA Litig.*, 235 F. Supp. 2d 549, 594 (S.D. Tex. 2002)
    (citing cases).

28

1  LEXIS 52365, at *80 (C.D. Cal. July 1, 2008) (plaintiffs' § 20(a) allegations "place the [venture

2  capital] defendants on adequate notice as to the basis for its claims against them"); *Pension Comm.*

3  *of the Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, 446 F. Supp. 2d 163, 190

4  (S.D.N.Y. 2006) ("[n]aked allegations of control, however, will typically suffice to put a defendant

5  on notice of the claims against her").

6        The Complaint alleges that each Trustee

7            was a control person of the Fund or the Defendant Schwab entities by
   virtue of his or her position as a trustee and/or senior officer of the

8            Fund or the Defendant Schwab entities.  The Individual Defendants
   [which include the Trustees] each had a series of direct and/or

9            indirect business and/or personal relationships with other trustees
   and/or officers and/or major shareholders of the Defendant Schwab

10           entities and the Fund.

11 ¶ 148.  Further, the Trustees were the trustees of Schwab Investments, the entity that *issued* the

12 Fund's shares and an important underlying violator.  *See* ¶¶ 28, 34-40.  These general allegations

13 satisfy the foregoing standards.

14       The Complaint further alleges that the Trustees culpably participated in the underlying

15 Section 11 and 12 violations "based on their having signed or authorized the signing of the

16 Registration Statement and having otherwise participated in the process which allowed the

17 offerings to be successfully completed, or having participated in the offer or sale of the shares of

18 the Fund."  ¶ 149.  This is the type of conduct that, by itself, this Court has deemed to sufficiently

19 indicate "activities typical of managers with the ability to control or influence a corporation."  *See*

20 *LDK Solar*, 2008 U.S. Dist. LEXIS 80717, at *39.  And courts presume that an outside director and

21 audit committee member who signs an SEC filing has the power to control those who write the

22 report, within the meaning of Section 20(a).  *E.g.*, *In re Alstom SA Secs. Litig.*, 406 F. Supp. 2d

23 433, 488 (S.D.N.Y. 2005); *N.J. v. Sprint Corp.*, 314 F. Supp. 2d 1119, 1144-45 (D. Kan. 2004); *In

24 re Enron Corp. Sec., Derivative & ERISA Litig.*, 258 F. Supp. 2d 576, 598 (S.D. Tex. 2003); *In re

25 Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 437 (S.D.N.Y. 2001).  Such a person is in

26 a position to approve the corporation's financial statements and thus has the power to direct or

27 cause the direction of the corporation's management and polices, at least insofar as the

28 management and policies relate to ensuring accuracy in the contents of company reports and SEC

1  registrations that they actually sign.  *Alstom*, 406 F. Supp. 2d at 488-89; *see also In re Rent-Way*

2  *Secs. Litig.*, 209 F. Supp. 2d 493, 524 (W.D. Pa. 2002) (ruling that a complaint was sufficient that

3  alleged, among other indicia of control, that the defendants were "alleged to have signed one or

4  more statements filed with the SEC that were eventually restated, and to have had the ability to

5  control the contents of these various statements").

6       The Trustees assert a stricter pleading standard, arguing that Plaintiffs must plead particular

7  facts showing how each of them exercised actual power or control over Schwab Investments and

8  the Fund.  Br. at 6 (citing *Howard*, 228 F.3d at 1067 & n.13, and *In re Splash Tech. Holdings, Inc.*

9  *Sec. Litig.*, 2000 U.S. Dist. LEXIS 15369, at *84 (N.D. Cal. Sept. 29, 2000)).  But *Howard*

10  involved an appeal from a summary-judgment order, 228 F.3d at 1059, and said nothing about

11  control-person pleading standards.  And this Court already rejected *Splash Tech. Holdings*'

12  particularized pleading standard in *Siemers*, 2006 U.S. Dist. LEXIS 60858, at *43.

13       The Trustees also claim that by virtue of being "independent" they cannot be deemed to

14  have the requisite control.  Br. at 6.  But they overlook the definition of "control," which means

15  "the possession, direct or indirect, of the power to direct or cause the direction of the management

16  and policies of a person, whether through ownership of voting securities, by contract, or

17  otherwise."  17 C.F.R. § 230.405.  The "power to control or influence" the primary violator is

18  sufficient to establish membership in a corporation's control group.  *E.g.*, *Howard*, 228 F.3d at

19  1065; *In re Convergent Techs. Sec. Litig.*, 108 F.R.D. 328, 342 (N.D. Cal. 1985) (control stems

20  from "the power or influence to direct significant aspects of the management of the corporation").

21  As demonstrated immediately above, reviewing and signing financial statements can lead to

22  control-person liability, even without culpable participation in the violation.  *See also Howard*, 228

23  F.3d at 1065-66.

24       Being Trustees of the Issuer and signatories to the Registration Statements invoke the

25  necessary control under this definition for pleading purposes.  At the very least, discovery should

26  occur into the details of the Trustee's precise relationship with the Issuer and the Fund, for

27  determining who is a controlling person is generally an "intensely factual question, involving

28  scrutiny of the defendant's participation in the day-to-day affairs of the corporation and the

1    defendant's power to control corporate actions."  *Howard*, 228 F.3d at 1065 (quoting *Kaplan v.*

2    *Rose*, 49 F.3d 1363, 1382 (9th Cir. 1994)); *Arthur Children's Trust v. Keim*, 994 F.2d 1390, 1396

3    (9th Cir. 1993); *In re Cylink*, 178 F. Supp. 2d at 1089.

4    **D.      Counts IV and VI Will be Amended to Allege Breach of Contract Against the
             Trustees.**

5

6              In an argument at odds with the Trustees' position that they were so uninvolved in the

7    subject matter of Plaintiffs' claims that the Trustees cannot be said to have controlled or influenced

8    any Section 11 or 12 primary violator, the Trustees assert that they were not "strangers to the

9    relationship between the fund and its investors" and, therefore, cannot as a matter of law be liable

10   for interference with contract.  Br. at 6-7.  The test proposed by the Trustees – to wit, that the

11   alleged wrongdoer have absolutely no connection to the subject contract – is not supportable.

12             California courts do not interpret a "stranger" or "outsider" to a contract so narrowly.  In

13   *Woods v. Fox Broadcasting Sub., Inc.*, 129 Cal. App. 4th 344, 356 (Cal. Ct. App. 2005), for

14   example, the court rejected the same argument asserted by the controlling shareholder of a party to

15   a contract, concluding:  "our courts have allowed contract interference claims to be stated against

16   owners, officers, and directors of the company whose contract was the subject of the litigation."

17   Judge Walker, citing *Woods*, ruled that "contract … interference claims may lie against owners,

18   officers, shareholders and directors of an entity whose contract or economic relationship is the

19   subject of the litigation."  *Chaganti v. i2 Phone Int'l, Inc.*, 2007 U.S. Dist. LEXIS 56033, at *19

20   (N.D. Cal. July 23, 2007).  Accordingly, merely possessing an "economic interest" in a contractual

21   relationship is not enough to immunize a non-signatory to a contract from liability for interfering

22   with the contract.  *G&C Auto Body Inc. v. GEICO Gen. Ins. Co.*, 552 F. Supp. 2d 1015, 1021 (N.D.

23   Cal. 2008) (explaining *Woods*).[11]

24             Nonetheless, it is true that the particular defendants who signed the Registration Statements,

25   including the Trustees, are contracting parties that cannot be liable in tort for interfering with

26   _____

27          [11] California courts also narrowly construe the Trustees' authority, *Marin Tug & Barge, Inc. v.*
     *Westport Petroleum, Inc.*, 271 F.3d 825 (9th Cir. 2001).  *See Woods*, 129 Cal. 4th at 354;
     *G&C Auto Body*, 552 F. Supp. 2d at 1019-20 (explaining why federal courts should follow *Woods*'
28   narrow reading of *Marin Tug*).

1    performance of the contract, *see Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th at

2    514, and Plaintiffs seek leave to amend their Complaint to assert a breach-of-contract claim against

3    the Trustees in lieu of the interference claim.

4    **E.    Counts V and VII Adequately Alleges that the Trustees Committed an "Unlawful" Act for Purposes of Section 17200 Liability.**

5          California's Unfair Competition Law, or "UCL," prohibits unfair competition, which

6    includes "any unlawful, unfair or fraudulent business act or practice." CAL. BUS. & PROF. CODE

7    § 17200. The UCL is interpreted broadly and proscribes "anything that can properly be called a

8    business practice and that at the same time is forbidden by law." *People v. McKale*, 25 Cal. 3d at

9    632. In effect, the "unlawful" prong of Section 17200 makes a violation of the underlying law a

10   *per se* violation of Section 17200. *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 949-50 (2002). Plaintiffs

11   allege that the Trustees' violations of federal law constitute "unlawful" business acts and practices

12   under the UCL. ¶¶ 172, 179. Plaintiffs do not invoke the "fraudulent" prong of the UCL.

13         Citing *In re Silicon Graphics Sec. Litig.*, 970 F. Supp. 746, 752 (N.D. Cal. 1997), the

14   Trustees declare that Plaintiffs have failed to allege with particularity the specific fraudulent acts

15   underling the Section 17200 claim as required by Rule 9(b). Br. at 8. Section 17200 claims were

16   not even at issue in *Silicon Graphics*, where the passage cited by the Trustees pertained to the

17   plaintiffs' Securities and Exchange Act Section 10(b) claims. But while it is true that some courts

18   apply Rule 9(b) to UCL claims sounding in fraud, *e.g., Certain Underwriters at Lloyd's v. Real

19   Estate Prof'ls Ins. Co.*, 2007 U.S. Dist. LEXIS 88241, at *12 (C.D. Cal. Nov. 26, 2007), "[a] claim

20   is said to be 'grounded in fraud' or 'sounds in fraud' where a plaintiff alleges that defendant

21   engaged in fraudulent conduct and relies on solely on that conduct to prove a claim in which fraud

22   is not a necessary element." *Id.* As discussed above and in Lead Plaintiffs' Memorandum in

23   Opposition to Defendant Schwab Defendants' Motion to Dismiss at 2-4, none of Plaintiffs' claims

24   sound in fraud. In particular, fraud is not an element of the violation of § 13(a) of the Investment

25   Company Act, the predicate to Plaintiffs' § 17200 claim. Nor do Plaintiffs otherwise allege

26   fraudulent intent as part of that violation.

27

28

1    This claim does not sound in fraud, so Rule 9(b) does not apply.  By clearly invoking

2    alleged violations of federal law as the basis for the Trustees' "unlawful" activity prohibited by the

3    UCL, Plaintiffs have adequately placed the Trustees on notice of the basis of their UCL claims.

4    Defendants do not dispute that Plaintiffs sufficiently plead their claim under Rule 8(a).

5    **F.      Count VIII Adequately Alleges that the Trustees Breached their Fiduciary Duty to the
          Post-Breach Class.**

6
7    Once again invoking Rule 9(b) for a cause of action to which the Rule 8(a)'s notice

8    pleading requirements apply, the Trustees urge the Court to dismiss Count VIII alleging breach of

9    fiduciary duty.  Br. 8-10.  As presently drafted, the main thrust of Count VIII – which pertains to

10   Fund liquidations by other Schwab funds – does not apply to the Trustees.  Although paragraph

11   184 alleges that the count is asserted against all defendants except PWC, paragraph 185 identifies

12   only the following Fund Officer Defendants as targets of the count:  Dilsaver, Merk, Pereira and

13   Daifotis.  Ms. Dilsaver was President and Chief Executive Officer of the Fund during the relevant

14   time period through November 15, 2006.  ¶ 31.  Mr. Merk took over as the CEO of the Fund after

15   Ms. Dilsaver departed and also served as President and Chief Officer of Schwab Management.

16   ¶ 32.  Mr. Pereira was Chief Financial Officer and Treasurer of the Fund.  ¶ 33.  And Mr. Daifotis

17   was a senior vice president, the Chief Investment Officer of fixed income for Schwab Investments

18   and the Manager of the Fund since its inception in October 1999 until approximately June 31,

19   2008, and also served as Senior Vice President and Head of Fixed Income Portfolio Management at

20   Schwab Management.  ¶ 41.  Plaintiffs clarify that it is only these defendants, acting in their

21   capacities in the foregoing managerial roles as Fund Officer Defendants, who are subject to

22   liability under Count VIII for Fund liquidations by other Schwab funds.  *See also* ¶¶ 12, 97-99.

23   The Trustees do not dispute that Plaintiffs sufficiently plead their claim under Rule 8(a), which is

24   the proper standard.

25   Plaintiffs also intend Count VIII to encompass the violation of Plaintiffs' voting rights by

26   unilaterally revising the Fund's no-concentration fundamental policy without the requisite

27   shareholder vote and will amend to make this clearer, if the Court permits.  Any infringement of

28   this shareholder right to vote is an individual injury that can be asserted directly and not as a

1    derivative claim.  *Lapidus v. Hecht*, 232 F.3d at 683 (applying Massachusetts law and citing

2    Massachusetts cases).  The test to determine whether a claim should be brought as a direct or

3    derivative suit under Massachusetts law is whether the plaintiff has alleged "an injury distinct from

4    that suffered by shareholders generally or a wrong involving one of his or her contractual rights as

5    a shareholder …."  *Id.*  As its example, the Ninth Circuit cited injury to "the right to vote."  *Id.*

6    Much like the allegations here, *Lapidus* found that allegations of violations of shareholder

7    contractual rights to vote on proposed changes to security restrictions spelled out in a registration

8    statement satisfied the injury requirement for a direct action under Massachusetts law.  *Id*; *see also*

9    *Hilton Hotels Corp. v. ITT Corp.*, 978 F. Supp. 1342, 1351 (D. Nev. 1997) ("[I]nterference with the

10    shareholder franchise is especially serious.  It is not to be left to the board's business judgment,

11    precisely because it undercuts a primary justification for allowing directors to rely on their business

12    judgment in almost every other context."  The business judgment rule therefore does not apply.).

13    Plaintiffs' breach of fiduciary duty claim thus is direct, rendering inapplicable the Trustees'

14    business-judgment-rule and Trust-Agreement-loophole arguments, Br. at 9-10.

### IV.    CONCLUSION

16        For the foregoing reasons, Lead Plaintiffs respectfully request that the Court deny the

17    Trustees' motion to dismiss.

19    Dated: November 26, 2008          HAGENS BERMAN SOBOL SHAPIRO LLP

21                  By: _____ /s/ Steve W. Berman _____

23                  Reed R. Kathrein
                 Peter E. Borkon
24                  715 Hearst Avenue, Suite 202
                 Berkeley, CA 94710
25                  Telephone: (510) 725-3000
                 Facsimile: (510) 725-3001
26                  reed@hbsslaw.com
                 peterb@hbsslaw.com

1                                        Steve W. Berman (*Pro hac vice*)

Sean R. Matt (*Pro hac vice*)

2                                        Erin K. Flory (*Pro hac vice*)

3                                        HAGENS BERMAN SOBOL SHAPIRO, LLP

1301 Fifth Avenue, Suite 2900

4                                        Seattle, WA 98101

5                                        Telephone: (206) 623-7292

Facsimile: (206) 623-0594

6                                        steve@hbsslaw.com

sean@hbsslaw.com

7                                        erin@hbsslaw.com

8                                        *Attorneys for Lead Plaintiffs*

MEMO. IN OPP. TO TRUSTEES' MOTION TO DISMISS
FIRST CONSOLIDATED AMENDED COMPLAINT
C-08-cv-01510 WHA
010036-12  272942 V1