1   Reed R. Kathrein (139304)
    Peter E. Borkon (212596)
2   HAGENS BERMAN SOBOL SHAPIRO LLP
    715 Hearst Avenue, Suite 202
3   Berkeley, CA 94710
    Telephone:  (510) 725-3000
4   Facsimile:  (510) 725-3001
    reed@hbsslaw.com
5   peterb@hbsslaw.com

6   Steve W. Berman (*Pro Hac Vice*)
    Sean R. Matt (*Pro Hac Vice*)
7   Erin K. Flory (*Pro Hac Vice*)
    HAGENS BERMAN SOBOL SHAPIRO LLP
8   1301 Fifth Avenue, Suite 2900
    Seattle, Washington  98101
9   Telephone: (206) 623-7292
    Facsimile: (206) 623-0594
10  steve@hbsslaw.com
    sean@hbsslaw.com
11  erin@hbsslaw.com

12  *Attorneys for Lead Plaintiff YieldPlus Investor Group*

13
                    UNITED STATES DISTRICT COURT
14
                  NORTHERN DISTRICT OF CALIFORNIA
15
                      SAN FRANCISCO DIVISION
16

17  IN RE SCHWAB CORP. SECURITIES          No. 08-cv-01510 WHA
    LITIGATION
18
                                           LEAD PLAINTIFFS' MEMORANDUM
19  THIS DOCUMENT RELATES TO:              IN OPPOSITION TO DEFENDANT
                                           SCHWAB DEFENDANTS MOTION TO
20  ALL ACTIONS                            DISMISS CONSOLIDATED
                                           AMENDED COMPLAINT
21
                                           Date:        January 8, 2009
22                                         Time:        8:00 a.m.
                                           Judge:       Hon. William H. Alsup
23                                         Courtroom:   9, 19th Floor
24

25

26

27

28

LEAD PLS' MEM. IN OPP'N TO SCHWAB DEFENDANTS'
MOT. TO  DISMISS CONSOL. AM. COMPL. - 08-cv-01510 WHA
010036-12 273057 V1

1

**STATEMENT OF ISSUES**

2

1.      Does Fed. R. Civ. P. 9(b)'s heightened pleading standard for allegations of fraud

3

apply to Plaintiffs' claims where fraud is not an element of those claims and allegations of

4

fraudulent intent appear nowhere in the complaint?  *See infra* at 2-4.

5

2.      Do Plaintiffs' claims satisfy Fed. R. Civ. P. 8(a)'s notice-pleading standards?  *See*

6

*infra* at 4-12.

7

3.      To establish a negative loss-causation defense on a motion to dismiss, Defendants

8

must show that Plaintiffs' losses resulted as a matter of law from factors other than the alleged

9

material misstatements in the Fund's registration statements.  But allegations that a fund engaged

10

in misconduct that it concealed from shareholders, and that this misconduct caused Plaintiffs'

11

losses, sufficiently plead loss causation.  Although Plaintiffs are not required to allege loss

12

causation, Plaintiffs plead that the Fund wrongfully held risky, long-term securities and concealed

13

it from shareholders, and that this conduct caused Plaintiffs' losses.  Do these allegations defeat

14

Defendants' loss-causation defense on this motion?  *See infra* at 12-14.

15

4.      Rule 8(a) allows Plaintiffs to plead the Schwab Defendants' § 15(a) control-person

16

liability with general allegations.  Plaintiffs identify each Defendant's individual capacity to

17

control the Fund's conduct.  Is this sufficient under Rule 8(a)?  *See infra* at 15.

18

5.      The Securities Litigation Uniform Standards Act ("SLUSA") only preempts state

19

claims that relate to a securities transaction linked to a misrepresentation.  Plaintiffs' state-law

20

claims arise from the Fund's breach of its fundamental policy not to concentrate its assets in any

21

particular industry without first obtaining shareholder approval, in violation of § 13(a) of the

22

Investment Company Act, and thus do not relate to a misrepresentation or a securities transaction.

23

Does SLUSA preempt Plaintiffs' state-law claims?  *See infra* at 15.

24

6.      A contract can be created by multiple documents. The Fund's prospectus, coupled

25

with other documents, provide all the terms and conditions of investors' purchases of Fund shares.

26

Is the prospectus part of a contract?  *See infra* at 18.

27

7.      As required by law, the prospectus sets forth the Fund's fundamental policies that

28

cannot be changed without shareholder approval.  One such policy is that the Fund cannot hold

more than 25% of its assets in any particular industry, and the prospectus states that mortgage-backed securities constituted "a particular industry."  Did the Fund violate this policy when, without first obtaining shareholder approval, it allowed its holdings of mortgage-backed securities to exceed 25%?  *See infra* at 20.

       8.     A party who did not actually sign a contract and interferes with its performance can be liable for tortious interference with a contractual relationship.  Can the defendants that did not sign the Fund's registration statements be liable for interfering with the Fund's performance of its prospectus obligations?  *See infra* at 22.

       9.     Do authorities holding that Cal. Bus. & Prof. Code § 17200 does not apply to securities transactions preclude Plaintiffs' § 17200 claim that does not arise from such a transaction?  *See infra* at 24.

       10.    Plaintiffs' breach-of-fiduciary-duty claim asserts individual injury for Defendants' unequal treatment of Fund shareholders and for violating their voting rights.  Can Plaintiffs assert their claim directly, rather than derivatively?  *See infra* at 24.

# TABLE OF CONTENTS

**Page**

STATEMENT OF ISSUES ...............................................................................................i

I.     INTRODUCTION......................................................................................................1

II.    STATEMENT OF FACTS.........................................................................................1

III.   ARGUMENT ............................................................................................................2

    A.   Plaintiffs State a Claim Against the Schwab Defendants for Violating Section 11 ......2

        1.   Rule 9(b)'s Fraud Pleading Standard Does Not Apply ....................................2

        2.   Plaintiffs satisfy Rule 8(a)'s notice-pleading standard....................................4

            a.   The Complaint links each misrepresentation to an explanation of its falsity ...........................................................................................5

            b.   Taken as true, Plaintiffs' allegations plead more than enough facts to support their § 11 claim ...........................................................7

               (i)    Defendants do not challenge the key contentions of "ultra short" and "minimal changes in price"...........................7

               (ii)   Duration..............................................................................8

               (iii)  Coupon Dates and Maturity Dates ...........................................8

               (iv)   Concentration .....................................................................9

               (v)    Benchmark Index.................................................................9

               (vi)   Asset Valuations ...............................................................10

               (vii)  Asset Classifications............................................................11

        3.   Defendants fail to establish that their purported loss-causation affirmative defense will prevail as a matter of law .........................................12

    B.   Plaintiffs Sufficiently Plead Their Section 12 Claim .................................................14

    C.   Plaintiffs Sufficiently Plead § 15 Control-Person Liability Against the Defendants.....................................................................................................15

    D.   SLUSA Does Not Preempt Plaintiffs' State-Law Claims .........................................15

    E.   Plaintiffs Properly Plead Defendants' Interference with Contractual Relations .........18

        1.   A prospectus filed with the SEC can constitute a contract..............................18

        2.   The Fund breached its no-concentration policy .............................................20

3.   The Schwab Defendants are strangers to the contract and can be liable for inducing the breach ...................................................................22

4.   Rule 9(b) does not apply to this claim ..................................................23

F.   Plaintiffs State a Claim for Violating § 17200 Because the Claim Does Not Arise from a Securities Transaction ...................................................24

G.   Plaintiffs Plead a Claim for Breach of Fiduciary Duty ...............................................24

IV.   CONCLUSION ...................................................................................................................25

1

**TABLE OF AUTHORITIES**

2

**CASES**

<u>**Page**</u>

3

4

*Alderman v. SEC*,
    104 F.3d 285 (9th Cir. 1997) ................................................................................15

5

*American Cas. Co. v. Baker*,
    22 F.3d 880 (9th Cir. 1994) ................................................................................18

6

7

*Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*,
    7 Cal. 4th 503, 28 Cal. Rptr. 2d 475, 869 P.2d 454 (1994) ............................22

8

*Aronson v. Crane*,
    145 A.D.2d 455 (N.Y. App. Div. 2d Dep't 1988) .............................................25

9

10

*In re Bally Total Fitness Sec. Litig.*,
    2006 U.S. Dist. LEXIS 93986 (N.D. Ill. July 12, 2006) ...................................4

11

*Basic, Inc. v. Levinson*,
    485 U.S. 224 (1988) ...................................................................................11, 12

12

13

*Beary v. ING Life Ins. & Annuity Co.*,
    520 F. Supp. 2d 356 (D. Conn. 2007) .............................................................17

14

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ................................5

15

16

*Belodoff v. Netlist, Inc.*,
    2008 U.S. Dist. LEXIS 45289, 2008 WL 2356699 (C.D. Cal. May 30, 2008)...............3, 4

17

*Bernheim v. Litt*,
    79 F.3d 318 (2d Cir. 1996) ................................................................................7

18

19

*Borsellino v. Goldman Sachs Group, Inc.*,
    477 F.3d 502 (7th Cir. 2007) .....................................................................23, 24

20

*Bowen v. Ziasun Tech., Inc.*,
    116 Cal. App. 4th 777, 11 Cal. Rptr. 3d 522 (2004) ......................................24

21

22

*Caleb & Co. v. E. I. Du Pont de Nemours & Co.*,
    615 F. Supp. 96 (S.D.N.Y. 1985) ....................................................................18

23

*Chaganti v. i2 Phone Int'l, Inc.*,
    2007 U.S. Dist. LEXIS 56033 (N.D. Cal. July 23, 2007) ...............................23

24

*Cohen v. Stratosphere Corp.*,
    115 F.3d 695 (9th Cir. 1997) ...........................................................................19

25

*Conley v. Gibson*,
    355 U.S. 41 (1957) .............................................................................................5

26

27

*Cooper v. Pickett*,
    137 F.3d 616 (9th Cir. 1998) .............................................................................7

28

*Crosby v. Beam*,
    548 N.E.2d 217 (Ohio 1989) ........................................................................................... 25

*In re DDi Corp. Secs. Litig.*,
    2005 U.S. Dist. LEXIS 28216 (C.D. Cal. July 20, 2005) .................................................. 11

*In re DNAP Secs. Litig.*,
    2000 U.S. Dist. LEXIS 13482, 2000 WL 1358619 (N.D. Cal. Sept. 13, 2000) ............... 13

*In re Daou Sys.*,
    411 F.3d 1006 (9th Cir. 2005) .................................................................................... 2, 4

*Doppelt v. Perini Corp.*,
    2002 U.S. Dist. LEXIS 4128 (S.D.N.Y. Mar. 12, 2002) .................................................. 18

*Doug Brady, Inc. v. New Jersey Bldg. Laborers Statewide Funds*,
    2008 U.S. Dist. LEXIS 28324 (D.N.J. Apr. 7, 2008) ....................................................... 18

*Dura Pharm., Inc. v. Broudo*,
    544 U.S. 336 (2005) ...................................................................................................... 13

*Elan Corp. Secs. Litig.*,
    543 F. Supp. 2d 187 (S.D.N.Y. 2008) ............................................................................. 4

*In re Exodus Communs., Inc. Secs. Litig.*,
    2005 U.S. Dist. LEXIS 20222 (N.D. Cal. Aug. 5, 2005) ................................................. 4

*Fecht v. Price Co.*,
    70 F.3d 1078 (9th Cir. 1995) ........................................................................................ 11

*Frank v. LoVetere*,
    363 F. Supp. 2d 327 (D. Conn. 2005) ........................................................................... 25

*Franklin Life Ins. Co. v. Commonwealth Edison Co.*,
    451 F. Supp. 602 (S.D. Ill. 1978), *aff'd*, 598 F.2d 1109, 1110 (7th Cir. 1979) ............... 18

*Freeland v. Iridium World Communs., Ltd.*,
    233 F.R.D. 40 (D.D.C. 2006) ........................................................................................ 12

*G&C Auto Body Inc. v. GEICO Gen. Ins. Co.*,
    552 F. Supp. 2d 1015 (N.D. Cal. 2008) ......................................................................... 23

*In re Gemstar-TV Guide, Int'l Inc. Sec. Litig.*,
    2003 U.S. Dist. LEXIS 25884 (C.D. Cal. Aug. 15, 2003) ............................................... 4

*In re Gilead Scis. Sec. Litig.*,
    536 F.3d 1049 (9th Cir. 2008) ...................................................................................... 12

*In re Great Atl. & Pac. Tea Co. Sec. Litig.*,
    103 Fed. Appx. 465 (3d Cir. N.J. 2004) ........................................................................ 4

*Gustafson v. Alloyd Co., Inc.*,
    513 U.S. 561 (1995) ........................................................................................................ 2

*In re Irwin*,
   2007 U.S. Dist. LEXIS 45848 (E.D. Cal. June 13, 2007) ...................................... 5

*In re JPMorgan Chase Sec. Litig.*,
   363 F. Supp. 2d 595 (S.D.N.Y. 2005) ..................................................................... 11

*Jacobson v. Hughes Aircraft Co.*,
   105 F.3d 1288 (9th Cir. 1997) ................................................................................. 10

*Kaiser-Frazer Corp. v. Otis & Co.*,
   195 F.2d 838 (2d Cir. N.Y. 1952) ............................................................................ 18

*Kaplan v. Rose*,
   49 F.3d 1363 (9th Cir. 1994) ................................................................................... 11

*Kliff v. Hewlett Packard Co.*,
   2008 U.S. App. LEXIS 23037 (9th Cir. Nov. 6, 2008) ............................................. 18

*Kursman v. Wright/Egan & Assoc.*,
   1988 U.S. Dist. LEXIS 12716 (E.D. Pa. Nov. 10, 1988) ......................................... 18

*LDK Solar Secs. Litig.*,
   2008 U.S. Dist. LEXIS 80717 (N.D. Cal. Sept. 24, 2008) ....................................... 15

*LaSala v. Bordier Et Cie*,
   519 F.3d 121 (3d Cir. 2008) .................................................................................... 17

*Lapidus v. Hecht*,
   232 F.3d 679 (9th Cir. 2000) ................................................................................... 25

*Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*,
   507 U.S. 163 (1993) .................................................................................................. 5

*Marin Tug & Barge, Inc. v. Westport Petroleum, Inc.*,
   271 F.3d 825 (9th Cir. 2001) ................................................................................... 23

*McKesson HBOC, Inc. v. New York State Common Ret. Fund, Inc.*,
   339 F.3d 1087 (9th Cir. 2003) ........................................................................... 19, 20

*In re McKesson HBOC Secs. Litig.*,
   126 F. Supp. 2d 1248 (N.D. Cal. 2000) .................................................................. 13

*Meridia Prods. Liab. Litig. v. Abbott Labs.*,
   447 F.3d 861 (6th Cir. 2006) ..................................................................................... 5

*Meridian Project Sys. v. Hardin Constr. Co.*,
   404 F. Supp. 2d 1214 (E.D. Cal. 2005) .................................................................... 4

*In re Merix Corp. Sec. Litig.*,
   2008 U.S. App. LEXIS 9073 (9th Cir. Apr. 22, 2008) ............................................... 3

*In re Merrill Lynch & Co. Research Reports Sec. Litig.*,
   272 F. Supp. 2d 243 (S.D.N.Y. 2003) ..................................................................... 13

*Overstock.com, Inc. v. Gradient Analytics, Inc.*,
  151 Cal. App. 4th 688 (Cal. App. 1st Dist. 2007) ............................................ 24

*Perretta v. Prometheus Dev. Co.*,
  2005 U.S. Dist. LEXIS 38729 (N.D. Cal. Dec. 15, 2005) .............................. 16

*Pinter v. Dahl*,
  486 U.S. 622 (1988) .......................................................................................... 14

*Professional Mgmt. Assocs., Inc. Employees Profit Sharing Plan v. KPMG LLP*,
  335 F.3d 800 (8th Cir. 2003) .......................................................................... 17

*Rombach v. Chang*,
  355 F.3d 164 (2d Cir. 2004) .............................................................................. 4

*Rowinski v. Salomon Smith Barney Inc.*,
  398 F.3d 294 (3d Cir. 2005) ............................................................................ 17

*SEC v. Trabulse*,
  526 F. Supp. 2d 1001 (N.D. Cal. 2007) .......................................................... 10

*Safron Capital Corp. v. Leadis Tech., Inc.*,
  274 Fed. Appx. 540 (9th Cir. 2008) .................................................................. 3

*In re Sea-Land Corp. Shareholders Litig.*,
  642 A.2d 792 (Del. Ch. 1993) .......................................................................... 25

*Sherleigh Assocs. v. Windmere-Durable Holdings*,
  178 F. Supp. 2d 1255 (S.D. Fla. 2000) ............................................................ 4

*Sherman v. Network Commerce, Inc.*,
  94 Fed. Appx. 574 (9th Cir. 2004) .................................................................... 4

*Siemers v. Wells Fargo & Co.*,
  2007 U.S. Dist. LEXIS 21935 (N.D. Cal. Mar. 9, 2007) .......................... 12, 13

*In re Silicon Storage Tech., Inc., Sec. Litig.*,
  2007 U.S. Dist. LEXIS 21953, 2007 WL 760535 (N.D. Cal. Mar. 9, 2007) ......... 8

*Smith v. Suprema Specialties, Inc.*,
  2007 U.S. Dist. LEXIS 30001 (D.N.J. Apr. 23, 2007) .................................... 12

*In re Spiegel, Inc. Sec. Litig.*,
  382 F. Supp. 2d 989 (N.D. Ill. 2004) ................................................................ 7

*Spirit Partners, L.P. v. audiohighway.com*,
  2000 U.S. Dist. LEXIS 7236 (S.D.N.Y. May 25, 2000) .................................. 18

*In re Stac Elecs. Sec. Litig.*,
  89 F.3d 1399 (9th Cir. 1996) ........................................................................ 2, 11

*In re Sterling Foster & Co. Sec. Litig.*,
  222 F. Supp. 2d 216 (E.D.N.Y. 2002) ............................................................ 11

*Strigliabotti v. Franklin Res., Inc.*,
  398 F. Supp. 2d 1094 (N.D. Cal. 2005)..........................................................17

*Strigliabotti v. Franklin Res., Inc.*,
  2005 U.S. Dist. LEXIS 9625 (N.D. Cal. Mar. 07, 2005) ...............................24

*In re Syncor Erisa Litig.*,
  351 F. Supp. 2d 970 (C.D. Cal. 2004) ..............................................................4

*In re Textainer P'ship Secs. Litig.*,
  2006 U.S. Dist. LEXIS 84395, 2006 WL 3247425 (N.D. Cal. Aug. 10, 2006) ..................8

*Thompson v. Glenmede Trust Co.*,
  1994 U.S. Dist. LEXIS 17301 (E.D. Pa. Nov. 29, 1994) ...............................25

*United States v. Zannino*,
  895 F.2d 1 (1st Cir. 1990) ................................................................................5

*In re Valence Tech. Sec. Litig.*,
  1995 U.S. Dist. LEXIS 10379, 1995 WL 274343 (N.D. Cal. May 8, 1995) ....................8

*Verona Partners, LLC v. Tenet Capital Partners Conv. Opportunities Fund LP*,
  2006 U.S. Dist. LEXIS 69488, 2006 WL 2660935 (N.D. Cal. Sept. 18, 2006)...............14

*Vess v. CIBA-Geigy Corp.*,
  317 F.3d 1097 (9th Cir. 2003) ...................................................................2, 3, 4

*Westways World Travel v. AMR Corp.*,
  182 F. Supp. 2d 952 (C.D. Cal. 2001) ..............................................................8

*Estate of William A. Millhon v. Millhon Clinic, Inc.*,
  2007 Ohio 7153 (Ohio Ct. App. Dec. 31, 2007) ............................................25

*Williams v. Gerber Prods. Co.*,
  523 F.3d 934 (9th Cir. 2008) ............................................................................5

*Woods v. Fox Broadcasting Sub., Inc.*,
  129 Cal. App. 4th 344 (Cal. App. 2d Dist. 2005)...........................................23

*In re Worlds of Wonder Sec. Litig.*,
  35 F.3d 1407 (9th Cir. 1994) ..........................................................................12

## STATUTES

15 U.S.C. § 77k(a) ..............................................................................................12

15 U.S.C. § 77p(b)(1) .........................................................................................16

15 U.S.C. § 78bb(f)(1)(A) ..................................................................................16

15 U.S.C. § 80a-8 ..........................................................................................16, 20

15 U.S.C. § 80a-13 ........................................................................................16, 20

CAL. BUS. & PROF. CODE § 17200.................................................................1, 24

1

2

**MISCELLANEOUS**

*Registration Form Used by Open-End Management Investment Companies; Guidelines*,
     SEC Release Nos. 33-6479, IC-13436, 1983 SEC LEXIS 1030 (Aug. 12, 1983)............22

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## I.     INTRODUCTION

2          Plaintiffs assert federal claims for violation of § 11, 12 and 15 of the Securities Act, plus

3   state-law claims for interference with a contractual relationship, breach of fiduciary duty, and vio-

4   lation of California Business & Professions Code § 17200 – *none* of which require allegations of

5   fraud.  The Schwab Defendants nonetheless seek dismissal on the ground that none of the claims

6   meet Fed. R. Civ. P. 9(b)'s heightened pleading standard.  Rule 9(b) can apply to non-fraud claims

7   only if they allege a unified course of fraudulent conduct.  Yet Plaintiffs do not plead a unified

8   course of fraud or that any defendant knew of the information that made the Fund's statements

9   false; nor do Plaintiffs' allegations imply that the Schwab Defendants must have known.  Rule 9(b)

10  hence does not apply, *see infra* at 2-4, and the claims easily satisfy Rule 8's notice pleading

11  standards, *see infra* at 4-12.

12          The Schwab Defendants next argue that their purported loss-causation defense to the §§ 11

13  and 12 claims necessarily prevails from the face of the Complaint.  But Plaintiffs expressly allege

14  that the Fund wrongfully held risky, long-term securities and concealed it from shareholders, and

15  that this conduct caused Plaintiffs' losses.  These allegations, if proven, rebut Defendants' loss-

16  causation defense.  *See infra* at 12-14.  Next, Plaintiffs can plead the Schwab Defendants' § 15(a)

17  control-person liability with general allegations, as Rule 8(a) permits them to do.  *See infra* at 15.

18          The Securities Litigation Uniform Standards Act ("SLUSA") does not preempt Plaintiffs'

19  state-law claims.  SLUSA preempts state claims relating to a securities transaction linked to a mis-

20  representation.  Plaintiffs' state-law claims involve neither.  *See infra* at 15.  Their claims arise

21  from the Fund's breach of its fundamental policy not to concentrate its assets in any particular

22  industry in violation of § 13(a) of the Investment Company Act.  The Schwab Defendants' role in

23  this breach constitutes inference with contractual relations and violates Cal. Bus. & Prof. Code

24  § 17200.  *See infra* at 18-24.  For these and other reasons set forth below, the Court should deny

25  Schwab Defendants' motion to dismiss.

26

## II.     STATEMENT OF FACTS

27          To avoid duplication, Plaintiffs incorporate the statement of facts set forth in Plaintiffs'

28  Memorandum in Opposition to Defendant Independent Trustees' Motion to Dismiss filed Nov. 26,

1   2008 (the "Trustees' Opposition") at 3-13.  Plaintiffs add to this that while other funds in its cate-

2   gory posted gains or modest losses, shares of Schwab's YieldPlus Fund (the "Fund") lost 31% in

3   one year.  ¶¶ 13-15, 119-20.[1]  The Schwab Defendants blame the "credit crisis" for these losses yet

4   cannot explain why the Fund's performance was so uniquely bad.  Moreover, most of the loss

5   occurred in a short period of time well before the credit crisis impacted the broader markets.

6   Plaintiffs allege that, unlike its peers, the Fund "misrepresented" its safety by purchasing riskier

7   and longer-term mortgage-backed securities than were appropriate for an "ultrashort" bond fund,

8   and disclosed none of this to investors.  Based on the Complaint, the "credit crisis" is not to blame

9   for the Fund's losses.

10                              **III.    ARGUMENT**

11  **A.    Plaintiffs State a Claim Against the Schwab Defendants for Violating Section 11**

12            **1.    Rule 9(b)'s Fraud Pleading Standard Does Not Apply**

13            Pervading the Schwab Defendants' challenge to Plaintiffs' §§ 11 and 12 claims is the pur-

14  ported failure to meet Rule 9(b)'s heightened particularity pleading standard.  *E.g.,* Br. at 5-7.  But

15  only Rule 8's notice pleading standards apply here because fraud is not an element of claims

16  brought under §§ 11 and 12.  *In re Daou Sys.*, 411 F.3d 1006, 1027 (9th Cir. 2005); *In re Stac*

17  *Elecs. Sec. Litig.*, 89 F.3d 1399, 1404 (9th Cir. 1996).  Under § 11, a plaintiff need only allege

18  "(1) that the registration statement contained an omission or misrepresentation, and (2) that the

19  omission or misrepresentation was material, that is, it would have misled a reasonable investor

20  about the nature of his or her investment."  *Id.*  Section 11 does not require pleading or proof that a

21  defendant acted with intent to defraud or even knew that misrepresentations or omissions had been

22  made.  *Id.*  The same is true of § 12.  *Id.*; *Gustafson v. Alloyd Co., Inc.*, 513 U.S. 561, 578 (1995).

23            Rule 9(b) does not apply to §§ 11 and 12 claims unless plaintiffs "allege a unified course of

24  fraudulent conduct and rely entirely on that course of conduct as the basis of a claim."  *Daou*, 411

25  F.3d at 1027-28; *see also Vess v. CIBA-Geigy Corp.*, 317 F.3d 1097, 1103-04 (9th Cir. 2003).

26  *Daou* specifically held that § 11 claims do not trigger Rule 9(b) unless they make a "'*wholesale*

27  ─────────────────

28            [1] "¶ __" refers to paragraphs of the First Consolidated Amended Complaint (Ct. Rec. 104).

1    *adoption*' of [] securities fraud allegations for purposes of the Securities Act claims" or "allege a

2    unified course of fraudulent conduct and rely entirely on that course of conduct as the basis of a

3    claim."  411 F.3d at 1027-28 (emphasis added; citations omitted); *see also In re Merix Corp. Sec.*

4    *Litig.*, 2008 U.S. App. LEXIS 9073, at *2-3 (9th Cir. Apr. 22, 2008) (citing *Vess,* 317 F.3d at 1104-

5    05); *Safron Capital Corp. v. Leadis Tech., Inc.*, 274 Fed. Appx. 540, 541 (9th Cir. 2008).

6    "Allegations of non-fraudulent conduct need satisfy only the ordinary notice pleading standards of

7    Rule 8(a)."  *Vess*, 317 F.3d at 1105.  The § 11 claim here alleges only that the Schwab Defendants

8    allowed materially untrue and misleading misstatements and omissions in the Prospectuses, not

9    that they – or the other defendants – engaged in any ongoing fraudulent scheme.  Rule 8 thus

10   applies where, as here, Plaintiffs base their claims on negligence.

11        Admitting that Plaintiffs did not plead intentionally made material misrepresentations and

12   omissions, Br. at 6, the Schwab Defendants nonetheless insist that Plaintiffs' § 11 claim necessarily

13   alleges fraudulent conduct.  As "argument," however, they rely solely on an assertion not contained

14   in the controlling allegations that "it is hard to comprehend" how Schwab could have made its

15   misrepresentations unintentionally.[2]  Schwab's primary authority, *Belodoff v. Netlist, Inc.*, 2008

16   U.S. Dist. LEXIS 45289, 2008 WL 2356699 (C.D. Cal. May 30, 2008), is distinguishable and

17   unpersuasive and, if interpreted as Defendants do, contrary to Ninth Circuit law cited above.  In

18   response to a § 11 claim arising from statements concealing a manipulative practice known as

19   "channel stuffing," the court highlighted allegations that defendants implicitly intended to commit

20   fraud:  "Plaintiffs use language suggesting intentional fraud such as: '*defendants were aware of*

21   *then-existing facts* that made the future demands of their customers extremely predictable; namely,

22   that they had been oversupplied, or "stuffed" ….'"  2008 U.S. Dist. LEXIS 45289, at *17 (empha-

23   sis added).  The court concluded that this language necessarily indicated fraud:  "Failing to state

24   known facts and attempting to create an inaccurate impression of future business are prototypical

25

26   ---

27   [2]  Schwab incorrectly includes among the misrepresentations that it "exceeded a known
     concentration limit for over a year …."  Br. at 6:8.  But as we discuss *infra* at 15-18, Plaintiffs do
     *not* allege that the Fund or any defendant made a misrepresentation when the Fund violated its
28   stated concentration limits.

1    forms of intentional fraud." *Id.* at *18.[3]

2           Here, there is no allegation of an intent to defraud, and Plaintiffs' § 11 claim, as pled, does

3    not sound in fraud.  Tellingly, unlike the *Belodoff* defendants, the Schwab Defendants fail to point

4    to any allegation that necessarily saddles them with an intent to commit fraud.  Rule 8(a) thus

5    supplies the pleading standard governing this motion.[4]

6           Moreover, even if Rule 9(b) applied, the Schwab Defendants seek an unwarranted penalty,

7    for even if a non-fraud based claim alleges fraud, but the "particular averments of fraud are

8    insufficiently pled under Rule 9(b)," a district court should simply "'disregard' those averments, or

9    'strip' them from the claim," and then examine the remaining allegations to determine whether

10   they state a claim.  *Vess*, 317 F.3d at 1105; *see also Sherman v. Network Commerce, Inc.*, 94 Fed.

11   Appx. 574, 575 (9th Cir. 2004); *In re Exodus Communs., Inc. Secs. Litig.*, 2005 U.S. Dist. Lexis

12   20222, at *32-33 (N.D. Cal. Aug. 5, 2005); *Meridian Project Sys. v. Hardin Constr. Co.*, 404 F.

13   Supp. 2d 1214, 1219 (E.D. Cal. 2005); *In re Syncor Erisa Litig.*, 351 F. Supp. 2d 970, 978 (C.D.

14   Cal. 2004).  While Plaintiffs detail their claim sufficiently to meet Rule 9(b) standards, we will

15   reserve our pages in this brief to rebut more pertinent arguments.

16          **2.      Plaintiffs satisfy Rule 8(a)'s notice-pleading standard**

17          By focusing their argument against Plaintiffs' § 11 claim on Rule 9(b) standards (Br. at 7-

18   _____

     [3] *Belodoff*'s holding that channel stuffing necessarily requires fraud is also unpersuasive.  *See*,
19   *e.g.*, *Sherleigh Assocs. v. Windmere-Durable Holdings*, 178 F. Supp. 2d 1255, 1261-62, 1270,
     1272-73 (S.D. Fla. 2000) (channel stuffing § 11 claim did not sound in fraud).  Channel stuffing,
20   like other financial distortions, can be executed at ground level but remain unknown to a com-
     pany's executives, thus undercutting any assertion of fraud.  See, for example, *In re Great Atl. &
21   Pac. Tea Co. Sec. Litig.*, 103 Fed. Appx. 465, 470 (3d Cir. N.J. 2004) (complaint dismissed for lack
     of scienter where allegations insufficient to establish that company intended to misstate financial
22   results); *In re Elan Corp. Secs. Litig.*, 543 F. Supp. 2d 187, 219 (S.D.N.Y. 2008) (allegations based
     on confidential sources were insufficient to establish scienter where there were no facts to establish
23   that the confidential sources would have known what information was communicated to senior
     executives); *In re Bally Total Fitness Sec. Litig.*, 2006 U.S. Dist. LEXIS 93986, at *27-28 (N.D. Ill.
24   July 12, 2006) (plaintiffs must set forth particularized facts suggesting that defendants acted
     knowingly or recklessly, and cannot rely on a "must have known" theory).

25          [4] Defendants other authorities, *Rombach v. Chang*, 355 F.3d 164, 172 (2d Cir. 2004), and *In re
26   Gemstar-TV Guide, Int'l Inc. Sec. Litig.*, 2003 U.S. Dist. LEXIS 25884, at *7, *28 (C.D. Cal. Aug.
     15, 2003), are distinguishable because they involved complaints pleading securities fraud *and* § 11
27   violations and failed to distinguish adequately the § 11 claim from the fraud allegations permeating
     the complaints.  Plaintiffs here assert no fraud-based claim, and their complaint hence does not
28   plead a unified course of fraudulent conduct that can import fraudulent intent into their § 11 claim.
     *Cf.*, *Daou*, 411 F.3d at 1027-28.

17), the Schwab Defendants essentially concede the claim satisfies Rule 8(a).  Their only challenges under 8(a) are cursory and relegated to two short footnotes.  *Id.* at 7 nn.4 & 5.  Defendants insist that the claim is insufficiently detailed for even Rule 8(a) purposes, while, ironically enough, they offer no supporting details.

Rule 8(a) merely requires that a claim be pled so as to give a defendant "fair notice of what the … claim is and the grounds upon which it rests," something that does not require pleading "specific facts to support [the complaint's] general allegations."  *Conley v. Gibson*, 355 U.S. 41, 47-48 (1957).  Notice pleading, regardless of the context, requires only general notice of a claim.  *See, e.g.*, *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168-69 (1993).  A plaintiff must plead only broad allegations of the *prima facie* elements of an alleged violation.  Plaintiffs must also plead "enough facts to state a claim to relief that is plausible on its face" and "raise a right to relief above the speculative level."  *E.g., Williams v. Gerber Prods. Co.*, 523 F.3d 934, 938 (9th Cir. 2008) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1965, 1974, 167 L. Ed. 2d 929 (2007)).  What Rule 8 does *not* require is detailed factual pleading.  *Twombly*, 127 S. Ct. at 1964, 1974.

The Schwab Defendants accuse Plaintiffs of engaging in "puzzle-style" pleading, Br. at 7 n.5, yet Defendants offer little detail as to why.  Such conclusory and unsupported arguments do not suffice.  *See, e.g., Meridia Prods. Liab. Litig. v. Abbott Labs.*, 447 F.3d 861, 868 (6th Cir. 2006) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones."); *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) (same); *In re Irwin*, 2007 U.S. Dist. LEXIS 45848, at *26 (E.D. Cal. June 13, 2007) (same).  In any event, Plaintiffs' allegations satisfy Rule 8(a).

### a. The Complaint links each misrepresentation to an explanation of its falsity

The Schwab Defendants' inability to identify particular deficiencies is understandable, as Plaintiffs sufficiently link their allegations of misrepresentations to explanations of their falsity.  Even the introduction makes the very connections Defendants insist are lacking.  It summarizes the

1   misrepresentations (¶¶ 4-5) and then explains why each is false or misleading (¶ 6).  Indeed, ¶ 6's

2   seven sub-paragraphs of explanations correspond to ¶ 4's seven sub-paragraphs of misrepresenta-

3   tions.  This alone rebuts Defendants' puzzle-pleading objection.

4       For example, ¶ 4's first bullet point alleges the pivotal YieldPlus misrepresentation:  "The

5   Fund is 'an ultra short term bond fund designed to offer high current income with minimal changes

6   in share price.'"  The first sub-paragraph of ¶ 6 then explains why this representation is false:

7         The Fund had elements of credit and liquidity risk not consistent for a
      fund represented to be an "ultrashort bond fund."  Given the asset com-

8         position of the Fund, and its resulting exposure to interest rate risk,
      credit risk and liquidity risk, it was not a "short term bond fund design-

9         ed to offer high current income with minimal changes in share price."

10      As another example, ¶ 4's second bullet point alleges that the "Fund seeks to keep the

11  average duration of its portfolio at one year or less."  The second sub-paragraph of ¶ 6 explains that

12  this is false because the actual duration "exceeds two years."

13      The body of the Complaint sets forth in greater detail the allegations contained in ¶¶ 4-6.

14  For instance, ¶ 130 alleges that the registration statements contained false and misleading state-

15  ments.  Paragraph 49 specifically identifies the eight registration statements.  Paragraphs 50 and 51

16  identify a series of prospectuses and Statements of Additional Information ("SAIs").[5]  Paragraphs

17  55-71 identify a group of YieldPlus misrepresentations repeated largely verbatim in a series of

18  prospectuses and SAIs spanning several years.

19      For each group of misrepresentations, Plaintiffs explain precisely why they were false.  *See*

20  ¶¶ 56, 58, 60, 62, 64, 66, 68, 70, and 72, all of which refer to the seven pages of explanations

21  alleged in ¶¶ 86-87.  The various sub-parts of these two paragraphs easily correlate to the alleged

22  misrepresentations.  For example, ¶ 86(a) and (b) explain why the Fund was not an "ultra short

23  term bond fund" with an "average duration in its portfolio at one year or less," and links to the first

24  misrepresentation alleged in ¶¶ 55, 57, 59, 61, 63, 65, 67, and 69.  Likewise, Plaintiffs explain why

25  the persistent representation that the Fund portfolio provided "minimal risk in share price" or "was

27     [5] Each registration statement attached a prospectus (*see, e.g.*, Exhibit A to the Declaration of
Steve W. Berman in Opposition to Schwab Defendants Motion to Dismiss), and each Statement of

28  Additional Information was incorporated into a prospectus (¶ 51).

similar" to a money-market fund was false.  *Compare* ¶ 86(d) *with, e.g.,* ¶ 65 (first, second, fifth,

seventh and ninth misrepresentations).  And ¶ 86(g) explains why the Fund's use of the Lehman

Brothers U.S. Short Treasury index as a comparison was misleading, identified as the eighth

alleged misrepresentation in, for example, ¶ 65.  These links explain the Schwab Defendants'

refusal to detail their claim of puzzle-style pleading.

### b. Taken as true, Plaintiffs' allegations plead more than enough facts to support their § 11 claim

#### (i) Defendants do not challenge the key contentions of "ultra short" and "minimal changes in price"

Schwab parses out six categories of contentions for individual treatment, ignoring the role

these categories collectively play in making the Fund riskier than represented.  Br. at 8-14.  In

doing so, the motion fails to address the first claim (¶ 86(a)) concerning assertions that the Fund

was an "ultra short term fund" designed to offer minimal changes in price.  *Id*.  The Complaint

identifies a series of misstatements (¶¶ 86(b)-(h) & 87) that individually *and* collectively make the

"ultra short" and "minimal changes" representations misleading.  In other words, misrepresenta-

tions relating to the six categories cited by Defendants – duration, coupon dates and maturity dates,

concentration, the proper industry index with which to compare the Fund, and asset valuations and

classifications – all feed into the misrepresentations of "ultra short" and "minimal changes."

This is important because courts do not "prune" individual allegations of a claim challenged

in a motion to dismiss.  A plaintiff need not respond to each allegation of misrepresentation or

omission challenged by a defendant, but must only generally establish valid claims for material

misrepresentations.[6]  *Cooper v. Pickett*, 137 F.3d 616, 623 (9th Cir. 1998) (where some allegations

are actionable, no need to resolve all others until after discovery complete); *Bernheim v. Litt*, 79

F.3d 318, 326 (2d Cir. 1996) (no need to "'prune' a complaint at the pleading stage" by testing

each allegation if claim "is legally cognizable when viewed in its totality"); *In re Spiegel, Inc. Sec.

Litig.*, 382 F. Supp. 2d 989, 1025 (N.D. Ill. 2004) (if at least some violations, material misstate-

---

[6] Likely for this reason Defendants do not move to dismiss from Plaintiffs' § 12(a)(2) claim allegations concerning misrepresentations made in Schwab's advertising materials, and instead ask the Court to strike them under Fed. R. Civ. P. 12(f).  Defs. Mtn. to Strike (Ct. Rec. 117) at 3-4.

1  ments and omissions alleged by plaintiffs are actionable, parsing through allegations is not

2  required); *Westways World Travel v. AMR Corp.*, 182 F. Supp. 2d 952, 957 (C.D. Cal. 2001)

3  (pruning not required).  Plaintiffs have already established that they properly state a § 11 claim

4  against the Schwab Defendants.  They do not also have to establish that every alleged misstatement

5  is actionable in responding to Defendants' motion.  Nonetheless, because Defendants parse the

6  allegations into groups, Plaintiffs respond in kind.

7  **(ii)      Duration**

8          The offering materials taken as a whole emphasize "duration … at one year or less" and the

9  "ultrashort" nature of the Fund.  ¶¶ 4, 55, 57, 59, 61, 65, 67, 69.  Duration is critical to the ability of

10 the Fund to maintain a level of risk consistent with the goal of "minimal exposure of interest rate

11 risk."  ¶ 6.  By misrepresenting duration, Defendants misrepresented the risk and stability of the

12 Fund.  ¶ 86(a)-(b).  The misrepresentation and its basis are clearly identified and, as such, state a

13 claim.  And Plaintiffs supplement those facts with actual valuations provided by a sophisticated

14 industry expert.  ¶¶ 6, 86(h), 165.  While Defendants incorrectly argue that Rule 9(b) is a bar (Br. at

15 8-9, 14), they concede by silence that these expert valuations suffice under Rule 8.[7]

16 **(iii)      Coupon Dates and Maturity Dates**

17         Plaintiffs allege that Defendants misrepresented maturity dates for certain securities listed

18 in the holding reports by reporting the securities' coupon reset dates as the maturity dates.  The

19 effect of the misrepresentation is to falsely reinforce the Fund as ultrashort.  ¶¶ 6, 86(c).

20 Defendants respond by quoting the November 15, 2007 SAI, which, they claim, discloses the

21 practice of listing the next interest rate change date as the effective maturity date for those

22 securities with a variable rate.  Br. at 9-10.  This disclosure does not cure the misrepresentation.  In

23 the quotation that Defendants provided, they omitted the following sentence:  "The effective

24 maturity of mortgage-backed and other asset-backed securities is determined on an 'expected life'

25

26         [7] Defendants' authorities, *In re Silicon Storage Tech., Inc., Sec. Litig.*, 2007 U.S. Dist. LEXIS 21953, 2007 WL 760535 (N.D. Cal. Mar. 9, 2007), *In re Textainer P'ship Secs. Litig.*, 2006 U.S.

27 Dist. LEXIS 84395, 2006 WL 3247425 (N.D. Cal. Aug. 10, 2006), and *In re Valence Tech. Sec. Litig.*, 1995 U.S. Dist. LEXIS 10379, 1995 WL 274343 (N.D. Cal. May 8, 1995), uniformly

28 involved claims subject to Rule 9(b) and/or the PSLRA's heightened pleading requirements.

1   basis by the investment adviser."  This is an important omission because the eight security

2   examples cited by Plaintiffs at ¶ 86(c) are mortgage- and asset-backed securities for which the

3   purported variable-rate disclosure does not apply.  Instead, the "expected life" basis applies, a

4   method for determining effective maturity that includes additional factors such as prepayment,

5   default and other risks.  Listing the coupon reset date as the maturity date does not conform to the

6   "expected life" method of determining effective maturity.  It is thus simply implausible for the

7   stated maturity dates in the examples cited by Plaintiffs to be anywhere near the true effective

8   maturity dates based on the "expected life" method when, as Plaintiffs explained, true maturities

9   were beyond 2034.  *See* ¶ 86(c).  Showing "the earlier or its demand date or the next interest rate

10  change date" for mortgage- and asset-backed securities, as Defendants have done, misleads

11  investors as to the term of the securities.  Plaintiffs' allegations relating to coupon dates and

12  maturity dates satisfy Rule 8, and Defendants' purported "disclosure" is not a defense.

### (iv)      Concentration

14          Schwab mistakenly claims that Plaintiffs allege the Fund misrepresented that it would not

15  invest more than 25% of its assets in any one industry.  Br. at 10 (citing ¶¶ 11, 86(d)).  But these

16  paragraphs (or any other) do *not* allege this statement was a misrepresentation.  Indeed, as Schwab

17  argues (Br. at 11-12), the Fund timely disclosed that it was exceeding the 25% limit, and this state-

18  ment, standing alone, is not a basis for the § 11 claim.  It is, rather, the foundation of Plaintiffs'

19  state-law claims, which are not based on any misrepresentation.  *See infra* at 15.  But the charging

20  paragraph does allege a misrepresentation that, when the asset allocation exceeded 25%, other

21  aspects of the offering materials became misleading.  The level of concentration in risky assets was

22  inconsistent with the "core purpose of this Fund and with the stated representation that the Fund

23  presents a risk of "minimal change in price" or "was similar to a money market fund."  ¶ 86(d).  In

24  other words, "[t]his change in asset concentration is inconsistent with the representations regarding

25  share price stability and safety."  *Id.*  That is how the over-concentration allegations of ¶ 86(d)

26  relate to the § 11 claim.

### (v)      Benchmark Index

28          Schwab asserts that it was not misleading to compare the Fund to the Lehman Brothers U.S.

1    Short Treasury:  9-12 months because the "index had the same average duration as the YieldPlus

2    fund, and, as a result, provides the most suitable available benchmark."  Br. at 12.  Of course, by

3    making such a statement, Defendants admit that it would be misleading to invoke the index if the

4    true duration of the Fund differed, which is precisely what Plaintiffs allege.  Plaintiffs allege that it

5    was misleading for the Fund, which concealed that portfolio duration was over two years (¶ 86(a)),

6    to compare its performance and safety to a fund with asset duration of under a year.  *See* ¶ 6 (third

7    subparagraph).[8]  Defendants characterize Plaintiffs' claim as alleging that the comparison was

8    misleading *solely* based on the assets of the two funds' divergent "credit quality," Br. at 12-13, but

9    that is not the case given that Plaintiffs' allegation also specifically focused on duration.

10   Defendants also attempt to excuse the comparison by claiming that the SEC required it.  Br. at 12,

11   lines 18-19.  But it is not a defense, especially at the pleading stage, that Defendants chose the

12   wrong index for purposes of comparison.

13                       **(vi)    Asset Valuations**

14        Plaintiffs also sufficiently plead that the Fund's asset mis-valuations were material, and

15   they cite a number of  mis-valued assets as examples.  ¶ 86(h) ("For example, here is a comparison

16   of value … for just a few of the assets…. Here are other examples …").  Plaintiffs explicitly allege

17   that "there are many more examples."  *Id.* at page 46.  Yet from this, Defendants argue that

18   Plaintiffs fail to allege materiality because these examples by themselves constitute an immaterial

19   portion of the Fund's portfolio.  Br. at 13.

20        But Plaintiffs' allegation that "there are many more examples" must be taken as true.  *See*

21   *SEC v. Trabulse*, 526 F. Supp. 2d 1001, 1003 (N.D. Cal. 2007).  Further, because the specific

22   examples alleged in the Complaint result from Plaintiffs' expert's random sampling of the Fund's

23   valuation, the Court can reasonably infer that the Fund's valuation errors extend far beyond those

24   examples.  *See generally Jacobson v. Hughes Aircraft Co.*, 105 F.3d 1288, 1296 (9th Cir. 1997)

25

26

27        ---

          [8] *See also* ¶ 86(g) ("[t]he falsity of the comparison to the Lehman short term fund index is
     further evidenced by the fact that of the dozens of funds that are 'ultra short,' the Fund's decline is
28   dramatically different than the reaction of other ultra short funds to changes in the market").

1    (plaintiffs entitled to reasonable inference on motion to dismiss).[9]

2          Defendants also ignore the standards for pleading materiality.  A misrepresentation is

3    material when an investor would attach importance to it in making an investment decision.  *See*

4    *Basic, Inc. v. Levinson*, 485 U.S. 224, 231 (1988).  "Although a court may dismiss a claim on the

5    ground that a misstatement or omission was not material, the standard for doing so is high."  *In re*

6    *Sterling Foster & Co. Sec. Litig.*, 222 F. Supp. 2d 216, 262 (E.D.N.Y. 2002) (quotation marks

7    omitted); *In re DDi Corp. Secs. Litig.*, 2005 U.S. Dist. Lexis 28216, at *40-41 (C.D. Cal. July 20,

8    2005) (quoting *Sterling Foster*).  In fact, the adequacy of the disclosure or the immateriality of the

9    statement can be resolved as a matter of law only where it is so obvious that reasonable minds

10   could not differ.  *Stac*, 89 F.3d at 1405 (applying *Fecht v. Price Co.*, 70 F.3d 1078, 1080 n.1 (9th

11   Cir. 1995), to Rule 12(b)(6) motion); *In re DDi Corp.*, 2005 U.S. Dist. Lexis 28216, at *41.  The

12   issue of whether a statement or omission is material thus is usually a question for the fact finder.

13   *See*, *e.g.*, *Basic*, 485 U.S. at 239-40; *Kaplan v. Rose*, 49 F.3d 1363, 1381 (9th Cir. 1994).

14          Plaintiffs have alleged that the Fund misrepresented the value of its assets, and their

15   illustrative examples show that materiality is, at least, plausible.  A reasonable investor, knowing

16   that the securities identified in ¶ 86(h) were merely examples of a pervasive valuation problem,

17   could find it material that the Fund overvalued those 14 securities and understated their losses to

18   the Fund.  A reasonable investor might also conclude that these valuation problems indicated

19   weaknesses in internal accounting controls and therefore influence the decision to invest in the

20   Fund.  That is enough to allege materiality under Rule 8(a).

21                        **(vii)     Asset Classifications**

22          Plaintiffs allege that Defendants also misled by misclassifying some securities listed in the

23   holdings reports first as variable rate and then fixed rate.  ¶ 87.  Defendants claim that Plaintiffs fail

24   to explain why this amounts to a misrepresentation and that, in any event, it could not be material

25   to any reasonable investor.  Br. at 14.  But the Complaint alleges that the switch was material to a

26

27          [9] This distinguishes Defendants' sole authority, *In re JPMorgan Chase Sec. Litig.*, 363 F. Supp.
     2d 595, 630-31 (S.D.N.Y. 2005), where the alleged mislabeled assets comprised the full extent of
28   the financial misreporting rather than a representative sample.

1    reasonable investor and concealed the fact that the portfolio was riskier than represented.   ¶ 88.

2    Again, whether a statement or omission is material is usually for the fact-finder to determine.  *See*,

3    *e.g.*, *Basic*, 485 U.S. at 239-40.  Defendants respond that securities can oscillate between being

4    fixed rate and then variable rate, Br. at 14, but this does not render representing variable rate

5    securities as fixed rate not misleading when the representation happens to be false, which is

6    precisely what Plaintiffs allege.

7             **3.**      **Defendants fail to establish that their purported loss-causation affirmative**
8                          **defense will prevail as a matter of law**

9          Although the Schwab Defendants disparage Plaintiffs for not attempting to allege loss caus-

10    ation (Br. at 15), loss causation is *not* an element of a § 11 claim.  *See* § 11(a), 15 U.S.C. § 77k(a).

11    It is, rather, presumed from a materially misleading prospectus, and thus can appear only as an

12    affirmative defense under § 11(e), which concerns measuring damages in a § 11(a) claim.  *See*

13    *Smith v. Suprema Specialties, Inc.*, 2007 U.S. Dist. LEXIS 30001, at *24 (D.N.J. Apr. 23, 2007);

14    *Freeland v. Iridium World Communs.*, *Ltd*., 233 F.R.D. 40, 46-47 (D.D.C. 2006).  Plaintiffs thus

15    need not allege it at all.

16          Even so, where it is an element of a claim, loss causation is easily pled.  All that is required

17    are allegations of "facts to support a theory that is not facially implausible."  *In re Gilead Scis. Sec.*

18    *Litig.*, 536 F.3d 1049, 1057 (9th Cir. 2008).  And to establish their purported loss-causation defense

19    under § 11(e), the Schwab Defendants must prove that the depreciation in the value of YieldPlus

20    shares resulted from factors other than the alleged material misstatements in its registration

21    statements.  *See In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407, 1422 (9th Cir. 1994).

22          Defendants here have not shown that, as a matter of law, they will succeed in proving that

23    other factors caused Plaintiffs' losses.  Their only argument is that their alleged misrepresentations

24    did not inflate the NAV of the Fund's shares, and no corrective disclosure triggered the dramatic

25    drop in Fund NAV.  Br. at 15.  But this Court has already rejected a similarly blindered view of

26    loss causation.  In *Siemers v. Wells Fargo & Co*., 2007 U.S. Dist. Lexis 21935, at *16 (N.D. Cal.

27    Mar. 9, 2007), plaintiffs alleged a securities-fraud claim arising from losses stemming from the

28    diminution in a mutual fund's value caused by secret kickbacks paid from the fund's assets.  In

1    urging dismissal, defendants there asserted the same argument as the Schwab Defendants.  *See id.*

2    at *46.  This Court disagreed, reasoning that loss causation, as recently refined in *Dura Pharm.,*

3    *Inc. v. Broudo*, 544 U.S. 336, 347 (2005), is a broad concept encompassing many theories of loss.

4    *Dura* did not limit causation to an allegation that the share price plummeted after the truth was

5    disclosed, which is only one example of pleading loss causation.  2007 U.S. Dist. Lexis 21935, at

6    *45-46 (citing *Dura*'s explanation that a plaintiff need only give some indication of the causal

7    connection so that the defendant is fairly on notice of the plaintiff's causation theory).  This alone

8    is reason to reject the Schwab Defendants' argument.

9         This Court then sustained plaintiffs' loss-causation theory that defendants' misconduct,

10   concealed by misrepresentations, diminished the fund's NAV.  *Id.* at *45-46.  Plaintiffs' allegations

11   here support an equally viable loss-causation theory (which, again, Plaintiffs need not plead at all).

12   Defendants' misconduct of larding the Fund's portfolio with risky, long-term securities, misrepre-

13   sented as safe and of short duration, in order to pump up the Fund's returns to attract new investors,

14   caused the Fund's NAV to crash when those misrepresented securities' concealed risks were rea-

15   lized.  *See* ¶¶ 13-16.  Indeed, the sharp contrast between the Fund's massive losses and the *gains* of

16   purportedly comparable funds (*see* ¶ 120) confirms that Defendants' misconduct caused the Plain-

17   tiffs' losses.  Accordingly, as in *Siemers*, the underlying misconduct, not the related cover-up,

18   caused the losses.  As this Court concluded, such allegations sufficiently plead loss causation.

19   2007 U.S. Dist. Lexis 21935, at *46.

20        Defendants' authorities dismissing § 11 claims involved plaintiffs who could not possibly

21   rebut the negative-loss-causation defense because their losses occurred *before* any corrective

22   disclosure was issued.  *See In re Merrill Lynch & Co. Research Reports Sec. Litig.*, 272 F. Supp.

23   2d 243, 254 (S.D.N.Y. 2003); *In re McKesson HBOC Secs. Litig.*, 126 F. Supp. 2d 1248, 1262

24   (N.D. Cal. 2000).  Here, by contrast, Plaintiffs regrettably still owned their YieldPlus shares when

25   its value collapsed.[10]

26

27        [10] Defendants also cite *In re DNAP Secs. Litig.*, 2000 U.S. Dist. LEXIS 13482, at *8, 2000 WL
28   1358619 (N.D. Cal. Sept. 13, 2000), which is inapposite.  Plaintiffs there were asserting liability
     for a misleading merger proxy statement, which required them to prove that, absent the

1      Also distinguishable is *Verona Partners, LLC v. Tenet Capital Partners Conv. Opportun-*

2  *ities Fund LP*, 2006 U.S. Dist. LEXIS 69488, 2006 WL 2660935 (N.D. Cal. Sept. 18, 2006).  The

3  movant, Olympia Capital Associates ("Olympia"), which other defendants had hired to serve as

4  their hedge fund's professional fund administrator, played a strictly administrative role, including

5  issuing periodic reports, and did not make investment decisions for the fund.  *Id.* at *5-6.  The

6  plaintiffs' § 10(b) securities-fraud claim against Olympia alleged only that Olympia wrongfully

7  delayed issuing a report to investors that, when eventually issued, revealed the other defendants'

8  misconduct with respect to the fund, and that plaintiffs purchased fund shares during that delay.  *Id.*

9  at *11.  Conceding that plaintiffs sufficiently alleged transaction causation, Olympia sought dismis-

10 sal because the complaint did not allege loss causation.  *Id.* at *37-38.  The court agreed, citing two

11 independent defects in the complaint:  the complaint "alleges [i] no facts showing a connection

12 between the decline in the value of the Fund and the claimed omission (the failure to issue a

13 report), and [ii] alleges no facts showing that Olympia participated in" the other defendants' mis-

14 conduct.  *Id.* at *39-40.  Unlike Olympia, however, the Schwab Defendants are alleged to have

15 directly "participated in" the misconduct that caused the Fund's sharp losses.  Such allegations

16 suffice even under *Verona Partners*.

17 **B.      Plaintiffs Sufficiently Plead Their Section 12 Claim**

18      As shown, Plaintiffs sufficiently allege that the various prospectuses were false and mis-

19 leading.  *See supra* at 7-12.  They are equally so under § 12.  The Schwab Defendants also do not

20 dispute that Plaintiffs sufficiently allege material misrepresentations in other written and oral com-

21 munications.  ¶¶ 77-85.

22      Several Defendants do dispute that Plaintiffs sufficiently plead their roles as "sellers" under

23 § 12, although The Charles Schwab Corp. and Schwab Investment concede their status as sellers.[11]

24 Br. at 17.  The Independent Trustee Defendants also move to dismiss on this same ground, and

25 Plaintiffs refer the Court to their response thereto.  *See* Trustees' Opposition, at 15-19, which is

---

26 misrepresentation, they would have opposed the merger or sought a better exchange ratio.
Defendants do not suggest how such a test could or should apply here.

27      [11] Schwab Investment concedes it passed title of the securities to Plaintiffs.  This alone is
28 sufficient.  *Pinter v. Dahl*, 486 U.S. 622, 642 (1988).

1   incorporated herein by this reference.  We add here that Defendants Charles A. Schwab, Dilsaver,

2   Merk and Pereira signed offering documents (¶¶ 30-33), Daifotis was a senior executive with

3   Schwab Investments and was the Fund's manager, and Hasting was primarily responsible for day-

4   to-day managing the Fund  (¶¶ 41-42).  Further, Daifotis and Hasting were both involved in

5   marketing the Fund.  *Id*.  These allegations suffice to bring these defendants within the ambit of

6   "sellers" under § 12.

7          The Schwab Defendants' loss-causation argument (Br. at 17) fails under § 12 as well for the

8   same reason as under § 11.

9   **C.      Plaintiffs Sufficiently Plead § 15 Control-Person Liability Against the Defendants**

10         The Schwab Defendants move to dismiss the § 15 control-person claim, asserting that

11  Plaintiffs never explain how those Defendants actually exercised actual power or control over the

12  Fund.  Br. at 17-18.  The Independent Trustee Defendants also move to dismiss on this same

13  ground, and Plaintiffs refer the Court to their response thereto for a discussion of control-person

14  standards.  *See* Trustees' Opposition at 19-22, which is incorporated herein by this reference.

15         Plaintiffs' general allegation at ¶ 148 satisfies these standards.  And even though the Defen-

16  dants are vague as to which of them actually disputes Plaintiffs' controlling-person allegations, we

17  note that three of the individual Schwab Defendants were senior officers of the Fund or its invest-

18  ment advisor, ¶¶ 31-33, and all of the individual § 15 defendants signed the Fund's Registration

19  statements and financial disclosures (¶¶ 32-40), conduct that this Court deems by itself to suffi-

20  ciently indicate "activities typical of managers with the ability to control or influence a corpora-

21  tion."  *See LDK Solar Secs. Litig.*, 2008 U.S. Dist. LEXIS 80717, at *39 (N.D. Cal. Sept. 24,

22  2008).  The Charles Schwab Corporation and Charles Schwab & Co., Inc. (the only entities whose

23  control is questioned in Defendants' brief) control the Fund as parent companies of its investment

24  advisor who operate from the same offices.  ¶¶ 25-27.  This is sufficient.  *See Alderman v. SEC*,

25  104 F.3d 285, 287 (9th Cir. 1997).

26  **D.      SLUSA Does Not Preempt Plaintiffs' State-Law Claims**

27         The Schwab Defendants' facile preemption argument ignores the substance of Plaintiffs'

28  claims and instead relies solely on each claim's incorporation-of-prior-allegations clause.  Br. at

1    18-19.  But examining Plaintiffs' actual allegations, it is clear that Plaintiffs' state-law claims are

2    not preempted.

3         SLUSA preemption requires a private "covered class action" based upon a state's statutory

4    or common law alleging "an untrue statement or omission of a material fact in connection with the

5    purchase or sale of a covered security …."  15 U.S.C. 77p(b)(1); 15 U.S.C. 78bb(f)(1)(A).  SLUSA

6    does not preempt Plaintiffs' state-law claims because the claims do not arise from (i) a misrepre-

7    sentation (ii) in connection with a securities transaction.

8         The state-law claims do not concern a misrepresentation.  Plaintiffs allege that their state-

9    law claims arose instead when the Fund, as ordered by Defendants, violated its fundamental no-

10   concentration policy and set forth in various SAIs incorporated by reference into the Fund's

11   prospectuses.[12]  ¶¶ 7-11, 152-55.  Plaintiffs specifically do *not* assert that this violation involved

12   any misrepresentation – for the very reasons Defendants describe.  *See* Br. at 11-12.  As

13   Defendants admit, the Fund "fully disclosed" its decision to concentrate assets in mortgage-backed

14   securities, and, as they insist, "[n]o investor could have been misled …."  *Id.*; *see also* ¶¶ 162, 164.

15   Plaintiffs agree; they do not allege a misrepresentation regarding the Fund's no-concentration

16   fundamental policy.

17        Nor do the state-law claims involve a securities transaction.  Plaintiffs assert these claims

18   on behalf of a "State-Law Class" consisting of persons or entities who owned shares of the Fund at

19   any time and continued to own them when their value dropped as a result of the violations of the

20   Fund's fundamental policy.  ¶ 122(b).  These claims do not concern a securities transaction

21   coinciding with or otherwise connected to a misrepresentation.  Compare this to the "Securities

22   Class," which consists of persons or entities "who acquired shares of the Fund traceable to a false

23   or misleading Registration Statement …."  ¶ 122(a).  The state-law claims hence are not based on a

24   securities transaction that coincides with a misrepresentation, and SLUSA therefore does not

25   preempt them.  *See*, *e.g.*, *Perretta v. Prometheus Dev. Co.*, 2005 U.S. Dist. Lexis 38729, at *13

26

27   ───────────────
     [12] The the Investment Company Act ("ICA") required the Fund to disclose its fundamental
28   investment policies, which cannot be changed or deviated from without prior approval of a major-
     ity of shareholders.  *See* ICA § 8, 15 U.S.C. 80a–8(b)(1)-(3); ICA § 13(a), 15 U.S.C. 80a-13(a)(3).

(N.D. Cal. Dec. 15, 2005) ("[s]ince the complaint did not focus on any untrue statements or omissions, the complaint is not subject to dismissal under SLUSA"); *Strigliabotti v. Franklin Res., Inc.*, 398 F. Supp. 2d 1094, 1103 (N.D. Cal. 2005) (SLUSA inapplicable where "[t]he gravamen of plaintiffs' complaint does not concern the purchase or sale of securities").

Notwithstanding these allegations, the Schwab Defendants insist that the State-Law Claims are something different, not by examining the relevant allegations, but because of the claims' pro forma "incorporation of prior allegations" clauses. Br. at 19. But Defendants cite no authority that such pro forma incorporation itself triggers preemption irrespective of the state-law claims' substantive allegations. In fact, courts properly reject such nonsense. *See*, *e.g.*, *LaSala v. Bordier Et Cie*, 519 F.3d 121, 141 (3d Cir. 2008) (reversing district-court preemption decision and rejecting incorporated-by-reference allegations as extraneous and thus of "no bearing" on whether SLUSA preempts claim).[13]

Further, if the Court concludes that the state-law substantive allegations do not involve securities transactions connected to a misrepresentation but the incorporate-prior-allegations clause nonetheless have enough "bearing" on the claims to invoke SLUSA preemption, Plaintiffs ask for leave to amend to strike those incorporation clauses and any other general allegation that might appear to inject misrepresentation allegations into the state-law claims. *See Beary v. ING Life Ins. & Annuity Co.*, 520 F. Supp. 2d 356, 364-65 (D. Conn. 2007). This relief is all the more appropriate given this consolidated action's procedural history. Plaintiffs Robert Levin and Karl Kyzer filed a complaint in a separate action (3:08-cv-02487-WHA, N.D. Cal.) on May 15, 2008, that asserted only state-law claims. On June 11, this Court consolidated his action with the various securities actions. Levin and Kyzer resisted consolidation, initially by communication with the Court, prompting the Court's June 16 Order to Show Cause. Ct. Rec. 55. They responded on June

---

[13] But unlike here, where incorporated allegations of misrepresentations are, in fact, pertinent to a state-law claim, courts do find them relevant. *See Professional Mgmt. Assocs., Inc. Employees Profit Sharing Plan v. KPMG LLP*, 335 F.3d 800, 803 (8th Cir. 2003) ("[b]ecause [plaintiff's] negligence claim is essentially a securities fraud claim, SLUSA governs"). And to the extent any courts found incorporating references alone sufficient to trigger preemption, they rely on an interpretation of a Third Circuit decision, *Rowinski v. Salomon Smith Barney Inc.*, 398 F.3d 294 (3d Cir. 2005), that the circuit later rejected, *see LaSala*, 519 F.3d at 141 (explaining *Rowinski*).

23, arguing against consolidation because their action, unlike the securities actions, did not involve

a misrepresentation.  Plaintiffs Levine and Kyzer's Response to Order to Show Cause Why Levine

Action Should Not Be Consolidated with Securities Actions, at 1 (Ct. Rec. 65); *see also id*. at 4-8.

The Court affirmed *Levin*'s consolidation by order dated July 3.  Ct. Rec. 74.

        The state-law claims thus reluctantly share the Consolidated Complaint with securities

claims.  Yet consolidation should not prejudice the consolidated parties.  *E.g.*, *Doug Brady, Inc. v.*

*New Jersey Bldg. Laborers Statewide Funds*, 2008 U.S. Dist. LEXIS 28324, at *14-15 (D.N.J. Apr.

7, 2008).  If Defendants assert that SLUSA preempts the State-Law Class's claims because they

mingle with the securities claims, Plaintiffs Levin and Kyzer, on behalf of the State-Law Class, ask

this Court to reconsider its consolidation order and allow their claims to continue separate and

unencumbered by the securities claims.

**E.      Plaintiffs Properly Plead Defendants' Interference with Contractual Relations**

        **1.      A prospectus filed with the SEC can constitute a contract**

        Contending that the Fund's prospectuses cannot constitute a contract with Fund investors,

the Schwab Defendants fabricate a black-letter rule that SEC filings cannot constitute a contract.

But there is no such rule; courts have found that a prospectus can constitute a contract.[14]

        Defendants also point to qualities of the prospectuses that purportedly fall short of a valid

contract.  Br. at 20.  But these "deficiencies" are illusory; a contract can be defined by means of

multiple writings.  *See Kliff v. Hewlett Packard Co.*, 2008 U.S. App. LEXIS 23037, at *4 (9th Cir.

Nov. 6, 2008) (agreement can be expressed through a series of writings; citing California Civil

Code § 1642); *American Cas. Co. v. Baker*, 22 F.3d 880, 887 (9th Cir. 1994).  Here, the prospec-

---

[14] *See*, *e.g.*, *Caleb & Co. v. E. I. Du Pont de Nemours & Co.*, 615 F. Supp. 96, 102-03
(S.D.N.Y. 1985); *Kaiser-Frazer Corp. v. Otis & Co.*, 195 F.2d 838, 844 (2d Cir. N.Y. 1952);
*Franklin Life Ins. Co. v. Commonwealth Edison Co.*, 451 F. Supp. 602, 613 (S.D. Ill. 1978), *aff'd*,
598 F.2d 1109, 1110 (7th Cir. 1979) (*per curium*); *Spirit Partners, L.P. v. audiohighway.com*, 2000
U.S. Dist. LEXIS 7236, at *12-15 (S.D.N.Y. May 25, 2000); *see also Doppelt v. Perini Corp.*,
2002 U.S. Dist. LEXIS 4128, at *12-16 (S.D.N.Y. Mar. 12, 2002) (court presumed that a prospec-
tus could be a contract for a breach-of-contract claim, but concluded under the circumstances that
another document was the contract); *Kursman v. Wright/Egan & Assoc.*, 1988 U.S. Dist. LEXIS
12716, at *32 (E.D. Pa. Nov. 10, 1988) (where breach-of-contract claim did not identify any
specific document but plaintiffs asserted prospectus as the contract in their brief, court granted
leave to amend to name the prospectus).

1    tuses provided the essential terms of the Fund's securities that Plaintiffs purchased.  And while the

2    contracting documents might include additional writings that identify necessary terms and

3    conditions, this does not undercut the prospectuses' role as an integral contractual component.

4    Defendants cite no authority, because there is none, that courts must view a prospectus in isolation

5    to determine whether it constitutes a contracting document.

6           To the contrary, Defendants' authorities (Defs. Br. at 20 n.10) show only that in particular

7    cases a prospectus was not deemed to be a contracting document.  In *Cohen v. Stratosphere Corp.*,

8    115 F.3d 695, 701 (9th Cir. 1997), for example, the prospectus and subscription agreement were

9    not a contract because the prospectus expressly reserved to the issuer a right to withdraw the offer

10   for any reason, and thus, as the court noted, "[a] promise conditioned on a performance by the

11   promisor constitutes an illusory promise."  *Id.* at 701.  This was the only reason *Cohen* declined to

12   find the prospectus a binding contract.  *Id.*  Here, by contrast, nothing in the prospectus similarly

13   conditioned the offer to sell Fund shares.  Also, unlike in *Cohen*, the parties consummated their

14   transactions.  Under *Cohen*'s logic, the Fund's prospectus, supplemented by a Plaintiff's particular

15   subscription agreement, constituted the contract governing each Plaintiff's completed transactions.

16          Defendants rely on *McKesson HBOC, Inc. v. New York State Common Ret. Fund, Inc.*, 339

17   F.3d 1087, 1092 (9th Cir. 2003), to contend that a fund prospectus cannot constitute a contract

18   because it is also a disclosure document required under the federal securities law.  But *McKesson*

19   *HBOC* is inapposite because it involved the distribution of a prospectus in conjunction with a

20   statutory merger/consolidation, not a mutual-fund prospectus.  The *McKesson HBOC* court found

21   that another document, not the prospectus, was the contract between the parties, but for reasons not

22   pertinent here.

23          In that case, McKesson HBOC sued its own shareholders for unjust enrichment arising

24   from a merger between McKesson and HBOC in which, McKesson alleged, the former HBOC

25   shareholders benefited from a windfall created by HBOC accounting improprieties, which

26   allegedly granted them an overly generous exchange ratio in the merger.  *Id.* at 1089.  The court

27   had to determine whether a contract governed McKesson's relationship with the former HBOC

28   shareholders.  *Id.* at 1091.  The court found that the merger agreement formed the foundation of the

1  merger transaction and established the rights and obligations of each party.  *Id*. at 1092.  The proxy

2  statement/prospectus did not constitute the contract because it was not an offer by McKesson to the

3  HBOC shareholders to enter into a bilateral contract separate and apart from the merger agreement.

4  It instead merely referenced the merger agreement, advising shareholders that "[t]he merger cannot

5  be completed unless the stockholders of both companies approve the merger agreement and the

6  transactions associated with it."  *Id*.  Furthermore, individual shareholders did not accept the

7  exchange proposal described in the prospectus because the shareholders did not tender their shares,

8  distinguishing it from "a tender offer situation, where the courts have found a contract between the

9  corporation and an individual shareholder who tenders shares …."  *Id.* at 1092-93 (citing *In re Gulf*

10  *Oil/Cities Serv. Tender Offer Litig.*, 725 F. Supp. 712, 731 (S.D.N.Y. 1989)).[15]

11     Defendants hence fail to establish that the prospectus cannot, as a matter of law, be an

12  integral part of a contract with the Plaintiffs.

13        **2.        The Fund breached its no-concentration policy**

14     At the heart of all the state-law claims is Plaintiffs' allegation that the Fund, spurred by the

15  Defendants, violated its fundamental policy not to concentrate Fund assets in any particular

16  industry.  The ICA requires a fund's prospectus to recite the fund's policy regarding "concentrating

17  investments in a particular industry or group of industries" as well as any other investment policies

18  that "are changeable only if authorized by shareholder vote."  15 U.S.C. 80a-8(b)(1)(e) & (b)(2).

19  The ICA also prohibits a fund from deviating from its concentration-of-investments policy as

20  recited in its prospectus "unless authorized by the vote of a majority of its outstanding voting

21  securities."  15 U.S.C. 80a-13(a)(3).

22     The state-law claims concern the Fund's statement (set forth in its various SAIs, incorpora-

23  ted by reference into its prospectuses) of its fundamental policy regarding concentration of assets:

24

25

26

---

27  [15] The present prospectus, by governing the terms of a security that Plaintiffs actually purchased, is thus more akin to "a tender offer situation" that can create a contractual relationship
28  between issuer and shareholder than the proxy statement/prospectus at issue in *McKesson*.

INVESTMENT LIMITATIONS

> The following investment limitations are fundamental investment
> polices and restrictions and may be changed only by vote of a
> majority of a fund's outstanding voting shares….
>
> THE SCHWAB YIELDPLUS FUND® … MAY NOT:…
>
> 2)   Concentrate investments in a particular industry or group of
>      industries, as concentration is defined under the 1940 Act, or the
>      rules or regulations thereunder, as such statute, rules and
>      regulations may be amended from time to time;…. [¶ 153.]

To clarify, the SAIs added that "[t]he SEC has presently defined concentration as investing 25% or more of an investment company's net assets in an industry or group of industries, with certain exceptions." ¶ 154.  This fundamental investment policy thus assured shareholders that the Fund would remain well diversified.  Because this policy was "fundamental," the Board of Trustees could not legitimately change the policy without first obtaining approval by a majority of the Fund's shareholders.  ¶ 155.

In a separate SAI section, entitled "Investments, Risks and Limitations," the Fund also further described certain terms used elsewhere in the document, including the word, "concentration."  This description specifically advised investors that mortgage-backed securities constituted "a particular industry" and thus were subject to the Fund's no-concentration fundamental policy:

> Based on the characteristics of mortgage-backed securities, each fund
> has identified mortgage-backed securities … as a separate industry
> for purposes of a fund's concentration policy…. [¶ 156.[16]]

The Fund issued this statement in its SAIs dated as recently as September 16, 2005.  ¶ 156.

Yet by summer 2006, the Fund was violating its no-concentration fundamental policy by investing more than 25% of its assets in mortgage-backed securities, eventually reaching 50% – without ever seeking shareholder approval.  ¶¶ 158, 165-66.  Plaintiffs thus allege that the Fund, compelled by Defendants, violated the fundamental policy in violation of its prospectus.

Defendants did try to excuse their violation.  The Fund, by fiat and without shareholder approval, changed its policy by reversing its mortgage-backed securities-are-a-separate-industry

---

[16] Blind to their own irony, the Schwab Defendants deny that mortgage-backed securities can be an industry and profess to know of no industry classification system that so defines them.  Br. at 11, 21.

statement in its SAI amended September 1, 2006.  The new policy stated that mortgage-backed

securities "are not part of any industry for purposes of the fund's concentration policies."  ¶ 164.

Citing this new statement – while disregarding its prior one – the Schwab Defendants declare that

as a matter of law there was no violation of the Fund's policy.  Br. at 20-21, 10-12.

But Defendants ignore the Fund's initial policy.  They instead argue that the Fund was free

to revise its classification at whim, and apparently retroactively as well.  But their only authority,

the "SEC's Guide 19," says nothing of the sort.  It instead *confirms* that a fund wishing to change

its concentration policy must disclose its intention to do so and then obtain shareholder approval.

*Registration Form Used by Open-End Management Investment Companies; Guidelines*, SEC

Release Nos. 33-6479, IC-13436, 1983 SEC LEXIS 1030, at *203 (Aug. 12, 1983) (copy provided

for Court's convenience at Ex. B to the Berman Decl.).  The SEC made clear that "[f]reedom of

action to concentrate pursuant to management's investment discretion, without shareholder

approval, has been considered by the staff to be prohibited by sections 8(b)(1) and 13(a)(3) of the

1940 Act …." *Id.* at *203-04.  And while Guide 19 permits a fund to "select its own industry clas-

sifications," nowhere does it allow the fund to alter those classifications absent prior shareholder

approval.  Nor could it.  If a fund were permitted to undercut an existing concentration policy

simply by redefining an established industry classification to exclude a category of securities,

without obtaining shareholder approval, whatever protection provided by the fund's policy would

be lost – just as occurred here.  Sections 8 and 13(a) of the ICA do not permit such manipulations.

Finally, as to investors who purchased before the Fund reversed its policy, there can be no

question that the Fund violated its policy with them, which Defendants concede by their silence.

### 3.  The Schwab Defendants are strangers to the contract and can be liable for inducing the breach

Defendants assert that *none* of them "is a stranger to the contract alleged in plaintiffs' com-

plaint."  Br. at 22.  It is true that the particular defendants who signed the prospectus (*see* ¶¶ 30-

39) and the entity they represented (Schwab Investments) are contracting parties that cannot be

liable in tort for interfering with performance of the contract, *see Applied Equip. Corp. v. Litton*

*Saudi Arabia Ltd.*, 7 Cal. 4th 503, 514, 28 Cal. Rptr. 2d 475, 869 P.2d 454 (1994), and Plaintiffs

1   ask leave to amend their Complaint to assert a breach-of-contract claim against these defendants.

2   The rest, however, cannot hide from Plaintiffs' interference claim. California courts do not

3   interpret a "stranger" or "outsider" to a contract so narrowly. In *Woods v. Fox Broadcasting Sub.,*

4   *Inc.*, 129 Cal. App. 4th 344, 356 (Cal. App. 2d Dist. 2005), for example, the court rejected the same

5   argument asserted by the controlling shareholder of a party to a contract, concluding: "our courts

6   have allowed contract interference claims to be stated against owners, officers, and directors of the

7   company whose contract was the subject of the litigation." Judge Walker, citing *Woods*, ruled that

8   "contract … interference claims may lie against owners, officers, shareholders and directors of an

9   entity whose contract or economic relationship is the subject of the litigation." *Chaganti v. i2*

10  *Phone Int'l, Inc.*, 2007 U.S. Dist. LEXIS 56033, at *19 (N.D. Cal. July 23, 2007). Accordingly,

11  merely possessing an "economic interest" in a contractual relationship does not immunize a non-

12  signatory to a contract from liability for interfering with the contract. *G&C Auto Body Inc. v.*

13  *GEICO Gen. Ins. Co.*, 552 F. Supp. 2d 1015, 1021 (N.D. Cal. 2008) (explaining *Woods*).[17] The

14  non-signatory defendants (Schwab, Schwab Corp., Schwab Management) thus are "strangers to the

15  contract" and can be liable for interfering therewith.

16      **4.      Rule 9(b) does not apply to this claim**

17  Defendants try to impose Rule 9(b)'s particularized pleading requirements on yet another of

18  Plaintiffs' claims. But their sole authority, *Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502

19  (7th Cir. 2007), shows that Rule 9(b) is inapplicable here. *Borsellino* acknowledged that interfer-

20  ence claims are "by definition" not "fraudulent torts." 477 F.3d at 507. But because Rule 9(b)

21  applies to "averments," not claims, of fraud, "whether the rule applies" to a particular interference

22  claim "will depend on the plaintiffs' factual allegations." *Id.* The complaint in *Borsellino* expli-

23  citly pled fraudulent conduct, and that "[t]his fraud … was a tortious interference with the plain-

24  tiffs' economic advantage." *Id.* Indeed, the plaintiffs' own arguments pervasively referred to

25  fraud, especially in regard to the interference claim. *Id.* The plaintiffs thus conceded that Rule

---

26  [17] California courts also narrowly construe Defendants' authority, *Marin Tug & Barge, Inc. v.*
27  *Westport Petroleum, Inc.*, 271 F.3d 825 (9th Cir. 2001). *See Woods*, 129 Cal. 4th at 354;
    *G&C Auto Body*, 552 F. Supp. 2d at 1019-20 (explaining why federal courts should follow *Woods'*
28  narrow reading of *Marin Tug*).

9(b) applied to the claim. *Id*. at 508. Here, by contrast, the Complaint does not plead that any defendants acted with fraudulent intent. *Borsellino* instructs that, for the same reasons Rule 9(b) does not apply to Plaintiffs' other claims, *see supra* at 2-4, it also does not apply to their intentional-interference claim.

**F.      Plaintiffs State a Claim for Violating § 17200 Because the Claim Does Not Arise from a Securities Transaction**

Defendants seek dismissal of Plaintiffs' § 17200 claim, first asserting that the Fund did not violate its no-concentration fundamental policy. Br. at 23. But Plaintiffs already established that they sufficiently plead such a violation. *See supra* at 20-22.

They next argue that § 17200 does not apply to securities transactions. But Plaintiffs also show that their state-law claims do not concern securities transactions. *See supra* at 15-18. Defendants' primary authority, *Bowen v. Ziasun Tech., Inc.*, 116 Cal. App. 4th 777, 11 Cal. Rptr. 3d 522 (2004), addressed fraud in the sale of securities and did not encompass all situations where securities are somehow implicated but not purchased or sold. *Strigliabotti v. Franklin Res., Inc.*, 2005 U.S. Dist. LEXIS 9625, at *29-30 (N.D. Cal. Mar. 07, 2005). Courts thus find that § 17200 can be used to challenge misconduct that may relate to securities but do not directly concern a securities transaction. *See, e.g., id.*; *Overstock.com, Inc. v. Gradient Analytics, Inc.*, 151 Cal. App. 4th 688, 715 (Cal. App. 1st Dist. 2007) (distinguishing *Bowen* because the claims before the court "do not arise from any stock transactions between the parties"). Plaintiffs thus state claims against Defendants for violating § 17200.

**G.      Plaintiffs Plead a Claim for Breach of Fiduciary Duty**

Defendants mischaracterize Plaintiffs' breach-of-fiduciary-duty claim to recast it as a derivative claim. But Plaintiffs do not allege that Defendants' misconduct merely diminished the value of all shareholders' shares, as Defendants suggest. Br. at 24. They allege instead that the Fund treated them unequally by granting preferential buyouts to certain favored shareholders but not others. ¶¶ 12, 187. Such claims by definition allege injury to individual shareholders rather

1  than to all shareholders equally and are thus routinely asserted as direct claims.[18]  Plaintiffs here

2  hence properly assert their breach-of-fiduciary-duty allegations as a direct claim.

3       Plaintiffs' claim also encompasses Defendants' violation of Plaintiffs' voting rights by

4  unilaterally revising the Fund's no-concentration fundamental policy.  As shown, § 13(a) allows

5  such a change only if authorized by shareholder vote.  Any infringement of this shareholder right to

6  vote is an individual injury that can be asserted directly.  *Lapidus v. Hecht*, 232 F.3d 679, 683 (9th

7  Cir. 2000) (applying Massachusetts law).  The test to determine whether a claim should be brought

8  as a direct or derivative suit under Massachusetts law is whether the plaintiff has alleged "an injury

9  distinct from that suffered by shareholders generally or a wrong involving one of his or her con-

10 tractual rights as a shareholder…."  *Id*.  As its example, the Ninth Circuit cited injury to "the right

11 to vote."  *Id*.  Much like the allegations here, *Lapidus* found that allegations of violations of share-

12 holder contractual rights to vote on proposed changes to security restrictions spelled out in a regis-

13 tration statement satisfied the injury requirement for a direct action under Massachusetts law.  *Id*.

## IV.   CONCLUSION

15      For the reasons set forth above, the Court should deny the Schwab Defendants' motion to

16 dismiss, and should grant Plaintiffs leave to amend their Complaint to assert a breach-of-contract

17 claim against the defendants who signed the prospectus (*see* ¶¶ 30-39) and defendant Schwab

18 Investments.

19

20

21      [18] See, for example, *Frank v. LoVetere*, 363 F. Supp. 2d 327, 339 (D. Conn. 2005) (shareholder
22 asserted direct claim against corporation for unequal treatment); *Thompson v. Glenmede Trust Co.*,
   1994 U.S. Dist. LEXIS 17301 (E.D. Pa. Nov. 29, 1994) (shareholders asserted a direct action for
23 breach of fiduciary duty against corporation and its controller arising from differential treatment in
   connection with stock buy-back transaction); *In re Sea-Land Corp. Shareholders Litig.*, 642 A.2d
24 792, 799 (Del. Ch. 1993) (shareholder class action asserting direct claim for violating fiduciary
   duties to the shareholder class by approving a transaction treating similarly situated shareholders
25 differently); *Estate of William A. Millhon v. Millhon Clinic, Inc.*, 2007 Ohio 7153, P29 (Ohio Ct.
   App. Dec. 31, 2007) (minority shareholder in close corporation asserted direct breach-of-fiduciary-
26 duty claim for differential treatment); *Crosby v. Beam*, 548 N.E.2d 217, 220 (Ohio 1989) (holding
   that breach-of-fiduciary-duty claim by minority shareholders could be brought as individual rather
27 than derivative action); *Aronson v. Crane*, 145 A.D.2d 455, 456 (N.Y. App. Div. 2d Dep't 1988)
   (direct shareholder action alleging unequal stockholder treatment giving rise to breach of fiduciary
28 obligation to treat stockholders fairly and evenly).

1     Dated: November 26, 2008          HAGENS BERMAN SOBOL SHAPIRO LLP

2

3

                                        By: _____ /s/ Steve W. Berman _____

4

5                                      Reed. R. Kathrein
                                     Peter E. Borkon

6                                      715 Hearst Avenue, Suite 202
                                     Berkeley, CA 94710

7                                      Telephone: (510) 725-3000
                                     Facsimile: (510) 725-3001

8                                      reed@hbsslaw.com
                                     peterb@hbsslaw.com

9

10                                      Steve W. Berman
                                     Sean R. Matt

11                                      Erin K. Flory
                                     HAGENS BERMAN SOBOL SHAPIRO, LLP

12                                      1301 Fifth Avenue, Suite 2900
                                     Seattle, WA 98101

13                                      Telephone: (206) 623-7292
                                     Facsimile: (206) 623-0594

14                                      steve@hbsslaw.com
                                     sean@hbsslaw.com

15                                      erin@hbsslaw.com

16

17                                      *Attorneys for Lead Plaintiffs*

18

19

20

21

22

23

24

25

26

27

28