DARRYL P. RAINS (CA SBN 104802)
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, California 94304-1018
Telephone: 650.813.5600
Facsimile: 650.494.0792
Email: DRains@mofo.com

DOROTHY L. FERNANDEZ (CA SBN 184266)
KIMBERLY L. TAYLOR (CA SBN 240483)
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone: 415.268.7000
Facsimile: 415.268.7522

Attorneys for Defendants The Charles Schwab Corporation, Charles Schwab & Co., Inc., Charles Schwab Investment Management, Inc., Schwab Investments, Charles R. Schwab, Evelyn Dilsaver, Randall W. Merk, George Pereira, Kimon Daifotis, and Matthew Hastings

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE CHARLES SCHWAB CORP. SECURITIES LITIGATION | Master File No. C-08-01510-WHA<br><br>CLASS ACTION<br><br>REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS FIRST CONSOLIDATED AMENDED COMPLAINT<br><br>Date: January 8, 2009<br>Time: 8:00 a.m.<br>Judge: Hon. William H. Alsup<br>Courtroom: 9 |

# **TABLE OF CONTENTS**

| | Page |
|---|---|
| TABLE OF AUTHORITIES | ii |
| INTRODUCTION | 1 |
| ARGUMENT | 1 |
| I. PLAINTIFFS' SECTION 11 CLAIM MUST BE DISMISSED | 2 |
|    A. The YieldPlus Fund's Registration Statement Is Not Misleading. | 2 |
|       1. Duration | 4 |
|       2. Coupon Dates and Maturity Dates | 4 |
|       3. Concentration and Diversification | 5 |
|       4. Benchmark Index | 6 |
|       5. Asset Valuations | 6 |
|       6. Asset Classifications | 6 |
|    B. Plaintiffs Do Not Plead Loss Causation. | 7 |
| II. PLAINTIFFS' SECTION 12 CLAIM MUST BE DISMISSED | 8 |
| III. PLAINTIFFS' "CONTROL PERSON" CLAIM MUST BE DISMISSED | 9 |
| IV. PLAINTIFFS' STATE LAW CLAIMS ARE PREEMPTED BY SLUSA | 10 |
| V. COUNTS IV AND VI — FOR INTERFERENCE WITH CONTRACTUAL RELATIONS — MUST BE DISMISSED | 12 |
|    A. Plaintiffs Do Not Plead a Contract | 12 |
|    B. The Fund Did Not Breach Its Concentration Policy. | 12 |
|    C. Defendants Cannot Be Liable for Inducing a Breach of Contract | 13 |
|    D. Plaintiffs Do Not Properly Plead Intentional Interference. | 14 |
| VI. COUNTS V AND VII — FOR VIOLATIONS OF SECTION 17200 — MUST BE DISMISSED | 14 |
| VII. THE BREACH OF FIDUCIARY DUTY COUNT MUST BE DISMISSED | 15 |
| CONCLUSION | 15 |

# TABLE OF AUTHORITIES

**CASES**     Page(s)

*Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*,
   7 Cal. 4th 503 (1994)......................................................................................................13

*Bastian v. Petren Resources Corp.*,
   892 F.2d 680 (7th Cir. 1990) ............................................................................................8

*Behlen v. Merrill Lynch*,
   311 F.3d 1087 (11th Cir. 2002)......................................................................................11

*Borsellino v. Goldman Sachs Group, Inc.*,
   477 F.3d 502 (7th Cir. 2007) ..........................................................................................14

*Dudek v. Prudential Sec.*,
   295 F.3d 875 (8th Cir. 2002) ..........................................................................................10

*Estate of Bray*,
   230 Cal. App. 2d 136 (1964) ..........................................................................................12

*Feitelberg v. Merrill Lynch & Co.*,
   234 F. Supp. 1043 (N.D. Cal. 2002) ...............................................................................10

*Gold v. Morrice*,
   2008 U.S. Dist. LEXIS 43466 (C.D. Cal. Jan. 31, 2008) ................................................2

*In re Alliance N. Am. Gov't Income Trust, Inc. Sec. Litig.*,
   1996 WL 551732 (S.D.N.Y. Sept. 27, 1996)..................................................................13

*In re Anchor Gaming Sec. Litig.*,
   33 F. Supp. 2d 889 (D. Nev. 1999) ..................................................................................7

*In re DNAP Sec. Litig.*,
   2000 WL 1358619 (N.D. Cal. Sept. 14, 2000) ................................................................7

*In re Glenfed Sec. Litig.*,
   42 F.3d 1541 (9th Cir. 1994) .......................................................................................4, 5

*In re Harmonic, Inc. Sec. Litig.*,
   2006 WL 3591148 (N.D. Cal. Dec. 11, 2006) .................................................................9

*In re Herbalife Sec. Litig.*,
   1996 U.S. Dist. LEXIS 11484 (N.D. Cal. Jan. 25, 1996) ................................................6

*In re Infonet Servs. Corp. Sec. Litig.*,
   310 F. Supp. 2d 1080 (C.D. Cal. 2003) ...........................................................................9

*In re JP Morgan Chase Sec. Litig.*,
   363 F. Supp. 2d 595 (S.D.N.Y. 2005) ............................................................................... 7

*In re Morgan Stanley & Van Kampen Mut. Fund Sec. Litig.*,
   2006 WL 1008138 (S.D.N.Y. Apr. 18, 2006) .................................................................. 7

*In re Royal Ahold N.V. Sec. & ERISA Litig.*,
   351 F. Supp. 2d 334 (D. Md. 2004) .................................................................................. 8

*In re Software Publishing Sec. Litig.*,
   1994 WL 261365 (N.D. Cal. Feb. 2, 1994) ....................................................................... 4

*In re Stratosphere Corp. Sec. Litig.*,
   1 F. Supp. 2d 1096 (D. Nev. 1998) ................................................................................... 9

*In re Syntex Corp. Sec. Litig.*,
   1993 U.S. Dist. LEXIS 20420 (N.D. Cal. Sept. 1, 1993) ................................................. 4

*In re VeriFone Sec. Litig.*,
   11 F.3d 865 (9th Cir. 1993) ............................................................................................... 7

*In re Worldcom, Inc. Sec. Litig.*,
   2004 WL 1097786 (S.D.N.Y. May 18, 2004) ................................................................ 10

*In re Worlds of Wonder Sec. Litig.*,
   35 F.3d 1407 (9th Cir. 1994) ............................................................................................ 7

*Kane v. Madge Networks N.V.*,
   2000 WL 33208116 (N.D. Cal. May 26, 2000) ............................................................... 2

*Lapidus v. Hecht*,
   232 F.3d 679 (9th Cir. 2000) .......................................................................................... 15

*Leonard v. Netframe Sys., Inc.*,
   1995 WL 798923 (N.D. Cal. Aug. 8, 1995) ..................................................................... 4

*Lepp v. Gonzales*,
   2005 WL 1867723 (N.D. Cal. Aug. 2, 2005) ................................................................. 15

*Marin Tug & Barge, Inc. v. Westport Petr.*,
   271 F.3d 825 (9th Cir. 2001) ..................................................................................... 13, 14

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*,
   547 U.S. 71 (2006) .......................................................................................................... 11

*Overstock.com, Inc. v. Gradient Analytics, Inc.*,
   151 Cal. App. 4th 688 (2007) ......................................................................................... 14

*Pinter v. Dahl*,
   486 U.S. 622 (1988) .......................................................................................................... 9

*Rogal v. Costello*,
    1992 WL 426467 (N.D. Cal. Oct. 8, 1992) ..................................................................6

*Rowinski v. Salomon Smith Barney Inc.*,
    398 F.3d 294 (3d Cir. 2005) ......................................................................................10

*Shoemaker v. Myers*,
    52 Cal. 3d 1 (1990) ...................................................................................................13

*Siemers v. Wells Fargo & Co.*,
    2007 U.S. Dist. LEXIS 21935 (N.D. Cal. Mar. 9, 2007) ............................................8

*Spinner Corp. v. Princeville Dev. Corp.*,
    849 F.2d 388 (9th Cir. 1988) .....................................................................................14

*Start v. Apple Computer, Inc.*,
    1996 WL 161630 (N.D. Cal. Mar. 22, 1996) ............................................................12

*Strigliabotti v. Franklin Res., Inc.*,
    2005 U.S. Dist. LEXIS 9625 (N.D. Cal. Mar. 7, 2005) ............................................14

*U.S. Mortgage v. Saxton*,
    494 F.3d 833 (9th Cir. 2007) .....................................................................................11

*Wenger v. Lumisys*,
    2 F. Supp. 2d 1231 (N.D. Cal. 1998) ..........................................................................4

*Woods v. Fox Broad. Sub., Inc.*,
    129 Cal. App. 4th 344 (2005) ....................................................................................13

**STATUTES AND OTHER AUTHORITIES**

15 U.S.C.
    § 77p ..........................................................................................................................10
    § 78bb ........................................................................................................................10

Federal Rules of Civil Procedure
    Rule 8 ................................................................................................................. 1, 2, 4
    Rule 9(b) ........................................................................................................ 1, 2, 4, 14
    Rule 23.1 ....................................................................................................................15

## INTRODUCTION

Plaintiffs continue to argue that Schwab's YieldPlus fund "wrongfully held risky, long-term securities and concealed it from shareholders." (Opp. Br. at 1.) They make these arguments even though: (i) they identify no false statement regarding the riskiness of the securities in the fund's portfolio; (ii) they identify no rule making it "wrongful" to hold any of the securities purchased by the fund; (iii) the fund's prospectuses say clearly that the fund can own securities of any maturity; and (iv) the fund publicly disclosed the identity of every security in its portfolio, along with its credit rating and maturity, and also routinely disclosed the fund's overall average weighted credit rating and duration.

The fund's prospectuses plainly disclosed the fund's share price, or "NAV," would fluctuate. They plainly disclosed the nature of the fund, the fund's policies regarding diversification and concentration, and the risks associated with investing in the fund. Plaintiffs' complaint thus does not make out any misrepresentation claim under the federal securities laws, and its state law claims are preempted by SLUSA. Moreover, all of the claims depend upon an erroneous reading of the fund's prospectuses and investment policies. For these reasons, plaintiffs' complaint should be dismissed.

## ARGUMENT

Plaintiffs dispute that Rule 9(b) applies to their allegations of fraudulent conduct, and they do not even attempt to defend their allegations as compliant with Rule 9(b). They argue only that their complaint satisfies the lesser requirements of Rule 8.

We address these arguments at length in the independent trustees' reply brief in support of their motion to dismiss. As the arguments are addressed there, we do not repeat them here, and instead incorporate them by reference. We note here, simply, that plaintiffs' complaint does not comply with either Rule 9(b) or Rule 8.[1]

---

[1] We add that plaintiffs have not successfully defended their "puzzle-style pleading," which is grounds, by itself, for dismissal. (*See* Open. Br. at 7 n.5.) Plaintiffs counter by saying that, "[f]or each group of misrepresentations, Plaintiffs explain precisely why they are false." (Opp. Br. at 6.) As support, plaintiffs refer to complaint paragraphs 86 and 87. (*Id*.) But this is puzzle-style pleading at its most apparent — plaintiffs' complaint lists dozens of representations, and then, in a separate place, lists pages of alleged reasons why all the representations were false when made,


## I. PLAINTIFFS' SECTION 11 CLAIM MUST BE DISMISSED

Plaintiffs' first claim, under section 11, challenges the accuracy of the fund's registration statement.[2] Plaintiffs acknowledge that the only place where they identify any allegedly false statement is in paragraphs 86 and 87. (Opp. Br. at 6–7.) We demonstrated, in our opening brief, that these paragraphs do not allege any untrue statement with the specificity required by Rule 9(b) or even by Rule 8.

### A. The YieldPlus Fund's Registration Statement Is Not Misleading.

We addressed previously the six specific misstatements alleged in plaintiffs' complaint. (Open. Br. at 8–14; *see* Compl. ¶¶ 86–87.) To these six specific statements, plaintiffs' opposition brief adds two other general — what plaintiffs call "pivotal" — representations. (Opp. Br. at 6.) So, before addressing the six specific statements, we address plaintiffs' two new arguments.

Plaintiffs first argue that describing Schwab's YieldPlus fund as an "ultrashort" bond fund is misleading because the fund "had elements of credit and liquidity risk not consistent for a fund represented to be an 'ultrashort bond fund.'" (Opp. Br. at 6 (*citing* Compl. ¶ 6).) Plaintiffs do not allege, however, that ultra-short bond funds have any unique or characteristic quantum of credit risk or liquidity risk. To the contrary: the only unique characteristic of ultra-short funds is their "short maturities, or time periods in which they become due for payment." (http://www.sec.gov/investor/pubs/ultra-short_bond_funds.htm at 1, attached as Taylor Decl. Ex. G.)

When it comes to credit risk, by contrast, ultra-short bond funds "can vary significantly in their risks and rewards," because they "may invest in [a] wide range of securities, including corporate debt, government securities, mortgage-backed securities, and other asset-backed securities." (*Id.*) "Credit risk is less of a factor for ultra-short bond funds that principally invest in government securities. By contrast, if you invest in an ultra-short bond fund that invests in

---

without attempting to link any misrepresentation to any particular reason why it was false. (*See* Compl. ¶¶ 49–85, 86–87.) *See, e.g., Gold v. Morrice*, 2008 U.S. Dist. LEXIS 43466, at *14–15 & n.6 (C.D. Cal. Jan. 31, 2008) (court "should not have to comb through the complaint to identify reasonable inferences from the factual allegations to the legal conclusions"); *Kane v. Madge Networks N.V.*, 2000 WL 33208116, at *8 (N.D. Cal. May 26, 2000) (rejecting similar pleading).

[2] This claim is asserted against the fund and its officers and trustees. It is not asserted against the Schwab corporate entities or Messrs. Daifotis or Hastings.

bonds of companies with lower credit ratings, derivative securities, or private label mortgage-backed securities, you'll generally be subject to a higher level of risk." (*Id*. at 1–2.)

In the YieldPlus fund's case, the fund consistently disclosed that it "primarily invests in investment-grade bonds (high and certain medium quality, AAA to BBB-)," along with up to 25 percent in "below investment-grade bonds." (Nov. 15, 2007 Prospectus at 2, attached as Taylor Decl. Ex. A.) The fund also routinely disclosed its average credit quality ("A" or "AA") and periodically identified every bond in its portfolio (along with its associated credit rating). (Form N-Q for period ending May 31, 2008 at *37–42, attached as Taylor Decl. Ex. D.) The fund did not, by calling itself an ultra-short bond fund, mislead investors about the credit risk in its portfolio.

Similarly, plaintiffs do not identify any particular degree of liquidity risk associated with ultra-short funds or any allegedly misleading statement about liquidity. No matter: the fund's prospectuses clearly explain that some of the fund's investments, including its investments in derivatives, are "subject to liquidity risk," which "is the risk that the fund may not be able to purchase or liquidate a particular derivative at an advantageous time or place." (Nov. 15, 2007 Prospectus at 5.) The fund did not mislead investors about its liquidity risk.

Plaintiffs next challenge the accuracy of the fund's general investment objective, which includes seeking to have only "minimal changes in share price." (*Id*. at 2.) Plaintiffs say this is false because the fund "was not a 'short term bond fund designed to offer high current income with minimal changes in share price.'" (Opp. Br. at 6 (*citing* Compl. ¶ 6).)

But the fund never said it would not lose money, and it never said its strategy would succeed even in times of extraordinary financial crisis. Just the opposite: the fund said "[t]here is no guarantee that [the] fund will achieve its investment objective." (Sept. 1, 2006 SAI at *3, attached as Taylor Decl. Ex. C.) The fund said that, "[a]s with any investment whose performance is tied to these [bond] markets, the value of your investment in the fund will fluctuate." (*Id*. at *4.) And the fund warned that it is vulnerable to many kinds of risks, including the risk of "economic downturns." (*Id*. at *4, 6.) Nothing in the fund's objective to seek "minimal changes in share price" misled investors as to the risks inherent in investing in the fund.

Now to the six specific statements. Plaintiffs criticize us for addressing each statement separately while "ignoring the role these categories collectively play in making the Fund riskier than represented." (Opp. Br. at 7.) Courts routinely, however, reject plaintiffs' request to view their allegations as a part of a "mosaic." *See, e.g.*, *In re Software Publishing Sec. Litig.*, 1994 WL 261365, at *3 (N.D. Cal. Feb. 2, 1994) (mosaic theory of pleading rejected in favor of statement-by-statement approach); *In re Syntex Corp. Sec. Litig.*, 1993 U.S. Dist. LEXIS 20420, at *18 (N.D. Cal. Sept. 1, 1993) (same).

### 1. Duration

Plaintiffs claim the YieldPlus fund's duration is two years, not one. (Compl. ¶ 6.) We showed in our opening brief that this allegation is unsupported by factual allegations of any kind, and plaintiffs' opposition brief concedes this is so. Their argument — which is all of eight lines long — says only that the alleged misrepresentations are "clearly identified and, as such, state a claim." (Opp. Br. at 8.)

Saying the fund's duration was two years, not one, without providing any corroborating details, is just like saying the fund's duration disclosures were "not true" or "false." Conclusions of this sort do not satisfy Rule 8, let alone Rule 9(b). *See, e.g.*, *In re Glenfed Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc) (plaintiff must allege why statement is false); *Wenger v. Lumisys*, 2 F. Supp. 2d 1231, 1247 (N.D. Cal. 1998) (rejecting "amorphous and conclusory allegations of falsehood"); *Leonard v. Netframe Sys., Inc.*, 1995 WL 798923, at *6 (N.D. Cal. Aug. 8, 1995) (inadequate to "plead as 'facts' the converse of the positive statements").

### 2. Coupon Dates and Maturity Dates

Plaintiffs' complaint identifies eight securities for which the fund's portfolio schedules substituted "coupon payment dates instead of maturity dates." (Compl. ¶ 86(c).) We showed in our opening brief that those eight securities are variable rate securities. We also explained why, for variable rate securities, the fund's portfolio schedules show interest reset dates rather than maturity dates, and we showed where and how the fund's schedules explain this distinction. (Open. Br. at 9–10.)

In response, plaintiffs make a new argument — one not supported by their complaint's allegations. (*See* Opp. Br. at 8–9.) Plaintiffs now say the fund should not have used coupon payment dates, reset dates, or maturity dates; instead, it allegedly should have used "expected life" dates. (*Id.*) That is not what the portfolio schedules say. They say:

> For fixed rate obligations, the rate shown is the interest rate (the rate established when the obligation was issued) and the maturity date shown is the stated legal maturity. For variable-rate obligations, the rate shown is the rate as of the report date, and the maturity date shown is the next interest rate change date.

(Form N-Q for period ending May 31, 2008 at *37.) Anyone who looked at this disclosure would have known that the dates for each security were either the maturity date (for fixed rate bonds) or the interest reset date (for variable rate bonds).[3]

### 3. Concentration and Diversification

In our opening brief, we showed that the fund limits its concentration in any one industry to 25 percent of the fund's assets, and that the fund may, consistent with SEC regulations, reasonably determine what an "industry" is for this purpose. We also showed the fund fully disclosed its treatment of mortgage-backed securities under this policy. (Open. Br. at 10–12.)

Plaintiffs concede the fund fully disclosed its degree of concentration in mortgage-backed securities, and they admit they "do *not* allege this statement was a misrepresentation." (Opp. Br. at 9 (emphasis added).) All they argue is that this fully-disclosed practice somehow made "other aspects of the offering materials . . . misleading," including supposed representations about "share price stability and safety." (*Id.*) But plaintiffs never identify any specific misstatement, and they never explain how or why a fully-disclosed practice would make other, unrelated, statements misleading. *In re Glenfed, Inc. Sec. Litig.*, 42 F.3d at 1548 (plaintiffs must allege what is false or misleading about a statement, and why it is false).

---

[3] Plaintiffs also say the fund's portfolio schedules "falsely reinforced the Fund as ultrashort," (Opp. Br. at 8), meaning, we suppose, that investors expected all the fund's holdings to have short maturities. But no investor who actually read the fund's prospectuses could think that, as the prospectuses clearly disclose that the "fund may invest in securities with final or effective maturities of any length." (Sept. 1, 2006 SAI at *22.)

### 4. Benchmark Index

The fund used, as its performance benchmark, the Lehman Brothers U.S. Short Treasury: 9–12 months index. (Open. Br. at 12 (*citing* Compl. ¶ 86(g)).) Plaintiffs acknowledge the benchmark was fully disclosed and accurately described. (Opp. Br. at 9–10.) But they assert the fund used the wrong index because the fund's true duration allegedly was two years, not nine to twelve months. (Opp. Br. at 10.) This is nothing more than a repeat of plaintiffs' duration allegations, which are addressed in section I.A.1, above.

### 5. Asset Valuations

Plaintiffs' complaint identifies fourteen bonds — of the five hundred or more bonds owned by the fund at any one time — and alleges they were "mispriced." It bases this allegation on an unnamed expert's review of "just a few of the assets" in "just a slice" of the fund's portfolio. (Compl. ¶ 86(h).) We demonstrated in our opening brief that these unsupported allegations cannot state a claim when the sample size does not represent a material portion of the fund's holdings. (Open. Br. at 13–14.)

Plaintiffs make no effort to defend their expert's work — in fact, they do not even mention him. Nor do they say that fourteen securities, by themselves, would be material to investors. (*See* Opp. Br. at 10.) Instead, plaintiffs insist they allege "there are many more examples," and they contend this unsupported allegation must be accepted as true. (*Id.*)

But general allegations of this sort, without naming the bonds or specifying how they are mispriced, cannot be enough to show materiality. *See In re Herbalife Sec. Litig.*, 1996 U.S. Dist. LEXIS 11484, at *8, 34, 37 & n.11 (N.D. Cal. Jan. 25, 1996) (materiality allegations without factual support rejected as conclusory); *Rogal v. Costello*, 1992 WL 426467, at *2 (N.D. Cal. Oct. 8, 1992) (plaintiffs must allege facts showing materiality).

### 6. Asset Classifications

Plaintiffs' complaint named eleven bonds which were identified as variable-rate securities in some reports and not in others. (Compl. ¶ 87.) We explained in our opening brief that this supposed discrepancy does not amount to a material misrepresentation, both because the distinction between variable and fixed interest rates is unimportant, and because the eleven

securities identified by plaintiffs represents such a small portion of the fund's holdings. (Open. Br. at 14.) In response, plaintiffs say that "whether a statement or omission is material is usually for the fact-finder to determine." (Opp. Br. at 12.) But that is not always the case. *See, e.g.*, *In re VeriFone Sec. Litig.*, 11 F.3d 865, 869–70 (9th Cir. 1993) (dismissal based on finding that alleged omissions were immaterial); *In re JP Morgan Chase Sec. Litig.*, 363 F. Supp. 2d 595, 630–31 (S.D.N.Y. 2005) (same); *In re Anchor Gaming Sec. Litig.*, 33 F. Supp. 2d 889, 895–96 (D. Nev. 1999) (same).

Here plaintiffs have offered no basis for any plausible or reasonable inference that any material misrepresentation was made regarding whether a few securities had, or did not have, variable interest rate features.

### B. Plaintiffs Do Not Plead Loss Causation.

The YieldPlus fund's price, or NAV, is calculated daily according to a statutory formula based on the current market price of each of the bonds in its portfolio. *In re Morgan Stanley & Van Kampen Mut. Fund Sec. Litig.*, 2006 WL 1008138, at *9 (S.D.N.Y. Apr. 18, 2006). For that reason, disclosures about the fund — such as those challenged in plaintiffs' complaint — have no effect upon the fund's NAV. (*See* Open. Br. at 15.) It is therefore apparent, on the face of the complaint, that plaintiffs have not alleged any "loss causation."

In response, plaintiffs argue the fund "must prove that the depreciation in the value of YieldPlus shares resulted from factors other than the alleged material misstatements in its registration statements." (Opp. Br. at 12.) The fund has no such burden. The case plaintiffs cite (*In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407 (9th Cir. 1994)) is a summary judgment case, and it addresses which party has the burden of proving a loss causation affirmative defense. Our point is different: while defendants ultimately would have the burden of proving a lack of loss causation at trial, plaintiffs' section 11 claim may be dismissed if it is apparent that loss causation does not exist. *In re DNAP Sec. Litig.*, 2000 WL 1358619, at *3 (N.D. Cal. Sept. 14, 2000) (section 11 claim dismissed because of "complete disconnect between plaintiffs' claims of loss and the alleged omissions" that was apparent on the face of the complaint).

1    Plaintiffs next argue, relying on *Siemers v. Wells Fargo & Co.*, that it is enough to allege "Defendants' misconduct of larding the Fund's portfolio with risky, long-term securities, misrepresented as safe and of short duration . . . caused the Fund's NAV to crash." (Opp. Br. at 13.) In fact, the differences between *Siemers* and this case prove our point. In *Siemers*, the defendants allegedly concealed certain fees secretly paid to brokers for steering business to mutual funds. As a result, the representations the defendants made to investors about the fees investors would pay were false: "[t]he true price of admission to the fund was greater than was represented." *Siemers*, 2007 U.S. Dist. LEXIS 21935, at *46 (N.D. Cal. Mar. 9, 2007). And the causal link between the misrepresentation and plaintiffs' alleged loss was simple and direct: "[e]very dollar lifted out of the corpus reduced the net assets of the fund." *Id*.

Here, by contrast, plaintiffs say their losses resulted because Schwab followed the wrong investment strategy by buying "risky, long-term securities." (Opp. Br. at 13.) The fund's NAV declined because the securities owned by the fund declined in value, not because of any misrepresentation in the fund's registration statement. That is the opposite of the allegations in *Siemers*, where "the loss . . . was the alleged pilfering of the common fund . . . [t]he subject companies in the portfolio was not the issue . . . [t]he issue was the hidden price of admission." *Siemers*, 2007 U.S. Dist. LEXIS 21935, at *42–43. *See Bastian v. Petren Resources Corp.*, 892 F.2d 680, 686 (7th Cir. 1990) (investors in oil and gas partnerships "knew they were assuming a risk that oil prices might drop unexpectedly. They are unwilling to try to prove that anything beyond the materializing of that risk caused their loss").

## II.   PLAINTIFFS' SECTION 12 CLAIM MUST BE DISMISSED

Plaintiffs' section 12 claim names sixteen individual and corporate defendants. But only two of them — Schwab Investments and Charles Schwab & Co., Inc. — could possibly be "sellers" subject to section 12. We showed previously that only these two entities might have passed title to plaintiffs,[4] and

---

[4] We do not admit that either Schwab Investments or Charles Schwab & Co., Inc. actually passed title to, or solicited investments from, plaintiffs. Plaintiffs do not allege from whom they purchased their shares. This alone is reason enough to dismiss this claim. *In re Royal Ahold N.V. Sec. & ERISA Litig.*, 351 F. Supp. 2d 334, 406–07 (D. Md. 2004) (§ 12 claim dismissed: "to state a claim under § 12(a)(2), the complaint must allege by whom the plaintiffs were solicited and

we showed that none of the other defendants had any role in soliciting investments in the fund. *See Pinter v. Dahl*, 486 U.S. 622, 647 (1988). (Open. Br. at 16–17.)

Plaintiffs insist, though, that the fund's investment advisor (Charles Schwab Investment Management) and the fund's individual officers and managers (Messrs. Schwab, Merk, Pereira, Daifotis, Hastings, and Ms. Dilsaver) are "sellers" under section 12 because the officers "signed offering documents," while the two portfolio managers allegedly were "involved in marketing the Fund." (Opp. Br. at 15.) No other details are provided.

Signing an SEC filing does not make a person a "seller" under section 12. A myriad of cases have reached this conclusion, and plaintiffs cite no case supporting their position. *See Pinter*, 486 U.S. at 649–50; *In re Harmonic, Inc. Sec. Litig.*, 2006 WL 3591148, at *14 (N.D. Cal. Dec. 11, 2006); *In re Infonet Servs. Corp. Sec. Litig.*, 310 F. Supp. 2d 1080, 1101 (C.D. Cal. 2003); *In re Stratosphere Corp. Sec. Litig.*, 1 F. Supp. 2d 1096, 1120–21 (D. Nev. 1998). The reason is straightforward: "seller" status depends on the existence of a "relationship" between the defendant and the plaintiff. *Pinter*, 486 U.S. at 651. Signing an SEC document, without more, does not create a relationship between the defendant and plaintiff. That is why section 11 expressly applies to persons who sign a registration statement, while section 12 does not refer to "signers," but rather "sellers." *See id.* at 650 n.26.

Nor can plaintiffs state a claim against portfolio managers simply by claiming they played some unspecified role in "marketing the Fund." (Opp. Br. at 15.) General allegations of involvement in marketing are insufficient to meet the "solicitation" prong under *Pinter*. *See In re Infonet Servs. Corp. Sec. Litig.*, 310 F. Supp. 2d at 1102 (§12 claim dismissed where plaintiffs did not allege how defendants "personally or directly solicited any of the named [p]laintiffs").

### III. PLAINTIFFS' "CONTROL PERSON" CLAIM MUST BE DISMISSED

Plaintiffs' control person claim alleges that fourteen defendants (excluding Messrs. Schwab, Daifotis, and Hastings) control every other defendant. (Compl. ¶¶ 147–49.) Plaintiffs' own allegations show this state of affairs cannot exist: the Charles Schwab corporate entities are completely

from whom they purchased shares; these assertions must be supported by specific factual allegations demonstrating a direct relationship between the defendant and the plaintiff[]").

MASTER FILE NO. C-08-01510-WHA　　　　　　　　　　　　　　　　　　　　　　　　　9
REPLY MEM. IN SUPPORT OF MOTION TO DISMISS FIRST CONSOL. AMENDED COMPL.
sf-2611825

independent of the fund; the fund's independent trustees have no relationship to the Charles Schwab entities or their employees; the Schwab subsidiaries do not control either their corporate parent or the fund or its officers and directors; and so on. (Open Br. at 18; *see* Compl. ¶¶ 25–42.)

What is plaintiffs' response? Only that their "general allegation at ¶ 148 satisfies" their pleading obligations. (Opp. Br. at 15.) Paragraph 148, of course, alleges only that each defendant controlled all the other defendants "by virtue of his or her position as a trustee and/or senior officer" or as a result of "direct and/or indirect business and/or personal relationships with other trustees and/or officers and/or major shareholders of the Defendant Schwab entities and the Fund." (Compl. ¶ 148.) These sorts of generalized allegations are meaningless. *See In re Worldcom, Inc. Sec. Litig.*, 2004 WL 1097786, at *3 (S.D.N.Y. May 18, 2004) (conclusory allegations of control rejected).

## IV. PLAINTIFFS' STATE LAW CLAIMS ARE PREEMPTED BY SLUSA

SLUSA preempts any state law claim in a "covered class action" if it asserts a misrepresentation or omission in connection with the purchase or sale of a "covered security." 15 U.S.C. §§ 77p, 78bb. Plaintiffs concede this is a "covered class action" and involves "covered" securities. (Opp. Br. at 16.) They argue, however, that their state law claims "do not arise from (i) a misrepresentation (ii) in connection with a securities transaction." (*Id*.)

Plaintiffs' argument cannot be squared with their complaint, which is replete with allegations of misrepresentations and omissions. (Compl. ¶¶ 2, 4–6, 10, 55–72, 75–78, 80, 86–97, 115, 117–18, 121, 130, 140, 165.) All these allegations are incorporated into plaintiffs' five state law claims. (*Id*. ¶¶ 150, 171, 176, 178, 184.) Plaintiffs say, in response, that their "incorporation" allegations are "pro forma," by which they mean without purpose, and they ask the Court to consider only the "relevant allegations" of the complaint. (Opp. Br. at 17.) The Court's job, though, is to "look beyond the face of plaintiff's pleadings" to the substance of the state law claims. *Feitelberg v. Merrill Lynch & Co.*, 234 F. Supp. 1043, 1048 (N.D. Cal. 2002). If "allegations of a material misrepresentation serve as the factual predicate of a state law claim, the misrepresentation prong is satisfied under SLUSA." *Rowinski v. Salomon Smith Barney Inc.*, 398 F.3d 294, 300 (3d Cir. 2005); *see Dudek v. Prudential Sec.*, 295 F.3d 875, 879–80 (8th Cir.

2002) (claims "[i]n substance" involved misrepresentations); *Behlen v. Merrill Lynch*, 311 F.3d 1087, 1094 (11th Cir. 2002) (misrepresentation was "the crux of the complaint").

The substance of plaintiffs' state law claims in this case is, at bottom, misrepresentations and omissions. As they say on the first page of their opposition brief: "the Fund wrongfully held risky, long-term securities and concealed it from shareholders, and this conduct caused Plaintiffs' losses." (Opp. Br. at 1.) The concealment aspect of this theory cannot be separated from the purchase of allegedly risky bonds. As plaintiffs allege:

> Defendants violated federal and state law in registering, marketing and selling the Fund as a stable, 'ultrashort' bond fund that was a safe alternative to cash and which had 'minimal' risk of a fluctuating share price.

(Compl. ¶ 2.) Misrepresentations are at the heart of both plaintiffs' federal and state law claims.

These alleged misrepresentations were clearly made "in connection with" a securities transaction. Plaintiffs argue they assert claims only on behalf of "holders" "who owned shares of the Fund." (Opp. Br. at 16.) That is not quite true: plaintiffs allege two state law "subclasses," one of which is for holders, and the other for purchasers. (Compl. ¶ 122(b).) In any event, plaintiffs fail to address the key Supreme Court case which rejects this precise argument. *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*, 547 U.S. 71 (2006). In *Dabit*, the plaintiff asserted that misleading research had caused the class to hold overvalued stock. Plaintiff argued that state law claims on behalf of "holders" were not preempted by SLUSA because they did not meet the "in connection with" test. *Id.* at 83. But the Supreme Court found the "in connection with" requirement was satisfied so long as the misrepresentation coincided with purchases by other investors in the market; that is, if it was in connection "with a securities transaction — whether by the plaintiff or someone else." *Id.* at 85. *See also U.S. Mortgage v. Saxton*, 494 F.3d 833, 844–45 (9th Cir. 2007) (false corporate filings made "in connection with" purchase or sale of security resulted in preemption under SLUSA even though plaintiff lenders did not buy or sell stock).

Investors purchased or sold shares of the fund on every business day of the class period. Under *Dabit*, this satisfies the "in connection with" requirement. Plaintiffs' state law claims are thus preempted by SLUSA.

## V. COUNTS IV AND VI — FOR INTERFERENCE WITH CONTRACTUAL RELATIONS — MUST BE DISMISSED

We showed in our opening brief that plaintiffs' two interference with contract claims are missing most of their key elements — a contract, a breach of contract, defendants who are "strangers" to the contract, and acts of intentional interference. Plaintiffs do not adequately address any of these defects.

### A. Plaintiffs Do Not Plead a Contract.

Plaintiffs say the fund's "prospectus can constitute a contract." (Opp. Br. at 18.) Their support for this proposition is relegated to a string cite in a footnote. (*Id*. at n.14.) None of plaintiffs' cases holds that a mutual fund prospectus constitutes a contract. They involve rejected contract claims, a prospectus incorporated into an underwriting agreement, a tender offer, and a preferred share redemption. (*Id*.)

The reality is that the fund's prospectuses contain none of the essential elements of a contract. Who are the contracting parties? Plaintiffs have variously asserted they contracted with Charles Schwab & Co., Inc. (Compl. ¶ 151), with the fund (*id*. ¶¶ 170, 177), and with the fund's trustees. (Opp. Br. at 22.) Nothing in the prospectus supports any of these claims. What is the consideration? Plaintiffs say it is a promise not to violate the fund's concentration policy without obtaining the shareholder approval required by section 13(a) of the '40 Act. (*Id*. at 20.) But the prospectus does not make this a contractual requirement, and, as we showed in our opening brief, a promise to comply with the law cannot be consideration. *See Estate of Bray*, 230 Cal. App. 2d 136, 142 (1964); *Start v. Apple Computer, Inc.*, 1996 WL 161630, *3 (N.D. Cal. Mar. 22, 1996).

To remedy these deficiencies, plaintiffs suggest their alleged contract "might include additional writings that identify necessary terms and conditions." (Opp. Br. at 19.) But plaintiffs do not say what those documents might be or what terms they might contain.

### B. The Fund Did Not Breach Its Concentration Policy.

The only "breach of contract" alleged in plaintiffs' complaint is a supposed deviation from the fund's concentration policy, which limits investments in any "industry" to 25 percent of the fund's assets. (Compl. ¶¶ 152, 158.) But this policy never changed. (Open. Br. at 20–21.)

Instead, the fund exercised its discretion in implementing the policy by reasonably determining that non-agency mortgage-backed securities are not part of any industry. That discretion is permitted by the SEC's Guide 19. *See* SEC Release No. IC-13436, at *74 (Aug. 12, 1983).

Plaintiffs respond by arguing that Guide 19 "*confirms* that a fund wishing to change its concentration policy must disclose its intention to do so and then obtain shareholder approval." (Opp. Br. at 22.) We agree with that statement, but it does not respond to our point. The fund never changed its concentration policy, which has always been not to "concentrate investments in a particular industry or group of industries." (SAI at *39.) Instead, the fund changed an industry classification. Guide 19 does not require a shareholder vote prior to changing an industry classification — it simply requires disclosure. Courts agree that changes to investment policies and practices not designated as "fundamental" do not require a shareholder vote. *In re Alliance N. Am. Gov't Income Trust, Inc. Sec. Litig.*, 1996 WL 551732, at *6–7 (S.D.N.Y. Sept. 27, 1996) (§ 13(a) claim dismissed where challenged policy not "explicitly labeled as fundamental").

### C. Defendants Cannot Be Liable for Inducing a Breach of Contract.

Plaintiffs acknowledge that a party to a contract cannot be liable for interfering with the performance of that contract. (Opp. Br. at 22.) This means the interference with contract claims should be dismissed as against the persons and entities with whom plaintiffs say they contracted, including Schwab Investments and Charles Schwab & Co., Inc. (Compl. ¶¶ 28, 31, 32.)

But plaintiffs insist the other defendants can be liable even though, based on the allegations of the complaint, all (except the Charles Schwab Corporation) were agents of Schwab Investments. That is not the law in California. *Shoemaker v. Myers*, 52 Cal. 3d 1, 25 (1990) (agent cannot be liable for interfering with his principal's contract).

In fact, under California law, only strangers to the contract can induce a party's breach. *See Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 514 (1994); *Marin Tug & Barge, Inc. v. Westport Petr.*, 271 F.3d 825, 832 (9th Cir. 2001). Plaintiffs respond with *Woods v. Fox Broad. Sub., Inc.*, 129 Cal. App. 4th 344, 465 (2005), but the defendants in *Woods* were shareholders, who are far more distant from the corporation than its officers, directors, and agents. Finally, plaintiffs try to avoid the only Ninth Circuit authority on this issue by saying it

should be "narrowly construed." (Opp. Br. at 23 n.17 (*citing Marin Tug & Barge, Inc. v. Westport Petroleum, Inc*, 271 F.3d 825 (9th Cir. 2001)).) *Marin Tug*, however, remains the law of this Circuit and it controls the outcome here.

### D. **Plaintiffs Do Not Properly Plead Intentional Interference.**

Finally, plaintiffs have not pleaded any act of intentional interference. As we have demonstrated, an allegation of intentional interference with contract must comply with Rule 9(b). (Open. Br. at 22.) Plaintiffs challenge our authority for this proposition, claiming their allegations of intentional interference do not amount to allegations of fraud. (Opp. Br. at 23 (*citing Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502 (7th Cir. 2007)).) But plaintiffs' complaint puts the lie to that claim — whatever acts of interference plaintiffs' complaint allege would have had to have been intentional, and also would have had to involve some misstatement or omission about voting rights — all of which requires application of Rule 9(b).

## VI. COUNTS V AND VII — FOR VIOLATIONS OF SECTION 17200 — MUST BE DISMISSED

We showed in our opening brief that plaintiffs do not state a section 17200 claim because that section does not apply to securities transactions. (Open. Br. at 23.) Plaintiffs maintain their "state law claims do not concern securities transactions." (Opp. Br. at 24.) We dispensed with that argument at pages 10 and 11 above. Plaintiffs also argue that section 17200 can be applied to "misconduct that may relate to securities but do not directly concern a securities transaction." (*Id.* (*citing Overstock.com, Inc. v. Gradient Analytics, Inc.*, 151 Cal. App. 4th 688 (2007), *Strigliabotti v. Franklin Res., Inc.*, 2005 U.S. Dist. LEXIS 9625 (N.D. Cal. Mar. 7, 2005).) Neither of those cases, however, involved claims by investors against issuers of securities. They involved claims by a third party who issued statements about a security, or by an investor against a third party.

The majority of courts have held that section 17200 does not apply to securities claims by investors against the issuer of securities. (Open. Br. at 23–24 (citing cases).) *See also Spinner Corp. v. Princeville Dev. Corp.*, 849 F.2d 388, 391 (9th Cir. 1988). These cases do not allow the fine line argued for here by plaintiffs — that section 17200 does not apply to securities claims, but does apply to "misconduct that may relate to securities."

## VII. THE BREACH OF FIDUCIARY DUTY COUNT MUST BE DISMISSED

In our opening brief, we demonstrated that plaintiffs' fiduciary duty claim must be pursued derivatively, and that plaintiffs have not complied with Rule 23.1. Plaintiffs insist their claim is direct, rather than derivative, because they do not allege "Defendants' misconduct merely diminished the value of all shareholders' shares." (Opp. Br. at 24.) But that is exactly what their complaint alleges: their alleged harm was caused, not because other Schwab-affiliated funds redeemed their investments, but because "the Fund took massive write-downs as it marked the value of mortgage-backed investments down to their reduced market values [which] caused a commensurate decline in the Fund's NAV." (Compl. ¶ 111.) Plaintiffs insist, though, that these sorts of claims are "routinely asserted as direct claims." (Opp. Br. at 25 n.18.) None of their cases, however, is remotely like this one.

Plaintiffs' last argument is that their claim really is a voting rights claim like the one asserted in *Lapidus v. Hecht*, 232 F.3d 679, 683 (9th Cir. 2000). (Opp. Br. at 25.) That is not what their complaint alleges. (*See* Compl. ¶¶ 184–87.) Plaintiffs admit as much in their opposition to the motion to dismiss of the independent trustees. (*See* Opp. Br. re Trustees, at 24–25 (seeking leave to amend to clarify allegations).) Plaintiffs cannot amend their complaint by means of their opposition brief. *See Lepp v. Gonzales*, 2005 WL 1867723, at *6 (N.D. Cal. Aug. 2, 2005) ("to the extent the opposition attempts to state a new cause of action . . . such an amendment to the complaint is procedurally improper").

## CONCLUSION

For the reasons set forth in this brief and in our moving papers, defendants respectfully request an order dismissing plaintiffs' complaint.

Dated:  December 18, 2008          MORRISON & FOERSTER LLP

By: /s/ Darryl P. Rains
　　　　Darryl P. Rains

Attorneys for Defendants The Charles Schwab Corporation, Charles Schwab & Co., Inc., Charles Schwab Investment Management, Inc., Schwab Investments, Charles R. Schwab, Evelyn Dilsaver, Randall W. Merk, George Pereira, Kimon Daifotis, and Matthew Hastings