1   DARRYL P. RAINS (CA SBN 104802)
    MORRISON & FOERSTER LLP
2   755 Page Mill Road
    Palo Alto, California 94304-1018
3   Telephone: 650.813.5600
    Facsimile: 650.494.0792
4   Email: DRains@mofo.com

5   DOROTHY L. FERNANDEZ (CA SBN 184266)
    KIMBERLY L. TAYLOR (CA SBN 240483)
6   MORRISON & FOERSTER LLP
    425 Market Street
7   San Francisco, California 94105-2482
    Telephone: 415.268.7000
8   Facsimile: 415.268.7522

9   Attorneys for Defendants Mariann Byerwalter, Donald F.
    Dorward, William A. Hasler, Robert G. Holmes, Gerald B.
10  Smith, Donald R. Stephens, and Michael W. Wilsey

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE CHARLES SCHWAB CORP. SECURITIES LITIGATION | Master File No. C-08-01510-WHA <br><br> <u>CLASS ACTION</u> <br><br> REPLY MEMORANDUM IN SUPPORT OF INDEPENDENT TRUSTEES' MOTION TO DISMISS FIRST CONSOLIDATED AMENDED COMPLAINT <br><br> Date: January 8, 2009 <br> Time: 8:00 a.m. <br> Judge: Hon. William H. Alsup <br> Courtroom: 9 |

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ..................................................................................................... ii
INTRODUCTION ........................................................................................................................ 1
ARGUMENT ................................................................................................................................ 1
I. PLAINTIFFS' SECTION 12 CLAIM DOES NOT ALLEGE THE INDEPENDENT TRUSTEES WERE "SELLERS" OF THE FUND'S SHARES ............ 5
II. PLAINTIFFS' "CONTROL PERSON" ALLEGATIONS DO NOT SHOW THE INDEPENDENT TRUSTEES CONTROL THE OTHER DEFENDANTS ........................ 8
III. COUNTS IV AND VI SHOULD BE DISMISSED. ........................................................ 9
IV. THE INDEPENDENT TRUSTEES COMMITTED NO "UNLAWFUL" ACT UNDER SECTION 17200 (COUNTS V AND VII) ........................................................ 10
V. PLAINTIFFS' BREACH OF FIDUCIARY DUTY CLAIM VIOLATES RULE 9(B) AND DOES NOT OVERCOME THE BUSINESS JUDGMENT RULE ........................................................................................................ 11
CONCLUSION ........................................................................................................................... 12

# TABLE OF AUTHORITIES

**CASES** — Page(s)

*Bell Atlantic Corp. v. Twombly*,
530 U.S. 544, 127 S. Ct. 1955 (2007) ..........4, 6

*Belodoff v. Netlist, Inc.*,
2008 WL 2356699 (C.D. Cal. May 30, 2008) ..........4

*Conley v. Gibson*,
355 U.S. 41 (1957) ..........6

*Howard v. Everex Sys., Inc.*,
228 F.3d 1057 (9th Cir. 2000) ..........9

*In re Anchor Gaming Sec. Litig.*,
33 F. Supp. 2d 889 (D. Nev. 1999) ..........3

*In re Chambers Development Sec. Litig.*,
848 F. Supp. 602 (W.D. Pa. 1994) ..........6

*In re Daou Sys., Inc. Sec. Litig.*,
411 F.3d 1006 (9th Cir. 2005) ..........2, 7

*In re Harmonic, Inc. Sec. Litig.*,
2006 WL 3591148 (N.D. Cal. Dec. 11, 2006) ..........7

*In re Infonet Serv. Corp. Sec. Litig.*,
310 F. Supp. 2d 1080 (C.D. Cal. 2003) ..........7

*In re LDK Solar Sec. Litig.*,
2008 U.S. Dist. LEXIS 80717 (N.D. Cal. Sept. 24, 2008) ..........9

*In re Livent, Inc. Noteholders Sec. Litig.*,
151 F. Supp. 2d 371 (S.D.N.Y. 2001) ..........9

*In re McKesson HBOC Inc. Sec. Litig.*,
126 F. Supp. 2d 1248 (N.D. Cal. 2000) ..........8

*In re Merix Corp. Sec. Litig.*,
275 Fed. Appx. 599, 2008 WL 1816423 (9th Cir. Apr. 22, 2008) ..........2

*In re NationsMart Corp. Sec. Litig.*,
130 F.3d 309 (8th Cir. 1997) ..........6

*In re Silicon Graphics Sec. Litig.*,
970 F. Supp. 746 (N.D. Cal. 1997) ..........10

MASTER FILE NO. C-08-01510-WHA
REPLY MEM. ISO OF INDEP. TRUSTEES' MOTION TO DISMISS FIRST CONSOL. AMENDED COMPL.
sf-2611812

ii

*In re Stac Elecs. Sec. Litig.*,
  89 F.3d 1399 (9th Cir. 1996) ...................................................................................................2

*In re Stratosphere Corp. Sec. Litig.*,
  1 F. Supp. 2d 1096 (D. Nev. 1998) ..........................................................................................7

*In re VeriFone Sec. Litig.*,
  11 F.3d 865 (9th Cir. 1993) ................................................................................................6, 8

*In re Westinghouse Sec. Litig.*,
  90 F.3d 696 (3d Cir. 1996) .......................................................................................................6

*Kennilworth Partners L.P. v. Cendant Corp.*,
  59 F. Supp. 2d 417 (D.N.J. 1999) ............................................................................................6

*Lepp v. Gonzales*,
  2005 WL 1867723 (N.D. Cal. Aug. 2, 2005) ........................................................................11

*Moore v. Kayport Package Express, Inc.*,
  885 F.2d 531 (9th Cir. 1989) ...................................................................................................5

*Pinter v. Dahl*,
  486 U.S. 622 (1988) .............................................................................................................5, 7

*Safron Capital Corp. v. Leadis Technology, Inc.*,
  274 Fed. Appx. 540, 2008 WL 1776407 (9th Cir. Apr. 22, 2008) ..........................................2

*Siemers v. Wells Fargo & Co., Inc.*
  2006 U.S. Dist. LEXIS 60858 (N.D. Cal. Aug. 14, 2006) ......................................................9

*Siemers v. Wells Fargo & Co.*,
  2007 U.S. Dist. LEXIS 21935 (N.D. Cal. Mar. 9, 2007) ........................................................5

*Taxpayers of U.S. v. Bush*,
  2004 WL 3030076 (N.D. Cal. Dec. 30, 2004) ......................................................................12

*Twinde v. Threshold Pharms. Inc.*,
  2008 WL 2740457 (N.D. Cal. July 11, 2008) .........................................................................4

*Vess v. Ciba-Geigy Corp. USA*,
  317 F.3d 1097 (9th Cir. 2003) .............................................................................................2, 3

MASTER FILE NO. C-08-01510-WHA
REPLY MEM. ISO OF INDEP. TRUSTEES' MOTION TO DISMISS FIRST CONSOL. AMENDED COMPL.
sf-2611812

iii

**STATUTES, REGULATIONS AND RULES**

Federal Rules of Civil Procedure
    Rule 8 ................................................................................................................... *passim*
    Rule 9(b) .............................................................................................................. *passim*

Ninth Circuit Rule
    Rule 36-3(a) ................................................................................................................ 2

17 C.F.R.
    § 230.405 ................................................................................................................... 8

MASTER FILE NO. C-08-01510-WHA
REPLY MEM. ISO OF INDEP. TRUSTEES' MOTION TO DISMISS FIRST CONSOL. AMENDED COMPL.
sf-2611812

iv

**INTRODUCTION**

The seven independent trustees of Schwab Investments should never have been named as defendants to most of plaintiffs' claims. They are not "sellers" under section 12 or "control persons" under section 15. They could not "interfere" with any contract between the fund and its investors under California law. They committed no "unlawful act" for purposes of section 17200. And they played no role in the redemptions made by other Schwab mutual funds, which is the thrust of plaintiffs' fiduciary duty claim.

It's just sloppy pleading. Instead of carefully determining who could, and should, be made to respond to each of their claims, plaintiffs appear to have thrown all the defendants together indiscriminately. And they did this without making any specific allegations about any of the independent trustees, who are charged only with signing the fund's registration statement. (Compl. ¶¶ 34–40.)

Plaintiffs should have pleaded specific facts showing some wrongdoing by each of the independent trustees. And they should have made them respond only to those claims where someone in their positions could possibly be liable. Because plaintiffs did not comply with these common-sense rules, their claims against the independent trustees should be dismissed.[1]

**ARGUMENT**

Plaintiffs invoke the wrong pleading standard. They say Rule 8, rather than Rule 9(b), governs their federal securities claims. They make their argument both by misstating the applicable law and by misrepresenting the essence of their complaint.

Plaintiffs first say that Rule 9(b) does not apply to their federal claims because "fraud is not an essential element" of those claims. (Opp. Br. at 14.) But the applicability of Rule 9(b) does not turn on the elements of the pleaded claim — the rule refers to the "circumstances" constituting fraud. Fed. R. Civ. Proc. 9(b). For that reason, the Ninth Circuit has consistently held that the nature of the alleged conduct, and not the legal elements of the claim, controls the

---

[1] The independent trustees also seek dismissal of all claims against them for the reasons set forth in the Schwab defendants' reply brief re motion to dismiss, which is incorporated here by this reference.

MASTER FILE NO. C-08-01510-WHA
REPLY MEM. ISO OF INDEP. TRUSTEES' MOTION TO DISMISS FIRST CONSOL. AMENDED COMPL.
sf-2611812

1

application of Rule 9(b). *E.g.*, *In re Daou Sys., Inc. Sec. Litig.*, 411 F.3d 1006, 1027 (9th Cir. 2005); *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1404–05 (9th Cir. 1996).

The test, under these cases, is whether the alleged conduct "sounds in fraud," is "grounded in fraud," or, as *Vess* puts it, "necessarily constitute[s] fraud." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097 (9th Cir. 2003); *see In re Daou Sys., Inc. Sec. Litig.*, 411 F.3d at 1027 (Rule 9(b) applies to complaint that "sounds in fraud"); *In re Stac Elecs. Sec. Litig.*, 89 F.3d at 1404–05 (Rule 9(b) applies to allegations "grounded in fraud"). Plaintiffs argue for a more stringent rule, saying Rule 9(b) applies only if the alleged conduct amounts to a "unified course of fraudulent conduct." (Opp. Br. at 14.) But Rule 9(b), by its terms, says a plaintiff "must" plead the circumstances constituting fraud with particularity any time "fraud or mistake" is alleged. Fed. R. Civ. Proc. 9(b). And while plaintiffs cite *Daou* and *Vess*, both of those cases say plainly that Rule 9(b) applies to every allegation of a fraudulent act, not just to a complaint alleging a unified course of fraudulent conduct. *In re Daou Sys., Inc. Sec. Litig.*, 411 F.3d at 1027 (all "allegations of fraudulent conduct must satisfy the heightened pleading requirements of Rule 9(b)"); *Vess*, 317 F.3d at 1103–04 (Rule 9(b) applies even when "a plaintiff . . . choose[s] not to allege a unified course of fraudulent conduct . . . but rather to allege some fraudulent and some non-fraudulent conduct").[2]

We demonstrated previously that plaintiffs' complaint alleges conduct that, if it had really happened, could only be described as fraudulent. The complaint alleges the fund purchased, over a period of years, hundreds of securities that were "routinely mispriced," "misleadingly described," and "riskier than represented." (Compl. ¶ 2.) The fund allegedly "abandoned [its]

---

[2] Plaintiffs also cite *Safron Capital Corp. v. Leadis Technology, Inc.*, 274 Fed. Appx. 540, 2008 WL 1776407, at **1 (9th Cir. Apr. 18, 2008) and *In re Merix Corp. Securities Litigation*, 275 Fed. Appx. 599, 2008 WL 1816423, at **1 (9th Cir. Apr. 22, 2008). These cases are not precedent. *See* Ninth Circuit Rule 36-3(a) ("[u]npublished dispositions and orders of this Court are not precedent"). In any event, both cases conform to the rule stated in the Ninth Circuit's published decisions. *Safron Capital Corp.*, 2008 WL 1776407, at **1 ("a complaint [that] 'sounds in fraud' or is 'grounded in fraud'" must comply with Rule 9(b) even if the complaint "do[es] not use the word 'fraud' to describe a defendant's actions"); *In re Merix Corp. Sec. Litig.*, 2008 WL 1816423, at **1 (Rule 9(b) does not apply where allegations do not "sound in fraud" and complaint does not "allege facts that *necessarily* constitute fraud") (emphasis in original).

MASTER FILE NO. C-08-01510-WHA
REPLY MEM. ISO OF INDEP. TRUSTEES' MOTION TO DISMISS FIRST CONSOL. AMENDED COMPL.
sf-2611812

2

stated duration objective without disclosing such," falsely said its duration was one year or less, and "conceal[ed] the fact that duration was not as represented." (*Id.* ¶¶ 6, 86(b).) The fund allegedly used the wrong performance benchmark "in an effort to attract investment," "misrepresented maturity dates," and misrepresented the fund's "asset allocation." (*Id.* ¶¶ 6, 86(g).) The fund allegedly made a "deliberate decision to modify and exceed" its concentration policy, and then "sought to hide the change." (*Id.* ¶¶ 9–10.) Finally, certain defendants allegedly knew of these problems and, using their "inside knowledge," caused other Schwab-affiliated mutual funds to liquidate their YieldPlus holdings "before the public investors became aware of the losses." (*Id.* ¶ 12.)

Indeed, plaintiffs' opposition briefs describe these allegations in terms that clearly imply fraud. This is how their opposition to the Schwab defendants' motion characterizes plaintiffs' overall theory: "the Fund wrongfully held risky, long-term securities and concealed it from shareholders." (Opp. Br. re Schwab Defs. at 1.) "[T]he Fund 'misrepresented' its safety by purchasing riskier and longer-term mortgage-backed securities than were appropriate for an 'ultrashort' bond fund, and disclosed none of this to investors." (*Id.* at 2.) "Defendants' misconduct of larding the Fund's portfolio with risky, long-term securities, misrepresented as safe and of short duration, in order to pump up the Fund's returns to attract new investors, caused the fund's NAV to crash when those misrepresented securities' concealed risks were realized." (*Id.* at 13.)

All these allegations "sound in fraud," are "grounded in fraud," and "necessarily constitute fraud." Plaintiffs protest that their complaint does not specifically allege fraudulent intent on the part of any defendant. (Opp. Br. at 15.) But plaintiffs cannot avoid Rule 9(b) simply by avoiding words like "fraud" or "intent." *Vess*, 317 F.3d at 1105 ("[f]raud can be averred by specifically alleging fraud, or by alleging facts that necessarily constitute fraud (even if the word 'fraud' is not used)"); *In re Anchor Gaming Sec. Litig.*, 33 F. Supp. 2d 889, 893 (D. Nev. 1999) (Rule 9(b) applies where, "[n]otwithstanding the absence of express fraud allegations, the Complaint is rife with insinuations and suggestions that Defendants purposefully omitted and misstated material information, intending to benefit therefrom").

MASTER FILE NO. C-08-01510-WHA  
REPLY MEM. ISO OF INDEP. TRUSTEES' MOTION TO DISMISS FIRST CONSOL. AMENDED COMPL.  
sf-2611812

3

That is the whole point of the *Netlist* case. *Belodoff v. Netlist, Inc.*, 2008 WL 2356699 (C.D. Cal. May 30, 2008). *Netlist* dealt with a complaint that did "not include any express allegation of fraud" and "very carefully avoid[ed] use of any terms or phrases generally associated with fraud, such as 'intentional,' 'knowing,' or 'purposeful.'" *Id.* at *5–6. But the court looked beneath the labels and concluded the alleged conduct necessarily constituted fraud: "No reasonable jury could conclude that Defendant carried out the channel stuffing practice, which implies an intent to overstate revenue, and yet failed to disclose such practice through anything other than the intent to deceive." *Id.* at *6.

Just as in *Netlist*, no one could believe the many "misrepresentations" alleged by plaintiffs in this case occurred "through anything other than the intent to deceive." *Belodoff*, 2008 WL 2356699, at *6; *see also Twinde v. Threshold Pharms. Inc.*, 2008 WL 2740457, at *5–6 (N.D. Cal. July 11, 2008) (complaint stated that sections 11 and 12 claims were "not based on allegations 'that defendants committed intentional or reckless misconduct;'" Rule 9(b) applied anyway because allegations that false claims of statistically significant improvements as a result of drug therapy "cannot be construed as allegations of negligent conduct in this context" and plaintiffs' disclaimers were "'unconvincing where the gravamen of the complaint is plainly fraud and no effort is made to show any other basis for the claims'") (citation omitted).

Finally, a word about Rule 8. Plaintiffs' complaint does not even meet this more lenient pleading standard. Plaintiffs say their complaint gives "fair notice" of their theories and, accordingly, complies with Rule 8. (Opp. Br. at 13.) But bare notice (if it were ever acceptable) is not enough now after *Bell Atlantic Corp. v. Twombly*, 530 U.S. 544, 127 S. Ct. 1955 (2007). *Bell Atlantic* holds that Rule 8 "requires more than labels and conclusions." *Id.* at 1964–65. Instead, a plaintiff must plead "enough fact to raise a reasonable expectation that discovery will reveal evidence" of wrongful conduct. *Id.* at 1965. That is, plaintiffs must plead enough to get across "the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 1966.

Plaintiffs' complaint does not get over this line: it offers no facts to make plausible plaintiffs' claims that the fund's independent trustees made false statements or participated in any wrongdoing. As we show below, plaintiffs have no reasonable expectation, and no plausible

MASTER FILE NO. C-08-01510-WHA
REPLY MEM. ISO OF INDEP. TRUSTEES' MOTION TO DISMISS FIRST CONSOL. AMENDED COMPL.
sf-2611812

4

claim, that the independent trustees were "sellers" under section 12, "control persons" under section 15, engaged in "intentional interference" with contract, engaged in "unlawful" conduct prohibited by section 17200, or breached any fiduciary duties.

I.  **PLAINTIFFS' SECTION 12 CLAIM DOES NOT ALLEGE THE INDEPENDENT TRUSTEES WERE "SELLERS" OF THE FUND'S SHARES**

Plaintiffs agree with us on the legal definition of "seller" for purposes of section 12. The term "seller" encompasses both the "owner who passed title" and any person "who successfully solicits the purchase, motivated at least in part by a desire to serve his own financial interests or those of the security owner." *Pinter v. Dahl*, 486 U.S. 622, 647 (1988). (*See* Opp. Br. at 15–16.)[3] Plaintiffs also agree the independent trustees were not "owners who passed title" to the fund's investors. (*See* Opp. Br. at 15.) The issue, then, is whether plaintiffs have adequately pleaded facts showing the independent trustees solicited the plaintiffs' investments in the fund, motivated by either their own financial interests or those of the fund.

Plaintiffs' complaint, in fact, alleges just the opposite. The complaint says that Schwab Investments is the issuer of shares of the fund. (Compl. ¶ 28.) It alleges that each of the independent trustees "is a Trustee of Schwab Investments." (*Id*. ¶¶ 34–40.) Then it alleges that Schwab Investments entered into a "Distribution Agreement" with Charles Schwab & Co., Inc. (Charles Schwab Corporation's broker-dealer subsidiary), to be the "principal underwriter and distributor for shares of the Fund." (*Id*. ¶ 26.) Under this agreement, Charles Schwab & Co., Inc., acts as Schwab Investments' "agent for the purpose of the continuous offering of the Fund's shares." (*Id*.)

Plaintiffs' complaint does not connect any of the independent trustees to the solicitation and distribution activities of Charles Schwab & Co., Inc. (*See* Compl. ¶¶ 34–40.) Plaintiffs couldn't, of course — the trustees are not Schwab employees and are independent of Schwab and

---

[3] Plaintiffs cite *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 535 (9th Cir. 1989), and imply it creates a different standard. (Opp. Br. at 15–16.) But *Moore* quotes directly from *Pinter*. *See also Siemers v. Wells Fargo & Co.*, 2007 U.S. Dist. LEXIS 21935, at *62 (N.D. Cal. Mar. 9, 2007) (relying on *Pinter* for "seller" test).

MASTER FILE NO. C-08-01510-WHA
REPLY MEM. ISO OF INDEP. TRUSTEES' MOTION TO DISMISS FIRST CONSOL. AMENDED COMPL.
sf-2611812

5

its subsidiaries. Plaintiffs' own complaint thus disproves the assertion that the independent trustees played any role in soliciting the plaintiffs' investments in the fund.

Plaintiffs respond by arguing that, under Rule 8, they can plead "'seller' status generally," and merely need to "give[] fair notice that Plaintiffs intend to prove Defendants' seller status." (Opp. Br. at 16–17.) That is no longer the law. The cases plaintiffs cite for this argument — cases like *In re Westinghouse Securities Litigation*, 90 F.3d 696, 717 (3d Cir. 1996), *In re NationsMart Corp. Securities Litigation*, 130 F.3d 309 (8th Cir. 1997), and *In re Chambers Development Securities Litigation*, 848 F. Supp. 602, 625 (W.D. Pa. 1994) — all predate *Bell Atlantic* and are based on the old standard set out in *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957). The Supreme Court expressly rejected the old standard in *Bell Atlantic*. 127 S. Ct. at 1969 (the "fair notice" approach "is best forgotten as an incomplete, negative gloss on an accepted pleading standard"). Plaintiffs are now obligated to plead "enough fact to raise a reasonable expectation that discovery will reveal evidence" of wrongful conduct, and to plead enough to get across "the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 1965–66. Plaintiffs fail this new test, because their complaint offers no reasonable expectation that discovery will reveal the trustees were actively engaged in soliciting investments in the fund, and no plausible basis for believing the trustees could be liable as "sellers" under section 12.

Plaintiffs next argue that they adequately allege "a more active involvement by the Trustees," because they allege all the defendants "'were participants in the distribution of the Fund's shares'" and "'actively solicited the sale of the Fund's shares to serve their own financial interests.'" (Opp. Br. at 18 (*quoting* Compl. ¶¶ 138, 140).) These allegations have two obvious problems: they are impermissible legal conclusions; and they improperly lump together all the defendants. *Bell Atlantic Corp.*, 127 S. Ct. at 1964–65 (under Rule 8, plaintiffs must plead more than "conclusions"); *In re VeriFone Sec. Litig.*, 11 F.3d 865, 868 (9th Cir. 1993) (court need not accept conclusory allegations of law and unwarranted inferences); *Kennilworth Partners L.P. v. Cendant Corp.*, 59 F. Supp. 2d 417, 430 (D.N.J. 1999) (complaint cannot "lump" the outside directors together with other defendants to make "conclusory allegations of wrongdoing").

MASTER FILE NO. C-08-01510-WHA  
REPLY MEM. ISO OF INDEP. TRUSTEES' MOTION TO DISMISS FIRST CONSOL. AMENDED COMPL.  
sf-2611812

6

Finally, plaintiffs return to their one specific allegation against the independent trustees — that they signed the fund's registration statement. (Opp. Br. at 17.) Surely this allegation, plaintiffs say, is enough to show "seller" status. (*Id.*) But signing a registration statement is not the same as actually soliciting purchases of the fund's shares. To be sure, brokers may use a prospectus as a sales aid, and brokerage firms must send a prospectus to investors at the time of their investment. But the registration statement is issued by the fund, not its independent trustees, and the prospectus is no more than a tool in the hands of the persons actually engaged in soliciting investments. Ninth Circuit authority says that only those who are "'directly involved' in the actual solicitation" may be deemed to be "sellers." *In re Daou Sys. Sec. Litig.*, 411 F.3d at 1029.

The distinction between one who signs, and one who solicits, can be seen in the Supreme Court's decision in *Pinter v. Dahl*. *Pinter* held that persons involved in preparing registration statements, like lawyers and accountants, are not sellers under section 12. *Pinter*, 486 U.S. at 651–52 & n.27. The reason is because those persons are not directly engaged in soliciting investments; they "merely assist in another's solicitation efforts." *Id*. Some selling contact — some sales relationship between plaintiff and defendant — must exist before the "seller" requirement of section 12 can be met.

That's why most courts have concluded that signing a registration statement or prospectus, without more, does not give rise to "seller" liability. *See, e.g., In re Harmonic, Inc. Sec. Litig.*, 2006 WL 3591148, at *14 (N.D. Cal. Dec. 11, 2006) ("§ 12(a), unlike § 11(a), does not extend liability to those who simply sign a prospectus, without more"); *In re Infonet Serv. Corp. Sec. Litig.*, 310 F. Supp. 2d 1080, 1101 (C.D. Cal. 2003); *In re Stratosphere Corp. Sec. Litig.*, 1 F. Supp. 2d 1096, 1120–21 (D. Nev. 1998) ("[r]efusing to hold Defendants liable solely on the basis that they signed the Registration Statement and Prospectus comports with the Supreme Court's guidance in *Pinter*").

Plaintiffs here do not allege the independent trustees had any relationship to prospective investors. And they do not allege the trustees played any active or direct role in soliciting

plaintiffs' investments. As a result, the independent trustees are not "sellers" within the meaning of section 12.

## II. PLAINTIFFS' "CONTROL PERSON" ALLEGATIONS DO NOT SHOW THE INDEPENDENT TRUSTEES CONTROL THE OTHER DEFENDANTS

Plaintiffs allege that each independent trustee controlled all the other defendants "by virtue of his or her position as a trustee and/or senior officer of the Fund or the Defendant Schwab entities." (Compl. ¶ 148.) The complaint also alleges that each trustee "had a series of direct and/or indirect business and/or personal relationships with other trustees and/or officers and/or major shareholders." (*Id.*) Plaintiffs offer no details about these supposed relationships. Can this really be enough to state a "control person" claim?

Let's take all the defendants, other than Schwab Investments, first. Plaintiffs do not allege any "position" or "relationship" between any of the independent trustees and any of these other defendants. They do not plead, for example, that any independent trustee has any position with, or relationship to, the Charles Schwab Corporation, Charles Schwab & Co., Inc., Charles Schwab Investment Management, or any of the individuals who work for those entities. "Conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." *In re VeriFone Sec. Litig.*, 11 F.3d at 868.

Now let's look at Schwab Investments. The independent trustees, as a body, are responsible to oversee, and set direction for, this trust. But "control person" liability takes more than oversight responsibility — it takes day-to-day management responsibility. *In re McKesson HBOC Inc. Sec. Litig.*, 126 F. Supp. 2d 1248, 1277 (N.D. Cal. 2000) ("control" requires facts showing the person "exercised 'a significant degree of day-to-day operational control, amounting to the power to dictate another party's conduct or operations'") (citation omitted). The SEC says control means "the power to direct or cause the direction of the management and policies of a person, whether through ownership of voting securities, by contract, or otherwise." 17 C.F.R. § 230.405.

MASTER FILE NO. C-08-01510-WHA
REPLY MEM. ISO OF INDEP. TRUSTEES' MOTION TO DISMISS FIRST CONSOL. AMENDED COMPL.
sf-2611812

8

For this reason, the cases cited by plaintiffs miss the point, for they involve defendants in executive or managerial positions.[4] (Opp. Br. at 19–20.) Plaintiffs admit as much: they argue that "general allegations that individual defendants are the violator's senior executives suffice." (*Id*. at 19.) But the trustees are not alleged to be senior executives — they are trustees, closely analogous to outside directors, with no executive or managerial responsibilities. *See Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1067 & n.13 (9th Cir. 2000) (outside director not liable as control person); *In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 436–37 (S.D.N.Y. 2001) ("[o]fficer or director status alone does not constitute control for the purposes of § 20(a) liability").

Finally, plaintiffs fall back on their argument that the trustees either "signed or authorized the signing" of the fund's registration statement. (Opp. Br. at 20.) And they cite *LDK Solar* for the proposition that signing a registration statement makes an outside director (or trustee) the control person of the issuer. (*Id.*) *LDK Solar*, however, involved allegations of control against the "senior officer[s] or manager[s] of LDK," and the complaint in that case alleged the individual defendants "undertook certain activities typical of managers" and had "the ability to control or influence" the corporation. *In re LDK Solar Sec. Litig.*, 2008 U.S. Dist. LEXIS 80717, at *39 (N.D. Cal. Sept. 24, 2008). No such allegations are made here.

Plaintiffs' control person allegations against the independent trustees, set out in their entirety at paragraph 148 of the complaint, do nothing to establish a reasonable or plausible case that any trustee controls any of the other defendants. Plaintiffs' section 15 claim should be dismissed as against the independent trustees.

### III. COUNTS IV AND VI SHOULD BE DISMISSED

We demonstrated in our opening brief that the trustees cannot be found to interfere with an alleged contract involving Schwab Investments. Plaintiffs concede we are right on this issue: they acknowledge that those "who signed the Registration Statements . . . are contracting parties

---

[4] Plaintiffs' citation to *Siemers v. Wells Fargo & Co., Inc.,* is even more off-base. *Siemers* involved a corporate parent, not outside directors. *Siemers*, 2006 U.S. Dist. LEXIS 60858, at *38 (N.D. Cal. Aug. 14, 2006).

MASTER FILE NO. C-08-01510-WHA
REPLY MEM. ISO OF INDEP. TRUSTEES' MOTION TO DISMISS FIRST CONSOL. AMENDED COMPL.
sf-2611812

9

that cannot be liable in tort for interfering with the performance of the contract." (Opp. Br. at 2, 22–23.) These two claims for interference with contract should be dismissed as against the independent trustees.

### IV. THE INDEPENDENT TRUSTEES COMMITTED NO "UNLAWFUL" ACT UNDER SECTION 17200 (COUNTS V AND VII)

Our opening brief demonstrated that plaintiffs do not plead any sort of "unlawful" act by any of the independent trustees. (*See* Open. Br. at 8; Compl. ¶¶ 172, 179.) In response, plaintiffs say the "have adequately placed the Trustees on notice of the basis of their" section 17200 claim. (Opp. Br. at 24.)

Plaintiffs' complaint belies that assertion. The "unlawful" conduct alleged in Counts V and VII apparently concerns a supposed violation of the fund's "no-concentration fundamental investment policy." (Compl. ¶¶ 171, 178.) According to plaintiffs, "the Fund deviated from its investment policy that was changeable only by a shareholder vote and from a policy recited in the Fund's Prospectus as a 'fundamental investment policy.'" (*Id.* ¶ 180.)

Nowhere does plaintiffs' complaint attempt to link any of the trustees to these alleged wrongs. Plaintiffs do not allege that any independent trustee caused, or participated in, any supposed deviation from the fund's concentration policy. Nor does the complaint blame the trustees for any deviation from the representations contained in the fund's prospectus. All the complaint says it that either the "Fund" or all the "Defendants" "engaged in 'unlawful' business acts and practices." (Compl. ¶¶ 172, 179.)

That is not enough to satisfy Rule 8, let alone Rule 9(b). We have already shown that Rule 9(b) governs section 17200 claims. (Open. Br. at 8 n.4.) Plaintiffs argue, though, that these cases do not apply, and they specifically argue that *Silicon Graphics* does not control because it did not involve a section 17200 claim. (Opp. Br. at 23.) We cited *Silicon Graphics*, however, for the general proposition that plaintiffs must inform each individual defendant of the basis on which he or she has been sued. That principle applies to all claims, whether governed by Rule 9(b) or Rule 8, and it does not depend on the particular statute or claim. *See In re Silicon Graphics Sec. Litig.*, 970 F. Supp. 746, 752 (N.D. Cal. 1997).

MASTER FILE NO. C-08-01510-WHA
REPLY MEM. ISO OF INDEP. TRUSTEES' MOTION TO DISMISS FIRST CONSOL. AMENDED COMPL.
sf-2611812

10

The other cases cited in our opening brief — cases to which plaintiffs do not respond — do involve section 17200 claims, and they uniformly hold that section 17200 claims "sound in fraud" and must be pleaded in compliance with Rule 9(b).

Plaintiffs' allegations here do not comply with either Rule 9(b) or Rule 8, because they provide no plausible basis for believing the independent trustees personally engaged in any "unlawful" act relating to the fund's concentration policy or investment practices.

### V. PLAINTIFFS' BREACH OF FIDUCIARY DUTY CLAIM VIOLATES RULE 9(b) AND DOES NOT OVERCOME THE BUSINESS JUDGMENT RULE

Plaintiffs' final claim is like an insider trading claim. It alleges that "all defendants except PWC" "had inside information as to the true nature of the fund." (Compl. ¶¶ 184, 186.) It goes on to allege that, based on this supposed inside information, the defendants "caused [other] Schwab funds to withdraw from the Fund at the expense of members of the class. This act of withdrawal was a breach of fiduciary duty." (*Id.* ¶ 187.)

Plaintiffs now say they mistakenly named the trustees as defendants to this claim. They admit that "the main thrust of Count VIII – which pertains to Fund liquidations by other Schwab funds – does not apply to the Trustees." (Opp. Br. at 24.) For this reason, the independent trustees should be dismissed from this claim.

Plaintiff go on to argue, however, that their fiduciary duty claim also encompasses a claim for "violation of Plaintiffs' voting rights by unilaterally revising the Fund's no-concentration fundamental policy without the requisite shareholder vote." (*Id.*) There are many things wrong with this statement, but only one point needs to be mentioned here: plaintiffs' current fiduciary claim has nothing to do with any voting rights. (*See* Compl. ¶¶ 184–87.) The claim deals exclusively with "inside information" and the redemptions made by other Schwab mutual funds from the YieldPlus fund. (*Id.*) Plaintiffs cannot use their opposition brief to amend their complaint. *See Lepp v. Gonzales*, 2005 WL 1867723, at *6 (N.D. Cal. Aug. 2, 2005) ("to the extent the opposition attempts to state a new cause of action . . . such an amendment to the complaint is procedurally improper"); *Taxpayers of U.S. v. Bush*, 2004 WL 3030076, at *4 n.5

MASTER FILE NO. C-08-01510-WHA  
REPLY MEM. ISO OF INDEP. TRUSTEES' MOTION TO DISMISS FIRST CONSOL. AMENDED COMPL.  
sf-2611812

11

(N.D. Cal. Dec. 30, 2004) (declining to consider plaintiffs' new allegation raised for the first time in the opposition).

## CONCLUSION

The seven independent trustees are alleged to have signed the fund's registration statement, and nothing more. That is not enough to make them "sellers" under section 12 or "control persons" under section 15. Plaintiffs concede the trustees cannot be liable for interference with contract or for breach of fiduciary duty, as those claims are now alleged. And plaintiffs have not pleaded any unlawful conduct by the trustees for purposes of section 17200.

For these reasons, we respectfully request that the claims against the independent trustees be dismissed.

Dated: December 18, 2008

DARRYL P. RAINS
DOROTHY L. FERNANDEZ
KIMBERLY L. TAYLOR
MORRISON & FOERSTER LLP

By: /s/ Darryl P. Rains
         Darryl P. Rains

Attorneys for Defendants Mariann Byerwalter, Donald F. Dorward, William A. Hasler, Robert G. Holmes, Gerald B. Smith, Donald R. Stephens, and Michael W. Wilsey