1   DARRYL P. RAINS (CA SBN 104802)
    MORRISON & FOERSTER LLP
2   755 Page Mill Road
    Palo Alto, California 94304-1018
3   Telephone: 650.813.5600
    Facsimile: 650.494.0792
4   Email: DRains@mofo.com

5   DOROTHY L. FERNANDEZ (CA SBN 184266)
    KIMBERLY L. TAYLOR (CA SBN 240483)
6   MORRISON & FOERSTER LLP
    425 Market Street
7   San Francisco, California 94105-2482
    Telephone: 415.268.7000
8   Facsimile: 415.268.7522

9   Attorneys for defendants The Charles Schwab Corporation,
    Charles Schwab & Co., Inc., Charles Schwab Investment
10  Management, Inc., Schwab Investments, Charles R. Schwab,
    Evelyn Dilsaver, Randall W. Merk, George Pereira, Matthew
11  Hastings, Mariann Byerwalter, Donald F. Dorward, William A.
    Hasler, Robert G. Holmes, Gerald B. Smith, Donald R.
12  Stephens, and Michael W. Wilsey

13

14                    UNITED STATES DISTRICT COURT

15                  NORTHERN DISTRICT OF CALIFORNIA

16                      SAN FRANCISCO DIVISION

17

18  IN RE CHARLES SCHWAB CORP.          Master File No. C-08-01510-WHA
    SECURITIES LITIGATION
19                                      CLASS ACTION

20                                      OPPOSITION TO CLASS
                                        CERTIFICATION
21
                                        Date:     June 18, 2009
22                                      Time:     8:00 a.m.
                                        Judge:    Hon. William H. Alsup
23                                      Courtroom: 9

24

25

26

27

28

## STATEMENT OF ISSUES
(Local Rule 7-4)

1.       Should plaintiffs' section 11 class be limited to the period from October 30, 2007, to March 17, 2008, because plaintiffs do not claim the fund filed a misleading registration statement effective before October 30, 2007?

2.       Should plaintiffs' section 12 class be limited to the period from May 30, 2007, to March 17, 2008, because plaintiffs do not claim the fund's prospectus was false or misleading before May 30, 2007?

3.       May plaintiffs prosecute a section 12 claim on behalf of persons who purchased fund shares based on advertisements and oral statements without running afoul of Rule 23(b)(3)'s requirement that common issues must predominate over individual issues?

4.       May plaintiffs prosecute a section 12 claim on behalf of persons who were solicited, not by defendants, but through their own independent investment advisors, without violating Rule 23(b)(3)'s requirement that common issues must predominate over individual issues?

5.       Should plaintiffs' section 17200 class based on a purported denial of a right to vote, be limited to investors who held shares on September 1, 2006, the date the fund changed its industry definition for concentration purposes?

6.       Should plaintiffs' section 17200 class for an alleged violation of the fund's concentration policy, start no earlier than September 1, 2006, the date on which the fund allegedly started deviating from this policy?

7.       Should plaintiffs' section 17200 class be limited to California residents?

1

# TABLE OF CONTENTS

2                                                                          **Page**

3   STATEMENT OF ISSUES ..............................................................................................i

4   TABLE OF AUTHORITIES ..........................................................................................iii

5   INTRODUCTION ...........................................................................................................1

6   FACTUAL BACKGROUND ...........................................................................................2

7   ARGUMENT ...................................................................................................................6

8   I.      PLAINTIFFS' SECTION 11 CLASS PERIOD SHOULD EXTEND
            FROM OCTOBER 30, 2007, TO MARCH 17, 2008. ...................................8
9
10  II.     THE SECTION 12 CLASS PERIOD SHOULD EXTEND FROM MAY
            30, 2007, TO MARCH 17, 2008. ...................................................................10

11          A.      Plaintiffs Do Not Allege Schwab Sold Fund Shares "By Means" of
12                  a Misleading Prospectus Before May 30, 2007. ................................11

13          B.      The Section 12 Class Should Not Include Claims Based on
                    Advertisements, Web Pages, or Oral Statements. .............................12

            C.      The Class Should Not Include Investors Who Were Solicited By
14                  Independent Investment Advisors.....................................................13

15  III.    PLAINTIFFS' SECTION 15 CLAIM SHOULD HAVE THE SAME
            CLASS PERIODS AS PLAINTIFFS' SECTION 11 AND 12 CLAIMS.....................15

16  IV.     PLAINTIFFS CAN BRING THEIR SECTION 17200 CLAIM ON
            BEHALF OF NEITHER A NINE-YEAR CLASS, NOR A NATIONWIDE
17          CLASS. ..........................................................................................................15

18          A.      The Court Should Not Certify A Nine-Year Class Period. ................15

19          B.      A Nationwide Section 17200 Class Would Be Unmanageable.........16

20  CONCLUSION................................................................................................................19

21

22

23

24

25

26

27

28

# **TABLE OF AUTHORITIES**

**Page(s)**

## **CASES**

*Bass v. First Pac. Networks, Inc.*,
219 F.3d 1052 (9th Cir. 2000) ..........................................................................18

*BMW of N. Am., Inc. v. Gore*,
517 U.S. 559 (1996) ..........................................................................................19

*Bovee v. Coopers & Lybrand*,
216 F.R.D. 596 (S.D. Ohio 2003) ........................................................................7

*Castano v. The Am. Tobacco Co.*,
84 F.3d 734 (5th Cir. 1996) ...............................................................................19

*Coufal Abogados v. AT&T, Inc.*,
223 F.3d 932 (9th Cir. 2000) .............................................................................18

*Endres v. Wells Fargo Bank*,
No. C-06-7019 PJH, 2008 U.S. Dist. LEXIS 12159 (N.D. Cal. Feb. 6, 2008) .................7, 13

*Gene and Gene LLC v. Biopay LLC*,
541 F.3d 318 (5th Cir. 2008) .............................................................................14

*Guenther v. Cooper Life Scis.*,
759 F. Supp. 1437 (N.D. Cal. 1990) ...................................................................8

*Hanon v. Dataproducts Corp.*,
976 F.2d 497 (9th Cir. 1992) ...........................................................................6, 7

*In re Alliance Pharm. Corp. Secs. Litig.*,
279 F. Supp. 2d 171 (S.D.N.Y. 2003) ...............................................................11

*In re Am. Medical Sys., Inc.*,
75 F.3d 1069 (6th Cir. 1996) ............................................................................19

*In re Bank of Boston Corp. Secs. Litig.*,
762 F. Supp. 1525 (D. Mass. 1991) ...................................................................10

*In re Bridgestone/Firestone, Inc. Tires Prods. Liab. Litig.*,
288 F.3d 1012 (7th Cir. 2002) ..........................................................................18

*In re Charles Schwab Corp. Secs. Litig.*,
No. C-08-01510 WHA, 2009 WL 262456 (N.D. Cal. Feb. 4, 2009)............................*passim*

*In re Daou Sys. Secs. Litig.*,
    411 F.3d 1006 (9th Cir. 2005) ...................................................................................13

*In re Dynegy, Inc. Secs. Litig.*,
    226 F.R.D. 263 (S.D. Tex. 2004) ...................................................................................7

*In re First Alliance Mortgage Co. v. Lehman Commercial Paper, Inc.*,
    471 F.3d 977 (9th Cir. 2006) ...................................................................................12

*In re Grand Theft Auto Video Game Consumer Litig. (No. II)*,
    251 F.R.D. 139 (S.D.N.Y. 2008) ...................................................................................19

*In re Keegan Mgmt. Co. Secs. Litig.*,
    794 F. Supp. 939 (N.D. Cal. 1992) ...................................................................................8

*In re LDK Solar Secs. Litig.*,
    255 F.R.D. 519 (N.D. Cal. 2009) ...................................................................................7

*Indiana Elec. Workers Pension Trust Fund v. Dunn*,
    No. C-06-01711 RMW, 2007 WL 1223220 (N.D. Cal. Mar. 1, 2007) .................................16

*Kaplan v. Rose*,
    49 F.3d 1363 (9th Cir. 1994) ...................................................................................8

*Kreindler v. Sambo's Restaurants, Inc.*,
    No. 79 Civ. 4538 (WK), 1985 U.S. Dist. LEXIS 23388 (S.D.N.Y. Jan. 17, 1985)...................7

*Lapidus v. Hecht*,
    232 F.3d 679 (9th Cir. 2000) ...................................................................................16

*Lierboe v. State Farm Mut. Auto. Ins. Co.*,
    350 F.3d 1018 (9th Cir. 2003) ...................................................................................10

*Moore v. Kayport Package Express, Inc.*,
    885 F.2d 531 (9th Cir. 1989) ...................................................................................14

*Murray v. Hosp. Corp. of Am.*,
    682 F. Supp. 343 (M.D. Tenn. 1988) ...................................................................................16

*Nelsen v. King County*,
    895 F.2d 1248 (9th Cir. 1990) ...................................................................................10

*Norwest Mortgage, Inc. v. Super. Ct.*,
    72 Cal. App. 4th 214 (1999) ...................................................................................16, 17, 18

*Pell v. Weinstein*,
    759 F. Supp. 1107 (M.D. Pa. 1991) ...................................................................................13

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985) ...................................................................................7

*Pinter v. Dahl,*
    486 U.S. 622 (1988) ...................................................................................................... 13, 14

*Rogers v. Cisco Sys., Inc.,*
    268 F. Supp. 2d 1305 (N.D. Fla. 2003) ............................................................................ 18

*Rosen v. Fidelity Fixed Income Trust,*
    169 F.R.D. 295 (E.D. Pa. 1995) ................................................................................ 11, 13

*Shockley v. Adams Golf,*
    No. 99-371 KAJ, 2005 U.S. Dist. LEXIS 39044 (D. Del. June 27, 2005) ........................ 7, 14

*Shurkin v. Golden State Vintners Inc.,*
    471 F. Supp. 2d 998 (N.D. Cal. 2006) ............................................................................. 10

*Siemers v. Wells Fargo & Co.,*
    243 F.R.D. 369 (N.D. Cal. 2007) ..................................................................................... 10

*Stern v. Cingular Wireless Corp.,*
    No. C-05-8842 CAS, 2009 U.S. Dist. LEXIS 17944 (C.D. Cal. Feb. 23, 2009) .......... 7, 13, 14

*Sullivan v. Oracle Corp.,*
    557 F.3d 979 (9th Cir. 2009) ........................................................................................... 17

*Sullivan v. Oracle Corp.,*
    No. 05 CV 00392 AHS, slip op. (C.D. Cal. Oct. 19, 2006) ................................................ 17

*Tracker Marine, L.P. v. Ogle,*
    108 S.W.3d 349 (Tex. App.-Houston [14th Dist.] 2003, no pet.) ...................................... 18

*Washington Mut. Bank v. Super. Ct.,*
    24 Cal. 4th 906 (2001) .................................................................................................... 18

*Zinser v. Accufix Research Inst., Inc.,*
    253 F.3d 1180 (9th Cir. 2001) ...................................................................................... 6, 19

**STATUTES AND RULES**

15 U.S.C.
    § 77k(a) .......................................................................................................................... 1, 8, 10
    § 77*l*(a)(2) ................................................................................................................ 1, 10, 11, 13
    § 80a-24(e) ............................................................................................................................... 8

17 C.F.R § 230.159(a) ............................................................................................................... 13

17 C.F.R.§ 230.485 .................................................................................................................... 8

Fed. R. Civ. P.
    23(a) ......................................................................................................................................... 6
    23(b)(3) .................................................................................................................................... 6

1

## OTHER AUTHORITIES

2   J. William Hicks, *Civil Liabilities Enforcement & Litigation Under the 1933 Act* (2008) ..........11

3   William L. Stern, *Bus. & Prof. C. Practice*

4   *§ 17200* (The Rutter Group 2008)........................................................................................18

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**INTRODUCTION**

2          Rather than propose a class definition tied to the complaint's substantive allegations, or

3   suggest a trial plan to resolve obvious choice-of-law and proof issues, plaintiffs' motion leaves

4   these issues for the Court and defendants to sort out.  Plaintiffs fall far short of meeting Rule 23's

5   requirements for commonality, typicality, and predominance.

6          For instance, plaintiffs picked the wrong class periods for their claims.  Plaintiffs'

7   proposed section 11 class runs from March 17, 2005, to March 17, 2008.  But a section 11 claim

8   can only be based on a registration statement that was false or misleading on the date it "became

9   effective."  15 U.S.C. § 77k(a).  And the first such registration statement, according to the

10  complaint, became effective on October 30, 2007.  Plaintiffs' proposed section 11 class period

11  should therefore be modified to run from October 30, 2007, to March 17, 2008 (the date on which

12  this action was commenced).

13         Similarly, plaintiffs' section 12 claim must be based on allegations that the fund's

14  prospectus was false or misleading on the date of purchase — or, in a class action, on the date of

15  each proposed class member's purchase.  15 U.S.C. § 77*l*(a)(2).  But plaintiffs do not allege the

16  fund's prospectus became false or misleading until May 30, 2007.  Plaintiffs' section 12 class

17  period should therefore be modified to run from May 30, 2007, to March 17, 2008.

18         Plaintiffs' proposed section 12 class needs two other modifications.  First, plaintiffs

19  challenge not just the accuracy of the fund's prospectus, but also statements contained in "glossy

20  brochures, letters and advertisements, including web pages," and "oral communications and

21  representations."  (First Am. Compl., Dckt. No. 104, ¶¶ 77, 79.)  Establishing which class

22  members were sold fund shares "by means" of any of these communications would require

23  individualized proof, overwhelming common class issues.  Second, some investors purchased

24  their shares following solicitation by their own independent investment advisors.  Establishing the

25  details of interactions between clients and advisors relating to fund transactions would swamp the

26  case's common issues.  Plaintiffs' proposed section 12 class should therefore be modified to

27  eliminate claims based on advertisements, letters, web pages, and oral statements, and to exclude

28

1    those investors who were solicited to purchased fund shares by their own independent investment

2    advisors.[1]

3          Plaintiffs' proposed section 17200 class also has the wrong class period.  Plaintiffs seek

4    certification of a class running from October 1999 (when the YieldPlus fund was formed) until

5    March 17, 2008.  But their complaint alleges that section 17200 was not violated until

6    September 1, 2006.  Plaintiffs' section 17200 class period should therefore be modified.  For

7    claims based on the fund not holding a shareholder vote, before changing its industry definition,

8    the class should be those who held shares as of September 1, 2006.  For claims based on the

9    fund's alleged violation of its concentration policy, the class should run from September 1, 2006,

10   to March 17, 2008.  Plaintiffs also propose a nationwide class for this claim even though section

11   17200 should not be applied to non-residents.  Plaintiffs' proposed class should be modified to

12   include only California residents.

13                                **FACTUAL BACKGROUND**

14         Only four of plaintiffs' claims survived our motions to dismiss.  Three of the surviving

15   claims are federal claims under sections 11, 12, and 15 of the '33 Act.  The fourth is for violation

16   of section 17200 of California's Business and Professions Code.

17         None of the federal claims alleges any wrongdoing during the first part of plaintiffs'

18   proposed three-year federal securities class period.  And while plaintiffs propose a nine-year class

19   period for their section 17200 claim, they do not allege that any violation occurred until the last

20   eighteen months of the period.

21         Plaintiffs' '33 Act Claims.  Plaintiffs say their '33 Act claims are based on five groups of

22   alleged misrepresentations.  All five of these misrepresentations allegedly occurred no earlier than

23   May 30, 2007.

24               *Statements Regarding Duration*.  According to plaintiffs, the fund's registration

25   statement and prospectuses contained false statements about the fund's "duration."  Duration is a

26   ───────────────────

27         [1] Plaintiffs' control person claim, under section 15, is dependent upon plaintiffs'
     section 11 and section 12 claims, and should therefore have the same class periods as those
     claims.

28

1  measure of a bond's sensitivity to interest rate changes.  The fund's Statement of Additional

2  Information explains that duration "is the magnitude of the change in the price of a bond relative

3  to a given change in market interest rates."  (Nov. 15, 2007, SAI at *11, attached as Taylor Decl.

4  Ex. A.)  The duration calculation weights the "bond's yield, coupon interest payments, final

5  maturity, call and put features and prepayment exposure into one measure."  (*Id.*)

6       The fund's registration statement and prospectuses say the fund "seeks to keep the average

7  duration of its portfolio at one year or less."  (Open. Br. at 3, Dckt. No. 189.)  Citing an unnamed

8  "sophisticated industry expert," plaintiffs claim "the actual duration" of the fund "exceeded two

9  years."  (*Id.*)  Plaintiffs have not provided any support for this charge, and they have not disclosed

10  any information about their expert's assumptions, data, or methodology.  What plaintiffs have

11  done, instead, is provide a chart listing the allegedly inaccurate statements about duration.  (First

12  Am. Compl. ¶ 86(b); Open. Br. at 4.)  According to the chart, the fund's duration did not exceed

13  its one-year target until May 30, 2007, and continuing through May 31, 2008.  Plaintiffs'

14  complaint does not allege the fund's duration exceeded one year at any time prior to May 30,

15  2007.

16       *Statements About Maturity Dates.*  The fund's registration statement incorporates

17  by reference the annual portfolio schedules included in the fund's audited financial statements.

18  These schedules list every security owned by the fund.  They also state each security's yield and

19  maturity date.

20       Plaintiffs allege that these holding schedules were misleading because "[i]nstead of

21  providing the true maturity date, Schwab instead provided the coupon payment date."  (Open. Br.

22  at 4.)  This had the effect, plaintiffs say, of suggesting "that the investments [were] short term"

23  and "masked the fact that portfolio duration was longer than represented."  (*Id.*)

24       Plaintiffs' argument ignores the explanation provided in the holding schedules.  Most of

25  the securities listed in the holding schedules are fixed-rate securities.  For these securities, the

26  final maturity date is reported.  But some of the securities are "variable-rate" securities, meaning

27  their interest rate "is adjusted either periodically or at specific intervals."  (Nov. 15, 2007, SAI at

28  *35.)  For variable-rate securities, "the[] interest rate exposure corresponds to the frequency of

1  the coupon reset." (*Id.* at *11.) Thus, for these securities, the holding schedules list the reset

2  date, not the maturity date. This procedure is fully disclosed:

3      If it is a variable-rate security, its effective maturity date is the
       earlier of its demand date or next interest rate change date. For
4      variable-rate securities not subject to a put or demand feature and
       floating-rate securities, the effective maturity date is the next
5      interest rate change date.

6  (*Id.* at *21.)

7      Plaintiffs' complaint alleges that eight variable-rate securities were improperly reported as

8  having "maturity dates" that were, in fact, coupon reset dates. (First Am. Compl. ¶ 86(c).) Each

9  of these eight alleged misstatements was made on May 31, 2008 — more than two months after

10 the end of the proposed class period. Plaintiffs do not allege the fund made any misleading

11 statement about maturity dates before May 31, 2008.

12     *Statements About Pricing.* Plaintiffs also claim that Schwab's portfolio schedules

13 used "inconsistent asset descriptions" and misstated "the pricing of securities listed in the holding

14 reports." Plaintiffs' complaint asserts that roughly a dozen individual securities (out of the

15 nearly 600 bonds held in the fund's portfolio) were misclassified or mispriced. (First Am.

16 Compl. ¶ 86(h); Open. Br. at 5.)

17     According to plaintiffs, all of the false statements about asset descriptions and pricing

18 were made in four quarterly reports, with the first dated as of May 31, 2007. (First Am. Compl.

19 ¶ 86(h).) Plaintiffs do not allege that any security was mispriced or incorrectly described before

20 that date.[2]

21     *Statements About Asset Allocation.* The fund's prospectus states that one of the

22 fund's objectives is to achieve yields greater than those realizable by money market funds while

23 having only "minimal changes in share price." (Open. Br. at 3.) Plaintiffs claim this statement

24 was false because the fund's "asset allocation was inconsistent with Schwab's representations that

25 the Fund was managed for price stability." (*Id.* at 5.)

26 ───────────────
           [2] The Court has already concluded that these pricing allegations do not add up to a
27 material misstatement. *In re Charles Schwab Corp. Secs. Litig.*, No. C-08-01510 WHA, 2009
   WL 262456, at *22 (N.D. Cal. Feb. 4, 2009), Dckt. No. 164.
28

1      According to plaintiffs, over time the fund became increasingly "concentrated in a single

2  risky industry or market sector."  (*Id.*)  Plaintiffs concede the fund was not over-concentrated in

3  August 2006.  (First Am. Compl. ¶ 86(d).)  But, by May 31, 2007, according to the complaint, the

4  fund allegedly had 46 percent of its assets in mortgage-backed securities.  (First Am. Compl.

5  ¶ 86(d); Open. Br. at 5.)  Plaintiffs claim this "level of concentration in mortgage-backed

6  securities [as of May 31, 2007] is inconsistent with the represented core purpose of this Fund."

7  (First Am. Compl. ¶ 86(d).)  However, plaintiffs do not say the fund was over-concentrated at any

8  point before May 31, 2007.

9      *Statements Regarding Benchmark.*  The fund compared its performance to a

10  "benchmark" — the "Lehman Brothers U.S. Short Treasury:  9-12 Months."  (First Am. Compl.

11  ¶ 86(g); Open. Br. at 4.)  Plaintiffs say the benchmark was misleading and was the "wrong

12  comparative index."  (Open. Br. at 4.)  According to plaintiffs, the choice of the Lehman Index

13  improperly "sought to assure investors that the Fund had a comparable profile equivalent to a 9-

14  12 month Treasury."  (*Id.*)

15      The fund's "benchmark" sought no such thing.  The SEC requires each mutual fund to

16  compare itself to a "broad-based securities market index."  The Lehman Index has the same

17  average duration as the YieldPlus fund, and, as a result, provides the most suitable available

18  benchmark.  Moreover, the choice of this benchmark was particularly appropriate given the

19  fund's stated investment objectives; hence the selection of this benchmark enabled investors

20  readily to see the differential in performance/yield.  Using the Lehman Index did not imply the

21  index and the fund had a "comparable profile."  In fact, the reference in the prospectus to the

22  index is accompanied by a specific explanation about the differences in credit quality between the

23  securities in the fund and those comprising the index.  It says:

24          The Lehman Brothers Short 9-12 Month U.S. Treasury Index is
            composed of only U.S. Treasury securities, which are direct
25          obligations of the U.S. government and are backed by the full faith
            and credit of the United States and are, therefore, considered free of
26          credit risk.  The fund may invest in debt instruments that are subject
            to credit risk (please see the discussion of credit risk in the Principal
27          risks section).

28  (Nov. 15, 2007, Prospectus at 7, attached as Taylor Decl. Ex. B.)

1    Although plaintiffs do not say when, according to them, the fund's choice of a benchmark

2    became misleading, their claim is based on their "duration" and "asset allocation" allegations.

3    Because misrepresentations associated with duration and allocation are not alleged to have been

4    made prior to May 2007, we may safely assume plaintiffs' benchmark claims also date from this

5    time period.

6        <u>Plaintiffs' Section 17200 Claim</u>.  Plaintiffs' section 17200 claim asserts that Schwab

7    committed an "unlawful" act when it allegedly "deviated from its investment policy" by investing

8    more than 25 percent of the fund's assets in mortgage-backed securities.  (First Am. Compl.

9    ¶ 180; Open. Br. at 6.)  Plaintiffs also claim that the fund failed to hold a shareholder vote when it

10   changed its definition of "industry" for concentration purposes.  (Open. Br. at 6.)  However,

11   plaintiffs allege that this so-called "deviation" and failure to hold a vote did not occur until

12   September 1, 2006.  (*Id.* at 2 n.2, 6.)

13   **ARGUMENT**

14       Plaintiffs bear the burden of establishing compliance with all four requirements set out in

15   Rule 23(a) as well as the requirements of Rule 23(b)(3).  *See, e.g.*, *Hanon v. Dataproducts Corp.*,

16   976 F.2d 497, 508–09 (9th Cir. 1992).  We agree that two of Rule 23(a)'s requirements —

17   numerosity and adequacy of representation — have been met by plaintiffs.  The third and fourth

18   requirements — commonality and typicality — are not met here, but only because, if the

19   proposed class periods are modified in the ways we propose, all of the class representatives will

20   fall outside of the modified class periods.

21       The bigger issue is compliance with Rule 23(b)(3).  Plaintiffs were required to

22   demonstrate that "the questions of law or fact common to class members predominate over any

23   questions affecting only individual members, and that a class action is superior to other available

24   methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  These

25   requirements are satisfied only if a "rigorous analysis" confirms they have been met.  *Zinser v.*

26   *Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001); *Hanon*, 976 F.2d at 509.

27       This analysis must include a careful consideration of plaintiffs' allegations and of the

28   "evidence relating to the merits if such evidence also goes to the requirements of Rule 23."  *In re*

1  *LDK Solar Secs. Litig.*, 255 F.R.D. 519, 525 (N.D. Cal. 2009) (citation omitted); *see also Hanon*,

2  976 F.2d at 509 (evidence must be considered "even [if] the evidence may also relate to the

3  underlying merits of the case").  Where plaintiffs point to neither allegations nor evidence

4  supporting their proposed class period, the period is properly circumscribed.  *Shockley v. Adams*

5  *Golf*, No. 99-371 KAJ, 2005 U.S. Dist. LEXIS 39044, at *5–8 (D. Del. June 27, 2005); *In re*

6  *Dynegy, Inc. Secs. Litig.*, 226 F.R.D. 263, 290–91 (S.D. Tex. 2004); *Bovee v. Coopers &*

7  *Lybrand*, 216 F.R.D. 596, 604 (S.D. Ohio 2003); *Kreindler v. Sambo's Restaurants, Inc.*, No. 79

8  Civ. 4538 (WK), 1985 U.S. Dist. LEXIS 23388, at *16 (S.D.N.Y. Jan. 17, 1985).

9         Common questions do not predominate in situations where advertisements, website pages,

10  and oral communications were not distributed to all proposed class members on a common basis.

11  *See Endres v. Wells Fargo Bank*, No. C-06-7019 PJH, 2008 U.S. Dist. LEXIS 12159, at *31–32,

12  (N.D. Cal. Feb. 6, 2008) (court denied motion for class certification where "individualized issues"

13  regarding the alleged "disclosure" aspect of the case would predominate).  Nor do common

14  questions predominate where plaintiffs' sales were solicited by their own financial advisors, and

15  not by Schwab.  *Cf. Stern v. Cingular Wireless Corp.*, No. C-05-8842 CAS, 2009 U.S. Dist.

16  LEXIS 17944, at *19–22 (C.D. Cal. Feb. 23, 2009) (court denied class certification where

17  individual sales transactions would have to be examined).

18         Finally, whenever a state law claim is proposed for nationwide class treatment, a plaintiff

19  has the burden of showing that the state has sufficiently significant contacts to the claims asserted

20  by each class member to ensure that application of that state's law does not violate constitutional

21  protections.  *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 821–22 (1985).

22         As discussed below, plaintiffs cannot meet these standards.  Plaintiffs cite neither

23  allegations in the complaint, nor supporting evidence, in support of the overbroad class periods

24  they propose for their securities and state law claims.  Nor do plaintiffs suggest how to navigate at

25  trial the thicket of individual legal and fact issues posed by their class definitions.

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**I.    PLAINTIFFS' SECTION 11 CLASS PERIOD SHOULD EXTEND FROM OCTOBER 30, 2007, TO MARCH 17, 2008.**

Plaintiffs' proposed section 11 class runs from March 17, 2005, to March 17, 2008.  But plaintiffs' complaint does not allege any section 11 violation until October 30, 2007.  Plaintiffs' proposed section 11 class period should therefore be modified to run from October 30, 2007, to March 17, 2008.

Section 11 creates a claim for persons who purchased shares pursuant to a registration statement that was false or misleading on its effective date.  15 U.S.C. § 77k(a); *Kaplan v. Rose*, 49 F.3d 1363, 1373 (9th Cir. 1994); *In re Keegan Mgmt. Co. Secs. Litig.*, 794 F. Supp. 939, 942 (N.D. Cal. 1992).  A person who purchased shares pursuant to a registration statement that was accurate when it became effective cannot pursue a section 11 claim, even if the registration statement later becomes false or misleading.  *See Guenther v. Cooper Life Scis.*, 759 F. Supp. 1437, 1440–41 (N.D. Cal. 1990).

The YieldPlus fund filed six registration statements during the proposed the class period. (First Am. Compl. ¶ 49.)[3]  Plaintiffs' complaint does not allege that the first four registration statements contained any false or misleading statement.  How can we say that?  Because plaintiffs' complaint groups all of the allegedly false and misleading statements into just three (long) paragraphs — paragraphs 86 through 88 of the First Amended Complaint — and those paragraphs allege that the fund's false statements began no earlier than May 30, 2007.  Thus, the first registration statement allegedly containing false or misleading statements is the one filed August 31, 2007, effective October 30, 2007.  (*See* First Am. Compl. ¶¶ 49, 86–88.)

This can be seen from a quick review of plaintiffs' allegations in paragraphs 86 through 88.  Plaintiffs allege that Schwab made false statements about the fund's "duration," which was represented to be less than one year but which plaintiffs claim exceeded two years.

---

[3] These were post-effective registration statement amendments filed pursuant to Rule 485 of the '33 Act.  17 C.F.R.§ 230.485.  The effective date of such an amendment is "deemed the effective date of the registration statement" for section 11 purposes with respect to subsequently sold securities.  15 U.S.C. § 80a-24(e).

1   (Compl. ¶¶ 86(a)–(b); Open. Br. at 3.)  Plaintiffs' complaint alleges that plaintiffs' "expert"

2   calculated the fund's true "duration" on five dates, commencing on May 30, 2007, and continuing

3   through May 31, 2008, and found the fund's duration ranged from 1.95 years up to 2.35 years.

4   (*Id.*)  Plaintiffs do not allege, and have offered no evidence showing, that the fund's duration

5   exceeded one year at any point prior to May 30, 2007.

6        The same holds true for plaintiffs' other allegations of falsity in paragraphs 86 through 88.

7   Plaintiffs allege, for example, that the fund's registration statement misleadingly uses "coupon

8   payment dates" rather than "maturity dates" for variable-rate securities.  (First Am. Compl.

9   ¶ 86(c); Open. Br. at 4–5.)  But the only allegations made to support this charge are derived from

10  a "holding report" (not a registration statement) dated May 31, 2008 — or more than two months

11  after the close of the proposed class period.  Similarly, plaintiffs allege the fund's registration

12  statement overstated the value of certain securities listed in the fund's holding reports.  (First Am.

13  Compl. ¶ 86(h); Open. Br. at 5.)  But, again, plaintiffs say this alleged mispricing first appeared

14  on May 31, 2007, and was not incorporated into a registration statement until October 30, 2007.[4]

15  Plaintiffs make similar charges regarding the fund's asset allocation:  that in May 2007 the fund's

16  allocation to mortgage-backed securities reached a level "inconsistent with Schwab

17  representations that the Fund was managed for price stability."  (Open. Br. at 5.)  The fund is not

18  alleged to have reached this concentration, however, prior to May 2007.  (Open. Br. at 5; *see also*

19  Compl. ¶ 86(d).)

20        Plaintiffs, no doubt, will argue that paragraphs 86 through 88 offer only "examples" or

21  "illustrations" of false statements dating back to 2004.  But the complaint tells a different story.  It

22  alleges that "for many years" the fund adhered to its investment concentration policy.  (First Am.

23  Compl. ¶ 9.)  Only in *September 2006* did the fund change its definition of industry to permit the

24  unlimited purchase of mortgage-backed securities.  (*Id.* ¶ 10.)  Indeed, says the complaint, as

25  recently as August 2006, mortgage-backed securities constituted "only 28.9%" of the fund's

26  _____

27        [4] The Court has already concluded that "*[t]he complaint contains no allegations whatsoever of mispriced assets prior to May 2007.*"  *In re Charles Schwab Corp. Secs. Litig.*, 2009 WL 262456, at *22 (emphasis added).

28

1   portfolio.  (*Id.* ¶ 86(d).)  According to the complaint, only in *2007 and 2008*, after accumulating

2   additional such securities, did the fund hold mortgage-backed securities exceeding 45 percent of

3   the portfolio.  (*Id.* ¶ 11.)  Nor do plaintiffs' claims rely on some other, earlier conduct —

4   according to the complaint, it was the fund's mortgage-backed investments that "exposed

5   investors to high-risk instruments" and, ultimately, triggered plaintiffs' losses.  (*Id.* ¶ 106.)

6          In short, the complaint's timeline offers no support for a securities class going back to

7   March 2005.  And plaintiffs have provided the Court with neither alternative allegations nor

8   evidence supporting their proposed class period.  Nor did plaintiffs seek leave to add allegations

9   of earlier conduct in their recent motion to amend.  Based on the complaint, then, the first

10  registration statement alleged to have been false or misleading, on its effective date, became

11  effective on October 30, 2007.[5]  As such, plaintiffs' proposed section 11 subclass period should

12  be modified to run from October 30, 2007, to March 17, 2008.[6]

13  **II.     THE SECTION 12 CLASS PERIOD SHOULD EXTEND FROM MAY 30, 2007, TO
           MARCH 17, 2008.**

14

15         Plaintiffs also propose a three-year class period for their section 12 claim.  But a

16  section 12 claim must be based on allegations that the fund's prospectus was false or misleading

17  on the date of purchase.  15 U.S.C. § 77*l*(a)(2).  As previously explained, plaintiffs do not allege

18

19         [5] One cannot decide to purchase "pursuant to" a registration statement that has yet to be
20  published.  Those who decided to reinvest dividends from shares purchased pre-class, therefore,
    cannot have a claim under section 11 and are properly excluded from the subclass.  The Court has
21  excluded such pre-class purchasers from a securities class in at least one previous case.  *See
    Siemers v. Wells Fargo & Co.*, 243 F.R.D. 369, 376 (N.D. Cal. 2007).  The same logic excludes
22  pre-class purchasers from the section 12 subclass as well.

        [6] The proposed class representatives cannot represent this narrowed class because they
23  lack standing.  A proposed class representative must establish standing even before seeking to
    satisfy the requirements of Rule 23.  *Nelsen v. King County*, 895 F.2d 1248, 1250 (9th Cir. 1990).
24  Because all five proposed class representatives for this claim purchased their shares of the fund
    prior to October 30, 2007, (Taylor Decl. ¶¶ 4–9 & Exs. C–G), they are not members of the class
25  they would represent.  As such, they lack standing and must nominate someone new to represent
    the section 11 subclass.  15 U.S.C. § 77k(a); *see Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350
26  F.3d 1018, 1022, 1024 (9th Cir. 2003); *Shurkin v. Golden State Vintners Inc.*, 471 F. Supp.
    2d 998, 1024 (N.D. Cal. 2006); *In re Bank of Boston Corp. Secs. Litig.*, 762 F. Supp. 1525, 1532
27  (D. Mass. 1991).  We assume that it would not be difficult for plaintiffs to identify and put
    forward in short order a substitute representative with standing.

28

1    the fund's prospectus became false or misleading until May 30, 2007. Plaintiffs' section 12 class

2    period should therefore be modified to run from May 30, 2007, to March 17, 2008.

3        Plaintiffs' proposed section 12 class includes not just persons who assert claims

4    challenging the accuracy of the fund's prospectus, but also the accuracy of statements contained

5    in brochures, the Internet, and advertisements, as well as oral statements. (First Am. Compl.

6    ¶¶ 77, 79.) Claims arising from documents and oral statements not disseminated on a classwide

7    basis run afoul of Rule 23(b)(3)'s commonality requirement. In addition, many proposed class

8    members purchased their shares as a result of being solicited by their own financial advisors, and

9    not Schwab. These claims, too, raise individual issues that would predominate over common

10   issues. Plaintiffs' proposed section 12 class should be modified to eliminate claims based on

11   advertisements, letters, web pages, and oral statements, and to exclude those investors whose

12   sales were solicited by their own independent investment advisors.

13   **A.    Plaintiffs Do Not Allege Schwab Sold Fund Shares "By Means" of a Misleading Prospectus Before May 30, 2007.**

14

15       Section 12(a)(2) allows a claim against the "seller" of a security who accomplished the

16   sale "by means of a prospectus or oral communication, which includes an untrue statement of a

17   material fact or omits to state a material fact." 15 U.S.C. 77*l*(a)(2). The prospectus must have

18   been misleading on the date of the sales transaction. *In re Alliance Pharm. Corp. Secs. Litig.*,

19   279 F. Supp. 2d 171, 185 (S.D.N.Y. 2003) (for section 12 liability, the date of purchase is the

20   appropriate date for the court to determine whether the prospectus is materially false or

21   misleading); *Rosen v. Fidelity Fixed Income Trust*, 169 F.R.D. 295, 299 (E.D. Pa. 1995) (same);

22   J. William Hicks, *Civil Liabilities Enforcement & Litigation Under the 1933 Act* § 6:3.50 (2008).

23       Plaintiffs make the conclusory assertion that all of the fund's prospectuses issued "during

24   the period March 17, 2005, through March 17, 2008, were false and misleading." (First Am.

25   Compl. ¶ 52.) For support, they rely on the same allegations they used to back their section 11

26   claim. (*Id.* ¶¶ 86–88.) But, as already explained, these allegations show that May 30, 2007, is the

27   earliest date for which plaintiffs point to an allegedly false or misleading statement. *See supra*

28   § I. Since the date for determining whether a prospectus is materially false or misleading is the

1    date of each investor's purchase of his or her shares, the earliest date on which any class member

2    could have a claim is May 30, 2007.

3          Because all of the proposed class representatives purchased their shares before May 30,

4    2007, none has standing to assert a section 12 claim.  Plaintiffs will have to propose a new class

5    representative to certify a class on this claim.[7]

6          **B.      The Section 12 Class Should Not Include Claims Based on Advertisements,
               Web Pages, or Oral Statements.**

7

8          Plaintiffs' proposed section 12 class includes not just persons who challenge the accuracy

9    of the fund's prospectus, but also "glossy brochures, letters and advertisements, including web

10   pages," and "oral communications and representations."  (First Am. Compl. ¶¶ 77, 79.)  But

11   because these are not static, individualized issues of fact will predominate for those who

12   purchased "by means of" such representations.  These claims are not, therefore, subject to class

13   treatment.

14         Take, for example, plaintiffs' allegations regarding oral statements.  In the Ninth Circuit, a

15   class asserting claims based on oral representations must prove that the case stems "from a

16   'common course of conduct,'" where a "standardized sales pitch" is used.  *In re First Alliance*

17   *Mortgage Co. v. Lehman Commercial Paper, Inc.*, 471 F.3d 977, 990–91 (9th Cir. 2006) (citation

18   omitted).  But plaintiffs have not and cannot allege standardized oral communications between

19   each plaintiff and a Schwab representative.  Instead, plaintiffs rely on allegations that investor

20   communications followed common "themes."  (First. Am. Compl. ¶ 83; *see id.* ¶ 84 (referencing

21   the "selling theme"), *id.* ¶ 85 ("the common core sales theme").)[8]  Plaintiffs cannot articulate

22   what these "themes" were, relying instead on investor testimonials.  (*Id.*)  But that is precisely the

23   point:  Because one cannot prove a "theme" on a class-wide basis, plaintiffs will be required to

24         [7] All five of plaintiffs' class representatives purchased their shares before May 30, 2007.
25   (*See* Taylor Decl. ¶¶ 4–9 & Exs. C–G.)  As such, the current proposed representatives lack
     standing to assert these claims because none of their purchases could have been by means of a
26   false or misleading prospectus.  *See supra* n.6 (citing cases).

27         [8] Plaintiffs make a bare allegation that "Schwab brokers were provided a common script."
     (First Am. Compl. ¶ 83.)  The complaint is silent, however, as to what it said, when it was
     distributed, or whether anyone actually used it.

28

1   prove their case with individualized, not thematic, proof.  *See, e.g.*, *Stern*, 2009 U.S. Dist. LEXIS

2   17944, at *19–22 (absent standard sales practice, there is no plausible way for plaintiffs to prove

3   claims class-wide).

4            Advertising and web pages present the same problem.  Because these materials change

5   frequently, and because the claim of each individual who claims to have purchased "by means" of

6   such materials will require individual proof, those claims should be excluded from the class as

7   well.  *Endres*, 2008 U.S. Dist. LEXIS 12159, at *31 (common issues would not predominate

8   where defendants allegedly made a wide variety of oral and written representations); *cf. Rosen*,

9   169 F.R.D. at 299–300 (no typicality where case requires analysis of a fund's holdings on every

10  single day of the class period).[9]

11       **C.**     **The Class Should Not Include Investors Who Were Solicited By Independent**
             **Investment Advisors.**

12

13           Under section 12, a plaintiff may pursue a claim only against his seller or sellers.

14  15 U.S.C. § 77*l*(a)(2).  The United States Supreme Court has interpreted "seller" to mean the

15  "owner who passed title" to the security and "the person who successfully solicits the purchase,

16  motivated at least in part by a desire to serve his own financial interests or those of the security

17  owners."  *Pinter v. Dahl*, 486 U.S. 622, 647 (1988).  To establish that a defendant is a seller,

18  plaintiffs must prove that the defendant was "'directly involved' in the actual solicitation" of the

19  purchase.  *In re Daou Sys. Secs. Litig.*, 411 F.3d 1006, 1029 (9th Cir. 2005) (citation omitted).

20           Plaintiffs have not limited the subclass, however, to those who bought shares directly as a

21  result of a solicitation by Schwab or its affiliates.  Rather, plaintiffs would assert section 12

22  claims on behalf of those who purchased YieldPlus shares as a result of a solicitation by an

23  independent investment advisor or broker.  (*See* Open. Br. at 1–2.)

24           [9] And, because plaintiffs must show that purchases were made "by means" of a
25  prospectus, they must necessarily show that the statements were made *before* the time the
     investors purchased their shares.  *See Pell v. Weinstein*, 759 F. Supp. 1107, 1114 (M.D. Pa. 1991)
26  (sale was not "by means" of a prospectus that was issued after sale took place); 17 C.F.R
     § 230.159(a) (any information conveyed to a purchaser *after* the sale "will not be taken into
27  account").  That means, if plaintiffs assert that an oral misrepresentation was made to an
     individual investor, they must establish when precisely the statement was made.

28

The claims of such purchasers present individualized proof issues that render class treatment impractical.  After all, advisors and brokers can themselves be sellers under section 12. *See, e.g., Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 539 (9th Cir. 1989) (upheld section 12(2) claim against brokers).  The focus is on the "defendant's relationship with the plaintiff-purchaser." *Pinter*, 486 U.S. at 651.  Many investors engaged paid investment advisors to manage their Schwab investment accounts.  Those YieldPlus shareholders who worked with independent advisors will have to provide facts showing that it was defendants, and not their independent advisors, that "actually solicited plaintiffs' sales." *In re Charles Schwab Corp. Secs. Litig.*, 2009 WL 262456, at *30.

And, inherent in brokerage and advisory relationships are issues going to the heart of any section 12 claim:  Was the transaction solicited or unsolicited?  Who recommended the fund?  What was the basis for the recommendation?  What role, if any, did a defendant play?  Answering these questions will require the fact finder to consider countless transaction records and testimony. *Cf. Stern*, 2009 U.S. Dist. LEXIS 17944, at *19–22 (plaintiffs could not prove claims on a class-wide basis, where court would be required to examine each sales transaction).  The answer to these questions also raises the potential for unique defenses, such as whether or not plaintiffs' independent advisors informed them of information that they claim Schwab failed to disclose. *See Shockley*, 2005 U.S. Dist. LEXIS 39044, at *5 (section 11 class period shortened where press release meant that "individual issues regarding investors' knowledge w[ould] predominate") (quotation and citation omitted); *see also Gene and Gene LLC v. Biopay LLC*, 541 F.3d 318, 327, 328–29 (5th Cir. 2008) (regardless of whether question was an affirmative defense or element of the claim, class certification was improper where there was no "class-wide" method of proof).[10]  For these reasons, including these plaintiffs in this class would be unmanageable.

[10] Defendants will have other unique defenses to these claims.  For instance, Schwab requires many customers who work with their own investment advisors to sign a separate account agreement.  (*See* Taylor Decl. Ex. H.)  These agreements limit Schwab's role to exclude responsibility for determining the investments' suitability for the client.  (*Id.* at *10.)  These agreements also provide an indemnification provision, which states that the clients "agree to indemnify and hold harmless Schwab, its affiliates and their directors, officers, employees and
(Footnote continues on next page.)

### III.   PLAINTIFFS' SECTION 15 CLAIM SHOULD HAVE THE SAME CLASS PERIODS AS PLAINTIFFS' SECTION 11 AND 12 CLAIMS.

Plaintiffs' third federal claim is for control person liability under section 15.  Because that claim depends on underlying violations of sections 11 and 12, plaintiffs' section 15 claim should have the same class periods as their section 11 and section 12 claims.  *In re Charles Schwab Corp. Secs. Litig.*, 2009 WL 262456, at *10.

### IV.   PLAINTIFFS CAN BRING THEIR SECTION 17200 CLAIM ON BEHALF OF NEITHER A NINE-YEAR CLASS, NOR A NATIONWIDE CLASS.

Plaintiffs also seek to certify subclasses bringing claims under section 17200, California's unfair competition law.  (Open. Br. at 2; First Am. Compl. ¶ 172.)  These rest on supposed violations of sections 13(a) and 48(a) of the '40 Act.  (First Am. Compl. ¶¶ 172, 179.)  There are two problems with plaintiffs' proposal.  First, plaintiffs seek to represent purchasers over a nine-year period, despite the fact that holders of fund shares on September 1, 2006, are the first alleged to have suffered harm.  Second, California's choice-of-law rules — ignored by plaintiffs — require the application of the law of many states, making a nationwide class unmanageable.

#### A.   The Court Should Not Certify A Nine-Year Class Period.

Plaintiffs assert that defendants violated section 17200 when Schwab allegedly changed its "fundamental investment policies" without a shareholder vote.  (Open. Br. at 6.)  Plaintiffs also allege defendants "deviated from its investment policy" by investing more than 25 percent of the fund's assets in mortgage-backed securities.  (First Am. Compl. ¶ 180; Open. Br. at 6.)  Plaintiffs ask the Court to certify a pre-breach subclass encompassing those who, since the fund's 1999 inception, acquired shares and held them on September 1, 2006, as well as a so-called post-breach

---

(Footnote continued from previous page.)

agents from and against all claims, actions, costs and liabilities" arising out of "Schwab's execution of [the independent advisors'] instructions."  (*Id.*)  Schwab also has agreements with the independent advisors themselves.  (*Id.* Ex. I.)  These agreements provide that the advisors, and not Schwab, "have primary responsibility" for the client accounts and also contain an indemnification provision.  (*Id.* at 2, 3.)  In addition, some investment advisors may purchase blocks of securities and then allocate them to the accounts they manage — further removing Schwab from the transaction.

1  class of those who acquired shares on or after September 1, 2006.  (*See* Open. Br. at i.)  These

2  classes do not tie logically to plaintiffs' claims.

3       Plaintiffs' voting rights claim should be limited to investors who held fund shares on

4  September 1, 2006.  That's the date that plaintiffs say the fund amended its concentration policy

5  without a shareholder vote.  (*See* Open. Br. at 2 n.2.)  Anyone who did not hold shares on the day

6  the policy was changed had no right to vote on it.  *See, e.g.*, *Murray v. Hosp. Corp. of Am.*,

7  682 F. Supp. 343, 348 (M.D. Tenn. 1988) (plaintiffs who did not hold shares when proxy

8  statement was issued lack standing to pursue a voting rights claim).  There is no need for the

9  subclass definition to reference those who owned shares before or after September 1, 2006.[11]

10       Likewise, the class asserting a claim based on a violation of the fund's concentration

11  policy should be limited to those who held YieldPlus shares on or after September 1, 2006, the

12  date on which plaintiffs claim defendants violated the concentration policy.  (First Am. Compl.

13  ¶¶ 178–83; *see* Open. Br. at 2.)  Because only those who held shares when the claim arose may

14  recover, there is no basis to extend the class to pre-September 1, 2006 holders.  *See supra* § I.[12]

15  **B.    A Nationwide Section 17200 Class Would Be Unmanageable.**

16       California law does not automatically apply to nonresidents' claims.  The Court must

17  determine whether the presumption against its application to nonresidents has been overcome and

18  whether California has a "significant contact or a significant aggregation of contacts to the claims

19  asserted by each member of the plaintiff class" to overcome any constitutional concerns with

20  applying California law beyond the state's borders.  *See Norwest Mortgage, Inc. v. Super. Ct.*,

21  72 Cal. App. 4th 214, 222, 226 (1999) (*citing Phillips*, 472 U.S. at 821–22).

22       The court in *Norwest* analyzed these questions in the context of a section 17200 claim.

23  There, plaintiffs sought to certify a nationwide class of insureds to bring claims against Norwest

---

[11] No damages may be recovered by subclass members for this claim.  *Lapidus v. Hecht*, 232 F.3d 679, 682 (9th Cir. 2000).

[12] This claim amounts to no more than a claim of mismanagement, which plaintiffs should have asserted derivatively.  *See, e.g.*, *Indiana Elec. Workers Pension Trust Fund v. Dunn*, No. C-06-01711 RMW, 2007 WL 1223220, at *11 (N.D. Cal. Mar. 1, 2007) ("actions charging mismanagement which depress the value of stock allege a wrong to the corporation") (citation omitted).

1   Mortgage, a California corporation headquartered out-of-state. *Id.* at 218. Plaintiffs alleged

2   wrongdoing in connection with Norwest's purchase of insurance for plaintiffs. The court

3   recognized three categories of plaintiffs — (1) California residents; (2) "non-California residents

4   for whom Norwest Mortgage's conduct of purchasing [insurance] occurred in California;" and

5   (3) "non-California residents for whom Norwest Mortgage's conduct of purchasing [insurance]

6   occurred in states other than California." 72 Cal. App. 4th at 222. The court held that plaintiffs

7   could represent those in category one. The court stated that plaintiffs might be able to represent

8   those in category two, but only after a choice-of-law analysis and a determination of case

9   manageability. *Id.* at 229. With regard to those in the third category, however, the court held that

10  plaintiffs had not overcome due process considerations for application of section 17200 to those

11  nonresidents. *Id.* at 226–27.

12          Here, we don't dispute that plaintiffs could bring this claim on behalf of California

13  residents. As for nonresident members of the proposed class, although plaintiffs' opening brief

14  was silent on this point, we expect them to argue that fund decisions made in California permit

15  application of California law. But we disagree.

16          The question of whether section 17200 may be applied to nonresidents who bring claims

17  based on the conduct of California-based defendants is before the California Supreme Court. *See*

18  *Sullivan v. Oracle Corp.*, 557 F.3d 979, 980, 982 (9th Cir. 2009).[13]  But assuming that the Court

19  *can* apply section 17200 to nonresidents, the Court must nevertheless determine whether it *should*

20  do so. *Norwest Mortgage, Inc.*, 72 Cal. App. 4th at 222, 229.

21

22

23          [13] In *Sullivan v. Oracle Corp.*, No. 05 CV 00392 AHS (MCGx), slip op. at 11–13 (C.D.
    Cal. Oct. 19, 2006), plaintiffs sought to bring a section 17200 claim on behalf of nonresidents

24  against California-based Oracle. *See also Sullivan v. Oracle Corp.*, 557 F.3d 979, 980, 982 (9th
    Cir. 2009). The section 17200 claim was predicated on violations of the Fair Labor Standards

25  Act. *Id.* Relying on *Norwest*, the district court granted summary judgment for defendants on the
    basis that plaintiffs could not bring such claims. *Id.* The Ninth Circuit reviewed this decision,

26  but then vacated its opinion, choosing to certify the question to the California Supreme Court. *Id.*
    at 983; *see Sullivan v. Oracle Corp.*, No. S170577, News Release of the Judicial Council of

27  California: Summary of Cases Accepted During the Week of April 20, 2009, Release No. S.C.
    16/09 (Apr. 24, 2009), *available at* http://www.courtinfo.ca.gov/courts/supreme/recent.htm .

28

1    This requires the Court to use California's choice-of-law analysis — the "governmental

2    interest" test. *Id.*[14] The "governmental interest" test provides a three-step approach. *Washington*

3    *Mut. Bank v. Super. Ct.*, 24 Cal. 4th 906, 919–22 (2001). The Court must: (1) examine the

4    substantive laws for material differences; (2) determine whether the different states have an

5    interest in applying their own laws; and (3) then undertake a "comparative impairment analysis"

6    to see which states' interests would be most impaired if its laws were not applied. *Id.* at 919–20.

7    Under this analysis, the class claims are governed by the laws of multiple states. First,

8    state laws materially differ because, unlike the consumer protection laws of other states,

9    section 17200 liability can arise from claims under the federal securities laws. *Compare In re*

10   *Charles Schwab Corp. Secs. Litig.*, 2009 WL 262456, at *14 with William L. Stern, *Bus. & Prof.*

11   *C. Practice § 17200*, Ch. 3:27 (The Rutter Group 2008) (citing cases); *see also Rogers v. Cisco*

12   *Sys., Inc.*, 268 F. Supp. 2d 1305, 1315–17 (N.D. Fla. 2003) (court dismissed securities "holdings"

13   claims under Florida's little FTC act).[15]

14   Second, other jurisdictions have a strong interest in applying their own laws. The Ninth

15   Circuit in *Coufal Abogados v. AT&T, Inc.*, 223 F.3d 932, 935–36 (9th Cir. 2000), embraced this

16   principle. There, the Ninth Circuit affirmed the application of Mexico law to claims for tortious

17   interference with contract, even though Mexico does not recognize such a claim. *Id.* Other courts

18   have recognized similarly strong state interests in applying their own consumer protection laws.

19   *See, e.g., In re Bridgestone/Firestone, Inc. Tires Prods. Liab. Litig.*, 288 F.3d 1012, 1018 (7th

20   Cir. 2002) ("State consumer-protection laws vary considerably, and courts must respect these

21   differences rather than apply one state's law to sales in other states with different rules.") (*citing*

22   *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 568–73 (1996)).

23

24

25   [14] The Court must apply California's choice-of-law analysis because it sits in California. *Bass v. First Pac. Networks, Inc.*, 219 F.3d 1052, 1055 n.2 (9th Cir. 2000).

26   [15] The unfair competition laws also vary in other material respects, including statutes of limitations and whether a claim can even be brought as a class action. *See, e.g., Tracker Marine,*

27   *L.P. v. Ogle*, 108 S.W.3d 349, 352–55 (Tex. App.—Houston [14th Dist.] 2003, no pet.) (detailing the substantial conflicts in baby FTC acts).

28

1    Finally, California law would not be impaired by the application of the law of other states

2  because the Court can certify a class of California residents.  "States have a strong interest in

3  protecting consumers with respect to sales within their borders, but they have a relatively weak

4  interest, if any, in applying their policies to consumers or sales in neighboring states." *See In re*

5  *Grand Theft Auto Video Game Consumer Litig. (No. II)*, 251 F.R.D. 139, 149, 153 & n.20

6  (S.D.N.Y. 2008) (decertifying class action) (citations omitted); *cf. BMW of N. Am., Inc.*, 517 U.S.

7  at 572–73 ("Alabama may insist that BMW adhere to a particular disclosure policy in that State.

8  Alabama does not have the power, however, to punish BMW for conduct that was lawful where it

9  occurred and that had no impact on Alabama or its residents.").

10   Applying the law of multiple states to a nationwide class, of course, results in many

11  complications, such as the need for different jury instructions and perhaps different factual

12  showings for trial.  Variations in state law would "swamp any common issues and defeat

13  predominance" under Rule 23(b)(3).  *Castano v. The Am. Tobacco Co.*, 84 F.3d 734, 741 (5th Cir.

14  1996); *see also In re Am. Medical Sys., Inc.*, 75 F.3d 1069, 1085 (6th Cir. 1996) ("If more than a

15  few of the laws of the fifty states differ, the district judge would face an impossible task of

16  instructing a jury on the relevant law"); *In re Grand Theft Auto*, 251 F.R.D. at 158–61 (individual

17  issues predominate due to differences in states' consumer-protection laws); *Zinser*, 253 F.3d

18  at 1189.  The Court should, therefore, certify only a California class for this claim.

19                                  **CONCLUSION**

20   Plaintiffs have the burden of showing that they meet Rule 23's requirements for class

21  certification.  They side-stepped this burden by neglecting to address any of the obvious issues

22  raised by the overbroad class they asked the Court to certify.  The Court should deny plaintiffs'

23  motion for class certification of the securities law claims.  The Court should also deny plaintiffs'

24  \\\

25  \\\

26  \\\

27  \\\

28  \\\

1   motion to certify a nationwide section 17200 class and, instead, should certify a class of

2   California residents for the much shorter time periods that are consistent with plaintiffs' claims.

3

4   Dated:  May 29, 2009

DARRYL P. RAINS
DOROTHY L. FERNANDEZ
KIMBERLY L. TAYLOR
MORRISON & FOERSTER LLP

By:  /s/ Darryl P. Rains
       Darryl P. Rains
Attorneys for defendants The Charles Schwab
Corporation, Charles Schwab & Co., Inc.,
Charles Schwab Investment Management,
Inc., Schwab Investments, Charles R.
Schwab, Evelyn Dilsaver, Randall W. Merk,
George Pereira, Matthew Hastings, Mariann
Byerwalter, Donald F. Dorward, William A.
Hasler, Robert G. Holmes, Gerald B. Smith,
Donald R. Stephens, and Michael W. Wilsey