IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

IN RE:

CHARLES SCHWAB CORPORATION
SECURITIES LITIGATION.

This Document Relates
    To All Cases.
                                   /

No. C 08-01510 WHA

**ORDER RE MOTION FOR CLASS CERTIFICATION**

## INTRODUCTION

In this proposed class action, plaintiffs allege that defendants Charles Schwab Corporation and several affiliated entities and individuals violated federal securities laws and various state laws by misrepresenting the risk profile of Schwab's YieldPlus Fund and by improperly changing the fund's investment policies. Following motions on the pleadings, the bulk of plaintiffs' claims have been permitted to proceed against the Schwab defendants and the fund's independent trustees, although two state claims against those defendants were dismissed. All claims against Schwab's independent auditor were dismissed. Plaintiffs now move for class certification. For the reasons stated below, this order finds that the requirements of Rule 23 are satisfied, although the classes to be certified are somewhat different than those proposed by plaintiffs. The motion for class certification is therefore **GRANTED IN PART** and **DENIED IN PART**.

## STATEMENT

Investors in Schwab's YieldPlus Fund, a short-term fixed-income mutual fund, brought this action against (1) several Schwab corporate entities, and officers and employees thereof, (2)

trustees of the fund who signed the registration statements at issue, and (3) PricewaterhouseCoopers LLP, the fund's auditor. All of plaintiffs' federal claims — claims under Sections 11, 12 and 15 of the 1933 Act — and a state unfair-competition claim survived motions to dismiss filed by the Schwab defendants and the fund's independent trustees, but two other state claims against those defendants were dismissed. The claims against PricewaterhouseCoopers were also dismissed. There are no 1934 Act claims. Plaintiffs now move for class certification. The basic circumstances of the case were set forth in previous orders (*see* Dkt. No. 164, 195).

In brief, defendants annually filed registration statements with the SEC. They marketed and sold fund shares to investors with annual prospectuses. The prospectuses referred investors to various statements of additional information. These contained more detailed discussions of the fund's investment policies and risks. Investors were also referred to the fund's certified shareholder reports (*i.e.*, annual reports). Both were incorporated by reference into the prospectuses.

Plaintiffs allege that these documents as well as other Schwab advertisements and communications misrepresented the investment policies and risk profile of the fund. Defendants allegedly positioned the fund as an "ultra short term bond fund" which sought to keep its average portfolio duration below one year and to limit "principal risk" exposure in order to preserve capital. Instead, plaintiffs allege, the fund took on significantly greater risk by extending its average portfolio duration beyond two years.

Defendants also represented that the fund was similar to a money market fund and sought to maintain minimal changes in share price. Such representations were false, plaintiffs allege, because the fund concentrated an increasing portion of its assets — eventually more than 45 percent — in riskier mortgaged-backed and asset-backed securities. Due to such misrepresentations, plaintiffs allege, investors were unwittingly exposed to significant risks, and as the nation's mortgage crisis unfolded those risks led to substantial losses.

1   Multiple independent class actions filed by the fund's investors were consolidated into
2   the present class action, and five lead plaintiffs were appointed.[1]  Plaintiffs now move for class
3   certification.  They initially proposed one class for the federal securities claims and a second
4   class — consisting of two sub-classes — for the unfair-competition claim (the sole remaining
5   state claim).  The proposed federal securities class was as follows (Compl. ¶ 122.a):

> all persons or entities who acquired shares of the Fund traceable
> to a false and misleading Registration Statement and Prospectus
> for the Fund and who were damaged thereby.

As will be explained, in the course of briefing this motion plaintiffs changed course and requested two separate federal classes, a Section 11 class and a Section 12 class each with different class periods.

Defendants also propose a nationwide state-law class consisting of two sub-classes, a "pre-breach" sub-class and a "post-breach" subclass.  The proposed state "pre-breach class" is as follows (Br. at i):[2]

> all persons or entities who owned shares of the Fund at any time
> before September 1, 2006, and, by continuing to own those
> shares, suffered damages as a result thereof.

The proposed "post-breach class" is as follows (Br. at i):

> all persons or entities who acquired shares of the Fund at any time
> on or after September 1, 2006, and, by continuing to own those
> shares, suffered damages as a result thereof.

The proposed classes exclude defendants, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest (Br. at i).

**ANALYSIS**

In determining whether class certification is appropriate, "the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather,

---

[1] The lead plaintiffs are Kevin O'Donnell, James Coffin, John Hill, David and Gretchen Mikelonis, and Robert Dickson.

[2] As stated, the unfair-competition claim alleges that, in September 2006, defendants improperly changed the fund's investment policies *without a required shareholder vote* (the alleged breach), to allow the fund to concentrate a greater portion of its assets in risky mortgage-backed securities.  The pre-breach and post-breach classes are defined with respect to this alleged breach.

3

whether the requirements of Rule 23 are met." *Eisen v Carlisle & Jacquelin*, 417 U.S. 156, 177–178 (1974). Although we may not investigate the likelihood of prevailing on the merits, judges are at liberty to, and indeed must, consider evidence relating to the merits if such evidence also goes to the requirements of Rule 23. *Dukes v. Wal-Mart, Inc.*, 509 F.3d 1168, 1177 n.2 (9th Cir. 2007), *rehearing en banc granted by* 556 F.3d 919. The party seeking class certification bears the burden of showing that each of the four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b) are met. *Id.* at 1176; *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019–22 (9th Cir. 1998).

Pursuant to Rule 23(a), for a named plaintiff to obtain class certification, the court must find: (1) numerosity of the class; (2) that common questions of law or fact predominate; (3) that the named plaintiff's claims and defenses are typical; and (4) that the named plaintiff can adequately protect the interests of the class. In addition, in the instant case, plaintiffs seek to certify the class under Rule 23(b)(3). Certification under Rule 23(b)(3) requires that a district court find "that questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

The Schwab defendants agree that *a* class should be certified. Defendants, however, challenge the length of the proposed class period for the securities class and raise additional challenges to the manageability of the Section 12 claim on a class-wide basis. Defendants also challenge two aspects of the proposed state-law class. They contend that the state-law class should be limited to California residents because California's unfair-competition laws do not apply to out-of-state class members, and they question the need for any state post-breach sub-class. Finally, defendant Daifotis filed a separate brief in opposition to class certification.

1. **FEDERAL CLASSES**.

    **A.    Class Period.**

The parties dispute the appropriate length of the class period. Their positions, however, have shifted in the course of briefing this motion. Plaintiffs initially proposed a three-year class period for the federal securities class that would include anyone who acquired shares from

4

March 17, 2005, until the filing of this lawsuit on March 17, 2008, and suffered damages from the alleged false statements. Defendants argued for a much shorter class period. They reasoned that the complaint alleges no clear misrepresentations prior to May 30, 2007. Specifically, a primary misrepresentation theory in the complaint is that the fund sought to keep its average portfolio duration at one year or less, while in reality the fund's duration exceeded one year. The complaint provides estimates of the fund's duration as calculated based on the portfolio as of particular points in time and, contrary to defendants' representations, these exceeded one year, but the earliest such estimate is for May 30, 2007 (Compl. ¶ 86b). Defendants therefore argued that the Section 12 class period should begin on that date and that the Section 11 claim should begin when the next registration statement became effective thereafter.

At the hearing, plaintiffs indicated that the duration calculations in the complaint were merely examples and that the evidence would show that the fund's duration *did* exceed one year before May 2007. The Court therefore invited supplemental briefing regarding the length of class period to allow plaintiffs' expert an opportunity to provide further duration estimates for periods before May 2007. Supplemental materials from both sides have now been received and reviewed.

Plaintiffs' supplemental expert analysis indicates that the fund's duration first rose above one year on March 15, 2007 (Dkt. No. 228 at 5, 7–10). Defendants, therefore, now argue that the Section 12 class period should begin on March 15, 2007, and that the Section 11 class period should begin on the effective date of the next registration statement thereafter.

Plaintiffs still seek a broader class period. They now argue that the class period for the Section 12 claim, for its part, should begin May 31, 2006 (Supp. Reply at 3). By that date, they argue, the fund had "so departed from its prospectus's representations of its investment strategies and risks that such representations were materially false and misleading." According to plaintiffs, the alleged misrepresentations included that "the fund s[ought] high current income with minimal changes in share price," and that (Supp. Br. at 2):

> [i]n choosing securities, the fund's manager s[ought] to maximize current income within the limits of the fund's credit and maturity policies. To help maintain a high degree of share price stability

5

> and preserve investors' capital, the fund s[sought] to keep the average duration of its portfolio at one year or less.

In their supplemental brief, plaintiffs argue that these and other similar representations were false because, by August 2006, the fund had undertaken a "shift in asset allocation" by which it concentrated a greater portion of its assets in riskier mortgage-backed securities and asset-backed securities. Their expert's report states that the fund's concentration of mortgage-backed securities rose above 25 percent after February 2006 and eventually increased to more than 50 percent.

This order agrees that the class period should begin May 31, 2006. True, plaintiffs likely face an uphill battle to prove that allegations as non-specific as the ones on which plaintiffs rely were false or misleading, but the issue is better resolved on a dispositive motion with the benefit of a fully developed record. Plaintiffs have alleged that the above-quoted representations (among others) were false, and they have identified at least some arguable support for the claim. Their expert states, "[i]t is apparent that the Fund risk exceeded the stated investment guidelines beginning in at least May 2006" (Dkt. No. 228 at 6). His analysis also indicates that the fund's concentrations of mortgage-backed securities exceeded its stated concentration limits beginning May 2006 (although the fund amended its asset-concentration policies to permit greater investments in mortgages a few months later). Whether such claims are true and whether they suffice to establish false or misleading statements are merits issues — issues common to the class — rather than a rule 23 requirement.

The Section 11 class period, for its part, will begin November 15, 2006. As the Ninth Circuit has explained, "[a] statement in a prospectus will be grounds for liability under § 11 only if it was false or misleading at the time that the registration statement became effective." *Kaplan v. Rose*, 49 F.3d 1363, 1373 (9th Cir. 1994) (citing 15 U.S.C. 77k(a)). All registration statements during the class period represented that the fund sought to keep its duration at or below one year. As stated, the fund's duration first allegedly *exceeded* one year in May 2006. Therefore, the Section 11 class must begin on the date the first registration statement after May

6

2006 became effective. The first such registration statement became effective November 15, 2006.[4]

This order must confront one final dispute regarding the class definitions. Defendants contend that purchases of fund shares in the form of dividend reinvestments should be excluded from the federal classes. If true, class representatives who only purchased shares (other than by dividend reinvestments) before the registration statements at issue would lack standing (*see* Taylor Exhs. C–G). In the context of Rule 10b-5 claims, a prior decision of the undersigned excluded from a class the dividend reinvestments of those who had purchased their shares before the alleged false statements occurred. *See Siemers v. Wells Fargo & Co.*, 243 F.R.D. 369, 376–77 (N.D. Cal. 2007). *Siemers* explained:

> To try to enlarge the class to pick up all reinvestments within the class (including for pre-class purchasers) would be festooned with accounting headaches, would be confusing to class members, and would lead to minuscule recovery checks (if any) for those whose only stake was derived from reinvested dividends.

As plaintiffs emphasize, however, *Siemers* so ruled in the context of a Rule 10(b)(5) action for which proof of reliance was required. The instant Section 11 and Section 12 claims do not require proof of reliance. Therefore, dividend reinvestments in this action pose far fewer individualized issues and manageability problems. In Section 11 and Section 12 actions, district court decisions have permitted dividend-reinvestment purchasers to be included. *In re Bank of Boston Corp. Securities Litigation*, 762 F. Supp. 1525, 1531 n.5 (D. Mass. 1991); *Ross v. Warner*, 480 F. Supp. 268, 273–74 (S.D.N.Y., 1979). Dividend-reinvestments during the class periods will be included in the federal classes.

**C.  Section 12 Claim: Statutory "Sellers" and "Prospectuses".**

Defendants contend that the Section 12 claim will involve significant individualized issues, for two reasons. Unlike Section 11, which concerns registration statements, Section 12 imposes liability upon those who "offer[] or sell[] a security . . . by means of a *prospectus or*

---

[4] Plaintiffs argue that a registration statement became effective on August 17, 2006, and that the Section 11 class period should begin on that date. They argue that an amendment to a prospectus on that date constituted an amendment to the *registration statement*. The fail to carry their burden of establishing, however, that the prospectus amendment on which they rely also constituted an amendment to the registration statement.

7

*oral communication*, which includes an untrue statement of a material fact." Defendants contend that the Section 12 claim will pose extensive individualized issues related to (1) which communications and sales materials qualified as "prospectuses or oral communications" and which did not, and (2) whether defendants were statutory "sellers." Neither claim is persuasive.

The determination as to what constitutes a "prospectus or oral communication" does not pose excessive individualized issues. Granted, the complaint discusses allegedly false or misleading statements not only in the fund's periodic official prospectuses but also in oral communications and other advertising materials such as brochures, letters and web pages. Plaintiffs, however, disclaim reliance on any oral communications. They explain that their "Section 12 claim does not encompass statements outside a prospectus" (Reply at 7). The class will not include investors who claim to have been damaged by false *oral* statements; it will be limited to prospectuses.

A class limited to investors harmed by false statements in prospectuses does not pose excessive individual issues. True, it will be necessary to determine which of defendants' various sales materials were actionable under Section 12 as "prospectuses" and which were not. Multiple provisions bear on the subject.[5] This inquiry, however, is common to the class; it is not an individual inquiry. As stated, Section 12 does not require reliance. The class need only establish (simplifying slightly) that defendants offered or sold the security by means of a materially false or misleading prospectus. Defendants are free to argue that any particular advertisement or communication did not constitute a "prospectus," but that would be an issue common to the class.

\*       \*       \*

The same is true of the requirement that defendants "offer[ed] or s[old]" a security. As explained in previous orders, Section 12 imposes liability only on a statutory "seller" — one who "offers or sells" securities via prospectuses containing false statements. The Supreme

---

[5] *See* 15 U.S.C. 77b(a)(10) (defining "prospectus"); 15 U.S.C. 77j(b) (summary prospectuses); 17 C.F.R. 230.482(b)(1) (advertisements).

8

1 Court has clarified that this language encompasses both owners who actually part with title and
2 persons who "successfully solicit[] the purchase, motivated at least in part by a desire to serve
3 his own financial interests or those of the securities owner." *Pinter v. Dahl*, 486 U.S. 622, 647
4 (1988). It does not include, for example, persons who merely gave gratuitous advise or those
5 whose participation was merely a "substantial factor" in causing the transaction to take place.
6 *Ibid*.

7 Several defendants previously moved to dismiss on the ground that they were not
8 statutory sellers. The February 2009 order denied the motions because the complaint
9 adequately *pleads* that defendants were statutory sellers. Whether or not particular individuals
10 or entities actually were statutory "sellers" is a factual issue. Defendants now argue that the
11 Section 12 claim will require extensive individualized proof because defendants cannot be
12 liable, for example, to investors who purchased their shares pursuant to the advice of
13 independent investment advisors rather than defendants. Defendants' argument amounts to an
14 invitation to read a reliance element into Section 12, but as stated Section 12 does not require
15 reliance. The extent to which each *defendant's* solicitation activities qualified him or her as a
16 statutory "seller" is an issue common to the class.

17 For these reasons, this order rejects the arguments that individual issues with respect to
18 the Section 12 claim predominate over common issues or that the claim would be unmanageable
19 on a class basis.

20 **2. STATE CLASSES**.

21 The sole state claim is an unfair-competition claim alleging that the fund changed its
22 investment policies regarding asset concentration without a shareholder vote that, plaintiffs
23 allege, was required by the federal Investment Company Act. The fund changed its investment
24 policies on September 1, 2006. As stated, plaintiffs propose a *nationwide* class consisting of
25 two sub-classes, a "pre-breach" sub-class and a "post-breach" sub-class, all asserting a
26 California Section 17200 claim grounded on a violation of the federal Act. Defendants raise
27 two objections. First, defendants contend that California's unfair-competition laws should not
28 be applied to the claims of non-California residents. Second, defendants contend that the

9

proposed post-breach sub-class is inappropriate. Because the Section 17200 claim had not been fully vetted, supplemental briefing was invited regarding the unfair-competition claim at the hearing. That briefing has now been received and reviewed.

### A. Applicability of California Law to a Nationwide Class.

Defendants urge that the state class be limited to California residents. If residents of multiple states are included in a class, the laws of multiple states could potentially govern their claims. Where the laws of various states will govern the class claims, the differing state laws inject significant manageability concerns and can prevent certification of the nationwide class. *See, e.g.*, *Mazza v. American Honda Motor Co.*, 254 F.R.D. 610, 620 (C.D. Cal. 2008).

Choice-of-law rules determine whether California law will apply to the claims of non-residents, and those rules in turn are circumscribed by due-process considerations. Consistent with due process, for California law to be applied to the claims of this proposed nationwide class, California:

> must have a "significant contact or significant aggregation of contacts" to the claims asserted by each member of the plaintiff class, contacts "creating state interests," in order to ensure that the choice of Kansas law is not arbitrary or unfair.

*Phillips Petroleum v. Shutts*, 472 U.S. 797, 821–22 (1985). California courts interpret *Shutts* to be satisfied where the defendant is headquartered in-state and the challenged conduct occurred within the state. Here, the challenged conduct occurred in California — defendants undertook the challenged amendment to the fund's investment policies at Schwab's California headquarters.

Even where application of California law to a nationwide class would not violate due process, courts must undertake choice-of-law analysis to determine whether California law *should* apply to the entire nationwide class. California's choice-of-law analysis requires three steps:

> (1) determination of whether the potentially concerned states have different laws, (2) consideration of whether each of the states has an interest in having its law applied to the case, and (3) if the laws are different and each has an interest in having its law applied (a 'true' conflict), selection of which state's law to apply by determining which state's interests would be more impaired if its policy were subordinated to the policy of the other state.

10

*Clothesrigger, Inc. v. GTE Corp.*, 191 Cal. App. 3d 605, 614 (1987).

This order declines to apply California law to the claims of out-of-state members of this nationwide class. Plaintiffs' unfair-competition theory is a novel one. The claim has been permitted to proceed herein under California law but it is yet unclear that every state would allow their "Little FTC Acts" to be used as a vehicle to redress violations of the federal Investment Company Act. State "Little FTC Acts" are far from uniform. *See, e.g.*, William L. Stern, BUS. & PROF. C. § 17200, Ch. 2-F, 3-C; *Tracker Marine. v. Ogle*, 108 S.W. 3d 349, 352–55 (Tex. App. 2003) (summarizing differences among little FTC Acts). States have an interest in deciding the contours of their own unfair-competition laws and whether they will be used to vindicate claims like this one predicated on the ICA. In these circumstances, California law does not apply to the claims of the non-resident members of the would-be class. This order declines to impose California law on out-of-state residents. The class will be limited to the fund's California resident investors.

### B.   Post-Breach Class.

As explained, plaintiffs propose two state-law sub-classes, one for those investors who purchased fund shares prior to the alleged breach and were damaged thereby, and another for those who purchased shares after the alleged breach. Defendants challenge certification of two distinct sub-classes for the claim, arguing that "anyone who did not hold shares on the day the policy was changed had no right to vote on it" (Opp. at 16).

Plaintiffs offer little defense of their proposed bifurcation of the state-law class. They argue that defendants should have raised their challenge to the claims of "post-breach" investors on a motion to dismiss rather than on the instant motion, and they contend that investors who acquired shares before September 1, 2006, have "slightly different claims" from investors who acquired shares thereafter. Plaintiffs fail to explain, however, what those differences are or why two sub-classes are appropriate. Plaintiffs do not contend that the changed investment policy was concealed or misrepresented; in prior filings plaintiffs admitted that defendants disclosed the policy. Plaintiffs merely insist without explanation that the members of both proposed sub-classes somehow have a claim and that those claims somehow differ slightly. This order finds

1  no reason to certify a distinct sub-class of investors who first purchased fund shares on or *after*
2  September 1, 2006. The state class will be limited to those investors who allegedly were
3  deprived the opportunity to vote on the investment-policy amendment and were damaged
4  thereby. A class will be certified consisting of those California resident investors who held
5  shares in the fund on September 1, 2006.

### C. Additional Challenges to Section 17200 claim.

In the supplemental briefing, defendants raise further challenges to the Section 17200 claim. Defendants contend that the claim is preempted by the Investment Company Act; that the claim must be asserted derivatively rather than directly; and that plaintiffs have identified no causation, injury in fact or damages cognizable under Section 17200.

Defendants contend that Congress intended to occupy the entire field of regulation of investment companies and mutual funds. "[S]tate law is pre-empted where it regulates conduct in a field that Congress intended the Federal Government to occupy exclusively." *English v. General Elec. Co.*, 496 U.S. 72, 79 (1990).

Appellate decisions have generally rejected claims that the Investment Company Act preempts the entire field of mutual-fund regulation. *See, e.g.*, *Burks v. Lasker*, 441 U.S. 471, 477 (1979); *Green v. Fund Asset Management*, 245 F.3d 214, 222 n.7 (3d Cir. 2001) (both rejecting field-preemption claims based on the ICA). Although no Ninth Circuit decision addressing a field-preemption claim under the ICA has been found, the Ninth Circuit has rejected field-preemption claims under other securities laws: "the Exchange Act does not completely preempt or occupy the field of securities regulation." *Lippitt v. Raymond James Financial Services*, 340 F.3d 1033, 1037 (9th Cir. 2003).

Congress did not intend to occupy the entire field of mutual-fund regulation. In fact, far from evidencing an intent to preempt the entire field, Congress expressed a relatively narrow purpose for the ICA: "[i]t is declared that the policy and purposes of this subchapter . . . are to mitigate and, so far as is feasible, to eliminate the conditions enumerated in this section . . . ." 15 U.S.C. 80a-1. Congress arguably disclaimed any intent to occupy the entire field:

> nor shall anything in this subchapter affect the jurisdiction of any other commission, board, agency, or officer of the United States

12

> or of any State or political subdivision of any State, over any person, security, or transaction, insofar as such jurisdiction does not conflict with any provision of this subchapter or of any rule, regulation, or order hereunder.

15 U.S.C. 80a-49. The ICA does not preempt the entire field of mutual-fund regulation.

Defendants also reiterate their contention that the Section 17200 claim is preempted by the Securities Litigation Uniform Standards Act, but that argument has previously been rejected herein and need not be revisited (Dkt. No. 164 at 17–18).

Defendants remaining challenges to the Section 17200 claim are similarly unavailing. Defendants argue that plaintiffs were required to bring the Section 17200 claim derivatively, on behalf of the fund, rather than directly, as individual investors. The Ninth Circuit has held, however, that claims of deprivation of voting rights under the ICA involve wrongs to the individual investor rather than the corporate entity and therefore may be brought directly. *Lapidus v. Hecht*, 232 F.3d 679, 683 (9th Cir. 2000).

Finally, this order rejects defendants' arguments that the Section 17200 claim fails to identify injury-in-fact or a basis for restitution. California's unfair-competition laws required that a private plaintiff "lost money or property as a result of . . . unfair competition." Cal. Bus. & Prof. Code § 17204. Moreover, "[b]ecause remedies for individuals under the UCL are restricted to injunctive relief and restitution, the import of the requirement is to limit standing to individuals who suffer losses of money or property that are eligible for restitution." *Buckland v. Threshold Enterprises*, 155 Cal. App. 4th 798, 817 (2007).

The complaint alleges that plaintiffs suffered economic injury as a result of the alleged unfair competition and seeks an order "to restore to any person in interest any money that may have been acquired by means of such unlawful conduct, as provided in California Business & Professions Code § 17203" (Compl. ¶ 183). Plaintiffs argue that, although *damages* such as lost investment profits are not recoverable, the lost *principal* paid for the shares is recoverable. "The Supreme Court has made clear that the object of restitution is to restore the status quo by returning to the plaintiff funds in which he or she has an ownership interest," and therefore restitutionary awards are available for "money that once had been in the possession of the person to whom it [is] to be restored." *Colgan v. Leatherman Tool Group, Inc.*, 135 Cal. App.

13

1   4th 663, 697 (2006). Granted, plaintiffs' theory will pose complexities regarding causation and
2   the remedy calculation. This order, however, declines to address those issue on the instant Rule
3   23 motion. Those issues are more properly resolved in a future dispositive motion or at trial.
4   For all of these reasons, a class of California investors, although not a nationwide class, will be
5   certified for the Section 17200 claim.

### 3. DEFENDANT DAIFOTIS' OPPOSITION.

Defendant Kimon Daifotis filed a separate brief in opposition to class certification. Defendant Daifotis was, according to the complaint, the senior portfolio manager at Schwab Investments with overall responsibility for management of the fund. He was a Senior Vice President of Schwab Investments and its Chief Investment Officer for fixed income. Defendant contends that plaintiffs lack standing to bring the unfair-competition claim against him because the complaint alleges no economic injury eligible for restitution from him nor a basis for an injunction against him. This order agrees.

Plaintiffs have suffered no losses that are eligible for restitution from Mr. Daifotis. "An order for restitution is one 'compelling a UCL defendant to return money obtained through an unfair business practice to those persons in interest from whom the property was taken, that is, to persons who had an ownership interest in the property or those claiming through that person.'" *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1149 (2003). Plaintiffs identify no such money or property taken by Mr. Daifotis. They allege losses to the fund's value, but decreases in the value of the fund certainly were not money obtained by Mr. Daifotis through an unfair business practice. Plaintiffs also point to Mr. Daifotis' compensation. They reason that Schwab Investments, Mr. Daifotis' employer, received a management fee from the fund and that Mr. Daifotis' compensation was tied to running and performance of the fund, and therefore he "in effect" received part of the investments plaintiffs put into the fund. This theory is rejected. Mr. Daifotis did not "take" his compensation from plaintiffs through an unfair business practice, and plaintiffs never had an "ownership interest" in Mr. Daifotis' compensation. Mr. Daifotis received compensation *from his employer*. The

14

compensation does not qualify for restitution.  Therefore, the unfair-competition claim against Mr. Daifotis is dismissed for lack of standing.

## CONCLUSION

For all of the above-stated reasons, plaintiffs' motion for class certification is **GRANTED IN PART** and **DENIED IN PART**.  Two proposed federal securities classes are hereby certified. The Section 11 class will include:

> all persons or entities who acquired shares of the fund traceable to a false and misleading registration statement for the fund and who were damaged thereby.

The class period for the Section 11 class is November 15, 2006, through March 17, 2008.  The Section 12 class will include:

> all persons or entities who acquired shares of the fund traceable to a false and misleading prospectus for the fund and who were damaged thereby.

The class period for the Section 12 class is May 31, 2006, through March 17, 2008.  Both classes will exclude defendants, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

A single state class (with the same exclusions) is hereby certified consisting of those California resident investors who held shares in the fund on September 1, 2006.

The Section 17200 claim against Mr. Daifotis is hereby **DISMISSED**.  Within twenty (20) days of the date of entry of this order, the parties are requested jointly to submit an agreed-upon form of notice, a joint proposal for dissemination of the notice and the timeline for opting out of the action.  Plaintiffs must pay for the cost of notice.

**IT IS SO ORDERED.**

Dated:  August 21, 2009.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

15