Reed R. Kathrein (139304)
Peter E. Borkon (212596)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
reed@hbsslaw.com
peterb@hbsslaw.com

Steve W. Berman (*Pro Hac Vice*)
Sean R. Matt (*Pro Hac Vice*)
Erin K. Flory (*Pro Hac Vice*)
Lisa M. Hasselman (*Pro Hac Vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Fifth Avenue, Suite 2900
Seattle, Washington 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com
sean@hbsslaw.com
erin@hbsslaw.com
lisah@hbsslaw.com

*Attorneys for Lead Plaintiff YieldPlus Investor Group*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE SCHWAB CORP. SECURITIES LITIGATION | No. 08-cv-01510 WHA |
| THIS DOCUMENT RELATES TO:<br><br>All Actions | PLAINTIFFS' NOTICE OF MOTION AND MOTION TO AMEND CASE SCHEDULE AND/OR FOR SANCTIONS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF<br><br>Date: January 21, 2009<br>Time: 8:00 a.m.<br>Judge: Hon. William H. Alsup<br>Courtroom: Courtroom 9, 19th Floor |

**REDACTED**

# NOTICE OF MOTION AND MOTION

**TO: ALL PARTIES AND THEIR ATTORNEYS OF RECORD**

PLEASE TAKE NOTICE that pursuant to Local Rule 6-3, Plaintiffs, by and through counsel, hereby move the Court for an order amending the Case Schedule to extend all case deadlines for three months or, in the alternative, for a three month extension of the completion of fact and expert discovery without changing the trial date. Plaintiffs also seek additional discovery relief relating to document production and depositions. Plaintiffs base their motion on this Notice of Motion and Motion, the Memorandum of Points and Authorities in Support Thereof, the Declaration of Steve W. Berman in Support of Motion to Amend Case Schedule (the "Berman Decl."), Plaintiffs letter motion filed November 17, 2009, and any responsive pleadings thereto, oral argument on November 30, 2009, and such other matters as the Court may consider in deciding this motion. A proposed form of order is submitted herewith.

Defendants' delay and incompleteness in producing documents in this litigation necessitates a change in the Case Schedule so that Plaintiffs have sufficient time to complete non-expert and expert discovery.

# STATEMENT OF ISSUE TO BE DECIDED

1. Should the Court amend the Case Schedule to extend deadlines, given Defendants' substantial and unwarranted delays in producing documents, obstructive format of document production and still incomplete production in response to Plaintiffs' March 4, 2009 Requests for Production (incomplete meaning documents from relevant custodians were not obtained, including a custodian in charge of credit issues who wrote that ███████████████████ ███████████████).

2. Should the Court impose other sanctions upon Morrison & Forester for violating the intent and spirit of the discovery rules when Morrison & Foerster hid the existence of the SEC production while falsely claiming production of materials from custodians other than those it had chosen would be burdensome, when in fact some such materials had already been produced to the SEC and the burden was non existent?

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION

The Court did not rule on Plaintiffs' November 17, 2009 request for a three month extension of all trial dates. *See* Order Following November 30 Discovery Dispute Hearing, Dkt. No. 288. The Court directed Mr. Rains to file a declaration indicating the volume of documents produced to the SEC beginning in April 2008 but not produced to the Plaintiffs until the end of October 2009, even though they were responsive to Plaintiffs' RFPs served March 4, 2009. *Id.* The Court gave Plaintiffs leave to show the prejudice that warrants an extension and we do so below. *Id.* Plaintiffs request either a three month bump in all dates or a three month bump in the discovery cutoff such that discovery would proceed while the parties are briefing summary judgment. The latter option is unusual, but it should preserve the trial date and any prejudice to Defendants would be of their own making. Plaintiffs also seek opportunity for the production of additional custodial files and depositions of individuals the Defendants improperly failed to identify.

Defendants withheld a large volume of critical documents and materials for approximately seven months until finally producing *some* of them buried in an avalanche of both relevant and irrelevant documents just weeks before depositions were to begin and with only two months to review and digest before the close of discovery. Berman Decl., ¶ 2. As discussed in detail below, Defendants' current, amended count of 22,378 pages in the SEC production that was responsive, but not previously produced, is not accurate. *Id.* The format, volume and incompleteness of Defendants' production has prejudiced Plaintiffs in preparing for depositions, authenticating relevant documents, and seeking additional discovery based on the responses to the March RFPs. *Id.*

## II.  PREJUDICE TO PLAINTIFFS

### A.  Official, Centralized Files Produced Late or Not At All

This case is about the false marketing of YieldPlus and the failure to obtain a vote of fund holders before changing the prohibition on investing more than 25% of the Fund in mortgage-backed securities ("MBS"). Berman Decl., ¶ 3. Part of the case involves decisions ultimately made by the Board of Trustees who approved the leap into risky MBS. Their official actions are

PLAINTIFFS' MOTION TO AMEND CASE SCHEDULE    - 1 -
No. 08-cv-01510 WHA
010036-12 343052 V1

recorded in Board and Committee Minutes. The final marketing pieces relating to YieldPlus were stored in centralized databases so that the sales force had access to them to be used when they were pitching the Fund. Board minutes and marketing materials were produced to the SEC in April - June 2008. Plaintiffs asked for those materials in March of 2009. *Id.* Instead of just producing them right away, Defendants then disingenuously argued that Plaintiffs should shoulder the costs of their production despite the fact that they could have and eventually did just make a copy of what they provided to the SEC. *Id.* In other words, Defendants flat out lied about this burden. Then, having caved on the cost issue on the day of the hearing on the issue, Defendants waited to produce most of those core documents until October 24, 2009, and they were produced as part of such a large volume of related and unrelated documents that Plaintiffs are still loading onto a database for review. *Id., see SEC v. Collins & Aikman Corp.*, 256 F.R.D. 403, 409 (S.D.N.Y. 2009) (recognizing Rule 34's requirement that a party has two options for the production of documents – producing as they are kept in the usual course of business or organizing and labeling them to correspond to the categories in the request but prohibiting "deliberately [mixing] critical documents with others in the hope of obscuring significance") (internal quotation marks and citation omitted).

Plaintiffs never agreed to this delay and diligently pursued the issue after becoming aware of Defendants' tricks. Berman Decl., ¶ 4 and Ex. A (10/16/09 letter). Getting no response to their letter, Plaintiffs sought a meet and confer during which Defendants first mentioned the existence of the SEC Production and indicated that the sought-after documents would be provided as part of that production. *Id.*, ¶ 4. Defendants late October SEC production delivered these documents in a jumble of other information "as produced to the SEC" and without any guidance as to the original source of the documents. *Id.* Plaintiffs will need to take 30(b)(6) depositions to authenticate these documents as they were not produced in the ordinary course of business. *Id.* The format of production vastly increases the time it will take to review and process the documents to determine what is relevant to Plaintiffs' claims and imposes upon the Court-imposed limit on the number of depositions by forcing depositions on authentication issues and away from substantive witnesses. *Id.*

### B. The Custodian Game is the Basis for the 9500 Pages Claim

Mr. Rains' assertion at the November 30, 2009 hearing that only 9500 responsive pages were not previously produced is false.[1] *Id.*, ¶ 5. First, Defendants now admit that 22,378 pages were responsive, but were not produced until late October 2009. Berman Decl., Ex. B (Plaintiffs have added columns for the number of pages, production dates and days delayed to the chart produced by Defendants). But even the 22,378 is wrong. *Id.*, ¶ 5. One of the most obvious ways Defendants arrive at 22,378 is by excluding responsive custodians. *Id.* Defendants *unilaterally* decided to limit their search and production to certain custodians, despite knowing of other custodians with relevant documents which they had already produced to the SEC. *Id.* Defendants' sworn statement that Plaintiffs agreed to this is false. *Id.*, *see* Ex. C (12/4/09 Rains Declaration, ¶ c).

The falsity of Mr. Rains' statement is explained a month after Defendants began producing a significant response to Plaintiffs' First RFPs, when Plaintiffs asked "[a]re the searches being run for custodians beyond those individuals identified in defendants' Initial Disclosures? If not, can you explain why you do not believe additional custodians would not have relevant information?" *Id.*, Ex. D (8/14/09 Letter). Defendants responded by saying that it would be too burdensome to search all employees of Schwab that had access to information about YieldPlus without disclosing that they had not already conducted a search of relevant individuals. *Id.*, Ex. E (8/28/09 letter). Thus, on August 29, 2009, Dorothy Fernandez, a Morrison Foerster partner, explained that the files of other custodians would not be produced due to the burden:

> While there are other employees that had access to information about the YieldPlus fund, the burden and expense of requiring Schwab to undertake a broad collection and production of documents from all of these employees would outweigh the likely benefits of such a search. If you want us to search for documents from other individuals that were not identified in your request, please let us know.

Ex. E (Letter of 8/28/09).

---

[1] Interestingly, at the meet and confer prior to the hearing, Plaintiffs' counsel asked Mr. Rains to quantify how many documents should have been produced but were not. He refused to do so and pulled the 9500 number out hours later at the hearing – a practice that shows a lack of good faith during the meet and confer.

PLAINTIFFS' MOTION TO AMEND CASE SCHEDULE        - 3 -
No. 08-cv-01510 WHA
010036-12 343052 V1

Plaintiffs responded that "no agreement" had been reached to limit custodians and Schwab was the entity that would know whose files should be produced:

> We have also made no agreement that the limited search and production of only custodial files that plaintiffs identify as potentially containing relevant information is a reasonable or sufficient response to plaintiffs' RFPs. Certainly, defendants are in a better position to identify key personnel that would have factual information responsive to our requests and we trust that such responsive documentation will be provided in response to plaintiffs' RFPs.

Berman Decl. Ex. 6 (letter of 10/21/2009).

If Schwab had not made a phony claim of burden and admitted they had already searched and produced from other custodians to the SEC, Plaintiffs would have demanded such a production. *Id.*, ¶ 6.

So the "Rains' 9500", which is really 22,378, is a number partially based on an improperly limited custodian base. The true number of responsive documents not produced is really a far greater and unknown number. What Mr. Rains has not answered is this: Of all relevant custodians, not his illegally self selected group, but a proper group, how many documents produced to the SEC were not produced to Plaintiffs when they should have been? Because the potential universe is so daunting (some unknown subset of the 20 million documents) and the fault Defendants, the Court should presume prejudice.

C. **Relevant Custodians and Documents Entirely Missing From Both Productions –** ▓▓▓▓▓

Plaintiffs have recently discovered custodians that clearly were in possession of relevant information, but their custodial files have not even been searched or produced in either the production to the SEC or any separate productions to us. *Id.*, ¶ 8. Janice Diamond is *one* such example. Plaintiffs only know of her because she is identified in documents produced in other custodial files. *Id.* She worked at Schwab as an analyst during the class period *reviewing the credit worthiness of securities held by taxable bond funds, including YieldPlus. Id.*, Exs. H (▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓) and I (▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓). The relevance of her as a custodian is obvious and further revealed by the following. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

[REDACTED]



*Id.*, Ex. K ([REDACTED]) (emphasis added). There are other analysts listed on these emails (including John Novak and Craig Nauman) whose documents were never searched and produced to Plaintiffs or the SEC. What other custodians exist with critical information known by Defendants but not revealed to us? *Thus, discovery must be continued to allow for production by concealed custodians as well as new custodians Schwab is still hiding. Id.*

The Defendants' 22,378 count also does not include all responsive non-custodial documents (*i.e.*, documents from general or shared files, not associated with a particular custodian). *Id.*, ¶ 9. For instance, the count includes only 80 pages of documents relating to the IWIN system. *Id.*, Ex. B, p. 2. This was a system used to communicate with Schwab brokers and contained responsive information to Plaintiffs First RFPs. *Id.*, ¶ 9. Defendants produced over 600 pages relating to IWIN to the SEC – but identified only 80 of those pages as responsive to our requests (which included requests for marketing materials and communications with brokers). *Id.* A review of some of the IWIN documents not identified as responsive by Defendants shows that they in fact should have been added to the 22,378 number. *See* Ex. L (examples of multiple IWIN documents that are responsive to Plaintiffs' RFPs, were produced to the SEC, but were not included on Defendants' December 4, 2009 chart). Again, the foregoing demonstrates that the "Rains' 9500" and the new 22,378 are understated.

### III. THE FEDERAL RULES PROHIBIT THIS GAMESMANSHIP

The federal rules should not be used to hinder the opposing parties' case. As the Rules Advisory Committee has explained,

> … evasion or resistance to reasonable discovery requests pose significant problems … The purpose of discovery is to provide a mechanism for making relevant information available to litigants … Thus the spirit of the rules is violated when advocates attempt to use

> discovery tools as tactical weapons rather than to expose the facts and illuminate the issues.

Advisory Committee Notes, 1983 Amendment, Subdivision (g) (citations omitted). Rule 26 explicitly imposes an affirmative duty "to engage in pretrial discovery in a responsible manner that is consistent with the spirit and purposes of Rules 26 through 37," Fed. R. Civ. P. 26.

"[S]anctions may be imposed upon a party under Fed. R. Civ. P. 26(g) if counsel for that party fails to make a 'reasonable inquiry' into the factual basis for any discovery request or response." *Network Appliance, Inc. v. Bluearc Corp.*, 2005 U.S. Dist. LEXIS 16726, at *5 (N.D. Cal. June 27, 2005). Under Rule 26, the standard for sanctionable misconduct is generally one of objective reasonableness. *Id.* at *6 (citing *Oregon RSA No. 6, Inc. v. Castle Rock Cellular Ltd. P'ship*, 76 F.3d 1003, 1007 (9th Cir. 1996) (discussing Rule 26(g)); *Zimmerman v. Bishop Estate*, 25 F.3d 784, 790 (9th Cir. 1994) (applying an objective standard to determine whether conduct violated Rule 26(g)).

In *Oregon RSA No. 6, Inc. v. Castle Rock Cellular*, the Ninth Circuit described the facts relating to whether to overturn an award of sanctions for abuse of the discovery process as follows:

> Beginning in July 1993 Oregon RSA sought the discovery of an unredacted copy of the Purchase Agreement between PTCI and Cellular. For months it was stalled by the defendants, who contended that there was confidential information in the Purchase Agreement and that the agreement could not be turned over without a protective order safeguarding that information. At no point did the defendants disclose to the plaintiff that the entire unredacted Purchase Agreement had already been filed by Cellular with the Federal Communications Commission, so that it was already a public document at the time when the defendants were putting on their show of confidentiality.

76 F.3d at 1008. Counsel for one of the defendants argued that he should be excused from 26(g) sanctions "because he says he was told by Cellular's counsel that the public filing was the same as the redacted document he sought to give Oregon RSA." The Ninth Circuit found that the excuse "may relieve him of a charge of bad faith, but it does not excuse PCTI's objective failure to comply with the plaintiff's discovery requests and the objective inadequacy of the confidentiality reasons advanced." The Ninth Circuit affirmed, holding that "[i]t was no abuse of discretion by the district court to sanction both defendants under Rule 26(g)."

Similarly, the District Court in *Burlington Northern & Santa Fe Ry. v. United States Dist. Court* held that a delay in providing a privilege log in response to a Rule 34 Request for Production waived the defendant's claim of privilege. 408 F.3d 1142, 1146 (9th Cir. 2005). The Ninth Circuit's review of that decision is instructive here. In determining whether to grant relief for an alleged failure to comply with discovery, the Court said that it was a "case-by-case determination" and took into account the following factors:

> the degree to which the objection or assertion of privilege enables the litigant seeking discovery and the court to evaluate whether each of the withheld documents is privileged...; the timeliness of the objection and accompanying information about the withheld documents (where service within 30 days, as a default guideline, is sufficient); the magnitude of the document production; and **other particular circumstances of the litigation that make responding to discovery unusually easy (such as, here, the fact that many of the same documents were the subject of discovery in an earlier action**) or unusually hard. These factors should be applied in the context of a holistic reasonableness analysis, intended to forestall needless waste of time and resources, as well as tactical manipulation of the rules and the discovery processes.

*Id.* at 1149 (emphasis added). Applying this analysis, the Ninth Circuit upheld the District Court's Order that the five month delay in producing the privilege logs, especially since the defendant was a sophisticated entity and the documents had been previously produced in other litigation, waived any privilege claim.

The Washington Supreme Court has held the Federal Rules of Civil Procedure explicitly encourage the imposition of sanctions for discovery abuse in part because "a spirit of cooperation and forthrightness during the discovery process is necessary for the proper functioning of modern trials." *Washington State Physicians Ins. Exch. & Ass'n v. Fisons Corp.*, 122 Wn.2d 299, 858 P.2d 1054, 1077 (Wash. 1993). The court noted that although "[f]air and reasoned resistance to discovery is not sanctionable[,] . . . misleading . . . responses [are] . . . contrary to the purposes of discovery and . . . most damaging to the fairness of the litigation process." *Id.* at 1079-80.

As addressed in detail above, the Defendants have failed to meet their obligations under the Federal Rules in the timeliness, completeness and format of their discovery responses. Just like the Defendants who were sanctioned in *Oregon RSA*, they have claimed burden has prevented them from producing responsive documents in at timely manner, despite the fact that they had already

PLAINTIFFS' MOTION TO AMEND CASE SCHEDULE   - 7 -
No. 08-cv-01510 WHA
010036-12 343052 V1

produced those documents to the SEC and just needed to make us a copy. They limited their custodial search without disclosing that they had searched a broader group in response to the SEC. And they still have not searched all relevant custodians, such as the Ms. Diamonds of the company. Just like the Defendants who waived their claims of privilege in *Burlington*, Defendants here stated at oral argument that the only documents that had been withheld were board minutes that needed a privilege review – but it is clear from the chart produced by defendants of the dilatory productions that there were way more documents than just potentially redactable board minutes. These abuses amount to gamesmanship in violation of the spirit of the discovery rules. To permit defendants to get away with such tactics is at odds with the intent of the Rules and would encourage and not deter such improper gamesmanship in the future.

## IV.   RELIEF REQUESTED

As detailed in the proposed order filed herewith, Plaintiffs seek the following relief:

- a three month extension of all dates in the case schedule (trial date would move from May 10, 2010, to August 15, 2010); or, alternatively,
- a three month extension of the discovery deadline (from January 11, 2010 to April 12, 2010) without moving the trial date.
- the right to supplement expert reports utilizing the discovery material.

In addition to any extension, Plaintiffs seek an order requiring:

- Schwab Defendants to identify any additional custodians which may have information responsive to Plaintiffs' RFPs, their employer(s), title(s) and years involved with YieldPlus within five days from entry of order.
- Plaintiffs would then have five days thereafter to identify a limited set of additional custodians.
- Defendants would be required to produce custodial files for the identified custodians within 30 days of Plaintiffs' request.
- After 30 days of review of the newly produced files, Plaintiffs would be able to depose an additional limited group of custodians (5-10 depending on what the newly produced documents reveal).

PLAINTIFFS' MOTION TO AMEND CASE SCHEDULE       - 8 -
No. 08-cv-01510 WHA
010036-12 343052 V1

- Plaintiffs would also be able to depose again any already-deposed witnesses regarding documents that were improperly withheld.
- Any other relief the Court deems appropriate as a sanction to deter a law firm from playing the hide and seek games played by Morrison & Foerster lawyers Rains and Fernandez.

### V.     CONCLUSION

Plaintiffs' ability to prosecute this action has been severely hindered due to Defendants' actions. Berman Decl., ¶ 10. Plaintiffs respectfully request that their motion be granted.

Dated: December 11, 2009

HAGENS BERMAN SOBOL SHAPIRO LLP
Reed R. Kathrein
Peter E. Borkon
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
reed@hbsslaw.com
peterb@hbsslaw.com


By:   s/ Steve W. Berman
        Steve W. Berman
        Sean R. Matt
        Erin K. Flory
        Lisa M. Hasselman
HAGENS BERMAN SOBOL SHAPIRO, LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com
sean@hbsslaw.com
erin@hbsslaw.com
lisah@hbsslaw.com

*Attorneys for Lead Plaintiffs*