Reed R. Kathrein (139304)
Peter E. Borkon (212596)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
reed@hbsslaw.com
peterb@hbsslaw.com

Steve W. Berman (*Pro Hac Vice*)
Sean R. Matt (*Pro Hac Vice*)
Erin K. Flory (*Pro Hac Vice*)
Lisa M. Hasselman (*Pro Hac Vice*)
Robert F. Lopez (*Pro Hac Vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Fifth Avenue, Suite 2900
Seattle, Washington 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com
sean@hbsslaw.com
erin@hbsslaw.com
lisah@hbsslaw.com
robl@hbsslaw.com

Attorneys for Lead Plaintiff YieldPlus Investor Group

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE SCHWAB CORP. SECURITIES LITIGATION | No. 08-cv-01510 WHA |
| THIS DOCUMENT RELATES TO:<br><br>All Actions | PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT RE: NEGATIVE CAUSATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF<br><br>Date: March 25, 2010<br>Time: 8:00 a.m.<br>Judge: Hon. William H. Alsup<br>Courtroom: Courtroom 9, 19th Floor |

**REDACTED PURSUANT TO ORDER DATED FEBRUARY 19, 2010, DKT. NO. 415**

| | |
|---|---|
| 1 | **NOTICE OF MOTION AND MOTION** |
| 2 | **TO: ALL PARTIES AND THEIR ATTORNEYS OF RECORD** |
| 3 | PLEASE TAKE NOTICE that pursuant to Local Rule 7-2 and Fed. R. Civ. P. 56, Lead |
| 4 | Plaintiffs and the Class, by and through counsel, hereby move the Court for an order granting |
| 5 | partial summary judgment against all Defendants' negative-causation defense to the Class's §§ 11 |
| 6 | and 12(a)(2) claims. Plaintiffs base their motion on this Notice of Motion and Motion, the |
| 7 | Memorandum of Points and Authorities in Support Thereof, the Declaration of Steve W. Berman in |
| 8 | Support of Plaintiffs' Motion For Summary Judgment Re: Negative Causation (the "Berman |
| 9 | Decl."), and such other matters as the Court may consider in deciding this motion. A proposed |
| 10 | form of order is submitted herewith. |

...

# STATEMENT OF ISSUES TO BE DECIDED

1. Whether Defendants can sustain the heavy burden of demonstrating the existence of a material fact precluding summary judgment against them on their affirmative defense that some other supervening event(s), wholly unrelated to Defendants' misrepresentations and omissions, caused all or a portion of the Fund's NAV decline. *See infra* at 2-5.

2. Whether Defendants can demonstrate (i) that no reasonable juror could believe that *any* portion *of Plaintiffs' losses* was caused by Defendants' alleged misrepresentations and omissions, and (ii) the required connection between Plaintiffs' losses and the events that Defendants claim caused those losses. *See infra* at 5-6.

3. Whether Defendants' expert, Professor James, is required to evaluate whether changed economic circumstances or some other events completely unrelated to the alleged misrepresentations and omissions of material fact caused the loss. *See infra* at 5-6.

4. Whether Professor James has identified what changed circumstances or other *Dura* factors caused the loss. *See infra* at 5-6.

5. Whether Defendants admitted that non-agency mortgage-backed securities caused losses in the Fund. *See infra* at 6-10.

# TABLE OF CONTENTS

**Page**

STATEMENT OF ISSUES TO BE DECIDED ..................................................................................ii

I. INTRODUCTION ........................................................................................................1

II. ARGUMENT ................................................................................................................1

    A. Standard on Summary Judgment ....................................................................1

    B. Defendants Bear a Heavy Burden to Establish Their Negative-Causation Defense at Trial ..................................................................................................2

        1. It is not Plaintiffs' burden to show causation, and causation is presumed ........2

        2. Defendants must demonstrate that other events unrelated to Defendants' misrepresentations and omissions caused the Class's losses .............................3

    C. Defendants' Evidence is Inadmissible and Fails to Meet the "Heavy Burden" ............5

    D. Schwab Repeatedly Admits a Causal Link, Which Defeats the Defense ......................6

III. CONCLUSION ............................................................................................................10

## I. INTRODUCTION

Plaintiffs move for partial summary judgment against all Defendants' negative-causation defense to Plaintiffs' §§ 11 and 12(a)(2) claims. All Defendants assert the affirmative defense that factors wholly unrelated to Plaintiffs' alleged misrepresentations and omissions caused Plaintiffs' losses. That defense cannot be sustained and should be stricken.

Under §§ 11 and 12 of the Securities Act, once a plaintiff proves a material misrepresentation or omission in a registration statement, loss causation is presumed. The statute provides defendants a means to rebut the presumption, but only to the extent a defendant can prove that all or any portion of plaintiff's losses result from matters unrelated to the alleged misrepresentations or omissions in the registration statement. This affirmative defense is called "negative causation."

Defendants are unable to carry this burden. None of the arguments Defendants offer in support of their defense satisfies their burden to establish (i) that no reasonable juror could believe that any portion of Plaintiffs' losses was caused by Defendants' alleged misrepresentations and omissions, and (ii) the required connection between all or any portion of Plaintiffs' losses and the events that Defendants claim caused those losses. There are no genuine issues of fact material to this issue. Accordingly, summary judgment striking the affirmative defense should be granted.

## II. ARGUMENT

**A. Standard on Summary Judgment**

A summary judgment motion may properly be used to eliminate affirmative defenses for which there is no factual dispute. *See* FED. R. CIV. P. 56(d); *Tingley Sys. v. Healthlink, Inc.*, 509 F. Supp. 2d 1209, 1218 (M.D. Fla. 2007); *United States v. Union County 16.29 Acres of Land*, 35 F. Supp. 2d 773, 774, 779 (D. Or. 1997); *see also Swig Weiler & Arnow Mgmt. Co. v. Stahl*, 817 F. Supp. 404, 407 (S.D.N.Y. 1993). This Court may grant summary judgment when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1047-48 (9th Cir. 2008); FED. R. CIV. P. 56(c). The party seeking summary judgment has the initial burden of showing that there are no genuine issues of material fact. *Celotex*, 477 U.S. at 323; *Estate of Tucker v. Interscope Records*, 515 F.3d 1019, 1029 (9th Cir. 2008).

Where, as here, the non-moving party will have the burden of proof on an issue at trial, the movant may prevail merely by pointing out that there is an absence of evidence to support an essential element of the non-moving party's claim. *See James River Ins. Co. v. Schenk, P.C.*, 519 F.3d 917, 925 (9th Cir. 2008).[1] The moving party need not produce evidence negating elements of a claim for which the opposing party bears the burden of proof at trial. *Celotex*, 477 U.S. at 323-25; *Estate of Tucker*, 515 F.3d at 1029. If the moving party meets its initial burden, the burden then shifts to the opposing party to establish that a genuine issue as to a material fact actually exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Nissan Fire & Marine*, 210 F.3d at 1103. The opposing party cannot "'rest upon the mere allegations or denials of [its] pleading' but must instead produce evidence that 'sets forth specific facts showing that there is a genuine issue for trial.'" *Estate of Tucker*, 515 F.3d at 1030 (quoting FED. R. CIV. P. 56(e)).

If the nonmoving party fails to meet this requirement, the motion for summary judgment should be granted. *Nissan Fire & Marine*, 210 F.3d at 1103 (citing *Celotex*, 477 U.S. at 322). That is the case here.

**B.   Defendants Bear a Heavy Burden to Establish Their Negative-Causation Defense at Trial**

**1.   It is not Plaintiffs' burden to show causation, and causation is presumed**

Plaintiffs may recover damages in the event they prevail under § 11. The measure of damages is:

> [T]he difference between the amount paid for the security (not exceeding the price at which the security was offered to the public) and (1) the value thereof as of the time such suit was brought, or (2) the price at which such security shall have been disposed of in the market before suit, or (3) the price at which such security shall have been disposed of after suit but before judgment if such damages shall be less than the damages representing the difference between the amount paid for the security (not exceeding the price at which the

---

[1] *See also Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007); *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1105-06 (9th Cir. 2000); *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (*en banc*) (recognizing that "the *Celotex* 'showing' can be made by 'pointing out through argument – the absence of evidence to support Plaintiff's claim'"; citation omitted).

security was offered to the public) and the value thereof as of the
time such suit was brought[.]

15 U.S.C. § 77k(e).

Loss causation is *not* an element of a § 11 claim. Rather, "because § 11(a) imposes strict liability for misrepresentations contained in a registration statement, any decline in value is presumed to be caused by the alleged misrepresentation." *In re DDi Corp. Sec. Litig.*, 2005 U.S. Dist. LEXIS 28216, at *49 (C.D. Cal. July 20, 2005) (citing *Akerman v. Oryx Commc'ns, Inc.*, 810 F.2d 336, 340 (2d Cir. 1987), and *Casella v. Webb*, 883 F.2d 805, 808 (9th Cir. 1989)). *See also Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 234 (5th Cir. 2009) (hereinafter "*Flowserve*") (citing *McMahan & Co. v. Wherehouse Entm't, Inc.*, 65 F.3d 1044, 1048 (2d Cir 1995)). "Civil liability under section 11 and similar provisions was designed not so much to compensate the defrauded purchaser as to promote enforcement of the Act and to deter negligence by providing a penalty for those who fail in their duties." *Globus v. Law Research Serv., Inc.*, 418 F.2d 1276, 1288 (2d Cir. 1969).

### 2. Defendants must demonstrate that other events unrelated to Defendants' misrepresentations and omissions caused the Class's losses

Section 11 provides that Defendants may overcome the presumption of causation by showing that some other supervening event, wholly unrelated to Defendants' misstatements, caused the depreciation in value of the securities:

> [I]f the defendant proves that any portion or all of such damages represents other than the depreciation in value of such security resulting from such part of the registration statement, with respect to which his liability is asserted, not being true or omitting to state a material fact required to be stated therein or necessary to make the statements therein not misleading, such portion of or all such damages shall not be recoverable.

15 U.S.C. § 77k(e). Typically, courts refer to the defendant's burden as that of proving "negative causation." *Akerman v. Oryx Commc'ns, Inc.*, 810 F.2d at 340. "Negative causation" can thus be an affirmative defense. *In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407, 1421-22 (9th Cir. 1994); *In re New Century*, 588 F. Supp. 2d 1206, 1238 (C.D. Cal. 2008); *Fouad v. Isilon Sys.*, 2008 U.S. Dist. LEXIS 105870, at *17-18 (W.D. Wash. Dec. 29, 2008). But "[t]he burden on the defendants to prove the affirmative defense in § 11(e) is 'heavy' and arises out 'Congress' desire to allocate

PLTFS' MOTION FOR PARTIAL SUMMARY JUDGMENT
RE NEGATIVE CAUSATION - 08-cv-01510 WHA                - 3 -

the risk of uncertainty to the Defendants in these cases ....'" *Flowserve*, 572 F.3d at 234 (quoting *Akerman*, 810 F2d at 341).

Section 10(b)'s causation requirements are imposed on Defendants in this case, because the affirmative defense of loss causation under § 11 is no different from the loss-causation element of a claim under § 10(b); the two are "mirror images." *In re Worldcom, Inc. Sec. Litig.*, 2005 U.S. Dist. LEXIS 2216, at *20 (S.D.N.Y. Feb. 18, 2005); *see also Rebenstock v. Deloitte & Touch*, 907 F. Supp. 1059, 1065 (E.D. Mich. 1995) ("[t]he [loss] causation analysis under § 11 is essentially the same as Rule 10(b)-5's approximate cause element"). Courts have imposed exacting standards upon a party bearing the burden on causation. In assessing Defendants' negative-causation evidence, Defendants' "heavy burden" requires them "to prove that no reasonable juror could believe that *any portion of [Plaintiffs'] losses* was caused by the defendants' alleged misrepresentations in the registration statements, *i.e.*, the losses were caused by another factor." *Flowserve*, 572 F.3d at 234 (emphasis added); *see also In re Worlds of Wonder*, 35 F.3d at 1422; *In re New Century*, 588 F. Supp. 2d at 1239; *In re Dynegy, Inc. Sec. Litig.*, 339 F. Supp. 2d 804, 867-68 (S.D. Tex. 2004) (citing *Akerman*, 810 F.2d at 340). In other words, to prevail on their negative-causation defense, Defendants' proof must *totally* exclude alleged misstatements and omissions as having contributed to Plaintiffs' losses. If Defendants cannot prove that the misstatements are unrelated to the losses, their negative causation defense must fail. *See In re Worlds of Wonder*, 35 F.3d at 1422 ("[t]o establish a 'loss causation' defense under section 11(e), Deloitte needed to prove 'that the depreciation in value ... resulted from factors other than the alleged material misstatement in the 1987 financial statement'") (brackets in original omitted). *Cf.*, *Huberman v. Tag-It Pac., Inc.*, 314 Fed. Appx. 59, 62 (9th Cir. 2009) (issue of fact regarding causation for § 10(b) claim where a juror could find that the misstatements were "a substantial cause of [plaintiff's] loss").

Defendants must also establish an actual causal connection between the supposedly unrelated event they are relying on and the resulting loss. *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 344 (2005); *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 173 (2d Cir. 2005).

As to a § 12(a)(2) claim, loss causation can also be a defense, and the analysis is very similar. *See, e.g., In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d 1132, 1183 (C.D. Cal. 2008).

In light of the heavy evidentiary burden imposed on Defendants' negative-causation defense, there is no legitimate factual dispute that the defense cannot be established against Plaintiffs' §§ 11 and 12(a)(2) claims.

C.   **Defendants' Evidence is Inadmissible and Fails to Meet the "Heavy Burden"**

The centerpiece of Schwab's negative-causation argument is the opinion of Professor Christopher M. James. James is the witness for hire, having testified in an astonishing 46 cases in the last four years.[2] With little time to spend on any one matter, James's analysis here is thus unscientific and focuses on an incorrect legal standard. James described that his assignment was to "analyze to what extent investors' losses resulted from alleged misstatements of material fact."[3] But, given that causation is presumed, his assignment under the law was to analyze whether changed economic circumstances or some other event caused the loss. *Dura*, 544 U.S. at 344; *Lentell*, 396 F.3d at 173. James Report at ¶ 17, Berman Decl. Ex. A. Or put another way, James must prove that the losses stemmed from some factor besides the misstatements or omissions. *See, e.g., In re Shortel, Inc.*, 2009 U.S. Dist. LEXIS 73316, at *11 (N.D. Cal. Aug. 18, 2009) ("[t]o dismiss a complaint based on negative causation, the complaint has to foreclose the possibility that defendants caused plaintiffs' losses"); *see also In re Metro. Secs. Litig.*, 2010 U.S. Dist. LEXIS 4209, at *19 (E.D. Wash. Jan. 20, 2010) ("[a]t trial, [defendants] will be required to prove the plaintiffs' alleged losses were caused by a factor or factors other than the market's adverse reaction to the revelation of a risk they allegedly concealed"). James does not accomplish this task.

First, James fails to identify what changed circumstances or other *Dura* factors caused the loss. Sections VII-XVI of the James Report are all lengthy sections purporting to analyze why the misrepresentations at issue did not cause the loss. But nowhere in these sections does James do

---

[2] The Expert Report of Professor Christopher M. James is attached as Ex. A to the Berman Decl. His list of cases is contained at Exhibit 2 to the report.

[3] James Report at ¶ 17, Berman Decl. Ex. A.

what is required to prove negative causation, identifying "changed economic circumstances, changed investor expectations, new industry-specific or firm-specific facts, conditions or other events, which taken separately or together account for some or all of that lower price." *Dura*, 544 U.S. at 343. This is astonishing, particularly given that James cited this *Dura* passage in his report.[4]

Second, to the extent one can glean from James's unscientific discourse his attempt to identify such factors, his discussion is not based on any scientific method, event study, statistical analysis or any proven economic technique. The James opinion is not admissible and is thus the subject of a motion to strike being filed separately by Plaintiffs. *See* Plaintiffs' Notice of Motion and Motion to Exclude Defendants' Expert, Christopher M. James and supporting memorandum (the "Motion to Exclude"), *passim*.[5]

Because James is the *sine quo non* of the negative-causation defense, the defense must fail as a matter of law.

**D.   Schwab Repeatedly Admits a Causal Link, Which Defeats the Defense**

A party cannot create issues of fact through an expert where the expert ignores the clients' own admissions that directly contradict the expert's opinion. *See* Motion to Exclude at 5 (citing *Textron Inc. by & Through Homelite Div. v. Barber-Colman Co.*, 903 F. Supp. 1546 (W.D.N.C. 1995); *Nardizzi v. Harbor Chrysler Plymouth Sales*, 136 Cal. App. 4th 1409, 1415 (2006); *Smith v. Pac. Bell Tel. Co.*, 649 F. Supp. 2d 1073 (E.D. Cal. 2009); *Robinson v. J.D. Searle*, 286 F. Supp. 2d 1216, 1220 (N.D. Cal. 2003)). Plaintiffs claim that, among other things, Schwab misrepresented and omitted to disclose the risk caused by over-concentrated investments in mortgage-backed securities and the corporate bonds of financial companies. Schwab witnesses admit that such investments caused losses in the Fund, and such admissions defeat the negative-causation defense.

---

[4] James Report at ¶ 16, Berman Decl. Ex. A.

[5] Because there are other, independent bases for granting Plaintiffs' motion for summary judgment, the Court need not grant Plaintiffs' accompanying motion to strike James in order to grant summary judgment on this issue. Nonetheless, there is ample support to strike James's opinion, as detailed in Plaintiffs' motion to exclude his opinion.

For example, Senior Portfolio Manager Matt Hastings, and former Chief Investment Officer Kimon Daifotis, have both testified that non-agency mortgage-backed securities caused Fund losses:

> Q   All right. By November of 2007, the Alt A securities held by the YieldPlus Fund were hit hard by price mark-downs, correct?[6]
>
> A   Yes, that is correct.
>
> *       *       *
>
> Q   And those mark-downs that you just testified to, those caused losses to the YieldPlus Fund, right?
>
> A   It caused the NAV to go down in price.
>
> *       *       *
>
> Q   Would you agree that all of the YieldPlus Fund's Alt A mortgage-backed securities holdings were non-agency CMOs?
>
> A   I don't remember if all of them were. Certainly the majority.

Daifotis Trans. at 247:21-24; 248:3-6; 252:6-10, Berman Decl. Ex. C.

Matt Hastings, the Senior Portfolio Manger tasked with managing the Fund on a day-to-day basis, also testified that non-agency mortgage-backed securities caused losses in the Fund:

> Q.   … Do you have an understanding that the nonagency mortgage-backed securities purchased by the YieldPlus Fund caused a substantial percentage of losses in the fund through March of 2008?
>
> THE WITNESS: They caused losses.
>
> Q.   And can you put any sort of magnitude on the losses that were caused by the nonagency mortgage-backed securities purchased by the YieldPlus Fund?
>
> A.   I would be speculating. It wasn't small but it wasn't – I don't know. Individuals' judgments could vary. It was not a small amount.
>
> Q.   Do you know whether there was a category of securities purchased by the YieldPlus Fund that caused greater losses to the fund than the losses caused by the nonagency mortgage-backed securities purchased by the YieldPlus Fund?

---

[6] "Alt-A" mortgage loans are generally underwritten to standards that are less restrictive than those required by Fannie Mae and Freddie Mac. They are mortgages by borrowers who are unable to provide full documentation. These loans are considered riskier than prime, but less risky than sub-prime mortgages. Expert Report of H. Gifford Fong at 32, Berman Decl. Ex. B.

PLTFS' MOTION FOR PARTIAL SUMMARY JUDGMENT
RE NEGATIVE CAUSATION - 08-cv-01510 WHA                      - 7 -

010036-12 354643 V1

1   MR. ILLOVKSY: Object to the form.

2   THE WITNESS: I don't.

3   Hastings Trans. at 225:2-22, Berman Decl. Ex. D.

4   Daifotis also confirmed [REDACTED]



1  Daifotis SEC Trans. at 161:13-162:20, Berman Decl. Ex. E;[7] *see also* Wilsey SEC Trans. at 155-
2  56, Berman Decl. Ex. F (█████████████████████████████████████
3  ███████████████).
4        The market for a substantial percentage of the Fund's assets – that is, the Fund's Alt A non-
5  agency mortgage-backed securities – ████████████████████████████████
6  ████████████████:
7  
8  
9  
10 Daifotis Dep. Exh. 2227, Berman Decl. Ex. G (███████████████████████); *see also*
11 Daifotis Trans. at 248-54, Berman Decl. Ex. C (discussing the e-mail); Hastings SEC Trans. at
12 371-72, Berman Decl. Ex. H (████████████████████████████████████
13 █████████████████████); SCH_11580602, Berman Decl. Ex.
14 I (███████████████████████) and Hastings SEC Trans. at 365, Berman Decl.
15 Ex. H (███████████████████████████████████████);
16 Healey Trans. at 241-42, Berman Decl. Ex. J (Alt-A mortgage-backed securities should have been
17 treated as subprime based on how they performed); DAK_0.7.54.15471, Berman Decl. Ex. K
18 (February 16, 2008 e-mail from Tikofsky to Hastings: ██████████████████████
19 ████████████████████████████████████████████");
20 CHS_0.7.54.96422, Berman Decl. Ex. L (████████████████████████████
21 ██████████████████████████); Hastings SEC Trans. at 371-72,
22 Berman Decl. Ex. H (████████████████████████████████████
23 ████) and HAM_0.7.54.90861, Berman Decl. Ex. M (██████████████████
24 ████████████████████████████████████████████████
25 ██████████████████████). The lock-down in the Alt-A mortgage-backed securities
26 
27 [7] Note that ████████████████████████████████████████████
   ████████████████████████████████████. *See* Hastings SEC Trans. at 381, Berman
28 Decl. Ex. H.

1   market was highly detrimental to the Fund given that, as of December 2007, the Fund's direct Alt-
2   A mortgage exposure was 32 percent of assets under management. Hastings Trans. at 241-42,
3   Berman Decl. Ex. D and Hastings Dep. Exh. 2176, Berman Decl. Ex. N.

4       Other internal Schwab documents demonstrate that non-agency mortgage-backed securities
5   and other financial bond holdings caused losses in the Fund, including "post-mortem" documents
6   that pose the question of "Why is YieldPlus underperforming its peers?" The answer that follows
7   admits that YieldPlus's heavy investment in mortgage-backed securities triggered the losses: "The
8   YieldPlus Fund *had a larger allocation to corporate and mortgage-backed securities* than some
9   competitors' funds that have had higher concentrations in Treasury securities." *See, e.g.*, Daifotis
10  Dep. Exh. Nos. 2232-34, Berman Decl. Exs. O-Q (emphasis added). Randall Merk, the President
11  of CSIM, ███████████████████████████████████████████████
12  ████████████████ (Merk Dep. Exh. 3081, Berman Decl. Ex. R), and ████████████
13  ████████████████████████████████ Merk Dep. Exh. 3082, Berman
14  Decl. Ex. S.

15      These admissions alone are so unequivocal that (i) they prohibit the introduction of James
16  expert opinion, and (ii) defeat the negative-causation defense as a matter of law.

### III. CONCLUSION

18      Defendants have not met, and cannot meet, the evidentiary thresholds required by the courts
19  for presenting their negative-causation defense to the jury. They did not establish causal links
20  between any independent event and Plaintiffs' losses. For these reasons, Plaintiffs respectfully
21  request that the Court grant their motion for partial summary judgment and strike Defendants'
22  negative-causation defense.

PLTFS' MOTION FOR PARTIAL SUMMARY JUDGMENT
RE NEGATIVE CAUSATION - 08-cv-01510 WHA    - 10 -

010036-12 354643 V1

1 | Dated: February 11, 2010.

HAGENS BERMAN SOBOL SHAPIRO LLP
Reed R. Kathrein
Peter E. Borkon
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
reed@hbsslaw.com
peterb@hbsslaw.com


By:    s/ Steve W. Berman
       Steve W. Berman
       Sean R. Matt
       Erin K. Flory
       Lisa M. Hasselman
       Robert F. Lopez
HAGENS BERMAN SOBOL SHAPIRO, LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com
sean@hbsslaw.com
erin@hbsslaw.com
lisah@hbsslaw.com
robl@hbsslaw.com

*Attorneys for Lead Plaintiffs*

PLTFS' MOTION FOR PARTIAL SUMMARY JUDGMENT
RE NEGATIVE CAUSATION - 08-cv-01510 WHA     - 11 -

010036-12 354643 V1