DAVID B. BAYLESS (SBN 189235)
Email:  dbayless@cov.com
TAMMY ALBARRÁN (SBN 215605)
Email:  talbarran@cov.com
AILEEN WHEELER (SBN 223705)
Email:  awheeler@cov.com
PAUL WATKINS (SBN 244974)
Email:  pwatkins@cov.com
COVINGTON & BURLING LLP
One Front Street
San Francisco, CA 94111
Telephone:   415-591-6000
Facsimile:    415-591-6091

Attorneys for Defendant Kimon P. Daifotis

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE SCHWAB CORP. SECURITIES LITIGATION | Master File No.: 08-CV-01510 WHA<br><br>**CLASS ACTION**<br><br>**DEFENDANT KIMON P. DAIFOTIS' OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT RE NEGATIVE CAUSATION**<br><br>Date:  March 25, 2010<br>Time: 8:00 a.m.<br>Dept.: Courtroom 9<br><br>Honorable William H. Alsup |

DEFENDANT KIMON P. DAIFOTIS' OPPOSITION TO
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT RE
NEGATIVE CAUSATION
Master File No.: 08-CV-01510 WHA

SF: 132676-8

# INTRODUCTION

Defendant Kimon P. Daifotis ("Mr. Daifotis") opposes Plaintiffs' Motion for Summary Judgment Re: Negative Causation as that motion relates to plaintiffs' claim against him under Section 12(a)(2) of the Securities Act of 1933 ("Section 12(a)(2)") — the only remaining cause of action against Mr. Daifotis in this lawsuit.[1]

Plaintiffs' Section 12(a)(2) cause of action alleges that Mr. Daifotis sold plaintiffs shares in the YieldPlus mutual fund ("YieldPlus" or the "Fund") by means of a prospectus that contained certain material misstatements and omissions relating to risk, internal controls and risk management, liquidity, and duration. (*See* Order Following February 24 Hearing, dkt no. 427, at 2.) Plaintiffs allege that they lost money on their YieldPlus investments when the net asset value ("NAV") of the Fund declined in 2007-2008.

The issue here is loss causation: whether the losses plaintiffs suffered were due to an alleged misstatement and omission or whether they were due to other events. Unlike section 10(b) of the Securities Exchange Act of 1934, under Section 12(a)(2), loss causation is an affirmative defense on which defendants have the burden of proof. 15 U.S.C. Section 77*l*(b). Plaintiffs contend that defendants cannot meet this burden as a matter of law. Indeed, they contend that defendants, including Mr. Daifotis, have "admitted" that the alleged misrepresentations and omissions caused plaintiffs' losses and, therefore, cannot prevail on their loss causation affirmative defense.

But plaintiffs are wrong. First, as Schwab has demonstrated in its motion for summary judgment (which Mr. Daifotis joined), it is defendants who are entitled to summary judgment on the issue of loss causation. The undisputed facts, including Mr. Daifotis' sworn testimony, demonstrate that the decline in the NAV of YieldPlus was not due to any alleged

---

[1] Mr. Daifotis joins in the Independent Trustees' and Schwab's (collectively, the "Schwab Defendants") opposition to Plaintiffs' Motion for Summary Judgment re Negative Causation and adopts and incorporates the Schwab Defendants' arguments as his own to the extent that those arguments relate to plaintiffs' claim under Section 12(a)(2).

DEFENDANT KIMON P. DAIFOTIS' OPPOSITION TO
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT RE
NEGATIVE CAUSATION
Master File No.: 08-CV-01510 WHA

1

1  misrepresentation or omission.  Instead, the decline was due to a change in value of the

2  securities that made up the "basket" of securities that comprised the YieldPlus portfolio.  And it

3  is undisputed that the decline in the value of the securities that comprised the YieldPlus

4  portfolio was due to market events, and not to any alleged misstatement or omission.

5        Second, at the very least, Mr. Daifotis (and the other defendants) have

6  demonstrated that plaintiffs are not entitled to summary judgment because a reasonable juror

7  could find that at least some portion of plaintiffs' losses was *not* caused by any alleged

8  misrepresentation.

9  **LEGAL ARGUMENT**

10  **I.  THE UNDISPUTED FACTS SHOW THAT THE ALLEGED MISREPRESENTATIONS AND OMISSIONS OF WHICH PLAINTIFFS**
11  **COMPLAIN DID NOT CAUSE PLAINTIFFS' LOSSES.**

12      **A.  Loss Causation.**

13        Loss causation is the causal connection between the alleged misstatement or

14  omission and the losses claimed by the plaintiff.  *In re Daou Sys., Inc.*, 411 F.3d 1006, 1025 (9th

15  Cir. 2005) (*citing Dura Pharms. v Broudo*, 544 U.S. 336, 346 (2005) (the alleged

16  misrepresentation must have proximately caused the economic loss)); *see also Lentell v. Merrill*

17  *Lynch & Co.*, 396 F.3d 161, 173 (2d Cir. 2005) (the subject of the misstatement or omission

18  must be the cause of the actual loss suffered).

19        There is no loss causation unless the "truth" about an earlier misstatement is

20  revealed and that revelation caused plaintiffs' losses.  And there is no loss causation where a

21  share price decline reflects "not the earlier misrepresentation, but changed economic

22  circumstances, changed investor expectations, new industry-specific or firm-specific facts,

23  conditions, or other events."  *See Dura Pharms.*, 544 U.S. at 342-43.  Indeed, the very purpose

24  of loss causation is to ensure that recovery is limited to economic losses that the alleged

25  misrepresentations actually cause.  *Id.* at 345.

26        In this case, the issue is what caused YieldPlus' NAV to decline.  To defeat

27  plaintiffs' motion for summary judgment on the issue of loss causation, defendants need only

28  introduce admissible evidence demonstrating that "any portion" of plaintiffs' losses was *not*

DEFENDANT KIMON P. DAIFOTIS' OPPOSITION TO
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT RE
NEGATIVE CAUSATION
Master File No.: 08-CV-01510 WHA

2

1  caused by the alleged misrepresentations or omissions.  15 U.S.C. Section 77*l*(b).  Put another

2  way, is there any admissible evidence that the Fund's NAV decline was due to something other

3  than the alleged misstatements and omissions?

      **B.**      **The Nature of a Mutual Fund and its Pricing Demonstrates that the Alleged Misstatements and Omissions of Which Plaintiffs Complain Did Not Cause the Decline in YieldPlus' NAV.**

           **1.**      **The Manner in Which a Mutual Fund's NAV is Determined Makes it Impossible that the Alleged Misrepresentations or Omissions Caused the YieldPlus' NAV Decline.**

8        The Schwab Defendants demonstrated in their motion for summary judgment on

9  the issue of loss causation that the nature of a mutual fund and the way the NAV of a mutual

10  fund is determined make it impossible for the alleged misrepresentations and omissions to have

11  caused the Fund's NAV decline.

12        To understand this, contrast a public company's securities to shares in a mutual

13  fund.  The securities of a public company increase or decrease in price every day, due to either

14  market or industry-wide events, or to events specific to the company whose security is at issue.

15  Thus, for example, if Oracle announces that its financial results have significantly beaten

16  analysts expectations, its share price will likely increase.  On the other hand, if the public

17  information is materially negative, the share price will decline.  So, the price of the security of a

18  public company goes up or down daily depending upon the information injected into the

19  marketplace about that company.

20        But a mutual fund behaves quite differently.  A mutual fund is not a security of a

21  public company.  Rather, it is a "basket" of securities that, taken together, constitutes the fund.

22  At the end of each trading day, the value of each security in the basket is determined, and then,

23  through a statutory formula, the mutual fund's NAV is derived.  *In re Morgan Stanley & Van*

24  *Kampen Mut. Fund Sec. Litig.*, No. 03 Civ. 8208 (RO), 2006 WL 1008138, at *9 (S.D.N.Y. Apr.

25  18, 2006); *see also* Advertising by Investment Companies; Proposed Rules and Amendments to

26  Rules, Forms, and Guidelines, 1933 Act Rel. No. 33-6660, ICA Rel. No. IC-15315, 1986 WL

27  703869, at *16 (Sept. 17, 1986) ("net asset values [are] calculated by funds on a daily basis").

28        So, unlike the share price of a public company, which is impacted by company-

DEFENDANT KIMON P. DAIFOTIS' OPPOSITION TO
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT RE
NEGATIVE CAUSATION
Master File No.: 08-CV-01510 WHA

3

specific information, a mutual fund's NAV is not impacted by information about the mutual fund itself.  Rather, information about the fund's underlying securities impacts the NAV.

Here, an independent pricing service ("pricing vendor") priced the securities held in the YieldPlus portfolio on a daily basis.  And, as plaintiffs' summary judgment motion highlights, multiple witnesses testified about the fact that, by late November 2007, the pricing vendor had repriced downwards many of the securities held in the Fund's portfolio.  (*See* Pl. Mot. for Summary Judgment Re Negative Causation at 6-10.)  This repricing, in turn, caused the NAV decline.

As discussed below, plaintiffs incorrectly assert that Mr. Daifotis' (and other defendants') testimony of this repricing and its impact on the Fund's NAV entitles them to summary judgment on defendants' loss causation defense.  (*Id*.)  But the issue is not whether the NAV declined in 2007.  To the contrary, that is undisputed.  The issue, rather, is what *caused* the NAV decline, which led to investor losses.

Defendants have shown that the NAV did not decline because of the revelation of the truth as to the earlier alleged misstatements and omissions.  Instead, the evidence shows that the YieldPlus NAV decline in 2007 was due entirely to the decline in the value of the Fund's underlying securities (including, but not limited to, the mortgage-backed securities ("MBS")). In turn, the decline in the value of the Fund's underlying securities was due entirely to events "other than" the alleged misstatements and omissions at issue here, including the pricing vendor's late 2007 repricing of certain securities.

### 2. Admissible Evidence Confirms that YieldPlus' NAV Decline Was Due to Market-Wide Events and Not the Alleged Misstatements and Omissions of Which Plaintiffs Complain.

Plaintiffs assert that Mr. Daifotis and other defendants have "admitted" that the Fund's investments in MBS and the corporate bonds of financial companies "caused losses in the Fund" and that this so-called admission "defeats" the negative causation affirmative defense.  (Pl. Br. at 6-10.)  But plaintiffs are wrong both as to what Mr. Daifotis said and the legal import of his statements.  In fact, his testimony, and other admissible evidence, *supports* defendants' motion for summary judgment on loss causation.

DEFENDANT KIMON P. DAIFOTIS' OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT RE NEGATIVE CAUSATION
Master File No.: 08-CV-01510 WHA

4

1       In response to questions from plaintiffs' counsel, Mr. Daifotis testified that the
2  value of the Alt-A securities held by YieldPlus declined in late 2007 due to price mark-downs
3  by the Fund's pricing vendor.  (*See* Albarrán Declaration in Opposition to Plaintiffs' Motion for
4  Summary Judgment on Loss Causation ("Albarrán Opp. Decl.") at Ex. A (Daifotis Dep. at
5  247:21-24.  Mr. Daifotis further testified that this decline in the value of the underlying
6  securities caused a decline in the Fund's NAV.  (*Id.* (Daifotis Dep. at 248:3-6.)
7       As noted, this is plainly correct, as the Fund's NAV is a function of the value of
8  the securities that make up the Fund.  Further, it is undisputed that YieldPlus fully and routinely
9  disclosed its securities holdings.  Mr. Daifotis' testimony, quoted by plaintiffs, simply states that
10 the securities in the Fund declined in value and, therefore, the NAV of the Fund that contained
11 these securities declined in value.  That was the extent of Mr. Daifotis' "admission."
12      Significantly, Mr. Daifotis did *not* state that any alleged misstatement or
13 omission caused the YieldPlus' NAV to decline, thereby causing losses to investors.  Nor did he
14 admit that any "revelation of the truth" regarding the alleged omissions and misrepresentations
15 caused the value of the securities in the Fund to decline.  He simply noted that the NAV
16 declined because the price of the securities in the Fund declined, and the price of the securities
17 in the Fund declined because of the repricing that occurred due to market events.
18      Confirming his testimony is a Manager's Discussion, written in November 2007,
19 that discussed YieldPlus' "NAV Volatility."  The Manager's Discussion noted that, while the
20 Fund's ultra short duration would reduce price fluctuations caused by interest rate changes, a
21 low duration is not designed to protect against widespread indiscriminate price volatility across
22 the non-Treasury fixed-income market.  *See* Albarrán Opp. Decl., Ex. B at SCH0000275.  It
23 then noted that there had been repricing of risk premiums across the broader bond market,
24 which increased the volatility of all major fixed-income sections.  *Id*.  Further, while the
25 individual impact on each bond holding in the Fund may not be material, "the cumulative effect
26 has caused the Fund's share price to drop."  *Id*.  In his deposition, Mr. Daifotis reaffirmed that
27 this was the basis for the decline in the Fund's NAV in 2007.  Albarrán Opp. Decl. at Ex. A
28 (Daifotis Dep. at 259:10-17); *see also*, Ex. C.

1  Plaintiffs have presented no admissible evidence to contradict what Mr. Daifotis
2  (and others) said caused the decline in the Fund's NAV.

* * *

Thus, the Fund's NAV and plaintiffs' resulting losses were not due to any alleged misstatement or omission.  Rather, as defendants have shown, market events caused the repricing of the Fund's underlying securities, which, in turn, caused the NAV decline and plaintiffs' losses.  As a result, plaintiffs are not entitled to summary judgment on the issue of loss causation and, instead, defendants' motion for summary judgment on its affirmative defense of loss causation must be granted.  As there is only one cause of action against Mr. Daifotis, entry of summary judgment in his favor on this issue results in his complete dismissal from this case with prejudice.

## II.  PLAINTIFFS ARE NOT ENTITLED TO SUMMARY JUDGMENT BECAUSE AT LEAST A PORTION OF THEIR LOSSES WAS CAUSED BY SOMETHING OTHER THAN AN ALLEGED MISSTATEMENT OR OMISSION.

Mr. Daifotis (and the other defendants) can defeat plaintiffs' motion for summary judgment by simply showing that a reasonable juror could find that *any* portion of their purported losses was caused by something other than the alleged misstatements.  *See In re Metro. Sec. Litig.*, 2010 U.S. Dist. LEXIS 4209, at *12 (E.D. Wash. Jan. 20, 2010) (to win summary judgment on issue of negative causation, plaintiffs "must demonstrate no rational juror could find for" defendants).  Defendants have done this and more.  The evidence shows that a large portion (if not all) of plaintiffs' losses was *not* caused by any alleged misstatement or omission.  Thus, plaintiffs' summary judgment motion must be denied.

## CONCLUSION

For these reasons, the Court should deny plaintiffs' motion for summary judgment on loss causation, and grant defendants' motion for summary judgment on this issue.

DATED: March 4, 2010                    Respectfully submitted,

COVINGTON & BURLING LLP

By:      /s/  *David B. Bayless*
         David B. Bayless
Attorneys for Defendant Kimon P. Daifotis

DEFENDANT KIMON P. DAIFOTIS' OPPOSITION TO
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT RE
NEGATIVE CAUSATION
Master File No.: 08-CV-01510 WHA

6