1

2

3

4

5

6            IN THE UNITED STATES DISTRICT COURT

7

8            FOR THE NORTHERN DISTRICT OF CALIFORNIA

9

10                                                   No. C 08-01510 WHA
   IN RE:

11
   CHARLES SCHWAB CORPORATION
12 SECURITIES LITIGATION.                            **ORDER REGARDING**
                                                     **DEFENDANTS' MOTIONS**
13      This Document Relates                        **FOR SUMMARY JUDGMENT**
           To All Cases.                             **REGARDING SECTION 12**
14                                                   **AND SECTION 17200 CLAIMS**
   _____/
15

16                        **INTRODUCTION**

17          In this securities class action, plaintiffs allege that defendants violated Section 12 of the

18 Securities Act of 1933 and California Business & Professions Code Section 17200.

19 Defendants Mariann Byerwalter, Donald F. Dorward, William A. Hasler, Robert G. Holmes,

20 Gerald B. Smith, Donald R. Stephens, and Michael W. Wilsey, who were employees of Charles

21 Schwab Corporation and independent trustees of Schwab Investments (collectively, "independent

22 trustees"), move for summary judgment on the Section 12 and Section 17200 claims.

23 Defendant Kimon Daifotis separately moves for summary judgment as well.  Material issues

24 of fact exists with regard to whether the independent trustees and defendant Daifotis solicited

25 investors.  For the reasons that follow, the independent trustees' motion is **DENIED IN PART** and

26 **GRANTED IN PART**, and defendant Daifotis' motion is **DENIED**.

27                         **STATEMENT**

28          This action originated as multiple independent class actions filed by investors in

   Schwab's YieldPlus Fund, a short-term fixed-income mutual fund.  These actions were

**United States District Court**
For the Northern District of California

United States District Court

For the Northern District of California

1    consolidated into the present class action with six lead plaintiffs:  Kevin O'Donnell, James

2    Coffin, John Hill, David and Gretchen Mikelonis, and Robert Dickson.  Gretchen Mikelonis has

3    since withdrawn as a lead plaintiff.  Plaintiffs bring this action against several Schwab corporate

4    entities, officers and employees of those entities, and trustees of Schwab Investments who signed

5    the registration statements at issue.

6         Defendant Charles Schwab Corporation was the parent corporation of the Charles

7    Schwab financial services complex.  Charles Schwab & Co., Inc. ("CS&Co.") was the parent

8    company of Schwab Investments and was the principal underwriter and distributor for shares of

9    the fund.  Charles Schwab Investment Management, Inc. ("CSIM") was the asset management

10   arm of the Charles Schwab Corporation; it oversaw the asset management and administration of

11   the fund.  Schwab Investments, a business trust organized under the laws of Massachusetts, was

12   the registrant for the fund, the issuer of fund shares and performed trust services for the fund.

13   Defendant Kimon Daifotis was the head of fixed income portfolio management at Schwab

14   Management.  The independent trustees signed the registration statements at issue.

15        Schwab YieldPlus Fund was an open-ended mutual fund organized as a Massachusetts

16   business trust registered under the Investment Company Act.  It offered two classes of shares:

17   Investor Shares and Select Shares.  The latter had a higher minimum investment requirement,

18   but lower fees compared to the former.

19        Plaintiffs allege that defendants violated Section 12(a)(2) of the Securities Act of 1933

20   by misleading investors when they described the YieldPlus Fund as an "ultrashort" bond fund

21   that was a safe alternative to cash and which had "minimal" risk of a fluctuating share price.

22   Plaintiffs allege that the fund was not an ultrashort bond fund, was not "stable," and was not

23   "safe," because it was comprised of assets that were not truly short-term in nature and were

24   otherwise riskier than represented.  Plaintiffs also allege that the true risks presented by the

25   fund's assets were eventually revealed and, as a result, investors suffered losses.

26        Additionally, plaintiffs allege a state law claim under Section 17200 of California's

27   Business and Professions Code against the independent trustees.  Plaintiffs allege that the

28   independent trustees violated the YieldPlus Fund's policy not to concentrate investments in a

1   particular industry or group of industries when they invested over 45% of the YieldPlus Fund's

2   assets in mortgage-backed securities without first obtaining a majority vote of shareholders, in

3   violation of Section 13(a) of the Investment Company Act of 1940.  Plaintiffs allege that this

4   investment also violated Section 17200.

5       A previous order (Dkt. No. 233) certified three classes of plaintiffs.  Of the two separate

6   federal classes, one is a Section 12 class.  The Section 12 class includes "all persons or entities

7   who acquired shares of the fund traceable to a false and misleading prospectus for the fund who

8   were damaged thereby."  The class period for the Section 12 class is May 31, 2006, through

9   March 17, 2008.

10      The independent trustees seek summary judgment on plaintiffs' second and fourth claim

11  as against them.  The second claim asserts that the independent trustees violated Section 12 of

12  the Securities Act of 1933.  The fourth claim asserts that the independent trustees violated

13  Section 17200 of the California Business and Professions Code.  Defendant Daifotis seeks

14  summary judgment on plaintiffs' second claim, which asserts that he violated Section 12 of the

15  Securities Act of 1933.

**ANALYSIS**

16

17  **1.    LEGAL STANDARD.**

18      Summary judgment is granted when "the pleadings, depositions, answers to

19  interrogatories, and admissions on file, together with the affidavits, if any, show that there is

20  no genuine issue as to any material fact and that the moving party is entitled to a judgment as a

21  matter of law."  FRCP 56(c).  A district court must determine, viewing the evidence in the light

22  most favorable to the nonmoving party, whether there is any genuine issue of material fact.

23  *Giles v. General Motors Acceptance Corp.*, 494 F.3d 865, 873 (9th Cir. 2007).  A genuine issue

24  of fact is one that could reasonably be resolved, based on the factual record, in favor of either

25  party.  A dispute is "material" only if it could affect the outcome of the suit under the governing

26  law.  Summary judgment is not granted if the dispute about a material fact is "genuine" — that

27  is, if the evidence is such that a reasonable trier of fact could return a verdict for the nonmoving

28  party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

1    The moving party "has both the initial burden of production and the ultimate burden of

2    persuasion on a motion for summary judgment." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz*

3    *Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).  When the moving party meets its initial burden,

4    the burden then shifts to the party opposing judgment to "go beyond the pleadings and by [its]

5    own affidavits, or by the depositions, answers to interrogatories, and admissions on file,

6    designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*,

7    477 U.S. 317, 324 (1986).

8           **2.    INDEPENDENT TRUSTEES' MOTION FOR SUMMARY JUDGMENT**.

9           As trustees of the fund, the independent trustees were designated specific powers in order

10   to manage the fund pursuant to a trust agreement (Berman Decl. Exh. 16).  These powers

11   allowed the independent trustees to hire CSIM (*ibid.*) and CS&Co. (Berman Decl. Exh. 5).

12   Despite hiring CSIM and CS&Co., the independent trustees retained the ultimate decision-

13   making authority over the fund (Berman Decl. Exhs. 16, 5).

14          The independent trustees maintained direct oversight of the fund's management through

15   various committees.  The committees included Investment Oversight, Marketing, Distribution

16   and Shareholder Servicing, Audit and Compliance, and Governance Committee.  The

17   committees were responsible for proposing recommendations to the independent trustees, who

18   would then discuss and vote on the recommendations at board meetings (Berman Decl. Exh. 19).

19   The independent trustees exercised their decision-making authority on issues that contributed

20   to the fund's decline.  For example, the independent trustees discussed and approved the

21   recommendation to eliminate the 25 percent cap on non-agency collateralized mortgage

22   obligations (Berman Decl. Exhs. 22, 23).  The independent trustees knew that this change would

23   require the Statements of Additional Information to be revised (Berman Decl. Exh. 24) and that

24   it would alter the composition of the fund's portfolio (Berman Decl. Exh. 25).

25          The independent trustees also participated in the marketing efforts of the fund by serving

26   on the Marketing, Distribution, and Shareholder Serving Committee (Berman Decl. Exh. 6).

27   As committee members, the independent trustees reviewed samples of the fund's marketing and

28   provided input into the advertising (Berman Decl. Exh. 8).  For example, at a board meeting in

4

United States District Court

For the Northern District of California

1    August 2006, the independent trustees reviewed and approved a response to a letter sent by the

2    SEC, which criticized the fund's advertisements because they did not contain balanced

3    disclosures (Berman Decl. Exh. 14).

4         The record further reveals that the independent trustees reviewed samples of the fund's

5    marketing.  On February 7, 2008, Jennifer Hafner, President of CSIM's Product Development

6    Group, wrote, "For your review I have attached the YieldPlus marketing and distribution

7    presentation.  This topic will be discussed during the Marketing and Distribution sub-committee

8    meeting" (Berman Decl. Exh. 9).  This email may have been a response to defendant Smith's

9    request during a board meeting on January 22, 2008 "that at the next quarterly Board Meeting

10   the Trustees be provided with an update of the [YieldPlus] Fund's strategic positioning from a

11   portfolio management standpoint and a marketing and distribution standpoint" (Berman Decl.

12   Exh. 10).  Employees of CSIM also testified that the independent trustees reviewed story boards

13   of advertisements from different funds and that the independent trustees provided input into the

14   advertising (Berman Decl. Exhs. 11, 12).  The independent trustees, however, dispute that they

15   participated in the marketing efforts of the fund.  The independent trustees declare that they

16   "did not draft or approve any YieldPlus fund advertisements" and that they "did not direct the

17   solicitation efforts of any person or entity involved in selling YieldPlus fund shares"

18   (Taylor Decl. Exh. 1).

19            **A.     Second Claim:  Violation of the Securities Act of 1933.**

20        The independent trustees assert that plaintiffs' second claim fails as against them because

21   plaintiffs cannot show that the independent trustees were "sellers" under Section 12 of the Act.

22   Section 12(a)(2) governs civil liabilities arising in connection with prospectuses and other

23   communications to shareholders.  The statute states, in relevant part:

24            (a) In general

25            Any person who—

26                    *          *          *

27            (2) offers or sells a security . . . by means of a prospectus or
            oral communication, which includes an untrue statement of
28            a material fact or omits to state a material fact necessary in
            order to make the statements, in the light of the

5

United States District Court
For the Northern District of California

> circumstances under which they were made, not misleading
> (the purchaser not knowing of such untruth or omission),
> and who shall not sustain the burden of proof that he did
> not know, and in the exercise of reasonable care could not
> have known, of such untruth or omission,
>
> shall be liable . . . to the person purchasing such security from
> him . . .

15 U.S.C. 77*l*(a)(2).  Such a claim may be asserted against the "seller" of a security.  *Ibid.*

The Supreme Court in *Pinter v. Dahl*, 486 U.S. 622, 647 (1988), interpreted "seller" to mean the "owner who passed title" or any "person who successfully solicits the purchase motivated at least in part by a desire to serve his own financial interest or those of the security owner."  As the Ninth Circuit explained, "plaintiff must allege [and, eventually, prove] that the defendant did more than simply urge another to purchase a security; rather, the plaintiff must show that the defendant solicited the purchase of the securities for their own financial gain."  *In re Daou Systems, Inc.*, 411 F.3d 1006, 1029 (9th Cir. 2005).  (The Ninth Circuit has also clarified that *Pinter*'s analysis of claims under Section 12(a)(1) governs claims under Section 12(a)(2) as well. *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 535–36 (9th Cir. 1989).)  The Ninth Circuit has not addressed whether the aggregate effect of signing registration statements, participating in marketing efforts, and retaining ultimate authority over and knowledge about a fund constitutes solicitation of a fund's shares under Section 12(a)(2) of the Act.  The Ninth Circuit has also not addressed whether any of the above acts, standing alone, amount to solicitation under Section 12(a)(2).

The independent trustees assert that they should be granted summary judgment because plaintiffs cannot pass the first of two tests under *Pinter*.  More specifically, the independent trustees assert that plaintiffs cannot establish that they passed title to fund shares.  Plaintiffs agree that the independent trustees did not pass title to class members, as the undisputed evidence shows that the corporate entity Schwab Investments owned the fund and passed title to class members (Berman Decl. Exh. 5).  The question, therefore, rests on whether the independent trustees solicited the purchase of the securities for their own financial gain.

The independent trustees assert that they should be granted summary judgment because plaintiffs cannot prove this.  More specifically, the independent trustees assert that the evidence

is undisputed that they did not solicit the purchase of the fund's shares. Their argument, however, is premised on a selective reading of the evidence in the record. Counsel for the independent trustees asserts that (Br. 3–4) (internal citations omitted):

> Plaintiffs dutifully alleged, in their complaint, that the independent trustees "were 'participants' in the distribution of the fund's shares," "'offered and sold'" shares, and "'actively solicited the sale of the fund's shares.'" No evidence supports these allegations. None of the independent trustees played any role in soliciting investors in the YieldPlus fund. They did not draft or approve the fund's advertisements. They did not participate in any solicitation efforts of the YieldPlus fund's underwriter, Charles Schwab & Co., Inc. And, with one isolated exception, none of the trustees spoke with, or otherwise communicated with, any individual investors about the YieldPlus fund.

Counsel's assertions are true to the extent that they are aligned with the sworn declarations of each of the independent trustees. All of the independent trustees, except for one, prepared sworn declarations that stated, in relevant part, as follows (Taylor Decl. Exh. 1):

> I have never personally solicited any investor to purchase YieldPlus fund shares. To the best of my recollection, I have never spoken, or otherwise communicated with, any investor about the possibility of purchasing YieldPlus fund shares. I did not draft or approve any YieldPlus fund advertisements. I did not direct the solicitation efforts of any person or entity involved in selling YieldPlus fund shares.

Defendant Holmes prepared a similar, but slightly different sworn declaration that stated, in relevant part, as follows (Taylor Decl. Exh. 1) (emphasis added):

> I have never personally solicited any investor to purchase YieldPlus fund shares. To the best of my recollection, *I have only spoken with a single investor about the YieldPlus fund.* To the best of my recollection, other than this isolated incident, I have never spoken, or otherwise communicated with, an investor about the possibility of purchasing YieldPlus fund shares. I did not draft or approve any YieldPlus fund advertisements. I did not direct the solicitation efforts of any person or entity involved in selling YieldPlus fund shares.

The assertions of counsel and the sworn declarations of the independent trustees conflict with other evidence in the record. The record shows that the independent trustees maintained direct oversight of the fund's management through various committees. The committees were responsible for proposing recommendations to the independent trustees, who would then discuss and vote on the recommendations at board meetings (Berman Decl. Exh. 19).

7

United States District Court

For the Northern District of California

The record shows that the independent trustees participated in the marketing efforts of the fund by serving on the Marketing, Distribution, and Shareholder Serving Committee (Berman Decl. Exh. 6).  As committee members, they reviewed samples of the fund's marketing and provided input (Berman Decl. Exh. 8).  Plaintiffs point to the board meeting in August 2006, at which the independent trustees reviewed a letter sent by the SEC that criticized the fund's advertisements because they did not contain balanced disclosures (Berman Decl. Exh. 14). The letter directed that "[t]he Funds and CSCO should review the YieldPlus Fund's sales materials to ensure that they are accurate and contain sufficient, balanced disclosure to avoid being false or misleading" (Berman Decl. Exh. 13).  The independent trustees reviewed the letter and approved a response to it during the board meeting (Berman Decl. Exh. 14).

Plaintiffs point to other evidence in the record that reveals that the independent trustees reviewed samples of the fund's marketing.  For example, plaintiffs reference the letter written by Jennifer Hafner regarding the independent trustees' review of the YieldPlus marketing and distribution presentation (Berman Decl. Exh. 9).  Furthermore, plaintiffs note that employees of CSIM testified that the independent trustees reviewed story boards of advertisements from different funds and that the independent trustees provided input into the advertising (Berman Decl. Exhs. 11, 12).

These issues alone are sufficient to preclude summary judgment.  The record does not unequivocally support the independent trustees' position that they did not solicit the purchase of the fund's shares.  As described at length above, the independent trustees' sworn declarations conflict with the other evidence presented by plaintiffs.  Plaintiffs have demonstrated that the record is not so one-sided.  After weighing the evidence, a jury could find that the cumulation of the independent trustees' actions amounted to a solicitation.

This order recognizes that there is a separate issue as to whether the independent trustees acted "for their own personal gain" as required under *Pinter*.  The independent trustees' motion for summary judgment, however, relied on the seller requirement of Section 12 as being dispositive and did not address the financial gain requirement.  This order, therefore, does not address the financial gain requirement.

United States District Court

For the Northern District of California

1    For the reasons explained above, the independent trustees' motion for summary judgment

2    as to plaintiffs' second claim is **DENIED**.

3        **B.    Fourth Claim:  Violation of the California
             Business and Professions Code.**

4        The independent trustees' argue that plaintiffs' fourth claim, violation of the California

5    Business and Professions Code Section 17200, fails as against them because plaintiffs do not

6    have a basis for seeking restitution from the independent trustees.  Plaintiffs do not oppose the

7    independent trustees' motion as to the fourth claim.  "An order for restitution is one 'compelling

8    a UCL defendant to return money obtained through an unfair business practice to those persons

9    in interest from whom the property was taken, that is, to persons who had an ownership interest

10   in the property or those claiming through that person.'" *Korea Supply Co. v. Lockheed Martin*

11   *Corp.*, 29 Cal. 4th 1134, 1149 (2003).  The compensation paid to the independent trustees was

12   paid by their employer and not the fund's investors.  Furthermore, the undisputed evidence

13   shows that the independent trustees did not receive any money from any investor.  Accordingly,

14   the independent trustees' motion for summary judgment as to plaintiffs' fourth claim is

15   **GRANTED**.

16       **3.    DEFENDANT DAIFOTAS' MOTION FOR SUMMARY JUDGMENT**.

17       The only claim remaining in this matter against defendant Daifotis is brought under

18   Section 12(a)(2).  Like the independent trustees, defendant Daifotis argues that he was not a

19   statutory "seller" under Section 12(a)(2) because he did not directly solicit investors' purchases

20   of YieldPlus shares.

21       Defendant Daifotis was an employee of CSIM, the entity hired by Schwab Investments

22   (which was the title owner of the YieldPlus shares sold to investors) as the investment advisor

23   and administrator of the YieldPlus Fund (Daifotis Dep. at 13).  His responsibilities included

24   oversight of the Fixed Income Portfolio Management group, which included the Taxable Bond

25   Portfolio Management Team that oversaw the fund's investments (*id.* at 14).  He was also a

26   representative of Schwab Investments.

27       Plaintiffs call defendant Daifotis the face and the voice of the fund.  His image appeared

28   in advertisements promoting the fund, including fact sheets constituting omitting prospectuses

**United States District Court**
For the Northern District of California

1   (Berman Decl. Exh. 1).  His promotional activities on behalf of the fund included

2   communicating with Schwab's Financial Consultants and Registered Investment Advisors to

3   answer their questions about the fund, speaking directly with certain clients about the fund,

4   conducting webcasts, going on branch visits, and participating in industry conferences (Berman

5   Decl. Exhs. 15–18).  Plaintiffs cite to more than 40 appearances by defendant Daifotis before

6   investors and financial media where he promoted Schwab and its funds, including the YieldPlus

7   Fund (Berman Decl. Exhs. 19–34).  Plaintiffs point to his 2006 employment review which noted

8   in part that he was "a tireless marketer of the funds" (Berman Decl. Exh. 35).  They also point to

9   his 2005 and 2007 self assessments, where he wrote of his promotional efforts of the fund

10  (Berman Decl. Exhs. 14, 36).  They cite to the deposition of Keith Maddock, a senior product

11  manager for CSIM who testified that defendant Daifotis reviewed new fund marketing pieces

12  (Berman Decl. Exh. 37).  Finally, they note that he signed a letter sent directly to fund investors

13  entitled "a message from the Schwab YieldPlus Bond Fund Manager, Kim Daifotis" (Berman

14  Decl. Exh. 39).  In that letter, he discussed the factors that investors should consider in deciding

15  whether to hold the fund.

16       Defendant Daifotis argues that these promotional efforts and his role as a subject-matter

17  expert and spokesperson for Schwab's fixed income funds (including the YieldPlus Fund) does

18  not make him a statutory seller.  His deposition reflects his position.  In response to the question,

19  "Is it your testimony that you did not at all at the time you were chief investment officer make

20  any efforts to get others to invest in the fund?," defendant Daifotis replied, "That is correct"

21  (Daifotis Dep. at 27).  However, his actions establish at the least a question of fact which should

22  be left to the jury regarding whether or not he is a seller.

23       Similar to the independent trustees' motion for summary judgment, defendant Daifotis'

24  motion only addressed the seller requirement of Section 12.  This order, therefore, does not

25  address the financial gain requirement of Section 12.

26       For the reasons explained above, defendant Daifotis' motion for summary judgment is

27  **DENIED**.

28

10

**United States District Court**
For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CONCLUSION**

For the foregoing reasons, the independent trustees' motion for summary judgment is DENIED IN PART and GRANTED IN PART.  Defendant Daifotis' motion for summary judgment is DENIED.

**IT IS SO ORDERED.**

Dated:  April 8, 2010.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE