IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: | No. C 08-01510 WHA |
| CHARLES SCHWAB CORPORATION SECURITIES LITIGATION. | **ORDER DENYING THE UNION MISSION'S MOTION TO EXTEND TIME FOR EXCLUSION FROM THE CLASS UNDER FRCP 6 AND VACATING HEARING** |
| This Document Relates To All Cases. / | |

The Union Mission, a class member and charitable organization that provides food and shelter for the poor in Southeastern Virginia, moves to extend the deadline to opt out of the certified class under FRCP 6(b)(1)(B). The opt-out period ended over three months ago on December 28, 2009 (Fernandez Decl. Exh. 1 at 3). Due to an alleged illness, however, counsel for The Union Mission neglected to check the October 2009 mail for his client until February 16, 2010 (Farthing Decl. ¶ 15). The Union Mission then sent its opt-out request to the claims administrator on February 22, 2010 (*id.* at ¶ 9). For the reasons explained below, The Union Mission's motion to extend the opt-out deadline must be **DENIED**.

The standard for determining whether The Union Mission should be allowed to opt out of the class after the applicable deadline is whether its failure to comply with the deadline is the result of "excusable neglect." *See Silber v. Mabon*, 18 F.3d 1449, 1454-55 (9th Cir.1994). This

standard allows courts, "where appropriate, to accept late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control." *Pioneer Inv. Serv. Co. v. Brunswick Assoc. Ltd. P'ship*, 507 U.S. 380, 388 (1993). When evaluating whether "excusable neglect" applies, a court should consider the "degree of compliance with the best practicable notice procedures; when notice was actually received and if not timely received, why not; what caused the delay, and whose responsibility was it; how quickly the belated opt out request was made once notice was received; how many class members want to opt out; and whether allowing a belated opt out would affect either the settlement or finality of the judgment." *Silber*, 18 F.3d at 1455 (internal footnote omitted). Additionally, the court should consider the danger of prejudice to the opposing party, and whether the movant acted in good faith. *Pioneer*, 507 U.S. at 395.

Here, the background facts are relatively straightforward. The Union Mission invested in defendant Schwab's YieldPlus fund, and lost $1.5 million — or 35 percent — of its investment (Farthing Decl. ¶¶ 10–12). Attorney Philip Farthing is the registered agent under Virginia law for The Union Mission (*id.* at ¶ 4). Attorney Farthing's address is also the address of record for The Union Mission's account at Schwab, and he has the power of attorney over The Union Mission's Schwab account (Fernandez Decl. ¶¶ 3–4, Exhs. 3–4).[*]

Attorney Farthing's law offices received the class notice for The Union Mission on October 16, 2009 (Farthing Decl. ¶ 13). Attorney Farthing, however, didn't become aware of the notice until February 16, 2010 (*id.* at ¶¶ 15, 24). The reasons for this are two-fold: (1) he suffered from severe migraine headaches, chronic pain, and clinical depression during the period in question, which rendered him unable to focus on work, and (2) between August 2009 and December 2009, his law offices underwent a staff change, resulting in the improper sorting of the class notice with the incoming mail (it was put in the "routine" pile rather than the "urgent" pile)

---

   * Attorney Farthing, in his declaration, claimed that the class notice should have been sent to the principal office of The Union Mission rather than to his law offices, because the former was the "address on the account" (*id.* at ¶ 13). In its opposition, however, Schwab included compelling evidence that Attorney Farthing's address was the address of record for The Union Mission's Schwab account. The reply brief was noticeably silent in responding to this issue.

2

(*id.* at ¶¶ 16–23). With respect to the second "excuse," however, Attorney Farthing admitted that "while [he] was responsible for reading all of [his] mail, whether 'routine,' 'priority,' or 'urgent,' [he] did not do so, and on many days was not able to do so," due to his various medical problems (*id*. at ¶ 23). In other words, even if his mail had been properly filed, it appears as though it wouldn't have made any difference in its likelihood of being read. As a result of these events, The Union Mission — which now seeks to opt out from the class and pursue its claim against Schwab via individual arbitration before FINRA — is bound to the outcome of this litigation unless it can obtain relief via the instant motion.

Having considered and weighed the equitable factors under *Pioneer*, and having allowed and reviewed comprehensive briefing from both sides (*see* Dkt. Nos. 476, 527, 544), this order finds that excusable neglect has not been adequately demonstrated by The Union Mission. *First*, notice of the class action was properly and timely provided to The Union Mission. Indeed, Attorney Farthing admits that the class notice was received by his offices in October 2009, well before the December 28 opt-out deadline, and that it sat in his inbox — unread — for nearly four months. The law is clear that individual notice by first-class mail is sufficient to meet the notice requirements of due process. *Eisen v. Carlisle & Jacqueline*, 417 U.S. 156, 173-77 (1974); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985). Furthermore, given the compelling evidence that the class notice was sent to the address of record for The Union Mission's Schwab account, this factor clearly weighs against a finding of excusable neglect.

*Second*, the law is clear that Attorney Farthing had a duty, as the registered agent for The Union Mission, to "forward to the corporation at its last known address any process, notice or demand that is served on the registered agent." Va. Code Ann. § 13.1-634(B). Moreover, the law is also clear that The Union Mission is accountable for the acts and omissions of its counsel, and is considered to have "notice of all facts, notice of which can be charged upon the attorney." *See Pioneer Invest. Servs. Co.*, 507 U.S. at 397 (citation omitted). In other words, The Union Mission cannot claim "excusable neglect" by shifting the blame for its overdue opt-out request onto Attorney Farthing's shoulders. This also weighs against a finding of excusable neglect.

3

*Third*, it is undisputed that four months passed since the class notice was timely delivered to The Union Mission (via Attorney Farthing's inbox), and Attorney Farthing finally went through his October 2009 mail and discovered the notice. Indeed, by this time, the opt-out period had lapsed by more than two and a half months. Now, this period *might* have been excusable under the *Pioneer* factors had the severity and duration of Attorney Farthing's medical conditions warranted the lengthy delay. *See, e.g., Islamic Republic of Iran v. Boeing Co.*, 739 F.2d 464, 465 (9th Cir.1984) (noting that illness of counsel "may amount to extraordinary circumstances when the illness is so physically and mentally disabling that counsel is unable to file [court documents] and is not reasonably capable of communicating to co-counsel his inability to file."); *Committee for Idaho's High Desert v. Yost*, 92 F.3d 814, 824 (9th Cir.1996) (citing possible examples of excusable neglect as "illness, injury or death of counsel, or members of his family, or fire, flood, vandalism or destruction of counsel's law office or word processing equipment").

Here, however, Attorney Farthing's documented medical problems do not square with an inability to read legal correspondence for *four months*. Indeed, Schwab has produced ample evidence that Attorney Farthing was transacting business on behalf of his clients during the four months that the class notice was sitting in his inbox at his offices, including managing several Schwab accounts, executing trades, signing checks, completing a Schwab survey, and making a business call with a Schwab representative (*see* Fernandez Decl. ¶¶ 6–11). In its reply, The Union Mission noted that Attorney Farthing was merely working from home, and "did not check his daily mail with due care because of his limited ability to work" (Reply 2). The Union Mission also filed medical records showing that Attorney Farthing also had at least thirteen appointments with various medical professionals, and was treated in the emergency room twice during this four month period (Farthing Supp. Decl. ¶¶ 8, 17, 21). Nevertheless, the evidence shows that Attorney Farthing — while admittedly hindered in his ability to practice law — was able to transact at least *some* business on behalf of his clients between October 2009 (when he received the class notice) and February 2010 (when he "became aware of" the notice). Moreover, while he was "frequently unable to come into his office to work[,]" it is undisputed that Attorney Farthing *was* able to work out of his offices on occasion (*see* Utegg Decl. ¶ 5). In sum, as the registered agent for The

4

Union Mission, he should have exercised greater diligence and not let the October 2009 class notice remain undiscovered for four months. Had the delay been a matter of weeks rather than months, or had counsel been unable to perform *any* work on behalf of his clients, the balance of the equities would likely be different. Under these facts, however, this factor weighs against the finding of excusable neglect.

*Fourth*, this order must examine the prejudice, if any, that the opposing party — here, Schwab — would face if the untimely request was granted. As pointed out by Schwab in its opposition brief, there are already over 50 entities and individuals that have filed late opt-out requests (The Union Mission being one of them), and it remains to be seen how many of these investors will seek relief to maintain separate actions against Schwab (Opp. 8; Fernandez Decl. ¶ 15). Given that the opt-out request was submitted over two months late, The Union Mission's claim is self-valued at around $1.5 million, and this action is both in the midst of settlement negotiations and on the cusp of trial, this order agrees with Schwab's assertion that it would face prejudice if the instant motion were granted (Opp. 8). Indeed, as Schwab points out, at this late stage in the litigation, the certainty and stability of class membership is crucial to damages calculations and risk assessment for both sides. To find excusable neglect under these particular set of facts would undermine the very purpose of the opt-out deadline for class members.

*Fifth*, this order must consider whether The Union Mission acted in good faith. Under these facts, it is clear that good faith existed. Within a few days after the class notice was brought to its attention, The Union Mission filed its request to opt out. Moreover, there is no evidence whatsoever showing that Attorney Farthing intentionally delayed "discovering" the class notice to gauge whether arbitration would be a more fruitful alternative to remaining a class member.

On balance, however, the *Pioneer* factors do not support a finding of excusable neglect. While a serious and debilitating illness *can* provide a basis for such a finding, the illness of counsel must be viewed in context with other considerations, such as the length of the delay. Indeed, illness is not *carte blanche* to delay indefinitely. Reasonable diligence is still expected. Here, Attorney Farthing has been suffering from severe migraine headaches for nearly 44 years, and has managed to persevere in his legal career (*see* Fernandez Decl. ¶ 12, Exh. 16, showing

5

Attorney Farthing as a "Virginia Super Lawyer" for 2009, the same year he claims he was incapacitated). While this order does not question that Farthing suffered from additional serious ailments during the period in question, these ailments simply cannot excuse his failure to discover the timely and properly mailed class notice *for four months*. He was, in his own words, "responsible for reading all of [his] mail" but "did not do so" (Farthing Decl. ¶ 23). While "on many days he was not able to do so" due to his medical ailments, this necessarily means that on *some* days he was more than up to the task (*ibid.*).

Having given full consideration to the *Pioneer* factors, and having allowed both sides to fully brief this issue, this order finds that "excusable neglect" has not been shown. As such, The Union Mission's motion is **DENIED**. The hearing on this motion is **VACATED**.

**IT IS SO ORDERED.**

Dated: April 9, 2010.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE