IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

IN RE:

CHARLES SCHWAB CORPORATION
SECURITIES LITIGATION.

This Document Relates
    To All Cases.
                                /

No. C 08-01510 WHA

**ORDER RE ATTORNEY-CLIENT PRIVILEGE WITH RESPECT TO DEFENDANT KIMON DAIFOTIS**

      Defendant Kimon Daifotis — who was terminated from Schwab in June 2008 and is being represented by separate counsel — intends to raise the statutory "reasonable care" affirmative defense for the Section 12 claim asserted against him. Part of his intended defense is that he knew that key documents at Schwab were routinely reviewed by both in-house attorneys and outside attorneys. Additionally, Daifotis claims that for most (but not all) of the subjects at issue in this action, he had no contact with Schwab's lawyers and received no legal advice. For these subjects where he had no communication with Schwab attorneys, he simply "took comfort" from the fact that lawyers familiar with securities laws were reviewing Schwab materials.

      Former employees cannot waive the attorney-client privilege held by their former employers. *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 348 (1985); *United States v. Chen*, 99 F.3d 1495, 1502 (9th Cir. 1996). This applies to former management as well. *Weintraub*, 471 U.S. at 349. As such, given that Mr. Daifotis no longer works at Schwab, any authority he may have had to waive defendant Schwab's attorney-client privilege — assuming he even had this authority to begin with when he *did* work there — has vanished.

Given this reality, defendant Daifotis is placed in an usual position. As this Court's February 23 order explained, by raising a "reasonable care" affirmative defense, Mr. Daifotis places in issue his subjective state of mind as to the contested disclosures at the time in question. Accordingly, *all* information, whether privileged or not, received by him on those matters during or before the time in question should be discoverable (*see* Dkt. No. 424). This is because all information received by him on those matters would have, or at least arguably should have, informed his belief as to the reasonableness of his investigation and the accuracy of the registration statement. Unlike the Schwab defendants, however, Mr. Daifotis has no authority to waive — whether intentionally or not — the attorney-client privilege that may apply to the information he received while working at Schwab. Moreover, even if Mr. Daifotis chose to disclose attorney-client communications to effectuate his defense (notwithstanding any duty of confidentiality he might owe to Schwab), this would not amount to a waiver of Schwab's privilege. *See Chen*, 99 F.3d at 1502.

Because of this predicament, plaintiffs take issue with defendant Daifotis's intention to raise any defense relying on the advice (or perhaps, even the mere presence) of counsel. As argued by plaintiffs, it would be unfair if Mr. Daifotis was allowed to elaborate on the circumstances underlying his "reasonable care" defense if there were reasonable and relevant *privileged* communications that plaintiffs would *not* have access to — especially those as to which Schwab claims a privilege, and elects not to waive it. On the other hand, defendant Daifotis claims that it would be unfair to him if he were prevented from asserting a statutorily authorized affirmative defense because his former employer refuses to produce the necessary documents. Both sides make valid points.

Here's the answer: Since Mr. Daifotis does not own, and therefore cannot waive, defendant Schwab's attorney-client privilege, it cannot be said that Mr. Daifotis is using the privilege as both a "sword and a shield." True, defendant Daifotis is using the involvement of counsel as a sword in his defense, but the law is clear that the privilege surrounding his communications with counsel is *not* his shield to raise — it is Schwab's, and Schwab's alone. As such, this order is inclined to allow Mr. Daifotis to testify as to his personal knowledge of

2

Schwab's processes for reviewing key documents, as well as other matters relevant to his statutory "reasonable care" defense.

To ensure fairness to both sides, however, unless Schwab waives the privilege and produces all relevant privileged communications pertaining to Mr. Daifotis's "reasonable care" defense, plaintiffs would be entitled to a jury instruction similar to the one proposed by the undersigned on February 9 with respect to Mr. Daifotis (*see* Dkt. No. 368). For example, the jury would be told something along the following lines (subject to change, of course, depending upon how the evidence actually comes in):

\*          \*          \*

### JURY INSTRUCTION
#### (For Discussion Only)

Defendant Kimon Daifotis has placed before you evidence that lawyers were involved in the process of preparing the registration statements. The Schwab defendants (who are separate defendants from Mr. Daifotis), however, have asserted and still assert the attorney-client privilege as to what Mr. Daifotis told Schwab's lawyers, if anything, and what Schwab's lawyers told Mr. Daifotis, if anything. Mr. Daifotis has no authority to overrule the Schwab defendants' decision to assert this privilege. Additionally, there is nothing improper in the Schwab defendants' assertion of the attorney-client privilege. But I must instruct you concerning the effect of this evidence and the assertion of the privilege. Under Section 12, the burden is on Mr. Daifotis to prove that he "did believe" in the accuracy of the registration statement. If lawyers were involved in the preparation and filing process, you may not assume that the lawyers blessed the documents or that the lawyers ever learned all of the facts necessary properly to vet the registration statements. Although that sometimes occurs in such circumstances, it also sometimes occurs that lawyers advise caution or suggest revisions or state that the registration statements are not as accurate as they should be, in which case it is the client's final decision whether to follow the advice or to run risks.

In this trial, due to the assertion of the privilege, we do not know the actual communications between Mr. Daifotis and the lawyers at Schwab, so it is impossible to know

how those communications affected or should have affected his belief as to the accuracy or inaccuracy of the registration statement. If, for example, a defendant knew of facts and circumstances that should have been revealed to counsel but failed to reveal them, then that defendant should not have relied on lawyers being involved in the process. Or, if counsel advised giving a different level of disclosure, then a defendant being so advised could hardly claim that he relied on the presence of lawyers to stay in compliance. Due to the assertion of the privilege, which is legitimate and proper, we do not have the answers on these particulars.

On the other hand, that a defendant had no communications directly or indirectly with counsel yet was aware that competent lawyers had been engaged for the preparation and filing process, may be considered by you, along with all other facts and circumstances known to the defendant, in evaluating that defendant's good-faith belief.

**IT IS SO ORDERED.**

Dated: April 14, 2010.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

4