1

2

3

4

5

6                          IN THE UNITED STATES DISTRICT COURT

7

8                          FOR THE NORTHERN DISTRICT OF CALIFORNIA

9

10   IN RE:                                        No. C 08-01510 WHA

11   CHARLES SCHWAB CORPORATION
     SECURITIES LITIGATION.
12
                                                   **ORDER DENYING FEDERAL**
13            This Document Relates                **SECURITIES CLASS MEMBER**
              To All Cases.                        **GARY BENSON'S MOTION TO**
14                                                 **INTERVENE**
     _____/
15

16                                   **INTRODUCTION**

17          At this eleventh-plus hour in the now settled class action, federal securities class member

18   Gary Benson filed a motion to intervene and to be appointed to represent a class of Section 17200

19   claimants residing outside of California (Dkt. No. 1015).  Because Mr. Benson is not entitled to

20   intervention as of right or permissive intervention, his motion is **DENIED**.

21                                   **STATEMENT**

22          Gary Benson is a member of the federal securities class and an attorney who lives in

23   Chicago.  In June 2010, Mr. Benson was provided a settlement notice, record of fund transactions,

24   transaction dispute form, and account activity detail.  The record of fund transactions shows that

25   Mr. Benson held 10,074.4950 YieldPlus Fund shares at the beginning of the class period;

26   acquired 2,242.741 shares during the class period through share purchases and dividend

27   reinvestments collectively totaling $21,491.88 in value; and sold 12,376.6060 shares during the

28   class period for a total value of $93,187.99.  The record of fund transactions estimated Mr.

     Benson's settlement payment at $269.82, based on a Section 11 allowed loss of $1,299.53 (Dkt.

United States District Court

For the Northern District of California

No. 1025-1).  Mr. Benson did not dispute this information or anything in the account activity detail that identified all of his YieldPlus Fund transactions during the class period.

Mr. Benson sent in an objection letter in July 2010.  Mr. Benson objected to the proposed settlement because it does not cover his losses *prior* to the start of the federal class period.  He encouraged the Court to reject the settlement, or alternatively asked to be excluded from the class (*see* Dkt. Nos. 874, 910-1).  His letter stated, "I want to pursue my own claim, even if I have to represent myself."  Mr. Benson also revealed that Schwab's Client Advocacy Group had offered to pay him to settle complaints he made in 2008.

In October 2010, Mr. Benson filed a motion to be excluded from the class (Dkt. No. 910). In the motion, Mr. Benson asserted that he had not received the notice of pendency of this action. Class counsel confirmed with Gilardi & Co. that in October 2009, a copy of the notice of pendency was mailed to Mr. Benson at the same address found on his objection letter, and it was not returned as undeliverable.  Mr. Benson's notice package was also sent to that same address, where Mr. Benson acknowledges he received it (Dkt. No. 861 ¶ 21).  Class counsel took no position on Mr. Benson's motion for exclusion, while defendants opposed it (Dkt. No. 912).  An order denied the motion, "find[ing] that the facts and circumstances underlying the request of Gary Benson do not support a finding of excusable neglect under Ninth Circuit law" (Dkt. No. 915).

Thereafter, Mr. Benson filed his "Response to Opposition Argument of Attorneys for Schwab," which a subsequent order treated as a motion for reconsideration (Dkt. No. 927).  In the wake of Amendment No. 4 to the proposed settlement, however, an order requested a response from class counsel on whether Mr. Benson would be provided a new notice and opportunity to request exclusion from the class (Dkt. No. 952).  Class counsel confirmed that Mr. Benson would indeed be provided with a new notice and opportunity to opt out (Dkt. No. 953).  In light of this confirmation, an order denied as moot Mr. Benson's motion for reconsideration, noting that "Mr. Benson may exercise his right to opt out via the new notice" (Dkt. No. 954).

Instead of requesting and receiving the exclusion that he sought, however, Mr. Benson has now chosen to remain a class member, to object to the settlement, and to move to intervene.  Once

**United States District Court**
For the Northern District of California

2

United States District Court

For the Northern District of California

in as a party, he would seek to be appointed to lead a class of Section 17200 claimants outside of California. This would undo the existing settlement and take us back to square one. Mr. Benson is now represented by Attorney John Pentz of Massachusetts, who, according to class counsel's opposition to the instant motion, is a "serial objector." Class counsel argue that Attorney Pentz has been "shameless in his quest to extort settlement fees" from parties to meritorious class settlements, and that he has now taken hold of class member Benson and used him to do the same here (Opp. 3). Class counsel cite at least 33 cases in which Pentz has been an objector or objector counsel, some courts having called Pentz out as a serial objector, and also describe how he "stalks settlements in which Hagens Berman is class counsel" (Opp. 6–8).

It is worth recounting that the scope of Section 17200 claims in this action was first set in August 2009, when an order granting class certification *denied* certification of a *nationwide* class for such claims (but allowed a separate class for Section 17200 claimants in California) (Dkt. No. 233). In the wake of class settlement, release of such claims by non-California federal securities class members became a very live issue — almost derailing the settlement — from September through November of 2010, until Amendment No. 4 to the proposed federal securities class settlement agreement was preliminarily approved.

Proposed intervenor Benson does not submit a declaration in support of his motion, but he does append a proposed intervenor complaint, asserting one claim under Section 17200. He would appeal the scope of the release of non-California class members' Section 17200 claims allegedly on behalf of all class members outside of California (Br. 12). Defense and class counsel filed separate oppositions to Mr. Benson's motion, but Mr. Benson did not reply. The motion was heard on February 11, 2011, along with a fairness hearing concerning Amendment No. 4. (Mr. Benson also filed a separate objection to the proposed class settlement and notice of intention to appear at the hearing (Dkt. No. 1011).) Attorney Pentz appeared at the hearing on behalf of Mr. Benson, who did not appear. Attorney Pentz stated at the hearing that Mr. Benson will not opt out of the class, even if his motion is denied and even if given a new opportunity to do so.

3

**United States District Court**
For the Northern District of California

**ANALYSIS**

**A.    INTERVENTION AS OF RIGHT**

Intervention under Federal Rule of Civil Procedure 24(a)(2) requires Mr. Benson to demonstrate that "(1) [he] has a significant protectable interest relating to the property or transaction that is the subject of the action; (2) the disposition of the action may, as a practical matter, impair or impede [his] ability to protect [his] interest; (3) the application is timely; and (4) the existing parties may not adequately represent [his] interest." *United States v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 2004) (citations omitted).

These factors counsel strongly against intervention as of right. They will be discussed in an order that reflects their importance in demonstrating why Mr. Benson shall not be allowed to intervene as of right.

**1.    The Motion is Untimely**

"Timeliness is measured by reference to '(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for the length of the delay.'" *United States v. Carpenter*, 298 F.3d 1122, 1125 (9th Cir. 2002) (citation omitted). "A party must intervene when he 'knows or has reason to know that his interests might be adversely affected by the outcome of litigation.'" *Alisal*, 370 F.3d at 923 (citation omitted). Courts deny motions to intervene "where granting intervention [might] compromise[] long-litigated settlement agreements." *Id.* at 922.

This suit was filed almost 35 months ago in March 2008 and has received substantial publicity. Mr. Benson has been objecting to the proposed settlement since July 2010, and seeking to intervene only since January 2011. This settlement is on the verge of final approval after a long vetting process of which Mr. Benson has been aware. If he was so interested in vindicating Section 17200 claims of non-residents he could have moved to intervene and carry the class banner long ago when that class was limited to California residents.

Mr. Benson asserts that his motion is timely because he did not have notice until December 2010 that the federal securities class settlement now includes a release of Section 17200 claims (Br. 3, 5). But Mr. Benson's other submissions reveal that this was not the first

4

time he felt the settlement would adversely affect his interests. This class member has felt the class settlement was adverse to his interests since well before December 2010. At the very least, Mr. Benson knew his interests might be adversely affected over six months ago, when he began objecting to the settlement in this Court. True, notice regarding Amendment No. 4 to the class settlement agreement was only sent out in November 2010 after the amendment was preliminarily approved. Yet that does not contravene the other facts in the record concerning Mr. Benson's clear position that he felt the settlement was contrary to his interests before that time. Mr. Benson did not submit a declaration that would contradict that record. Moreover, he waited until January 19, 2011, to file his motion, and does not provide any reason for the delay whatsoever.

Lastly and significantly, allowing this intervention would only be aimed at derailing a large $235 million class settlement that has been a year in the making. It has taken great attention by the parties throughout that time to get to this stage, one of near completion, and allowing intervention would undo all of that work. Mr. Benson has felt for quite some time that he disapproved of the settlement as counter to his interests, yet he did nothing until now. For all of these reasons, the motion is untimely.

### 2. The Existing Parties Will Safeguard His Interests and Those He Seeks to Represent

To decide whether the movant's interests are adequately represented, courts consider three factors: "(1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect." *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003) (citation omitted). "When a proposed intervenor . . . has vested [his] claim for intervention entirely upon a disagreement over litigation strategy or legal tactics, courts have been hesitant to accord the applicant full-party status." *League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1306 (9th Cir. 1997) (citations omitted).

Class counsel have achieved a good settlement for the class and there have been minimal objections from class members. Class counsel have performed well throughout this action and have continuously had the interests of class members in mind through every stage. The order

United States District Court

For the Northern District of California

certifying this class action found the class representatives to be adequate representatives, and they have participated actively throughout.  The avowed purpose of the intervention motion is to wrest control of the class from existing class counsel to torpedo the class settlement, and to start anew. This would be decidedly against the interest of the class members, who will be much better served leaving matters as they already stand.

Mr. Benson asserts that the class representatives and counsel no longer adequately represent the federal class's interests because they agreed to release the Section 17200 claims of non-California class members without further consideration (Br. 10–11).  Yet an order has already preliminarily approved that release and found that the $200 million is reasonable consideration for the release that will be given.  Much of Mr. Benson's motion consists of arguments to the effect that the certification order was wrong and the preliminary approval of Amendment No. 4 was wrong.  This has nothing to do with whether there has been adequate representation, which there has been.  In the best case Mr. Benson is presenting a disagreement over litigation strategy with class counsel.

### 3.    Ability to Protect Interests Not Impaired

Intervention is warranted if, in addition to the other factors, the disposition of the action may, as a practical matter, impair or impede the movant's ability to protect his interest.  But "[e]ven if this lawsuit would affect the proposed intervenors' interests, their interests might not be *impaired* if they have 'other means' to protect them."  *Cal. ex rel. Lockyer v. United States*, 450 F.3d 436, 442 (9th Cir. 2006) (emphasis in original; citation omitted).

*First*, Mr. Benson has objected to the settlement, and the Court considered that objection at the February 11 fairness hearing and will continue to consider it in the context of the parties' joint motion for final approval of the class settlement.  Hence, his interests are protected by the Court.  *Second*, Mr. Benson had the renewed option to exclude himself from the class and instead chose to remain.  In other words, he had other avenues of potential redress.  Mr. Benson, as an attorney himself, could have brought his own lawsuit *pro se*.  His rights are only being affected because he chose to remain in the class.  He might have been given an additional opportunity to opt out but his counsel represented at the hearing that he would not do so.  His ability to protect

his interests has not been impaired because the disposition he is facing was completely foreseeable.  The disposition of this action will not impair or impede Mr. Benson's ability to protect his interests.

### 4.   Significant Protectable Interest

Mr. Benson likely has a significant protectable interest relating to the property or transaction that is the subject of the action, given his money recovery and the release of claims involved.  Both class and defense counsel point out that Mr. Benson may not have a protectable interest in the assertion of a Section 17200 claim.  Perhaps.  Counsel ignore, however, that Mr. Benson's other claims create a protectable interest.  It is unclear why they fail to recognize that regardless of whether Mr. Benson has a viable Section 17200 claim, he *does* have viable federal securities claims.  Those are also warranting of protection.  Perhaps class and defense counsel focus on whether Mr. Benson has a protectable interest in a Section 17200 claim because that is the basis for *Mr. Benson's* assertion of a protectable interest.

The vast majority of Mr. Benson's opening brief (he did not submit a reply) fundamentally misunderstands the law concerning whether he and other non-California federal class members have a viable Section 17200 claim.  Mr. Benson's argument is based on a simplistic choice-of-law analysis, and it contravenes several orders in this action, including the certification order that set the scope of the federal and California classes, as well as more recent orders concerning the release by federal securities class members of their Section 17200 claims. It is accordingly unsurprising that both class and defense counsel have chosen to focus their counter-arguments in briefing on whether Mr. Benson has a protectable interest in any Section 17200 claim.  But this order finds that Mr. Benson has *some* claim, if only his federal securities claim, which creates a significant protectable interest.  The other factors reviewed above counsel so strongly against intervention, however, that intervention as of right is not warranted.

### B.   PERMISSIVE INTERVENTION

Federal Rule of Civil Procedure 24(b)(1)(B) provides the Court with discretion to allow intervention by a party with a claim that shares with the main action a common question of law or fact.  The Court "shall consider whether the intervention will unduly delay or prejudice the

United States District Court

For the Northern District of California

1   adjudication of the rights of the original parties," including consideration of the timeliness of the

2   motion. *Donnelly v. Glickman*, 159 F.3d 405, 412 (9th Cir. 1998). As discussed above, Mr.

3   Benson's late intervention will unquestionably prejudice the class. And this order's conclusion

4   "in denying [the] motion to intervene as a matter of right due to its untimeliness applies equally

5   here." *County of Orange v. Air Cal.*, 799 F.2d 535, 539 (9th Cir. 1986).

6         Mr. Benson does not explain how his involvement would contribute to anything except

7   delay and prejudice to the classes. Mr. Benson's proposed intervenor complaint asserts a Section

8   17200 claim on behalf of all non-California resident investors in the YieldPlus Fund. *That claim*

9   *has already been litigated by the existing parties*. There is no reason to allow intervention at this

10  time simply to ensure that Mr. Benson's objection is further heard. Mr. Benson filed a separate

11  objection brief. It presents similar arguments to the motion to intervene, confirming what has

12  already been stated about objecting being the correct avenue for Mr. Benson to express his

13  concerns. As stated, his objection will be considered.

14        This intervention would not be in the best interests of the class but rather would only be in

15  Attorney Pentz's best interest. The class will be much better served by obtaining the class

16  settlement — now — rather than by the scenario Attorney Pentz wants, which is to torpedo the

17  settlement and start anew. Permissive intervention is not warranted.

18                                          **CONCLUSION**

19        Therefore, Mr. Benson has not shown that he is entitled to intervention as of right or

20  permissive intervention. His motion is accordingly **DENIED**. Mr. Benson will remain a member

21  of the federal securities class.

22        For the reasons stated at the hearing, class and defense counsel may not speak to or

23  communicate with Mr. Benson or any of his representatives except on the Court record, without

24  the advance permission of the judge (or, of course, the court of appeals).

25        **IT IS SO ORDERED.**

26

27  Dated: February 11, 2011.

28                                       WILLIAM ALSUP
                                     UNITED STATES DISTRICT JUDGE