Reed R. Kathrein (139304)
Peter E. Borkon (212596)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
reed@hbsslaw.com
peterb@hbsslaw.com

Steve W. Berman (*Pro Hac Vice*)
Sean R. Matt (*Pro Hac Vice*)
Erin K. Flory (*Pro Hac Vice*)
Lisa M. Hasselman (*Pro Hac Vice*)
Robert F. Lopez (*Pro Hac Vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, Washington 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com
sean@hbsslaw.com
erin@hbsslaw.com
lisah@hbsslaw.com
robl@hbsslaw.com

*Attorneys for Lead Plaintiff YieldPlus Investor Group*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE CHARLES SCHWAB CORP. SECURITIES LITIGATION | No. 08-cv-01510 WHA |
| THIS DOCUMENT RELATES TO:<br><br>All Actions | **CLASS COUNSEL'S MOTION FOR ORDER APPROVING (1) DISTRIBUTION OF REMAINING SETTLEMENT FUNDS TO CLASS MEMBERS; (2) PAYMENT OF REASONABLE CLAIMS ADMINISTRATION FEES; AND (3) PAYMENT OF SECOND HALF OF ATTORNEYS' FEE AWARD**<br><br>Date: n/a<br>Time: n/a<br>Judge: Hon. William H. Alsup<br>Courtroom: Courtroom 9, 19th Floor |

10036.12 486895v1

**TABLE OF CONTENTS**

I. INTRODUCTION ..................................................................................................................1

II. FACTS ..................................................................................................................................3

    A. The Distribution To Class Members ..........................................................................3

        1. Over 91% of checks were cashed, an extraordinarily high negotiation rate. .....3

        2. Gilardi and Class Counsel expended considerable efforts to locate Class Members whose initial checks were not successfully delivered and those Class Members who did not cash their checks. ..................................................6

        3. The check cashing period has ended. ................................................................8

    B. Class Counsel's Proposal To Distribute Remaining Settlement Funds .......................8

III. ARGUMENT .......................................................................................................................9

    A. The Court Should Approve Class Counsel's Proposal To Distribute Remaining Settlement Funds .........................................................................................................9

    B. The Court Should Approve The Payment Of Administration Costs To Gilardi .........10

    C. The Court Should Authorize Class Counsel To Take The Remaining 50 Percent Of The Attorneys' Fee Award Plus Interest .....................................................................11

IV. CONCLUSION ..................................................................................................................13

10036.12  486895v1

1    Class Counsel respectfully move for an order approving (1) Class Counsel's plan for
2    distributing remaining funds to Class Members, (2) payment from the Settlement Fund of
3    reasonable Claims Administration costs in the amount of $1,637,306.85, and (3) payment of the
4    remaining half of Class Counsel's attorneys' fee award.  This motion is supported by the
5    Declaration of Steve W. Berman in Support of Class Counsel's Motion for Order Approving (1)
6    Distribution of Remaining Settlement Funds to Class Members, (2) Payment of Reasonable Claims
7    Administration Fees, and (3) Payment of Second Half of Attorneys' Fee Award, and (the "Berman
8    Decl."), and the Declaration of Lara McDermott Regarding Status of Distributions and
9    Administration Fees and Expenses (the "McDermott Decl.").

## I.   INTRODUCTION

The initial distribution of checks to members of the Federal and California Classes is complete.  Pursuant to the terms of the Stipulations of Settlement approved by the Court for both the Federal and California Classes, those checks expire and become uncashable on November 24, 2011, which is 180 days after check distribution began.  After reserving sufficient funds to pay checks that were reissued to Class Members who requested check reissues, and after deducting amounts for unreimbursed Claims Administration fees and costs, approximately $6,264,581.33 will remain in the Federal Settlement Fund and approximately $1,081,046.02 will remain in the California Settlement Fund.

The Stipulations of Settlement direct Class Counsel to, if feasible, reallocate "in an equitable and economic fashion" any monies remaining in the Settlement Funds after six months from distribution.  Class Counsel believe that the magnitude of monies remaining in the Settlement Funds is sufficiently large to effect a pro-rata distribution to Class Members who cashed their checks or requested check reissues, subject to a $100 minimum check amount.  The $100 minimum check amount was selected in order to control redistribution costs and provide an incentive for the new checks to be cashed.  After reserving sufficient funds to cover the estimated fees and costs of the redistribution, this proposal, if approved by the Court, will result in approximately 14,830 Federal Class Members and 3,186 California Class Members receiving a redistribution check.  And if the Court approves this plan in early December, those checks can be sent by the end of the year

or shortly after the New Year, providing eligible Class Members with unexpected payments during the holiday season.

It is also time to make a supplemental payment to Gilardi & Co. for its substantial and good services as Claims Administrator. In authorizing Class Counsel to file this supplemental request for claims administration fee and cost reimbursement, the Court requested a detailed breakdown of all tasks performed in the settlement notice, claims processing and initial distribution stages of the settlement administration.[1] An overview of all such tasks and corresponding billed amounts is provided below, backed by an evidentiary record provided by the McDermott Declaration. Class Counsel have carefully reviewed Gilardi's task detail and billed amounts and believe that Gilardi's request is reasonable and that all of the work was necessary in order for Gilardi to carry out its duties as Claims Administrator. We therefore request that the Court authorize $1,637,306.85 be paid to Gilardi from the Settlement Funds for outstanding and unpaid administration costs, with $1,489,949.23 coming from the Federal Distribution Account, and $147,357.62 coming from the California Distribution Account.

Lastly, Class Counsel seek the Court's permission to receive from escrow the remaining 50% of their attorneys' fee award, plus interest. The Court's Final Approval Order awarded attorneys' fees in two parts: 50 percent paid after the "effective date" as defined in the Stipulations of Settlement, and 50 percent to be paid "after counsel certifies that all class members have received and cashed their checks, no problems with the distribution have been reported for a period of 30 days, and there is nothing left to do, unless leave of Court is otherwise granted."[2]

While not all Class Members have cashed their checks, the settlement distribution has gone exceedingly well, with 91.9 and 93.1 percent of the Federal and California Class Members, respectively, cashing their checks. In all class action settlements, a significant percentage of class members do not cash their checks, and – as expected – many have not here. However, this settlement has achieved an extraordinarily high check cashing rate, a likely product of the strength of the settlement and the great lengths to which Class Counsel and Gilardi have gone to encourage

---

[1] *See* Dkt. No. 1106.

[2] Dkt. No. 1101 at 16.

Class Members to cash their checks. We report to the Court that we have not encountered any problems with the distribution and expect the redistribution, if approved, to proceed without challenges. Given that the initial distribution phase is complete, that the redistribution will be done by the end of the year or shortly after the New Year (assuming Court approval), and that seven months have passed since the Court approved the attorneys' fee award, Class Counsel respectfully request that the Court authorize Class Counsel to take the remaining 50 percent of the attorneys' fee award plus interest for a total amount of $8,806,785.98 from the Federal Escrow Account and $2,051,098.39 from the California Escrow Account, in addition to any interest earned thereon between the date of this filing and the date of the Court's order.

## II.   FACTS

**A.   The Distribution To Class Members**

### 1.   Over 91% of checks were cashed, an extraordinarily high negotiation rate.

The Court granted final approval of these Settlements on April 19, 2011.[3] On June 27, 2011, and after appeal periods had expired, Claims Administrator Gilardi & Co. ("Gilardi") began mailing 200,780 initial payment checks totaling $181,200,190.88 to Federal Class Members and 19,254 initial payment checks totaling $30,415,701.84 to California Class Members.[4] The initial distribution of payment checks to Class Members is thus complete.

Not every check was cashed, which was expected, given that many Class Members in class settlements simply choose not to cash their checks. 91.9 percent of the total number of checks sent to Federal Class Members were cashed, representing 95.4 percent of the total funds distributed to Federal Class Members. This leaves 16,170 outstanding, uncashed checks totaling $8,315,192.98.[5]

For the California Class, 93.1 percent of the total number of checks sent to California Class Members have been cashed, representing 95.5 percent of the total funds distributed to California Class Members. This leaves 1,333 outstanding, un-cashed checks totaling $1,375,848.82.[6]

---

[3] *See* Dkt. No. 1101, the "Final Approval Order."

[4] McDermott Decl., ¶¶ 4-5.

[5] *Id.*, ¶ 4.

[6] *Id.*, ¶ 5.

Some of the outstanding checks are "reissues." Check reissues are common in class settlements. Here, checks were reissued to Class Members who informed Gilardi that the original check was not received or was misplaced; in response to requests from deceased Class Members' heirs or estates; and in response to reissue requests made because the Class Members' Individual Retirement Account ("IRA") is no longer maintained at Schwab (in which case the check is reissued in the name of the new account).[7]

Of the 17,503 initial distribution payments that have not been negotiated, 2,167 are checks that were reissued and resent to Class Members at their request. The value of the reissued and uncashed checks totals $2,594,135.87. We anticipate that most if not all of these reissued checks will be negotiated by these Class Members, given that they affirmatively requested the check reissue.[8]

Even given the extraordinary efforts by Gilardi and Class Counsel to locate and communicate with Class Members who have not cashed their checks (*see* Section II.B.2, immediately *infra*), it is extremely unlikely that the outstanding checks will be cashed (with the exception of the check reissues). This has occurred in every securities litigation settlement distribution Gilardi has ever done. Some Class Members simply do not want to cash their checks. For example, a small number of Class Members told Gilardi that they consider the amount of the check to be too small to bother. This happens in every case, as some Class Members have only small losses. Indeed, notwithstanding the very high recovery realized in these settlements, there are more than 5,800 outstanding, un-cashed checks in an amount less than $25.00. Other Class Members may have misplaced their checks and not requested a reissue. For whatever reason, some Class Members just never negotiate their payments. Remarkably, this happens even in settlement distributions where Class Members took the trouble to file their claims and were presumably looking forward to receiving a payment.[9]

---

[7] *Id.*, ¶ 12.
[8] *Id.*
[9] *Id.*, ¶ 14.

MTN FOR ORDER APPROVING CLAIMS
ADMIN. FEES AND SECOND HALF OF
ATTORNEYS' FEES AWARD - 08-cv-01510 WHA     - 4-
10036.12 486895v1

Notwithstanding the fact that not all checks were cashed, the check cashing rate here has been higher than in any securities litigation settlement in Gilardi's recent experience. Indeed, in a settlement where most Class Members were sent a payment without requesting it, a negotiation rate exceeding 90 percent is ***extraordinarily high***.[10]

Gilardi is one of the most experienced securities litigation settlement administrators in the United States. Since it was founded in 1984, Gilardi has administered several thousand securities settlements and distributed more than $10 billion in assets to class members. In Gilardi's experience, having more than 90 percent of initial distribution checks cashed in a securities settlement is unusual, and represents a very high rate of negotiation. This high negotiation rate is especially striking in a case where most Class Members were not required to submit claims in order to receive a payment. In a typical settlement administration, class members submit their claims to the administrator and receive any payment to which they are eligible several months later. Because they have affirmatively filed a claim, such class members are generally more motivated to cash the check. But even in cases where payment results from an affirmative step taken to file a claim, negotiation rates for initial distributions rarely reach ninety percent, and are most frequently in the eighty percent range or lower, especially in distributions to large numbers of class members.[11]

Gilardi believes the unusually high negotiation rate is the result of several factors. First, Gilardi received more than 6,600 incoming calls since the initial distribution was made, and Gilardi employees spent more than 1,000 hours speaking to Class Members during that period. Based on these communications, Gilardi has concluded that this settlement is viewed favorably by the vast majority of Class Members, and that this prevailing view of the settlement created an eagerness to receive and negotiate the resulting payments.[12] While there are, of course, exceptions, the vast majority of the Class Members viewed their settlement payments as substantial even when compared to their losses, and where they received but did not immediately negotiate their checks, it

---

[10] *Id.*

[11] *Id.*, ¶ 6.

[12] Many Class Members have expressed their thanks, both verbally and in writing. *Id.*, ¶ 7.

MTN FOR ORDER APPROVING CLAIMS
ADMIN. FEES AND SECOND HALF OF
ATTORNEYS' FEES AWARD - 08-cv-01510 WHA
10036.12  486895v1

- 5 -

was generally because they required additional information about their payment or a modification to the payment check to permit them to deposit it.[13]

Second, the case involved market events and investor losses that occurred relatively recently and which generated a great deal of media and other attention. This led to an unusually high degree of Class Member awareness of the litigation and of its progress to settlement and distribution. Indeed, Gilardi received an unusually large number of status inquiry communications from Class Members throughout the litigation, especially during the period between the announcement of the Proposed Settlement and the initial distribution. This high level of Class Member awareness contributed to a high rate of check negotiation.[14]

A highly accurate address database is the third reason driving the high rate of check negotiation. Schwab provided name and address information for most Class Members based on Schwab's records, and these records, for the most part, were current and accurate. This led to a very high delivery rate for the various notices that were sent to Class Members and for the subsequent payment checks. Less than two percent of the payment checks that were mailed to Class Members were returned as undeliverable. In Gilardi's experience, this is a very low undeliverable return rate, and would be low even in a case where Class Members were required to submit claims and who would therefore provide their own address information as part of their submission.[15]

### 2. Gilardi and Class Counsel expended considerable efforts to locate Class Members whose initial checks were not successfully delivered and those Class Members who did not cash their checks.

As in every case where a large number of payment checks are sent to class members, some checks were not successfully delivered on the first attempt. In most cases, it was because those Class Members recently moved. Any payment check that was returned to Gilardi as undeliverable was reviewed, and a new address for that Class Member was obtained from the United States Post Office ("USPS") National Change of Address Database, if available. Checks were immediately

---

[13] *Id.*

[14] *Id.*, ¶ 8.

[15] *Id.*, ¶ 9.

MTN FOR ORDER APPROVING CLAIMS ADMIN. FEES AND SECOND HALF OF ATTORNEYS' FEES AWARD - 08-cv-01510 WHA
10036.12  486895v1

- 6-

mailed to the new address provided by the USPS.  In cases where no new address was available from the USPS, Gilardi used the services of a reputable commercial address search firm affiliated with Lexis/Nexis to obtain updated or alternative addresses.  The search firm uses private credit databases and other sources of information to obtain address information not provided to the USPS.  Where a reliable new address was obtained as a result of that search, payment checks were immediately forwarded to the alternative address.[16]

In addition to seeking alternative addresses for Class Members whose checks have been returned, Gilardi made extraordinary efforts to attempt to contact every Class Member who has not negotiated their payment check.  A team of experienced Gilardi personnel has been dedicated to finding and communicating with Class Members about their outstanding payments.  The efforts that team have put forth include:  (i) sending an email inquiry to every such Class Member whose email address was provided by Schwab or was otherwise available, resulting in nearly 9,000 reminder emails, which directly prompted more than 1,200 Class Members to either negotiate their checks or request that the check be resent to them; (ii) making more than 4,000 phone calls to Class Members who had not negotiated their payment checks and for whom a telephone number was found using commercial and publically available databases.[17]  Class Counsel also dedicated investigator resources to locating contact information for some Class Members Gilardi was unable to find.  Gilardi has called, emailed or written to each such Class Member using the information provided by Class Counsel's investigator.[18]

---

[16] *Id.*, ¶ 10.

[17] *Id.*, ¶ 11.

[18] *Id.*; Berman Decl., ¶ 7.  Among the last payments to be negotiated in any large securities distribution are those made to deceased Class Members.  It can take months for the estate of a deceased Class Member to gather and analyze the assets of the decedent, including settlement distribution payments.  The information gathered by Class Counsel's investigators confirms that some of the un-cashed checks were issued to people now deceased, and Gilardi's telephone outreach also confirmed this.  Gilardi has helped expedite negotiation of payments to deceased Class Members by reissuing payments checks to the estates of those Class Members when requested.  McDermott Decl., ¶ 13.

### 3. The check cashing period has ended.

Because a certain percentage of class members in any class settlement do not cash their checks, and because the Stipulations of Settlement contain provisions to reallocate remaining funds to the Classes, the Stipulations of Settlement contain a check negotiation deadline of five months: "All Class Members who fail to cash or endorse a check distributing to them a portion of the Net Settlement Fund within one hundred fifty days of the check's issuance, or such other period as may be ordered by the Court, or otherwise allowed, shall be forever barred from receiving any payments pursuant to the Stipulation and the Settlement, but will in all other respects be subject to and bound by the provisions of the Stipulation, the releases contained herein, and the Judgment."[19]

The initial distribution of checks to both Classes began on June 27 and were all mailed within a few days thereafter.[20] Thus, these checks go "stale," pursuant to the Stipulations of Settlement, by the end of November.

### B. Class Counsel's Proposal To Distribute Remaining Settlement Funds

The Settlement Agreements contain provisions governing the use of settlement funds remaining after the initial distribution has been made: "If there is any balance remaining in the Net Settlement Fund after six (6) months from the date of distribution of the Net Settlement Fund (whether by reason of tax refunds, uncashed checks or otherwise), Lead Counsel shall, if feasible, reallocate such balance among Class Members in an equitable and economic fashion. Thereafter, any balance which still remains in the Net Settlement Fund shall be donated to a non-profit organization(s) to be determined by agreement of the Settling Parties and approved by the Court."[21] Gilardi estimates that, assuming all reissued checks are cashed, and after paying unreimbursed Claims Administration fees and costs for work already accomplished (if the Court so approves) and reserving fees and costs associated with the coming redistribution, approximately $6,264,581.33

---

[19] Federal Class Stipulation of Settlement, ¶ 4.7; *see also* California Class Stipulation of Settlement, ¶ 4.7 (identical provision).

[20] McDermott Decl., ¶¶ 4-5.

[21] Federal Class Stipulation of Settlement, ¶ 4.8; *see also* California Class Stipulation of Settlement, ¶ 4.8 (identical provision).

MTN FOR ORDER APPROVING CLAIMS
ADMIN. FEES AND SECOND HALF OF
ATTORNEYS' FEES AWARD - 08-cv-01510 WHA
10036.12  486895v1

- 8 -

will remain in the Federal Settlement Fund, and approximately $1,081,046.02 will remain in the California Settlement Fund.[22]

We propose to reallocate these remaining balances only to Class Members who negotiated their initial distribution payment or whose initial payment was reissued and resent to them.  Each eligible Class Member's share of the reallocation will be paid pro rata based on his or her Total Recognized Loss as calculated in the initial distribution.  And given the large number of Class Members and the relatively small amounts left for reallocation, it is not feasible or advisable to provide a redistribution payment to all Class Members who cashed their initial payments.  Doing so would result in a high number of very small checks being sent, many of which would not be cashed (given their small size).  Thus, we propose that the redistribution be subject to a minimum $100 check size, which is a common feature of redistribution plans.  A $100 check minimum would also significantly reduce the costs of making the redistribution.[23]

### III.   ARGUMENT

**A.   The Court Should Approve Class Counsel's Proposal To Distribute Remaining Settlement Funds**

Class Counsel believe that the plan to distribute the remaining settlement funds is fair and reasonable, and we request Court approval.  The remaining amounts are sufficiently significant to justify putting more money back in the pockets of Class Members.  In other words, the estimated $6,264,581.33 and $1,081,046.02 remaining in the Federal and California Settlement Funds make it feasible to reallocate the balances among Class Members in an equitable and economic fashion as called for in the Stipulations of Settlement.

If the Court approves a $100 minimum, and the estimated fees and costs of the redistribution are reserved, approximately 14,830 Federal Class Members and 3,186 California Class Members would receive a redistribution check under this proposal.[24]  Moreover, and

---

[22] McDermott Decl., ¶ 17.

[23] *Id.*, ¶ 20; Berman Decl., ¶ 4.  Gilardi estimates that the total fees and costs of making a redistribution subject to a $100 check minimum will not exceed $54,000 for the Federal Class and $10,000 for the California Class.  McDermott Decl., ¶ 20.

[24] *Id.*, ¶ 21.

MTN FOR ORDER APPROVING CLAIMS
ADMIN. FEES AND SECOND HALF OF
ATTORNEYS' FEES AWARD - 08-cv-01510 WHA
10036.12  486895v1

- 9 -

1   assuming the Court approves the plan in early December, Gilardi projects that checks can be
2   mailed by the end of the year or just after the New Year.[25]

3   **B.     The Court Should Approve The Payment Of Administration Costs To Gilardi**

4   The Court issued an order permitting Class Counsel to file a supplemental request for claims administration expense reimbursement.[26] The Court directed that the request contain the following information:  total amount requested and breakdown of tasks; the total amount remaining in the Settlement Funds after the initial disbursement; the total amount of outstanding class-member claims on the fund not yet paid out; whether any funds have been deducted for claims-administration expenses thus far; and what Class Counsel's disbursement for the remaining 50 percent of fees would be including interest.[27]

Gilardi has been paid $1,130,830.91 to date for its work in this case.  The Stipulations of Settlement authorize Class Counsel to approve payment of notice and administration costs.[28] Pursuant to these provisions, Class Counsel authorized the Escrow Agent to pay, and Gilardi was paid, $250,000 in June 2010 and $880,830.91 in September 2010.[29]

Gilardi now requests reimbursement from the Settlement Funds of $1,637,306.85 for outstanding and unpaid administration costs.  As the Court requested, Gilardi has provided a very detailed breakdown of all tasks performed in the settlement notice, claims processing and initial distribution stages of the settlement administration, segregating the work done by the following categories:  (i) settlement notice phase; (ii) processing phase; (iii) distribution phase; (iv) case management; and (v) case specific out-of-pocket expenses.[30]

The settlement notice phase consumed 1,867 hours resulting in $214,209.50 in billings. Key tasks here included creating and maintaining the notice databases for each Class, and printing

---

[25] *Id.*
[26] *See* Dkt. No. 1106.
[27] *Id.*
[28] Federal Class Stipulation of Settlement, ¶ 3.7; California Class Stipulation of Settlement, ¶ 3.7.
[29] Berman Decl., ¶ 9.
[30] McDermott Decl., Exh. A.

MTN FOR ORDER APPROVING CLAIMS
ADMIN. FEES AND SECOND HALF OF
ATTORNEYS' FEES AWARD - 08-cv-01510 WHA
10036.12  486895v1

- 10 -

and mailing the Notices and Records of Fund Transactions to the Class Members.[31] The processing phase required the most amount of work – 10,481.75 hours – and, therefore, generated the largest part of the Gilardi billing ($1,189,972.50). Key processing tasks included receiving and analyzing claims, determining eligibility and identifying claims deficiencies, processing all of the transaction data provided by Schwab and intermediary brokers, calculating payment amounts, and internal audits of all processing tasks.[32] The distribution phase followed, consuming 1,655.10 hours and resulting in $155,522.50 in billings for, among other things, directing the distribution of checks, answering claimant questions, conducting the outreach to claimants with uncashed checks and processing returned checks and requests for check reissues.[33] Gilardi also expended 986.75 hours, generating $158,675.25 in billings, for managing the foregoing phases.[34]

The last component of Gilardi's payment request relates to case-specific expense items. Gilardi incurred $1,049,758.01 in out-of-pocket expenses for items such as printing and mailing, summary notice publication, software support and check mailing.[35] A substantial portion of these out-of-pocket expenses have not been paid and have been carried by Gilardi for over a year.[36]

Class Counsel have carefully reviewed Gilardi's task detail and billed amounts and believe that Gilardi's request is reasonable and that all of the work was necessary in order for Gilardi to carry out its duties as Claims Administrator. Accordingly, we urge the Court to approve Gilardi's reimbursement request.[37]

**C.     The Court Should Authorize Class Counsel To Take The Remaining 50 Percent Of The Attorneys' Fee Award Plus Interest**

The Final Approval Order awarded attorneys' fees in two parts: 50 percent paid after the "effective date" as defined in the Stipulations of Settlement, and 50 percent to be paid "after

---

[31] *Id.*, ¶ 24.
[32] *Id.*, ¶ 25.
[33] *Id.*, ¶ 26.
[34] *Id.*, ¶ 27.
[35] *Id.*, ¶ 28.
[36] *Id.*, ¶ 22.
[37] Berman Decl., ¶ 9.

MTN FOR ORDER APPROVING CLAIMS ADMIN. FEES AND SECOND HALF OF ATTORNEYS' FEES AWARD - 08-cv-01510 WHA
10036.12 486895v1

- 11 -

1 counsel certifies that all class members have received and cashed their checks, no problems with
2 the distribution have been reported for a period of 30 days, and there is nothing left to do, unless
3 leave of Court is otherwise granted."[38]

4     As discussed above, we are unable to certify that all Class Members have cashed their checks, as happens in every class settlement. Those Class Members who have not cashed their checks are simply not going to, notwithstanding extraordinary efforts made by both Class Counsel and the Claims Administrator to encourage check negotiation. And we are at the end of the distribution process. Excluding reissued checks, which will be cashed given that the reissues were done in response to specific Class Member requests, initial distribution checks go stale by the end of November, and it is now time pursuant to the Stipulations of Settlement to redistribute remaining funds.

    Class Counsel report that we have not encountered any problems with the distribution process. As we ordinarily do, Class Counsel have very closely monitored the administration phase of this Settlement, reviewing uncashed check reports every two weeks, providing investigator support to help locate Class Members who have not cashed checks, asking and answering questions of Gilardi, and otherwise being in continual contact with Gilardi representatives. And we will continue to do so throughout the short redistribution phase. Furthermore, we do not foresee any problems arising with respect to the redistribution, especially given the fact that checks will be sent only to those Class Members who already cashed their initial distribution check, subject to a $100 minimum payment, making it highly likely that they will once again cash the check.[39]

    Given that the initial distribution phase is complete, that the redistribution will be done by the end of the year or shortly after the New Year (assuming Court approval), and that seven months have passed since the Court approved the attorneys' fee award, Class Counsel respectfully request that the Court authorize Class Counsel to take the remaining 50 percent of the attorneys' fee award plus interest. These payments would be $8,806,785.98 from the Federal Escrow Account and

---

[38] Dkt. No. 1101 at 16.
[39] Berman Decl., ¶ 5.

MTN FOR ORDER APPROVING CLAIMS
ADMIN. FEES AND SECOND HALF OF
ATTORNEYS' FEES AWARD - 08-cv-01510 WHA     -12-
10036.12  486895v1

$2,051,098.39 from the California Escrow Account, in addition to any interest earned between the date of this filing and the date of the Court's order.[40]

We also request reimbursement of $7,435.49 from the Federal Settlement Fund and $1,243.18 from the California Settlement Fund for escrow fees that were incurred but not assessed until shortly after monies were transferred out of escrow for distribution to Class Members. As a result, these costs were deducted from the attorneys' fee award that remained in escrow, but should have been paid out of the Settlement Funds.

## IV.   CONCLUSION

For the foregoing reasons, the Court should approve (i) Class Counsel's plan for distributing remaining funds to Class Members, (ii) payment from the Settlement Fund of reasonable Claims Administration costs in the amount of $1,637,306.85, and (iii) payment of the remaining half of Class Counsel's attorneys' fee award.

---

[40] *Id.*, ¶ 10.

| | |
|---|---|
| Dated: November 23, 2011. | HAGENS BERMAN SOBOL SHAPIRO LLP |

Reed R. Kathrein
Peter E. Borkon
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
reed@hbsslaw.com
peterb@hbsslaw.com


By:     s/ Steve W. Berman
          Steve W. Berman
          Sean R. Matt
          Erin K. Flory
          Lisa M. Hasselman
          Robert Lopez
HAGENS BERMAN SOBOL SHAPIRO, LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA  98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com
sean@hbsslaw.com
erin@hbsslaw.com
lisah@hbsslaw.com
robl@hbsslaw.com

*Attorneys for Lead Plaintiffs and the Classes*