IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

IN RE:

CHARLES SCHWAB CORPORATION
SECURITIES LITIGATION.

_____/

No. C 08-01510 WHA

**ORDER DENYING MOTION
FOR EXCLUSION FROM CLASS
AND RELIEF FROM JUDGMENT
AND VACATING HEARING**

This order addresses the motion filed by class member Donald Klus seeking permission to opt out of the class after the applicable deadline and for relief from judgment (Dkt. No. 1135).

Mr. Klus is an elderly class member who suffers from several medical conditions. Mr. Klus received three notices in this now-settled class action: (1) a notice of pendency of class action dated September 21, 2009; (2) a notice of proposed settlement of class action dated June 25, 2010; and (3) a supplemental notice of proposed settlement of class action dated December 1, 2010 (Joaqin Decl. ¶ 2). Mr. Klus does not deny receipt of these notices but contends he attempted in good faith to opt-out of this action. On his copy of the first notice, Mr. Klus underlined the instructions for electing exclusion and thought he sent a request pursuant to those instructions (Klus Decl. ¶1). Upon receipt of the supplemental notice of proposed settlement, Mr. Klus mailed a letter to the U.S. District Court for the Northern District of California, stating: "I invested my IRA savings in the Schwab YIELDPLUS FUND SWYSX because I was told that it was the safest place to put my savings. Attached please review my losses" (Klus Decl. Exh. C). A spreadsheet of capital losses for two accounts was appended.

1  The clerk stamped Mr. Klus's letter as received on January 18, 2011 — within the opt-out period
2  specified in the notice of settlement. Because it did not indicate an addressee, the clerk wrote:
3  "Please provide case number and judge" on the letter and returned it. Mr. Klus received the
4  returned letter but did not respond. In April 2011, thinking he had opted out of the settlement,
5  Mr. Klus spoke to an Associate General Counsel for defendant Schwab about the losses he had
6  incurred. An email confirmation of that conversation reads: "Thank you for speaking with me
7  today regarding your losses in the YieldPlus Fund. As we discussed, you will be sending me
8  documentation in support of your damage claim. I will review what you send me and will
9  get back to you" (*id*. at ¶ 3; Exh. E).

10  In June 2011, Mr. Klus received two settlement checks totaling $1,299.36, which remain
11  uncashed. Believing receipt of the checks was "just what happens in a class action," Mr. Klus
12  took no action at that time. He also informed his daughter of the checks, who then "realized his
13  memory and understanding [were] far worse than [she] had thought" (Dibb Decl. ¶ 4). Mr. Klus
14  then received a notice stating the deadline to cash his checks or request reissue thereof was
15  February 10, 2012 (Br. 4; Klus Decl. ¶ 4). Upon receipt of that notice, Mr. Klus retained counsel
16  and filed the instant motion. Class counsel does not oppose. Defendant initially opposed this
17  motion but has since withdrawn its opposition and requested to discontinue the motion hearing
18  (Dkt. Nos. 1139, 1143).

19  The standard for determining whether a class member should be allowed to opt out of
20  a class action after the applicable exclusion deadline has passed is whether the class member's
21  failure to meet the deadline is the result of "excusable neglect." *Silber v. Mabon*, 18 F.3d 1449,
22  1454–55 (9th Cir. 1994). This standard allows courts, "where appropriate, to accept late filings
23  caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances
24  beyond the party's control." *Pioneer Inv. Serv. Co. v. Brunswick Ass'n. Ltd. P'ship*, 507 U.S.
25  380, 388 (1993). When evaluating whether "excusable neglect" applies, the Ninth Circuit
26  instructs courts to consider the "degree of compliance with the best practicable notice
27  procedures; when notice was actually received and if not timely received, why not; what caused
28  the delay, and whose responsibility was it; how quickly the belated opt out request was made

2

once notice was received; how many class members want to opt out; and whether allowing a belated opt-out would affect either the settlement or finality of the judgment." *Silber*, 18 F.3d at 1455 (internal footnote omitted). Additionally, the court should consider the danger of prejudice to the opposing party, and whether the movant acted in good faith. *Pioneer*, 507 U.S. at 395.

This order finds Mr. Klus's failure to timely opt-out was not the result of excusable neglect. Mr. Klus received multiple notices of this action and admits to having read the opt-out instructions (Klus Decl. ¶¶ 1–2). No delay is alleged. Though Mr. Klus made a misguided attempt to opt-out in 2011, the letter did not state this intention but only that he had lost money as an investor in the fund. Moreover, he failed to respond to the clerk's request for identifying information or take any action as to the returned letter. Mr. Klus provides no justification for failing to bring this motion in June 2011, upon receipt of the settlement checks but states only that he did not take the checks to mean he was indeed a class member. Even if Mr. Klus's medical conditions caused him to believe he had opted out despite the continued class notifications as well as the returned letter, he discussed his communications with his daughter, who allegedly was aware of his mistake in June 2011 (Dibb Decl. ¶ 4). Nine months have since passed. Finally, this order finds the prejudice to Schwab that would result from granting this requests — especially *after approval and administration* of a $200 million settlement — would be significant, since the settlement was negotiated with a stable class membership in mind. It is simply too late to allow Mr. Klus to opt-out.

Mr. Klus argues that the return of his letter by the clerk confirmed his belief that he had opted out of the class, and the Associate General Counsel for Schwab's failure to mention the class action in his email reaffirmed this belief. Mr. Klus also contends that only when he received written notice instructing him to cash the checks did he realize "something wasn't right" (Br. 3–4; Klus Decl. 2–4). This order finds neither of these arguments compelling at this late stage. The clarity of notices to class members in this action was finely tuned. The fact that Mr. Klus thought he had opted out based on the first notice cannot sustain a finding of excusable neglect. The returned letter plainly requested additional information, which Mr. Klus never provided. It is unclear how the clerk's response would have confirmed his mistaken belief.

3

Similarly, the email from Schwab states only that Mr. Klus was expected to submit documentation. Mr. Klus knew about the pendency of this action. The fact that it was not referenced in the confirmation email cannot have reasonably confirmed anything about the class or inclusion therein. Finally, even if Mr. Klus truly was unaware of his inclusion in this action, his daughter states she too reviewed the returned letter in early 2011, and was aware that Mr. Klus received settlement checks in June.

The circumstances presented here do not warrant a finding of excusable neglect. Even in instances where class members claimed to have received *no* notice of this action, the Court has denied similar requests (Dkt. Nos. 824–26). It would be unfair to reopen the door at this juncture. Mr. Klus's untimely request is accordingly **DENIED.** The hearing scheduled for May 3, 2012, is hereby **VACATED.**

**IT IS SO ORDERED.**

Dated: May 1, 2012.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE